# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D.,<br><br>   Plaintiff,<br><br> v.<br><br>NBCUNIVERSAL MEDIA, LLC,<br><br>   Defendant. | Case No. 5:21-cv-00056-LGW-BWC<br><br>**DEFENDANT'S MOTION TO STAY DISCOVERY AND MEMORANDUM IN SUPPORT** |

Pursuant to Federal Rules of Civil Procedure 1 and 26, Defendant NBCUniversal Media, LLC ("NBCU") moves this Court for an Order staying all discovery deadlines set forth in the Court's Scheduling Order (ECF No. 28) until the Court has ruled on NBCU's Motion for Judgment on the Pleadings (ECF No. 24).

## PRELIMINARY STATEMENT

In this case, Plaintiff Dr. Mahendra Amin ("Dr. Amin") alleges that NBCU defamed him when it reported on allegations that he performed unnecessary and unconsented-to gynecological procedures on immigrant women detained at the Irwin County Detention Center ("ICDC"). These allegations were submitted to the government in a whistleblower complaint filed with numerous government agencies, which immediately sparked federal investigations into ICDC and Dr. Amin's conduct. On January 10, 2022, NBCU filed a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) (the "Motion"), arguing that the Complaint must be dismissed in its entirety because the challenged statements are all privileged reports of official conduct (*i.e.* government investigations and the allegations upon which they are based), are

privileged statements on a matter of public concern, and, in many instances, are not even statements of fact capable of supporting a defamation claim.

NBCU now requests that the Court stay discovery pending a decision on the Rule 12(c) Motion for similar reasons as the Middle District of Georgia has stayed a separate lawsuit against Dr. Amin based on his conduct at ICDC.  The Motion addresses questions of law that can be readily determined on the face of the pleadings and should dispose of the entire action, but at the least is likely to narrow the issues surrounding the 38 statements challenged in the Complaint.  Discovery, on the other hand, will be extensive and costly and will require significant document and deposition discovery from nonparties.  Discovery will focus on a broad array of factual issues, including the alleged falsity (or substantial truth) of the challenged statements, whether NBCU published the statements with actual malice, and whether Dr. Amin suffered any damages caused by NBCU's publications (versus the countless other reports on the allegations).  It will likely involve the testimony of numerous immigrant women who allege Dr. Amin performed unnecessary or unconsented-to procedures on them when they were in detention—most of whom remain in the United States with no indication of immediate deportation.  And discovery necessarily will involve the multiple federal investigations into Dr. Amin's practices and findings related to those investigations.  While certain reports indicate that those investigations have found serious wrongdoing by Dr. Amin, the investigations are ongoing and are not expected to be completed for several more months.  Given that status, the related putative class action litigation arising out of Dr. Amin's practices at ICDC has been stayed.

In short, a stay is warranted because the facts, law, avoidance of unnecessary cost to the parties and burden to the court, and possible prejudice to NBCU all far outweigh any benefits from

proceeding with discovery. NBCU respectfully requests that the Court issue a discovery stay until a decision on the Motion has issued.

## FACTUAL BACKGROUND

As set forth more fully in the Motion, this case arises from five news reports that aired on MSNBC—a news platform owned and operated by NBCU—between September 15 and September 17, 2020 (the "News Reports"). *See* Answer Exs. B-F. The News Reports reported on a whistleblower complaint (the "Whistleblower Complaint") filed in September 2020 with the Department of Homeland Security, ICE, and ICDC on behalf of a nurse employed at ICDC. *See* Answer Ex. A. It alleged that a doctor contracted by the government, promptly identified as Dr. Amin by other media outlets,[1] performed unnecessary and unconsented-to gynecological procedures, including full hysterectomies, fallopian tube removals, and ovary removals, on detainees. *Id.* at 18-20. Due to the gravity of the allegations in the Whistleblower Complaint, media organizations across the country and across the political spectrum began to report on it and other, similar allegations against Dr. Amin.[2] The News Reports were five such broadcasts.

Almost immediately after the Whistleblower Complaint was filed, multiple investigations were opened into ICDC and Dr. Amin's conduct, including investigations by the Department of Homeland Security, the Federal Bureau of Investigation, Congress, and the Department of Justice.[3] In addition, in December 2020, a group of detainees filed a class action lawsuit against Dr. Amin

---

[1] *See* Tina Vásquez, "Exclusive: Georgia doctor who forcibly sterilized detained women has been identified," PRISM (Sept. 15, 2020), available at: Exclusive: Georgia doctor who forcibly sterilized detained women has been identified - Prism (prismreports.org).

[2] Footnote 2 of the Motion contains a partial listing of articles published about Dr. Amin and/or the Whistleblower Complaint from September 14-16, 2020.

[3] *See* Tina Vásquez, "Exclusive: FBI investigates Georgia doctor accused of sterilizing detained women," PRISM (May 6, 2021), available at: EXCLUSIVE: FBI investigates Georgia doctor accused of sterilizing detained women - Prism (prismreports.org).

3

and other government officials in the Middle District of Georgia, alleging that Dr. Amin performed "medically unindicated" gynecological procedures that caused them extreme pain and, in some instances, amounted to sexual assault. *See Oldaker v. Giles*, No. 7:20-cv-00224 (M.D. Ga. 2020), ECF No. 54, ¶ 1.[4] The *Oldaker* complaint further alleged that employees at ICDC and other government officials were made aware of the allegations against Dr. Amin yet continued to send ICDC detainees to him for medical procedures. *Id.* ¶¶ 75-76. In October 2021, the *Oldaker* litigation was stayed—without objection from Dr. Amin—because the government's investigations into Dr. Amin's alleged misconduct were ongoing. *See* ECF No. 178. Just last week, the government requested a further extension of this stay through April 2022, explaining that the investigations would continue for "several additional months." *See* ECF No. 182.

On September 9, 2021, almost a year after the News Reports were broadcast, Dr. Amin filed the Complaint in this action. *See* ECF No. 1. In it, he singled out MSNBC and claimed that the News Reports—to the exclusion of the dozens of other articles and broadcasts about him—defamed him by reporting on the Whistleblower Complaint and similar claims from detainees and their lawyers, which were the subject of the government's investigations. On December 6, 2021, NBCU filed its Answer, including full copies of the News Reports and Whistleblower Complaint, which Dr. Amin referenced in the Complaint but failed to attach. *See* ECF No. 18. On December 27, 2021, Plaintiff filed a Motion to Strike these full documents and references to them from Defendant's Answer. *See* ECF No. 22. The Motion to Strike is pending before the Court.

On January 10, 2022, NBCU filed its Motion asking this Court to dismiss Plaintiff's Complaint in its entirety. The Motion argues that the challenged News Reports are fully privileged as fair reports of official proceedings and as reports made in furtherance of the right of free speech

---

[4] A full copy of the *Oldaker* Complaint is attached as Exhibit 2 to the Motion.

4

on a matter of public interest, since they report on and accurately recount the Whistleblower Complaint and allegations that form the basis of the government's investigations. *See* Mot. at 10-23. In addition, the Motion argues that many of the challenged statements are not statements of fact and therefore cannot form the basis of a defamation claim. *Id.* at 23-25.

During a meet and confer with Dr. Amin's counsel, counsel for NBCU requested that Dr. Amin agree to stay discovery until the Court decides the Motion. NBCU explained that doing so would conserve the parties' and the Court's resources and would make it more likely that the various government investigations into Dr. Amin would be completed before discovery closes. Dr. Amin did not agree to this proposal. This Motion to Stay follows.

## ARGUMENT

**I.  Courts in the Eleventh Circuit Frequently Stay Discovery Pending Upfront Dispositive Motions**

It is well-established that courts have "broad discretion to stay discovery pending decision on a dispositive motion." *Favors v. Select Portfolio Serv., Inc.*, 2015 WL 11718112, at *2 (N.D. Ga. Mar. 11, 2015) (internal quotations omitted). As the Eleventh Circuit has recognized:

> Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on a failure to state a claim for relief, should [] be resolved before discovery begins. Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true . . . . If the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided.

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367-68 (11th Cir. 1997).[5] Thus, courts in this District and throughout the Eleventh Circuit "*routinely* find good cause to stay the discovery period where there is a pending motion to dismiss." *Moseley v. Sessions*, 2017 WL 1682537, at *1 (S.D. Ga. May 1, 2017) (emphasis added) (collecting cases); *James v. Terex Corp.*, 2016 WL

---

[5] A motion for judgment on the pleadings is assessed under the same legal standard as a motion to dismiss. *See Strategic Income Fund, LLC v. Spear, Leeds & Kellog Corp.,* 305 F.3d 1293, 1295 n.8 (11th Cir. 2002).

5109152, at *2 (S.D. Ga. Sept. 20, 2016) (same); *Plumbers & Steamfitters Local 150 Pension Fund v. Muns Welding & Mechanical, Inc.*, 2015 WL 12843218, at *1 (S.D. Ga. May 5, 2015) (granting stay pending decision on motion for judgment on the pleadings).

## II.  A Discovery Stay Is Necessary in This Case

In deciding whether to stay discovery pending resolution of a motion, courts "must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery.  This involves weighing the costs and burdens of proceeding with discovery." *James*, 2016 WL 5109152, at *2 (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)).  Here, the burdens of proceeding with discovery while NBCU's Motion is pending far outweigh any benefits from beginning discovery prior to the Court's decision on the Motion.

As a preliminary matter, "[t]o evaluate stays of discovery pending a ruling on a dispositive motion, a court must take a 'preliminary peek' . . . to assess the likelihood that the motion will be granted." *Cooper v. Mayor & Alderman of the City of Savannah*, 2017 WL 778068, at *1 (S.D. Ga. Feb. 28, 2017) (citation omitted).  Here, NBCU's Motion is strong.  It offers numerous, independent grounds for why Dr. Amin's Complaint fails to state a claim as a matter of law:  *First*, the challenged News Reports report on the allegations in the Whistleblower Complaint that are the subject of government investigations.  *See* Mot. at 10-17.  Because the News Reports discuss these official proceedings in a fair and accurate manner, including by directly quoting and closely paraphrasing the allegations in the Whistleblower Complaint, they are protected by the fair report privilege.[6]  *Second*, because the News Reports were made in a traditional public forum (*i.e.*, a

---

[6] *Compare, e.g.*, Answer Ex. A (Whistleblower Compl.) at 19 ("Ms. Wooten explained: "We've questioned among ourselves like goodness, he's taking everybody's stuff out . . . That's his specialty, he's the uterus collector. I know that's ugly . . . is he collecting these things or something."), *with* Motion Ex. 1 (Statements Chart), Statement 6 ("You're quoting the complaint as saying, that's his specialty, he's the uterus collector. Is that how people refer to

6

nationally televised news program) or were otherwise made in furtherance of the right of free speech, and because they undoubtedly relate to a matter of public concern—a government-contracted doctor performing unnecessary or unconsented-to invasive gynecological procedures on detainees—they are also protected under Georgia's public interest privilege. *See* Mot. at 17-19. *Third*, in addition to being privileged, numerous challenged statements, such as statements that detainees were "afraid" of Dr. Amin and the reference to the nickname "uterus collector," are subjective opinions, rhetorical hyperbole, or are otherwise incapable of being proven true or false and, thus, cannot support Dr. Amin's defamation claim. *See* Mot. at 23-25. Because there is a strong likelihood that this Motion will dispose of the entire action, the need for discovery will be mooted.[7]

Indeed, awaiting a ruling on NBCU's Motion before proceeding with discovery is particularly called for in this case because discovery is likely to be complex. Both parties indicated in their initial disclosures that discovery will require subpoenas to detainees from ICDC and individuals who worked at ICDC, Immigration and Customs Enforcement ("ICE"), and LaSalle Corrections, the prison company in charge of running ICDC. In addition, during the parties' Rule 26 conference, counsel for Dr. Amin indicated that he may seek an inspection of ICDC. *See* Proposed Rule 26(f) Report (ECF No. 21) at 9. "It would be inefficient and costly for the parties

---

this doctor?"); Statement 7 ("I had a detainee that asked me, she said, what is he doing? Collecting all our uteruses."); Statement 14 ("And one lady walked up to me here . . . and said, what is he? Is he the uterus collector? Does he collect uteruses?"); Statement 16 ("They would come up to me and they would say, is he the uterus collector?"); Statements 29-30 ("The nurse says she and her fellow nurses, quote, questioned among ourselves, like, goodness, he's taking everybody's stuff out, that's his specialty he's the uterus collector. She says, quote, I know that's ugly. Is he collecting these things or something?").

[7] Even if NBCU's Motion does not resolve the case in its entirety, it could substantially narrow the allegations at issue. Plaintiff's Complaint challenges 38 statements from the News Reports; eliminating even some of them could limit the scope of discovery. *See Williams v. Corp. of Mercer Univ.*, 2021 WL 5352613, at *2 (M.D. Ga. Jan. 6, 2021) (granting stay when defendant's motion could "entirely eliminate the need for [] discovery or, at a minimum, limit the scope and breadth of discovery going forward"); *Robinson v. McNeese*, 2020 WL 6081893, at *3 (M.D. Ga. Oct. 15, 2020) (same).

7

to engage in such extensive discovery when much, if not all, of the discovery requests could be rendered moot by the Court's ruling on the Motion." *SP Frederica, LLC v. Glynn Cty.*, 2015 WL 5242830, at *3 (S.D. Ga. Sept. 8, 2015); *see also Robinson*, 2020 WL 6081893, at *1 ("[Motions to dismiss] present purely legal questions that should be resolved before the parties bear the costly burdens associated with the discovery process.").

Further, it is unlikely that the parties will even be able to obtain much of the sought-after discovery until the completion of the ongoing government investigations into Dr. Amin. These investigations are directly relevant to the issues at the heart of this case: the government is examining whether Dr. Amin performed unnecessary and unconsented-to procedures on ICDC detainees. *See, e.g.*, *supra* n.4. The *Oldaker* litigation, which involves allegations against Dr. Amin that mirror the challenged statements in the News Reports, has been stayed (and may remain stayed until April) due to the ongoing status of the government's investigations. Notably, Dr. Amin did not object to the stay or requested extension of the stay in the *Oldaker* action but inexplicably refuses to do so here, even though both actions involve discovery from immigrant women who were detained at ICDC and government agencies and officials.

It would be highly prejudicial to require NBCU to proceed with discovery without being able to obtain records from these investigations.[8] Because a defamation claim requires a false statement of fact, the information obtained through the investigations directly relate to one of NBCU's main defenses: that the challenged statements are substantially true. *See Lucas v. Cranshaw*, 289 Ga. App. 510, 512 (Ga. Ct. App. 2008) ("Because falsity is an essential element of both libel and slander, truth is a perfect defense to a defamation action."). And reports indicate

---

[8] Exemption 7(A) to the Freedom of Information Act authorizes the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C.A. § 552(7)(A).

that the information from these investigations will be integral to NBCU's substantial truth defense. In October 2020, the *Los Angeles Times* reported that nine board-certified OB-GYNs reviewed medical records from 19 ICDC detainees who were treated by Dr. Amin. According to these medical professionals, the records showed an "'alarming pattern' in which Amin allegedly subjected the women to unwarranted gynecological surgeries, in most cases performed without consent."[9] The OB-GYNs concluded, "[b]oth Dr. Amin and the referring detention facility took advantage of the vulnerability of women in detention to pressure them to agree to overly aggressive, inappropriate, and unconsented medical care." *Id.* Importantly, ICE and LaSalle Corrections (the prison company that operates ICDC) could not provide comment to the *Los Angeles Times* due to the ongoing investigations. *Id.* In addition, in June 2021, the *Atlanta Journal-Constitution* reported that officials disregarded claims of improper gynecological treatment from Dr. Amin, ICE did not collect consent forms to ensure Dr. Amin treated women with their permission, and Dr. Amin billed ICE for eight hysterectomies from 2017 to 2020 (despite the fact the Complaint alleges that Dr. Amin performed only two hysterectomies on women at ICDC, *see* Compl. ¶ 55).[10] And, on December 3, 2021, the chairs of four congressional committees sent a letter to the Secretary of Homeland Security explaining that, based on records from ICE and LaSalle Corrections, "Dr. Amin did not meet acceptable standards of care."[11] It stated:

---

[9] *See* Molly O'Toole, "19 women allege medical abuse in Georgia immigration detention," THE LOS ANGELES TIMES (Oct. 22, 2020), available at: Women allege medical abuse in Georgia immigration detention - Los Angeles Times (latimes.com).

[10] *See* Alan Judd, "At Georgia immigration jail, warnings about women's medical care went unheeded," THE ATLANTA JOURNAL-CONSTITUTION (Jun. 5, 2021), available at: At Georgia immigration jail, warnings about women's medical care went unheeded (ajc.com).

[11] Letter to Secretary Mayorakas from the Chairs of the Committee on Homeland Security, Committee on Oversight and Reform, Subcommittee on Border Security, and Subcommittee on Civil Rights and Civil Liberties (Dec. 3, 2021), available at: Letter-DHS ICDC Update.pdf (house.gov).

9

> Dr. Amin was not up to date with current evidence-based guidelines, engaged in a pattern of performing the same surgery—D&C, laproscopy (LSC)—on many patients no matter what the condition was, and performed evaluation and treatment that did not address the primary issue but instead he did a variety of tests and surgery that did them little or no good and potentially caused harm.

*Id.* at 2.  The Congressional committees concluded that they were "concerned that Dr. Amin may have been performing unnecessary surgical procedures to defraud DHS and the federal government without consequences."  *Id.*  Notably, ICE and LaSalle refused to provide these records without a Congressional subpoena, *id.*, so it seems doubtful that ICE or LaSalle would be willing to voluntarily provide records to private parties litigating a private dispute.  Given these ongoing investigations and the inability to obtain critical information before the investigations are completed, discovery should be stayed until (at least) the decision on NBCU's Motion.  The decision may moot discovery in its entirety, but if necessary, it would at least allow more time for the investigations to be completed and then the parties could obtain full records from the government.

Finally, Dr. Amin would suffer no real prejudice if this Court were to stay discovery pending a decision on the Motion.  Indeed, during the parties' January 13, 2022 status conference with the Court, the only "harm" that Dr. Amin's counsel could articulate was that some of the *Oldaker* petitioners who made allegations against him may be deported.  Dr. Amin's concern seems dubious given his own actions in this litigation:  He waited nearly one full year after the News Reports were broadcast to file his Complaint, he did not serve any discovery despite the fact that NBCU filed its Answer on December 6, 2021, and, instead, he filed a Motion to Strike allegations from the Answer—a disfavored motion known in this Circuit for being a "time waster[]." *Ellison v. St. Joseph's/Candler Health Sys., Inc.*, 2017 WL 513921, at *1 (S.D. Ga. Feb. 7, 2017).  In addition, the *Oldaker* court has already rejected Dr. Amin's concern.  In a January 10, 2022 Order discussing the requested stay extension, the Court stated that the government

"affirme[d] that Petitioners are undetained and not under an imminent threat of removal." *See* ECF No. 180. Even if one or more of the *Oldaker* Petitioners were deported and their testimony became more difficult to obtain, each woman's allegations against Dr. Amin are part of a pattern of alleged unnecessary or unconsented-to medical procedures. There are fourteen Petitioners in *Oldaker* who claimed that Dr. Amin subjected them to unconsented-to or unnecessary gynecological procedures, and, in total, over *forty* women filed sworn testimony about Dr. Amin's conduct.[12] In addition, in September 2021, Project South, the entity that filed the Whistleblower Complaint, issued a lengthy report that contained similar allegations about Dr. Amin from over a dozen women.[13] The "sting" of the alleged defamatory statements at issue largely turns on the contention that Dr. Amin was performing unconsented-to or unnecessary medical procedures on detained immigrant women. There is no requirement that every woman making these allegations has to be available for testimony in this action.

In short, the concern that evidence may be lost "because over time memories fade, witnesses relocate[,] and documents are misplaced" is "present in all cases where a stay is sought." *Brantley Cty. Dev. Partners, LLC v. Brantley Cty., Georgia*, 2020 WL 3621319, at *3 (S.D. Ga. July 2, 2020). Comparing the competing concerns in this case, including that discovery is likely to be difficult and enormously costly, NBCU's Motion could eliminate the need for discovery in its entirety, and ongoing investigations are likely to thwart the parties' current discovery requests, it is clear that Dr. Amin's concern about theoretical deportations is not enough to push discovery forward.

---

[12] *See* "More Than 40 Women File Class Action Lawsuit Alleging Medical Misconduct by ICE Doctor at Georgia Detention Center," TIME (Dec. 22, 2020), available at: Women Provide Testimony Alleging Medical Abuse By ICE Doctor | Time.

[13] *See* "Violence and Violation: Medical Abuse of Immigrants Detained at the Irwin County Detention Center," (Sept. 2021), available at: https://projectsouth.org/wp-content/uploads/2021/09/IrwinReport_14SEPT21.pdf.

## **CONCLUSION**

For the foregoing reasons, NBCU respectfully requests that the Court stay discovery pending a ruling on NBCU's Motion for Judgment on the Pleadings and for such other and further relief as is just and proper.

Dated: January 21, 2022

Respectfully submitted,

| | |
|---|---|
| *s/ Elizabeth A. McNamara* | *s/ Cynthia L. Counts* |
| Elizabeth A. McNamara | Cynthia L. Counts |
| (admitted *pro hac vice*) | Georgia Bar No. 190280 |
| Amanda B. Levine | FISHERBROYLES, LLP |
| (admitted *pro hac vice*) | 945 East Paces Ferry Rd. NE, Suite 2000 |
| DAVIS WRIGHT TREMAINE LLP | Atlanta, GA 30326 |
| 1251 Avenue of the Americas, 21st Floor | (404) 550-6233 |
| New York, NY 10020-1104 | cynthia.counts@fisherbroyles.com |
| Tel: (212) 489-8230 | |
| lizmcnamara@dwt.com | |
| amandalevine@dwt.com | |
| | *Attorneys for Defendant* |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 21st day of January, 2022, a true and correct copy of the foregoing document was served upon the following via the Court's electronic filing system:

Stacey Godfrey Evans
sevans@staceyevanlaw.com

Tiffany N. Watkins
twatkins@staceyevanslaw.com

Scott R. Grubman
sgrubman@cglawfirm.com

*Cynthia L. Counts*
Cynthia L. Counts
Georgia Bar No. 190280
FISHERBROYLES , LLP
945 East Paces Ferry Rd. NE, Suite 2000
Atlanta, GA 30326
Telephone: (404) 550-6233
cynthia.counts@fisherbroyles.com

*Attorneys for Defendant*