**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | | |
|---|---|---|
| DR. MAHENDRA AMIN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 5:21-CV-00056-LGW-BWC |
| v. | ) | |
| | ) | |
| NBCUNIVERSAL MEDIA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY

While Defendant styled its motion as a motion to *stay* discovery, in reality, Defendant asks this Court to *modify* the Scheduling Order entered in this case. Because this Court has entered a scheduling order, Defendant must show "good cause" to modify said order. Thus, Defendant presented its motion using the wrong standard. But Defendant cannot meet any standard. Defendant did not even attempt to argue that it can meet the "good cause" standard required for modification of an existing scheduling order. And Defendant cannot meet the "balancing the harm" standard applicable to a motion to stay discovery, where courts must weigh the harm from a delay in discovery against the possibility that a preliminary motion will be granted and the discovery stage of the case eliminated. Defendant is not likely to prevail on its motion for judgment on the pleadings and Dr. Amin's access to discovery is at risk with any further delay given the need for third party discovery from individuals who are at risk of deportation without warning, among other concerns.

Defendant manipulated the proceedings in an attempt to turn the Court's determination of the sufficiency of Dr. Amin's short, straightforward Complaint into a premature judgment of

factual disputes by inserting dozens of documents and articles inappropriate for the pleadings stage.  Despite its own obsession with factual issues at the pleadings stage, Defendant seeks to deny Dr. Amin's access to fact discovery under the normal course of the Federal Rules of Civil Procedure.  Defendant's efforts to make an end run around the normal and methodical process set forth by the Federal Rules and this Court's Local Rules should be denied.  Defendant has presented no reason why it should be treated differently than any other defendant in a case with an abundance of factual disputes.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual disputes permeate this case, including in two pending motions

The facts and legal issues before this Court are set out in the Complaint (Doc. 1), Plaintiff's Motion to Strike Defendant's Answer in Part (Doc. 22), Plaintiff's reply brief in support thereof (Doc. 33), and Plaintiff's Response in Opposition to Defendant's Motion for Judgment on the Pleadings (Doc. 32), but a few points are worth repeating here.

Defendant aired a series of false and defamatory broadcasts over three days accusing Dr. Amin of being an abusive, unethical, and dishonest physician who treated and operated on immigrant women in an abusive fashion, without consent, and motivated by profit instead of quality healthcare.  Doc. 1 ¶ 3.  Defendant claims the broadcasts are privileged because they are based upon a letter, self-titled a "whistleblower complaint," but there was no complaint filed in any court or with any agency, and it was handled like a press stunt, not a formal request for an investigation like a true whistleblower complaint.  *See* Doc. 32 at 9.  The document does not reach the threshold of the types of documents that allow a news agency to publish the allegations without undertaking its own fact checking.  *See* Doc. 1 ¶¶ 45-55.  In reality, the document is just a letter and provides no protection to Defendant's defamatory broadcasts.  First, the letter did not

name Dr. Amin at all, thus any reporting regarding Dr. Amin could not possibly be based upon it.  Doc. 1 ¶ 48.  Second, the letter does not create any privileges for Defendant and even if it did, any determination of whether a privilege applies necessarily requires determinations of issues of fact, precluding a motion for judgment of the pleadings or any decision prior to discovery.  Doc. 32 at 9-17, 20-21.  This is especially true because Dr. Amin alleges that Defendant acted with actual malice which defeats any privilege that might exist even if the letter did name Dr. Amin (it did not) or could create any privileges (it cannot).  *Id.* at 17-20.

## II.    Clarification of actions tangentially related to the present action

*Oldaker et al. v. Giles et al.*, the lawsuit currently pending in the Middle District of Georgia against dozens of individuals and entities, along with Dr. Amin, is far from overlapping with this case.  *See* Doc. 24-2.  The complaint in this case is for a single count of defamation against a single defendant.  *See* Doc. 1.  The complaint in the *Oldaker* case largely centers on improper government action, is a class action complaint, and includes counts for alleged unlawful detention; violations of First, Fifth, and Fourteenth Amendment rights; violations of the Rehabilitation Act, Administrative Procedures Act, and Immigration and Nationality Act; and breach of contract claims.  *See* Doc. 24-2 at 3-4, 114-157 (setting forth twenty-one claims for relief against around 25 named defendants and an unspecified number of fictitious defendants).

The *Oldaker* court did not stay discovery because of multiple investigations "into Dr. Amin's practices," as Defendant insinuates.  Doc. 31 at 2.  Rather, because the *Oldaker* complaint alleges improper government action by many different actors, including ICE and ICDC themselves and various leaders of and workers within those entities, including LaSalle Southeast, LLC, the private company operating ICDC, *see generally* Doc. 24-2, the case was

stayed as various Congressional and federal agency investigations are pending regarding those actors.

**III.     Procedural history of this case**

Dr. Amin filed his complaint on September 9, 2021.  Doc. 1.  After seeking an extensive extension of time to respond (on top of 60 days for agreeing to accept service), and instead of filing a motion to dismiss, Defendant filed an Answer on December 6, 2021 (Doc. 18), which included inappropriate "affirmative allegations," links, and attachments, to which Dr. Amin had no opportunity to rebut in a pleading of his own (*see* Doc. 33 at 7-8).  Defendant wants the Court to consider lots of alleged and disputed facts, but it files the present motion seeking to foreclose Dr. Amin from any fact discovery.

Defendant revealed to Dr. Amin that it filed its Answer with additional allegations so that it could file a motion for judgment on the pleadings.  Doc. 21 at 3.  Despite this plan and although "indicat[ing] an intention" to seek a "stay" of discovery with its motion for judgment on the pleadings, Defendant agreed to dates for the completion of fact and expert discovery. Doc. 21 at 7-11.

Defendant accordingly previewed its intent to file a motion for judgment on the pleadings and a motion to "stay" discovery on December 13, 2021.  Doc. 21.  Yet it was not until January 10, 2022, that Defendant filed its Motion for Judgment on the Pleadings (Doc. 24), and it took Defendant still another 11 days, until January 21, 2022, to file the current Motion.  Doc. 31. Over a week earlier, the Court entered the Scheduling Order.  Doc. 28.

Just prior to filing its Motion to Modify the Scheduling Order, Defendant approached Plaintiff to "meet and confer" on the Motion.  But, contrary to the Court's encouraging the parties to "work together on the issue," Doc. 29, Defendant offered no compromise, such as

moving forward on some discovery while staying other parts of discovery. Instead, as Defendant itself affirms in its Motion, Defendant merely "requested that Dr. Amin agree to stay discovery" completely. Doc. 31 at 5. Dr. Amin, however, did offer to stay party discovery while moving forward with third party discovery. Defendant would not meet Dr. Amin halfway and claimed it could not participate in third party depositions without receiving all relevant documents in Dr. Amin's control, thus setting up an "all or nothing"' proposition.

## ARGUMENT

Defendant fails to acknowledge the correct standard for the relief it seeks in this motion. Namely, Defendant fails to acknowledge that a scheduling order exists and that Defendant must present "good cause" to modify it. Defendant instead asks this Court to "balance the harm" between delaying discovery and the potential that Defendant may prevail on its motion, which may alleviate the need for discovery at all. This is not the correct standard, but the balance does not weigh in favor of staying discovery in any event because Defendant's motion is without merit and there is a risk that third parties with information relevant to the issues in this case may become difficult, if not impossible, to locate with delay.

## I.     Defendant cannot present "good cause" to alter the scheduling order

Once set, the deadlines established in a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Eleventh Circuit has held that this good cause standard to modify a Rule 16 scheduling order "precludes modification [of the scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1231 (11th Cir. 2008) (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998)).

Defendant misleadingly sets forth the legal standard for *deciding* a motion for judgment on the pleadings, which is the same as the standard for deciding a motion to dismiss, in a way that implies that courts' granting motions to modify a scheduling order should be "assessed under the same legal standard" as a motion to stay discovery before such an order is entered. Doc. 31 at 5 n.5.  The law provides no support for this proposition.  If the Federal Rules of Civil Procedure meant for the standard for a stay of discovery before a scheduling order is entered to apply to a request to modify a scheduling order, Rule 16(b)(4) would not exist.

Defendant's citation of *Plumbers & Steamfitters Loc. 150 Pension Fund v. Muns Welding & Mech., Inc.*, Case No. 1:15-cv-00038-JRH-BKE, 2015 WL 12843218, at *1 (S.D. Ga. May 5, 2015), for the parenthetical "(granting stay pending decision on motion for judgment on the pleadings)" is particularly misleading.  Doc. 31 at 6.  The very first sentence of that order begins: "This matter is before the Court on the parties' ***joint*** motion to stay discovery, file a Rule 26(f) report, and serve initial disclosures . . . pending resolution of Plaintiffs' motion for judgment on the pleadings."  2015 WL 12843218, at *1 (emphasis supplied).  Defendant was accordingly abundantly on notice that the motion to stay discovery in *Plumbers* was filed ***prior to*** the issuance of a scheduling order, and even prior to a Rule 26(f) report.  *Id*.  Further, there, unlike here, the parties jointly sought a stay of discovery.  *Id*.

Defendant ignores the distinction between this case and the cases it cites: when a motion to dismiss is filed, an answer is not, discovery is not triggered, and a scheduling order is not entered.  Here an answer was filed, discovery procedures were triggered, and the Court has entered a scheduling order (Doc. 28); Defendant participated in the creation of it.  *See* Doc. 21. Defendant's cases, instead, regard stays of discovery *in the absence of* a scheduling order.  In each of those cases, therefore, the motion was truly to stay discovery, rather than a motion to

modify a scheduling order.  Defendant's Motion does not address the fact that the existence of the Scheduling Order demands that the discovery deadlines only be changed pursuant to a motion to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4).

Defendant's cases simply apply a different standard than Rule 16(b)(4) and *Oravec*, which require proof of "good cause"—that is, that "the schedule cannot be met despite the diligence of the party seeking the extension."  Fed. R. Civ. P. 16(b)(4); *Oravec*, 527 F.3d at 1231 (quotation marks omitted).  Defendant has made no such showing here.

The circumstances of one of the cases Defendant cites demonstrate just how inapplicable those cases are to the current situation, where Defendant has delayed and created an entirely different fact pattern.  In *Williams v. Corp. of Mercer Univ.*, the defendant filed its initial motion to stay discovery *on the same day* as its first motion to dismiss.  Case No. 5:20-cv-361-LAG, 2021 WL 5352613, at *1 (M.D. Ga. Jan. 6, 2021).  In less time than it took Defendant in this case to complete its well-planned agenda of answer, dispositive motion, and motion to stay discovery, the parties in *Williams* agreed to and *completed* a schedule for filing an amended complaint, all briefing on a renewed motion to dismiss, and a *consent* motion to stay discovery while that motion to dismiss was pending.  *See id.* (relating the procedural posture, including the first motion to dismiss filed on November 4, 2020 and the parties filing the consent motion to stay on December 21, 2020).

Indeed, every single case that Defendant cites as supporting a "stay of discovery" either obviously preceded entry of a scheduling order or does not mention one in the context for which Defendant cites the case.  *See Favors v. Select Portfolio Serv., Inc.*, Case No. 3:14-cv-190-TCB, 2015 WL 11718112, at *2 (N.D. Ga. Mar. 11, 2015) (mandating that "the deadlines governing the holding of a Rule 26(f) conference" be among the deadlines that would be stayed);

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997) ("Thus, when faced with a motion to dismiss a claim for relief that significantly enlarges the scope of discovery, the district court should rule on the motion *before entering discovery orders*, if possible.") (emphasis supplied)); *Moseley v. Lynch*, Case No. 2:16-cv-153-LGW-RSB, 2017 WL 1682537 (S.D. Ga. May 1, 2017) (order not mentioning any scheduling order entered prior to order granting stay, and PACER docket showing none); *James v. Terex Corp.*, Case No. 5:16-cv-60-RSB-BWC, 2016 WL 5109152 (S.D. Ga. Sept. 20, 2016) (order not mentioning any scheduling order entered prior to order granting stay, and PACER docket showing none); *Plumbers*, 2015 WL 12843218, at *1 ("This matter is before the Court on the parties' joint motion to stay discovery, file a Rule 26(f) report, and serve initial disclosures . . . pending resolution of Plaintiffs' motion for judgment on the pleadings."); *Feldman v. Flood*, 176 F.R.D. 651, 653 (M.D. Fla. 1997) (scheduling order not mentioned, and denying motion to stay discovery); *Cooper v. Mayor and Alderman of the City of Savannah*, Case No. 4:16-cv-329-WTM-GRS, 2017 WL 778068 (S.D. Ga. Feb. 28, 2017) (order not mentioning any scheduling order entered prior to order granting stay, and PACER docket showing none); *Williams*, 2021 WL 5352613, at *1-2 (discussed above); *Robinson v. McNeese*, Case No. 5:20-cv-160-TES, 2020 WL 6081893, at *3 (M.D. Ga. Oct. 15, 2020) (stating, in concluding that the plaintiff would not suffer harm from a stay of discovery, that if the plaintiff prevailed on the motions to dismiss "the parties would *then* meet to jointly submit a Rule 16/26 discovery order for the Court's ultimate approval" (emphasis added)); *SP Frederica, LLC v. Glynn Cty.*, Case No. 2:15-cv-73-LGW-RSB, 2015 WL 5242830 (S.D. Ga. Sept. 8, 2015) ("Additionally, [after the Court rules on the motion to dismiss,] the parties are to file a supplemental Rule 26(f) Report . . . at which time a Scheduling Order *will be* entered." (emphasis supplied)); *Brantley Cnty. Dev. Partners, LLC v. Brantley Cnty.*, Case No.

5:19-cv-109-LGW-BWC, 2020 WL 3621319, at *2 (S.D. Ga. July 2, 2020) ("Plaintiff's amendment will have no effect on the scheduling order, because no schedule exists yet.").

Obviously, this issue would have been entirely avoided if Defendant had filed a motion to dismiss, but for strategic reasons it *chose* to file an Answer with improper information that highlighted the issues of fact present in the case and a Motion for Judgment on the Pleadings that improperly attempted to argue factual disputes prior to discovery. *See* Docs. 18, 24. While Defendant forecasted for over a month its intent to seek to "stay discovery," Defendant's own delay made such a motion impossible. By filing its Motion to "stay discovery" after the Court issued the Scheduling Order establishing discovery deadlines, the motion became a motion to modify the scheduling order with a different standard than a motion to stay discovery before a scheduling order has been entered. Defendant not only cannot meet that standard but fails to even address it.

## II.    Balancing the harms tilts in favor of continuing discovery

Even if the Court concluded that Federal Rule of Civil Procedure 16(b)(4) does not apply (it does), under a "balancing of the harms" test normally employed to consider whether a stay of discovery should issue at the outset of a case (not like here, after the Court issued a Scheduling Order) requires discovery to continue without interruption. "Generally, motions to stay discovery are disfavored as they can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, Case No. 2:19-cv-50-JRH-BWC, 2019 WL 13020440, at *1 (S.D. Ga. Sept. 8, 2019) (quotation marks omitted). In deciding a motion to stay discovery, a court "must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need

for such discovery." *Id*. (quotation marks omitted).  "In this regard, the Court must take a 'preliminary peek' at the merits of a dispositive motion to see if it appears to be clearly meritorious and truly case dispositive." *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006) (quotation marks omitted).

Defendant argues that the harm balances in favor of stopping discovery because (1) it claims its motion for judgment on the pleadings will be granted either in full or in part and (2) government investigations will prevent discovery in this action.  Doc. 31.  Defendant is wrong.

As Defendant's own (improperly attached) documents show, the ICDC is in the process of closing, which means employees may soon become difficult to locate if they move to find other employments, and records may be lost as they are packed up and shipped to other ICE facilities across the country.  Doc. 24 ¶ 6 n.5.  Further, Dr. Amin intends to seek testimony from the ICE detainees that Defendant so brazenly claimed he harmed.  Those ICE detainees are currently in the United States because of a temporary halt of their deportation orders, which could be lifted at any time and without warning to the parties here.  If those detainees are deported, Dr. Amin may never be able to locate them or subpoena them for testimony.

Defendant has made a mess of the straightforward and organized Federal Rules of Civil Procedure.  This has already created unnecessary litigation expenses and delay for Dr. Amin and the Court.  There is a low "possibility that the motion will be granted and entirely eliminate the need for such discovery," and a stay would harm Dr. Amin by "creat[ing] case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems."  *Sea Island*, 2019 WL 13020440, at *1 (quotation marks omitted).

**A.  Defendant's Motion for Judgment on the Pleadings is not likely to be granted**

As explained in Dr. Amin's Response to the Motion for Judgment on the Pleadings, the Complaint adequately pleads a case for defamation and factual disputes prevent any ruling in this case as a matter of law prior to discovery.  Doc. 32.  Any argument from Defendant that its Motion for the Judgment on the Pleadings is "strong," is belied by its use of the wrong choice of law standard and application in its Motion.  *See* Doc. 32 at 5-8 (revealing Defendant's use of incorrect choice of law standards in concluding that New York, rather than Georgia, law should apply).

Defendant attempts to characterize disputed facts, which is entirely improper on a motion that challenges the sufficiency of Dr. Amin's pleadings.  But even taking Defendant's arguments as they are made and considering extraneous material that the Court should not consider as explained in Dr. Amin's Motion to Strike (Doc. 22) and Reply (Doc. 33), Defendant's arguments fail.

First, Defendant's Motion for Judgment on the Pleadings sets forth privilege arguments that are unconvincing.  The fair report privilege does not protect Defendant's statements because the statements are not a report of any legislative or judicial proceeding, court proceeding, or quasi-judicial or administrative proceeding as required by Georgia statute and case law.  Doc. 32 at 9-13.  They are also not fair and honest; indeed, the letter that Defendant purports the statements relied on ***did not even mention Dr. Amin's name***.  *Id*. at 14-17.  The "Georgia public interest privilege" Defendant seeks cannot be granted as a matter of law because it requires a showing of good faith that is generally a jury question, and every case that Defendant cites for the privilege was brought under a motion to strike pursuant to Georgia or California's anti-

SLAPP statutes, while the Eleventh Circuit has held that anti-SLAPP motions are unavailable in federal courts because they conflict with the Federal Rules of Civil Procedure. *Id*. at 20-21.

Further, whether a privilege exists is a fact question for the jury. *See id*. at 14. Even if the privileges did apply as a matter of law, the privileges are conditional rather than absolute, and Dr. Amin has sufficiently alleged "actual malice," which defeats conditional privileges. *Id*. at 17-19. Defendant's argument that actual malice does not defeat the privilege because New York's fair report privilege governs is absurd. Binding precedent requires that Georgia courts and federal courts sitting in diversity in Georgia apply the *lex loci derilicti* doctrine to determine which state's substantive law applies to Dr. Amin's defamation claims. *Id*. at 5-8. Under the *lex loci derilicti* doctrine, the law that governs the case is the law of the place where the injury was sustained, which, in this defamation case, is plainly the domicile of Dr. Amin—Georgia. *Id*. Therefore Dr. Amin's pleading of actual malice would defeat the privileges that Defendant argues apply, even if they did apply as a matter of law. (Again, they do not.)

Defendant also argues that some, but not all, of the defamatory statements are opinions or rhetoric. Doc. 24 at 23. But the statements, viewed in the context a reasonable viewer would see them, all either state or imply facts that are capable of being proved false, and therefore whether they are defamatory is a question for the jury. *See* Doc. 32 at 21-24. Further, Defendant leaves almost half of the alleged statements out of this argument because those statements are plainly factual and capable of being proved false. *Id*. at 21, 24. Thus, even if Defendant's "opinion/rhetoric" argument prevails (it should not), Defendant leaves nearly half of the defamatory statements alleged in the Complaint unchallenged on this ground. *Id*. at 21 (citing Doc. 24 at 23 n.12; Doc. 1 ¶¶ 76-80; Doc. 24-1). Thus, many statements from the broadcasts

would remain at issue and require discovery even if Defendant's Motion prevailed on this argument.

Defendant makes a disingenuous argument (in a footnote), that eliminating some of the defamatory statements from the Complaint "could substantially narrow the allegations at issue." Doc. 31 at 7 n.7.  This is absurd.  Again, Defendant *does not challenge nearly half of the statements in the Complaint* as being opinion or hyperbole.  *See* Doc. 24 at 23 n.12.  And all of the challenged statements state or imply the defamatory fact, capable of being proven false, that Dr. Amin "treated and operated on immigrant women in an abusive fashion," including by "doing unnecessary procedures" such as "unauthorized hysterectomies" with "no medical reason and without them consenting to it."  Doc. 1 ¶¶ 3, 76-80.  Whether or not Defendant's Motion prevails on this ground and phrases such as "uterus collector" remain or are removed from the Complaint, the scope of discovery will remain the same.

The cases Defendant cites are inapposite.  In *Williams*, the court granted a *consent* motion to stay discovery agreed to by all parties while a motion to dismiss that was based on five different facial challenges to the legal sufficiency of the complaint.  2021 WL 5352613, at *1-2. And in *Robinson*, the pending motions to dismiss would have eliminated two defendants from the case entirely, thereby "eliminat[ing] any need for discovery as to" those two defendants, "clearly narrowing the scope of any allowed discovery."  2020 WL 6081893, at *3.[1]  In contrast, Dr. Amin's straightforward Complaint only sets forth a single count against a single Defendant, neither of which would be eliminated even if Defendant's Motion were granted as to Defendant's opinion and hyperbole argument.  *See generally* Doc. 1.  Further, as discussed above and

---

[1] Also, as explained above, the defendants in *Williams* and *Robinson* filed their motions to stay discovery (a *consent* motion in *Williams*) at stages significantly earlier than Defendant did in this case, where the Court has already issued a Scheduling Order (Doc. 28).

explained in Dr. Amin's Response, the statements can *all* "reasonably be interpreted as stating or implying defamatory facts . . . capable of being proved false," and therefore the Motion is not likely to prevail.  Doc. 32 at 21-22 (quotation marks omitted).  A "preliminary peek" at the Motion for Judgment on the Pleadings therefore demonstrates that the motion is not likely to be granted and therefore the stay of discovery should be denied.

### B. Dr. Amin's ability to obtain discovery is at risk with more delay and investigations are not dispositive of any issue

Because the Scheduling Order governs discovery deadlines and moving the deadlines requires Defendant to prove that it cannot meet those deadlines despite its diligence, the Motion to Modify the Scheduling Order should be denied.  But even under the standard for a motion to stay discovery where there is no scheduling order in place, the Court should find that the low likelihood of success of the Motion for Judgment on the Pleadings is outbalanced by the Court's responsibility to expedite discovery and prevent case management problems and unnecessary litigation expense.  *See Sea Island*, 2019 WL 13020440, at *1.

Dr. Amin is entitled to discovery under the Federal Rules of Civil Procedure on his timely brought claim against Defendant.  *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."); Fed. R. Civ. P. 1 ("[These rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

While it is true that, "in all cases where a stay is sought," some "memories fade, witnesses relocate, and documents are misplaced," *Brantley*, 2020 WL 3621319, at *3, these concerns are exacerbated in this case.  Patients who were treated by Dr. Amin, and some whose statements Defendant purports to rely upon, are immigrants whose right to remain in the United

14

States is contested.  Accordingly, their relocation—for example by deportation or avoiding strangers who seek them out—is more likely than it is with a typical witness.  The same is true of documents at issue here, as papers present at the ICDC may be scattered to other ICE detention centers or storage facilities as ICDC closes.  Expeditiousness and efficiency for the Court and all involved are rights for every party to a federal lawsuit, and circumstances here demonstrate why the Federal Rules of Civil Procedure and attendant case law aim to ensure those rights.

Defendant argues that "discovery is likely to be complex."  Doc. 31 at 7.  Complexity should not be any reason to delay further; indeed, the opposite is true.  But this is a straightforward defamation case.  Defendant relies on a diametrically opposed case to attempt to support its argument.  Defendant cites *SP Frederica, LLC v. Glynn Cnty.*, 2015 WL 5242830, at *3, wherein the party seeking a discovery stay—there, also, *before* a scheduling order had been entered—had received "approximately 950 pages of initial discovery requests that Plaintiffs served on Defendants with the original complaint."  Here, no such thing exists.  Indeed, the parties exchanged initial disclosures totaling less 15 pages in total between them.

Finally, Defendant argues that because discovery was stayed in the *Oldaker* case, it should be stayed here.  Doc. 31 at 8.  As an initial matter, Dr. Amin did not agree to a stay in *Oldaker*, but rather took "no position" on the request to stay, consistent with his sidelined role in the litigation in the first place.  *See Oldaker v. Johnson*, Case No. 7:20-CV-224-WLS, Doc. 168 (Order Granting Motion to Stay), at *1 (M.D. Ga. Sept. 17, 2021).  Further, Dr. Amin is one of several dozen defendants, including multiple public officials and government agencies, whose direct actions are under scrutiny in ongoing government investigations.  If discovery had proceeded in that case, those government agencies and officials may have been subject to dueling discovery—hearings before Congress and depositions the court case.  Defendant here—

15

NBCUniversal, not the government—is not involved in any other litigation or investigations relating to the issues relevant to this case.

Defendant argues that it would be "highly prejudicial" to proceed with discovery, as investigations into the facts stated by the defamatory statements are still pending.  Doc. 31 at 8.  But there is no prejudice to Defendant if discovery in this case proceeds while the government investigation continues.  Defendant is not participating in those investigations (and does not claim to be doing so).  If Defendant's gripe is that the discovery period in this case may expire before the government investigations are completed, and that would somehow deprive Defendant of that information, an extension of discovery may be sought once Defendant can demonstrate that "the schedule cannot be met despite the diligence of the party seeking the extension." *Oravec*, 527 F.3d at 1231 (quotation marks omitted).  But this is rank speculation at this point and should not delay the discovery schedule to which Defendant has already agreed.

Defendant also argues that it is "unlikely" that the parties will be able to obtain evidence because of the ongoing government investigations.  Doc. 31 at 8.  Defendant seems to suggest this is true because certain third parties—like ICE and the company that operated the ICDC would not produce information to Congress without a subpoena.  *Id*. at 10.  This is perplexing.  These third parties provided information in response to a congressional subpoena, and Defendant has offered no explanation as to why those third parties would not respond to a subpoena issued in this case.  To the contrary, it simply appears those entities would not voluntarily produce information to Congress, just as Dr. Amin would not expect them to voluntarily produce documents (without a subpoena or other discovery request) in this case.  At any rate, again, this is an issue the parties should address when it actually prevents a party from meeting the schedule despite its diligence.

Defendant also seems to suggest that the outcome of those investigation is dispositive of the issues in this case.  Not so.  While the findings of the investigation may be admissible evidence on the issue of truth or falsity, they are not conclusive.  Dr. Amin is entitled to his own deposition of witnesses so that his counsel can conduct thorough and sifting cross-examinations under the rules of evidence and procedure applicable in this Court.  Dr. Amin is not limited to the findings of politicians who are not attorneys and who may have their own personal or political agendas driving their questions and goals.

## CONCLUSION

Defendant has not met the standard of showing "good cause" to alter the Scheduling Order.  Further, the balance of harms weighs in favor of continuing discovery because Defendant's dispositive motion is likely to be denied and there is a risk that Dr. Amin will lose access to discovery if he is forced to wait.  The Motion should be denied.

Respectfully submitted this 4th day of February 2022.

/s/ Stacey Godfrey Evans
Stacey Godfrey Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com
Tiffany N. Watkins
Georgia Bar No. 228805
twatkins@staceyevanslaw.com

STACEY EVANS LAW
4200 Northside Parkway NW
Bldg One; Suite 200
Atlanta, GA 30327
(770) 779-9602 (phone)
(404) 393-2828 (fax)

*Counsel for Plaintiff*

/s/ Scott R. Grubman
Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com

CHILIVIS GRUBMAN
DALBEY & WARNER LLP
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.

This 4th day of February 2022.

<u>**/s/ Stacey Godfrey Evans**</u>
Stacey Godfrey Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com

*Counsel for Plaintiff*