UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

DR. MAHENDRA AMIN, M.D.,

    Plaintiff,

v.

NBCUNIVERSAL MEDIA, LLC,

    Defendant.

Case No. 5:21-cv-00056-LGW-BWC

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

**PRELIMINARY STATEMENT**

NBCU's Motion for Judgment on the Pleadings (the "Motion")[1] seeks dismissal of all challenged statements from the News Reports as privileged under both New York's and Georgia's fair report and related privileges. The News Reports recount grave allegations against Dr. Amin in the Whistleblower Complaint, which led to immediate calls from members of Congress, a Georgia state representative, and others to fully investigate the charges, and the government announcing within 24 hours that an investigation of the Whistleblower Complaint was underway. Under the privileges enacted by legislatures across the country, including Georgia and New York, press reports on such allegations and the government's response are fully privileged.

In opposition to this Motion, Dr. Amin argues that no fair report privilege attaches unless or until a government agency formally issues substantive findings on a complaint filed with the agency. Opp. at 9-10. Dr. Amin's argument finds no support in logic or the law. The fair report privilege allows the press to shine light on government activity, including all stages of investigations. It is not limited to substantive pronouncements from the government. While Dr.

---

[1] Unless otherwise noted, this Reply uses the same abbreviations and capitalized terms as those set forth in the Motion.

Amin may wish this were the standard to which news organizations must conform, legislatures in Georgia and New York have rightly recognized that informing the public about government activity is of the utmost importance and, accordingly, have enacted broad privileges to protect the press in such circumstances.

This case exemplifies why these privileges exist. The public had a right to know that the government was looking into claims that Dr. Amin was performing unnecessary and unconsented-to gynecological procedures on detainees. If NBCU were required to wait for the government's conclusions or conduct its own government-style investigation, the public would *still* be in the dark, as the government's investigations into Dr. Amin remain ongoing over one year after the Whistleblower Complaint was filed. Dr. Amin's efforts to punish NBCU for its accurate and fair reporting on an issue of immense public concern is meritless, and his action should be dismissed.

## ARGUMENT

### I.  Regardless of Which State Law Applies, NBCU's News Reports Are Privileged

Dr. Amin first argues that Georgia privilege law must apply to this case under the *lex loci delicti* choice-of-law rule. For the reasons stated in NBCU's Motion and as enumerated below, dismissal is appropriate regardless of whether New York or Georgia privilege applies.

### a.  *New York's Fair Report Privilege Should Still Apply Under A Lex Loci Delicti Analysis*

Even if this Court applies the *lex loci* delicti doctrine here, New York's absolute fair report privilege should govern its adjudication of this Motion. *See Zheng v. Yoan Wah Rental*, 1999 WL 722628, at *2 (Conn. Sup. Ct. Aug. 26, 1999) (explaining "there are circumstances in which strict application of *lex loci delicti* rule frustrates the legitimate expectations of the parties" and applying New York law because doing otherwise would "violate an important policy of the state of New

2

York").[2]  A *lex loci* analysis, as plaintiff acknowledges, focuses on where the injury at issue occurred.  Opp. at 6 (citing *Risdon Enters., Inc. v. Colemill Enters., Inc.*, 172 Ga. App. 902, 903 (Ga. Ct. App. 1984)).  Yet Dr. Amin ignores that when a defendant asserts a fair report privilege and it is denied, the injured party is the newsgathering entity that holds the privilege.  "[T]he fair reporting privilege is meant to protect speakers, not provide a remedy to plaintiffs."  *Wilkow v. Forbes, Inc.,* 2000 WL 631344, at *6 (N.D. Ill. 2000), *aff'd,* 241 F.3d 552 (7th Cir. 2001); *see also Gubarev v. Buzzfeed, Inc.*, 2018 U.S. Dist. LEXIS 97246, at *15 (S.D. Fla. June 5, 2018) ("[T]he policy behind the privilege is to protect speakers."); *Miller v. Gizmodo Media Grp.*, 2019 WL 1790248, at *6 (S.D. Fla. Apr. 24, 2019), *aff'd*, 994 F.3d 1328 (11th Cir. 2021).  Under Dr. Amin's approach, New York's Section 74 would be rendered largely void outside the state's boundaries and would leave journalists subject to a patchwork of regulations, impeding their ability to report the news.  Applying New York's privilege, even when applying Georgia defamation law, best conforms with public policy, and under that absolute privilege, Dr. Amin's case must be dismissed.

### b. *The News Reports Are Also Privileged Under Georgia Law*

In addition to being absolutely privileged under New York law, the News Reports are privileged under Georgia law, specifically the privileges afforded by O.C.G.A. § 51-5-7(4)-(6). *See* Mot. at 12-19.[3]

---

[2] Even in *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 812 (Ga. 2005)—a case relied upon by Dr. Amin—the court explained that "courts of this State have the power to ameliorate the sometimes seeming harshness of [*lex loci delicti*] when public policy considerations dictate that they do so."

[3] In his Opposition, Dr. Amin incorrectly states that NBCU seeks to dispose of "certain, but not all" statements on privilege grounds.  Opp. at 8.  NBCU seeks to dismiss the entire action on privilege grounds.  *See* Ex. 1.  Dr. Amin also asserts that Exhibit 1 "exceed[s] the 26-page limit for briefs."  Opp. at 21, n.11.  Exhibit 1 is a chart of the challenged statements, their context, and the applicable defenses and is provided for the Court's ease of reference. But, if the Court finds that this violates Local Rule 7.1, it can be disregarded with no impact to NBCU's Motion.

3

### 1. O.C.G.A. § 51-5-7(5)-(6) Provide Privilege for Reports on Government Action

As set forth in NBCU's Motion, O.C.G.A. § 51-5-7 creates numerous statutory privileges that shield reporting from defamation liability. These include O.C.G.A. § 51-5-7(5)-(6), which shield "fair and honest reports of the proceedings of legislative bodies" and "fair and honest reports of court proceedings" and have been interpreted to protect reports of administrative proceedings by government agencies. *See Lawton v. Georgia Television Co.*, 216 Ga. App. 768, 771 (Ga. Ct. App. 1995). These privileges unquestionably protect NBCU's reporting on the Whistleblower Complaint and similar allegations against Dr. Amin, which were at the time of the News Reports, and remain today, the subject of government investigations.[4]

In his Opposition, Dr. Amin incorrectly argues that the privileges in O.C.G.A § 51-5-7(5)-(6) are inapplicable to this action. Opp. at 8-17. First, he asserts that the News Reports were not reporting on a government "proceeding" because the Whistleblower Complaint was merely a statement made *to* an agency and, therefore, did not involve administrative action. Opp. at 9.

Dr. Amin's contention misses the point. The government *did* in fact act immediately on the Whistleblower Complaint. The Whistleblower Complaint was filed on September 14, 2020. *See* Ex. A. By September 15, 2020—the same date as the first challenged News Reports—over 170 members of Congress had called for an investigation of the Whistleblower Complaint's allegations and ICE had confirmed that the government was taking action, including noting that the accusations "will be investigated by an independent body." *See* Mot. at 4; Ex. G. By

---

[4] Dr. Amin cites to *Heard v. Neighbor Newspapers, Inc.*, 259 Ga. 458, 460 (Ga. 1989) for the proposition that the privileges relied upon by NBCU should not apply to reports about investigations. But he does not address the privileges that apply in this case. *Heard* involves a different privilege under O.C.G.A. § 51-5-7(7), which protects "reports of information received from any arresting officer or police authorities." While the *Heard* court held that this privilege did not apply to a non-police investigator, the privileges at issue in this case have routinely been applied to reports about government investigations. *See Morton v. Stewart*, 153 Ga. App. 636, 639 (Ga. Ct. App. 1980); *Godfrey v. Cobb Cty.*, 2009 WL 2776599 (Ga. Sup. Ct. July 10, 2009).

4

September 16, 2020, DHS announced that it was sending a team to investigate. *See* Ex. E(i) at 14. That investigation remains ongoing to this day. And just last month, Congress reported preliminary findings from its own investigation, including that Dr. Amin "did not meet acceptable standards of care."[5] The News Reports were not simply reporting on the Whistleblower Complaint as a "letter" to the government but as the foundation for ongoing government action.

As the court recognized in *Morton*, reporting on the conduct of a government entity tasked with the power to "investigate" is privileged. *See* 153 Ga. App. at 639. And it is impossible to speak about the opening of government investigations without discussing what the government is investigating. In *White v. Fraternal Order of Police*, 909 F.2d 512, 527 (D.C. Cir. 1990), for example, a police officer sued the *Washington Post* after it published articles about letters sent by the Fraternal Order of Police to the Police Chief, which reported on the officer's drug testing irregularities and sparked a government investigation. There, like here, the plaintiff argued that the *Washington Post's* reporting was not protected by the fair report privilege because it discussed allegations in letters, not the conclusions of an investigation. The court disagreed, holding that "it would be untenable to make a distinction between a report about an official proceeding and that which, for all purposes, is the subject matter of the proceeding." The logic of *White* applies equally here. The government was at the time of the News Reports, and is still today, investigating allegations about Dr. Amin. NBCU could not report on these government actions without also discussing the underlying allegations.

Dr. Amin next argues that even if there were government proceedings when the News Reports were broadcast, the government had not yet undertaken any substantive work on these investigations and "until the government actually does the work, there is no work to report,"

---

[5] *See* Letter to Secretary Alejandro Mayorkas, available at: Letter-DHS ICDC Update.pdf (house.gov).

5

therefore O.C.G.A. § 51-5-7(5)-(6) cannot apply. Opp. at 13. Dr. Amin cites no precedent for this temporal restriction, which would, in effect, prevent the media from reporting on government investigations until results are released to the public. The law imposes no such limitation.

Indeed, courts across the country recognize that reports on nascent and non-public government proceedings are privileged. *See, e.g.*, *Medico v. Time, Inc.*, 643 F.2d 134, 144 (3d Cir. 1981) (applying Pennsylvania fair report privilege to non-public criminal investigatory records); *White*, 909 F.2d at 527 (applying common law fair report privilege to articles discussing ongoing government investigation); *Ortega v. Post-Newsweek Stations Florida, Inc.*, 510 So.2d 972, 976 (Fla. 3d DCA 1987) (applying Florida fair report privilege to report on non-public testimony from Florida Department of Law Enforcement investigation into organized crime); *Freeze Right Refrig. & A.C. Servs. v. City of N.Y.*, 101 A.D.2d 175, 182 (N.Y. 1st Dep't 1984) (applying New York fair report privilege and holding, "[e]ven the announcement of an investigation by a public agency, made before the formal investigation has begun is protected").[6] Accordingly, the News Reports unquestionably reported on a government proceeding for purposes of the fair report privilege.

### 2. The News Reports Are Fair, Honest, and Accurate

Dr. Amin further asserts that even if the News Reports reported on government proceedings, they did not do so in a "fair and honest" manner. But the News Reports directly quote from or closely paraphrase the allegations in the Whistleblower Complaint that form the basis of the government's investigation and therefore they easily meet the test. *See* Mot. at 14.

Dr. Amin's arguments to the contrary do not change that conclusion. *First*, it is irrelevant

---

[6] *Cf. Shiver v. Valdosta Press*, 82 Ga. App. 406, 413 (Ga. Ct. App. 1950) (report of lawsuit filed in clerk's office but not yet served on defendant still subject to fair report privilege because it "became a matter of public record the moment it was marked filed in the clerk's office").

6

that the News Reports named Dr. Amin whereas the Whistleblower Complaint did not. Opp. at 14.[7] Dr. Amin does not dispute that the Whistleblower Complaint's allegations refer to him, and he cannot reasonably deny that he was readily identifiable on the face of the Whistleblower Complaint. Indeed, the Whistleblower Complaint referenced a gynecologist who treated women at ICDC, a detention facility in Irwin County, Georgia, Ex. A at 18, a location where Dr. Amin admits that "[u]ntil last year, [he] was the sole OB/GYN physician." Compl. ¶ 36.[8] Further, he cannot deny that he is in fact the subject of the government's ongoing investigations discussed in the News Reports.

*Second*, Dr. Amin's contention that the News Reports did not address unrelated allegations in the Whistleblower Complaint about institutional failures at ICDC, *see* Opp. at 15, does not render the News Reports' recounting of the allegations against Dr. Amin or the government investigations that immediately followed unfair or dishonest. "Fair and honest" reports only require that a media organization convey the "gist" of the allegations at issue—here, the allegations of unnecessary or unconsented-to medical treatments—without misstating, distorting, or arranging the facts so as to convey a false or defamatory meaning. *See Morton*, 153 Ga. App. at 641; *Lawton*, 216 Ga. App. at 769-72 (news report on investigative findings deemed "fair and honest" even though plaintiff alleged report omitted relevant, exculpatory material present in the agency's findings). The material from the Whistleblower Complaint that Dr. Amin claims was omitted would not change the "sting" of what was reported about him.

*Third*, Dr. Amin asserts that the News Reports are not "fair and honest" because a few of

---

[7] The September 15, 2020 episode of "All In With Chris Hayes" does not identify Dr. Amin by name. *See* Ex. C.

[8] Indeed, as indicated by the numerous News Reports that identified Dr. Amin by name prior to NBCU's first broadcast, *see* Mot. at 5, the fact that the Whistleblower Complaint discussed Dr. Amin was evident to anyone familiar with him or ICDC.

7

the statements in the News Reports—specifically that Dr. Amin performed procedures that were "unauthorized," "unnecessary," and "without consent"—are "more conclusive" than the allegations in the Whistleblower Complaint. Opp. at 15-16. But the Whistleblower Complaint alleged, among other things, that women believed Dr. Amin was "experimenting with [their] bodies," he took out the wrong ovary on one woman, and detainees did not "really, totally all the way understand" what was going to happen to them because that Dr. Amin's office did not "properly explain" procedures before they occurred. Ex. A at 19-20. As a matter of law, the News Reports fairly reflected the "gist" of these allegations. *See Lawton*, 216 Ga. App. at 771 ("It is not necessary that the report be verbatim, and it may consist of an abridged or condensed statement, provided such statement is a fair one.").

Accordingly, the News Reports fairly and honestly convey the gist or sting of the allegations against Dr. Amin, and all of the challenged statements are therefore privileged under O.C.G.A. § 51-5-7(5)-(6).

### 3. The News Reports Are Also Privileged Under O.C.G.A. § 51-5-7(4)

In addition to being privileged under Georgia's traditional fair report privilege, the News Reports are also shielded by O.C.G.A. § 51-5-7(4), which protects "statements made in good faith as part of an act in furtherance of the right of free speech . . . in connection with an issue of public interest or concern." Dr. Amin puts forth no substantive argument in opposition to NBCU's assertion of this privilege. *See* Opp. at 20-21.[9]  And for good reason.

---

[9] Dr. Amin merely asserts that the § 51-5-7(4) privilege has only been applied in cases under Georgia's anti-SLAPP statute, which is inapplicable in federal court, and therefore should not apply here. *See* Opp. at 20-21. Dr. Amin misconstrues the law. Georgia's anti-SLAPP statute provides that litigation arising from "an act in furtherance of [a] person's or entity's right of petition or free speech" is subject to Georgia's special motion to strike procedure, which requires a non-moving party to show that there is a probability it will prevail on the claim. *See* O.C.G.A. § 9-11-11.1(b)(1). Because O.C.G.A. § 51-5-7(4) separately provides that "act[s] in furtherance of the right of free speech or the right to petition" are privileged when made in good faith, speech that is subject to the anti-SLAPP statute's protections is also often privileged under O.C.G.A. § 51-5-7(4). While Georgia's motion to strike procedure may not be available in Eleventh Circuit courts, that has no bearing on whether the separate privilege codified in O.C.G.A. §

The definition of an "act in furtherance of the right of free speech" for purposes of § 51-5-7(4) includes, among other things, "[a]ny written or oral statement . . . made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." *See* O.C.G.A. § 9-11-11.1(c)(2). Directly contradicting Dr. Amin's argument that all § 51-5-7 privileges must be "construed strictly," Opp. at 9-10, Georgia courts have recognized that this definition is "very expansive," *Metzler v. Rowell*, 248 Ga. App. 596, 598 (Ga. Ct. App. 2001), and includes even statements made before a government investigation starts, *Boxcar Dev. Corp. v. New World Commcn's of Atlanta, Inc.*, 2008 WL 1943313, at *3-4 (Ga. Sup. Ct. May 1, 2008); *see also Berryhill v. Ga. Cmty. Support & Sols., Inc.*, 281 Ga. 439, 442 (Ga. 2006) (explaining that there must be "an actual official proceeding *either before or after* the statements in question") (emphasis added); *Bodana v. Times Journal, Inc.*, 2012 WL 2375267 (Ga. Sup. Ct. Feb. 27, 2012) (explaining that statement made "in connection with an issue under consideration" under O.C.G.A. § 51-5-7(4) is "'exceptionally broad'"). Dr. Amin does not deny that the allegations against him were "under consideration" by the government when the News Reports were broadcast. *See* Opp. at 20-21. ICE said as much, issuing two separate statements on September 15, 2020 and noting that the allegations were brought to the Inspector General, Ex. B(i) at 29,[10] and that the matter was "pending before the OIG," Ex. G.

---

51-5-7(4) applies in federal court. It does. This is a substantive privilege provided to litigants, no different than the other privileges contained in O.C.G.A. § 51-5-7, and it therefore must apply in federal court.

[10] Dr. Amin argues that the Court should not consider any of the documents attached to or referenced in NBCU's Answer. *See* Opp. at 4-5. As explained more fully in NBCU's Opposition to Dr. Amin's Motion to Strike, *see* ECF No. 25, these documents, which include full transcripts of the News Reports, the Whistleblower Complaint, and a statement from ICE, are all referenced in and integral to Dr. Amin's Complaint and must be considered by the Court on this Motion. *See* Opp. to Mot. to Strike at 5-8; *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002). Further, the Court can take judicial notice of other statements from government officials, *see* Opp. to Mot. to Strike at 9, and articles published by news organizations, which are included not for their truth but to show the widespread and continuing nature of the publications related to the Whistleblower Complaint and Dr. Amin, *id.* at 9, n.4.

9

Further, O.C.G.A. § 9-11-11.1(c)(4) is even broader than section (c)(2), providing a catch-all provision for "any other conduct in furtherance of the exercise of the constitutional right . . . of free speech in connection with a public issue or an issue of public concern." Dr. Amin admits that the allegations against him are of "public concern." *See* Opp. at 13 ("Certainly, one may find the [Whistleblower Complaint] itself newsworthy.").

Thus, regardless of whether there was an investigation ongoing at the time the News Reports were broadcast—and there clearly was—the News Reports are still privileged under O.C.G.A. § 51-5-7(4).

## II.   Dr. Amin's Allegations of Actual Malice Are Entirely Conclusory

Dr. Amin next asserts that even if the News Reports are privileged under O.C.G.A. § 51-5-7, the privilege is overcome by his allegations of actual malice. Opp. at 17-20.

As an initial matter, Dr. Amin claims that actual malice is a jury question. *See* Opp. at 17. But the cases that Dr. Amin relies upon largely pre-date the U.S. Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).[11] Since these decisions, courts in the Eleventh Circuit have routinely dismissed cases on upfront motions where, as here, plaintiffs do little more than plead conclusory statements in support of their claims. *See* Mot. at 20.

Dr. Amin further claims that his allegation that NBCU did not fully investigate or conduct "independent verifications" of the allegations in the Whistleblower Complaint is sufficient for a finding of actual malice. Opp. at 19-20. His argument fails first because independent verification is not required for the New York or Georgia fair report and public interest privileges to apply, *see*

---

[11] *See Hammer v. Slater*, 20 F.3d 1137, 1143 (11th Cir. 1994); *AirTran Airlines, Inc. v. Plain Dealer Publ'g Co.*, 66 F. Supp. 2d 1355, 1365-66 (N.D. Ga. 1999). The only other case that Dr. Amin cites, *StopLoss Specialists LLC v. VeriClaim, Inc.*, 304 F. Supp. 3d 1334, 1353-54 (N.D. Ga. 2018), does not discuss the pleading standard on upfront motions.

*Thomas v. City of N.Y.*, 2018 WL 5791965, at *9 (E.D.N.Y. Nov. 5, 2018) (Section 74 "is intended to be a 'safe harbor' relieving a newspaper of any duty to investigate") (internal quotations omitted); *McCracken v. Gainesville Trib., Inc.*, 146 Ga. App. 274, 276 (Ga. Ct. App. 1978) ("We find no indication that the republisher has any burden except fairness, honesty, and accuracy."), and second because NBCU's extensive investigation is apparent from the very face of the News Reports.  Prior to broadcast, NBCU's reporters spoke with the whistleblower, Dawn Wooten, to confirm the allegations in the Whistleblower Complaint, further corroborated the claims with numerous ICDC detainees and their lawyers, reviewed medical records, and sought comment from Dr. Amin, ICE, and LaSalle Corrections (the company that ran ICDC).  *See, e.g.*, Ex. B at 28-29; Ex. D at 13.  When comments were received, the News Reports included them.  *See* Ex. D at 13; Ex. E at 7; Ex. F at 14.  Dr. Amin has failed to plead and cannot establish actual malice on these facts.  *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 704 (11th Cir. 2016) (affirming motion to dismiss when "the article indicates that the reporters spoke with, consulted, or otherwise reached out to [numerous sources]. The complaint fails to explain why none of that qualified as 'real outreach' or due diligence.").

In addition, Dr. Amin contends that actual malice is sufficiently alleged because, prior to the News Reports, ICE released a statement that contradicted NBCU's reporting.  Opp. at 18.  As explained in NBCU's Motion, however, Dr. Amin repeatedly and seriously mischaracterized the substance of ICE's statement, *see* Mot. at 22-23, and continues to do so in his Opposition, *see* Opp. at 16, 18 (contending the statement "denies all allegations in the [Whistleblower Complaint] regarding any medical procedures" and "specifically states that only two detainees have undergone hysterectomies since 2018").  The statement that ICE actually released does not contradict the information in the News Reports.  *See* Mot. at 22-23.

11

The remaining allegations of actual malice are far too conclusory to meet the pleading standard. Dr. Amin asserts that it is "beyond reasonable belief that detainees in an ICE facility . . . could undergo surprise hysterectomies" because there are pre-approval requirements for hysterectomies. Opp. at 18. But this mischaracterizes the substance of the News Reports, which contain allegations far more nuanced than "surprise hysterectomies." And while Dr. Amin claims that NBCU was motivated by ratings, hoping to earn profit, *see* Opp. at 3, 18, these are motives attributable to *every* news organization and have no bearing on whether NBCU knew that its reporting was false, *see, e.g.*, *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("If a profit motive could somehow strip communications of the otherwise available constitutional protection, our cases from *New York Times* to *Hustler Magazine* would be little more than empty vessels.").

Accordingly, Dr. Amin falls far short of pleading actual malice with the requisite specificity, and NBCU's privilege under O.C.G.A. § 51-5-7 cannot be defeated.[12]

### III. Many of the Challenged Statements Are Non-Actionable Because they Cannot Be Proven True or False

Finally, Dr. Amin claims that numerous challenged statements, which express detainees' subjective opinions or that are clear rhetorical hyperbole, imply defamatory facts and are still actionable. *See* Opp. at 21-24.

Notably, Dr. Amin does not dispute that statements that women were "afraid" of him or

---

[12] Dr. Amin argues, "[i]f the Court determines that [his] complaint did not adequately allege actual malice . . . [he] should be granted leave to amend." Opp. at 19. But courts in this Circuit have frequently recognized that simply including "one sentence in [a] brief in opposition to the motion to dismiss requesting leave to amend" is insufficient. *Cliche v. Receivables Performance Mgm't., LLC*, 2011 WL 13318721, at *2 (N.D. Ga. Jan. 13, 2011). Dr. Amin does not provide the substance of any potential amendment or any reason why his amendment could cure the pleading deficiencies, and this Court therefore should not permit Dr. Amin to amend his Complaint. *See Davidson v. Maraj*, 609 F. App'x 994, 1002 (11th Cir. 2015) ("It has long been established in this Circuit that a district court does not abuse its discretion by denying a general and cursory request for leave to amend contained in an opposition brief.").

12

that he was "overly harsh" are opinions of the detainees that cannot be proven true or false. Mot. at 24. Similarly, Dr. Amin does not contest that the statement that he "was perhaps doing very unnecessary procedures and not what you would expect in a short-term detention center" is based on the disclosed and undisputed fact that women were getting more gynecological care than care for chronic conditions like diabetes. Mot. at 25. And the statement that a woman "felt pressured into a full abdominal hysterectomy" is also an entirely subjective inquiry. *See Cottrell v. Smith*, 299 Ga. 517, 523 ("[A] statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false."). Accordingly, these statements are non-actionable.

Finally, while Dr. Amin argues that hyperbolic statements, like "uterus collector" imply "the fact of unnecessary hysterectomies," *see* Opp. at 22, these statements are clear hyperbole based on the allegations that Dr. Amin performed myriad unnecessary gynecological procedures on ICDC detainees. While Dr. Amin argues that he performed only two full hysterectomies on these women, he provides no specific factual averments contesting the broader point—that he performed unwanted gynecological procedures. This omission is not surprising given the recent findings, reported by Congress, that Dr. Amin "routinely took patients to the operating room for a D&C instead of performing an in office endometrial biopsy," he "surgically removed a number of normal, functional ovarian cysts when the recommended initial therapy is to observe," and he performed "the same surgery – D&C, laparoscopy (LSC) – on many patients no matter what their condition was," even though "LSC was often not indicated at all."[13] Thus, because the statements that Dr. Amin challenges contain "loose, figurative" language and because he does not contest the true facts on which they are based, these statements must be dismissed from this action.

---

[13] *See supra*, n.5.

## **CONCLUSION**

NBCU reported on allegations in a protected Whistleblower Complaint on which the government was acting. For the foregoing reasons, and those in NBCU's Motion for Judgment on the Pleadings, NBCU respectfully requests that the Court dismiss the Complaint in its entirety with prejudice and for further relief as is just and proper.

Dated: February 7, 2022

Respectfully submitted,

| | |
|---|---|
| *s/ Elizabeth A. McNamara* | *s/ Cynthia L. Counts* |
| Elizabeth A. McNamara | Cynthia L. Counts |
| (admitted *pro hac vice*) | Georgia Bar No. 190280 |
| Amanda B. Levine | FISHERBROYLES, LLP |
| (admitted *pro hac vice*) | 945 East Paces Ferry Rd. NE, Suite 2000 |
| DAVIS WRIGHT TREMAINE LLP | Atlanta, GA 30326 |
| 1251 Avenue of the Americas, 21st Floor | (404) 550-6233 |
| New York, NY 10020-1104 | cynthia.counts@fisherbroyles.com |
| Tel: (212) 489-8230 | |
| lizmcnamara@dwt.com | |
| amandalevine@dwt.com | |
| | *Attorneys for Defendant* |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 7th day of February, 2022, a true and correct copy of the foregoing document was served upon the following via the Court's electronic filing system:

Stacey Godfrey Evans
sevans@staceyevanlaw.com
Tiffany N. Watkins
twatkins@staceyevanslaw.com
Scott R. Grubman
sgrubman@cglawfirm.com

*Cynthia L. Counts*
Cynthia L. Counts
Georgia Bar No. 190280
FISHERBROYLES , LLP
945 East Paces Ferry Rd. NE, Suite 2000
Atlanta, GA 30326
Telephone: (404) 550-6233
cynthia.counts@fisherbroyles.com
*Attorneys for Defendant*