## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

DR. MAHENDRA AMIN, M.D.,

        Plaintiff,

    v.

NBCUNIVERSAL MEDIA, LLC,

        Defendant.

Case No. 5:21-cv-00056-LGW-BWC

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

## PRELIMINARY STATEMENT

In its Motion for Judgment on the Pleadings (the "Motion"), NBCU demonstrated that the challenged News Reports are privileged under Georgia's overlapping fair report and public interest privileges, as they reported on allegations of public concern under immediate scrutiny by the federal government. In his Opposition, Dr. Amin does not contest that the government opened an investigation into the allegations in the Whistleblower Complaint. Nor does he argue that the News Reports did not involve a matter of immense public concern—the potential mistreatment of immigrant detainees by a government-contracted gynecologist. Instead, in an unfounded attempt to argue NBCU published the News Reports with actual malice, Dr. Amin resorts to misrepresenting the record, the governing legal authorities, and his own FAC.

A simple review of the News Reports, which is undeniably appropriate in considering a motion for judgment on the pleadings, shows that, far from knowingly publishing false information or doing so with serious doubts as to truth, NBCU published its broadcasts with the utmost care. NBCU made clear that the allegations against Dr. Amin were simply *allegations* and had not yet been fully investigated by the government; it spoke with the Whistleblower as well as third parties who corroborated the allegations in the Whistleblower Complaint; it reviewed medical records

from detainees; it relied on other news agencies reporting the same information; and it fully reported Dr. Amin's and the government's responses to the allegations. Under Eleventh Circuit law, this conduct does not rise to the level of actual malice as a matter of law. Accordingly, the FAC should be dismissed with prejudice.

## ARGUMENT

### I. The Challenged News Reports Are Privileged Under O.C.G.A. § 51-5-7(4)–(6)

As explained in NBCU's Motion, on September 14, 2020, Dawn Wooten and Project South filed the Whistleblower Complaint. Mot. at 3. The government immediately released statements making clear that it was aware of the allegations in the Whistleblower Complaint and that a formal investigation would be opened. *Id.* at 4. Days later, the government confirmed that a formal investigation had, in fact, been opened. *Id.* Throughout this time, NBCU reported on the Whistleblower Complaint and the government's response. Because it is undisputed that the government took action on the Whistleblower Complaint, regardless of when the government's investigation formally began, the News Reports are privileged under O.C.G.A. § 51-5-7(4)–(6).

#### A. The O.C.G.A. § 51-5-7(4) Privilege Does Not Require An Ongoing Investigation

Dr. Amin spends much of his Opposition arguing that the "fair report privilege" cannot apply to this case because there was no government investigation until October 2020. *See* Opp. at 4-6. But, as NBCU explained in its Motion, O.C.G.A. § 51-5-7(4) creates a conditional privilege for reporting that occurs even before the formal initiation of a government investigation. *See* Mot. at 7-9. Under the definition in O.C.G.A. § 9-11-11.1(c)(2), which is incorporated into O.C.G.A. § 51-5-7(4), the conditional privilege applies to statements "made in connection with an issue

2

*under consideration or review* by a legislative, executive, or judicial body."[1]  Georgia courts have

recognized that this definition is "very expansive," *Metzler v. Rowell*, 248 Ga. App. 596, 598 (Ga.

Ct. App. 2001), and includes statements made before a formal investigation begins, *Boxcar Dev.*

*Corp. v. New World Commcn's of Atlanta, Inc.*, 2008 WL 1943313, at *3-4 (Ga. Sup. Ct. May 1,

2008); *Berryhill v. Ga. Cmty. Support & Sols., Inc.*, 281 Ga. 439, 442 (Ga. 2006) (there must be

"an actual official proceeding *either before or after* the statements in question") (emphasis added).[2]

Here, there is no doubt the allegations in the Whistleblower Complaint were immediately "under

consideration" by the government.  Indeed, the day after the Whistleblower Complaint was filed,

ICE and Congress quickly issued statements about its claims, making clear that the government

would focus on them. Mot. at 3.  In addition, O.C.G.A. § 9-11-11.1(c)(3) protects statements made

in "a public forum in connection with an issue of public interest" and § 9-11-11.1(c)(4) protects

statements "in furtherance of the exercise of the constitutional right of . . . free speech in connection

with a public issue."  Thus, even if there had been no government investigation, the News Reports

discussing the Whistleblower Complaint's allegations of a gynecologist's mistreatment of ICE

detainees unquestionably fall within these provisions as well.

Dr. Amin does not contest the merits of NBCU's argument.  Instead, he merely claims that

"no Georgia court has substantively applied the public interest privilege separate from an anti-

SLAPP motion."  Opp. at 9.  But NBCU cited at least two cases that applied the privilege

independent of an anti-SLAPP motion—a fact that Dr. Amin undoubtedly knows, since he

attempts to distinguish those cases a mere two pages later. *Id.* at 11 (citing to *Godfrey v. Cobb*

---

[1] Dr. Amin suggests that NBCU "abandoned" its argument under O.C.G.A. § 9-11-11.1(c)(2).  Opp. at 10, n.7.  But this provision is discussed on Page 6 of NBCU's Motion.

[2] Notably, these cases were decided even before Georgia's legislature expanded the definitions in O.C.G.A. § 9-11-11.1(c) to add sub-sections (3) and (4).  Thus, even prior to this amendment, the News Reports would have been covered by the privilege in O.C.G.A. § 51-5-7(4).

*Cnty.*, 2009 WL 2776599 (Ga. Super Ct. July 10, 2009); *Bodana v. Times Journal, Inc.*, 2012 WL 2375267 (Ga. Super Ct. Feb. 27, 2012)).[3]  To do so, he focuses on the finding of substantial truth in *Godfrey* and *Bodana*, but that finding is of course immaterial to the alternative finding of conditional privilege, which applies even if the challenged statements are false.  *Cf. N.Y. Times v. Sullivan*, 376 U.S. 254, 271-72 (1964) ("[E]rroneous statement is inevitable in free debate, and . . . it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need to survive[.]'").  In actuality, *Godfrey* and *Bodana* made clear that falsity and malice are two *separate* elements of a defamation claim and present independent grounds for dismissal.  *See, e.g.*, *Godfrey*, 2009 WL 2776599, at \*10 ("[E]ven if Plaintiff has established a material dispute on the issue of falsity, FOX5 is nonetheless entitled to summary judgment for want of evidence supporting a finding of 'actual malice.'  Under Georgia law . . . a plaintiff asserting defamation . . . must meet a stringent "actual malice" standard if . . . a statutory privilege applies.").[4]

Next, Dr. Amin asserts that applying the public interest privilege as NBCU suggests would "swallow" the traditional fair report privilege and every other privilege in the statute and lead to the untenable situation where news organizations need not fact-check their publications.  Opp. at 10.  But this speculation is unsupported by the text of the statute and the case law.  *First*, Georgia

---

[3] These two cases are merely examples and are not exhaustive.  *See also Chaney v. Harrison & Lyman, LLC*, 308 Ga. App. 808, 814 (Ga. Ct. App. 2016) (applying privileges under O.C.G.A. § 51-5-7(2), (3), and (4) independent of anti-SLAPP motion).  In *Chaney*, the court notes that conditional privileges only apply when the defendant acts with "good faith, an interest to be upheld, a statement properly limited in scope, a proper occasion, and publication to proper persons."  *Id.* at 815.  While this formulation does not appear to have been applied to media defendants publishing news reports on matters of public concern, *see, e.g.*, *Godfrey*, 2009 WL 2776599, at \*10; *Bodana* 2012 WL 2375267, *Lawton v. Georgia Tel. Co.*, 216 Ga. App. 768, 771 (Ga. App. Ct. 1995); *Morton v. Stewart*, 153 Ga. App. 636, 641 (Ga. App. Ct. 1980), even if it did, as NBCU's Verified Answer makes clear, NBCU—like every other media organization—published the News Reports in good faith, shortly after the Whistleblower Complaint was filed, in order to inform the public of the allegations against Dr. Amin and the government's response.  Dr. Amin comes forward with no factual allegations or other rebuttal to that showing.

[4] In addition, as NBCU explained in its Motion, in *Adventure Outdoors, Inc. v. Bloomberg*, 519 F. Supp. 2d 1258, 1278-79 (N.D. Ga. 2007), *rev'd on other grounds*, 552 F.3d 1290 (11th Cir. 2008), the Northern District of Georgia recognized that the substantive privileges of O.C.G.A. § 51-5-7 are applicable in federal court even if the procedural anti-SLAPP law is not.  The Opposition tellingly contains no response to this argument.

courts have already recognized that the O.C.G.A. § 51-5-7 privileges overlap, and multiple privileges can cover a single statement. *See, e.g.*, *Godfrey*, 2009 WL 2776599, at \*11 (applying privileges under both O.C.G.A. § 51-5-7(4) and (9)); *Examination Mgmt. Servs. v. Steed*, 340 Ga. App. 51, 53 (Ga. Ct. App. 2016) (applying privileges under both O.C.G.A. § 51-5-7(1) and (2)). *Second*, Georgia's privileges are qualified and can be defeated by a showing of actual malice. News organizations lose the privilege if they knowingly publish false statements or avoid the truth; thus, Dr. Amin's assertion that no guardrails exist (including any fact checking) is simply wrong. *Third*, it is Dr. Amin's arguments which essentially excise O.C.G.A. § 51-5-7(4) from the statute, leaving it entirely meaningless. Indeed, Dr. Amin fails to explain what he believes the provision actually covers.

Accordingly, because NBCU reported on allegations of immense public concern that were under consideration by the government, all of the challenged statements contained in the News Reports are privileged.

## B. The O.C.G.A. § 51-5-7(5)-(6) Privileges Also Shield the News Reports

All but ignoring O.C.G.A. § 51-5-7(4), Dr. Amin instead argues that the traditional "fair report" privilege does not apply here for three reasons. But because O.C.G.A. § 51-5-7(4) applies, the Court need not even reach the issue of whether the News Reports are also shielded under other sections of the statute. Regardless, each of Dr. Amin's arguments lacks merit. Because courts do not draw the stark lines that Dr. Amin attempts to draw here, the News Reports are protected by the traditional fair report privilege as well as O.C.G.A. § 51-5-7(4).

*First*, relying on a date included in the January 2022 Report, Dr. Amin contends that there was no investigation of the Whistleblower Complaint until October 2020, which means that the September News Reports could not be a report "of" a proceeding. Opp. at 5-6. But he ignores

that the investigation described in the January Report did *not* relate to the Whistleblower allegations concerning Dr. Amin. Instead, the Report expressly observed that those "allegations of inappropriate gynecological care [had] been referred to our Office of Investigations." *See* Mot. at 12 (citing Ex. H at 12 n.39).[5] In keeping with that observation, on September 16, 2020, the *Wall Street Journal* published "The Department of Homeland Security's internal watchdog has opened an investigation into a whistleblower's allegations of coerced hysterectomies being performed on migrant women held at a Georgia detention facility" and "DHS confirmed the probe in a statement on Wednesday." Answer ¶ 3, n.5.[6] The News Reports similarly discussed DHS's announcement. *See* Ex. D(i) at 14. And, on September 22, 2020, when ICE ended its relationship with Dr. Amin, its representative explained that it could not comment further due to DHS' *ongoing* investigation, which further confirms that an investigation *had* been opened prior to October 2020. Mot. at 12. Even accepting Dr. Amin's October date as true—which is wrong—Dr. Amin's formalistic approach has no merit. Georgia law does not draw an arbitrary line that requires formal commencement of an investigation or boots on the ground before the privilege is triggered. Georgia courts recognize that allegations leading to a government investigation are themselves privileged under the fair report privilege. *See Morton*, 153 Ga. App. at 641 (article "reporting the

---

[5] At the same time, he relies on the January Report for its observation that "women's health care [was] appropriate," a finding that had nothing to do with Dr. Amin. Opp. at 5; Ex. H at 12.

[6] Citing Natalie Andrews, Michelle Hackman, *U.S. Opens Investigation Into Claims of Forced Hysterectomies on Detained Migrants*, THE WALL STREET JOURNAL (Sept. 16, 2020), available at: https://www.wsj. com/articles/lawmakers-seek-investigation-into-allegations-of-mass-hysterectomies-on-detained-migrants-11600291 610. This article also notes, "Ken Cuccinelli, the No. 2 official at DHS, said in an interview that he had asked DHS's Office of Inspector General to expedite its investigation, and that he would have three DHS staff conduct their own parallel probe this week."

gist of the letters submitted to the [Georgia Composite Medical] Board" is shielded by the fair report privilege).[7]

*Second*, Dr. Amin contends that even if there were a proceeding, a government investigation into the Whistleblower Complaint is not the "type" of proceeding protected by Georgia's fair report privilege.  Opp. at 6-8.  But Georgia courts have made clear that there is "a general rule that a qualified privilege attaches to proceedings of, and fair, impartial, and accurate news accounts of, administrative agencies of the government."  *Morton*, 153 Ga. App. at 639. DHS, including its OIG, is a federal administrative agency.  And the OIG, which conducts investigations as part of its oversight authority to "secure and manage" the country's borders and "enforce and administer" immigration laws[8] undoubtedly performs  quasi-legislative and quasi-judicial functions.  *See McCracken*, 146 Ga. App. at 276 (holding that the Hall County Board of County Commissioners of Roads & Revenues "possesses sufficient indicia of a legislative body" so that the fair report privilege attaches to reports of its proceedings); *Lawton v. Georgia Tel. Co.*, 216 Ga. App. 768, 771 (Ga. App. Ct. 1995) (investigation by National Guard resulting in report "recommending" that plaintiff be reassigned was conceded to be "quasi-judicial" for purposes of fair report privilege).

*Third*, Dr. Amin argues that NBCU's News Reports did not "fairly" report on the proceeding because—despite the fact that much of NBCU's reporting *directly quoted* the

---

[7] The *Morton* holding is in line with the underlying purpose of fair report privileges—to inform the public about government conduct.  *See, e.g.*, *McCracken v. Gainesville Tribune, Inc.*, 146 Ga. App. 274, 275 (Ga. App. Ct. 1978) ("The privilege exists because it is more important that the public be informed about the privileged proceeding than it is for the defamed person to have legal recourse for the publication of the defamatory matter."); *see also White v. Fraternal Order of Police*, 909 F.2d 512, 527 (D.C. Cir. 1990) ("[I]t would be untenable to make a distinction between a report about an official proceeding and that which, for all purposes, is the subject matter of the proceeding.").

[8] *See* https://www.oig.dhs.gov/about.  The court can take judicial notice of the contents of a government website. *See, e.g.*, *Shaw v. Ga. Dep't of Behavioral Health & Dev. Disabilities*, 2021 WL 3087829, at *1, n.3 (N.D. Ga. Apr. 13, 2021); *Mawulawde v. Board of Regents Uni. Sys. of Georgia*, 2007 WL 2460774, at *8, n.10 (S.D. Ga. Aug. 24, 2007).

Whistleblower Complaint—the Whistleblower Complaint did not name Dr. Amin and only spent two pages focusing on allegations of improper gynecological care.  Opp. at 8-9.  But Dr. Amin admitted that he is the gynecologist referenced in the Whistleblower Complaint.  *See* Ex. D(i) at 17 (quoting Dr. Amin's lawyer, who stated, "We're aware of the whistleblower's allegations as they relate to Dr. Amin").  And the question of whether a publication is "fair" for purposes of the fair report privilege looks only at whether the report conveys the "gist" of the allegations at issue. *See Lawton*, 216 Ga. App. at 769-72 (news report was "fair" even when it omitted material). Because the News Reports fairly recounted and were entirely consistent with the allegations against Dr. Amin in the Whistleblower Complaint, which formed the basis of the government's investigation, Georgia's traditional fair report privilege shields the News Reports.

## II.      Dr. Amin Has Not Sufficiently Pled Actual Malice to Defeat NBCU's Privilege

Because the O.C.G.A. § 51-5-7 privileges apply to the News Reports, Dr. Amin must plead plausible facts that NBCU acted with "actual malice" to avoid upfront dismissal of his action. Despite two attempts, Dr. Amin's pleadings fall short. The question before the Court is whether Dr. Amin has sufficiently alleged that NBCU *subjectively doubted* the truth of the News Reports or was highly aware that they were likely false.  *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 704 (11th Cir. 2016).  Dr. Amin has not made a single plausible allegation showing that NBCU doubted, or even had reason to doubt, its reporting.  Instead, he gives tortured readings to government statements and the News Reports at issue and speculates on NBCU's political agenda. None of his allegations, on its own, is probative of actual malice.  And considering the allegations

together does not change this conclusion—zero multiplied *ad infinitum* is still zero. Accordingly, Dr. Amin cannot, as a matter of law, defeat NBCU's privilege.[9]

## A. NBCU Did Not "Pretend" There Was a Government Investigation

In his Opposition, Dr. Amin repeats his contention that NBCU simply "made up" that there was a government investigation into the Whistleblower Complaint during the September 17, 2020 episode of "All In with Chris Hayes." *See* Opp. at 15-16. Dr. Amin argues that the September 15, 2020 ICE Statement gave "clear guidance" that there was no investigation into the Whistleblower Complaint. Opp. at 16. But that Statement—issued two days before the purportedly false News Report—said that the Whistleblower Complaint "will be fully investigated by an independent office." Ex. G. And Dr. Amin just ignores that the day before the News Report then-acting Deputy Secretary of Homeland Security Cuccinelli announced that he was sending a team to investigate. *See* Ex. D(i) at 15.

Indeed, third-party news organizations similarly reported, based on Cuccinelli's statement, that an inquiry had been opened by DHS into the allegations in the Whistleblower Complaint. As stated above, on September 16, 2020, the *Wall Street Journal* reported, "The Department of Homeland Security's internal watchdog has opened an investigation into a whistleblower's allegations" and "DHS confirmed the probe in a statement on Wednesday."[10] And the *New York Times* likewise reported, "[t]he Department of Homeland Security is investigating allegations that

---

[9] Dr. Amin quotes *StopLoss Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334 (N.D. Ga. 2018) for the proposition that "Georgia courts have repeatedly held that the issue of malice in conditional privilege cases is generally a jury issue." But Dr. Amin omits the fact that *StopLoss* quotes a 1994 Eleventh Circuit case for this point. And the Eleventh Circuit has subsequently made clear that cases are frequently dismissed on upfront motions where, as here, the plaintiff's allegations fail to plausibly plead knowledge of falsity or recklessness as to the truth. *See, e.g.*, *Michel*, 816 F.3d at 704; *Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir. 2018); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1253 (11th Cir. 2021); *Jacoby v. Cable News Network, Inc.*, 2021 WL 5858569, at *3 (11th Cir. Dec. 10, 2021).

[10] *See* n.6, *supra*.

immigrant women detained at a privately run detention center in Georgia underwent gynecological procedures without fully understanding or consenting to them."[11]  Far from "making up" this investigation, the September 17 episode of "All In" displayed on screen the headline of this *New York Times* article. Mot. at 13.

Given these irrefutable facts, evident from the News Reports themselves, Dr. Amin does not plausibly plead that NBCU subjectively doubted DHS's assertions or would have any reason to do so.  *Michel,* 816 F.3d at 704 ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").  And the law is clear that reliance on government statements and previously published news reports does not support a finding of actual malice.  Mot. at 14; *see also Terrell v. Ga. Tel. Co.*, 215 Ga. App. 150, 152 (Ga. Ct. App. 1994) ("[Reporter's] reliance on the mayor's statement as authoritative and her mere failure to investigate his statement by consulting the city clerk do not establish bad faith."); *Jacoby*, 2021 WL 5858569, at *5 ("Defendants *did* investigate and tracked down three *LA Times* articles . . . [Plaintiff] does not allege any facts demonstrating Defendants held serious doubts about the truth of these sources.").

## B. The ICE Statement and Whistleblower Complaint Did Not Contradict NBCU's Reporting

Dr. Amin next argues that NBCU broadcast the News Reports with actual malice because the News Reports differed from the Whistleblower Complaint and were contradicted by the ICE Statement.  Opp. at 16.  Neither of these arguments has merit.

*First*, Dr. Amin contends that NBCU's News Reports went "beyond" the scope of the Whistleblower Complaint because the Whistleblower Complaint focused on COVID-19 protocols

---

[11] *See* Answer ¶ 3, n.5 (citing Caitlin Dickerson, *Inquiry Ordered Into Claims Immigrants Had Unwanted Gynecological Procedures*, THE NEW YORK TIMES (Sept. 16, 2020), available at: https://www.nytimes.com/2020/09/16/us/ICE-hysterectomies-whistleblower-georgia.html).

rather than "mass hysterectomies"[12] and did not characterize Dr. Amin's conduct as "abusive," "overly harsh," or "hurting" his patients. *See* Opp. at 16-17. But Dr. Amin does not point to anything *inconsistent* between NBCU's reporting and the Whistleblower Complaint, which would have caused NBCU to doubt its reporting. To the contrary, the gist of the Whistleblower Complaint and NBCU's reporting is the same: there was a "high rate of hysterectomies done to immigrant women," that women did not trust Dr. Amin, and that women were "confused" about why he had performed certain procedures. Ex. A at 19. NBCU's reporters spoke first-hand with multiple ICDC detainees and lawyers for detainees who confirmed or echoed the allegations against Dr. Amin. *Compare* Ex. A at 19, *with*, Ex. D(i) at 14 (explaining that one of Dr. Amin's patients, "B" felt "pressured into" consenting to a full hysterectomy).

*Second*, Dr. Amin again cites to the September 16, 2020 ICE Statement, which he claims states that "only two hysterectomies were performed on ICDC detainees since 2018." Opp. at 17. That's not what the Statement says. The Statement says that two women were "referred" for hysterectomies since 2018. *See* Ex. G. It is silent on the number of hysterectomies actually performed, and does not comment on other gynecological procedures short of full hysterectomies. Its failure to do so is notable, particularly because the gist of the allegations against Dr. Amin was that detainees were sent to him for certain gynecological procedures but ended up with procedures different than what they were expecting. *See* Ex. A at 18-20. And while Dr. Amin claims that "'two referrals' means 'two hysterectomies,'" because he would only get paid for referred hysterectomies and he would not have performed hysterectomies without getting paid, *see* Opp. at 19, Dr. Amin cites to no law for the proposition that NBCU was required to ignore the plain

---

[12] The only reference to "mass hysterectomies" in the News Reports is in a banner that appeared on the screen during two "All In" broadcasts, which actually read: "Complaint: Mass Hysterectomies Performed on Women at ICE Facility." *See* Answer ¶¶ 79, 82.

language of the ICE Statement and, instead, read the Statement in the tortured manner he desires. Indeed, no such law exists.

Further, as Dr. Amin recognizes, *see* Opp. at 17, NBCU included the ICE Statement in the News Reports. Mot. at 15. In *Michel*, the Eleventh Circuit held that doing just this—"reporting perspectives contrary to the publisher's own"—is antithetical to a finding of actual malice. Looking to get around the Eleventh Circuit's clear holding, Dr. Amin insists that NBCU "omitted the ICE Statement completely from some broadcasts and omitted parts of the ICE Statement that contradicted accusations against Dr. Amin in other broadcasts," including that only two hysterectomies were performed and that detainees are offered "informed consent." Opp. at 17-18. But, as stated above, the ICE Statement did not actually contradict the allegations against Dr. Amin. And many of Dr. Amin's assertions are belied by the News Reports themselves. For example, Dr. Amin insists that the "third broadcast" (the September 16, 2020 episode of "All In") failed to include any part of the ICE Statement. *Id.* at 18. But during that News Report, Hayes quoted from the ICE Statement that "medical care decisions concerning detainees are made by medical personnel," "detainees are afforded informed consent," and "a hysterectomy would never be performed against a detainee's will." Ex. D(i) at 18. Similarly, while Dr. Amin claims that the "second broadcast" (the September 15, 2020 episode of "All In") "failed to include . . . that there were only two hysterectomies on ICDC detainees," Opp. at 18, in that News Report, Hayes clearly states: "ICE also says that since 2018, only two individuals in that facility were referred to certified credential medical professionals for hysterectomies," Ex. C(i) at 12. Dr. Amin cannot willfully mischaracterize the actual News Reports in an effort to support actual malice. *See Turner*, 879 F.3d at 1273 ("[Plaintiff] does allege, however, that the Defendants were aware of certain

12

information that would have portrayed him in a better light, but purposefully decided to omit it . . . . But curiously, most of the examples given by [plaintiff] are actually included in the Report.").

In sum, nothing in the Whistleblower Complaint or the ICE Statement contradicted NBCU's reporting and, for that reason, Dr. Amin has failed to plead that NBCU acted with actual malice.

### C. NBCU Did Not "Ignore" Dr. Amin's Response to the Allegations

Dr. Amin next contends that NBCU "ignored" the fact that he could not respond to detainees' allegations due to HIPAA requirements, asserting: "Defendant cannot be said to be neutral when it allows someone to make accusations against someone while that person single-handedly and simultaneously prevented the accused from speaking." Opp. at 20.[13] But Dr. Amin never pleads that he told NBCU about his patients' purported failure to sign HIPAA waivers and that NBCU ignored him. Nor can he. NBCU included in the News Reports the statements that Dr. Amin's lawyer provided, which did not mention HIPAA. *See* Ex. D(i) at 14, 18; Ex. E(i) at 8; Ex. F(i) at 14.

### D. There Were No "Obvious Reasons" For NBCU to Doubt the Veracity of Its Sources

Once again Dr. Amin repeats his allegations in the FAC that NBCU had "obvious reasons" to doubt the veracity of Dawn Wooten and the ICDC detainees with whom it spoke. Opp. at 21-23. As to Wooten, Dr. Amin again claims that she was "admonished" by ICE for failing to follow protocols for obtaining an investigation and "sought the limelight" by creating a GoFundMe

---

[13] Dr. Amin repeatedly confuses "actual malice" with "neutrality." *See, e.g.*, *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) (It would be sadly ironic for judges in our adversarial system to conclude, as the dissent urges us to do, that the mere taking of an adversarial stance is antithetical to the truthful presentation of fact. We decline to take such a remarkable step in First Amendment jurisprudence.").

account to raise money for her family. *Id*. But even accepting these assertions as true,[14] the government, including DHS, Congress, the FBI, and DOJ, still took her allegations seriously enough to open investigations into Dr. Amin that remain ongoing today. It makes little sense that these allegations could be serious enough to spur significant government action, but NBCU could be deemed to have acted "recklessly" by reporting on the same allegations. The only response to this argument that Dr. Amin proffers is that the OIG Report—issued in January 2022— stated that "women's health care [was] appropriate." Opp. at 23; Ex. H at 12 (referring to allegations separate from those involving Dr. Amin). But, as NBCU noted in its Motion, this does not even refer to the allegations against Dr. Amin and, in any event, what a report stated in 2022 is not probative of whether NBCU acted with actual malice in publishing reports in September 2020. *See* Mot. at 12.

Further, NBCU did not simply rely on Wooten without corroboration. Instead, it spoke with *numerous* ICDC detainees and reviewed medical records confirming that these women had the procedures they claimed to have received. *See* Ex. D(i) at 14. Dr. Amin asserts that it is a "an issue of fact regarding what those records show" and it is "likely [NBCU] has never seen full medical records." Opp. at 22. But Dr. Amin misses the point. NBCU spoke with Wooten, multiple detainees and their lawyers, contacted Dr. Amin, ICE, and LaSalle for comment, and reviewed medical records. This is evident on the face of the News Reports and makes it impossible for Dr. Amin to plead that NBCU acted "recklessly" as to the truth of its publication. *See Michel*, 816 F.3d at 704 ("The article indicates that the reporters spoke with, consulted, or otherwise reached out to a Foundation insider, event organizers, the founder of the Foundation, the venue, the

---

[14] The ICE Statement does not state that Ms. Wooten failed to follow standard protocols to initiate an investigation. It merely states that "it is unfortunate that those involved have chosen to first go to the media with their allegations, without allowing the government to examine or take appropriate action." Ex. G.

Foundation's website, and state charity records.  The complaint fails to explain why none of that

qualified as 'real outreach' or due diligence.").[15]

### E. Political Opposition to the Trump Administration Is Irrelevant to the Question of Actual Malice

Finally, Dr. Amin contends that NBCU acted with actual malice because the News Reports

were "not neutral" and instead "advocate[d] against Dr. Amin."  Opp. at 23.  This is a misstatement

of the law of actual malice.  *See Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th

Cir. 1999) ("Ill-will, improper motive or personal animosity plays no role in determining whether

a defendant acted with "actual malice."); *Donald J. Trump for President, Inc. v. CNN

Broadcasting*, 500 F. Supp. 3d 1349, 1357 (N.D. Ga. 2020) (holding that while a Tweet "might

show [defendant's] ill will towards the President, [ ] it fails to plead actual malice in the

constitutional sense—that is it does not show [the defendant] made the Statement with knowledge

that it was false or with reckless disregard of whether it was false.").  And the plain language of

the News Reports make clear that the claims against Dr. Amin were simply *allegations* under

investigation.  *Compare* Opp. at 23 (asserting that NBCU said that Dr. Amin "should face

accountability"), *with* Ex. E(i) at 10 ("ICE is saying that this will be investigated.  The facility is

saying that whether or not it's investigated, they deny that any of this happened.  The doctor is

saying essentially the same thing.  What do you expect to happen in terms of this being looked

into in terms of these women's *claims* being investigated and *potentially* there being accountability

here?"); Opp. at 23 (asserting that NBCU referred to Dr. Amin as a "so-called medical

professional"), *with* Ex. E(i) at 11 ("[T]hese are real human beings undergoing *what is alleged to

be* truly, truly, horrific treatment at the hands of a so-called medical professional.").

---

[15] Dr. Amin also faults NBCU for failing to disclose that the ICDC detainees were incentivized to speak out against Dr. Amin to avoid deportation.  Opp. at 23.  But, by disclosing that Defendants were detained immigrants, viewers had all of the necessary information to understand that these women were at risk of being deported.

Dr. Amin's citation to *Palin v. New York Times Co.*, does nothing to bolster his argument. In *Palin*, the *New York Times* published an editorial erroneously linking Sarah Palin's political action committee to two political shootings. The Second Circuit held that the plaintiff adequately pled facts showing that defendant, the editor of the piece, had reason to know that this connection was false. Among numerous other factual averments, the complaint alleged that: (1) the editorial's allegations were directly contradicted by other articles personally edited by the defendant; and (2) the defendant was an outspoken advocate for gun control after a man threatened to open fire on the office of his brother, a sitting Senator. The court explained this "indicate[d] more than sheer political bias" because it cast doubt on the defendant's claim that he did not remember the earlier articles. *Palin v New York Times Co.,* 940 F.3d 804, 814 (2d Cir. 2019). That situation, which other courts have already referred to as "*sui generis*," *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185-86 (S.D.N.Y. 2020), has no similarity to the facts alleged here. Unlike in *Palin*, Dr. Amin merely pleads that NBCU was biased against the Trump Administration and published the News Reports about Dr. Amin in the hopes that they would help defeat Trump's reelection campaign. FAC ¶¶ 181-201. This is precisely the "political opposition" that even the *Palin* court held is inapposite to a finding of actual malice.

Lastly, the News Reports were no different than the dozens of other reports about the Whistleblower Complaint and similar allegations against Dr. Amin published at the time of the News Reports and continuing to this day. For example, on September 15, 2020, the *Intercept* published an article that alleged that Dr. Amin was "rough" to his patients, that detainees felt "pressured by [Dr. Amin] to undergo partial or full hysterectomies," and that Dr. Amin removed a woman's fallopian tube without her consent. *See* Answer ¶ 10, n.14. On September 16, 2020, the *Atlanta Journal Constitution* similarly reported that, according to ICDC detainees, Dr. Amin

was "rough," he left his patients "bruise[d]," and "he had a way of turning a routine visit into surgical procedures that the women weren't sure they needed." *Id.* On September 18, 2020, the *Associated Press* reported that a "review of medical records for four women and interviews with lawyers revealed growing allegations that Amin performed surgeries and other procedures on detained immigrants that they never sought or didn't fully understand," which "raises severe legal and ethical issues." Mot. at 23, n.15. Singling out MSNBC's reporting and claiming political bias does nothing to save Dr. Amin's lawsuit.

## CONCLUSION

Dr. Amin has had every opportunity to plead a defamation cause of action against NBCU. He still has not done so. For the foregoing reasons, and those in NBCU's Motion for Judgment on the Pleadings, NBCU respectfully requests that the Court dismiss the FAC in its entirety with prejudice and for further relief as is just and proper.

Dated: June 14, 2022

Respectfully submitted,

<table>
<tr><td>*s/ Elizabeth A. McNamara*</td><td>*s/ Cynthia L. Counts*</td></tr>
<tr><td>Elizabeth A. McNamara</td><td>Cynthia L. Counts</td></tr>
<tr><td>(admitted *pro hac vice*)</td><td>Georgia Bar No. 190280</td></tr>
<tr><td>Amanda B. Levine</td><td>FISHERBROYLES, LLP</td></tr>
<tr><td>(admitted *pro hac vice*)</td><td>945 East Paces Ferry Rd. NE, Suite 2000</td></tr>
<tr><td>DAVIS WRIGHT TREMAINE LLP</td><td>Atlanta, GA 30326</td></tr>
<tr><td>1251 Avenue of the Americas, 21st Floor</td><td>(404) 550-6233</td></tr>
<tr><td>New York, NY 10020-1104</td><td>cynthia.counts@fisherbroyles.com</td></tr>
<tr><td>Tel: (212) 489-8230</td><td></td></tr>
<tr><td>lizmcnamara@dwt.com</td><td></td></tr>
<tr><td>amandalevine@dwt.com</td><td></td></tr>
</table>

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 14th day of June, 2022, a true and correct copy of the

foregoing document was served upon the following via the Court's electronic filing system:

Stacey Godfrey Evans
sevans@staceyevanlaw.com
Tiffany N. Watkins
twatkins@staceyevanslaw.com
Scott R. Grubman
sgrubman@cglawfirm.com

*Cynthia L. Counts*
Cynthia L. Counts
Georgia Bar No. 190280
FISHERBROYLES , LLP
945 East Paces Ferry Rd. NE, Suite 2000
Atlanta, GA 30326
Telephone: (404) 550-6233
cynthia.counts@fisherbroyles.com
*Attorneys for Defendant*