1

```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF GEORGIA
                   WAYCROSS DIVISION


DR. MAHENDRA AMIN, M.D.,            )
                                   )
              Plaintiff,            )
                                   )
         vs.                        )          CASE NO.
                                   )     5:21-CV-00056-LGW-BWC
NBCUniversal MEDIA, LLC,            )
                                   )
_____Defendant._____)
```



```
                 TELEPHONIC MOTIONS HEARING
          BEFORE THE HONORABLE BENJAMIN W. CHEESBRO
                 June 9, 2023; 8:15 a.m.
                    Brunswick, Georgia
    APPEARANCES:

    For the Plaintiff:        STACEY GODFREY EVANS, Esq.
                              JOHN AMBLE JOHNSON, Esq.
                              Stacey Evans Law
                              4200 Northside Parkway NW
                              Suite One; Suite 200
                              Atlanta, Georgia  30327
                              (770) 779-9602
                              sevans@staceyevanslaw.com
                              ajohnson@staceyevanslaw.com


    For the Defendant:        ELIZABETH A. McNAMARA, Esq.
                              Davis Wright Tremaine, LLP
                              1251 Avenue of the Americas
                              21st Floor
                              New York, New York  10020-1104
                              (212) 603-6437
                              lizmcnamara@dwt.com

                              CYNTHIA L. COUNTS, Esq.
                              Fisher Broyles, LLP
                              945 East Paces Ferry Road, NE
                              Suite 2000
                              Atlanta, Georgia 30326
                              (404) 550-6233
                              cynthia.counts@fisherbroyles.com
```

2

Transcribed by:               Debbie Gilbert, RPR, CCR
                              Official Court Reporter
                              801 Gloucester Street
                              Post Office Box 1894
                              Brunswick, GA 31521-1894
                              (912) 262-2608 or (912) 266-6006
                              debra_gilbert@gas.uscourts.gov


                         -  -  -

3

P R O C E E D I N G S

(Call to order at 8:15 a.m.)

1
2

3          THE COURT:  Hello, this is Ben Cheesbro speaking.  Ms.
4  Mixon, would you please call the case?

5          THE CLERK:  Yes, Your Honor.  Case Number 5:21-CV-56,
6  Dr. Mahendra Amin versus NBCUniversal Media, LLC, Stacey Evans,
7  John Amble Johnson for the plaintiff, Cynthia Counts and
8  Elizabeth McNamara for the defense.

9          THE COURT:  All right, thank you, Ms. Mixon, and good
10  morning everyone.

11          SPEAKERS:  Good morning, Your Honor.

12          THE COURT:  Well, we set this call down primarily to
13  take up the motion to extend the schedule in this case, although
14  there are a few other issues.  We will get to those in a moment.

15          Let me just confirm for everyone, we are on the record
16  here.  We are on the court's recording equipment.  There's not
17  likely to be a transcript made of this call but we always have
18  the ability so we want to be prepared later on if anyone
19  requests one.

20          So the original impetus for this call was the motion
21  that was filed by Defense, Document Number 72 on the docket, and
22  that's a motion for extension of time to complete discovery.

23          I know everyone is familiar with this, but just for the
24  benefit of clarity, what I'm going to do is go over the
25  remaining deadlines in the case under the current schedule and

4

1  then briefly summarize the request for an extension, and then

2  thirdly I want to float an idea with counsel to see about trying

3  to not (unintelligible) this case.

4       First, before we go any further, I'm a little concerned

5  about the age of the case and the progress of discovery, which I

6  have some thoughts about the request and that's why I wanted to

7  get on the phone with you today.

8       So, right now, from where we sit, the upcoming deadlines

9  are the deadline for depositions of fact witnesses is set for

10 July 31st, service of expert witness reports on August 15th.

11      There is a discovery status report due in September

12 along with the status conference, and then the deadlines for

13 depositions of expert witnesses is set for September 29th.

14      The next deadline is the deadline for all civil motions.

15 That includes all Daubert motions, motions for summary judgment

16 but excludes motions in limine and that is set for November 3rd.

17 That's really a critical deadline and will not focus

18 (unintelligible).

19      There are subsequent deadlines, depositions for use at

20 trial and then a proposed pretrial order submission deadline,

21 but if you go back and look at the earlier scheduling orders,

22 you will see that those deadlines are pushed out if there's a

23 dispositive motion filed by the civil motions deadline.

24      The request that's been filed is one for approximately a

25 60-day extension of some deadlines and a 90-day extension of the

1    civil motions deadline.  Importantly would push that motions

2    deadline out from November to late January of next year and then

3    push all of the earlier deadlines by about 60 days.

4            So one issue I wanted to discuss with you, I've read the

5    motion.  I understand the challenges that y'all have faced and

6    some of the issues that have gone on in the litigation and so

7    I'm not critical of the request generally, but I wanted to

8    explore the possibility that it may not be necessary at this

9    stage now that you've got the (unintelligible) end of discovery

10   and in the litigation to have this sort of bifurcated fact and

11   expert schedule in the case going forward, and if you are able

12   to address fact and expert discovery at the same time, whether

13   you might be able to adhere to the original schedule, especially

14   that civil motions deadline or at least something very close to

15   that.

16           I understand your concern about the holidays at the end

17   of the year.  I am cognizant of that as well.  And so that's

18   really a question I'm going to ask counsel for both sides.  I

19   will give you an opportunity to speak on it.

20           That's what I would like to consider doing here in this

21   case.  There are three discovery dispute issues that have been

22   presented to The Court.  We will take those up separately after

23   we've addressed this scheduling issue.

24           So let me go ahead and call on counsel for Dr. Amin

25   first, Ms. Evans, Mr. Johnson, what are your thoughts on the

1   need for bifurcation of those two parts of discovery?

2       MS. EVANS:  Thank you, Your Honor, Stacey Evans for the

3   plaintiff.

4       That, taking apart that bifurcation is fine with

5   Plaintiff as I contemplate that in my place here because really

6   what we just need is a little bit more time for the fact

7   witnesses, the third-party fact witnesses to take their

8   depositions, and that provides us the additional time.  So thank

9   you for letting me talk through what I'm thinking in my head,

10  but, yes, sir, Your Honor, I think that's fine with Plaintiff.

11      THE COURT:  Of course, and really what we are looking at

12  to that point in motions, you're looking at close of all

13  discovery around the end of November.  That's for fact and

14  expert, while in the proposed order for the schedule, that's

15  conclusion of expert depositions around the end of November, and

16  so conceptually I'm just thinking about compressing that and to

17  have a close of all discovery in that November timeline or

18  October with the motions deadline, and I should correct my

19  language.  "Bifurcation" is probably not the right terminology,

20  but sequencing of discovery is a better way to put it.  So, all

21  right, thank you, Ms. Evans.

22      Ms. Counts and Ms. McNamara, what are your thoughts?

23      MS. McNAMARA:  This is Elizabeth McNamara, Your Honor,

24  and we too would be amenable because I think often you do kind

25  of overlap with fact and expert discovery, so keeping that

1    formality of intermediate deadlines I think is unnecessary, so

2    we too would be amenable to that.  I also think there will be

3    limited expert discovery here so ...

4         THE COURT:  I appreciate that, and that was one of my

5    speculations there, so I appreciate that.  So that's what I'm

6    going to do.  I'm going to prepare a scheduling order that

7    compresses all those and keeps you roughly on the same schedule

8    that you're currently on for the motions deadline, but it will

9    free you up to conduct remaining discovery over that entire

10   period of time without those intermediate deadlines.

11        I'll issue an amended scheduling order that takes all

12   this into consideration and sets out specific deadlines.  If

13   there's a reason to reconsider any of those deadlines we can set

14   it down for another call sometime in the future, but that is

15   generally what we're going to do, so just make sure that you

16   remain vigilant on the docket watch for that order because it

17   will reset all those deadlines.

18        So we're going to turn to the discovery dispute that has

19   been presented to The Court.  Let me make an initial remark

20   about these disputes.  You've done exactly what I directed

21   you-all to do and what I prefer to do in civil cases like this

22   where there's a discovery dispute, which is to avail yourself of

23   the informal dispute resolution process that's set out in Rule

24   26.

25        The way you've done it is exactly what I hope to see.

8

1    You've addressed the issues thoroughly but succinctly in your

2    e-mail submissions.

3         Now, the reason I'm saying all that is because I want to

4    give you some heads-up as to how I approach these discovery

5    disputes in this context.

6         Typically my first aim is to just talk through the issue

7    with the parties and see if there may be some sort of mutually

8    agreeable resolution to the dispute.  Sometimes just having this

9    conversation in this context helps to solve that.

10        Occasionally I will decide the issue on the spot with an

11   oral ruling, but that is usually only the case if the parties

12   agree that there is no additional briefing needed and that they

13   are prepared to accept an oral ruling without any sort of

14   written order.

15        So I'll typically ask the parties if they want me to go

16   ahead and rule on the issue as it was presented during the call,

17   and then there are other times where I will just simply tell the

18   parties that I don't have enough information and I don't think

19   that it's conducive to the informal dispute resolution process,

20   and I will authorize the parties to file briefs and motions to

21   compel, motions to quash depending on their respective

22   positions.

23        So with that in mind, there are three issues, one that

24   has been raised by the defendant and then two that are raised by

25   the plaintiffs, well, the plaintiff, and so I may go through

9

1   those in sequence.

2         So the first issue is the Department of Justice

3   documents, which is the issue that was presented by Defendant,

4   and as I understand it -- I may be overly simplifying this

5   issue -- but as I understand it, Plaintiff has withheld certain

6   documents that they would otherwise produce and they have done

7   so because of a letter that was received from the Department of

8   Justice directing Plaintiffs not to disclose communications with

9   the Department of Justice I assume at all but Plaintiff has

10  taken the position that that applies here in the litigation, so

11  assuming that I have that right, Ms. Evans, I will give you an

12  opportunity to add anything that's not included in the

13  submission.

14        I have some initial thoughts on this, but I want to give

15  you an opportunity to speak first, and, Ms. McNamara, I will

16  come back to you and see if you have anything that you would

17  like to add.

18        Ms. Evans.

19        MS. EVANS:  Thank you, Your Honor.  Yes, you have

20  summarized the issue great.  We are not scared of producing

21  these documents.  We would love to produce these documents, but

22  I have a healthy fear of both Your Honor and The Court's

23  authority but also the Department of Justice, particularly when

24  it's the criminal division and on behalf of my client just did

25  not feel that it was my place to just hand these over, and first

1   looking for direction, that's why we reached out to the

2   Department of Justice and we haven't gotten it.

3       Obviously, we will do whatever Your Honor says, but we

4   felt like we're stuck between two masters at this point.

5       THE COURT:  I understand that.  Ms. McNamara, anything

6   that you want to add beyond what was in the e-mail submission?

7       MS. McNAMARA:  The only thing I would add, Your Honor,

8   is that reading Ms. Evans' response, it struck me that she, you

9   know, there's no dispute that these are relevant.  There's no

10  dispute that there's any burden associated with producing them.

11  If I heard Ms. Evans correctly, she said she would love to

12  produce them.

13      Now, reading between the lines, what I kind of see the

14  plaintiff actually seeking here in some ways is an order from

15  The Court instructing them to produce by which they would do so.

16  If I'm reading that correctly, I think that's probably the

17  clearest avenue to resolving this.

18      THE COURT:  That sounds right to me as well.  My initial

19  impressions are this.  I don't mean to sound flip in any way,

20  but there's just not a privilege or protection otherwise.  It's

21  just because the DOJ said don't provide those and so limiting

22  our inquiry here to this case in the civil context and the

23  plaintiff's obligations to respond to discovery, that on its own

24  wouldn't be enough to withhold production, but I fully

25  understand Ms. Evans' concern, Dr. Amin's concern about running

1  afoul of the DOJ given the other litigation and just the role of

2  the DOJ generally.

3        In order to issue a written ruling requiring the

4  plaintiff to produce these, I do think that it may be helpful

5  for me to review the letter in camera.  I'm normally not

6  inclined to do a lot of in camera review, but here in order to

7  fully address the concern, I believe that that would be

8  appropriate.  I'm content to issue an order on this assuming

9  that I reach the same conclusion after reviewing the letter, but

10 I do think that that's pretty essential in resolving this issue.

11       Ms. Evans, do you have any opposition to providing the

12 letter to The Court for in camera review?

13       MS. EVANS:  No, Your Honor.  We can e-mail that to you

14 today.

15       THE COURT:  Ms. McNamara, do you have any opposition to

16 Ms. Evans providing that letter to The Court?

17       MS. McNAMARA:  No, I do not, Your Honor.

18       THE COURT:  Well, I will take a look at that, and

19 assuming that it doesn't change my view at all, I will issue an

20 order on this point as well.

21       Let's go to the next issue, which is the plaintiff's

22 issue regarding the request for certain NBCU guidelines or

23 procedures, and this is a temporal dispute, not so much a

24 substantive dispute, but rather whether Defendant is required to

25 produce those policies that existed both before and after the

12

1    policy that was in place at the time of the article.

2          Ms. McNamara, I've reviewed your submission as well.  I

3    understand exactly what your position is.  Is there anything

4    that you would like to add to the discussion before I hear from

5    Ms. Evans on this?

6          MS. McNAMARA:  No.  I think we laid it out in our

7    response, Your Honor.  I'm happy to address any questions.

8          THE COURT:  Ms. Evans, anything you would like to add to

9    it?

10          MS. EVANS:  Briefly, yes, Your Honor.  Just in response

11    to what they provided to The Court after we shared our issue,

12    NBCUniversal is claiming that no one in depositions has said

13    that they acted differently and so that we haven't laid our

14    foundation to show that these are relevant to address that

15    point.

16          While that is true, no one can say exactly how the

17    policy has changed, and so I can't ask them if they acted

18    differently.  They acknowledge, the witnesses acknowledge that

19    the policies did change, but without me being able to put those

20    new or prior policies in front of them, the witnesses claim they

21    don't remember how they changed, they don't remember what they

22    were like before and so I can't get to that next place, so I've

23    got my hands tied in being able to lay the foundation to show

24    that they acted differently.

25          To address the point of Defendant that the state of mind

1   of actual malice is only relevant at the time of the broadcast,

2   while that may be true, not conceding that, but even if they are

3   right, what happened at the time of broadcast can be affected by

4   the prior policies or could affect the changes in later

5   policies, and, for example, because someone realized that the

6   2019 and 2020 policy took something out that was a safeguard

7   perhaps that someone in the standards department had forgotten

8   was taken out and didn't realize was taken out, they thought a

9   certain fact-checking exercise was undertaken and felt more

10  comfortable approving the broadcast, for example.

11          This is purely a hypothetical but proves that it could

12  still affect the state of mind at the time of broadcast, or,

13  because of something that happened in these broadcasts, which,

14  as I said to The Court, we have in writing statements from the

15  standards department head that he had concerns about the

16  broadcast, so as a result of those concerns at the time of the

17  broadcast, did they change their policy so that that wouldn't

18  happen again.

19          That would affect and go to state of mind at the time of

20  broadcast, so even though the policies are temporally before and

21  after the broadcast, it doesn't take away the fact that they

22  could show state of mind at the time of broadcast.

23          With those two points, Your Honor, I appreciate the

24  opportunity.

25          THE COURT:  So on this dispute, I've looked at the

14

1    authority that's been provided, and I'll just note that the

2    defendant's authority here really is focused on some of the

3    unique nuances of proof for defamation claims.  It could benefit

4    from further briefing on it, and I will permit the parties to

5    submit further briefing on this issue if they so desire.

6            I have an initial impression.  I'm not going to resolve

7    this issue here today, but I will share my initial impression

8    with you and the fact, I want to preface this with the fact this

9    is not lip service, but my initial impressions are subject to

10   change.

11           I've shared initial impressions, received briefing and

12   changed my point of view, so don't think that this is

13   perfunctory to brief it up if that is the case, but I will tell

14   you that my initial view of this dispute is to focus on the very

15   low bar for discoverability of documents.

16           The authority that's provided by Defendant seems germane

17   absolutely to the overall litigation.  And whether evidence of

18   these other policies before and after could be utilized at trial

19   or would have much bearing on the overall dispute I really can't

20   say at this point, and there's probably some good arguments the

21   defendants can raise that they may not, but taking a step

22   backwards in the litigation process and looking at just the

23   discoverability of the documents, it's difficult for me to say

24   that I would deny a request by the plaintiff to compel the

25   defendant to produce these before and after policies on the

1    grounds that they could not in any way reveal any sort of

2    relevant information or lead to the discovery of relevant

3    information, so I'm really focused most on that very low bar of

4    discoverability, and this sure seems like a circumstance where

5    you-all may need to raise your dispute again at a later time,

6    either at summary judgment or a motion in limine or even arguing

7    about the relevance of the documents, but in terms of

8    discoverability, it seems to me that Plaintiff has articulated

9    at least the initial threshold showing for getting those

10   documents in discovery.

11          So, Ms. McNamara, given your position on this one, I'm

12   going to give you the opportunity, if you would like to, to file

13   a motion that is more fully briefed.  We can talk about the

14   parameters for that motion.  We can make it short in page length

15   and expedited so that you-all can move forward with discovery,

16   but after sharing my initial impression, sometimes folks will

17   want to just go back and talk about it some more and see if they

18   can resolve it.

19          Do you have a position on whether you would like to

20   brief the issue up more fully?

21          MS. McNAMARA:  Yes, Your Honor.  I think that I would

22   like to take your invitation to speak more about it I think with

23   our client.  I do want to correct something that Ms. Evans said

24   on the record.

25          It's, you know, the foundation has not been raised.

1   She's never asked a single witness whether any, whether they

2   were aware that any changes were made to policies based upon

3   this litigation or the claim, and if she would have asked that

4   question, she would have received the answer no so she just

5   simply hasn't laid the foundation, but in any event, Your Honor,

6   I do hear you.

7        I do understand the low bar, and what I would like to

8   ask is allow me to have time to speak to my client further about

9   it, and if we want to choose to brief it, we will do so very

10  expeditiously and in a very limited way, but we may elect not

11  to.

12       THE COURT:  That will be fine, and I would like you to

13  take that opportunity to speak with your client.  As a proposal,

14  I would suggest perhaps two weeks for you to notify The Court

15  whether you want to proceed with the briefing.  You can do that

16  by e-mail and we can order a scheduled briefing of that issue

17  and make it a pretty short turnaround and fairly succinct

18  briefing.

19       It's a discrete issue and I think it can be addressed

20  pretty fully.  So will that give you adequate time to talk with

21  your client about it?

22       MS. McNAMARA:  Absolutely, Your Honor.  That's fine.

23  Thank you.

24       THE COURT:  I will do that.  So I'm going to defer

25  ruling on this second issue altogether at this point.  I will

17

1   give Defendants two weeks to notify The Court.

2        Now I want to be clear about the implication of that is,

3   if within that two weeks Ms. McNamara, NBCU decides not to brief

4   this issue, that will effectively waive any opposition to the

5   request at that point.  You'll have to bring this to a head here

6   in the next two weeks, or if you decide that you concede the

7   point, that's fine, too, but that will need to be presented to

8   The Court as a dispute or not within the next two weeks.

9        MS. McNAMARA:  Yes, Your Honor.

10       MS. EVANS:  Your Honor, I apologize, if I could speak

11  just briefly --

12       THE COURT:  Go ahead.

13       MS. EVANS:  -- on timing.

14       Thank you, Your Honor.  We have depositions scheduled of

15  the two witnesses that we will be deposing from the standards

16  department on July 11th and 12th.

17       The timeline that Your Honor has laid out should work

18  fine for us if either NBCUniversal decides to voluntarily give

19  us the policies, or if you consider the motion on a brief

20  briefing schedule, and then we're able to get the documents,

21  that should line up ahead, but I just wanted to say that is a

22  concern for us that we would like those before we depose these

23  individuals, which is where I would talk about did the policies

24  change or not change because of litigation, and the questions

25  that I asked the reporters was whether they acted differently

1   because the standards had changed, and I just wanted to clarify

2   that I have made no misrepresentations about what we've done in

3   discovery, Your Honor.

4         THE COURT:  And y'all can hash out any of that issue in

5   the brief.  I won't take any of the representations here to be

6   any suggestion of impropriety on anyone's part because

7   (unintelligible).

8         So as far as the schedule, I am going to stick with that

9   two weeks.  It will probably be about a one-week period to get a

10  brief in and a one-week period after that.  Then I will get a

11  real quick ruling out.  That should put you in front of that

12  deposition, but to be clear, Ms. McNamara, you don't have to

13  wait that full two weeks.  If you get an answer sooner and are

14  ready to go forward with the briefing on it, the sooner you get

15  it in, the sooner you will get a resolution from The Court and

16  may prevent the need to reschedule or delay those depositions,

17  the depositions that are being scheduled.

18        Thank you for bringing that to my attention, Ms. Evans.

19        MS. EVANS:  Yes, Your Honor.

20        MS. McNAMARA:  And, Your Honor, this is Elizabeth

21  McNamara.  In that regard, Ms. Evans' raising an issue of timing

22  made me realize that there's also an issue of timing with the

23  DOJ documents.  We're deposing Dr. Amin on June 20th, which is

24  fast approaching, and I would just, you know, like to know,

25  assuming, you know, that The Court is going to look at this

1   letter and The Court ends up issuing the order that there needs

2   to be a production, obviously we would like that production

3   before the deposition.  I don't know whether that would be --

4   you know, if there's any impediment to that.

5          THE COURT:  Well, I will take a look at the letter and

6   get a ruling out as soon as we can do here in chambers, and

7   then, Ms. Evans, just endeavor to get that production made as

8   soon as possible and proceed with the deposition as

9   expeditiously as you can, and we will just have to see where

10  that goes, but that sounds like a feasible timeline at least for

11  the ruling, depending on how much time Ms. Evans needs for the

12  production.

13         Hopefully y'all can work that out.  I'm going to leave

14  it to you-all, though, to talk about that after we get off the

15  call and most likely after I have shared the ruling on the

16  production.

17         So our third issue is the request by Plaintiff regarding

18  production of communications with third parties, and as I

19  understand this dispute, there's some narrowing of what's

20  disputed here.  It doesn't sound like Defendant is withholding

21  any documents that were provided by third parties prior to the

22  litigation or any documents that were provided by third parties

23  after the initiation of litigation if they were received by

24  formal discovery request.

25         It's only the documents that may have been obtained

1  after discovery was initiated and that were not received in the

2  course of a formal discovery process.

3       When I say "documents received," as I read the request,

4  the request is for really communications themselves with third

5  parties, between counsel and third parties, as well as any

6  documents that might have been provided to or from, and I'm

7  making a distinction there that jumps out at me but may not be

8  and as important to the parties.  I'll hear from you on that,

9  but to me there is a potential difference between the

10  substantive communications themselves between counsel and third

11  parties and other documents that may have been included with

12  those communications.

13       So as I understand Plaintiff's position is -- well,

14  Defendant's opposition to providing those is a work product

15  objection, and Plaintiff's position is that maybe there are some

16  work product protections in here but it's hard to know without a

17  privilege log, and then in response, Defendant says, "Well, it's

18  not required or practical to log all these documents."

19       So my initial impression on this issue, I don't find

20  either parties' view to be the prevailing one or one that I

21  would necessary go with, and what I mean by that is if, to the

22  extent that Defendants are invoking work product protection for

23  every document and every communication that was ever provided to

24  or from a third party after the litigation was initiated as all-

25  blanket protected by work product, I don't find that the case

1  law necessarily supports that view.

2       There are certainly work product protections for some of

3  those types of documents, but it's not a sort of categorical

4  protection that necessarily would be invoked in blanket fashion.

5  It really depends on the nature of the communication and

6  document and the circumstances of that exchange.

7       On the other hand, the notion that Defendants have to

8  log every single communication and every single document seems

9  not necessarily supported by the law and probably pretty

10  impractical here, too, so I'm not in a position to be able to

11  rule on this because primarily I don't have the documents.

12       I don't really know much about what these documents are

13  or who they were with or what the volume of these documents are

14  or how they were provided or communicated.

15       Ms. McNamara, I suppose the first question that I might

16  have on this one because it seems that there might be some role

17  for The Court in helping you-all try to navigate this and find a

18  mutually agreeable resolution to this one.

19       My first question, do you have a sense of just in terms

20  of raw volume of how many documents Defendant would be

21  withholding that would be responsive to this request that you're

22  invoking work product protection for?

23       MS. McNAMARA:  Yes, Your Honor.  It's extremely limited.

24  I mean, I think that virtually all the documents that or to the

25  degree that there's been a receipt of any documents by third

1 parties in the course of either the defendant's investigation of

2 this claim including its investigation of whether there are

3 particular witnesses, relevant witnesses, virtually all of any

4 such documents have already been produced in the litigation

5 through the normal channels, and so there's really only a

6 handful of documents that are really even, you know, of dubious

7 relevance that would arguably fit into this category.

8 　　　　I do think that Your Honor parses particularly well.  I

9 think there's a real distinction between documents that might

10 have been shared in the course of an investigation or speaking

11 with potential witnesses versus communications with such

12 parties.

13 　　　　I think that those communications are, you know, made in

14 the course of, you know, investigation of the defense and the

15 claims and/or witnesses are automatically work product and that

16 logging them would in effect reveal the communications and

17 eviscerate the work product privilege, and it's our sense, as we

18 put in our submission to Your Honor, that the plaintiff has

19 clearly, you know, engaged in a lot of such communications and

20 hasn't logged any of them, and we haven't asked them to log any

21 of them because we would consider those communications to be

22 work product, so I think there's a distinction between the

23 communications and the documents.

24 　　　　THE COURT:  Ms. McNamara, have you identified documents,

25 using the term to define the term, have you identified items

23

1   that fall under both of those categories?  So it's strict

2   communications between counsel and third party and then I guess

3   for lack of a better term sort of substantive underlying

4   documents, are there both sorts of items that Defendant is

5   withholding?

6        MS. McNAMARA:  Yes.  I mean, there are really just

7   literally a handful of documents, literal documents that have

8   been exchanged that are being withheld, and as far as the

9   communications, I couldn't put a number on them.  I mean, I

10  think, you know, in the course of an investigation and defense

11  of a claim, we have spoken to numerous, you know, potential

12  witnesses and people related to the defense and the claim, and

13  so as far as how many such communications, whether verbally or

14  by e-mail have occurred, I couldn't put any kind of number on

15  those, Your Honor.

16       THE COURT:  Ms. Evans, let me call on you to add

17  anything that you have to this discussion and in particular if

18  you have thoughts with this view towards the distinction between

19  communications involving counsel and other documents, in

20  particular whether Plaintiff is sort of seeking those on equal

21  footing or whether there's some distinction.

22       MS. EVANS:  Thank you, Your Honor.  Yes, we are seeking

23  both, though not verbal.  Those would never be, to my mind --

24  I'm sorry, I could be convinced otherwise, but -- a request for

25  documents is a request for things that are written and that you

1   could either hold in your hand or print out, so certainly we're

2   not asking Defendant to log every communication they had with

3   someone on the phone, but we do believe that any communication

4   with a third party that, you know, results in a memo, which

5   probably wouldn't happen, but probably most likely e-mails or

6   letters, those are responsive if they are regarding the

7   allegations or the defenses, and they are generally

8   discoverable.

9        A communication with third parties is inconsistent with

10   the protection that work product provides because you have to

11   have, to have work product protection, you have to do it in a

12   way that is consistent with keeping it secret from the other

13   side.  Once you've talked to a third party, that's not

14   (unintelligible) in secrecy.

15        The only case they cited on that point was where

16   something was shared with the grand jury, which is certainly a

17   much different situation, so any of their third-party

18   communications or documents exchanged with those third parties,

19   if they are about allegations or defenses, we believe they are

20   relevant, discoverable and should be produced, and it sounds

21   like even including those communications -- and I could be

22   hearing it wrong -- but it sounds like to me it's not an

23   overwhelming amount.

24        Your Honor, this is a particularly important issue for

25   us because of the roadblocks and the law that have been thrown

1    up to us by third parties, and I don't know if the third parties

2    that NBCUniversal have been communicating with are the same ones

3    that are throwing up their hands to us and saying, "We're not

4    going to cooperate, not even going to accept service of

5    subpoenas, not going to confer with you to produce documents,

6    and any time you try to subpoena us for documents or

7    depositions" -- not every time; I'm being a little hyperbolic

8    here -- but we had at least four that I can think of on the spot

9    motions to quash filed on our subpoenas.

10           We've had witnesses as clearly relevant as Dawn Wooten

11   herself, the alleged whistleblower that appeared on camera, she

12   is refusing, her counsel is refusing to work with us to even

13   confer about what documents she has, and he's saying basically

14   "Come and get me; file a motion to compel," which we're going to

15   have to do, and we're fighting a motion to quash by them for her

16   deposition.

17           So these witnesses are telling us, "You can't get it;

18   it's not relevant; you're burdening us; you're harassing us,"

19   and they are telling courts this, District Courts across the

20   southeast, but they are willingly giving documents to Defendant.

21           It cuts against what we're having to go through, which

22   is why we're here, you know, on the motion to ask for more time

23   in discovery because of the lack of cooperation we're getting

24   from third parties.

25           So those communications that Defendant is having -- and

1    they are having something; they are saying it and the third

2    parties are telling us, too.  They are sort of using that as a

3    nanna-nanna-boo-boo to use a kind of informal term.

4          "We've got these documents but they are protected by

5    some common interest privilege or joint defense privilege and we

6    can't give them to you," and those are privileges that Defendant

7    doesn't even claim.

8          So we feel like this is very important.  There's no

9    protections to those documents generally, and then when you add

10   the factual situation that we're dealing with with the third

11   parties and how it may be different with what's happening with

12   defendants, it makes it even more relevant, Your Honor.

13         THE COURT:  Well, I do find that this is a very fact-

14   specific inquiry and it's likely to require some view of the

15   individual documents that are at issue here.  Looking at the

16   case law, there are nuanced points about disclosure to a third

17   party.

18         There's some discussion in the case law about the fact

19   that mere communications with a third party aren't necessarily

20   going to waive the work product, but rather it will depend on

21   the likely (unintelligible) with which those communications

22   would make that material more accessible to the opposing party.

23         That's a fact-specific inquiry and one that will

24   probably depend on the nature of the communications and the

25   circumstances of the communications, so it's not going to be a

1   blanket either waiver or protection.  It's going to require some

2   focus there.

3        It sounds to me like Plaintiff is also potentially

4   invoking the substantial need for these documents, maybe to

5   overcome these, based on impediments created by some of the

6   third parties in the course of third-party discovery in this

7   case.

8        My inclination here -- again, I realize I'm somewhat

9   talking out of both sides of my mouth because I'm saying I'm

10  typically averse to conducting much in camera review, but based

11  on the nature of these, I think the question here is whether

12  these documents really even need to be logged in the first place

13  so that there can be a (unintelligible) dispute over the

14  documents, briefed out more thoroughly, and so it occurs to me

15  that, again, I may need to take a look at these communications

16  that are being withheld under the work product protection and

17  determine if they need to be logged so that the parties can try

18  to brief that issue up more.

19       Ms. McNamara, I'm going to give you an opportunity to

20  comment before I make a determination on that.

21       MS. McNAMARA:  Thank you, Your Honor.  Yes, I would make

22  a few comments.  I don't think that -- I mean, I can state

23  categorically that no documents are being withheld that would

24  inform the issues that Ms. Evans raised concerning, you know,

25  third-party witnesses being unwilling to produce documents or

1    testify.

2           There's nothing relevant to that.  I'm happy to provide

3    The Court with examples of this.  I would ask, however, if

4    there's going to be any kind of necessity of logging any

5    communications with third parties -- and those communications

6    being, you know, if you send an e-mail to someone and say, "Can

7    we have a conversation; I would like to speak with you" -- we

8    would ask that that be, you know, reciprocal because we know

9    that such communications have occurred by the plaintiff with the

10   various witnesses.

11          I mean, there's been a production of various affidavits,

12   for example, and those just haven't appeared out of whole cloth.

13   Presumably there were communications that were associated with

14   the development and production of those documents, so we would

15   ask that it run both ways, if there's going to be any such

16   order, but in the short term, what I'm happy to do is to provide

17   The Court with, you know, in camera, you know, representative

18   examples of, you know, what we're talking about here so The

19   Court can assess the work product, and finally, Your Honor, I

20   would respond clearly the work product privilege does apply to

21   communications with third parties when it's done with an

22   expectation of confidence in the development of defenses,

23   particularly when the third parties may have in certain respects

24   coextensive positions.

25          THE COURT:  And I don't disagree with that statement of

29

1   law.  How it applies here will depend on the unique

2   circumstances of the documents themselves.

3          I am going to have you go ahead and submit -- I'd like

4   you to go ahead and submit all the documents.  I don't think

5   there's a need to do an example set.  Go ahead and collect and

6   submit those for in camera review, and as far as the reciprocal

7   obligation, I think it's premature to even take that issue up

8   for two reasons.

9          One is that in order for The Court to impose any sort of

10  reciprocal obligation, I just need to know that, One, that

11  there's a discovery request that's now out there from Defendant

12  to Plaintiff, and, then Two, that there's opposition from

13  Plaintiff in providing those at all.

14         It may be that following this call that y'all can work

15  that out and that there's confidence that there's nothing being

16  withheld by Plaintiff that would be analogous to what's being

17  withheld by Defendant.  There may not be a need for any other

18  court intervention on that issue.

19         But I would like you to go ahead and present those

20  documents for in camera review.  I'm not going to make a

21  determination based on that in camera review as to the final

22  privilege concern but rather simply whether those documents need

23  to be logged for the purpose of any privilege dispute, so

24  understand that there's going to be at least one additional step

25  in resolving the overall dispute.

1          Of course, none of that stops y'all from having a

2    conversation and conferring about these issues.  I do think that

3    there's probably, it might benefit really from some conferral

4    and some open-minded assessment of the case law.  There is

5    nuance in these issues, and by that I mean there's nuance to the

6    determination as to whether it is privileged in the first place.

7    There is nuance as to whether it's been waived.  There's nuance

8    as to whether there's substantial need.

9          Witness statements receive often special treatment under

10   the work product doctrine that is different for the

11   communications in the substantive document.  It's worth looking

12   at those, and hopefully you-all can reach some compromise on

13   some of these and narrow the dispute over documents as much as

14   possible, meaning you can identify ones that do need to be

15   provided or ones that you agree don't need to be provided and

16   that you can focus this dispute as much as possible.

17         So Ms. McNamara, how much time do you need to get those

18   documents in for an in camera review?

19         MS. McNAMARA:  I guess ten days, Your Honor.  I mean,

20   again, I just want for clarity purposes, by "documents," it

21   sounds like Ms. Evans is seeking any e-mail communication with

22   any third party, and I assume this would not apply to potential

23   experts or something like that.

24         I mean, there's no question that that would be all

25   privileged, so it seems what this is applying to are

1   communications with or what I understand what this is attempting

2   to be applied to are communications with witnesses, so there's

3   like the Oldaker plaintiffs that Ms. Evans has identified who

4   are objecting to, you know, certain discovery, and then there

5   are communications with, you know, other kind of witnesses,

6   sources or the like that the plaintiff has reached out to.

7          So I would assume that that's the area we're talking

8   about, but if we're talking about producing any and all e-mails

9   of such communications versus documents, you know, physical

10  documents received, the physical documents we can identify and

11  turn over very quickly.

12         Gathering any and all e-mails is a more time-consuming

13  process, to search and find, so --

14         THE COURT:  Let me address those concerns to Ms. Evans.

15         Ms. Evans, first question, I will ask it very directly:

16  You agree that communications between Defendant's counsel and

17  their expert witnesses are not included in this dispute?

18         MS. EVANS:  Correct.

19         THE COURT:  So that carves off one category.  There's no

20  need to collect or submit any of those for in camera review.

21         Another question, Ms. Evans:  If there is an e-mail

22  communication between counsel and a third party that relates to

23  purely ministerial or administrative matters, just merely

24  scheduling a call or something of that nature that wouldn't

25  really provide any substantive information about any of those

1    communications that have no real relevance to the merits of the

2    case here, do you agree that those would not need to be provided

3    as well?

4            MS. EVANS:  Correct, as long as there's no substance.

5            THE COURT:  Ms. McNamara, does that help narrow it down,

6    to there's additional facts or communications?

7            MS. McNAMARA:  Yes, that does.  That helps a lot, Your

8    Honor.

9            THE COURT:  I don't construe this dispute or request to

10   encompass any of those two excluded categories.  They certainly

11   do not need to be collected and do not need to be submitted for

12   in camera review.

13           Ms. McNamara, I interrupted you.  Go ahead, I'm sorry.

14           MS. McNAMARA:  No, no, that was it, Your Honor.  So I

15   think with those exceptions, that clarifies things.  I would

16   think maybe we should have the same two weeks time that you

17   proposed with the other submission.

18           THE COURT:  I think that will be fine.  So if you will

19   get those in by close of business on June 23rd, that will be

20   fine.

21           MS. McNAMARA:  Thank you, Your Honor.

22           THE COURT:  Well, I think that covers the three

23   disputes.  I understand that it hasn't provided full resolution

24   to everything here in the call, but I think we've advanced this

25   a good bit, and again I want you to be encouraged to continue to

33

1   talk about this.

2        The fact that we've sort of established a framework for

3   trying to resolve some of this doesn't necessarily in any way

4   derail you-all from trying to reach agreements and conferring on

5   it.  Oftentimes I say that not because I'm disinclined to define

6   these issues.

7        It's more because the parties who are immersed in the

8   facts and the disputes often can find better compromises that

9   are more suitable to everyone than I can in the case when it

10  comes to discovery, but, of course, sometimes you just can't

11  bridge that gap, and I'm glad to resolve them for you, so keep

12  talking.  That's the takeaway there.

13       Ms. Evans, are there any other issues that you would

14  like to raise today?

15       MS. EVANS:  No, Your Honor.  Thank you so much for your

16  time.

17       THE COURT:  Ms. McNamara, anything else you would like

18  to raise?

19       MS. McNAMARA:  Actually, yes, Your Honor.  I think kind

20  of in, I think, the vein of your suggestion to try to be

21  creative and try to resolve these things, we have, you know, run

22  up against a wall with the ICE and certain government agencies

23  with producing documents, and we've also have run up against an

24  entire wall with the LaSalle, which is -- LaSalle Southeast,

25  LLC, which is a private entity that was running the detainee

1   facility at issue here, and they -- and so we need to proceed I

2   think with motions to compel on both of those and today's and I

3   know that LaSalle had jumped the gun before they even had a

4   conversation with us and they filed a motion in this court and

5   Your Honor had denied it saying there was a lack of jurisdiction

6   because the documents were supposed to be produced in New York

7   where we issued the subpoena from.

8        And I was wondering in trying to resolve this -- and

9   again I'm just trying to think creatively -- in filing these

10  motions, if we obtain the agreement of all the respective

11  parties to have those motions filed before this Court who is

12  familiar with the issues in the case, would The Court entertain

13  such motions, or do we need to proceed with filing them in New

14  York or elsewhere that might be the appropriate jurisdiction?

15       THE COURT:  Well, I understand the sentiment there.  I

16  realize that the process and going to initiate what are often

17  initiated as sort of miscellaneous actions in those other

18  districts can be not the easiest process.

19       I get that.  The issue that I have is the language of

20  Rule 45 doesn't really contemplate any sort of agreement by the

21  parties to have that dispute sort of on their own transferred

22  and addressed here.

23       In my experience in private practice, before the changes

24  to Rule 45 where you have these kind of disputes wherever it

25  made sense, usually where the litigation was pending, but that

1    Subsection (unintelligible) 45 now really suggests that it has

2    to go in the court where there's compliance.

3          Now, nothing stops anyone from going to the judge who is

4    presiding over that dispute and saying, "We really want this to

5    come back to the court where the action is pending; that judge

6    has knowledge of the dispute and the case and the parties."

7          And I think, not speaking for all my colleagues across

8    the country, but there's often a willingness to transfer that.

9    You are free to represent that I'm glad for any of these

10   disputes to come back to this district, and I will gladly take

11   them up and rule on them, but I do feel bound to adhere to Rule

12   45 and its provisions there and that, if you stick to the

13   language of the rule, it's got to be adjudicated there first or

14   at least raised there first and then sent back here.

15         MS. McNAMARA:  Thank you very much, Your Honor.  I was

16   just trying to be creative to see if we could short-circuit

17   that, but I really appreciate that.  That's very helpful.

18         THE COURT:  Ms. McNamara, I completely get the concern,

19   and if you come across authority that suggests that that

20   language in 45 isn't mandatory and that you're able to, by

21   consent, have them heard here, provide it to The Court and I

22   will be open to considering that, but I'm just going based on

23   the plain language of the rule right now.

24         MS. McNAMARA:  Great, thank you.  We will move forward

25   to see if it's possible.

1        THE COURT:  Please do.  I would welcome the education on

2   it if there's something out there so ...

3        Well, thank you all very much.  I'm not going to set

4   another call except for maybe one at the end of this extended

5   discovery period right now, but because we've got some of these

6   disputes that are playing out on the timelines that are

7   discussed here, you're welcome to request a call like this where

8   we can just hash through some of these issues.

9        Just reach out to Ms. Mixon by e-mail and explain what's

10  going on and I'm glad to jump on and try to help you work

11  through it.  But otherwise, it's likely to be just those written

12  submissions going forward until the end of the renewed or rather

13  extended discovery period.

14       Thank you all very much.  I hope y'all have a good rest

15  of the day and a good weekend as well.

16       MS. EVANS:  Thank you, Your Honor.

17       MS. McNAMARA:  Thank you very much, Your Honor.  Good,

18  bye-bye.

19            (Proceeding concluded at 9:07 a.m.)

20

21

22

23

24

25

37

1                        CERTIFICATION

2

3         I certify that the foregoing is a true and correct

4    transcript of the stenographic record of the above-mentioned

5    matter.

6

7

9    _____        06/13/2023

10   Debra Gilbert, Court Reporter         Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25