UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., <br><br> Plaintiff, <br><br> v. <br><br> NBCUNIVERSAL MEDIA, LLC, <br><br> Defendant. | Case No. 5:21-cv-00056-LGW-BWC |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Plaintiff Dr. Mahendra Amin moves the Court for an order compelling Defendant NBCUniversal to make discovery pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) and S.D. Ga. L.R. 26.5.[1] Dr. Amin requests the Court compel NBCUniversal to search for and produce (1) all scripts and draft scripts regarding gynecological medical care of women detained by the United States Immigration and Customs Enforcement (ICE) at the Irwin County Detention Center (ICDC) reviewed by NBCUniversal's Standards employees and communications regarding the review and consideration of those scripts (Request for Production No. 47) and (2) communications regarding Dr. Amin or gynecological health services for women detained by ICE at ICDC (Requests for Production Nos. 1-2).

Specifically, this encompasses all documents responsive to Request for Production No. 47 for the nine members of the Standards team  and all documents responsive to Requests for

---

[1] Pursuant to Federal Rule of Civil Procedure 37(a)(1) and S.D. Ga. L. R. 26.5, Dr. Amin through counsel attaches as Exhibit 1, a certification that the movant has in good faith conferred with NBCUniversal, the party failing to make discovery, in an effort to obtain discovery without court action.  Also attached to this motion is Exhibit 2, a transcript of a telephone conference held by Magistrate Judge Cheesbro on August 31, 2023, pursuant to Judge Cheesbro's informal discovery dispute resolution process.

1

Production Nos. 1-2 for at least the following individuals that discovery has demonstrated have discoverable information as to decisionmakers at NBCUniversal's decisions to publish statements at issue in this lawsuit, because they are either among those decisionmakers, appear in correspondence with such decisionmakers, or are members of the Standards team that may have reviewed scripts or been involved in discussions thereof (according to testimony of the Deputy Head of Standards Chris Scholl): Alexander Price, Betsy Korona, Brendan O'Melia, Casey Dolan, Chris Hayes, Chris Scholl, Cort Harson, Cory Gnazzo, Daniella Silva, David Sternlicht, Denis Horgan, Diane Shamis, Isaac-Davy Aronson, Jacob Soboroff, Jason Cummings, Julia Ainsley, Kelsey Desiderio, Lisa Rubin, Luciana Lopez, Marian Porges, Mark Schone, Mary Lockhart, Mirta Ojito, Nicolle Wallace, Patrick Burkey, Rachel Maddow, Rawan Jabaji, Regina Donizetti, Rich Greenberg, Robin Gradison, Steve Thode, Susan Sullivan, Tina Cone, and Tricia McKinney, plus Standards employees not listed here, as well as distribution lists for Standards or the programs that published the allegedly defamatory broadcasts.[2]

      As provided by S.D. Ga. L.R. 26.5, Dr. Amin below sets forth (a) verbatim quote of each discovery request to which the motion is taken, (b) the specific ground for the motion, and (c) the reasons assigned as supporting the motion, written in immediate succession to one another. Further, Dr. Amin respectfully requests that the Court hear NBCUniversal and order NBCUniversal to pay Dr. Amin's reasonable expenses incurred in making the motion, including attorney's fees.

---

[2] NBCUniversal lists 23 of these individuals as having received a litigation hold notice for this litigation; the additional names consist of members of the Standards team during the relevant time period and/or appear on documents produced in this litigation. Ex. 1, Certification and Declaration of Stacey G. Evans (Sept. 15, 2023), ¶ 19.

2

## BACKGROUND

Dr. Amin alleges that NBCUniversal defamed him by publishing statements about him including that he performed "mass hysterectomies" and "unnecessary and unconsented to procedures" on women detained by ICE at ICDC and portraying him as "an abusive, unethical, and dishonest physician who treated and operated on immigrant women in an abusive fashion, without consent, and motivated by profit instead of quality healthcare." Doc. 49 ¶¶ 1, 4, 74-89. After largely denying NBCUniversal's motion for judgment on the pleadings, most of Dr. Amin's allegations remain. He now must prove that NBCUniversal published the defamatory statements with actual malice, that is, that NBCUniversal "[knew] that [a statement] was false or [made the statement] with reckless disregard of whether it was false or not." Doc. 59 at 27, 66 (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016)).

On June 5, 2023, Dr. Amin served on NBCUniversal his third request for production of documents, including a request at issue in this dispute. This included a request for "all scripts or drafts of scripts regarding allegations of mistreatment and/or inappropriate gynecological medical care of ICE detainees at the ICDC that were reviewed by Standards (as that term has been used in deposition testimony in this litigation), including but not limited to, review by Chris Scholl, Mark Schone, Steve Thode, Mary Lockhart, or Besty Korona, and all communications and other documents regarding such reviews." Dr. Amin made this request in response to (1) discovery demonstrating that Standards, which was involved in reviewing the broadcasts at issue in this case, also reviewed and corresponded regarding other broadcasts and an article that served as a source for the broadcasts, and (2) testimony from Scholl that the nine employees in Standards work as a team and any one of the nine could have reviewed any script that came in

for review.  Ex. 1, Certification and Declaration of Stacey G. Evans (Sept. 15, 2023), ¶¶ 2-8. NBCUniversal responded on July 10 with its responses and objections.

Dr. Amin conferred in good faith in an attempt to resolve the dispute without intervention of the Court. During the deposition of Scholl and the conferral process on Request for Production No. 47, it became clear that NBCUniversal had not responded fully to Requests for Production Nos. 1-2.

After conferrals proved unsuccessful at resolving the dispute, and when the parties agreed that intervention of the Court would be necessary, Dr. Amin began an informal dispute resolution process by alerting the Court to the dispute via email.  *Id*. ¶¶ 9-10.  The Court convened a telephone conference on August 31, 2023.  Ex. 2, Transcript of Telephone Motions Hearing Before the Honorable Benjamin M. Cheesbro (Aug. 31, 2023).  The Court ordered the parties to further confer and, if an agreement on the dispute could still not be reached, for Dr. Amin to file a motion to compel.  *Id*., 52:20-22.  Despite further conferrals, the parties were unable to reach agreement.  Ex. 1 ¶ 21.  Thus, Dr. Amin now moves to compel as instructed.

## ARGUMENT

As required by S.D. Ga. L.R. 26.5, Dr. Amin below sets forth (I) verbatim quote of each discovery request to which the motion is taken, (II) the specific ground for the motion, and (III) the reasons assigned as supporting the motion, written in immediate succession to one another.

### I. Each Discovery Request to Which the Motion is Taken

This dispute arises from Dr. Amin's Request for Production of Documents 47, which reads:

> Please produce all scripts or drafts of scripts regarding allegations of mistreatment and/or inappropriate gynecological medical care of ICE detainees at the ICDC that were reviewed by Standards (as that term has been used in deposition testimony in this litigation),

4

> including but not limited to, review by Chris Scholl, Mark Schone, Steve Thode, Mary Lockhart, or Besty Korona, and all communications and other documents regarding such reviews.

The dispute also implicates Dr. Amin's Request for Production of Documents 1 and 2:

> 1. Please produce any and all documents referring to, reflecting, or relating to internal communications relating to the Broadcasts, Dr. Amin, or gynecological health services for detainees at ICDC, including, but not limited to, e-mails, letters, memoranda, phone messages, videos, or notes of any conversations (whether in person or otherwise).
>
> 2. Please produce any and all documents referring to, reflecting, or relating to communications between you and any third party relating to the Broadcasts, Dr. Amin, or gynecological health services for detainees at ICDC, including, but not limited to, e-mails, letters, memoranda, phone messages, videos, or notes of any conversation (whether in person or otherwise).

## II. The Specific Ground for the Motion

Dr. Amin moves the Court to compel responses to Requests for Production Nos. 1-2 and 47 because responses are relevant to the issue of actual malice, that is, whether NBCUniversal published the statements at issue with knowledge of their falsity or in reckless disregard of whether the statements were false.

"The Federal Rules of Civil Procedure 'strongly favor full discovery whenever possible.'" *Frazier v. Se. Ga. Health Sys., Inc.*, Case No. 2:21-cv-21, 2023 WL 4110078, at *2 (S.D. Ga. June 21, 2023) (quoting *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)). Accordingly, parties to litigation "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Id*. (quoting Fed. R. Civ. P. 26(b)(1)). This Court has ruled that the party moving to compel bears the burden of showing that the sought information is relevant, but where

5

the information is relevant on its face the party resisting discovery bears the burden of showing the request is unreasonable or unduly burdensome. *Id*. (citations omitted).

As the Court emphasized during the telephone conference as to a different dispute: "[O]f course, at this point we're only discussing discoverability and not admissibility and not making any determinations about how any of this or the substantive evidence might bear on the ultimate resolution of the issues in the case. I just wanted to emphasize that point. It also influences my thinking in resolving these disputes." Ex. 2, 22:7-12.

### III.    Reasons Assigned as Supporting the Motion

S.D. Ga. L.R. 26.5 requires that Dr. Amin below set forth "the reasons assigned as supporting the motion, which shall be written in immediate succession to one another." Here are the reasons that the discovery sought in Request for Production Number 47 are relevant, not disproportionate, and timely:

**A. The Requested Information is Relevant.**

As a plaintiff alleging defamation under Georgia law, Dr. Amin must prove that the statements at issue were false and made with actual malice. To do so, he is entitled to obtain from NBCUniversal, the adverse party in this case, "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance for discovery "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (quotation marks omitted). Further, the Federal Rules of Civil Procedure "strongly favor full discovery whenever possible, and therefore "a civil litigant is generally entitled to any information sought if it

6

appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. (quotation marks omitted).

As the Court stated during the telephone conference: "I'll just observe that if this is a question about knowledge and contemporaneous assessments about the veracity of reporting and motivations in reporting or assessments of the material that's being reported, those are likely to be discoverable for the purposes of proving up either truth or falsity and actual malice, and so that says nothing as to admissibility or exactly how they will affect the ultimate outcome, but those strike me as material that will likely be discoverable." Ex. 2, 36:11-18.

Indeed, discovery has demonstrated that Standards employees reviewed and corresponded with producers regarding the broadcasts specifically named in the complaint, the article that served as a source for the broadcasts, and other broadcasts that aired on NBCUniversal. Ex. 1 ¶ 3. Christopher Scholl, the Deputy Head of Standards at the time of the broadcasts at issue, testified in his deposition as to "the Irwin County Detention Center stories," he did not "recall specifically reviewing scripts," but "I know I was involved in—you know, working with reporters and teams on it." *Id*. ¶ 4. There were at least six other MSNBC shows that ran stories regarding Dr. Amin or ICDC. *Id*. ¶ 9. Further, NBCUniversal employees were instructed to have Standards review drafts of scripts regarding Dr. Amin or ICDC, and Standards did so. *Id*. ¶ 4-5. In part of his review of the article that served as a source for the broadcasts, Scholl expressed "concerns" he wanted to have addressed "before going with this" story. *Id*. ¶ 6. Others involved in the article which served as a source of the broadcasts, including even the reporters of the article, also expressed their concerns. *Id*.

Accordingly, the foundation for requesting these documents is sufficiently laid: (1) Standards and others expressed concerns regarding Dr. Amin and ICDC stories; (2) Standards

requested to review scripts for Dr. Amin and ICDC stories; (3) multiple members of Standards were part of reviewing the broadcasts and the article that served as a source for some of the broadcast statements and any one of them could have been involved in the review of other scripts sent for review (or even the ones at issue); (4) members of the Standards team communicate directly with reporters, journalists, producers, and on-air talent regarding scripts and show ideas; and (5) other stories were contemplated and/or aired.

Further, discussions among employees regarding Dr. Amin or ICDC as general matters, not necessarily tied to any particular broadcast are also relevant because NBCUniversal's Twitter posts are at issue in the case.  Doc. 49 ¶ 89.  NBCUniversal's motion for judgment on the pleadings does not move for dismissal as to the Twitter posts, and the Court's order largely denying that motion did not dismiss those allegations.  *See generally* Docs. 52; 59.  Further, contrary to opposing counsel's contention during the telephonic conference, Dr. Amin is pursuing those claims and has asked deposition questions regarding Twitter posts.  Ex. 1 ¶ 23.  In the deposition of Chris Hayes, the host of All In, Mr. Hayes even testified that he had reviewed Twitter posts as part of his preparation for his deposition.  *Id*.

Dr. Amin is entitled to discovery regarding what statements Standards allowed and did not allow regarding Dr. Amin, as well as discussions supporting those decisions and a comparison of the timing of those reviews and discussions and the broadcasts at issue and the Twitter posts.

As to NBCUniversal's arguments to the contrary, the case authority it has cited is inapposite.  For example, in an email as part of the Court's informal dispute resolution process, NBCUniversal quoted *Dongguk Univ. v. Yale Univ*., 873 F. Supp. 2d 460, 465-66 (D. Conn. 2012).  As an initial matter, *Dongguk* was decided on a motion for reconsideration of an order on

summary judgment, *id*. at 463, and the Court emphasized, discovery disputes like this are "about discoverability and not admissibility;" Ex. 2, 46:6-8; they are certainly not about the presence or absence of an issue of material fact for purposes of summary judgment. Further, in that case, the (non-precedential district court in a different circuit) court ruled that "an organizational defendant is not charged with the collective knowledge of all its agents and employees for purposes of the actual malice inquiry," but that also it is liable for actual malice of agents or employees that "participated in the publication of the statement in question." *Id*. Accordingly, agents and employees who "approve" published statements "are thus responsible for" them, and are relevant to the actual malice inquiry. *Id*. at 468-69. As discussed herein, discovery has demonstrated that Standards and others did participate in the publications at issue, and it is from those individuals—and those that shared information with them and other decisionmakers, such as producers and on-air talent— that Dr. Amin seeks discovery.

NBCUniversal next cites to *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), which was decided on review of a jury award rather than a discovery dispute, and likewise specified that the actual malice standard for an organization *is* relevant as to such "persons in the . . . organization having responsibility for the publication of the [statements]." *Id*. at 287.

The same is true of *Holbrook v. Harman Auto., Inc.*, 58 F.3d 222 (6th Cir. 1995), another non-precedential decision on summary judgment that NBCUniversal cited. There, the Sixth Circuit held that, while the plaintiff had not set forth sufficient evidence to prove its theory: "If a plaintiff could prove that the agent of the organization who supplied the information to the ultimate publisher acted with actual malice, he could maintain an action against the organization based on the communication to the ultimate publisher." *Id*. at 226.

Discovery to this point has shown that many individuals were involved in the publication of the allegedly defamatory statements, were involved in decision-making, and shared information with decision-makers, and the case law NBCUniversal has cited indeed underscores that Dr. Amin is entitled to documents those individuals have.

**B. The Request is Proportional to the Needs of the Case.**

NBCUniversal argued in the telephone conference that Dr. Amin's request constitutes an "extraordinary intrusion at this point." Ex. 2, 10:2-6. It further argued that counsel for Dr. Amin "wants draft scripts. She wants all communication. She wants everything concerning other news programs that have nothing to do with the three programs at issue in this litigation." *Id.*, 38:4-7. NBCUniversal argued, ridiculously, that if it complied with Request for Production 47, "the discovery will grow exponentially, and we will be here for another six months at least because there would be no way that one could even begin to undertake that and do a thorough job." *Id.*, 38:10-13.

The Court saw through this characterization: "But I do not understand [Dr. Amin's counsel's] request to be sort of looking in every back file, every filing cabinet in the entire NBCU organization, regardless of any connection, but rather if there was some basis for it contributing or lending material or suggesting something about these disputed broadcasts, that would be it, so we're going to leave that issue there." *Id.*, 42:11-16. Although counsel for NBCUniversal objected that "we are totally on a fishing expedition," *id.*, 39:15-16, the Eleventh Circuit has held: "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Akridge*, 1 F.4th at 1278 (quotation marks omitted).

Indeed, the face of Request for Production Number 47 clearly is limited to "scripts and drafts of scripts" concerning the topics that are about the same topics as in the disputed Broadcasts, as well as "all communications and other documents regarding such reviews" that were made "*by Standards*." (emphasis supplied). At the telephonic conference, the Court distinguished, for purposes of discoverability, whether information was being sought as to a "spoke" that operated completely distinctly from the publication of the allegedly defamatory statements, or a "hub" that was involved in the statements at issue. *See* Ex. 2, 41:18-42:7. Contrary to NBCUniversal's characterization, Dr. Amin is not attempting a fishing expedition of every NBCUniversal employee (each "spoke"), but rather, for Request for Production No. 47, only those people, in Standards, who served as a "hub" as part of the decision-makers in publication of the statements that Dr. Amin alleges defamed him, or others who corresponded with those decision-makers. This request is specifically seeking documents from nine individuals, plus the email distribution list they shared, as well as scripts and drafts of scripts sent to Standards for review. Ex. 1 ¶ 21. All members of the Standards team (nine individuals) were known to NBCUniversal as likely having relevant knowledge from the beginning. Indeed, according to documents produced in the case, Standards requested that all scripts regarding Dr. Amin and ICDC be sent to them for review. Specifically, those emails directed producers and others to send scripts to Jason Cummings, *id*. ¶ 4, one of the individuals whose documents have not yet been produced to Dr. Amin. Inexplicably, NBCUniversal also did not issue a litigation hold notice to Mr. Cummings or several others on the Standards team, including one person who appears on NBCUniversal's privilege log. *Id*. ¶ 20.

This request is nothing new. The dispute that occurred as a result of Request for Production No. 47 demonstrates NBCUniversal's failure to adhere to Dr. Amin's Requests for

Production Nos. 1-2. Those requests were obviously not limited to any particular broadcast, because they both request documents "relating to the Broadcasts, Dr. Amin, or gynecological health services for detainees at ICDC." Communications involving reporters, producers, show teams, or Standards employees helping to determine what NBCUniversal published are relevant to the actual malice of NBCUniversal in publishing the statements in the broadcasts at issue, because such communications can demonstrate NBCUniversal's subjective knowledge or reckless disregard of falsity regardless of whether they relate to any particular broadcast. For example, if producers for The Rachel Maddow Show and All In, or a member of the Standards team and a producer from any of the broadcasts at issue, exchanged emails discussing Dr. Amin or ICDC as a general matter after the shows at issue aired and discussed how they never believed there were mass hysterectomies, that would certainly be relevant, even if not tied to a particular broadcast. Of course, other such scenarios exist, and the bottom line is that if there were discussions that include one or more of any of the producers, reporters, or on-air talents of the shows at issue in the case, or Standards employees who may have had a role in what statements were made in the broadcasts, then those discussions are relevant to the issues of knowledge and actual malice. As the Court stated: "the notion that the members of standards or individual reporters may have encountered draft scripts that contained different or contrary information or suggested that something that ended up in the final September 15th and September 17th reports was untrue could potentially bolster, if not necessarily on its own prove, falsity or actual malice, and so my initial impressions here are that those are more likely to be discoverable." Ex. 2, 31:3-13; *see id.*, 36:9-20 (stating same as to "internal communications about those issues").

Further, although "the inquiry here for the defamation claims is about knowledge at the time of the alleged defamatory statements," *id*. 35:17-21, Dr. Amin submits that the requested

documents are reasonably calculated to lead to admissible evidence even as to drafts and communications made after the broadcasts. This is because such documents could shed light on the knowledge and actual malice of NBCUniversal decision-makers had prior to the communications themselves. For example, *after* publication of the article that served as a source of the broadcasts at issue, one of the article's reporters texted the other that he had heard, prior to the article's publication, "mixed things" about the "whistleblower" source of the September 14 letter. Ex. 1 ¶ 11. During the same conversation, the reporters exchanged other reasons to doubt the veracity of the published statements, which NBCUniversal had not provided to the audience. *Id*. The communication, although it took place after the article that was its subject, is relevant to the reporters' and NBCUniversal's knowledge and actual malice at the time of the article. For another example, if, after the Senate Report that concluded Dr. Amin had only conducted two hysterectomies (both found by ICE to be medically necessary), Scholl emailed another person to state, "this is why I had concerns," that would be a relevant communication despite taking place after the broadcasts at issue. Accordingly, while respectfully cognizant of the Court's observation that "knowledge that may have been gained after the fact is . . . not likely to be discoverable or relevant knowledge," Dr. Amin proposes that responsive documents dated after the dates of the broadcasts are nevertheless discoverable in that they may constitute evidence of knowledge that was gained *before* the publication of the statements at issue in this case.

**C. The Motion is Timely.**

During the informal resolution process, NBCUniversal referred to Dr. Amin's efforts to obtain the discovery requested here as essentially "too late." Not so. First, any passage of time before bringing the matter to the Court's attention was part of Dr. Amin's counsel's obligation to work with diligence to avoid a discovery dispute and confer in good faith or seek alternative

13

ways to access the information, which was done through taking depositions and considering other document requests. *See generally* Ex. 1.

Second, discovery in this case is open and does not close until October 4. Doc. 80 at 2. Dr. Amin is not requesting any extension of the discovery period to review the information requested here. Given that NBCUniveral has already preserved and allegedly ran search terms on 23 of the custodians at issue, *id*. ¶ 19, running the search terms for the additional custodians and producing the responsive documents should not be extremely time consuming. Indeed it is NBCUniversal's delay in responding to document requests to which it did not object that requires Dr. Amin to make the instant motion. It is disingenuous to refuse to produce documents and then object to the timeliness when it becomes clear to the other side that you did not respond as represented and that there is no alternative to moving to compel after engaging in a good faith conferral.

### IV. NBCUniversal Should Pay Dr. Amin's Reasonable Expenses Incurred in Making this Motion

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a court grants a motion to compel pursuant to Rule 37, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." While there are three exceptions to this requirement, Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii), none exist here. As demonstrated above and in the certification and declaration attached as Exhibit 1, counsel for Dr. Amin attempted in good faith to obtain the discovery without court action. NBCUniversal's refusal to provide the discovery was not substantially justified, as the requested discovery was plainly relevant, proportional to the needs of the case, and timely, for the reasons discussed above. And further, as to two requests at issue,

NBCUniversal did not object to production, but simply failed to comply with the requests. Finally, no other circumstances make an award of expenses unjust. Accordingly, Dr. Amin respectfully requests the Court hear NBCUniversal and require it to pay the reasonable expenses he incurred in making this motion, including his attorney's fees.

## CONCLUSION

For the reasons set forth above, Dr. Amin requests that the Court compel NBCUniversal to search for and produce documents responsive to Request No. 47, as well as Requests No. 1 and 2. Specifically, this encompasses all documents responsive to Request for Production No. 47 for the nine members of the Standards team and all documents responsive to Requests for Production Nos. 1-2 for at least the following individuals that discovery has demonstrated have discoverable information as to decision-makers at NBCUniversal's decisions to publish statements at issue in this lawsuit, because they are either among those decision-makers, appear in correspondence with such decision-makers, or are members of the Standards team that may have reviewed scripts or been involved in discussions thereof (according to testimony of the Deputy Head of Standards Chris Scholl): Alexander Price, Betsy Korona, Brendan O'Melia, Casey Dolan, Chris Hayes, Chris Scholl, Cort Harson, Cory Gnazzo, Daniella Silva, David Sternlicht, Denis Horgan, Diane Shamis, Isaac-Davy Aronson, Jacob Soboroff, Jason Cummings, Julia Ainsley, Kelsey Desiderio, Lisa Rubin, Luciana Lopez, Marian Porges, Mark Schone, Mary Lockhart, Mirta Ojito, Nicolle Wallace, Patrick Burkey, Rachel Maddow, Rawan Jabaji, Regina Donizetti, Rich Greenberg, Robin Gradison, Steve Thode, Susan Sullivan, Tina Cone, and Tricia McKinney, plus Standards employees not listed here, as well as distribution lists for Standards or the programs that published the allegedly defamatory broadcasts. Further, Dr. Amin requests the

Court hear NBCUniversal and require it to pay Dr. Amin's reasonable costs incurred in making this motion.

Respectfully submitted this 15th day of September 2023.

/s/ **Stacey G. Evans**
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com
Tiffany N. Watkins
Georgia Bar No. 228805
twatkins@staceyevanslaw.com
J. Amble Johnson
Georgia Bar No. 229112
ajohnson@staceyevanslaw.com

STACEY EVANS LAW
4200 Northside Parkway NW
Bldg One; Suite 200
Atlanta, GA 30327
(770) 779-9602 (phone)
(404) 393-2828 (fax)

*Counsel for Plaintiff*

Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com

CHILIVIS GRUBMAN
DALBEY & WARNER LLP
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S MOTION TO COMPEL DISCOVERY** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.

This 15th day of September 2023.

/s/ **Stacey G. Evans**
Stacey G. Evans
Georgia Bar No. 298555

*Counsel for Plaintiff*