# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

DR. MAHENDRA AMIN, M.D.,

        Plaintiff,

    v.

NBCUNIVERSAL MEDIA, LLC,

        Defendant.

Case No. 5:21-cv-00056-LGW-BWC

**CERTIFICATION AND DECLARATION OF STACEY G. EVANS**

I, Stacey Evans, declare as follows:

1.  I am an attorney with the firm of Stacey Evans Law, and I am lead counsel for Plaintiff Dr. Mahendra Amin in this matter.

2.  I participated in all discovery in this case, including seeking discoverable documents from Defendant, NBCUniversal, in good faith and reasonably calculated to lead to admissible evidence.

3.  Discovery, including documents produced by NBCUniversal and deposition testimony of NBCUniversal employees, as well as conferral around discovery disputes, has indicated that Standards reviewed and corresponded with producers regarding the broadcasts specifically named in the complaint, the article that served as a source of at least some of those broadcasts, and other broadcasts.

4.  Standards requested to review copies of all scripts for any ICDC stories they intended to air, with such emails being directed to Jason Cummings.  Deposition of Christopher

1

Scholl (July 12, 2023), 18:25-20:6, 23:24-24:20.[1]

5.  Christopher Scholl, Deputy Head of Standards at the time of the broadcasts at issue, testified that, as to "the Irwin County Detention Center stories," he did not "recall specifically reviewing scripts," but "I know I was involved in—you know, working with reporters and teams on it." *Id.*, 61:22-62:6.

6.  Scholl also reviewed an email produced by NBCUniversal that he wrote regarding the article that served as a source of the broadcasts, in which he expressed "concerns" he wanted to have addressed "before going with this" story. *Id.*, 63:4-20.  In the same email thread, others agreed with the concerns. *Id.*, 63:21-64:8.

7.  Scholl also testified that anyone from Standards could have reviewed scripts or otherwise provided comment on story ideas.  In other words, there was no assignment by subject-matter. *Id.*, 49:13-16, 235:4-10, 25:15-18.

8.  Scholl testified that there were around nine employees in Standards in September 2020. *Id.*, 20:17-24, 21:16-21.

9.  In addition to the broadcasts at issue in the litigation, NBCU aired at least six other broadcasts of stories regarding Dr. Amin or ICDC: The Beat on September 15, 2020, The 11th Hour with Brian Williams on September 15, 2020, The ReidOut on September 16, 2020, The Rachel Maddow Show on September 16, 2020, Morning Joe on September 17, 2020, and The Last Word with Lawrence O'Donnell on September 17, 2020.

---

[1] To avoid a voluminous filing and additional motions practice over the sealing of documents, portions of which NBCU has designated as "confidential," I am referring to certain depositions and documents, but not attaching them.  I am happy to provide them, if the Court would rather I do so.

10. It is also apparent from the review of documents produced that some MSNBC shows considered additional stories regarding Dr. Amin or ICDC, but ultimately did not air them.

11. Some communications that have been produced by NBCUniversal from and/or among reporters, producers, and/or Standards demonstrates reasons to doubt the veracity of the challenged statements.  As just one example, after the article that served as a source of the broadcasts at issue was published, one of the reporters of the article told the other that he had heard "mixed things" about the source of the September 14 letter, but this information was not conveyed in the article or the broadcast statements to let viewers decide for themselves.  Text Conversation Between Jacob Soboroff and Julia Ainsley (Sept. 14-16, 2020), NBCU003147-59.  The same is true as to the urging of a non-identified source of information as to "the framing" of the reporting; the fact that the person who published the story (Mark Schone) was "mad at Scholl," the Standards person who admonished him for publishing the story before it was approved; the reporters speculating as to whether the attorneys "conspired at all" with each other regarding the allegations; and one reporter stating to the other, "I'm dying to know the truth."  *Id*.  NBCUniversal did not produce this document to Dr. Amin until just prior to the deposition of one of the text participants.

12. Based on such discovery, I served a request for production of documents requesting scripts and drafts of scripts regarding the gynecological medical care of ICE detainees at the ICDC that were reviewed by employees of NBCUniversal's Standards, and all communications and other documents regarding such reviews (No. 47).

13. NBCUniversal refused to produce such documents, construing the request to only apply

3

to "scripts or draft scripts of the challenged news reports on *All In*, *The Rachel Maddow Show*, and *Deadline White House*," as to which, it stated, "it has already produced all non-privileged documents responsive to this Request that it has been able to locate through a reasonable, diligent search."

14. In email correspondence, I reiterated, as the face of the request itself states, that I sought not just scripts and drafts for the broadcasts at issue in the lawsuit, but rather scripts and draft scripts for all programs within the possession, custody, or control of NBCUniversal that were reviewed by Standards, and NBCUniversal reiterated that it would not provide such documents and that the request was a fishing expedition.

15. During the deposition of Scholl and conferrals regarding Request for Production No, 47, it became clear that NBCUniversal had not produced documents responsive to two other requests for production (Nos. 1-2), which requested the production of, not only documents and communications relating to Dr. Amin and ICDC involving the broadcasts at issue, but also "any and all documents referring to, reflecting, or relating to" both "internal communications" (No. 1) and "communications between you and any third party" (No. 2) regarding Dr. Amin or gynecological health services for detainees at ICDC.

16. NBCUniversal did not object individually to either request as "overbroad" and instead stated, "Subject to and without waiving the foregoing objections, NBCU will produce copies of any relevant, non-privileged documents responsive to this Request."

17. Pursuant to the Court's instructions at Doc. 2, 5-6, and previous practice regarding discovery disputes in this case, I contacted the Court via email to the Magistrate Judge's Courtroom Deputy Clerk, to schedule a telephonic conference with the Court in an effort

4

to resolve the dispute prior to the filing of any motions.

18. The Court held the telephonic conference on August 31, 2023, the transcript for which is attached to this Motion to Compel as Exhibit 2.

19. After the telephonic conference and before filing the Motion to Compel, in an effort to avoid motions practice, I proposed a compromise.  First, I asked that NBCUniversal use a list of 34 custodians to search for documents responsive to Requests for Production Nos. 1-2.  NBCUniversal has represented that for at least 23 of these custodians, it has preserved documents.  However, it also appears that NBCUniversal sent a litigation hold for some custodians, without searching their documents; searched documents for some custodians, without sending them a litigation hold; and did not send a litigation hold nor search the documents for some individuals who appear to have relevant discoverable information.  These additional custodians include employees who were part of Standards in September 2020 and a few additional custodians who were clearly involved in discussions regarding ICDC and Dr. Amin from other documents produced in the case, such as individuals who appear on emails discussing the broadcasts at issue or the article that served as the source for some statements in the broadcasts at issue.  Second, I requested that Defendant produce documents responsive to Request for Production No. 47 from all those who were part of Standards in 2020.  This second request was limited just to the Standards employees.  Counsel for NBCUniversal refused that compromise.

20. NBCUniversal's only proposed alternative was to search among custodians it already searched (which, remarkably, do not include several individuals who, from a review of documents produced in the case, were clearly involved in reviewing scripts or discussing the contents of broadcasts at issue in the case, one of whom appears on NBCUniversal's

5

privilege log).  This also excludes six of the nine employees who worked in Standards in September 2020.  This offer also demonstrates that NBCUniversal did not produce all documents responsive to Requests for Production Nos. 1-2, despite not objecting to those requests as overbroad, even at this late date—over six months after the date the parties were to produce written discovery to one another.  Doc. 61 at 1.

21. In a further effort to avoid motions practice, I made one last proposal:  (a) For NBCUniversal to use search terms it already used for its search of 23 custodians, but apply those terms to the list of 34 custodians plus Standards employees, which include the 23 that NBCUniversal has preserved before, plus all Standards employees during September 2020, plus a few custodians who were involved in the discussion of broadcasts (apparent from the review of documents produced in the case) but for whom NBCUniversal has either not preserved or produced responsive documents (this would include running old word searches for approximately 11-13 additional custodians[2]); and (b) to produce all documents resulting from those searches regarding any Dr. Amin or gynecological care for women detained by ICE at ICDC, to include draft scripts and communications regarding those scripts.  Counsel for NBCUniversal refused that compromise.

22. Accordingly, pursuant to the Court's instructions, I file this Motion to Compel.

23. I have conducted discovery, including deposition questions, into NBCUniversal's Twitter posts.  For example, I questioned Chris Hayes, the host of All In, about several

---

[2] When I originally made the proposal to NBCUniversal, I incorrectly thought the list of 34 included all nine members of Standards, but it appears there may be three other members of Standards whose names are unknown to me.

6

Twitter posts, and he even testified that he had reviewed Twitter posts as part of his preparation for his deposition.  Deposition of Chris Hayes (Aug. 9, 2023), 240:3-242:9.

24. Pursuant to S.D. Ga. L.R. 26.5 and Fed. R. Civ. P. 37(a)(1), I hereby certify that I have in good faith conferred with the person failing to make discovery, NBCUniversal through its counsel, in an effort to obtain the information without court action.


I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.


Executed and respectfully submitted this 15th day of September, 2023.


**/s/ Stacey G. Evans**
Stacey G. Evans