IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| **Dr. Mahendra Amin, M.D.**, <br><br> *Plaintiff,* <br><br> v. <br><br> **NBCUniversal Media, LLC.**, <br><br> *Defendant.* | Civil Action No. <br> 5:21-CV-00056-LGW-BWC |

### AMENDED MOTION TO QUASH SUBPOENA FOR DEPOSITION OF AZADEH SHAHSHAHANI AND STAY THE DEPOSITION PENDING THE OUTCOME OF THE MOTION TO QUASH OR IN THE ALTERNATIVE, MOTION FOR A PROTECTIVE ORDER

COMES NOW Azadeh Shahshahani (hereinafter "Ms. Shahshahani" or "Movant"), a non-party in the above styled case, by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 45(d)(3), moves this Court to Quash the Deposition Subpoena of Azadeh Shahshahani and stay the deposition pending the outcome of the motion to quash, or in the alternative, moves for a protective order pursuant to Federal Rule of Civil Procedure 26(c). Plaintiff Dr. Amin alleges defamation against NBCUniversal Media, LLC and now seeks to depose active litigation counsel for Project South, Azadeh Shahshahani, in the pursuit of discovery in the above- styled case. As grounds for this motion, the undersigned states as follows:

I. **INTRODUCTION**

Dr. Amin's attorney's audacious attempts to depose Azadeh Shahshahani under the guise of her having "knowledge of information related to Dr Amin's defamation claims" is nothing but a manipulative tactic designed to exploit opposing counsels' knowledge and undermine the sanctity of attorney-client and work-product privileges, that our adversarial system relies on in the search for truth and justice. (*See* Exhibit A, p. 2.) Ms. Shahshahani, the third-party Dr. Amin seeks to

1

depose in the present case, is the legal and advocacy director of Project South, Inc. and she is active litigation counsel in a class action suit against Dr. Amin currently in the Middle District of Georgia. (*See* Exhibit B, Complaint, *Oldaker, et al. v. Giles, et al.*, No. 7:20-cv-224-WLS-MSH (M.D. Ga.).) Dr. Amin does not wish to depose just anyone who may have relevant information to his defamation claim, but Ms. Shahshahani is his *opposing* counsel in a pending case that commenced before the present case at bar and involves the same or substantially similar factual allegations that Dr. Amin is alleging is defamatory. Any questions regarding Ms. Shahshahani's involvement automatically delves into matters protected by attorney-client privilege, work-product doctrine, and threatens to compromise the litigation against Dr. Amin. Allowing a subpoena of this nature to proceed will set concerning precedent and encourage similar conduct in the future.

Moreover, Stacey Evans, counsel for Dr. Amin, is abusing the subpoena power and engaging in unfair litigation tactics by attempting to issue subpoenas to multiple attorneys---including her own opposing counsel---Ms. Cynthia Counts—who is counsel for NBCUniversal in the above case as well as attempting to depose other counsel who like Ms. Shashahani are fellow counsel for the detainees who have brought a current class action lawsuit against Dr. Amin for violation of civil rights.[1] By serving subpoenas in multiple jurisdictions, it is difficult for the respective Courts to see the scope and breadth of the abusive and almost unheard of discovery tactics that she is using by exploiting the subpoena power in an attempt to gain an unfair litigation advantage. Her bully tactics also have the chilling effect of intimidating witnesses who are also plaintiff litigants in the class action brought against her client, Dr. Amin.

As the Courts have held: "Deposing opposing counsel raises additional concerns as its

---

[1] https://projectsouth.org/wp-content/uploads/2020/12/Docket-54-Consolidated-Amended-Habeas-Petition.pdf

"increasing practice... [is] a negative development in the area of litigation, and one that should be employed only in limited circumstances." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Permitting depositions of opposing counsel "not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Id.* at 1327.

II.   **THIS COURT MUST GRANT THE MOTION TO QUASH PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45(d)(3)(A)(iv) BECAUSE DR. AMIN'S COUNSEL'S REPEATED ATTEMPTS TO SUBPOENA OPPOSING COUNSEL IN THE UNDERLYING CASE TO APPEAR FOR THE DEPOSITION WOULD SUBJECT MS. SHAHSHAHANI TO UNDUE BURDEN, VIOLATES SACROSANCT PRIVILEGES, AND THE PROFESSIONAL RULES OF ETHICS**

On timely motion, it is mandatory for this court to quash or modify a subpoena that subjects a person to undue burden, fails to allow reasonable time to comply, requires disclosure of privileged matter, and subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). In this case, the attached Subpoena (Exhibit D) subjects Ms. Shahshahani to undue burden as it would automatically encroach on privileged matters in addition to the fact that it does not allow Ms. Shahshahani reasonable time to comply as the undersigned is not available during the month of September to sit for deposition, specifically her counsel is currently out of state on leave of Court.

Here, Dr Amin's counsel Stacey Evans continues in her attempts to abuse the discovery process by encroaching on sacrosanct attorney client privileges through her repeated attempts to depose opposing counsels who represent detainees in the underlying civil rights class action case brought against Dr. Amin. Her attempts to do so exceed all bounds of decency and fairness to opposing counsel as required under the Professional Ethics Rule 3.4 where she has hired private investigators to stake out and stalk Ms. Shahshahani for weeks---interrogating her neighbors, trespassing onto her property, hiding in bushes on her property and jumping out at her--all traumatizing harassment against a prominent human rights attorney who is subject to ongoing

death threats as a result of her human rights work on behalf of immigrants.[2]

The interrelatedness of the class action suit against Dr. Amin and Dr. Amin's suit against NBCU can be seen from examining the September 17, 2020 letter to Congress, along with the class action Complaint against Dr. Amin, and Dr. Amin's Complaint against NBCU. Project South's Legal and Advocacy department's involvement in Dr. Amin's defamation claim against NBCU stems from a whistle blower letter that Project South released to the Department of Homeland Security (DHS), the U.S. Immigrant and Customs Enforcement (ICE), and the Irwin County Detention Center (ICDC). (*See* Exhibit C, Letter to Congress from Government Accountability Project and Project South; s*ee also*, Amin Complaint ECF 1, ¶¶ 45-50). In this letter, Project South Inc. represents that Ms. Dawn Wooten, the LPN that came forward with the allegations of medical abuse without proper informed consent, was Project South's client at the time. (*See* Exhibit C, p. 1 ¶ 1.) This same letter is addressed in the complaint against Dr. Amin in the class action suit and corroborates the experiences of Ms. Shahshahani's other clients throughout their detention at ICDC. (*See* Exhibit B, ¶¶ 55-57.) Thus, if the deposition of Ms. Shahshahani can offer any insight into the veracity of NBCU's statements in its broadcasts (*see* Amin Complaint, ECF 1, ¶¶ 76-80), Dr. Amin would essentially be asking her to divulge attorney client privileged communications she had with her clients, particularly those plaintiffs bringing the class action against Dr. Amin, and Ms. Dawn Wooten in preparation for litigation.

Furthermore, to the extent that Dr. Amin would like to question Ms. Shahshahani in matters involving her document production which shows that she had communications with journalists, these questions also are impossible for Ms. Shahshahani to compartmentalize into answers she may articulate without automatically divulging into both privileged attorney client

---

[2] https://en.wikipedia.org/wiki/Azadeh_N._Shahshahani

communications along with her mental impressions and personal beliefs protected under the work product doctrine.

The United States Supreme Court in *Hickman v. Taylor,* recognized that a lawyer in preparing the client's case, assembles information, sifts through what the lawyer considers to be relevant facts, prepares "legal theories and plan[s] strategy, without undue and needless interference" and this work, which has become known as counsel's "work product," is reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and [in] countless other tangible and intangible ways" *Hickman v. Taylor,* 329 U.S. 495, 511 (1947) holding:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served. *Id* at 510-511.

Thus, the Supreme Court acknowledged the well-recognized policy against invading the privacy of an attorney's course of preparation. A very limited exception—only "where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had" and only upon showing

of adequate justification. *Hickman*, 329 U.S. at 511. Otherwise, the work-product doctrine protects attorneys like Ms. Shahshahani's mental impressions, including thought processes, opinions, conclusions, and legal theories. *See id.* at 511, 67 S.Ct. at 393 (an attorney's thoughts are "inviolate"); *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977) (attorney's opinion work product enjoys nearly absolute immunity and can be discovered in very rare and extraordinary circumstances); Fed. R. Civ. P. 26(b)(3) (unlike ordinary work product, opinion work product cannot be discovered upon a showing of substantial need or undue hardship).

And the Supreme Court has held that "the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." *Hickman*, 329 U.S. at 512. In this case, Dr. Amin and his attorney cannot justify such an extreme invasion of such sacrosanct privileges of attorney client communications and work product doctrine.

Moreover, there are other, less burdensome, less time-consuming methods that Dr. Amin may pursue to obtain this limited information. For example, Dr. Amin can depose the journalists identified in the documents themselves, he may choose to submit interrogatories to NBCU about these communications, but certainly, Dr. Amin's subpoena mandating Ms. Shahshahani, his opposing counsel in a current, underlying case involving the same set of facts, is a harassing, adversarial trial tactic that "does nothing for the administration of justice, but rather prolongs and increases costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Shelton,* 805 F.2d at 1330. For the reasons stated below, Ms. Shahshahani respectfully requests that this Court grant this Motion to Quash Dr. Amin's Deposition Subpoena.

In the present case, Dr. Amin seeks to impose an undue burden on Ms. Shahshahani by

mandating her appearance in a deposition because, any matter that she can testify to in relation to his defamation claim against NBCU poses the inherent risk of delving into matters protected by attorney-client and work-product privilege and threatens the sanctity of those privileges. Ms. Shahshahani is not only a non-party to the present suit, but she is also counsel opposing Dr. Amin in a separate suit, the relevancy of communications Ms. Shahshahani had with journalists as evidenced by her document production to Dr. Amin is minimal and does not have any bearing on the veracity of NBCU's allegedly defamatory statements against Dr. Amin, and Dr. Amin may obtain the information he seeks by other, less burdensome methods by deposing the journalists identified in those documents themselves.

On timely motion, it is mandatory for this court to quash or modify a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A); *Jordan v. Commissioner, Mississippi Department of Corrections*, 947 F.3d 1322, 1337 (11th Cir. 2020). The undue burden analysis requires courts to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it. *Id.* In completing this balancing analysis, factors that a court could consider include, (1) relevancy of the information sought, (2) burden that would be imposed by producing such information, and (3) status of the subpoena recipient as a non-party. *Id.*

In the present case, the burden that would be imposed by mandating Ms. Shahshahani's appearance in a deposition is great because as discussed above*,* she is active litigation counsel in a separate pending class action suit against Dr. Amin, and deposing her with regard to the present defamation suit poses the risk of delving into topics which would ordinarily be protected by work-product privilege or attorney-client privilege since the facts of the two cases are interrelated. (*Oldaker, et al. v. Giles, et al.*, No. 7:20-cv-224-WLS-MSH (M.D. Ga.).) Particularly because Dr. Amin alleges that the source of the defamatory statements come from Dawn Wooten, a previous

client of Ms. Shahshahani and witness in the pending class action suit against Dr. Amin, the risk of delving into topics protected by work-product privilege and attorney-client privilege is great. Given the interrelatedness of the two cases, it is hard to imagine what questions Dr. Amin might pose that would not involve either Ms. Shahshahani's communications with her clients protected by attorney-client privilege or as discussed earlier, her mental impressions developed in preparation for possible litigation.

Under the Georgia Rules of Professional Conduct, "any information gained in the professional relationship [with the client]., whatever its source" is treated as confidential, GA. R. Prof. Cond. 1.6, cmt. 5, and should be treated as "other protected material" under Rule (45)(d)(3)(iii). These privileges and protections are crucial to zealous representation and building trust in attorney-client relationships. Generally speaking, depositions of attorneys are discouraged because they could provide a backdoor method for attorneys to glean privileged information about an opponent's litigation strategy from the opposing attorneys' awareness of various documents. *In re subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2nd Cir. 2003) (citation omitted). This is analogous to forcing another party's trial counsel to testify as a witness, which courts discourage because of its disruptive effect on the adversary system. *Id*. Courts have stated that permitting the deposition of an opposing counsel, "not only disrupts the adversarial system and lowers the standards of the profession but it also adds to the already burdensome time and costs of litigation." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).

The practice of deposing an opposing counsel detracts from the quality of representation because counsel should be free to devote his or her time to preparing the client's case without fear of being interrogated by their opponent. *Id.* The fundamental principle of confidentiality is essential to "the trust that is the hallmark of the client-lawyer relationship." Model R. of Prof.

Cond. 1.6(b)(6), cmt. 2; *see also* Ga. R. Prof. Cond. 1.6(a) ("A lawyer shall maintain in confidence all information gained in the professional relationship with a client."). The assurance of confidentiality encourages clients "to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter." Model R. Prof. Cond. 1.6, cmt. 2; *see also* Ga. R. Prof. Cond. 1.6, cmt. 4. Confidentiality between a lawyer and her client "not only facilitates the full development of facts essential to proper representation of the client but also encourages people to seek early legal assistance." Ga. R. Prof. Cond. 1.6, cmt. 2. Clearly, if opposing counsel is allowed to be deposed in a case such as this, a client would be less inclined to openly and truthfully communicate with their attorney. *Shelton*, 805 F.2d at 1327 (stating that the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.)

The general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our legal procedure that a *burden rests on the one who would invade that privacy* to establish adequate reasons to justify the production through a subpoena or court order. *Hickman*, 329 U.S. 495. Non-party status is a factor courts may consider when analyzing whether a subpoena is unduly burdensome. *Pinehaven Plantation Properties, LLC v. Mountcastle Fam. LLC*, No. 1:12-CV-62 WLS, 2013 WL 6734117, at *2 (M.D. Ga. Dec. 19, 2013). In fact, it is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery. *Id*. Thus, the burden is on Dr. Amin and his counsel to establish that Ms. Shahshahani's testimony would be relevant, non-duplicative, and not cause undue burden.

Stacey Evans, counsel for Dr. Amin asserts that the scope of the deposition would encompass the facts surrounding the documents that Project South produced earlier in this case, including communications Ms. Shahshahani made with non-client journalists. (*See* Exhibit A, p.

9

3.) However, to the extent that this information may be remotely relevant to Dr. Amin's defamation claim, it is not only duplicative since the communications have already been produced, but further information regarding the communications is also readily obtainable from other sources, such as the journalists themselves, who are associated with the current defendant in Dr. Amins suit, not with Project South, a non-party to the suit. *See Bank of America N.S. v. Georgia Farm Bureau Mut. Ins. Co.*, 2014 WL 4851853 (M.D. Ga. Sept. 29, 2014) (Granting Motion to Quash Deposition Subpoena of current counsel because even though the requesting party would seek information that is ultimately non-privileged, the court determined that the information can be accessed from other sources.)

Much of Ms. Shahshahani's work with Project South, its clients, and communications with the public were in preparation for bringing the class action suit against Dr. Amin, thus any questioning with regards to the communication beyond what was actually said to the journalists has the tendency to reveal the mental impressions of Ms. Shahshahani. *See generally Hickman*, 329 U.S. 495 (characterizing the case as one in which the mental impressions of the attorney are at issue, without any showing of necessity or indication that denial of such production would unduly prejudice the preparation of the requesting party's case, or cause him harm or undue justice, where the plaintiffs requested interrogatory responses regarding statements of witnesses that were already publicly available.)

The factors that weigh against the enforcement of the deposition subpoena include, Ms. Shahshahani's status as a non-party to the present case, her status as active litigation counsel in the underlying case pending against Dr. Amin where facts are interrelated and risk of delving into topics protected by attorney client privilege and work product privilege is great, the limited relevancy and importance of Ms. Shahshahani's testimony in the present defamation case, as well

as Dr. Amin's ability to obtain the sought after relevant information from other sources which would not implicate the risk of divulging privileged information. *See Jordan*, 947 F.3d 1322 at 1337 (considering factors such as the relevancy of the information requested, the burden that would be imposed by producing it and the status of the subpoena recipient as a non-party weighing against the discover in the undue burden inquiry)*; see also Gamache v. Hogue*, 595 F.Supp.3d 1344, 1355-57 (M.D. Ga. 2022) (finding that factors that weigh against quashing include the subpoenaed attorney's status as non-litigation counsel; the testimony sought is not available from other sources; the testimony sought is relevant to the defendant's statute of limitations defense, and the testimony sought relates to matters that are non-privileged); and *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (concluding that the judicial officer supervising the discovery should take into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship such as the need to depose the lawyer, the lawyers role in connection with the matter in which the discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work product issues the extent of discovery already conducted, as well as the use of alternative discovery devices to be considered.)

While the Eleventh Circuit has not adopted a specific rule in establishing when the deposition of an attorney is appropriate, *Gamache*, 595 F.Supp.3d 1344, in applying the balancing test where the moving party's need for the information sought with the subpoenaed parties interests in its attorney-client relationship, it is clear that the information sought is minimally relevant to the pending case, can be obtained from other sources, and poses an undue burden on Ms. Shahshahani and her clients. Thus, this Court should enter an order granting this Motion to Quash the deposition subpoena of Ms. Shahshahani.

### III. ALTERNATIVELY, THIS COURT SHOULD ISSUE A PROTECTIVE ORDER TO LIMIT THE SCOPE OF THE SCOPE OF THE INFORMATION SOUGHT TO A LESS BURDENSOME MEANS OF DISCOVERY

Any person from whom discovery is sought may move for a protective order in the court where the action is pending, and upon showing of good cause, the court may issue an order to protect the person from undue burden or expense and may forbid the disclosure or discovery or prescribe a discovery method other than the one selected by the party seeking discovery. Fed. R. Civ. P. 26(c)(1). For the reasons stated above, the deposition of Ms. Shahshahani is unduly burdensome because she is active litigation counsel in a class action suit pending against the plaintiff in the present case, the facts of the two cases are interrelated, and thus, the deposition presents a substantial risk of delving into topics protected by attorney client and work product privilege, furthermore the relevancy of the requested information would be minimal, and the information sought after would undeniably be obtainable from other sources.

In *Gaddy v. Texas Corporation*, after considering that the attorneys to be deposed are not active litigation counsel, as opposed to the present case, where the attorney to be deposed IS active litigation counsel in a case pending against the deposing party, the court concluded that the deposition should continue with the condition that the plaintiff only seek testimony about non-privileged matters separate and apart from the defendant's litigation strategy, and that the parties should coordinate the depositions to occur on days in which the court is available to hear by phone any claims of privilege. *Gaddy v. Texas Corporation*, 2015 WL 13545486 (N.D. Ga. Oct 10, 2015). The present case requires more protection than the protection afforded in *Gaddy* because not only is Ms. Shahshahani active litigation counsel in a case pending against Dr. Amin, but any non-privileged matters she may be able to testify to would also be available from other sources, and to the extent that those other sources have already been examined, Ms. Shahshahani's testimony

would be duplicative. Thus, this Court should issue a protective order and forbid the deposition of Mrs. Shahshahani, or alternatively order that the information sought be obtained from a less burdensome source. This way, Dr. Amin's discovery will be limited to only relevant, non-privileged information, it would be less time-consuming, and decreases the risk of the potential disclosure of information protected by attorney-client and work-product privileged.

## IV.   CONCLUSION

For the reasons stated above, the Movant respectfully requests that this Court grant this motion to quash the deposition subpoena for Azadeh Shahshahani, stay the deposition pending the outcome of the motion to quash, or alternatively issue a protective order.

Respectfully submitted this 19th day of September 2023,

**WILLIAMS OINONEN LLC**

/s/ JULIE OINONEN
Julie Oinonen (Ga. Bar No. 722018)
*Counsel for Non-Party Azadeh Shahshahani*

3344 Peachtree Road NE, Suite 800
Atlanta, GA 30326-4807
(404) 654-0288/ (404) 592-6225 FAX
julie@goodgeorgialawyer.com

## **CERTIFICATE OF GOOD FAITH**

Pursuant to Federal Rule of Civil Procedure 26 (c), the undersigned certifies that the movant has conferred in good faith with the party serving the subpoena in an effort to resolve the dispute without court action.

Respectfully submitted this 19th day of September 2023,

**WILLIAMS OINONEN LLC**

/s/ JULIE OINONEN
Julie Oinonen (Ga. Bar No. 722018)
*Counsel for Non-Party Azadeh Shahshahani*

3344 Peachtree Road NE, Suite 800
Atlanta, GA 30326-4807
(404) 654-0288/ (404) 592-6225 FAX
julie@goodgeorgialawyer.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the AMENDED MOTION TO QUASH SUBPOENA FOR DEPOSITION OF AZADEH SHAHSHAHANI AND STAY THE DEPOSITION PENDING THE OUTCOME OF THE MOTION TO QUASH OR IN THE ALTERNATIVE, MOTION FOR A PROTECTIVE ORDER with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

Respectfully submitted this 19th day of September 2023,

                                            **WILLIAMS OINONEN LLC**

                                            /s/ JULIE OINONEN
                                            Julie Oinonen (Ga. Bar No. 722018)
                                            *Counsel for Non-Party Azadeh Shahshahani*

3344 Peachtree Road NE, Suite 800
Atlanta, GA 30326-4807
(404) 654-0288/ (404) 592-6225 FAX
julie@goodgeorgialawyer.com