IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., <br><br> Plaintiff, <br><br> v. <br><br> NBCUNIVERSAL MEDIA, LLC, <br><br> Defendant. | Case No. 5:21-cv-00056-LGW-BWC <br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S UNOPPOSED MOTION TO MODIFY THE MARCH 8, 2022 PROTECTIVE ORDER** |

Pursuant to the Federal Rule of Procedure 26, the Southern District of Georgia Local Rules, and Sec. XIX of the March 8, 2022 Protective Order, ECF No. 42, Defendant NBCUniversal Media, LLC ("NBCU"), by and through the undersigned counsel, hereby submits this memorandum of law in support of its unopposed motion to modify the protective order.

### INTRODUCTION

At all relevant times, third-party LaSalle Corrections LLC d/b/a LaSalle Southeast LLC ("LaSalle") contracted with Irwin County, Georgia and the U.S. Immigration and Customs Enforcement Agency ("ICE") to manage the detention of federal immigration detainees at the Irwin County Detention Center ("ICDC"), located in Ocilla, Georgia.

On September 14, 2020, Project South, Georgia Detention Watch, Georgia Latino Alliance for Human Rights, and South Georgia Immigrant Support Network[1] filed a complaint on behalf of detained women and an ICDC nurse, alleging serious misconduct at the facility, including

---

[1] *Available at* https://projectsouth.org/wp-content/uploads/2020/09/OIG-ICDC-Complaint-1.pdf.

allegations that immigrant women at the facility had been subjected to unconsented-to, unnecessary, and aggressive gynecological procedures, including hysterectomies (the "Whistleblower Complaint").

Dozens of news organizations immediately reported on the Whistleblower Complaint, and Dr. Amin was identified as the doctor responsible for the gynecological procedures at issue. The Senate, DOJ, DHS-OIG, DHS-CRCL, and the Georgia Composite Medical Board opened investigations in the days and months following the Whistleblower Complaint.

On September 9, 2021, Dr. Amin sued NBCU for defamation arising out of certain statements in five identified news broadcasts reporting on the Whistleblower Complaint and related allegations. *See* ECF No. 1. As Dr. Amin has explained in various filings, these challenged statements "concern[] whether he performed unnecessary and unconsented-to medical procedures on detainees at ICDC." *See, e.g., Oldaker v. Giles*, Amin Opposition to Order to Show Cause, ECF No. 283 at 3.

On November 15, 2022, the Senate's Permanent Subcommittee on Investigations released a bipartisan report titled, "Medical Mistreatment of Women in ICE Detention"[2] (the "Senate Report"), which detailed the findings from its 18-month investigation into the allegations that Dr. Amin had performed unnecessary and/or unconsented to gynecological procedures on ICDC detainees. As part of its investigation, the Senate interviewed more than 70 witnesses, including members of ICDC staff, ICE officials, and detainees who had been treated by Dr. Amin. *See*

---

[2] *See* U.S. Senate Permanent Subcommittee on Investigations – Committee on Homeland Security and Governmental Affairs, Staff Report on Medical Mistreatment of Women in ICE Detention, November 15, 2022, available at https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-11-15%20PSI%20Staff%20Report%20-%20Medical%20Mistreatment%20of%20Women%20in%20ICE%20Detention.pdf.

Senate Report at 16-17.  The Senate reviewed over 541,000 pages of records, including records from DHS, ICE, ICDC, ICH, and LaSalle.  *Id.* at 16.

From its investigation, the Senate found "serious issues relating to ICDC and specifically connected to Dr. Amin's care," including that "[f]emale detainees appear to have been subjected to excessive, invasive, and often unnecessary gynecological procedures" and that "[t]here appear[ed] to have been repeated failures to secure informed consent for off-site medical procedures performed on ICDC detainees."  *Id.* at 3.  The Report found that Dr. Amin alone had "performed nearly one-third of certain OB-GYN procedures on ICE detainees across the country between 2017 and 2020 and more than 90% of some key procedures."  *Id.* at 5-6.  A doctor who analyzed medical records provided to the Senate found that Dr. Amin's use of certain surgical procedures was "too aggressive," "inappropriate," "appeare[d] to frequently confuse normal findings for pathology," and while he may have been providing "pretty good medicine for the 1980s . . . we're not there anymore."  *Id.* at 7.

Given LaSalle and ICE's responsibility for the inmates, their detention, and their wellbeing, NBCU served LaSalle and ICE with subpoenas to produce relevant documents in its possession, custody, and control.  *See* Declaration of Elizabeth A. McNamara ("EAM Decl."), Ex. A (DHS and ICE subpoenas); 6 C.F.R. §§ 5.41-5.49; *see* EAM Decl. Ex. B (LaSalle subpoena).  The information they possess is essential to corroborating the allegations in the Whistleblower Complaint and supporting NBCU's defenses.

After several months of negotiations—and the Middle District of Georgia ordering LaSalle to produce the responsive documents—both LaSalle and ICE have produced or will produce documents responsive to the subpoena.  Specifically, both third parties have produced, or will be producing, the documents they produced to the Senate Subcommittee.  To the best of the Parties'

3

knowledge, these documents contain medical records of ICDC detainees as well as other materials related to the running of the detention center, including policies and guidelines.

## ARGUMENT

To protect the confidentiality of the detainees, and in accordance with its own statutory obligations, ICE has requested that the operative protective order be modified before it produces the responsive documents.  Pursuant to Sec. XIX of the March 8 Protective Order, "Any party may seek modification of this Order upon written notice.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.  Each party expressly acknowledges such modifications may be necessary."  *See* ECF No. 42 at 15.

The Parties and ICE have conferred, and the Parties raise no objections to ICE's proposed amendments set forth in Exhibit C.  *See* EAM Decl. Ex. C.  The operative protective order provides that:

> [T]he producing party may designate any discovery material as "CONFIDENTIAL" under the terms of this Order if the party in good faith believes that such material contains: (a) information protected from disclosure by any state or federal law, rule, or regulation (such as the Health Insurance Portability and Accountability Act of 1996 (HIPAA)); (b) information that is proprietary, trade secret, or commercially or competitively sensitive information; (c) unpublished newsgathering information; or (d) information concerning individuals that is of a private or personal nature.

*See* ECF 42 at Sec. II(D).  The new language specifically cites several statutes that obligate ICE to prevent unmitigated disclosure of the relevant information.  For example, the proposed protective order now references the Privacy Act of 1974 and several immigration-specific statutes, in addition to HIPAA.  It also includes protections for "law enforcement sensitive information" that "could reasonably be expected to risk circumvention of the law."  *See* EAM Decl. Ex. C.  The "law enforcement sensitive information" language is similar to the protections afforded to federal agencies under the Freedom of Information Act.  *See* 5 U.S.C. § 552(b)(7)(E) (exempting from

disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.").

Though there is a possibility that the proposed language may be broadly applied, the "confidential" designation does not prevent, or improperly restrict, the Parties' use of the records for the purposes of this litigation. Further, if such designation does interfere, the new protective order still allows for the Parties to the order to challenge the confidentiality designations, as well as for Court intervention if necessary. *See* ECF 42; EAM Decl. Ex. C (Sec. VIII – Challenging Another Party's or Non-Party's Confidentiality Designation" and Sec. XIX – Modification-Further Amendments). However, at this time, neither Plaintiff nor Defendant anticipates such an overbroad application, and therefore do not object to the proposed changes.

## CONCLUSION

For the foregoing reasons, the Parties request that the protective order dated March 8, 2022 be modified to reflect the changes in the proposed protective order.

Dated: September 28, 2023

*/s/ Elizabeth A. McNamara*
Elizabeth A. McNamara
(admitted *pro hac vice*)
Amanda B. Levine
(admitted *pro hac vice*)
Leena Charlton
(admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
lizmcnamara@dwt.com

*/s/ Cynthia L. Counts*
Cynthia L. Counts
Georgia Bar No. 190280
FISHERBROYLES, LLP
945 East Paces Ferry Rd. NE, Suite 2000
Atlanta, GA 30326
(404) 550-6233
cynthia.counts@fisherbroyles.com

*Attorneys for Defendant NBCUniversal Media, LLC*

amandalevine@dwt.com
leenacharlton@dwt.com