IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., | |
| Plaintiff, | CIVIL ACTION NO.: 5:21-cv-56 |
| v. | |
| NBCUNIVERSAL MEDIA, LLC, | |
| Defendant. | |

**O R D E R**

Plaintiff filed a Motion to Compel Defendant's Discovery and Production of Documents. Doc. 98.  Defendant responded in opposition to Plaintiff's Motion.  Doc. 104.  For the following reasons, I **GRANT in part** Plaintiff's Motion to Compel.  Defendant is ordered to produce documents in response to Plaintiff's Requests for Production of Documents as follows:

Request 47: Defendant must produce all scripts or drafts of scripts regarding Dr. Amin or allegations of mistreatment or inappropriate gynecological medical care of ICE detainees at the ICDC that were reviewed by Chris Scholl, Steve Thode, and Mary Lockhart.  Defendant is not required to produce scripts or draft scripts created after September 17, 2020.

Requests 1 and 2: Defendant must produce internal and external communications involving the 23 previously identified individuals, Jason Cumming, and Daniella Silva, if the communications concerned the Challenged News Reports, Dr. Amin, or gynecological health services for detainees at ICDC.  Defendant is required to produce communications responsive to Requests 1 and 2, even if the communication occurred after September 17, 2020.

The Court **DENIES** Plaintiff's request for an award of fees and expenses.

**INTRODUCTION**

Plaintiff filed this action on September 9, 2021, alleging Defendant aired a series of broadcast segments on MSNBC that contained multiple false and defamatory statements concerning Plaintiff, Dr. Mahendra Amin.  Doc. 1.  The broadcast segments at issue aired on MSNBC between September 15, 2020 and September 17, 2020.  Doc. 49 at 1.  There are four challenged broadcasts currently at issue in this dispute: (1) the September 15, 2020 episode of "Deadline: White House" with Nicolle Wallace; (2) the September 15, 2020 episode of "All In" with Chris Hayes; (3) the September 15, 2020 episode of "The Rachel Maddow Show"; and (4) the September 17, 2020 episode of "All In" with Chris Hayes (collectively "Challenged News Reports").  Doc. 59.

In the instant Motion to Compel, Plaintiff asks the Court to order Defendant to provide certain documents in response to Plaintiff's Requests for Production Numbers 1, 2, and 47.  Doc. 98.  Generally speaking, the discovery requests seek scripts, draft scripts, and written communications to or from Defendant's employees.  Defendant has already produced some documents in response to these requests.  The parties disagree about whether Defendant should be required to produce additional documents.

It is helpful to consider Request 47 first.  In Request 47, Plaintiff seeks all scripts and draft scripts for programs about gynecological medical care of women detained by United States Immigration and Customs Enforcement ("ICE") at Irwin County Detention Center ("ICDC"), if the scripts and draft scripts were reviewed by NBCUniversal's Standards Committee.[1]  Request 47 also seeks communications related to the review and consideration of those scripts.  In short,

---

[1] Standards is a team of employees who review NBCUniversal's reporting to ensure accuracy, fairness, and transparency.  The Standards team calls for review of stories on certain subjects daily, and reporters across NBCUniversal's platform send stories to the team for review.  Doc. 104 at 10.

Request 47 seeks essentially two categories of documents: (1) certain scripts and draft scripts reviewed by Standards; and (2) communications about the review of the scripts.

The parties' briefing is unclear as to which scripts and draft scripts have already been produced in response to Request 47, but it appears Defendant produced scripts and draft scripts for the Challenged News Reports.[2]  Doc. 104 at 2.  As to communications about Standards' review of the scripts, Defendant searched for responsive documents from 23 document custodians, including 3 members of Standards (Chris Scholl, Steve Thode, and Mary Lockhart) and, presumably, produced those documents.[3]  It appears Defendant did not search for any communications that would be responsive to Request 47 that occurred after September 17, 2020.

Plaintiff contends Defendant's document production in response to Request 47 is deficient.  First, Plaintiff contends Defendant should produce *all* scripts and draft scripts for news reports related to gynecological medical care at ICDC that were reviewed by the Standards Committee, even if the scripts and draft scripts were not for the Challenged News Reports.  As to the communications requested in Request 47, Plaintiff contends communications related to these other scripts would be relevant and should be produced.  Additionally, Plaintiff contends Defendant should search for responsive communications involving all nine members of Standards—not just the three Defendant identified—and responsive documents should not be

---

[2]   The parties' briefing focuses primarily on communications rather than scripts and draft scripts so it is not clear if Defendant has, in fact, produced the scripts and draft scripts described here.  At a minimum, it appears Defendant does not oppose producing the scripts and draft scripts for the Challenged News Reports.

[3]   Again, the parties' briefing is not clear.  Defendant states generally it searched for communications from 23 custodians but does not say if it identified responsive documents from each custodian or if all responsive documents were produced.  Doc. 104 at 4.  Defendant also fails to distinguish between the communications requested in Requests 1 and 2 from the communications requested in Request 47.  The gist of Defendant's brief is it searched through communications from the 23 custodians for communications about review of scripts and draft scripts for the Challenged News Reports.  Presumably, Defendant produced those responsive documents.

3

limited by date.  Doc. 98 at 1.  Defendant disagrees and argues additional scripts, draft scripts, and communications about review of those scripts would be irrelevant to Plaintiff's claims.

In Requests 1 and 2, Plaintiff seeks communications regarding Dr. Amin and gynecological health services for women detained by ICE at ICDC.  Doc. 98 at 1.  Plaintiff seeks internal communications among Defendant's employees and external communications between Defendant's employees and others.  It appears Defendant searched for and produced responsive communications to or from 23 individual document custodians.  These document custodians include journalists, on-air talent, producers, editors, supervisors, and three individual Standards members (Scholl, Thode, and Lockhart[4]).  It appears Defendant did not produce communications made after September 17, 2020.  Again, the parties' briefing is unclear about exactly what has been produced.

Plaintiff contends Defendant's document production in response to Requests 1 and 2 is deficient.  Plaintiff argues Defendant should be required to search for and produce communications involving 34 named document custodians, any unidentified Standards employees, and distribution lists for Standards and the programs that aired the challenged broadcasts.  Plaintiff also argues responsive documents should not be limited to communications before September 17, 2020.  Defendant argues the other document custodians Plaintiff identified are irrelevant to Plaintiff's claims and all communications made after September 17, 2020, are irrelevant.

---

[4]  It is unclear from Defendant's brief if Defendant produced communications involving Lockhart in response to Request 47.  At one point, Defendant states, "Defendant searched for documents from Lockhart's email box as well."  Doc. 104 at 11.  At another point, Defendant states, "Defendant offered to search for and produce communications between [Scholl and Thode] (or Mary Lockhart) and the employees for other, unchallenged MSNBC programs that occurred between September 15 and 17, 2020—an offer that Plaintiff rejected."  Doc. 104 at 12.  Regardless, as explained below, Defendant is ordered to search for and produce communications involving Mary Lockhart that are responsive to Request 47, if Defendant has not done so already.

## LEGAL STANDARD

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Upon a showing of good cause, a court may order discovery of "any matter relevant to the subject matter involved in the action." Id. Further, a party may request the opposing party produce documents or items within the scope of discovery and in another party's possession or control. Fed. R. Civ. P. 34(a)(1) ("A party may serve on any other party a request . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information . . . .").

When a party fails to answer an interrogatory or fails to produce a requested document or item, the Court may order that party to respond. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). Additionally, Federal Rule of Civil Procedure 37(a)(4) states, "For the purposes of this subdivision (a), an evasive or incomplete designation, answer, or response must be treated as a failure to disclose, answer, or respond."

## DISCUSSION[5]

### I.   Defendant Is Ordered to Produce Some But Not All the Requested Documents

Defendant raises one overarching argument in opposition to Plaintiff's Motion to Compel: Defendant should not be ordered to produce additional documents Plaintiff identified because the documents requested would be irrelevant to Plaintiff's claims.[6]

Defendant's relevance argument requires some context and explanation. The following facts appear to be undisputed. Defendant published a written article on September 15, 2020 (referred to as the "NBC News Article"). The NBC News Article was written by Jacob Soboroff, Julia Ainsley, and Daniella Silva and concerned the whistleblower complaint about ICDC and Dr. Amin. At least one member of Standards, Christopher Scholl, reviewed the NBC News Article.

After the NBC News Article was published, Defendant ran several television programs related to ICDC and Dr. Amin. The Challenged News Reports ran between September 15 and

---

[5]   Before discussing the merits of this dispute, I note both sides have failed to present their positions with sufficient clarity. Plaintiff insists Defendant's production is deficient because it failed to produce documents from various custodians, on various topics, and for certain date ranges. But Plaintiff does not provide adequate information about the criteria Plaintiff used to identify custodians (some of whom are unnamed and only identified by category), the relevant topics, or date ranges. Similarly, Defendant improperly muddles arguments about Request 47 and Requests 1 and 2, even though Plaintiff made distinct arguments about those requests. Neither party adequately explains what has been produced or withheld. In terms of arguments, the parties seem, at times, to not even debate the same issues. These inadequate briefs are likely the byproduct of persistent, poor conferral between counsel. Of course, discovery disputes arise that require Court intervention, but such disputes should be narrow and well defined after adequate conferral. The parties have not presented narrow or well-defined disputes here. Counsel are encouraged to renew their efforts at conferral going forward.

[6]   In the Motion to Compel, Plaintiff argues his requests are proportional and the Motion is timely. Defendant does not directly respond to either of these arguments. Defendant complains Plaintiff's requests constitute an improper "fishing expedition" and about Plaintiff filing the motion near the close of discovery, but Defendant does not actually argue Plaintiff's requests are disproportional or untimely. Indeed, neither term is even mentioned in Defendant's Response. Therefore, Defendant has waived any argument based on proportionality or timeliness. Defendant's opposition is based solely on relevancy of the requests.

September 17, 2020.  The Challenged News Reports were based in part on the NBC News Article.  At least two members of Standards, Scholl and Steve Thode, reviewed scripts and draft scripts for the Challenged News Reports.  Some individual journalists employed by Defendant also made Twitter posts about ICDC and Dr. Amin.

This discovery dispute turns on the potential relevance of the additional documents Plaintiff has requested.  Defendant argues the potential relevance of those additional documents depends on what Plaintiff must prove at trial.  The parties agree Plaintiff has the burden in this case to prove Defendant acted with actual malice.  The parties also appear to agree to meet this burden, Plaintiff will need to demonstrate specific individuals—i.e., the individuals employed by Defendant who participated in publishing the Challenged News Reports—acted with actual malice.[7]  In other words, Plaintiff will have to establish a connection between actual malice held by specific individuals and the published broadcasts.

Defendant argues only certain, limited documents can be relevant to Plaintiff's claims, and, therefore, discovery should be limited to documents that could be used to prove the actual malice of the individuals who participated in publishing the Challenged News Reports.  Stated differently, Defendant argues certain categories of documents could not possibly be relevant to the actual malice inquiry in this case and, therefore, are not discoverable.  Defendant contends these categories are defined by the individuals involved in the requested communications (i.e., document custodians), the dates of the document, and the nature of the documents.

---

[7]   In N.Y. Times Co. v. Sullivan, the United States Supreme Court explained actual malice must be "brought home to the persons in the . . . organization having responsibility for the publication." 376 U.S. 254, 287 (1964).  The parties disagree about how Sullivan bears on the issue of discovery, but they agree the case requires Plaintiff to prove a specific individual or individuals acted with actual malice and "collective knowledge" is not sufficient.

Plaintiff's response is, essentially, actual malice must be proven to establish liability, but it should not serve as a bar on discoverability. Plaintiff also argues Defendant's proposed categorical limitations are inappropriately narrow. For example, Plaintiff argues communications by all members of Defendant's Standards team should be discoverable and discovery should not be limited to those members who Defendant contends worked on the challenged broadcasts. Therefore, Plaintiff argues Defendant is obligated to produce more documents—meaning documents from more custodians, on a broader range of topics, and for a longer period of time—compared to what Defendant has already produced.

A.   The Parties' Burdens

Discovery is generally broad. Federal Rule of Civil Procedure 26(b)(1) provides parties may obtain discovery that is relevant to any party's claim or defense. "The party seeking discovery has the threshold burden of demonstrating that the discovery requested is relevant." Reichert v. Hoover Foods, Inc., No. 1:16-CV-4575, 2017 WL 3820970 (N.D. Ga. July 25, 2017) (quoting Bldg. Materials Corp. of Am. v. Henkel Corp., No. 6:15-cv-548, 2016 WL 7734066, at *1 (M.D. Fla. Aug. 26, 2016)). "The party resisting discovery has the burden to show that the information is not relevant or is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure." Whitesell Corp. v. Electrolux Home Prod., Inc., No. CV 103-050, 2019 WL 637776, at *2 (S.D. Ga. Feb. 14, 2019) (citing EEOC v. AutoZone, Inc., 2007 WL 9717741, at *2 (S.D. Ala. Aug. 3, 2007)). The requesting party does not have to show relevant evidence already exists, but it "must describe with a reasonable degree of specificity the information they hope to obtain and its importance to their case." Edmondson v. Velvet Lifestyles, LLC, No. 15-24442-CIV, 2016 WL 7048363, at *7 (S.D. Fla. Dec. 5, 2016) (quoting Sprint Commc'ns Co., L.P. v. Crow Creek Sioux Tribal Court,

316 F.R.D. 254, 263 (D.S.D. 2016)).  Where the responding party argues the requests could not possibly lead to the discovery of relevant evidence, the requesting party must articulate an adequate basis for the request.

### B. Request 47

Request 47 asks for scripts and draft scripts for programs about gynecological care at ICDC and Dr. Amin that were reviewed by Standards.  Plaintiff has expressly limited this request to responsive documents involving the nine members of Standards.[8]  Defendant has already produced documents responsive to Request 47 that concern the NBC News Article and the Challenged News Reports, including communications related to Standards reviews where the communications involve Chris Scholl, Steve Thode, and, possibly, Mary Lockhart.  Thus, the Court need only resolve whether Defendant is required to search for and produce additional documents that might be responsive to Request 47.[9]

> #### 1. *The relevant document custodians for Request 47 are Chris Scholl, Steve Thode, and Mary Lockhart.*

Plaintiff has demonstrated Defendant is obligated to produce scripts, draft scripts, and communications related to review of scripts by Chris Scholl and Steve Thode.  Chris Scholl, deputy head of Standards, was primarily responsible for reviewing the NBC News Article, which served as a source for the Challenged News Reports. Doc. 104 at 10.  Steve Thode, also a

---

[8] Plaintiff argues all nine members of Standards are relevant custodians; Defendant argues some but not all members of Standards are relevant custodians.  As an example of the poor briefing on this point, both parties discuss a few members of Standards by name, but neither party provides a list of the nine members of Standards.  Instead, the Court is required to suss out who the members might be based on passing references in the briefs.

[9] Request 47 also asks for communications about Standards' review of scripts and draft scripts for programs about Dr. Amin and care at ICDC.  It is apparent Requests 1 and 2—which also seek a broad range of communications—completely subsumes the portion of Request 47 that seeks communications.  Because Plaintiff asks the Court to compel Defendant to produce additional communications in response to Requests 1 and 2, there is no need to address the "communications" portion of Request 47 here.

member of Standards, reviewed some of the Challenged News Reports. Id. at 11. Defendant does not dispute including Chris Scholl and Steve Thode as document custodians.

Plaintiff has also demonstrated Mary Lockhart, another member of Standards, is a relevant document custodian. Defendant acknowledges Scholl (who did review relevant scripts) indicated he intended to have Lockhart start reviewing stories about Dr. Amin and ICDC, though Scholl also indicated he never followed through on this plan. Even so, Scholl's testimony demonstrates Defendant should review and produce responsive communications involving Lockhart, given there are indications in the record Lockhart might have participated in the publication of the Challenged News Reports.

Plaintiff mentions Jason Cumming's involvement in reviewing scripts related to the whistleblower complaint. Doc. 98 at 11. Defendant points to evidence showing Jason Cumming did not receive any scripts until after the September 15, 2020 episodes already aired and was not responsible for reviewing the challenged reports that aired on September 16 and 17, 2020. Doc. 104 at 12. Plaintiff has not shown Cumming conducted any reviews of scripts or draft scripts for any of the Challenged News Reports or the NBC News Article. Therefore, Defendant is not obligated to search for or produce communications involving Cumming that would be responsive to Request 47.

Plaintiff seeks scripts and draft scripts that were reviewed by all nine members of Standards. Four members are addressed above (Scholl, Thode, Lockhart, and Cumming). As to the other five members, Plaintiff fails to identify the other members or explain how they may have contributed to the Challenged News Reports. The record demonstrates the only members of Standards who reviewed scripts and draft scripts for the Challenged News Reports were Scholl, Thode, and (potentially) Lockhart. Although the record shows Defendant instructed

10

employees to have Standards review draft scripts regarding Dr. Amin or ICDC, Defendant explains not everyone on Standards reviews every draft script; rather, they coordinate with each other to determine who will review stories based on familiarity with the topics. The information provided to the Court demonstrates the process was followed for stories about Dr. Amin and ICDC. As a result, Chris Scholl, Steve Thode, and (potentially) Mary Lockhart were the only Standards employees responsible for reviewing articles and reports about Dr. Amin and ICDC. Indeed, Scholl testified no other Standards members conducted reviews of the relevant stories. Plaintiff has not presented any information that suggests Scholl's testimony is untrue or inaccurate. Accordingly, Plaintiff has not demonstrated Defendant is obligated to search for and produce communications involving these other five individuals.

Ultimately, Plaintiff has not pointed to anything in the record suggesting any other member of Standards (aside from Scholl, Thode, and Lockhart) participated in any review of the Challenged News Reports or the NBC News Article. Therefore, Defendant's search and production obligations apply only to Scholl, Thode, and Lockhart and does not extend to any other Standards member.

> **2.  Defendant is obligated to produce scripts and draft scripts Chris Scholl, Steve Thode, and Mary Lockhart reviewed on or before September 17, 2020, regarding Dr. Amin and gynecological care at ICDC.**

Defendant argues its obligation to produce draft scripts and scripts responsive to Request 47 should be limited to those scripts and draft scripts of the Challenged News Reports. In other words, Defendant argues it should not be required to produce scripts and draft scripts for any other programs. Defendant also raises a temporal argument. Defendant contends it should not be required to produce any script or draft script that was created after the Challenged News

11

Reports (i.e., after September 17, 2020) because such scripts would be irrelevant to proving actual malice.

I conclude Defendant is obligated to produce all scripts and draft scripts about Dr. Amin and gynecological care at ICDC that were reviewed by Standards (to include scripts and draft scripts for programs and articles other than the Challenged News Reports), but Defendant is not obligated to produce scripts and draft scripts created after September 17, 2020.  Draft scripts for programs and articles other than the Challenged News Reports may be relevant to the actual malice inquiry, given those documents may have informed Standards members about the facts underlying the Challenged News Reports.  However, Plaintiff has not shown scripts and draft scripts created after September 17, 2020, would have any relevance to the actual malice inquiry.  The actual malice inquiry will be focused on the individual employees' mental state at the time of the Challenged News Reports, and, therefore, scripts and draft scripts created after those reports will have little to no relevance to that mental state.

In sum, Defendant is obligated to search for and produce any scripts or draft scripts about Dr. Amin or gynecological care at ICDC that were reviewed by Scholl, Thode, or Lockhart on or before September 17, 2020.

In conclusion, Defendant is required to produce additional documents for Request 47. Defendant must produce all scripts and draft scripts concerning gynecological care at ICDC and Dr. Amin reviewed by Chris Scholl, Steve Thode, and Mary Lockhart where the review occurred

on or before September 17, 2020.  This includes scripts for the Challenged News Reports and other programs.

    **C.**    **Requests 1 and 2**

Through Requests 1 and 2, Plaintiff seeks internal and external communications related to Dr. Amin and gynecological care at ICDC.  Defendant argues its obligations to produce documents should be limited by relevant custodian, the nature of the communications at issue, and the date of the communication.  Defendant contends each proposed limitation is warranted because documents beyond those limits would be wholly irrelevant to Plaintiff's claims.  Each suggested limitation is addressed in turn.

    ***1.***    ***Relevant document custodians for Requests 1 and 2 are the 23 previously identified individuals, Jason Cumming, and Daniella Silva.***

For Requests for Production Numbers 1 and 2, Plaintiff argues the following are relevant document custodians: (1) 34 named individuals; (2) unnamed Standards employees who are not among the 34 named individuals; and (3) distribution lists for Standards or the programs that published the Challenged News Reports.  Doc. 98 at 2.  Plaintiff has not demonstrated Defendant is obligated to search for and produce documents for all these individuals and groups.

As an initial matter, Plaintiff provides a list of 34 individuals and generally states all these individuals are either among the decisionmakers or appear in correspondences with decisionmakers.  But Plaintiff does not explain who these individuals are, their areas of responsibility, or why their communications are relevant to this case.  As just one example, Plaintiff lists Cory Gnazzo as a relevant document custodian but provides no information about that individual.  Doc. 98 at 2, 15 (mentioning Gnazzo twice but providing no explanation or context).  Additionally, as explained above, not even all Standards members would be relevant document custodians—only those individuals that have some identifiable connection to the

challenged broadcasts are relevant custodians. Plaintiff has not met his burden of showing he is entitled to documents from all 34 individuals.

Although Plaintiff has provided only threadbare information regarding the 34 named individuals, Defendant does not appear to dispute 23 of those individuals are appropriate document custodians. Indeed, Defendant already searched for and produced documents for these 23 custodians. Doc. 104 at 4. Therefore, I consider these 23 individuals to be appropriate document custodians for the purposes of Requests 1 and 2.[10]

Of the 11 other named individuals, Plaintiff has failed to demonstrate 9 are appropriate document custodians. Plaintiff does not provide any details whatsoever about five individuals: David Sternlicht, Isaac-Davy Aronson, Lisa Rubin, Mirta Ojito, and Tricia McKinney. For four others—Casey Dolan, Marian Porges, Susan Sullivan, and Robin Gradison—Defendant's Response demonstrates these individuals are not relevant to this inquiry. Doc. 104 at 8–9, 11. For Casey Dolan, Defendant states Dolan sent an article about the ICDC whistleblower to Betsy Korona and Catherine Corrigan asking if Julia Ainsley and Jacob Soboroff were investigating the issue. Id. at 8–9. Asides from Ainsley and Soboroff's response indicating they were speaking to the whistleblower later, Plaintiff has not shown Casey Dolan had any other involvement in the matter. Id. at 9. Defendant also points to deposition testimony from Chris Scholl. In his deposition, Scholl testified Marian Porges, Susan Sullivan, and Robin Gradison were not involved in the ICDC stories. Id. at 11. Therefore, Plaintiff has failed to show any of these nine individuals are relevant document custodians.

---

[10] The 23 individuals are: Julia Ainsley, Jacob Soboroff, Mark Schone, Rich Greenberg, Chris Hayes, Denis Horgan, Brendan O'Melia, Rawan Jabaji, Tina Cone, Diane Shamis, Alexander Price, Luciana Lopez, Rachel Maddow, Cory Gnazzo, Kelsey Desiderio, Nicole Wallace, Patrick Burkey, Cort Harson, Regina Donizetti, Christopher Scholl, Steve Thode, Mary Lockhart, and Betsy Korona. Doc. 104 at 4.

14

Plaintiff does sufficiently show Jason Cumming and Daniella Silva are relevant custodians for Requests 1 and 2.  Cumming is a member of Standards, and briefing from both parties demonstrates Cumming was involved in reviewing other scripts related to the ICDC stories.[11]  Doc. 98 at 11; Doc. 104 at 11–12.  Therefore, Plaintiff is entitled to all documents responsive to Requests 1 and 2 for Jason Cumming.  Daniella Silva is a reporter for NBC News, and Defendant demonstrates Silva's work was included in the NBC News Article.  Doc. 104 at 9.  Daniella Silva is listed as a writer in the byline of the NBC News Article.  Id.  Therefore, Plaintiff is entitled to all documents responsive to Requests 1 and 2 for Daniella Silva.

Plaintiff has not shown he is entitled to documents from the unnamed Standards members or the distribution lists for Standards.  The Court has no way to identify these additional Standards members.  Plaintiff has not provided any additional information to show these unnamed individuals are relevant to this inquiry.

For the distribution lists, Plaintiff again has provided no additional information aside from references to its existence.  Defendant shows the distribution list only routes emails to Standards members and is not a searchable inbox.  Doc. 104 at 10 n.6.  Additionally, individuals are added and removed from the distribution list over time, making it impossible to identify individuals on the list at a specific time.  Id.  Plaintiff has not shown the distribution lists for the programs are any different.  Plaintiff's request is vague, and he has not satisfied his burden to show he is entitled to these documents.

---

[11]   As explained above, Plaintiff has not shown Cumming is an appropriate custodian for the purposes of Request 47 (as to determining responsive scripts and draft scripts).  Cumming is an appropriate custodian for the purposes of Requests 1 and 2.

In sum, aside from the 23 individual document custodians Defendant has already identified, Plaintiff has demonstrated 2 other individuals are appropriate document custodians for Requests 1 and 2: Jason Cumming and Daniella Silva.

### 2. *Requests 1 and 2 are not limited to communications about the Challenged News Reports.*

Defendant argues it should only be required to produce communications related to the Challenged News Reports in response to Requests 1 and 2 because all other communications would be irrelevant to proving actual malice. Plaintiff disagrees and argues Defendant should be required to produce all communications about Dr. Amin or ICDC, regardless of whether the communications are about the Challenged News Reports. As an example, Plaintiff points to individuals and reporters involved with the NBC News Article who expressed concerns about that reporting. Doc. 98 at 7. Plaintiff also argues other communications are relevant because his claims also concern NBCUniversal's Twitter posts and those posts are not tied to specific broadcasts. Id. at 8.

Defendant has not shown Requests 1 and 2 should be limited only to communications about the Challenged News Reports. If the relevant document custodians—including the members of Standards identified above—engaged in communications about Dr. Amin and ICDC, those communications would certainly bear on Plaintiff's claims in this action, regardless of whether the communications were expressly about the Challenged News Reports. Those document custodians could reasonably be expected to communicate information and opinions about Dr. Amin and ICDC that would bear on actual malice and truth or falsity, even if the communication was independent from any specific article or report. Therefore, communications responsive to Requests 1 and 2 are not limited solely to communications about the Challenged

16

News Reports.[12]  Even though it appears Defendant has already searched for and produced documents tied to the Challenged News Reports, Defendant must search for and produce all communications discussing Dr. Amin or ICDC from all relevant document custodians, even if the communications are not about the Challenged News Reports.

### 3. Requests 1 and 2 are not limited to communications that occurred before the Challenged News Reports.

Defendant contends Requests 1 and 2 should be limited to communications that occurred before the Challenged News Reports.  Plaintiff disagrees and argues communications after the Challenged News Reports can be relevant to actual malice of individual employees at the time of the Challenged News Reports.  As an example, Plaintiff points to a text message exchange between reporters after the NBC News Article was published.  The text exchange involved discussions about the whistleblower and reasons to doubt the veracity of the published statements.  Doc. 98 at 13.

Plaintiff's argument is convincing.  The text message exchange shows communications that occurred after the Challenged News Reports could be relevant to Plaintiff's claims.  Therefore, Requests for Production Numbers 1 and 2 will not be limited to a specific time period for the production of communications.

For the reasons above, I **GRANT in part** Plaintiff's Motion to Compel Defendant's Discovery.  Defendant is required to respond to Plaintiff's Request for Production of Documents Numbers 1, 2, and 47.  The requests will be limited as follows:

---

[12]   The parties appear to disagree about whether the Twitter posts are a separate basis for Plaintiff's claims and, consequently, whether the Twitter posts can form a basis for certain discovery requests.  The Court need not resolve this disagreement here.  As explained, Requests 1 and 2 are not limited communications about the Challenged News Reports for other reasons.

17

For Request 47: Defendant must produce all scripts or drafts of scripts regarding Dr. Amin or allegations of mistreatment or inappropriate gynecological medical care of ICE detainees at the ICDC that were reviewed by Chris Scholl, Steve Thode, and Mary. Defendant is not required to produce any scripts or draft scripts created after September 17, 2020.

For Requests 1 and 2: Defendant must produce any and all documents referring to, reflecting, or relating to internal or external communications about the Challenged News Reports, Dr. Amin, or gynecological health services for detainees at ICDC involving the 23 previously identified individuals, Jason Cumming, and Daniella Silva. Defendant is required to produce communications responsive to Requests 1 and 2, even if the communication occurred after September 17, 2020.

## II.     The Court Denies Plaintiff's Request for Fees and Expenses

In Plaintiff's Motion to Compel, he requests the Court require Defendant to pay reasonable expenses and attorney's fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). Defendant attempted to reach a resolution regarding this dispute prior to Plaintiff filing this Motion. Defendant's non-disclosure was substantially justified under Federal Rule of Civil Procedure 37(a)(5)(A)(ii). Due to the broad nature of Plaintiff's request, Defendant's opposition to Plaintiff's Motion was substantially justified. Maddow v. Procter & Gamble Co., Inc., 107 F.3d 846, 853 (11th Cir. 1997) ("Substantially justified means that reasonable people could differ as to the appropriateness of the contested action."). Defendant is not required to pay Plaintiff's reasonable expenses and attorney's fees incurred in filing this Motion. Accordingly, the Court **DENIES** the portion of Plaintiff's Motion seeking expenses and attorney's fees under Rule 37.

## CONCLUSION

For the foregoing reasons, I **GRANT in part** Plaintiff's Motion to Compel Defendant's Discovery. Within 30 days of this Order, Defendant shall supplement their discovery responses with any documents that are responsive to Requests 1, 2, and 47 within the previously defined parameters or, alternatively, provide a verification that no responsive documents exist.

**SO ORDERED**, this 28th day of November, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA