UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., <br><br> Plaintiff, <br><br> v. <br><br> NBCUNIVERSAL MEDIA, LLC, <br><br> Defendant. | Case No. 5:21-cv-00056-LGW-BWC <br><br> **MOTION FOR A PROTECTIVE ORDER QUASHING THE DEPOSITION OF CYNTHIA COUNTS AND MEMORANDUM IN SUPPORT** |

## PRELIMINARY STATEMENT

In this motion, Cynthia Counts, counsel for Defendant NBCUniversal Media, LLC ("NBCU") seeks to quash a deposition subpoena served upon her by counsel for Plaintiff Dr. Mahendra Amin ("Dr. Amin"). Plaintiff's counsel insists that Ms. Counts violated a South Carolina Local Civil Rule when she had a conversation with a non-party deponent at a public restaurant during a deposition lunch break. But because this case is pending in the Southern District of Georgia—not the District of South Carolina—that Rule does not even apply to this action. And, even if it did, Ms. Counts's conversation did not violate the Rule—or any ethical rule for that matter—and Plaintiff's counsel has already availed herself of the opportunity to extensively question the deponent about the conversation, which is the precise remedy contemplated by the Rule.

Seeking a second bite at the apple, Plaintiff's counsel now insists that this questioning was insufficient, and claims she is still entitled to depose both the deponent's lawyer and Ms. Counts to determine whether to seek sanctions against them. A New York court has already rejected this request as to the deponent's lawyer, and its reasons for doing so are only more persuasive as applied to Ms. Counts, an attorney of record in this action. Indeed, courts have made clear that

deposing an opposing counsel is an extraordinary measure at odds with our adversarial legal system, and it should therefore only occur in the most limited circumstances. Using a deposition to determine whether to seek sanctions—which would be unwarranted in any event—is simply "discovery on discovery" and does not rise to this level.

When this issue has been briefly raised with the Court during previous hearings, the Court has consistently expressed doubt about the need for Ms. Counts's deposition. The Court's initial inclination is correct. The focus of the parties and this Court should be the upcoming dispositive motion deadline, not a tangential inquiry into a frivolous sanctions motion. Because Plaintiff cannot proffer any legitimate reason for deposing Ms. Counts, Plaintiff's subpoena should be quashed.

## FACTUAL BACKGROUND

### A. ICE Detainees File A Putative Class Action Lawsuit Against Dr. Amin, And NBCU Lists These ICE Detainees On Its Initial Disclosures In This Case.

As the Court knows, this defamation action stems from the publication of five MSNBC news reports, all of which reported on a publicly available whistleblower complaint made to federal government agencies. The whistleblower complaint alleged that a doctor—first identified by third-party news organizations as Dr. Amin—was performing unnecessary and unconsented-to gynecological procedures on women detained at the Irwin County Detention Center ("ICDC").

The present action is not the only one in which Dr. Amin is embroiled. In December 2020, numerous ICE detainees who were treated by Dr. Amin filed a putative class action lawsuit against him, as well as against the private corporation that managed ICDC, and various governmental agencies, alleging that they suffered "widespread and systematic abuse" by Dr. Amin. *See Oldaker v. Giles*, Case No. 20-cv-00224-WLS-MSH (M.D. Ga. 2020). More specifically, the *Oldaker* plaintiffs claim that they were "victims of non-consensual, medically unindicated and/or invasive

2

gynecological procedures, including unnecessary surgical procedures under general anesthesia" performed by or at the direction of Dr. Amin. *Id.* Dkt. 210, ¶ 62. The *Oldaker* plaintiffs alleged that, in many instances, Dr. Amin's conduct rose to the level of sexual assault, *id.* ¶ 63, and, indeed, one plaintiff—a victim of sexual violence—referred to an ultrasound performed by Dr. Amin as "feeling like she was 'being raped again,'" *id.* ¶ 145. Due to a pending federal criminal investigation into Dr. Amin's treatment of ICDC detainees, discovery in the *Oldaker* action has been stayed.

Because the *Oldaker* plaintiffs alleged that they suffered medical mistreatment by Dr. Amin, and because the present defamation action involves allegations about Dr. Amin's treatment of ICDC detainees, NBCU listed the *Oldaker* plaintiffs on its Rule 26 Initial Disclosures as individuals who may have discoverable information. Consequently, Dr. Amin sought to depose most of the *Oldaker* plaintiffs. But, since discovery is stayed in *Oldaker*, and because lawyers for the *Oldaker* plaintiffs wanted to avoid having their clients deposed twice by counsel for Dr. Amin (in effect, allowing Dr. Amin to use the present action as a workaround to the discovery stay in *Oldaker*), many of the *Oldaker* plaintiffs contested their deposition subpoenas. As a result, the parties to the present action agreed to accommodations for the *Oldaker* plaintiffs, including giving proposed deposition topics and possible exhibits to counsel for the *Oldaker* plaintiffs before the depositions and limiting Dr. Amin's cross-examination to two-and-a-half hours.

### B. The Deposition of Yanira Yesenia Oldaker

On July 27, 2023, the parties held the deposition of Yanira Yesenia Oldaker, the lead *Oldaker* plaintiff. The deposition occurred in Ms. Oldaker's home state of South Carolina and was attended by Stacey Evans and Fred Hanna (counsel for Dr. Amin), Cynthia Counts (counsel for NBCU), and Elora Mukherjee and Fatma Marouf (counsel for Ms. Oldaker). *See* Declaration of

Cynthia Counts ("Counts Declaration") ¶ 2. Because Ms. Evans sent the deposition subpoena, she began the questioning of Ms. Oldaker. During this questioning, Ms. Oldaker testified consistently that Dr. Amin was "very rough" and "hurt" her when he performed an in-office examination. *See, e.g.*, Declaration of Elizabeth McNamara ("McNamara Declaration") Ex. A (Oldaker Tr.) at 23:20-23. She further testified that other detainees with whom she spoke similarly described Dr. Amin as "aggressive" and "rough." *Id.* at 27:3-12.

After Ms. Evans indicated that she had concluded her questioning of Ms. Oldaker, everyone at the deposition agreed to take a lunch break before Ms. Counts began her questioning of Ms. Oldaker on behalf of NBCU. *See id*. at 109:9-110:2. Ms. Oldaker, along with her counsel, Ms. Mukherjee and Ms. Marouf, went to a nearby restaurant for lunch. Later, after handling various work-related matters, Ms. Counts also went to that restaurant because Mr. Hanna informed the parties that it was the only restaurant in walking distance. *See* Counts Decl. ¶¶ 3-4. Ms. Counts sat at an open seat at Ms. Oldaker and her counsel's table and had lunch. *Id.* During the short lunch, Ms. Counts, Ms. Oldaker, Ms. Mukherjee, and Ms. Marouf made polite conversation. *Id.* After Ms. Oldaker and her counsel received their bill, they left the restaurant without Ms. Counts, who remained to pay her separate bill. *See id.* ¶ 5; Oldaker Tr. at 126:1-13.

When the parties returned to the deposition, Ms. Evans indicated that she had changed her mind, stated that she was going to pursue further questioning of Ms. Oldaker, and then proceeded to ask Ms. Oldaker about her lunch conversations. *See* Oldaker Tr. at 113:25-114:5. Ms. Oldaker confirmed that she had lunch with Ms. Mukherjee, Ms. Marouf, and Ms. Counts. *Id.* at 114:6-12. She explained that much of the lunchtime conversation was between Ms. Counts and Ms. Mukherjee/Ms. Marouf. *Id.* at 115:3-15. Ms. Oldaker explained that she was "not listening to" this conversation, she was not "eavesdropping," and, for the most part, did not understand it. *Id.*

4

Ms. Evans asked Ms. Oldaker whether Ms. Counts shared any questions she would be asking, and, in response, Ms. Oldaker confirmed that Ms. Counts just said "that she was going to talk to me about my hysterectomy and just ask me simple questions." *Id.* at 116:3-9. Ms. Oldaker also confirmed that they did not discuss her answers to any questions, her lawyers did not suggest what her answers to any questions should be, and her lawyers gave her no information about what she should share. *Id.* at 116:10-23.[1]

Ms. Evans then directed the parties' attention to District of South Carolina Local Civil Rule 30.04(E)–(G), which provides:

> 30.04: Conduct During Depositions.
>
> (E) Counsel and witnesses shall not engage in private "off the record" conferences during depositions or during breaks or recesses regarding the substance of the testimony at the deposition, except for the purpose of deciding whether to assert a privilege or to make an objection or to move for a protective order.
>
> (F) Any conferences that occur pursuant to, or in violation of, Local Civ. Rule 30.04(E) (D.S.C.) are proper subjects for inquiry by deposing counsel to ascertain whether there have been any witness coaching and, if so, to what extent and nature.
>
> (G) Any conferences that occur pursuant to, or in violation, of Local Civ. Rule 30.04(E) (D.S.C.) shall be noted on the record by the counsel who participated in the conference. The purpose and outcome of the conference shall be noted on the record.

*See* District of South Carolina Local Civil Rule 30.4 (the "South Carolina Local Rule"); Oldaker Tr. at 117:6-118:8. Accordingly, Ms. Evans proceeded to question Ms. Mukherjee and Ms. Marouf about the "purpose and outcome" of their conferences with Ms. Oldaker during lunch and

---

[1] Both during her continued questions and throughout the initial deposition, Ms. Evans was argumentative with Ms. Oldaker, repeatedly reminding her that she was "under oath." *See* Oldaker Tr. at 60:2; 116:19-20. When Ms. Evans asked whether Ms. Oldaker discussed the substance of her testimony during lunch and Ms. Oldaker responded, "No, ma'am," Ms. Evans exclaimed, "That's also just blatantly a lie. Oh, my God." *Id.* at 228:24-229:6. Depositions are intended to be "question-and-answer sessions between a lawyer and a witness aimed at uncovering the facts in a lawsuit; not a vehicle for intimidation and harassment." *Mader v. Motorola Inc.,* 1995 WL 678507, *6 (N.D. Ill. Nov. 8, 1995). That is particularly so, in a case like this, where the deponent is the lead plaintiff in a putative class action lawsuit against Dr. Amin, and Ms. Evans's conduct could be construed as an attempt to get Ms. Oldaker to drop her complaint. *Cf. Ethicon Endo-Surgery v. U.S. Surgical Corp.,* 160 F.R.D. 98, 99 (S.D. Ohio 1995).

during deposition breaks.  Oldaker Tr. at 118:3-120:16; 122:5-124:20.[2]  The lawyers and Ms. Oldaker were clear that no one told Ms. Oldaker to change her testimony or told her what she should say regarding the substantive facts in the case.  *Id.* at 116, 118-124.

After this clarification, Ms. Counts began her substantive questioning of Ms. Oldaker. Once Ms. Counts concluded, Ms. Evans *again* questioned Ms. Oldaker about her lunch.  *See id.* at 220:1-226:20.  Consistent with the parties' agreement to provide topics for depositions, Ms. Oldaker confirmed that she "believe[d]" Ms. Counts indicated she would ask about her prior pap smears and could not recall whether Ms. Counts indicated she would also ask about ultrasounds. *Id.* at 220:3-7.  Ms. Oldaker then confirmed that Ms. Counts did not tell her that she would be asking about numerous other topics that came up during Ms. Counts's questioning, and Ms. Counts never suggested that she was "friendly" with her, "on [her] side,"  on "the same team," or "[a]ny words to those effects."  *Id.* at 225:5-226:20.

**C. Dr. Amin's Counsel Serves Deposition Subpoenas on Ms. Counts and Ms. Mukherjee and The Southern District of New York Quashes Ms. Mukherjee's Subpoena**

Following Ms. Oldaker's deposition, on August 16, 2023, Ms. Evans emailed Ms. Counts and Ms. Mukherjee stating, "Plaintiff has concerns that there were multiple violations of D.S.C. Local Rules during Ms. Oldaker's deposition . . . Before we file a motion for sanctions, we want to exercise our right to explore the communications that occurred during those breaks with Ms. Counts and Prof. Mukherjee.  I believe this can be accomplished via short remote depositions." *See* McNamara Decl. Ex. B.  Ms. Counts and Ms. Mukherjee both indicated that any deposition would be inappropriate and refused to accept service of subpoenas.  *See id.*  Ultimately, these

---

[2] Ms. Evans apparently believed that Ms. Oldaker changed her answer to a question following a conference with her attorneys during a deposition break.  These events occurred before the lunch break when the conversation at issue on this motion occurred. There is no dispute that Ms. Counts was not present during the pre-lunch conference and, therefore, it is irrelevant to the present motion.  *See* Oldaker Tr. at 124:21-125:3 (confirming that Ms. Counts was not present at such meeting).

6

subpoenas were served. *See* McNamara Decl. Ex. C.

On September 22, Ms. Evans stated in an email that, in lieu of a deposition, Ms. Mukherjee could both provide declarations that answered eleven questions, virtually all of which were already asked and answered during Ms. Oldaker's deposition[3]:

1. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee discuss any questions Ms. Counts was planning to ask Ms. Oldaker?

2. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker about prior pap smears with other doctors?

3. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker about transvaginal ultrasounds with other doctors?

4. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker about literature or pamphlets available at other doctors' offices she had visited?

5. During lunch on July 27, 2023 did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker whether other doctors had given her pamphlets during her visits?

6. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee show Ms. Oldaker medical records?

7. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts was going to ask Ms. Oldaker about a sonogram picture?

8. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee suggest that Ms. Oldaker should have, must have, or maybe did hear more information about women at ICDC having hysterectomies than Ms. Oldaker shared in response to Dr. Amin's counsel's questioning?

9. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee suggest to Ms. Oldaker what her answers to any questions should be, and if so, what?

10. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee state how they would answer any questions if they were Ms. Oldaker, and if so, what?

11. What was said during lunch on July 27, 2023 (inclusive of all present)?

---

[3] *See* Oldaker Tr. at 113-116, 118:3-120:16; 22:5-124:20, 125, 211, 218, 220-229, 231.

7

*See* McNamara Decl. Ex. D.  She made this same request to Ms. Counts.  *See* McNamara Decl. Ex. J.  Believing that the request for declarations was no different than a deposition and would therefore still be improper, both Ms. Counts and Ms. Mukherjee rejected this proposal.  *See* McNamara Decl. Exs. D, J.

On October 12, 2023, Ms. Mukherjee filed a motion to quash her deposition subpoena in the Southern District of New York (the court with jurisdiction over the subpoena).  *See* McNamara Decl. Ex. E (Case No. 1:23-mc-377 (S.D.N.Y. 2023)).  After the motion was fully briefed, Magistrate Judge Stewart Aaron held oral argument and, on October 25, issued an opinion and order quashing the subpoena.  *See* McNamara Decl. Ex. G.  In its order, the court first held that it was unclear whether the South Carolina Local Rule even applied or whether the District of South Carolina has the jurisdiction to impose sanctions on Ms. Mukherjee.  *Id.* at 9-10.  The court explained that neither Ms. Evans nor Ms. Mukherjee was admitted *pro hac vice* into South Carolina and the action for which the deposition was occurring was pending in the Southern District of Georgia.  *Id.*  The court then held that even if the South Carolina Local Rule did apply, it was unclear that it authorizes the imposition of sanctions.  *Id.* at 11.  And even if the South Carolina Local Rule could authorize sanctions, the court held that "the testimony sought by Dr. Amin from Prof. Mukherjee is not proportional to the needs of the case."  *Id.*  The court explained that Ms. Evans already questioned Ms. Mukherjee on the record during the deposition and questioned Ms. Oldaker about what she discussed with Ms. Counts.  *Id.* at 11-13.  Finally, the court held that the factors considered by courts for quashing depositions of opposing counsel favored quashing the subpoena.  *Id.* at 13-14.  On November 8, 2023, Ms. Evans filed a motion objecting to the Magistrate Judge's decision.  *See* Case No. 1:23-mc-377, Dkt. 31.  On November 16, 2023, the district court rejected Ms. Evans's motion, finding that the Magistrate Judge's order was not

8

"clearly erroneous or contrary to law." *See* McNamara Decl. Ex. H.

On October 20, as Ms. Mukherjee's motion was pending, Ms. Counts sent Ms. Evans a further email requesting that Ms. Evans withdraw her subpoena. *See* McNamara Decl. Ex. I. Ms. Counts reminded Ms. Evans that, to the extent the South Carolina Local Rule even applies, Ms. Evans already availed herself of its remedies by questioning Ms. Oldaker and Ms. Mukherjee during the deposition. *Id.* Ms. Counts further explained that, under Georgia case law, Ms. Evans could never meet the high standard for deposing opposing counsel. *Id.* On October 24, Ms. Evans rejected Ms. Counts's request and again insisted that Ms. Counts answer the eleven questions she posed earlier (offering only to "work with" Ms. Counts if Ms. Counts believed the questions touched on "personal areas of conversation"). *Id.*[4] This motion to quash follows.

## ARGUMENT

Federal Rule of Civil Procedure 45 authorizes parties in an action to command a person to "produce documents, electronically stored information, or tangible things in that person's possession, custody, or control" or to "command attendance at a deposition." Fed. R. Civ. P. 45(a)(1)(B), (D). Under Rule 45, however, a court must quash a subpoena that "subjects a person to undue burden." *Id.* at 45(d)(3). In addition, under Federal Rule of Civil Procedure 26, a court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, or undue burden or expense" including "forbidding . . . discovery." Fed. R. Civ. P. 26(c)(1). The Court's inherent discretion to control discovery is particularly important in cases where a party seeks to depose opposing counsel. This is because such depositions "disrupt the adversarial system, lower the standards of the profession, add to the time and costs of litigation,

---

[4] After the Southern District of New York quashed Ms. Mukherjee's subpoena, counsel for NBCU clarified with Ms. Evans that she still intended to pursue Ms. Counts's deposition. Ms. Evans reiterated that she would still accept a declaration in lieu of a deposition and offered to leave off question 11. *See* McNamara Decl. Ex. K.

and detract from the quality of client representation." *In re Douglas Asphalt Co.*, 436 B.R. 246, 249 (S.D. Ga. 2010).

Here, Ms. Evans seeks to depose Ms. Counts—her opposing counsel—in an effort to explore sanctions against Ms. Counts. But the only authority that Ms. Evans cites in support of this deposition, the South Carolina Local Rule, does not apply to this case. And even if it did, Ms. Counts's short conversation with Ms. Oldaker did not violate this Rule or any other ethical rules. Accordingly, Ms. Evans cannot show that her need to depose Ms. Counts falls into one of the "limited circumstances" when depositions of opposing counsel are permitted. *See In re Douglas Asphalt Co.*, 436 B.R. at 249.

## I. The South Carolina Local Rule Does Not Apply In This Action And Does Not Permit The Imposition of Sanctions

As an initial matter, the South Carolina Local Rule does not even apply to Ms. Counts. The analysis conducted by the Southern District of New York in its order on Ms. Mukherjee's motion to quash is instructive. *See* McNamara Decl. Ex. G at 9-11. The deposition of Ms. Oldaker, although conducted in South Carolina, was taken for purposes of the present action, pending in the Southern District of Georgia. *See id.* at 10. Ms. Counts was not admitted *pro hac vice* into the District of South Carolina, nor was there any need for her to be so admitted in order to take a deposition for this case.[5] *See id.* The caption on Ms. Oldaker's deposition transcript states, "In the United States District Court for the Southern District of Georgia," and the videographer's statement similarly makes clear that the deposition is being held for a case "in the United States District for the Southern District of Georgia." *See id.* at 9-10. Further, Rule 1.01 of the Local

---

[5] While there was a South Carolina local action opened by Ms. Oldaker in order to quash her deposition subpoena, *see In re Yanira Oldaker Subpoena*, 3:23-mc-00251 (D.S.C. 2023), Ms. Counts did not appear in this action, and the Court never actually ruled on Ms. Oldaker's motion because the parties reached an agreement concerning the scope of Ms. Oldaker's deposition.

Civil Rules for the District of South Carolina makes clear that the Rules apply specifically to South Carolina federal cases, stating: "These Local Civil Rules of practice shall govern the conduct of the United States District Court for the District of South Carolina." Put simply, the South Carolina Local Rule is irrelevant to this Georgia-based case. And the Local Rules for the Southern District of Georgia do not contain any provision similar to the South Carolina Local Rule.

In addition, the South Carolina Local Rule by its very terms does not authorize the imposition of sanctions on Ms. Counts. Again, the analysis conducted by the Southern District of New York is correct. *See* McNamara Decl. Ex. G at 11. South Carolina Local Rule 30.04(J) states that a violation of the Rule "shall subject the violator to sanctions under Fed. R. Civ. P. 37(b)(2)." But Federal Rule of Civil Procedure 37(b)(2) only applies to sanctions "sought in the District where the action is pending." Federal Rule of Civil Procedure 37(b)(1)—which is not referenced in the South Carolina Local Rule—applies to sanctions "sought in the District where the deposition is taken." Because this action is pending in the Southern District of Georgia, not the District of South Carolina, sanctions could not be imposed against Ms. Counts under Rule 37(b)(2) or Local Rule 30.04(J). *See* McNamara Decl. Ex. G at 11.

II. **Even If The South Carolina Local Rule Applies To This Action, Ms. Counts Did Not Violate It**

Even if the South Carolina Local Rule did apply to this action—and, for the reasons stated above, it clearly does not—Ms. Counts did not violate this Rule or any other ethical rules by having a brief lunchtime conversation with Ms. Oldaker and her counsel. South Carolina Local Rule 30.04(E) states that counsel and witnesses shall not engage in "private 'off the record' conferences during depositions or during breaks." But Ms. Counts did not have a "private" conversation with Ms. Oldaker. They shared a brief lunch in the only restaurant near the deposition location. Indeed, the fact that the conversation was not private is evidenced by the fact that counsel for Dr. Amin

11

was in the restaurant and witnessed it occurring. *See* Oldaker Tr. at 121:25-122:1.

Further, as Ms. Oldaker testified during her deposition, Ms. Counts did not speak with her about the "substance" of her testimony. Ms. Counts indicated broad topics on which she would question Ms. Oldaker—something that all parties had already agreed was permissible as a condition of Ms. Oldaker's deposition occurring in the first place. As Ms. Oldaker testified, Ms. Counts did not provide her with specific questions, did not instruct her how to answer any questions, or in any way suggest the substance of her testimony. *See id.* at 116:3-9; 223:1-226:20. Nor did Ms. Mukherjee or Ms. Marouf. *See id.* at 116:10-23; 228:6-229:4.

Accordingly, because Ms. Evans already has enough information to know that the South Carolina Local Rule was not violated, there is no reason for Ms. Evans to depose Ms. Counts.

**III.     Ms. Evans Cannot Meet The High Standard For Deposing Opposing Counsel**

Because depositions of opposing counsel are strongly disfavored, such depositions are only permitted in the limited circumstances where: "(1) there are no other means to obtain information sought, (2) the attorney actually possesses relevant and non-privileged information, and (3) the information is crucial to the preparation of the case." *In re Douglas Asphalt Co.*, 436 B.R. at 250 (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). This is referred to as the "*Shelton* test" and has been applied by numerous courts in the Eleventh Circuit, including the Southern District of Georgia. *See, e.g.*, *In re Douglas Asphalt Co.*, 436 B.R. at 250; *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2013 WL 12067452, at *3-4 (N.D. Ga. Jun. 20, 2013); *D.O.T. Connectors, Inc. v. J.B. Nottingham & Co.*, Inc.,2001 WL 34104929, at *1-2 (N.D. Fla. Jan. 22, 2001).[6] Notably, even Ms. Evans recognizes that depositions of opposing counsel

---

[6] Other Georgia courts have applied a more "flexible" approach to determining whether to permit a deposition of opposing counsel. *See Fox v. Pitney Bowers Inc.*, 2009 WL 10670517, at *5 (N.D. Ga. Sept. 18, 2009). For the reasons stated herein, even under a more "flexible" approach, deposing Ms. Counts would be inappropriate.

can only occur in the rarest of cases. In her opposition to Ms. Mukherjee's motion to quash, Ms. Evans strenuously argued that "[t]his is not an instance of 'a lawyer seeking to depose opposing counsel under threat of sanctions.'" *See* McNamara Decl. Ex. F at 2. But that is precisely what Ms. Evans attempts to do here. Accordingly, the *Shelton* factors strongly militate against the deposition of Ms. Counts.

*First*, there was another way for Ms. Evans to obtain the information she now seeks from Ms. Counts and, in fact, she already fully availed herself of this method—*i.e.*, questioning Ms. Oldaker on the record during her deposition. Indeed, Ms. Evans spent a significant amount of time during the deposition questioning Ms. Oldaker about her lunchtime conversation with Ms. Counts, asking Ms. Oldaker both generally "[w]hat did you talk about at lunch?" Oldaker Tr. at 114:16-22, and more specifically about what Ms. Counts said to her. *See, e.g., id.* at 116:3-4 ("Did Ms. Counts share with you the questions that she'll be asking you today?"); 116:10-11 ("[D]id you discuss what your answers would be to those questions?"); 220:4-6 ("During lunch, did Ms. Counts tell you that she was going to ask you about your prior Pap smears?"); 220:8-10 ("During lunch, did Ms. Counts tell you that she was going to ask you about your prior transvaginal ultrasounds?"); 223:10-12 ("During lunch, did you discuss the issue of whether doctors had provided you literature in the past or pamphlets?"); 223:16-17 ("During lunch, did you look at your medical records?"); 225:12-15 ("During lunch, did anyone suggest to you that you had heard more information than you shared with me about the women having hysterectomies at Irwin County Detention Center?").

In fact, asking questions of the witness is precisely the remedy contemplated by the South Carolina Local Rule. *See* D.S.C. Local Civ. Rule 30.04(F) ("Any conferences that occur pursuant to, or in violation of, Local Civ. Rule 30.04(E) (D.S.C.) are proper subjects for inquiry by deposing counsel."). The Rule notably does *not* provide that counsel can obtain a deposition of opposing

counsel.

In response to Ms. Mukherjee's motion to quash, Ms. Evans argued that further testimony was necessary because Ms. Counts objected to one of the questions she asked Ms. Oldaker, and Ms. Oldaker then answered in response to that question that she "could not recall." The Southern District of New York squarely rejected this argument, finding that a review of Ms. Oldaker's deposition transcript "reflects that, after Attorney Counts' objections, Ms. Oldaker responded to only two topics with a lack of recall. Ms. Oldaker answered the remainder of Attorney Evans' questions." *See* McNamara Decl. Ex. G at 12-13. Accordingly, because Ms. Evans already questioned Ms. Oldaker about what occurred during lunch, there is no reason to seek further testimony from Ms. Counts.

*Second*, Ms. Counts does not possess any "relevant and non-privileged information." The information that she has about the lunchtime conversation is entirely duplicative of the information Ms. Oldaker already shared during her deposition. And, to the extent Ms. Evans intends to ask Ms. Counts about her mental impressions of Ms. Oldaker, this information would be privileged work product. Thus, the second *Shelton* factor also favors quashing the subpoena to Ms. Counts.

*Third*, and finally, the information that Ms. Evans seeks is not in any way "crucial" to the preparation of this case. Ms. Evans indicated that she wants to depose Ms. Counts to decide whether to bring a sanctions motion against her. *See* McNamara Decl. Ex. B. This has nothing to do with the claims or defenses in this defamation action and, put bluntly, is a side-show distracting the parties from preparing their upcoming dispositive motions. Ms. Evans has also belatedly indicated that Ms. Counts testimony would be relevant because it might provide impeachment evidence concerning Ms. Oldaker's damaging testimony about Dr. Amin. But the hope of developing possible impeachment evidence is not a compelling basis to justify deposing opposing

14

counsel. *See Mancini v. Ticketmaster*, 2008 WL 506264, at *1 (S.D.N.Y. Feb. 21, 2008) ("Generally, and with good reason, the taking of depositions of opposing counsel is disfavored. . . . [T]he impeachment of [counsel's] father's testimony is not an adequate reason for deposing [counsel]."). Ms. Evans has provided no basis to believe that Ms. Counts' testimony concerning lunch would in any way contradict Ms. Oldaker's extensive testimony on the subject. Nor has she provided any basis to believe that Ms. Counts' testimony would in any contradict the statements made on the record by Ms. Oldaker's counsel. And, for the avoidance of doubt, Ms. Counts' testimony would only confirm Ms. Oldaker's recollection that her substantive testimony was not discussed during the lunch. Ms. Evans's belief that Ms. Counts would contradict Ms. Oldaker and provide impeachment testimony is rank speculation lacking any foundation. Accordingly, the third *Shelton* factor supports quashing the deposition subpoena to Ms. Counts.

## CONCLUSION

For all of the reasons stated above, Ms. Counts respectfully requests that the Court quash the subpoena issued to her and award any further relief that the Court deems just and proper.

Dated: November 28, 2023

                                  Respectfully submitted,

                                  */s/ Elizabeth A. McNamara*
                                  Elizabeth A. McNamara
                                  (admitted *pro hac vice*)
                                  DAVIS WRIGHT TREMAINE LLP
                                  1251 Avenue of the Americas, 21st Floor
                                  New York, NY 10020-1104
                                  Tel: (212) 489-8230
                                  lizmcnamara@dwt.com

                                  Cynthia L. Counts
                                  Georgia Bar No. 190290
                                  FISHERBROYLES, LLP

945 East Paces Ferry Rd. NE, Suite 2000
Atlanta, GA 30326
(404) 550-6233
cynthia.counts@fisherbroyles.com

*Attorneys for Defendant NBCUniversal Media, LLC and Defendant's Counsel Cynthia Counts*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 28th day of November, 2023, a true and correct copy of the foregoing document was served upon the following via the Court's electronic filing system:

Stacey Godfrey Evans
sevans@staceyevanlaw.com

Amble Johnson
ajohnson@staceyevanslaw.com

Scott R. Grubman
sgrubman@cglawfirm.com

                                       */s/ Elizabeth A. McNamara*
                                       Elizabeth A. McNamara
                                       (admitted *pro hac vice*)
                                       DAVIS WRIGHT TREMAINE LLP
                                       1251 Avenue of the Americas, 21st Floor
                                       New York, NY 10020-1104
                                       Tel: (212) 489-8230
                                       lizmcnamara@dwt.com

                                       *Attorneys for Defendant NBCUniversal Media, LLC and Defendant's Counsel Cynthia Counts*