# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: SUBPOENA ISSUED TO NON-PARTY ELORA MUKHERJEE, | ) ) ) | |
| Movant. | ) ) | CIVIL ACTION NO. 1:23-mc-00377-LAK-SDA |
| DR. MAHENDRA AMIN, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| NBCUNIVERSAL, | ) ) | |
| Defendant. | ) | |

### PLAINTIFF'S RESPONSE TO MOTION TO QUASH SUBPOENA FOR DEPOSITION OF ELORA MUKHERJEE

During the lunch break of a deposition, Elora Mukherjee discussed the contents of her client's testimony with her non-party client, Yanira Oldaker. She also permitted counsel for NBCUniversal, Cynthia Counts, to sit for lunch with Ms. Oldaker, and for Ms. Counts to discuss the questioning that NBCUniversal planned to ask later in the deposition. Ms. Oldaker's testimony changed after her discussions with Ms. Mukherjee and Ms. Counts.

This conduct directly and obviously violated District of South Carolina Local Rule 30.04(E): "Counsel and witnesses shall not engage in private, 'off the record' conferences during depositions or during breaks or recesses regarding the substance of the testimony at the deposition, except for the purpose of deciding whether to assert a privilege or to make an objection or to move for a protective order." Ms. Mukherjee herself stated on the record, while apologizing for being "not familiar with that local rule," that there were "three subjects that we discussed during the breaks," in which she aimed to change the testimony of Ms. Oldaker. She did not then, and has

not since, shared the full contents of what was discussed during the lunch break, particularly Ms. Counts' contributions to the conversation.

Ms. Mukherjee does not dispute these facts, and nothing in the hundreds of pages she and amici curiae have or will file with the Court contradicts them. This is not an instance of "a lawyer seeking to depose opposing counsel under threat of sanctions," or "intimidating, harassing, coercive, and threatening," and Ms. Mukherjee's own filings demonstrate the extent to which counsel for Dr. Amin has sought to minimize the burden on Ms. Mukherjee, while probing whether a motion for sanctions against Ms. Mukherjee and/or Ms. Counts is necessary, and to seek evidence to counter the potentially coached and curated testimony of Ms. Oldaker developed during the lunch break. Her motion to quash should be denied.

<u>**BACKGROUND**</u>

The pertinent facts for Ms. Mukherjee's motion are much simpler than the hundreds of pages she has filed suggest.

Dr. Mahendra Amin has brought suit against NBCUniversal, LLC, alleging that it defamed him by publishing statements that he performed mass hysterectomies and unconsented-to and abusive medical procedures on women detained by the United States Immigration and Customs Enforcement (ICE) at the Irwin County Detention Center (ICDC). *Amin v. NBCUniversal, LLC*, 5:21-CV-00056, 2022 WL 16964770, at *1, 4-5 (S.D. Ga. Nov. 16, 2022). The majority of his allegations having survived NBCUniversal's motion for judgment on the pleadings, *id*., and Dr. Amin is now in discovery, seeking evidence for his case. Because he alleges defamation under Georgia law, he must prove that the allegedly defamatory statements were false. *See id*. at *21. Evidence he has gathered so far, including the testimony of women, like Ms. Oldaker, who were detained by ICE at ICDC, has supported his allegations. He has not been charged with any crime; the Senate concluded that he only conducted two hysterectomies on women detained by ICE at

2

ICDC, and the Georgia Composite Medical Board investigated and cleared him.  Ex. 1, Declaration of Stacey G. Evans (Oct. 19, 2023), ¶¶ 2-4.

In an effort reasonably calculated to lead to admissible evidence, Dr. Amin subpoenaed for deposition several women who had been detained at ICDC, including Yanira Oldaker.  Doc. 2 at 3-4.  Ms. Mukherjee serves as counsel for Ms. Oldaker in a separate lawsuit against a plethora of defendants, including Dr. Amin, but there are pending motions to dismiss that case, and discovery has not commenced.  *Id*. at 3.  Ms. Oldaker, through counsel including Ms. Mukherjee, moved to quash her subpoena, but upon conferral and agreement with counsel for Dr. Amin, she agreed to be deposed on July 27, 2023, in Columbia, South Carolina.  *Id*. at 4.  This followed a plethora of motions to quash, motions for protective order, and a motion for order to show cause, filed by Ms. Mukherjee on behalf of other clients, the result of which was that each and every deposition was specifically permitted to proceed.  Ex. 1 ¶ 7; *see also*, *e.g.*, Memorandum Opinion and Order, *Amin v. NBCUniversal Media, LLC, Luz Walker Movant*, Case No. 1:23MC9 (M.D.N.C. June 28, 2023), ECF 20; Order, *Amin v. NBCUniversal Media, LLC, Keynin Reyes Ramirez Movant*, Case No. 1:23-CV-3042-AT-JSA (N.D. Ga. July 11, 2023), ECF 8.

Because Ms. Oldaker's deposition took place within the jurisdiction of the United States District Court for the District of South Carolina, the local rules of that court governed the deposition, including D.S.C.L.R. 30.04(E), which states: "Counsel and witnesses shall not engage in private, 'off the record' conferences during depositions or during breaks or recesses regarding the substance of the testimony at the deposition, except for the purpose of deciding whether to assert a privilege or to make an objection or to move for a protective order."

At the deposition, Ms. Mukherjee and Fatma Marouf appeared as counsel for Ms. Oldaker. Doc. 2 at 4.  During the deposition, which Ms. Mukherjee has moved to attach as an exhibit to her motion under seal, *id*. at 3 n.1, Ms. Oldaker testified that Ms. Mukherjee allowed Cynthia Counts,

counsel for NBCUniversal at the deposition, to eat lunch with Ms. Oldaker and Ms. Mukherjee. Deposition of Yanira Oldaker (July 27, 2023) ("Oldaker Deposition"), 114:4-15. According to Ms. Oldaker, at that lunch, the participants discussed "[w]omen issues" and "this situation [Ms. Oldaker] find[s] [her]self in," and Dr. Amin's "name came up." *Id*. 114:16-115:2. Ms. Oldaker further testified that her counsel and Ms. Counts reviewed "paperwork" together in front of Ms. Oldaker. *Id*. 115:12-13. When asked whether Ms. Counts spoke about Ms. Oldaker's upcoming testimony, Ms. Oldaker testified, "[s]he might have mentioned a thing or two." *Id*. 116:3-8.

Ms. Mukherjee also admitted to violating Rule 30.04(E) through her own conversations with Ms. Oldaker. She stated on the record: "And I apologize. I was not familiar with that local rule." *Id*. 118:14-15. Ms. Mukherjee stated that she had discussed "three subjects" regarding Ms. Oldaker's testimony with Ms. Oldaker during the breaks, including:

> And then the third issue was just asking Ms. Oldaker to please remember all—all of her interactions with Dr. Amin and to testify truthfully about them and to testify fully about them.
>
> We did not tell her what to say, but we did remind her that, even though it's really difficult for her to remember all of her interactions with Dr. Amin, especially as a survivor of extreme trauma, it's important for her to testify truthfully and accurately today.

*Id*. 118:10-12, 120:1-11.

Later, when asked whether Ms. Counts had told her "that she was going to ask you about your prior Pap smears," Ms. Oldaker answered: "Yes, I believe so." *Id*. 220:4-7. When asked, "did Ms. Counts tell you that she was going to ask you about your prior transvaginal ultrasounds," Ms. Counts interjected with a speaking objection that directly addressed the witness and instructed the witness how to answer: "Objection. To the extent that you recall specifically me saying such a thing, [sic] but you shouldn't speculate or allow her to influence you." *Id*. 220:8-14.[1] Despite

---

[1] This was in violation of D.S.C.L.R. 30.04(D): "Counsel shall not make objections or statements that might suggest an answer to a witness. Counsel's objections shall be stated

protesting twice that she knew the rules, had practiced for a long time in the jurisdiction, and "did not violate the rules," *id*. 121:6-9, 221:1-3, Ms. Counts finally conceded that she did not know the local rule at issue: "Well, then I wish you-all would have told me I shouldn't be sitting with her because I certainly wouldn't have known that that was considered improper to talk and have a friendly—" *Id*. 230:21-25.

Ms. Oldaker's testimony changed from, before the lunch break, answering "no" to the question, "Did you tell [Dr. Amin] no [during the transvaginal ultrasound]," to "yes" to the same question. *Compare id*. 63:8-16, *with id*. 96:6-19. Ms. Oldaker's testimony also changed as to having spoken to Congress, going from multiple "no" answers, to, "I'm sorry, but yeah, I did. I spoke to the Congress." *Compare id*. 32:4-24, *with* 227:20-22. These egregious violations of Rule 30.04(E) and of common-sense deposition conduct from counsel, in conjunction with direct contradictions and shifts in testimony, merit additional investigation.[2]

---

concisely and in a non-argumentative and non-suggestive manner, stating the basis of the objection and nothing more."

[2] While counsel for Dr. Amin will attempt to refrain from responding to the broadsides in Ms. Mukherjee's brief, three contentions particularly warrant correction. First, counsel for Dr. Amin notes that she did not "interrupt[] the testimony to call Ms. Oldaker a liar." Doc. 2 at 6. The record demonstrates that, as part of an objection, she stated, "That's also just blatantly a lie," to the answer "no" to the question from Ms. Counts, "Did we discuss at lunch anything about what you had been asked prior?" Oldaker Deposition 228:24-229:6. As discussed above, Ms. Oldaker had testified that the lunch participants, including Ms. Counts, discussed "[w]omen issues" and "this situation [Ms. Oldaker] find[s] [her]self in," and Dr. Amin's "name came up;" accordingly, the answer "no" was contradicted by Ms. Oldaker's prior testimony. *Id*. 114:16-115:2. Second, Ms. Oldaker's brief refers to an "unnecessary argument with Ms. Counts in the middle of a third party deposition," Doc. 2 at 6, but it was *Ms. Counts* who initiated that argument, with counsel for Dr. Amin stating, "I don't know why we're wasting a third-party's time for you to get a lesson on the local rules." Oldaker Deposition 230:21-232:10. Finally, it is true that counsel for Dr. Amin opined that Ms. Mukherjee "should not be teaching our students this kind of behavior." *Id*. 230:9-13. That statement is, of course, different from "stating that she should not be teaching law students," as Ms. Oldaker and amici curiae's briefs contend. Doc. 2 at 6; Doc. 20-1 at 9. Counsel for Dr. Amin, who proudly serves on the Board of Visitors and has a scholarship for first-generation college graduates at her alma mater, stands by the sentiment that Ms. Mukherjee should not teach law students behavior that includes failing to review and adhere to the rules of the jurisdiction in which an attorney is defending a deposition, "reminding" a client of information

After reviewing the transcript of the deposition, on August 16 counsel for Dr. Amin emailed Ms. Counts and Ms. Mukherjee, stating concern that Ms. Counts and Ms. Mukherjee had violated Rule 30.04(E) and requesting they agree to "short remote depositions," which were not expected "to be longer than one hour," to explore the communications that constituted the violations. Doc. 3-5 at 5. After one week without any response, counsel for Dr. Amin sent a follow-up email, which was followed the next day, August 24, with counsel for Ms. Mukherjee writing that they did not agree to accept service of a subpoena and that they contended a deposition would be "inappropriate, unwarranted, and have no basis in law or fact." *Id*. at 4-5. During subsequent back-and-forth, counsel for Dr. Amin noted: "The deposition is part of a process to hopefully avoid needing to file a motion for sanctions, I've indicated it would be short, and that we could conduct it remotely." *Id*. at 2.

Because Ms. Mukherjee and her counsel did not agree to accept service, Dr. Amin enlisted a process server to deliver the subpoena and witness fees pursuant to Federal Rule of Civil Procedure 45. Ex. 1 ¶ 16. The process server reported that Ms. Mukherjee appeared to be dodging service of the subpoena: on September 19, when the process server spoke with the doorman at Ms. Mukherjee's residence, the doorman confirmed that Ms. Mukherjee resided at the building, then appeared to call Ms. Mukherjee, stating, "you want me to tell him you're not here?" and told the process server that she was not present. *Id*. The process server then indicated that he went to Ms. Mukherjee's place of work, where Brenda Eberhart, who told the process server that she was a direct assistant to Ms. Mukherjee, met the process server and stated that she was authorized to accept service on behalf of Ms. Mukherjee. *Id*.; Ex. 2, Proof of Service (Sept. 19, 2023); Ex. 3, Investigative Report.

---

that results in her changing the substance of her testimony, and permitting a nominally adverse party to join the client for lunch and discuss questioning and testimony.

Once the subpoena was delivered to Ms. Mukherjee, her counsel emailed counsel for Dr. Amin, reengaging with conferral.  Doc. 3-6 at 8-9.  Counsel for Ms. Mukherjee stated objections to the subpoena, including that "we do not believe there has been proper service upon Elora, nor do we believe that the subpoena that was served complies with the requirements of Rule 45," without explaining how.  *Id*.  The email further stated: "If there is nevertheless information that you believe Elora could provide, perhaps she could provide a declaration."  *Id*. at 9.

Counsel for Dr. Amin responded the same night, noting that service was proper "and Ms. Mukherjee clearly has notice of the subpoena," and that counsel for Dr. Amin had "already agreed to limit the deposition to the lunch conversation that Ms. Mukherjee, Ms. Oldaker, and Ms. Counts participated in on July 27, 2023.  There can be no concern of privilege over this conversation because a third party to the attorney-client relationship (Ms. Counts) was present."  *Id*. at 7.  Counsel for Dr. Amin also stated that the subpoena did not put undue burden on Ms. Mukherjee because the subject of the deposition was limited to the lunch conversation and she had agreed to attend via Zoom.  *Id*.  Nevertheless, in an effort to avoid litigation and minimize the burden on Ms. Mukherjee, counsel for Dr. Amin stated: "All I want to know is what occurred during the lunch conversation and I believe that can be accomplished with a declaration signed by Ms. Mukherjee answering the following questions.  If she will agree to do so, I will withdraw the subpoena."  *Id*.  Those questions were:

1. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee discuss any questions Ms. Counts was planning to ask Ms. Oldaker?

2. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker about prior pap smears with other doctors?

3. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker about prior transvaginal ultrasounds with other doctors?

4. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker about literature or pamphlets available at other doctors' offices she had visited?

5. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker whether other doctors had given her pamphlets during her visits?

6. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee show Ms. Oldaker any medical records?

7. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts was going to ask Ms. Oldaker about a sonogram picture?

8. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee suggest that Ms. Oldaker should have, must have, or maybe did hear more information about women at ICDC having hysterectomies than Ms. Oldaker shared in response to Dr. Amin's counsel's questioning?

9. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee suggest to Ms. Oldaker what her answers to any questions should be, and if so, what?

10. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee state how they would answer any questions if they were Ms. Oldaker, and if so, what?

11. What was said during lunch on July 27, 2023 (inclusive of all present)?

*Id*. at 7-8. Ms. Mukherjee declined this offer for alternative discovery and requested Dr. Amin consent to "postpone the deposition until after the motion to quash litigation has been resolved," to which counsel for Dr. Amin agreed. *Id*. at 5-6.

There is nothing "*potential*" about Ms. Mukherjee's violation of S.C.L.R. 30.04(E). Doc. 2 at 2 (emphasis in original). However, probing the extent of that violation is necessary for Dr. Amin to understand whether to seek evidence to counter the potentially coached and curated testimony of Ms. Oldaker developed during the lunch break, and whether he should file a motion for sanctions. Because the subpoena is proper and it does not impose an undue burden, despite

Ms. Mukherjee's status as an attorney, the Court should not quash the subpoena. Further, the Court should not assess fees against Dr. Amin pursuant to Rule 45. Finally, Dr. Amin does not contest Ms. Mukherjee's motion for a stay pending the Court's resolution of her motion.

## LEGAL STANDARD

"The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) (citation omitted). Federal Rule of Civil Procedure 45 authorizes litigants to seek discoverable information from non-parties.

Several narrow grounds require a court to quash a subpoena, including when the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "The movant bears the burden of persuasion on a motion to quash." *Oasis Med., Inc. v. I-Med Pharma USA Inc.*, Case No. 23-MC-206(ALC)(BCM), 2023 WL 6301728, at *7 (S.D.N.Y. Sept. 1, 2023) (quotation marks omitted). Rule 45, like all Federal Rules of Civil Procedure, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## ARGUMENT

**I.  Ms. Mukherjee No Longer Contests the Subpoena's Validity for Failure to Pay Witness Fees or Designate a "Place" of Deposition, and Ms. Mukherjee Was Delivered the Subpoena Pursuant to Rule 45.**

Although Ms. Mukherjee argues in her motion that the subpoena is invalid because (1) it was not accompanied by fees as required by Rule 45(b)(1); (2) it listed a link to a Zoom meeting as the place of compliance; and (3) it was not personally served on Ms. Mukherjee individually but instead on her colleague at her place of work who accepted it on her behalf, Doc. 2 at 12-14, counsel for Ms. Mukherjee and counsel for Dr. Amin have conferred via email pursuant to Dr. Amin's delivery of a new subpoena with the date of deposition updated as agreed. Doc. 3-6 at 4-

6.  During that email conferral, Ms. Mukherjee agreed to accept that subpoena "in order to narrow the issues before the Court in the motion to quash" as to her objections regarding witness fees and "place" of deposition.  Ex. 1 ¶¶ 23-24.[3]

As to service, Ms. Mukherjee's contention that she must be *personally handed* the subpoena is a misreading of Rule 45's provision on service, which "requires delivering a copy to the named person."  Fed. R. Civ. P. 45(b)(1).  District courts in the Second Circuit have long ruled that there is "no reason for requiring in hand delivery for subpoenas served under Rule 45, so long as service is made in a manner that reasonably insures actual receipt of the subpoena by the witness."  *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997).  Dr. Amin has assuredly done that.  Ms. Mukherjee herself is an attorney and has had extensive contact with counsel for Dr. Amin, including receipt of an email about counsel's desire to depose her.  Doc. 3-5 at 5.  Dr. Amin enlisted a process server to deliver the subpoena to Ms. Mukherjee personally, and notwithstanding Ms. Mukherjee's apparent attempts to dodge service, he effected service on her colleague who accepted the subpoena on Ms. Mukherjee's behalf.  Ex. 1 ¶ 16; Ex. 2; Ex. 3.  And counsel for Ms. Mukherjee confirmed in email, and Ms. Mukherjee confirmed in her declaration, that Ms. Mukherjee received the subpoena, which at any rate has now been superseded

---

[3] As to the witness fee, Dr. Amin instructed the process server to serve both the subpoena and the fee required by Rule 45.  Ex. 1, Declaration of Stacey G. Evans (Oct. 19, 2023), ¶ 9. Counsel for Ms. Mukherjee has agreed to accept the witness fees.  *Id*. ¶¶ 23-24.  As to the place of compliance, the new subpoena indicates that the "place" of the deposition is the same address as the one in the recipient line, while noting that the deposition will be conducted via Zoom, which counsel for Ms. Mukherjee agreed "is sufficient."  *Id*.  Further, even if the parties had not reached agreement, such disputes should not serve as grounds to quash a subpoena.  *See, e.g.*, *KOS Bldg. Grp., LLC v. R.S. Granoff Architects, P.C.*, Case No. 19CV2918(PMH)(LMS), 2020 WL 1989487, at *4 (S.D.N.Y. Apr. 24, 2020) ("[E]ven if the Court were to deem the subpoena invalid and grant the motion to quash on this basis [that the fee was not tendered], Defendants could readily correct this defect by promptly re-serving the subpoena along with the witness fee.  Accordingly, the Court shall proceed to address Plaintiff's other arguments in support of the motion.").

by a subpoena that counsel for Ms. Mukherjee did accept on her behalf.  Doc. 3-6 at 8; Doc. 5; Ex. 1 ¶¶ 23-24.

More recently, in *Ramchandani v. CitiBank Nat'l Ass'n*, a court in this District ruled: "As other courts in the Second Circuit have found, Rule 45 does not require in-hand service nor prohibit alternative means of service."  616 F. Supp. 3d 353, 357 (S.D.N.Y. 2022) (citations to other S.D.N.Y. cases omitted).  There, as here, it appeared that service "may have been good service" already.  *Id*.  Rather than litigate the service that had already occurred, the court granted the subpoenaing party's motion for alternative service and ordered that service be effected by certified mail, which comported with due process because the subpoenaed party already had actual notice of the subpoena.  *Id*. at 357-58.

Even among courts that have interpreted Rule 45 to require a witness be personally handed a subpoena, courts generally modify the subpoena or order the subpoenaing party to reissue service, rather than quashing the subpoena.  Rule 45 provides that a district court "quash or modify" a subpoena that subjects a person to undue burden, and accordingly the Court may modify the subpoena rather than quashing it, as quashing it would punish Dr. Amin's consideration for Ms. Mukherjee while rewarding Ms. Mukherjee's refusal to collaborate on the logistics (which of course would not affect Ms. Mukherjee's substantive arguments against the subpoena).  Indeed, the cases Ms. Mukherjee herself cites ordered more practical relief than quashing the subpoena. In *Agran v. City of New York*, the first case she cites, Doc. 2 at 13, the court did not quash the subpoena for failure to personally serve, but rather "directed [the subpoenaing party] to re-serve the subpoena by personal delivery."  Case No. 95 Civ. 2170 (JFK) 1997 WL 107452, at *1 (S.D.N.Y. Mar. 11, 1997).  In none of the cases she cites did the court grant a motion to quash a subpoena for improper service.  Here, Ms. Mukherjee had actual notice of the subpoena, and she was served the original subpoena by her colleague, who accepted it on her behalf from a process

server. To quash the subpoena for improper service would reward Ms. Mukherjee's efforts to obfuscate the litigation of the merits of her motion and thwart the "just, speedy, and inexpensive determination" of the issues. Fed. R. Civ. P. 1.

## II. *Friedman* Does Not Mandate Quashing the Subpoena.

As discussed above, Ms. Mukherjee clearly and admittedly violated D.S.C.L.R. 30.04(E) and also facilitated Ms. Counts' violation of the rule. Her deposition is sought to determine the extent of that violation and to seek evidence to counter the potentially coached and curated testimony of Ms. Oldaker developed during the lunch break, testimony which substantively changed from morning to afternoon. This testimony is necessary because Ms. Mukherjee is one of the only witnesses to the violation, and it is relevant to Dr. Amin's ability to prove falsity in his defamation action—to counter Ms. Oldaker's changed testimony that she protested Dr. Amin's actions by saying "no" during her medical treatment, as well as to whether he will seek sanctions.

Ms. Mukherjee argues that, as "adversary counsel," she should not be deposed, citing the Second Circuit's opinion in *Friedman*, 350 F.3d 65. Doc. 2 at 14-15. For several reasons, *Friedman* does not mandate quashing the subpoena. First, the *Friedman* court did not hold that the factors it identified mandate quashing a subpoena. Rather, it held that those factors may "be especially appropriate to consider in determining whether interrogatories should be used at least initially and sometimes in lieu of a deposition." *Friedman*, 350 F.3d at 72. As another preliminary matter, Ms. Mukherjee is not counsel in *NBCUniversal*; her connection to that case is as counsel for Ms. Oldaker and other subpoenaed witnesses. Further, *Friedman* held that "[t]he deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one," and "the disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of all controversies of this nature." *Friedman*, 350 F.3d at 69, 71 (citations omitted). *Friedman* identified factors that "*may*" be relevant to whether a court may

12

quash a subpoena to an attorney, but that the overarching rule is "a flexible approach to the issue of lawyer depositions," wherein the ultimate question is "whether the proposed deposition would entail an inappropriate burden or hardship." *Id*. at 72. Here, a deposition will not infringe on conversations protected by the attorney-client privilege because the testimony sought is about a lunch conversation involving a third party (Ms. Counts), and, although there has been substantial discovery in *NBCUniversal*, the only discovery taken as to Ms. Mukherjee's violation of Rule 30.04 has been limited to deposition questioning of Ms. Oldaker, her client, which was thwarted by NBCUniversal's attorney's improper speaking objection and instruction on how to answer.

First, *Friedman* held that factors such as those Ms. Mukherjee argues exist here do "not automatically insulate … her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered." *Id*. It is accordingly not true that, as Ms. Mukherjee argues, "the subpoena should be quashed under the *Friedman* factors," Doc. 2 at 14, or that as amici curiae argue, "the factors in *In re Friedman* weigh in favor of quashing the deposition subpoena," Doc. 20-1 at 11. In *Friedman* itself, the Second Circuit was reviewing an order in which the district court had ordered the subpoenaing party "must first attempt to proceed by written interrogatories" before subpoenaing for deposition the subpoenaed party. 350 F.3d at 72. The Second Circuit held that ruling was too restrictive against the subpoenaing party, but reversal was not necessary because the subpoenaed party had agreed to be deposed. *Id*. Here, Dr. Amin *has offered*, and Ms. Mukherjee rejected, the very relief that *Friedman* held would be the type of "alternative discovery device" that sometimes "should be used at least initially and sometimes in lieu of a deposition." *Id*.

As another preliminary matter, Ms. Mukherjee is not "adversary counsel," and so *Friedman*'s applicability at all is suspect. *Id*. at 71. In *Friedman*, for example, the attorney who received the subpoena had represented the defendants, and the testimony the subpoenaing plaintiff

13

sought was "concerning the nature and substance of his advice to the defendants" in connection with a merger that was at issue in the plaintiff's lawsuit against them. *Id.* at 67. Notwithstanding her cozy behavior with counsel for NBCUniversal during the subject lunch break, Ms. Mukherjee is not and has never been counsel for NBCUniversal. She is opposing counsel in a *different* case against Dr. Amin, but, as discussed above, that case remains in the pleading stages and may be disposed of entirely by pending motions to dismiss. In a footnote, Ms. Mukherjee cites a single district court case in which the court ruled, itself in a footnote, that "given the nature of the claims presented, [the subpoenaed attorney's client and the subpoenaed attorney] are most certainly 'adversaries' in this context." Doc. 2 at 13-14 n.4; *Doe v. Town of Greenwich*, Case No. 3:18CV01322(KAD), 2020 WL 2374867, at *3 n.6 (D. Conn. Jan. 10, 2020). Dr. Amin submits that this non-binding ruling lacks authority from *Friedman*.

Regardless, whether under the "flexible approach" articulated by the *Friedman* court or the "undue burden" grounds to quash a subpoena under Rule 45, Ms. Mukherjee has not carried her burden of demonstrating that the subpoena is improper. Ms. Mukherjee argues that she should not sit for a deposition because (1) there is no need to depose her; (2) her testimony has no relation to pending litigation; (3) there is risk of encountering privilege and work-product issues; and (4) *NBCUniversal* has already undergone extensive discovery. Doc. 2 at 14-19.

Ms. Mukherjee first argues that "there is no need whatsoever to depose" her, "as she has already been questioned by Ms. Evans about her conduct at the deposition" and Ms. Oldaker was questioned "about any conversations she may have had with Ms. Counts." Doc. 2 at 15-16. But the transcript of the deposition demonstrates that Ms. Mukherjee discussed her *own* improper conversations with Ms. Oldaker. She did not discuss what she observed as to Ms. Counts' discussions with Ms. Oldaker, the extent of which did not become clear until later in the deposition. *See generally* Oldaker Deposition. Ms. Mukherjee notes that counsel for Dr. Amin "already

questioned Ms. Oldaker at length at the deposition about any conversations she may have had with Ms. Counts." Doc. 2 at 16. But she ignores that Ms. Counts thwarted that questioning with improper coaching objections and instructions on how to answer, undoubtedly influencing the many "I don't remember" answers that came when Dr. Amin's counsel asked Ms. Oldaker what Ms. Counts discussed with her at lunch.

Ms. Mukherjee also argues that she "directly answered that she did not" to a question from counsel for Dr. Amin about whether she suggested Ms. Oldaker change one of her answers. Doc. 2 at 15-16. With shifting testimony and improper discussions, Dr. Amin is entitled to probe sworn testimony of all participants in the non-privileged conversations, especially since Ms. Mukherjee was not sworn in at Ms. Oldaker's deposition but would be at a deposition or in a declaration, which she refuses to provide in the alternative.

Ms. Mukherjee next argues that "any testimony Prof. Mukherjee may offer on the contents of her communication with her client during breaks in the deposition has no relation to the claims or defenses in the pending *Amin v. NBCU* defamation matter in the Southern District of Georgia." Doc. 2 at 16-17. First, that is not what *Friedman* held as to the second factor, which was actually: "the lawyer's role in connection with *the matter on which discovery is sought and* in relation to the pending litigation." *Friedman*, 350 F.3d at 72 (emphasis supplied). Ms. Mukherjee and Ms. Counts's violation of D.S.C.L.R. 30.04(E) is the "matter on which discovery is sought," and Ms. Mukherjee had a prominent role in connection with that matter. Second, the extent of the violations of Rule 30.04(E) is indeed closely connected to *NBCUniversal*. Dr. Amin must prove that the defamatory statements at issue in *NBCUniversal* were false, and indeed Ms. Counts herself, when accused of acting as counsel for Ms. Oldaker, stated on the record: "Well, we have a substantial truth defense." Oldaker Deposition, 120:20-23. Ms. Oldaker testified that Ms. Counts spoke with her during the lunch break about "women issues" and "Pap smears," and that she could not

remember whether or not they discussed transvaginal ultrasounds. *Id*. 114:13-17, 220:4-7, 223:1-7. As Ms. Mukherjee fails to understand, the purpose of exploring a motion for sanctions is not to antagonize Ms. Mukherjee; it is to understand the extent of Ms. Oldaker's testimony about her treatment by Dr. Amin being affected by Ms. Mukherjee and Ms. Counts, which is relevant to the falsity that Dr. Amin must prove.

Ms. Mukherjee appears to object to the fact that Dr. Amin has not already brought a motion for sanctions: "Rather, if a deposition of Prof. Mukherjee is relevant to *any* proceedings at all (which Prof. Mukherjee does not concede it is), it would be to sanctions proceedings in the District of South Carolina … Although she has repeatedly threatened a sanctions motion, Ms. Evans has not filed any such sanctions motion since the deposition took place almost three motions ago." Doc. 2 at 17 (emphasis in original). But there are no general "proceedings in the District of South Carolina;" Dr. Amin's case is in the Southern District of Georgia, and Ms. Oldaker brought a new proceeding in the District of South Carolina for the sole purpose of contesting the subpoena for her deposition. As counsel for Dr. Amin explained, "[b]efore we file a motion for sanctions, we want to exercise our right to explore the" violations through "short remote depositions." Doc. 3-5 at 5. Indeed, a motion for sanctions may be entirely unnecessary, depending on Ms. Mukherjee's answers to deposition questions. And it has been "almost three months" only because of Ms. Mukherjee's refusal to work with counsel for Dr. Amin to mutually schedule the deposition or provide a declaration to the proffered questions, as discussed above and as contemplated by *Friedman* as a less burdensome alternative to an attorney deposition.

This is not a "fishing expedition." Ms. Mukherjee, obviously and admittedly, violated Rule 30.04(E) and discussed the contents of her client's testimony, leading her client to change that testimony. It is also not true that the district court in the District of South Carolina "declined" Dr. Amin's "request" that it hear a motion for sanctions. Doc. 2 at 17. As Ms. Mukherjee's own brief

16

states, while that court declined Dr. Amin's invitation to provide "guidance on whether any such motion should be filed in this matter or in a new miscellaneous matter to be filed with" that court, it did so pursuant to a status report in which counsel for Dr. Amin stated: "If the Court does not wish to hear a potential motion for sanctions in this matter, the parties jointly request dismissal and closure of this case, *with leave for Dr. Amin to file a motion for sanctions in another matter*." Doc. 2 at 6 (emphasis supplied).

Ms. Mukherjee argues that the deposition "thus becomes a highly threatening, coercive, and intimidating tool used to try to force Prof. Mukherjee to develop evidence against herself and/or Ms. Counts." Doc. 2 at 18.[4] But a review of the communications between counsel that Ms. Mukherjee attaches to her motion demonstrates that this characterization is just not true. Dr. Amin has endeavored diligently to *avoid* taking a deposition, identifying eleven questions that Ms. Mukherjee could answer in lieu of a deposition, ten of which are "yes-no" (though several of those request additional information if the answer is "yes") and all of which plainly do not cover confidential conversations, along with the offer: "If she will agree to [answer the questions], I will withdraw the subpoena." Doc. 3-6 at 7-8. Ms. Mukherjee declined.

---

[4] Amici curiae also alleges that the subpoena for deposition constitutes a continuation of counsel for Dr. Amin's "[i]ntimidation tactics," citing and even attaching a hyperbolic and frankly unprofessional Reply Brief filed in another jurisdiction. Doc. 20-1 at 9; Doc. 20-2. While again attempting to avoid the invitation to stray from relevant factors for the Court's determination of Ms. Mukherjee's motion, counsel for Dr. Amin pronounces that the record disproves amici curiae's assertion, and indeed shows just the opposite: counsel for Dr. Amin has indeed worked to *avoid* taking a deposition of Ms. Mukherjee. *See, e.g.*, Doc. 2 at 8-9 (Ms. Mukherjee's brief, relaying conferral in which counsel for Dr. Amin agreed that a declaration answering eleven questions would suffice in lieu of a deposition); Doc. 3-6 (email conferrals, including the offer of specific questions for Ms. Mukherjee to answer in lieu of a deposition). The Reply Brief that amici curiae attaches is a single pleading from a matter that has been fully briefed, and that court has given Dr. Amin leave to file a surreply to respond to the irrelevant, unfounded, hyperbolic, and personal allegations contained in the Reply. *See* Minute Sheet, *Amin v. NBCUniversal Media, LLC*, Case No. 1:23-cv-04492-MLB-RDC (Oct. 19, 2023), ECF 21. That motion and briefing is irrelevant to the matter before this Court, but if the Court would like to consider the full record, Dr. Amin will provide all briefing upon request.

Ms. Mukherjee further states that the need for additional testimony "is absolutely unclear" if counsel for Dr. Amin "believes that the Oldaker deposition transcript plainly reveals that Prof. Mukherjee has violated the District of South Carolina local rules." Doc. 2 at 18. As an initial matter, it is not debatable that Ms. Mukherjee violated Rule 30.04(E): "Counsel and witnesses shall not engage in private, 'off the record' conferences during depositions or during breaks or recesses regarding the substance of the testimony at the deposition, except for the purpose of deciding whether to assert a privilege or to make an objection or to move for a protective order." Ms. Mukherjee herself stated, on the deposition record, "So, to clarify, there were three instances, three subjects that we discussed during the breaks, all of which have already been noted on the record. And I apologize. I was not familiar with that local rule." Oldaker Deposition, 118:9-15. There is no dispute: Ms. Mukherjee violated the rule. However, the need for testimony is to determine the extent of the violation and how the conversation may have affected Ms. Oldaker's testimony, which will certainly be part of upcoming dispositive motions to be filed in the underlying defamation case. The credibility of Ms. Oldaker and the extent to which she was influenced, including during the lunch with Ms. Counts, will all be relevant to those motions.

Third, Ms. Mukherjee's statement that "the risk of impinging upon the attorney-client privilege and work product protection is substantial in this case," Doc. 2 at 18, is facially absurd in consideration of the eleven questions that counsel for Dr. Amin provided.[5] Statements made in

---

[5] Amici curiae's argument, also, entirely relies on the false proposition that counsel for Dr. Amin is seeking privileged attorney-client or work product testimony. *See generally* Doc. 20-1. Amici curiae argues: "It is hard to imagine what questions Dr. Amin's attorney might ask Prof. Mukherjee that would not involve either her communications with her clients protected by attorney-client privilege or her mental impressions developed in preparation for possible litigation." *Id.* at 8. But Ms. Mukherjee's Motion, to which amici curiae purport to be in support, attaches correspondence listing exactly the questions counsel for Dr. Amin intends to ask, none of which involve either Ms. Mukherjee's communications with her clients protected by attorney-client privilege or her mental impressions developed in preparation for possible litigation. *See* Doc. 3-6 at 7 ("I've already agreed to limit the deposition to the lunch conversation that Ms. Mukherjee, Ms. Oldaker, and Ms. Counts participated in on July 27, 2023. There can be no concern

front of NBCUniversal counsel—which is a condition for all eleven questions—are obviously not exclusive to attorney and client, and that is the subject of the testimony Dr. Amin seeks, as demonstrated in the questions counsel for Dr. Amin identified for a declaration that would serve in lieu of such testimony.  As exhibits to Ms. Mukherjee's Motion indicate, counsel for Dr. Amin made this clear to counsel for Ms. Mukherjee prior to her filing this Motion.  *See, e.g.*, Doc. 3-6 at 7 ("I've already agreed to limit the deposition to the lunch conversation that Ms. Mukherjee, Ms. Oldaker, and Ms. Counts participated in on July 27, 2023. There can be no concern of privilege over this conversation because a third party to the attorney-client relationship (Ms. Counts) was present."); *id.* ("All I want to know is what occurred during the lunch conversation and I believe that can be accomplished with a declaration signed by Ms. Mukherjee answering the following questions.  If she will agree to do so, I will withdraw the subpoena.").  Further, discussing information with NBCUniversal, who had opposed Ms. Oldaker's motion to quash her subpoena for deposition, voids any claim to attorney work product.

"In cases requiring a choice of privilege law, the interest analysis usually has led New York courts to apply the law of the jurisdiction in which the assertedly privileged communications were made, which in most of the cases was also the jurisdiction in which the party that made the communications resided."  *Oasis Med.*, 2023 WL 6301728, at *10 (quotation marks omitted). Here, the deposition took place in Ms. Oldaker's state of residence, South Carolina.  However, pursuant to the law of any jurisdiction potentially relevant to this motion—South Carolina, New York, Georgia, or federal—attorney-client confidentiality only protects against disclosure of *confidential* communications between attorney and client.  *See In re Mt. Hawley Ins. Co.*, 427 S.C.

---

of privilege over this conversation because a third party to the attorney-client relationship (Ms. Counts) was present."); *id.* ("All I want to know is what occurred during the lunch conversation and I believe that can be accomplished with a declaration signed by Ms. Mukherjee answering the following questions.  If she will agree to do so, I will withdraw the subpoena.").

159, 167 (2019) ("The attorney-client privilege … protects against disclosure of confidential communications by a client to his attorney regarding a legal matter." (citation omitted)); *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013) ("The attorney-client privilege protects confidential communications between a lawyer and client relating to legal advice sought by the client." (quotation marks omitted)); *St. Simons Waterfront, LLC v. Hunter, Maclean, Eley & Dunn, P.C.*, 293 Ga. 419, 421-22 (2013) ("The privilege generally attaches when legal advice is sought from an attorney, and operates to protect from compelled disclosure any communications, made in confidence, relating to the matter on which the client seeks advice." (citation omitted)); Fed. R. Evid. 502(g)(1) ("'[A]ttorney-client privilege' means the protection that applicable law provides for confidential attorney-client communications."). Any violation of N.Y. Rule of Professional Conduct 1.6(a) prohibiting a lawyer from "knowingly reveal[ing] confidential information" occurred when Ms. Mukherjee allowed Ms. Counts to join her client for lunch.

Further, Federal Rule of Civil Procedure 45(d)(3)(A)(iii) mandates that a court quash a subpoena that "*requires* disclosure of privileged or other protected matter, if no exception or waiver applies." (emphasis supplied). Here, D.S.C.L.R. 30.04(F) provides such an exception, noting that conferences in violation of Rule 30.04(E) "are proper subjects for inquiry by deposing counsel to ascertain whether there has been any witness coaching and, if so, to what extent and nature." Further, the subpoena does not require disclosure of privileged information, and to the extent Ms. Mukherjee believes that individual questions infringe on protected information, the proper course is for her counsel to object and she decline to answer specific questions on that basis—not for the Court to quash the subpoena as a whole.

As to her fourth argument, while it is true that the *NBCUniversal* parties have undertaken extensive discovery, there has most certainly not been a "substantial amount" of discovery conducted regarding the violations at issue. The only such discovery has been the limited and

interrupted questioning of Ms. Oldaker during her deposition. Accordingly, Ms. Mukherjee has not demonstrated that the subpoena imposes an undue burden.

### III. Dr. Amin, Not Ms. Mukherjee, Should Be Awarded the Reasonable Fees and Costs of Litigating Ms. Mukherjee's Motion.

Counsel for Dr. Amin has gone above and beyond to avoid imposing an undue burden or expense on Ms. Mukherjee, and it is indeed Ms. Mukherjee's actions that have resulted in expense. Federal Rule of Civil Procedure 45(d)(1) provides that a subpoenaing party and their counsel "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." 28 U.S.C. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Dr. Amin has sought to minimize expense and undue burden, including by offering Ms. Mukherjee the opportunity to avoid a deposition entirely upon agreeing to answer by declaration eleven straightforward questions that are narrowly tailored to avoid any implication of attorney-client privilege and focus on the scope of Ms. Mukherjee and Ms. Counts's violation of D.S.C.L.R. 30.04(E). *See* Doc. 3-6 at 7-8. In the case Ms. Mukherjee cites that assessed fees pursuant to Rule 45, the subpoena was issued pertaining to information concerning an entity that was no longer a party to the case, and so the subpoena had no potential relevance. *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, Case No. 03 Civ. 1382 RWS, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). Here, in contrast, it is Ms. Mukherjee, not Dr. Amin, who filed this motion, requiring it to be litigated before the Court. It is again not the case that the District of South Carolina "indicated that it does not wish to hear any motion for sanctions related to this deposition," or that the deposition is sought "under threat of filing a motion for sanctions against her." Rather, as counsel for Ms. Mukherjee knows from communications from counsel for Dr. Amin that Ms. Mukherjee

attaches to her motion, Dr. Amin seeks Ms. Mukherjee's testimony in an effort to *avoid* a motion for sanctions as part of his broader efforts to minimize burden on Ms. Mukherjee, while determining the extent to which Ms. Oldaker's testimony was improperly tainted.  *See* Doc. 3-5 at 2 ("The deposition is part of a process to hopefully avoid needing to file a motion for sanctions, I've indicated it would be short, and that we could conduct it remotely.").

By refusing to accept service and filing a motion to quash, rather than agreeing to affirm a declaration that constitutes the exact kind of "alternative discovery device" contemplated by *Friedman* as an alternative to a deposition of an attorney, 350 F.3d at 72, it is Ms. Mukherjee who is "multipl[ying] the proceedings … unreasonably and vexatiously[.]"  Accordingly Dr. Amin requests that the Court order Ms. Mukherjee to pay the reasonable costs that he has incurred litigating her motion.

### IV. Dr. Amin Has Already Agreed to Stay the Deposition Pending This Court's Ruling, and He Agrees to Stay the November 1 Deposition Date.

Dr. Amin already agreed to stay the deposition, pending this Court's resolution of Ms. Mukherjee's motion.  Doc. 3-6 at 5, and Dr. Amin is not opposed to staying the deposition date to which Ms. Mukherjee agreed pursuant to her updated subpoena.

### <u>CONCLUSION</u>

For the reasons discussed above, the Court should deny Ms. Mukherjee's motion to quash and order her to pay Dr. Amin's costs litigating the motion.

[Signature on following page.]

22

This 23rd day of October, 2023.

**LEVY KONIGSBERG, LLP**

/s/ COREY M. STERN
Corey M. Stern
SDNY BAR NO. CS3713
605 Third Avenue, 33rd Floor
New York, New York 10158
(212) 605-6200
(212) 605-6290 (facsimile)
cstern@levylaw.com
www.levylaw.com

*Counsel for Plaintiff*

**STACEY EVANS LAW**

Stacey G. Evans*
Georgia Bar No. 298555
John Amble Johnson**
Georgia Bar No. 229112
4200 Northside Parkway NW
Building One, Ste 200
Atlanta, Georgia 30327
Telephone: 770-779-9602
Facsimile: 404-393-2828
sevans@staceyevanslaw.com
ajohnson@staceyevanslaw.com

*Pro hac vice
**Motion for admission *pro hac vice* forthcoming

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO MOTION TO QUASH SUBPOENA FOR DEPOSITION OF ELORA MUKHERJEE** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.

I also emailed copies of the foregoing to:

Elizabeth A. McNamara, lizmcnamara@dwt.com

Amanda B. Levine, amandalevine@dwt.com

Leena Charlton, leenacharlton@dwt.com

Cynthia L. Counts, Cynthia.counts@fisherbroyles.com

This 23rd day of October, 2023.

**LEVY KONIGSBERG, LLP**

/s/ COREY M. STERN
Corey M. Stern
SDNY BAR NO. CS3713
605 Third Avenue, 33rd Floor
New York, New York 10158
(212) 605-6200
(212) 605-6290 (facsimile)
cstern@levylaw.com
www.levylaw.com