UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

DR. MAHENDRA AMIN, M.D.,           )
                                   )
      Plaintiff,                  )
                                   )   Case No. 5:21-CV-00056-LGW-BWC
v.                                 )
                                   )
NBCUNIVERSAL MEDIA, LLC,           )
                                   )
      Defendant.                  )
_____

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Starting on September 15, 2023, NBCUniversal made false and defamatory broadcasts to the world that Dr. Mahendra Amin performed mass, forced hysterectomies without consent, authorization, and/or necessity, on women detained by United States Immigration and Customs Enforcement (ICE) at the Irwin County Detention Center (ICDC), among other similar and related statements.  NBCUniversal broadcast these statements despite having only (at most) information about **two hysterectomies** that Dr. Amin allegedly performed, being informed that ICE had records of only two hysterectomies (both approved by ICE), detainee lawyers informing that they were not seeing high numbers of hysterectomies and that at least one hysterectomy was to treat cancer, the two journalists most involved in the story communicating doubt about its truthfulness only hours after publication, and the Deputy Head of Standards expressing "serious concerns" about the story and never having officially approved the story prior to publication. Whether this and the other evidence developed during discovery proves actual malice, and the extent of Dr. Amin's damages, are questions for the jury.  But there is no genuine issue of material fact that broadcasts that Dr. Amin performed mass hysterectomies were false and defamatory and that because of the nature of the statements Dr. Amin is entitled to at least

presumed damages.

Dr. Amin is entitled to summary judgment on 30 statements at issue in this case ("Statements").[1]  Dr. Amin moves for summary judgment that the Statements are false and defamatory, as well as NBCUniversal's affirmative defense number 7 as to the Statements: "Plaintiff's claim is barred because the challenged statements are true or substantially true and thus cannot be the basis for a defamation action."  Similarly, Dr. Amin is entitled to summary judgment that the Statements entitle Dr. Amin to at least presumed damages because the statements are actionable regardless of special harm, eliminating NBCUniversal's affirmative defense number 12: "Plaintiff's claim is barred because he has not suffered any actual harm or damages proximately caused by any of the challenged statements."  Finally, Dr. Amin moves for summary judgment on NBCUniversal's First, Third, Fourth, and Eleventh Affirmative Defenses, because there is no genuine dispute as to any material fact and Dr. Amin is entitled to judgment as a matter of law.

## FACTUAL BACKGROUND

### A.  Dr. Amin Treated Patients Detained by ICE at ICDC.

Dr. Mahendra Amin, a physician, provided medical care to women detained by ICE at the ICDC, in Ocilla, Georgia, for a period of around 3.5 years.  Pl. SOMF ¶ 1.  During this time, he performed only two hysterectomies on any detainee patient.  Pl. SOMF ¶ 2.  Both of these procedures were medically necessary ███████████████  ██  Pl. SOMF ¶¶ 3-5 ███  ███ .

████████████████████████████████████████████████████████████

---

[1] The statements that the Court previously dismissed pursuant to NBCUniversal's motion for judgment on the pleadings, Doc. 59, and two statements such as statements regarding alleged bruising, as indicated in Dr. Amin's separate Statement of Material Facts as to Which There Exists No Genuine Dispute to Be Tried and Conclusions of Law Thereof ("Pl. SOMF"), are not subject to this motion.  Pl. SOMF ¶ 69.

██████████████████████████████████████████  In neither instance was the patient

forced to undergo the hysterectomy, and instead in both cases consented, even signing consent

forms attesting to their understanding of and desire to undertake the procedure which, again, in

both cases was necessary.  Pl. SOMF ¶¶ 6, 13-15████████████.  In both instances, ICE approved

the hysterectomies pursuant to its preapproval procedures, which are necessary before any

medical procedure for a woman detained by ICE.  Pl. SOMF ¶¶ 10-11████.

### B. Project South, an Advocacy Organization, Releases a Letter Primarily Regarding COVID-19 to the Media.

On September 14, 2020, Project South, an advocacy organization, shared a letter to the

media titled, "Re: Lack of Medical Care, Unsafe Work Practices, and Absence of Adequate

Protection Against COVID-19 for Detained Immigrants and Employees Alike at the Irwin

County Detention Center."  Pl. SOMF ¶ 35.  The letter focused primarily on a lack of COVID-19

protections.  Pl. SOMF ¶ 36.  The letter also stated, in a two-page subsection, "concerns" about

"high numbers" of people receiving hysterectomies from "a particular gynecologist outside the

facility," unnamed, and stated, "[i]ntertwined with the issue of reported high rates of

hysterectomies is the issue of proper informed consent."  Pl. SOMF ¶ 37.

The letter was *not* a complaint that a purported whistleblower and a source for the letter,

Dawn Wooten██████████████████████████████████████████

█████████████████  Ms. Wooten did file an OIG complaint, but it was regarding her

allegation that she was fired for "blowing the whistle" about poor COVID-19 conditions at

ICDC—not hysterectomies or gynecological care.  Pl. SOMF ¶ 39.  *The OIG complaint did not*

*mention hysterectomies or gynecological care at all, much less mention Dr. Amin.*  Pl. SOMF

_____

█ ████████████████████████████████████████████

¶¶ ███ 40-43. ████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████ The

OIG investigation appears to be resolved, as Ms. Wooten represented in a court filing that she

received notice from OIG that "the conditions for exhaustion of administrative remedies have

been met in this case."  SOMF ¶ 45.

> ### C. NBCUniversal Published False, Defamatory Statements Alleging that Dr. Amin Performed Mass Forced Hysterectomies without Consent, Authorization, and/or Necessity.

As stated above, the letter that NBCUniversal clings to for support for its defamatory

reporting did not identify Dr. Amin.  This is not surprising given the lack of substantiated

allegations against him and the focus of the letter on COVID-19 conditions.  NBCUniversal,

however, not only identified Dr. Amin, but made him the focus of multiple broadcasts from

September 15-17, 2020 ("broadcasts") and additional social media posts.  NBCUniversal's

coverage exceeded the scope of the letter and misstated Dr. Amin's treatment, accusing Dr.

Amin of performing mass forced hysterectomies without consent, authorization, and/or

necessity.  Specifically, NBCUniversal published the following Statements on which Dr. Amin

moves for summary judgment, organized in order of appearance in Dr. Amin's complaint, Doc.

49:

| COMPLAINT | STATEMENT |
|---|---|
| **First Broadcast: "Deadline: White House," September 15, 2020** | |
| 75(a) | High numbers of female detainees, detained immigrants, at an ICE detention center in Georgia received questionable hysterectomies while in ICE custody. |
| 75(f) | There were women who were told that they needed a hysterectomy because they had cancer.  One of those women, her medical records does not indicate that she ever had a biopsy to indicate that she had cancer and another case, a lawyer told me that his client had a hysterectomy because she was told she had stage four cervical cancer and after the hysterectomy when she went to the oncologist, the oncologist said you do not have cancer, so these are alarming allegations about this doctor. |
| 75(g) | This is his specialty, he's the uterus collector. |
| 75(h) | Well, what is he doing . . . collecting all of our uteruses? |
| 75(j) | And perhaps doing very unnecessary procedures and not what you would need in a short-term detention situation. |
| 76 | [Headline on screen] High number of hysterectomies at ICE Detention Ctr. |
| **Second Broadcast: "All In with Chris Hayes," September 15, 2020** | |
| 78(f) | Migrant women say that a doctor was performing unauthorized hysterectomies on immigrant women detained at that facility. |
| 78(g) | Two of his clients received hysterectomies they believe may have been unnecessary. |
| 78(h) | Two different women who claim they also had unnecessary hysterectomies while detained at this facility. |
| 78(i) | As many as 15 immigrant women were given full or partial hysterectomies or other procedures for which no medical indication existed. |
| 78(j) | Is he the uterus collector?  Does he collect uteruses? |
| 78(k) | Everyone that I talked to has had a hysterectomy. |
| 78(l) | They would say is he the uterus collector? |
| 79 | [Headline on screen] Mass hysterectomies performed on women at ICE facility |
| **Fourth Broadcast: "The Rachel Maddow Show," September 15, 2020** | |
| 84(a) | Immigrant women at that facility have told her that they routinely have been sent to a gynecologist who has performed unnecessary procedures on them, including hysterectomies. |
| 84(b) | They have been sending immigrant women in their care, in their custody, to a doctor who has removed their reproductive organs for no medical reason and without them consenting to it. |
| 84(c) | Five different women between October, November, and December 2019, over that three-month period, five different women who'd had a hysterectomy done. |
| 84(d) | I thought this was like an experimental concentration camp.  It was like they're experimenting with our bodies. |
| 84(e) | Everybody this doctor sees has a hysterectomy, just about everybody. |

| 84(f) | He's even taken out the wrong ovary on one detained immigrant woman. She was supposed to get her left ovary removed because it had a cyst on the left ovary.  He took out the right one.  She had to go back to take out the left and wound up with a total hysterectomy. |
|---|---|
| 84(g) | He's taking everybody stuff out, that's his specialty. |
| 84(h) | He's the uterus collector. |
| 84(i) | Is he collecting these things or something? |
| 84(j) | Everybody he sees he's taking all their uteruses out or he's taking their tubes out. |
| 84(k) | He removed the uteruses of these refugee women for no medical reason, without their proper informed consent. |
| 84(l) | Two women who were detained at the facility say they received hysterectomies that they believe may have been unnecessary. |
| **Fifth Broadcast: "All In with Chris Hayes," September 17, 2020** | |
| 86(a) | We've been bringing you the story of allegations of medical procedures performed on immigrant women without—many without consent at an ICE detention facility in Georgia. |
| **Social Media Posts: First Twitter Post, Second Twitter Post, Facebook Post** | |
| 89 | Learn more about the three women claiming they have received unnecessary hysterectomies here: on.msnbc.com/2FJlvra. |
| 89 | Three women claim they received unnecessary hysterectomies at ICE facility.  "I felt like I had no right to say anything.  Dr. Amin just told me, you're gonna get a hysterectomy done, and schedule an appointment for that.  I had no say on this.  on.msnbc.com/2FJlvra |
| 89 | Nurse Dawn Wooten alleges mass hysterectomies performed at Georgia facilities: "I had several detained women on numerous occasions that would come to me and say, 'Ms. Wooten, I had a hysterectomy.  Why?'  I had no answers as to why they had those procedures." |

As a result of NBCUniversal's false and defamatory broadcasts, Dr. Amin, who is an immigrant himself, was flooded with vitriol and hatred, causing damage to his personal and professional reputation, lost patients, and suffered extreme stress, emotional distress, embarrassment, humiliation, and other mental pain and suffering.  Pl. SOMF ¶¶ 70-75.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a). "Summary judgment is required where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *U.S. v. Aegis*

*Therapies, Inc.*, Case No. 2:10-cv-72, 2015 WL 1541491, at *11 (S.D. Ga. Mar. 31, 2015) (quoting Fed. R. Civ. P. 56(a)).  A fact is "material" if "it might affect the outcome of the suit under the governing law," and there is a "genuine dispute" if "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. (quotation marks omitted).  "The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact."  *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In Georgia, a plaintiff alleging defamation must show: "that the defendant made a false and defamatory statement concerning the plaintiff; that the defendant made an unprivileged communication of that statement to a third party; fault by the defendant constituting at least negligence; and either that the plaintiff suffered special harm or that the statement is actionable even in the absence of special harm."  *Houston v. Elan Fin. Servs.*, 135 F. Supp. 3d 1375, 1381 (S.D. Ga. 2015) (quotation marks omitted).  "A publication deemed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it."  *Lucas v. Crenshaw*, 289 Ga. App. 510, 513 (2008) (quotation marks omitted).  Where a communication is conditionally privileged, the plaintiff must show that a statement was published with "actual malice," that is, "knowledge of its falsity or reckless disregard for its truth," rather than mere negligence.  *Hammer v. Slater*, 20 F.3d 1137, 1142-43 (11th Cir. 1994).

## ARGUMENT

Dr. Amin moves for summary judgment as to the following elements of his defamation claim: (1) the Statements were false; (2) the Statements were defamatory; (3) the Statements were "of and concerning" Dr. Amin; (4) NBCUniversal published the Statements to a third party; and (5) the Statements are actionable even in the absence of special harm.  Further, Dr. Amin moves for summary judgment as to NBCUniversal's First, Third, Fourth, Seventh, Eleventh, and

Twelfth Affirmative Defenses.

## I.     NBCUniversal's Statements Were False.

Dr. Amin did not perform "mass" or "high numbers" of hysterectomies on women detained by ICE at ICDC, both of the two hysterectomies he performed were medically necessary—even according to NBCU's own experts, both of the two hysterectomies he performed were authorized, both of the two hysterectomies he performed were done with the consent of the patient, and NBCUniversal's statement that Dr. Amin removed the wrong ovary from a patient resulting in a total hysterectomy is false.  A statement is "false" for purposes of Georgia defamation law if "it would have a different effect on the mind of the viewer from that which the pleaded truth would have produced."  *Bryant v. Cox Enters., Inc.*, 311 Ga. App. 230, 234 (2011) (quotation marks omitted).  "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified."  *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (quotation marks omitted).  "A publication deemed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it."  *Crenshaw*, 289 Ga. App. at 513 (quotation marks omitted).

### A.  Dr. Amin Did Not Perform High Numbers of Hysterectomies, and the Hysterectomies He Performed Were Necessary, Authorized, and Performed with Consent.

NBCUniversal published false statements that Dr. Amin performed a pattern of high numbers of hysterectomies on women detained by ICE at ICDC, and that the hysterectomies were wrong because they were forced, not necessary, not approved, and/or not consented to by the patients.  Such statements are included in every broadcast and social media post.  For example, as cataloged above, in the First Broadcast, NBCUniversal relayed the allegation: "High numbers of female detainees, detained immigrants, at an ICE detention center in Georgia

received questionable hysterectomies while in ICE custody."  The Second Broadcast published the allegations: "Migrant women say that a doctor was performing unauthorized hysterectomies on immigrant women detained at that facility."  The Fourth Broadcast: "Immigrant women at that facility have told her that they routinely have been sent to a gynecologist who has performed unnecessary procedures on them, including hysterectomies."  In the Fifth Broadcast: "Still to come, what we're learning about the doctor who is allegedly behind a pattern of unnecessary hysterectomies performed on women held in an ICE detention facility."  The Facebook Post also stated: "Nurse Dawn Wooten alleges mass hysterectomies performed at Georgia facility."  Pl. SOMF ¶ 67.  These publications also portrayed Dr. Amin as being called a "uterus collector," which signified that he performed enough hysterectomies to "collect" the uteruses removed.

1. **Dr. Amin Performed *Two* Hysterectomies on Women Detained by ICE at ICDC.**

All of NBCUniversal's publications allege that Dr. Amin performed high numbers of hysterectomies, which he did not do.  The First Broadcast alleged "high numbers" and that Dr. Amin is "the uterus collector," an allegation repeated throughout the broadcasts.  Pl. SOMF ¶ 69; Doc. 51-2 at 27-28.  The Second Broadcast stated: "That lawyer tells us that as many as 15 immigrant women were given full or partial hysterectomies or other procedures for which no medical indication existed," and that a lawyer named Ben Osorio stated that "two of his clients received hysterectomies" while "another attorney . . . represents two different women who claim they also had unnecessary hysterectomies."  Pl. SOMF ¶ 69; Doc. 51-3 at 12.  The Fourth Broadcast alleged "five different women who had had a hysterectomy done," as well as that patients "routinely have been sent to a gynecologist who has performed unnecessary procedures on them, including hysterectomies just to underscore that."  Pl. SOMF ¶ 69.  The Fifth described "a pattern of unnecessary hysterectomies performed on women held in an ICE detention

facility," and "unnecessary medical procedures being undertaken on women in a systematic fashion." Doc. 51-3 at 13-14. The Facebook Post alleged "mass hysterectomies," and the First and Second Twitter Post both identified NBCUniversal as having spoken to "three women" claiming they have received unnecessary hysterectomies. Pl. SOMF ¶¶ 65-68.

But Dr. Amin performed only two hysterectomies on women detained by ICE at ICDC. Dr. Amin testified that he had only performed two hysterectomies to women detained by ICE at ICDC. Pl. SOMF ¶ 2. On September 15, 2020, Dr. Ada Rivera, Medical Director of the ICE Health Service Corps, issued a statement that "since 2018, only two individuals at Irwin County Detention Center were referred to certified, credentialed medical professionals at gynecological and obstetrical health care facilities for hysterectomies in compliance with National Commission on Correctional Health Care (NCCHC) standards." Pl. SOMF ¶ 46. ██████████████
██████████████ Indeed, other of NBCUniversal's sources for the story conveyed to NBCUniversal that it did ***not*** appear that Dr. Amin performed "high numbers" of hysterectomies at all. Sarah Owings testified that she told Jacob Soboroff that she and her colleagues were not finding large numbers of hysterectomies. Pl. SOMF ¶ 53. Ben Osorio testified that one of his clients had a hysterectomy that records indicated was necessary because of cancer, and that while another one claimed that she also had a hysterectomy, he did not have records to confirm it. Pl. SOMF ¶¶ 54-55. To date there are no medical records showing that Mr. Osorio's second client ever had a hysterectomy, or was a patient of Dr. Amin's. Pl. SOMF ¶ 56.

Therefore, there is no genuine issue of material fact in dispute: Dr. Amin performed two hysterectomies on women detained by ICE at ICDC. NBCUniversal's Statements to the contrary, that he performed "high numbers," was "the uterus collector" and "collecting all of our

uteruses," "two of his clients" plus "two different women" claimed they had hysterectomies, "as many as 15 immigrant women were given full or partial hysterectomies or other procedures for which no medical indication existed," "five different women who'd had a hysterectomy done," "three women claim they received unnecessary hysterectomies at ICE facility," and the like, Pl. SOMF ¶ 69, are false as a matter of law.  Such Statements undoubtedly had "a different effect on the mind of the viewer from that which the pleaded truth," that Dr. Amin performed two hysterectomies, "would have produced.  *Bryant*, 311 Ga. App. at 234 (quotation marks omitted).

## 2. The Hysterectomies Were Not "Unnecessary," "Unauthorized," or "Forced" or Without Consent."

NBCUniversal's Statements also alleged that the hysterectomies were done without necessity, authorization, and/or consent and were instead forced.  For example, the First Broadcast alleged "very unnecessary procedures."  Pl. SOMF ¶ 69.  The Second Broadcast used terms "forced," "unnecessary," "unauthorized," and "for which no medical indication existed" to describe the hysterectomies.  Pl. SOMF ¶ 69; Doc. 51-3 at 2.  The Fourth described "unnecessary procedures on them, including hysterectomies," and "removed their reproductive organs for no medical reason and without them consenting to it."  Pl. SOMF ¶ 69.  And the Fifth alleged hysterectomies that were "unnecessary" and "without consent."  Doc. 51-6 at 2, 13-14.  The Facebook Post alleged hysterectomies for which the nurse "had no answers as to why they had those procedures," and the First and Second Twitter Post both described "unnecessary hysterectomies."  Pl. SOMF ¶ 69.  However, neither of the hysterectomies were unnecessary, done without authorization, or done without the patient's consent.

### i. Both Hysterectomies Were Not Unnecessary.

Both hysterectomies were medically necessary.  Dr. Amin testified that both hysterectomies were "justified for medical reasons," one to remove cancer and the other to

remove a tumor.  Pl. SOMF ¶¶ 3-5.  *See, e.g.*, *Flowers v. Wal-Mart Stores, Inc.*, Case No. 3:03-cv-35(CAR), 2005 WL 2787101, at *7 (M.D. Ga. Oct. 27, 2005) (concluding that a treating physician's testimony as to medical causation and damages of a patient was reliable pursuant to *Daubert*, considering the standard of care required in Georgia and the "high level of accountability on a practicing physician" that is "arguably more rigorous than the accountability peer review imposes on the work of scholars").  ██████████████

███████████████████████████████████████████

████████████████████████████████  ████████████████

███████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████  On September 15, 2020, Dr. Ada Rivera, Medical Director of the ICE Health Service Corps, issued a statement that both recommendations for hysterectomies on women detained by ICE at ICDC "were reviewed by the facility clinical authority and approved," and that such decisions are always made by medical personnel.  Pl. SOMF ¶¶ 47-48.  And as for B.P., her counsel informed Julia Ainsley that, although he and other attorneys "were questioning everything at that point," her medical records "indicated that the need for the hysterectomy was necessitated by cancer."  Pl. SOMF ¶ 54.

███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

––––––––––––––––––––

███████████████████████████████████████
████████████████████████

███████████████████████████████

████████████████████████

████████████████████████████████

█████████████████████████████████

██████████████████████████

████████████████████████████████

████████████████████████████████

█████████████████████████████████

███████████████████████████████

███████████████████████████

████████████████████████████████

███████████████████████████████

████████████████

### ii.    Both Hysterectomies Were Authorized.

Further, NBCUniversal's Statements that the hysterectomies were "unauthorized" are false.  Dr. Amin testified that, once a patient decided to have surgery, ICE had to independently approve or disapprove the surgery.  Pl. SOMF ¶ 7.  Additionally, the hospital personnel verified that the procedure had been approved.  Pl. SOMF ¶ 8.  Dr. Amin's surgical coordinator testified that approval from ICE was required before Dr. Amin performed any procedure on a patient detained by ICE at ICDC.  Pl. SOMF ¶ 10.  Dr. Amin's office initiated the approval-seeking process by providing information, including a description of the patient's treatment to that point, to ICDC, which would then obtain approval for the procedure from an ICE medical director.  Pl. SOMF ¶ 11.  Finally, in her statement on September 15, 2020, Dr. Ada Rivera, Medical Director

of the ICE Health Service Corps, also stated that "both recommendations for hysterectomies on women detained by ICE at ICDC "were reviewed by the facility clinical authority and approved."  Pl. SOMF ¶ 41.  ███████████████████████████████████████

███████████████████

There is no genuine issue of material fact in dispute, and accordingly as a matter of law NBCUniversal's Statements that the hysterectomies were "unauthorized" are false.

### iii.  Both Hysterectomies Were Done with the Patient's Consent and Were Not "Forced."

Uncontroverted evidence also establishes that NBCUniversal's Statements that the procedures were "forced" and/or done "without consent" are also false.  Dr. Amin testified that he always obtained informed consent from patients.  Pl. SOMF ¶ 9.  He also testified that multiple different personnel in the hospital confirm that the patient understands the procedures they are going through.  Pl. SOMF ¶ 8.  ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████   A nurse at the Irwin County Hospital testified that when a patient needed a procedure, doctors, nurses, and an anesthesiologist would always go over it, "making sure that the patient understood everything that was going on," and specifically as to Dr. Amin, "he always explained what was what to his patients."  Pl. SOMF ¶¶ 13-14.  Dr. Amin's office manager likewise testified that Dr. Amin obtained informed consent before performing any surgery.  Pl. SOMF ¶ 15.  Dr. Amin's surgical coordinator testified that consent forms "had to go through several hands," including hospital staff, before any surgery is performed.  Pl. SOMF ¶ 12.  In her statement on September 15, 2020, Dr. Ada Rivera, Medical Director of the ICE

Health Service Corps, also stated: "Detainees are afforded informed consent, and a medical procedure like a hysterectomy would never be performed against a detainee's will."  Pl. SOMF ¶ 49.

There is no genuine issue of material fact in dispute, and accordingly as a matter of law NBCUniversal's Statements that hysterectomies were forced or without consent are false.

**B.  Dr. Amin Also Did Not "Tak[e] Out the Wrong Ovary On One Detained Immigrant," or Falsely Tell Patients They Had Cancer and then Perform a Hysterectomy.**

Several of the Statements also concern allegations of other unnecessary and abusive medical treatment of women detained by ICE at ICDC.  Out of these, the Fourth Broadcast's statement that Dr. Amin had "taken out the wrong ovary on one detained immigrant," resulting in her winding up with "a total hysterectomy," is also false as a matter of law. ████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████ In neither instance did the patient have "the wrong ovary" taken out.  Similarly, as discussed above, only two patients received hysterectomies; in neither patient is it true "that turned out not to be the case and those procedures happened anyway," or that the patient later went to an oncologist who told her she had not had cancer.  Accordingly, Dr. Amin is due summary judgment as to the falsity of those Statements, as well.

**C.  Dr. Amin Did Not Operate an "Experimental Concentration Camp" and Did Not Collect Uteruses.**

As to the Statements that Dr. Amin operated an "experimental concentration camp,"

"collected" uteruses, and was a "uterus collector," Dr. Amin is also due summary judgment, whether they are interpreted as statements of fact or as a negative opinion based on statements capable of being proved false.  Of course, to the extent that the Statements can be interpreted themselves as statements of fact, Doc. 59 at 62-66, they are false and capable of being proven false.  As discussed above, Dr. Amin performed two hysterectomies, both for medical necessity, and accordingly he did not "collect" uteruses nor did he "experiment" on patients by undertaking such procedures but instead treated patients' medical needs.  To the extent a viewer would interpret the Statements as constituting opinions, they are clearly based on the false defamatory statements that Dr. Amin performed mass hysterectomies; without the assumption and statement of such facts, "experimental concentration camp" and "uterus collector" do not make sense.  *See N. Atlanta Golf Operations, LLC v. Ward*, 363 Ga. App. 259, 262 (2022) ("An opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or imply defamatory facts about the plaintiff that are capable of being proved false."  (quotation marks omitted)); *id*. ("Where, as here, a defendant offers specific statements capable of being proved false in explanation for a negative opinion about a plaintiff's professional abilities, that statement can be the ground for a defamation claim."  (citations omitted)).

> **D.  Nothing in the Broadcasts or Social Media Posts Alter the Gist of the False Statements, Which Would Have a Different Effect on the Mind of the Viewer From That Which the Truth Would Have Produced.**

The Statements "must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it."  *Crenshaw*, 289 Ga. App. at 513 (quotation marks omitted).  Rather than considering statements in isolation, "it is necessary to consider the entire article in order to arrive at its true meaning."  *Id.* (quotation marks omitted).  "Minor

inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson*, 501 U.S. at 517 (quotation marks omitted).  Each broadcast and social media post, considered in its entirety, did not alter the "gist" of the Statements that Dr. Amin provided high numbers of unnecessary, forced, unauthorized, and/or unconsented to hysterectomies, but instead reinforced that gist.  The Statements had "a different effect on the mind of the viewer from that which the pleaded truth would have produced." *Bryant*, 311 Ga. App. at 234 (quotation marks omitted).

### 1.  First Broadcast: "Deadline: White House"

The script of the First Broadcast, "Deadline: White House," September 15, 2020, is attached to NBCUniversal's Answer.  *See* Transcript at Doc. 51-2.  The segment concerning Dr. Amin, which would affect how a viewer would ordinarily understand the other statements, was a bit longer than three pages of script length.  *Id*. at 27-30.  The First Broadcast stated: "High numbers of female detainees, detained immigrants, at an ICE detention center in Georgia received questionable hysterectomies in ICE custody."  *Id*. at 27.

Other statements throughout the segment reinforced and did not alter "the substance, the gist, the sting" of the charge that Dr. Amin performed unnecessary hysterectomies.  *Masson*, 501 U.S. at 517 (quotation marks omitted).  For example, Julia Ainsley stated: "It seemed like [the women detained by ICE at ICDC] were getting way too much care from a gynecologist and perhaps doing very unnecessary procedures and not enough of what you would need in a short term detention situation."  *Id*. at 29.  Nothing in the First Broadcast changed the gist or sting of the Statements that Dr. Amin performed high numbers of hysterectomies on women detained by ICE at ICDC.

### 2.  Second Broadcast: "All In with Chris Hayes"

The script of the Second Broadcast, "All In with Chris Hayes," September 15, 2020,

devoted around three and a half pages to its segment about Dr. Amin.  *See* Transcript at Doc. 51-

3 at 2, 12-15.  The Second Broadcast includes the statement: "Then, shocking whistleblower

allegations of atrocities at an ICE detention center including forced hysterectomies on women

who don't need them."  *Id*. at 2.  Again, nothing in the broadcast altered the "sting" or "gist" of

allegations of high numbers of hysterectomies.  Instead, other statements reinforced that sting.

Dawn Wooten's attorney, John Whitty, stated: "And with the number of cases [of forced or

unauthorized hysterectomies] that Ms. Wooten and others alluded to, there's a lot—there's a

large population of these—of these women, immigrants who've had this—who have been

mistreated in this way, assaulted.  And should—you know, there's a pool there that could come

forward.  Let's hope they do."  *Id*. at 15.  The host of the Second Broadcast, Chris Hayes, also

reinforced the gist or sting of the Statements by crediting and commending Dawn Wooten's

appearance: "A tremendous bravery coming forward, Ms. Wooten."  *Id*.

### 3.  Fourth Broadcast: "The Rachel Maddow Show"

The Fourth Broadcast is "The Rachel Maddow Show," September 15, 2020.  *See*

Transcript at Doc. 51-5 at 2-11.  Consideration of the whole broadcast reinforced, rather than

alters, the "gist" or "sting" of the Statements alleging that Dr. Amin conducting mass, forced

hysterectomies.  Specifically, the host of the Fourth Broadcast, Rachel Maddow, devoted

multiple statements to tying Statements about Dr. Amin to the Trump Administration's "forcible

systematic removal of children from their parents at the border," describing forced

hysterectomies as "the next chapter in this same story."  *Id*. at 2-5.  Ms. Maddow further tied the

allegations against Dr. Amin to broader Trump Administration immigration policies in her

introduction of journalist Jacob Soboroff: "Joining us now is Jacob Soboroff, MSNBC correspondent and author, of course, of 'Separated: Inside an American Tragedy,' which is the seminal book on the child separation policy that I think is relevant context here." *Id.*

Ms. Maddow also supported the credibility of the allegations: "I should tell you that these allegations from this whistle-blower are not isolated complaints." *Id.* at 7. In response to a statement by ICE that "only two individuals at the Irwin County Detention Center were referred" for hysterectomies, Ms. Maddow critiqued: "Whether or not the women were referred for hysterectomies or not, more than two women are saying they got them and more than two women are telling lawyers as part of this complaint that they don't know why they got them and they don't think they needed them." *Id.* at 8. And she stated: "There are things that are—that other people and that other lawyers for other people have declared as part of this complaint that would seem to back up what she's saying." *Id.* Further: "There is significant corroboration for the worst of the allegations that she's making." *Id.* at 10. Soboroff also stated that Dawn Wooten was not "the only one saying so" regarding describing Dr. Amin as a "uterus collector." *Id.* He later described Dr. Amin as "a so-called medical professional." *Id.* at 11. Again, the broadcast as a whole left "a different effect on the mind of the viewer from that which the pleaded truth would have produced," and accordingly the Statements are false as a matter of law. *Bryant*, 311 Ga. App. at 234 (quotation marks omitted).

### 4. Fifth Broadcast: "All In with Chris Hayes"

The Fifth Broadcast, "All In with Chris Hayes," September 17, 2020, had a shorter segment on Dr. Amin. *See* Transcript at Doc. 51-6 at 13-15. Nothing in the other statements in the Fifth Broadcast altered the gist of the allegations of mass, forced hysterectomies without consent. The Fifth Broadcast stated: "Still to come, what we're learning about the doctor who is

allegedly behind a pattern of unnecessary hysterectomies performed on women held in an ICE detention facility."  *Id*. at 13.  The host, Chris Hayes, also described the situation as "allegations of unnecessary medical procedures being undertaken on women in a systematic fashion."  Doc. 51-6 at 14.  He described the allegations as "so horrific."  *Id*. at 15.  Finally, he called for action and promised to deliver: "We truly need nothing less than a full thorough, complete, and timely investigation.  And we here on the show are going to be doing our best to make sure that happens."  *Id*.

### 5.  The Twitter Posts and Facebook Post

The First Twitter Post, the Second Twitter Post, and the Facebook Post were short, and in each case consideration of the entire writing shows that the gist or sting was that Dr. Amin performed hysterectomies without necessity.  *See Ward*, 363 Ga. App. at 260-61 (examining each Twitter post as a separate publication for purposes of summary judgment and holding that some posts were due summary judgment for the defendant and other posts were not).  The First Twitter Post and the Second Twitter Post both alleged that "three women" claim they received "unnecessary hysterectomies."  Pl. SOMF ¶ 69.  The Second Twitter Post added the quote: "I had no say in this."  Pl. SOMF ¶ 69.  Likewise, the Facebook Post stated: "Nurse Dawn Wooten alleges mass hysterectomies performed at a Georgia facility."  Pl. SOMF ¶ 69.

There is not additional context in the social media posts aside from the Statements, and nothing altered the gist or sting that a reader would have: that Dr. Amin performed a high number of unnecessary hysterectomies that were forced and without the consent of the patients.

## II.    The Statements Were Defamatory.

In addition to being false, the Statements are defamatory as a matter of law.  "Although as a general rule the question whether a particular communication is defamatory is for the jury, if

the statement is not ambiguous and reasonably can have only one interpretation, the question of defamation is one of law for the court." *Id*. (quoting *Speedway Grading Corp. v. Gardner*, 206 Ga. App. 439, 441 (1992)). The Statements are not ambiguous and are obviously defamatory because, as discussed below, they make charges against Dr. Amin in his trade (medicine) and impute to him crimes.

### III.    The Statements Were Of and Concerning Dr. Amin.

The Statements were "of and concerning" Dr. Amin. Whether a publication "concerns" a plaintiff is "a matter of identity" so that a publication "concerns" the plaintiff if it is "about the plaintiff." *800 Marketing Solutions, Inc. v. GMAC Ins. Mgmt. Corp.*, Case No. 3:06-CV-038 (CDL), 2008 WL 2777140, at *5 (M.D. Ga. July 14, 2008) (citations omitted). The Statements directly identified Plaintiff by name, picture, and description numerous times. Pl. SOMF ¶¶ 51, 60, 62, 64, 66.

Even if the Statements had not directly identified Dr. Amin, the Statements are still "of and concerning" him, because the "publication must be construed in the light of all the attending circumstances, the cause and occasion of the publication, and all other extraneous matters which will tend to explain the allusion or point out the person in question. *Southland Pub. Co. v. Sewell*, 111 Ga. App. 803, 807 (1965) (quotation marks omitted). "[I]t is enough if the audience would be likely to think that the defendant was talking about the plaintiff." *Desnick v. Am. Broad. Co., Inc.*, 44 F.3d 1345, 1349 (7th Cir. 1995) (citations omitted); *see also Brayton v. Crowell-Collier Pub. Co.*, 205 F.2d 644, 645 (2d Cir. 1953) (finding jury could reasonably infer that article read as a whole was actionable by plaintiff without mentioning him by name because of evidence he controlled named corporation); *Maples v. Nat'l Enquirer*, 763 F. Supp. 1137, 1139 (N.D. Ga. 1990) (finding a plaintiff who was not the subject of an article nevertheless

stated a claim for defamation).

## IV.   NBCUniversal Communicated the Statement to Third Parties.

A defamation plaintiff must also demonstrate "that the defendant made an unprivileged communication of that statement to a third party." *Houston v. Elan Fin. Servs.*, 135 F. Supp. 3d at 1381 (quotation marks omitted).[4]

It is not disputed that NBCUniversal published the Statements.  "A libel is published as soon as it is communicated to any person other than the party libeled." O.C.G.A. § 51-5-3.  "The defamatory statement must be published, and a plaintiff cannot prove publication without introducing evidence of the specific statement used in an allegedly defamatory communication." *Grace v. Lowery*, 359 Ga. App. 881, 883 (2021) (quotation marks omitted).  "[P]ublication of defamatory information generally occurs when it is communicated to anyone other than the person being defamed." *RCO Legal, P.S., Inc. v. Johnson*, 347 Ga. App. 661, 673 (2018) (citation omitted).

Here, it is undisputed that NBCUniversal published the broadcasts from September 15,

---

[4] The Court has ruled that the publications are conditionally privileged, under the Georgia public interest privilege. Doc. 59 at 15-26, 66.  Accordingly, the Court has ordered that Dr. Amin must demonstrate that NBCUniversal published the defamatory statements with actual malice, that is, knowledge that the statements were false or reckless disregard of whether the statements were false.  *Id*. at 26-27 (citations omitted).  Dr. Amin is confident that he will demonstrate to a jury that NBCUniversal published the statements with actual malice.  However, at this point, NBCUniversal has not produced all documents responsive to Dr. Amin's requests for production of documents pertaining to actual malice.  *See* Doc. 111 at 1, 19 (granting in part Dr. Amin's motion to compel production of documents "within 30 days of this Order," ordered on November 28, 2023).  An attorney who served as a source for NBCUniversal's reporting moved to quash her subpoena for deposition, and her motion remains pending.  *See Amin v. NBCUniversal, movant Azadeh Shahshahani*, Motion to Quash Subpoena, Case No. 5:23-mc-00002 (S.D. Ga. Sept. 9, 2023).  Further, actual malice is a subjective state of mind, typically not appropriate for determination on summary judgment, which is only available where there is no issue of material fact: "Weighing the evidence to reach a conclusion regarding Defendants' state of mind is inappropriate at the summary judgment phase of litigation." *Reid v. Viacom Int'l Inc.*, Case No. 1:14-CV-1252-MHC, 2017 WL 11634619, at *5 (N.D. Ga. Sept. 22, 2017) (citations omitted).  "Moreover, Georgia courts have repeatedly held that the issue of malice in conditional privilege cases is generally a jury issue, inappropriate for summary judgment." *Hammer*, 20 F.3d at 1143 (citations to Georgia law omitted).  "In general, questions of privilege [in defamation cases] are for the jury to decide." *N. Atlanta Golf Operations v. Ward*, 363 Ga. App. 259, 264 (2022) (quotation marks omitted).  Accordingly, Dr. Amin does not move for summary judgment on actual malice.

2020 to September 17, 2020; the scripts are part of the pleadings, since NBCUniversal attached them to its Answer.  Doc. 51-2; Doc. 51-3; Doc. 51-5; Doc. 51-6.  Further, NBCUniversal published the First Twitter Post, the Second Twitter Post, and the Facebook Post by posting them on those social network websites on September 17 and September 21.  Pl. SOMF ¶¶ 65-67.  Accordingly, Dr. Amin is entitled to summary judgment on the publication element of his defamation claim.  *See StopLoss Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334, 1352-53 (N.D. Ga. 2018) (granting plaintiff's motion for summary judgment in part, ruling as a matter of Georgia law that the statements at issue were published).

## V.  The Statements Are Actionable Regardless of Special Harm.

Dr. Amin is also due summary judgment on the damages element of his defamation claim because Georgia law provides that the Statements do not require proving special damages.[5] O.C.G.A. § 51-5-4(a)(4) provides that defamation consists in "[u]ttering any disparaging words productive of special damage which flows naturally therefrom," and in such circumstances "special damage is essential to support an action."  O.C.G.A. § 51-5-4(b).  However, statements need not produce special damage to be actionable if they are "[i]mputing to another a crime punishable by law" or "[m]aking charges against another in reference to his trade, office, or profession, calculated to injure him therein."  O.C.G.A. §§ 51-5-4(a)(1), (3).  In those circumstances of defamation per se, "damage is inferred."  O.C.G.A. § 51-5-4(b); *see also Walker v. Walker*, 293 Ga. App. 872, 876 (2008) ("Because defamation concerning trade, office,

---

[5] As with actual malice, Dr. Amin is confident that he can prove special harm caused by NBCUniversal's publications, including mental pain and suffering and anguish that manifested in his health and lost patients to his practice.  However, the amount of such damages is the province of the factfinder at trial, not the Court on summary judgment.  *See, e.g.*, *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1318 (11th Cir. 1990) ("The nature of special damages are such as really took place.  They are not to be implied but are to be specifically proved." (quotation marks omitted)); *see also Am. Civ. Liberties Union, Inc. v. Zeh*, 312 Ga.. 647, 653 (2021) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).

or occupation is defamation per se, damage is inferred, and the plaintiff need not plead or prove special damages." (quotation marks omitted)).

Here, NBCUniversal's Statements made charges against Dr. Amin in reference to his trade, office, or profession, and they also impute to Dr. Amin a crime punishable by law. As to one's profession, "words must either be spoken of the plaintiff in connection with his calling or they must be of such a nature such as to charge him with some defect of character or lack of knowledge, skill, or capacity as necessarily to affect his competency successfully to carry on his business, trade, or profession." *Bellemead, LLC v. Stoker*, 280 Ga. 635, 637 (2006) (quotation marks omitted). "Furthermore, when words are defamatory per se, innuendo—which merely explains ambiguity where the precise meaning of terms used in the allegedly slanderous statement may require elucidation—is not needed." *Id*. at 638 (citations omitted). The Statements made charges against Dr. Amin in reference to his trade as physician, without any need for interpreting innuendo. For example, the First Broadcast stated: "High numbers of female detainees, detained immigrants, at an ICE detention center in Georgia received questionable hysterectomies while in ICE custody," and it further identified "Mahendra Amin" as the doctor at issue, "a gynecologist in Douglas, Georgia." Pl. SOMF ¶¶ 51, 69. The other broadcasts echoed the First, in alleging "unauthorized," "unnecessary," and "without consent" hysterectomies. Pl. SOMF ¶ 69. The First and Second Twitter Posts likewise accused Dr. Amin of performing "unnecessary hysterectomies," and the Facebook Post alleged "mass hysterectomies performed." Pl. SOMF ¶ 69. These Statements all accused Dr. Amin, a physician who determines with patients whether procedures such as hysterectomies are appropriate and helps perform hysterectomies when the patient chooses to have them, of performing unnecessary hysterectomy procedures, and therefore they are "in connection with

[Dr. Amin's] calling" as a physician.  *Bellemead*, 280 Ga. at 637.  Innuendo is not necessary to interpret the words as concerning his trade or profession, since all of the broadcasts and social media posts used the term "hysterectomies."  Pl. SOMF ¶ 69; Doc. 51-6 at 13.

The Statements also impute to Dr. Amin a crime punishable by law.  A district court granted in part the plaintiffs' motion for summary judgment as to whether "this appears to be Insurance Fraud" constituted defamation per se under Georgia law.  *StopLoss*, 340 F. Supp. 3d at 1351-52.  The court noted that insurance fraud is a crime that is punishable in Georgia and that the phrase "on its face charges the commission of specific crime [*i.e.*, insurance fraud] punishable by law."  *Id*. at 1351 (quotation marks omitted); *see also Turnage v. Kasper*, 307 Ga. App. 172, 184 (2010) ("Turnage's statement to Kasper's neighbor that Kasper was a known drug user . . . imputed to her a crime punishable by law, and thus alone was sufficient to serve as the basis for her claim of slander per se."); *Cate v. Patterson*, 354 Ga. App. 108, 112 (2020) (holding that statement that a trailer was "taken . . . without proper ownership, documentation and payment" "impute[d] the criminal offense of theft" for purposes of libel per se).

Here, the broadcasts accused Dr. Amin of performing hysterectomies that were "unnecessary," "unauthorized," and "without consent."  Pl. SOMF ¶ 69.  And again, the same accusations were repeated in the First and Second Twitter Posts, which accused Dr. Amin of performing "unnecessary hysterectomies," and the Facebook Post, which alleges "mass hysterectomies performed."  Pl. SOMF ¶ 69.  "A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another." O.C.G.A. § 16-5-23.1(a).  "A person commits the offense of simple battery when he or she either: (1) Intentionally makes physical contact of an insulting or providing nature with the person of another; or (2) Intentionally causes physical harm to another."  O.C.G.A. § 16-5-23(a).

Both crimes are misdemeanor crimes punishable under Georgia law.  O.C.G.A. § 16-5-23.1(c); O.C.G.A. § 16-5-23(b).  "A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof."  O.C.G.A. § 16-5-24(a).  Aggravated battery is punishable in Georgia "by imprisonment for not less than one nor more than 20 years."  O.C.G.A. § 16-5-24(b).  By accusing Dr. Amin of performing hysterectomies without medical necessity, authorization, or consent, the Statements imputed to him these crimes punishable by law in Georgia.

Because the Statements made "charges against [Dr. Amin] in reference to his trade, office, or profession, calculated to injure him therein" because he is a doctor, and in the alternative imputed to Dr. Amin "a crime punishable by law," O.C.G.A. § 51-5-4(a), Dr. Amin is due summary judgment on the element of his defamation claim that the Statements are actionable even in the absence of special harm.

## VI. NBCUniversal's First, Third, Fourth, Seventh, Eleventh, and Twelfth Affirmative Defenses Should Be Dismissed.

### A.  First Defense.

NBCUniversal first asserts: "The FAC is barred because it fails to state a claim upon which relief can be granted."  Doc. 51 at 42.  In the order denying in part NBCUniversal's motion for judgment on the pleadings, the Court ruled that Dr. Amin's case does state claims for which relief can be granted.  Doc. 59 at 66-67.  NBCUniversal's First Affirmative Defense should accordingly be dismissed.

### B.  Third Defense.

NBCUniversal states: "Plaintiff's claim is barred under New York Civil Rights Law

Section 76-a(2) because this is an action involving public petition and participation, and Plaintiff cannot establish, by clear and convincing evidence, that NBCU acted with actual malice as to the publication of the challenged statements."  Doc. 51 at 43.  The Court has ruled that New York law does not apply to this case brought in a federal court sitting in Georgia under Georgia defamation law by a plaintiff domiciled in Georgia, where he suffered the most harm from the tort, Doc. 59 at 6-7, and accordingly NBCUniversal's Third Affirmative Defense should be dismissed.

### C.  Fourth Defense.

For the same reason, NBCUniversal's Fourth Affirmative Defense should be dismissed: "Plaintiff's claim is barred because the challenged statements are absolutely privileged under New York Civil Rights Law Section 74 as a fair and true report on an official proceeding."  Doc. 51 at 43.

### D.  Seventh Defense.

NBCUniversal further argues: "Plaintiff's claim is barred because the challenged statements are true or substantially true and thus cannot be the basis for a defamation action." Doc. 51 at 43.  As discussed above, there is no genuine dispute: the Statements were false. Accordingly, NBCUniversal's Seventh Affirmative Defense should also be dismissed as to the Statements.

### E.  Eleventh Defense.

Eleventh: "Plaintiff's claim is barred because the challenged statements are non-actionable statements of opinion."  Doc. 51 at 44.  The Court ordered several statements be dismissed because they constituted opinion, but it ruled that the bulk of the statements Dr. Amin alleges defamed him do not constitute non-actionable opinion.  Doc. 59 at 66-67.  Accordingly,

NBCUniversal's Eleventh Affirmative Defense should also be dismissed.

### F. Twelfth Defense.

NBCUniversal next argues: "Plaintiff's claim is barred because he has not suffered any actual harm or damages proximately caused by any of the challenged statements."  Doc. 51 at 44. However, as discussed above, the conduct NBCUniversal imputed to Dr. Amin is both "punishable by law" and "against another in reference to his trade, office, or profession, calculated to injure him therein."  O.C.G.A. §§ 51-5-4(a)(1), (3).  Accordingly, even if NBCUniversal could establish that Dr. Amin suffered no "actual harm or damages proximately caused by any of the challenged statements," which it cannot, Dr. Amin is also entitled to summary judgment on NBCUniversal's Twelfth Affirmative Defense.

### CONCLUSION

Dr. Amin performed two hysterectomies on women detained by ICE at ICDC.  Both were necessary, authorized, and consented to, and neither was forced.  Further, Dr. Amin did not remove the wrong ovary from a patient.  There is no genuine dispute on these matters. Accordingly, the Statements are false as a matter of law.  Also, it is undisputed that NBCUniversal published the Statements.  Further, there is no genuine dispute of material fact that the Statements are defamatory, of and concerning Dr. Amin, and actionable without proof of special damage because they are defamatory per se.  Accordingly, Dr. Amin is due summary judgment as to those elements, and to NBCUniversal's affirmative defenses discussed above.

[Signature on following page.]

Respectfully submitted this <u>19th</u> day of December 2023.


*/s/ Stacey G. Evans*
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com
Tiffany N. Watkins
Georgia Bar No. 228805
twatkins@staceyevanslaw.com
J. Amble Johnson
Georgia Bar No. 229112
ajohnson@staceyevanslaw.com

STACEY EVANS LAW
4200 Northside Parkway NW
Bldg One; Suite 200
Atlanta, GA 30327
(770) 779-9602 (phone)
(404) 393-2828 (fax)

*Counsel for Plaintiff*

Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com

CHILIVIS GRUBMAN
DALBEY & WARNER LLP
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S MOTION**

**FOR PARTIAL SUMMARY JUDGMENT** will be served upon all attorneys in this matter by

filing with the Court's CM/ECF system.

This <u>19th</u> day of December 2023.

***<u>/s/ Stacey G. Evans</u>***
Stacey G. Evans
