UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:21-CV-00056-LGW-BWC |
| NBCUNIVERSAL MEDIA, LLC, | ) |
| Defendant. | ) |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS NO GENUINE DISPUTE TO BE TRIED AND CONCLUSIONS OF LAW THEREOF**

Pursuant to S.D. Ga. L.R. 56.1, Dr. Mahendra Amin submits this separate, short, and concise statement of the material facts as to which he contends there exists no genuine dispute to be tried, as well as any conclusions of law thereon, supported by a citation to the record.

I. **FACTS AS TO WHICH THERE EXISTS NO GENUINE DISPUTE TO BE TRIED**

A. **Dr. Mahendra Amin's Medical Care of Women Detained by ICE at ICDC**

1. Dr. Mahendra Amin is a physician who provided medical care to women detained by United States Immigration and Customs Enforcement (ICE) at the Irwin County Detention Center (ICDC) in Ocilla, Georgia for around 3.5 years. Ex. C, Amin Depo. Ex. 24 (Letter to Dr. McMahan, Sept. 21, 2020).

2. Dr. Amin only performed two hysterectomies on women who were detained by ICE at ICDC. Ex. B, Amin Depo. 84:2-5.

3. The two hysterectomies Dr. Amin performed on women who were detained by ICE at ICDC were justified for medical reasons. Ex. B, Amin Depo. 34:17-18.

4. One hysterectomy was to remove cancer. Ex. B, Amin Depo. 34:18-20.

5. The other hysterectomy was to remove a tumor. Ex. B, Amin Depo. 36:6-10.

6. As to the patient with cancer, Dr. Amin offered her different choices for treatment, and "she decided, and I agreed with her, for hysterectomy." Ex. B, Amin Depo. 35:5-7.

7. Once a patient who was detained by ICE at ICDC decided to do a surgery and before the surgery was done, ICE had to approve or disapprove the surgery. Ex. B, Amin Depo. 57:9-22.

8. At the hospital prior to surgery, multiple hospital personnel independently verified that surgery was approved. Ex. B, Amin Depo. 42:23-43:18, 57:23-58:3.

9. Dr. Amin has never performed surgery without patient consent, he always obtains informed consent from his patients, and multiple personnel in the hospital confirm that the patient understands the procedures they are going through. Ex. B, Amin Depo. 41:14-19, 42:19-20, 47:19-48:9, 288:24-289:2.

10. Maria Nito, Dr. Amin's surgical coordinator, testified that ICE authorization was required for all procedures on patients detained by ICE at ICDC. Ex. D, Nito Depo. 17:8-12, 72:1-18.

11. Maria Nito sought approval for procedures by providing information, including a description of the patient's treatment to that point, to ICDC, who would then send it to ICE for authorization through a medical director. Ex. D, Nito Depo. 72:1-74:23.

12. Consent forms had "to go through several hands before Dr. Amin proceeding with surgery," including hospital staff, the anesthesiologist, and Dr. Amin. Ex. D, Nito Depo. 98:7-16.

13. Dwayne Peal, a nurse at the Irwin County Hospital, testified that, when a patient "needed a procedure, then the doctors and the nurses would go over it, anesthesia will go over it

making sure that the patient understood everything that was going on." Ex. E, Peal Depo. 51:5-11, 68:7-20.

14. Dwayne Peal testified that, whenever he was present at a procedure being conducted by Dr. Amin, "he always explained what was what to his patients." Ex. E, Peal Depo. 72:5-10.

15. Alma Arceo, office manager for Dr. Amin's practice, confirmed that Dr. Amin obtained informed consent from all patients before performing surgeries on them. Ex. F, Arceo Depo. 12:9-11, 46:19-24.

**B. Experts Confirm the Necessity of the Hysterectomies Dr. Amin Performed**

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

18. Dr. Eldridge Bills concluded that, based on his review of patient charts: "In summary, it appears that Dr. Amin has been providing appropriate care to this high-risk indigent population and has not performed any unnecessary medical procedures." Ex. H, Plaintiff's Service of Expert Witness Reports (Sept. 5, 2023), at 16.

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

███████████████████████████████████████████████

██████████████████████████

███████████████████████████████████████████████

3

████████████████████████████████████

22. In its rebuttal expert disclosure, NBCUniversal disclosed Dr. Erin Carey, for rebuttal purposes only.  Ex. J, Defendant's Rebuttal Expert Witness Disclosures, Sept. 19, 2023, at 2.

████████████████████████████████████████████████

████████████████████

24. In her expert report, Dr. Erin Carey did not opine that performing a hysterectomy on B.P. was medically unnecessary, but opined that B.P. should have received a "modified radical hysterectomy (class II hysterectomy)" rather than the "simple hysterectomy" she received. ██████████████████ Ex. L, Pl. Ex. 222 (Carey Expert Rebuttal Report) at 8-9.

25. In its rebuttal expert disclosure, NBCUniversal also disclosed Dr. Ted Anderson's Zoom statement before staff members of the Democratic Caucus of the United States Senate and an Executive Summary produced by a team of advocates and medical reviewers.  Ex. J, Defendant's Rebuttal Expert Witness Disclosures, at 2-3, 123-136.

26. Dr. Anderson reviewed medical records of B.P. but not K.C.  *See* Ex. J, Defendant's Rebuttal Expert Witness Disclosures, Sept. 19, 2023 at 135-36 (spreadsheet of initials of patients reviewed).

████████████████████████████████████████████

████████████████████████████████████████

██████████████

████████████████████████████████████████

██████████████████████████



### D. Project South Letter is Not OIG Complaint

35. On September 14, 2020, an organization shared with media organizations a letter, titled,

"Re: Lack of Medical Care, Unsafe Work Practices, and Absence of Adequate Protection Against COVID-19 for Detained Immigrants and Employees Alike at the Irwin County Detention Center." Doc. 51-1 (letter) at 2.

36. The letter primarily concerned COVID-19 conditions at ICDC. Doc. 51-1 (letter) at 2-28.

37. The letter stated, in a two-page subsection, "concerns" about "high numbers" of people receiving hysterectomies from "a particular gynecologist outside the facility," unnamed, and stated, "[i]ntertwined with the issue of reported high rates of hysterectomies is the issue of proper informed consent." Doc. 51-1 (letter) at 19-20.

[redacted]

39. The OIG complaint concerned Ms. Wooten's allegation that she was fired for "blowing the whistle" about poor COVID-19 conditions at ICDC—not hysterectomies or gynecological care. [redacted] Ex. R, Pl. Ex. 227 (OIG Complaint).

40. The OIG complaint did not mention hysterectomies or gynecological care at all, much less mention Dr. Amin. [redacted] Ex. R, Pl. Ex. 227 (OIG Complaint).

[redacted]

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

42. None of the documents filed with the OIG mention hysterectomies or gynecological care. Ex. R, Pl. Ex. 227 (OIG Complaint); Ex. S, Pl. Ex. 165 (OIG Complaint Declaration); Ex. T, Pl. Ex. 228 (OIG Complaint Notice of Protected Whistleblower Activity).

43. The OIG complaint, declaration, and notice of protected whistleblower status were submitted through an online form that makes clear it is Ms. Wooten's official complaint, having her certify that "the statements in this complaint are true, complete, and correct" and showing a confirmation page that "[y]ou have successfully submitted your complaint to the DHS OIG" and providing a reference number.  Ex. U, Whitty 1st Depo. 48:2-14; Ex. V, Pl Ex. 166 (screenshot of on-line submission form) at 7-8.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

45. The OIG investigation is over, as Ms. Wooten represented in a court filing that effective August 14, 2023, OIG provided her written notice that "the conditions for exhaustion of administrative remedies have been met in this case." ██████████████████ Ex. W, Pl. Ex. 211 (Wooten's First Amended Complaint for First Amendment and Statutory Retaliation) at 1, 5-6.

**E.  ICE Attests to Only Two Hysterectomies, Necessary and with Consent**

46. On September 15, 2020, Dr. Ada Rivera, Medical Director of the ICE Health Service

Corps, issued a statement that "since 2018, only two individuals at Irwin County Detention Center were referred to certified, credentialed medical professionals at gynecological and obstetrical health care facilities for hysterectomies in compliance with National Commission on Correctional Health Care (NCCHC) standards." Doc. 51-7 (ICE Statement) at 2.

47. In her statement on September 15, 2020, Dr. Ada Rivera, Medical Director of the ICE Health Service Corps, also stated that both recommendations for hysterectomies on women detained by ICE at ICDC "were reviewed by the facility clinical authority and approved." Doc. 51-7 (ICE Statement) at 2.

48. In her statement on September 15, 2020, Dr. Ada Rivera, Medical Director of the ICE Health Service Corps, also stated: "To be clear, medical care decisions concerning detainees are made by medical personnel, not by law enforcement personnel." Doc. 51-7 (ICE Statement) at 2.

49. In her statement on September 15, 2020, Dr. Ada Rivera, Medical Director of the ICE Health Service Corps, also stated: "Detainees are afforded informed consent, and a medical procedure like a hysterectomy would never be performed against a detainee's will." Doc. 51-7 (ICE Statement) at 2.

**F. NBCUniversal's False and Defamatory Broadcasts and Social Media Posts Of and Concerning Dr. Amin**

50. In the program "Deadline: White House" on September 15, 2020 ("First Broadcast"), NBCUniversal published statements included in Dr. Amin's complaint (Doc. 49) regarding Dr. Amin. Doc. 51-2 (First Broadcast Transcript) at 27-30.

51. The First Broadcast also identified Dr. Amin: "His name is Mahendra Amin. He's a gynecologist in Douglas, Georgia." Doc. 51-2 (First Broadcast Transcript) at 28.

52. Julia Ainsley, who appeared on the relevant segment of the First Broadcast, and her colleague Jacob Soboroff spoke to Andrew Free, Elizabeth Matherne, Ben Osorio, and Sarah Owings as sources for their statements on the broadcasts.  Ex. X, Ainsley Depo. 28:11, 31:4-9, 32:21-33:4.

53. Sarah Owings told Jacob Soboroff that she and her colleagues were not finding large numbers of hysterectomies.  Ex. Y, Owings Depo. 48:2-14, 118:1-9.

54. Ben Osorio, counsel for B.P., told Julia Ainsley that, although he and other attorneys "were questioning everything at that point," her medical records "indicated that the need for the hysterectomy was necessitated by cancer."  Ex. Z, Osorio Depo. 66:7-67:6.

55. Ben Osorio told an interviewer that a second client of his had claimed to have had a hysterectomy, but that he did not have medical records to confirm it.  Ex. Z, Osorio Depo. 130:8-131:10.

56. To date, Ben Osorio does not know whether the second client had a hysterectomy or even was a patient of Dr. Amin's; when he requested records from Dr. Amin's office, the office responded that it had no records for the second client, and Ben Osorio testified that he had no reason to believe the office was withholding her records.  Ex. Z, Osorio Depo. 30:14-30:19, 31:15-18, 83:7-84:7.

57. In the program "All In with Chris Hayes" on September 15, 2020 ("Second Broadcast"), NBCUniversal published additional statements included in Dr. Amin's complaint (Doc. 49) regarding Dr. Amin.  Doc. 51-3 (Second Broadcast Transcript) at 12-15.

58. The Second Broadcast referred to its earlier reporting regarding Dr. Amin, including the First Broadcast and the article published about which Julia Ainsley's reporting was allegedly based, both of which named Dr. Amin.  Doc. 51-3 (Second Broadcast

9

Transcript); Pl. Ex. 105 (all versions of published article).

59. In the program "All In with Chris Hayes," on September 16, 2020 ("Third Broadcast"), NBCUniversal published additional statements included in Dr. Amin's complaint (Doc. 49) regarding Dr. Amin.  Doc. 51-4 (Third Broadcast Transcript) at 13-18.

60. The Third Broadcast included a picture of Dr. Amin and the text of Dr. Amin's name on the screen during the broadcast.  Doc. 19 at Ex. D(ii) (video of Third Broadcast).

61. In the program "The Rachel Maddow Show," on September 15, 2020 ("Fourth Broadcast"), NBCUniversal published additional statements included in Dr. Amin's complaint (Doc. 49) regarding Dr. Amin.  Doc. 51-5 (Fourth Broadcast Transcript) at 2-11.

62. The Fourth Broadcast included Dr. Amin's name on the screen during the broadcast.  Doc. 19 at Ex. E(ii) (video of Fourth Broadcast).

63. In the program "All In with Chris Hayes," on September 17, 2020 ("Fifth Broadcast"), NBCUniversal published additional statements included in Dr. Amin's complaint (Doc. 49) regarding Dr. Amin.  Doc. 51-6 (Fifth Broadcast Transcript) at 13-15.

64. The Fifth Broadcast included multiple pictures of Dr. Amin and the text of his name on screen during the broadcast.  Doc. 19 at Ex. F(ii) (video of Fifth Broadcast).

65. On the "All In with Chris Hayes" Twitter profile, on September 17, 2020 at 12:48 AM, NBCUniversal published the following Twitter post: "Learn more about the three women claiming they have received unnecessary hysterectomies here: on.msnbc.com/2FJlvra" ("First Twitter Post").  Ex. AA, Hayes Depo. 243:18-24, Ex. BB, Pl. Ex. 119 (text of First Twitter Post).

66. On the "All In with Chris Hayes" Twitter profile, on September 17, 2020 at 2:00 AM,

NBCUniversal published the following Twitter post: "Three women claim they received unnecessary hysterectomies at ICE facility. 'I felt like I had no right to say anything. Dr. Amin just told me, you're gonna get a hysterectomy done, and schedule an appointment for that. I had no say in this.' on.msnbc.com/2FJlvra" ("Second Twitter Post"). Ex. AA, Hayes Depo. 246:21-247:4; Ex. CC, Pl. Ex. 120 (text of Second Twitter Post). This Twitter post mentions Dr. Amin by name. Ex. CC, Pl. Ex. 120 (text of Second Twitter Post).

67. On the "All In with Chris Hayes" Facebook profile, on September 21, 2020, NBCUniversal published the following Facebook post: "Nurse Dawn Wooten alleges mass hysterectomies performed at Georgia facility: 'I had several detained women on numerous occasions that would come to me and say, 'Ms. Wooten, I had a hysterectomy. Why?' I had no answers as to why they had those procedures.'" Ex. DD, Pl. Ex. 121 (text of Facebook Post).

68. The Facebook Post links to the Second Broadcast, which referred to its earlier reporting regarding Dr. Amin, including the First Broadcast and the article published about which Julia Ainsley's reporting was allegedly based, both of which named Dr. Amin. Ex. CC, Pl. Ex. 121 (text of Facebook Post); Doc. 51-3 (Second Broadcast Transcript); Ex. DD, Pl. Ex. 105 (all versions of published article).

**G. Dr. Amin's Complaint and Motion for Summary Judgment**

69. Plaintiff's Amended Complaint, Doc. 49, alleges the following statements, ordered by appearance in the Complaint along with a status for the statements for which summary judgment is not sought:

11

| Complaint | Statement | Status, if Summary Judgment Not Sought |
|---|---|---|
| **First Broadcast: "Deadline: White House," September 15, 2020** | | |
| 75(a) | High numbers of female detainees, detained immigrants, at an ICE detention center in Georgia received questionable hysterectomies while in ICE custody. | |
| 75(c) | Women were afraid to go to this doctor. | Dismissed, Doc. 59 |
| 75(d) | Some said that they came back bruised and that he was overly harsh. | Not subject to summary judgment motion |
| 75(e) | They called him abusive. | Dismissed, Doc. 59 |
| 75(f) | There were women who were told that they needed a hysterectomy because they had cancer. One of those women, her medical records does not indicate that she ever had a biopsy to indicate that she had cancer and another case, a lawyer told me that his client had a hysterectomy because she was told she had stage four cervical cancer and after the hysterectomy when she went to the oncologist, the oncologist said you do not have cancer, so these are alarming allegations about this doctor. | |
| 75(g) | This is his specialty, he's the uterus collector. | |
| 75(h) | Well, what is he doing . . . collecting all of our uteruses? | |
| 75(i) | Our clients are afraid to go back to him; he's hurting these women. | Dismissed, Doc. 59 |
| 75(j) | And perhaps doing very unnecessary procedures and not what you would need in a short-term detention situation. | |
| 76 | [Headline on screen] High number of hysterectomies at ICE Detention Ctr. | |
| **Second Broadcast: "All In with Chris Hayes," September 15, 2020** | | |
| 78(f) | Migrant women say that a doctor was performing unauthorized hysterectomies on immigrant women detained at that facility. | |
| 78(g) | Two of his clients received hysterectomies they believe may have been unnecessary. | |
| 78(h) | Two different women who claim they also had unnecessary hysterectomies while detained at this facility. | |
| 78(i) | As many as 15 immigrant women were given full or partial hysterectomies or other procedures for which no medical indication existed. | |
| 78(j) | Is he the uterus collector? Does he collect uteruses? | |

12

| | | |
|---|---|---|
| 78(k) | Everyone that I talked to has had a hysterectomy. | |
| 78(l) | They would say is he the uterus collector? | |
| 79 | [Headline on screen] Mass hysterectomies performed on women at ICE facility | |
| **Third Broadcast: "All In with Chris Hayes," September 16, 2020** | | |
| 81(a) | They were subjected to unnecessary hysterectomies at the hands of a local OB/GYN. | Dismissed, Doc. 59 |
| 81(b) | Uterus collector. | Dismissed, Doc. 59 |
| 81(c) | Three women who say that they had procedures that they either did not consent to ahead of time or felt coerced into consenting to. | Dismissed, Doc. 59 |
| 81(d) | She felt pressured into a full abdominal hysterectomy by this doctor. | Dismissed, Doc. 59 |
| 81(e) | Dr. Amin just told me listen, you're gonna get hysterectomy done and schedule an appointment for that; I had no say in this. | Dismissed, Doc. 59 |
| **Fourth Broadcast: "The Rachel Maddow Show," September 15, 2020** | | |
| 84(a) | Immigrant women at that facility have told her that they routinely have been sent to a gynecologist who has performed unnecessary procedures on them, including hysterectomies. | |
| 84(b) | They have been sending immigrant women in their care, in their custody, to a doctor who has removed their reproductive organs for no medical reason and without them consenting to it. | |
| 84(c) | Five different women between October, November, and December 2019, over that three-month period, five different women who'd had a hysterectomy done. | |
| 84(d) | I thought this was like an experimental concentration camp.  It was like they're experimenting with our bodies. | |
| 84(e) | Everybody this doctor sees has a hysterectomy, just about everybody. | |
| 84(f) | He's even taken out the wrong ovary on one detained immigrant woman.  She was supposed to get her left ovary removed because it had a cyst on the left ovary.  He took out the right one.  She had to go back to take out the left and wound up with a total hysterectomy. | |
| 84(g) | He's taking everybody stuff out, that's his specialty. | |
| 84(h) | He's the uterus collector. | |
| 84(i) | Is he collecting these things or something? | |

13

| | | |
|---|---|---|
| 84(j) | Everybody he sees he's taking all their uteruses out or he's taking their tubes out. | |
| 84(k) | He removed the uteruses of these refugee women for no medical reason, without their proper informed consent. | |
| 84(l) | Two women who were detained at the facility say they received hysterectomies that they believe may have been unnecessary. | |
| 84(m) | She went to this doctor's office for an exam. The exam left her with bruising. | Not subject to summary judgment motion |
| **Fifth Broadcast: "All In with Chris Hayes," September 17, 2020** | | |
| 86(a) | We've been bringing you the story of allegations of medical procedures performed on immigrant women without—many without consent at an ICE detention facility in Georgia. | |
| 86(b) | Felt like I had no right to say anything about a hysterectomy she underwent that was performed by a doctor named Mahendra Amin. She also told us about how Dr. Amin performed an unexpected vaginal ultrasound that she was, she says, not prepared for. | Dismissed, Doc. 59 |
| 86(c) | He didn't tell me nothing, he just—instead he proceeded with vaginal ultrasound, I think. Am I saying it right? But I was not aware of that. | Dismissed, Doc. 59 |
| 86(d) | No, not at all [I was not prepared for that]. No. So I felt violated. And just, you know, keep doing the procedures, the ultrasound. | Dismissed, Doc. 59 |
| **Social Media Posts: First Twitter Post, Second Twitter Post, Facebook Post** | | |
| 89 | Learn more about the three women claiming they have received unnecessary hysterectomies here: on.msnbc.com/2FJlvra. | |
| 89 | Three women claim they received unnecessary hysterectomies at ICE facility. "I felt like I had no right to say anything. Dr. Amin just told me, you're gonna get a hysterectomy done, and schedule an appointment for that. I had no say on this. on.msnbc.com/2FJlvra | |
| 89 | Nurse Dawn Wooten alleges mass hysterectomies performed at Georgia facilities: "I had several detained women on numerous occasions that would come to me and say, 'Ms. Wooten, I had a hysterectomy. Why?' I had no answers as to why they had those procedures." | |

Doc. 49; Doc. 59 ("Statements").

H. **Fallout from NBCUniversal's Defamatory Statements**

70. After NBCUniversal's publications, Dr. Amin began to receive harassment, including phone calls threatening to come to Douglas and kill him and his family, for which he would check that the doors were locked and that his family members were safe. Ex. B, Amin Depo. 257:22-258:23.

71. Because of the harassment and abuse he suffered from NBCUniversal's publications, Dr. Amin was unable to sleep and was "miserable, mentally, emotionally." Ex. B, Amin Depo. 259:5-7.

72. After NBCUniversal's publications, Dr. Amin lost patients. Ex. B, Amin Depo. 290:8.

73. After NBCUniversal's publications, Dr. Amin's practice lost "at least over a hundred" patients (aside from the women who were detained by ICE at ICDC). Ex. F, Arceo Depo. 110:2-14.

74. After NBCUniversal's publications, Dr. Amin's office received "hundreds and hundreds of calls daily" after NBCUniversal's publications, which upset Dr. Amin and his employees. Ex. F, Arceo Depo. 60:7-17.

75. After NBCUniversal's publications, Dr. Amin was depressed and "bottomed . . . down." Ex. D, Nito Depo. 142:17-23.

II. **CONCLUSIONS OF LAW THEREOF**

1. Dr. Amin is due summary judgment on the "falsity" element of Georgia defamation law because there is no genuine issue of material fact in dispute: the Statements are false.

2. Dr. Amin is due summary judgment on the "defamatory" element of Georgia defamation law because there is no genuine issue of material fact in dispute: the Statements are defamatory.

3. Dr. Amin is due summary judgment on the "of and concerning" element of Georgia defamation law because there is no genuine issue of material fact in dispute: the Statements are "of and concerning" Dr. Amin.

4. Dr. Amin is due summary judgment on the "publication" element of Georgia defamation law because there is no genuine issue of material fact in dispute: NBCUniversal communicated the Statements to third parties by publishing them on broadcasts and social media.

5. Dr. Amin is due summary judgment on the "actionable even in the absence of special harm" element of Georgia defamation law because there is no genuine issue of material fact in dispute: the Statements make charges against Dr. Amin in his trade, office, or profession and imputed to him a crime punishable by law.

6. Dr. Amin is due summary judgment on NBCUniversal's First Affirmative Defense because there is no genuine issue of material fact in dispute: Dr. Amin's Complaint (Doc. 49) states a claim for which relief may be granted.

7. Dr. Amin is due summary judgment on NBCUniversal's Third Affirmative Defense because there is no genuine issue of material fact in dispute: New York law does not apply in this case, and accordingly New York Civil Rights Law Section 76-a(2) does not apply.

8. Dr. Amin is due summary judgment on NBCUniversal's Fourth Affirmative Defense because there is no genuine issue of material fact in dispute: New York law does not apply in this case, and accordingly New York Civil Rights Law Section 74 does not apply.

9. Dr. Amin is due summary judgment on NBCUniversal's Seventh Affirmative Defense

because there is no genuine issue of material fact in dispute: the Statements are false and accordingly are not "true or substantially true."

10. Dr. Amin is due summary judgment on NBCUniversal's Eleventh Affirmative Defense because there is no genuine issue of material fact in dispute: the Statements are not non-actionable opinion.

11. Dr. Amin is due summary judgment on NBCUniversal's Twelfth Affirmative Defense because there is no genuine issue of material fact in dispute: the Statements make charges against Dr. Amin in his trade, office, or profession and imputed to him a crime punishable by law, and accordingly even if NBCUniversal could establish that Dr. Amin suffered no "actual harm or damages proximately caused by any of the challenged statements," which it cannot, Dr. Amin's defamation claim would not be barred.

Respectfully submitted this 19th day of December 2023.

*/s/ Stacey G. Evans*
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com
Tiffany N. Watkins
Georgia Bar No. 228805
twatkins@staceyevanslaw.com
J. Amble Johnson
Georgia Bar No. 229112
ajohnson@staceyevanslaw.com

STACEY EVANS LAW
4200 Northside Parkway NW
Bldg One; Suite 200
Atlanta, GA 30327
(770) 779-9602 (phone)
(404) 393-2828 (fax)

*Counsel for Plaintiff*

Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com

CHILIVIS GRUBMAN
DALBEY & WARNER LLP
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS NO GENUINE DISPUTE TO BE TRIED AND CONCLUSIONS OF LAW THEREOF** will be served upon all attorneys in this matter by filing with the Court's CM/ECF system.

This 19th day of December 2023.

*/s/ Stacey G. Evans*
Stacey G. Evans