UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

DR. MAHENDRA AMIN, M.D.,

Plaintiff,

v.

NBCUNIVERSAL MEDIA, LLC,

Defendant.

Case No. 5:21-CV-00056-LGW-BWC

**PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF TED ANDERSON**

NBCUniversal disclosed, but did not retain, Dr. Ted Anderson as a purported rebuttal expert witness even though he has never reviewed the expert reports he is to rebut. Dr. Anderson's "opinions" are memorialized in a Zoom statement he gave to politicians urging them to investigate further and in an "executive summary" of findings that he did not write. None of his opinions are provided to a reasonable degree of medical certainty. His expert opinions are based on his review of limited documents that are admittedly lacking medical records germane to the medical treatments on which NBCUniversal offers him to provide opinions [REDACTED] [REDACTED]. For all these reasons, Dr. Anderson's opinions should be excluded as unreliable. Dr. Anderson's opinions should also be excluded because they are not helpful to the trier of fact and are beyond the scope of a rebuttal expert witness.[1]

**BACKGROUND**

In this case, Dr. Amin alleges that NBCUniversal defamed him by falsely publishing

[1] In a separate motion, Dr. Amin moves for the Court to exclude the testimony of Dr. Erin Carey, the only other expert NBCUniversal attempts to identify.

statements that he performed "mass" hysterectomies and "performed large numbers of unnecessary hysterectomies on immigrant women detained" by United States Immigration and Customs Enforcement (ICE) at the Irwin County Detention Center (ICDC), for whom he provided gynecological medical care, among other false and defamatory statements. Doc. 59 at 2. Several of the statements that Dr. Amin alleges defamed him also included that such patients left his treatment "bruised and that he was overly harsh," and sometimes used the generic term "procedures," that in context referred to hysterectomies, but that NBCUniversal seems to attempt to turn into standalone statements. *See, e.g.*, *id*. at 59. Regardless, all the statements at issue in the case are false and defamatory.

Dr. Amin's complaint having survived NBCUniversal's motion for judgment on the pleadings, *see generally id*., the parties have largely[2] completed discovery, which has confirmed what ICE told NBCUniversal on the first day of its reporting: that Dr. Amin, in fact, only performed two hysterectomies; and both hysterectomies were authorized and performed with consent rather than forced, as were other procedures Dr. Amin performed during his treatment of women detained by ICE at ICDC.[3]

Dr. Amin enlisted two experts, Dr. Lauren Hamilton and Dr. Eldridge Bills, to review the medical records of the patients who received hysterectomies (B.P. and K.C.) and provide opinions regarding the medical necessity of those hysterectomies. *See* Ex. 2, Letter "Plaintiff's Service of Expert Witness Disclosures" (Sept. 5, 2023), at 2, 6, 9, 16-17. And Dr. Bills further

[2] On November 28, 2023, the Court granted in part Dr. Amin's motion to compel, ordering NBCUniversal to search for and produce documents responsive to three of Dr. Amin's requests for production of documents within 30 days of the order. Further, an attorney who served as a source for NBCUniversal's reporting moved to quash her subpoena for deposition, and her motion remains pending. *See Amin v. NBCUniversal, movant Azadeh Shahshahani*, Motion to Quash Subpoena, Case No. 5:23-mc-00002 (S.D. Ga. Sept. 9, 2023). A motion for protective order regarding the deposition of Cynthia Counts also remains pending. Doc. 112.

[3] Accordingly, Dr. Amin has moved for summary judgment on several portions of his defamation claim.

reviewed the medical records of additional patients of Dr. Amin who were detained by ICE at ICDC to opine on "medical appropriateness" and the existence of any "unnecessary medical procedures performed on Dr. Amin's patients." *Id*. at 2, 16-17. Both of Dr. Amin's experts were identified by the Court's deadline to identify expert witnesses (September 5, 2023). Both of Dr. Amin's experts were identified by the Court's deadline to identify expert witnesses (September 5, 2023). *See* Doc. 80 at 2 (Scheduling Order).[4]

NBCUniversal did not identify any expert witnesses by the initial expert witness disclosure deadline. The parties agreed that NBCUniversal could identify rebuttal experts by September 19, 2023 and that Dr. Amin could identify reply experts by October 3, 2023. Ex. 1, Declaration of Stacey G. Evans (Dec. 19, 2023), ¶ 2. NBCUniversal identified Dr. Erin Carey and Dr. Ted Anderson as rebuttal experts. *See* Ex. 3, Letter "Defendant's Rebuttal Expert Witness Reports" (Sept. 19, 2023), at 2. While Dr. Carey was retained by NBCUniversal, Dr. Ted Anderson was not and is a third-party witness not voluntarily serving as an expert witness for either party.

On October 3, 2023, Dr. Amin provided NBCUniversal its experts' reply opinions. Ex. 4, Plaintiff's Service of Expert Witness Reply Disclosures (Oct. 3, 2023).

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides that qualified witnesses may testify in the form of an opinion, but only if several conditions are met. Rule 702 "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert" scientific or technical evidence. *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 590 n.7 (1993); *Kumho Tire Co. Ltd. v. Carmichael*, 526

[4] September 4, 2023, the deadline stated in the Scheduling Order, Doc. 80 at 2, was Labor Day.

U.S. 137, 147 (1999)). The objective of the gatekeeping function "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. "Determining the admissibility of expert testimony is a necessarily fact-laden endeavor." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 857 (11th Cir. 2021) (citation omitted).

In the Eleventh Circuit, as this Court has stated, "a party seeking to proffer expert testimony under Rule 702 must satisfy a three-part inquiry that evaluates whether"

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*U.S. v. Aegis Therapies, Inc.*, Case No. 2:10-cv-75, 2015 WL 1541491, at *5 (S.D. Ga. Mar. 31, 2015) (quoting *Frazier*, 387 F.3d at 1260).

Federal Rule of Civil Procedure 26(a)(2)(D) requires that an expert be disclosed "at the times and in the sequence that the court orders." Where a court is silent as to deadlines, an expert whose testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under" expert disclosures may be disclosed "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). An expert witness who "is one retained or specially employed to provide expert testimony in the case" must provide a written report, including all opinions she will express and the basis and reasons for them. Fed. R. Civ. P. 26(a)(2)(B). Other expert witnesses' disclosures, like Dr. Anderson, must state the subject matter on which the expert is expected to present evidence and a summary of the facts

and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

## ARGUMENT

Dr. Anderson's opinions are not "sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*" and do not assist "the trier of fact . . . to determine a fact in issue." *Aegis*, 2015 WL 1541491, at *5 (citation omitted). Further, Dr. Anderson was not disclosed by the initial expert disclosure deadline and did not review the expert reports of either Dr. Bills or Dr. Hamilton and so could not possibly qualify as a rebuttal expert.

### I. Dr. Anderson's Opinions are Not Reliable Because They are Not Grounded in an Appropriate Methodology.

"When evaluating the reliability of scientific expert opinion, the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts of the case." *Frazier*, 387 F.3d at 1261-62 (quotation marks omitted). "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *Id*. at 1262 (citing Fed. R. Evid. 702 advisory committee's note (2000 amends.)) (emphasis in original). Expert testimony has a reliable reasoning or methodology if it "rests on a reliable foundation." *Id*. at 1261 (quoting *Daubert*, 509 U.S. at 597). Though not an exhaustive list, courts should consider whether an expert's methodology is capable of being tested and whether the expert relied on anecdotal evidence or improper extrapolation. *See*, *e.g.*, *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004).

Dr. Anderson's opinions are not reliable to rebut Dr. Bills and Dr. Hamilton's opinions for at least four reasons. First, Dr. Anderson has never reviewed the opinions he is offered to rebut. Second, the documents NBCUniversal attaches as Dr. Anderson's "expert report" are no such thing; they are unsigned, unsworn, and include a document that he did not write [REDACTED]. [REDACTED] [REDACTED] Third, none of Dr. Anderson's "opinions" are offered to a reasonable degree of medical certainty. Fourth, NBCUniversal claims Dr. Anderson will opine on medical treatments for patients for whom he admits he has incomplete medical records [REDACTED] The opinions for which NBCUniversal offers Dr. Anderson as a rebuttal expert simply do not rest on a reliable foundation.

First, Dr. Anderson's opinions cannot constitute a reliable rebuttal to Dr. Amin's expert witnesses because the statements he offered predate Dr. Amin's experts' reports and Dr. Anderson never read the opinions he will allegedly rebut. In its Rebuttal Expert Witness Disclosures, NBCUniversal attached a three-page statement read by Zoom that was submitted to Senate Democrats dated October 26, 2020, and unsigned ("Zoom Statement"), and a five-page "executive summary of findings" dated October 21, 2020, also unsigned ("Executive Summary"). Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 123-33. Thus, Dr. Anderson's "opinions" were made in 2020 and the opinions he is allegedly rebutting were identified in this case three years later. *See* Ex. 2, Plaintiff's Expert Witness Disclosures (dated September 5, 2023).

[REDACTED].

[redacted] It is axiomatic that an expert cannot rebut an opinion he has not reviewed. *YETI Coolers, Inc. v. RTIC Coolers, Inc.*, Case No. A-15-CV-597-RP, 2017 WL 394511, at *2 (W.D. Tex. Jan. 27, 2017) ("Dr. Erdem's expert report is plainly not a rebuttal report. First, Dr. Erdem's report does not attempt to rebut any of YETI's experts. It is undisputed that Dr. Erdem did not review any YETI expert reports before preparing her own report and admitted during her deposition that 'I'm not rebutting anybody.'"); *Foster v. USIC Locating Servs., LLC*, Case No. 16-2174-CM, 2018 WL 4003354, at *2 (D. Kan. Aug. 17, 2018) ("And Smith himself confirms that he was not a rebuttal expert. Smith stated that he did not receive or review reports from other experts in this case and testified in a deposition that [sic] did not believe he was a rebuttal witness or was aware of any testimony he was rebutting.").

Second, the documents NBCUniversal characterizes as Dr. Anderson's "report" are no such thing; they are the Executive Summary prepared by an attorney and the Zoom Statement Dr. Anderson provided to politicians to urge them to undertake additional investigation. Although NBCUniversal attempts to style the Executive Summary and Zoom Statement as "testimony," Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 2, in reality the documents lacked any such formality. The Zoom Statement itself states that this "testimony" was "submitted for closed briefing of the Senate Democratic Caucus." *Id.* at 124-27. It is not signed and does not indicate that Dr. Anderson was sworn in, *id.* [redacted]

Likewise, the Executive Summary is not signed by Dr. Anderson and ***indeed was not even his work***. Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 129-33. [redacted]

---

[5] The deadline for errata for Dr. Anderson's deposition has not yet occurred. Ex. 1, Declaration of Stacey G. Evans (Dec. 19, 2023), ¶ 7.

[redacted] And bullet points of the Executive Summary itself are titled, "Findings of the Independent Review Team," of which Dr. Anderson was one of 11 medical providers—not "findings of Dr. Anderson." Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 129.[redacted]

Third, nothing in the Executive Summary or Zoom Statement purported to advance any opinion provided to a reasonable degree of medical certainty. The medical community would not accept such opinions, and neither should such opinions be proffered to a jury. *See Kumho Tire*, 526 U.S. at 152 ("The objection of [*Daubert's* gatekeeping requirement] is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"). The Zoom Statement also includes language foreign to any legitimate expert opinion: that any other medical records later provided to him "will not alter, much less negate the opinions currently expressed." Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 126. Such language is the antithesis of a testable opinion, which is necessary for reliability. *See, e.g.*, *McDowell*, 392 F.3d at 1298 (identifying "factors" for reliability under *Daubert* that include "reliance on anecdotal evidence (as in case reports)"). If no information could possibly disprove an opinion, then it must be anecdotal; thus, again, unreliable.

In reality, the Executive Summary and Zoom Statement were not expert conclusions [redacted]

---

[redacted]

[redacted] Such pedestrian information should not pass for expert opinion on whether medical treatments in this case were medically necessary.

Fourth, the preliminary nature of the information advanced in the documents makes sense, because it was not based on examinations, treatment of patients, or review of Dr. Amin's complete medical records for patients, but rather was based only on "the [incomplete] records of 19 women who have brought forth complaints regarding their gynecologic care while at the detention center." Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 125, 129. [redacted] As the Executive Summary and Zoom Statement provide, the records were "limited by production from the facility" and "incomplete." Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 129. Accordingly, the conclusions in the Executive Summary and Zoom Statement are not based

on the patients' complete medical records and should be excluded. *See, e.g.*, *Gov't Employees Ins. Co. v. Jacobson*, Case No. 15-CV-07236 (ERK) (RML), 2021 WL 2589717, at *9-10 (E.D.N.Y. June 24, 2021) (excluding expert pursuant to *Daubert* when the expert testified regarding medical procedures and billing thereon without reviewing the medical records).

[redacted]

---

[redacted]

In sum, the Executive Summary and Zoom Statement that NBCUniversal identified as Dr. Anderson's "expert rebuttal report" do not rebut anything, were preliminary and designed to initiate additional action by legal advocates, are based on limited documents and not examination of the pertinent patients or even any patients' whole medical records, and do not purport to make overall conclusions about Dr. Amin's treatment of women detained by ICE at ICDC aside from the records in possession of the legal advocates. Indeed, the executive summary was written by an attorney and not a medical professional, and did not share any opinion stated to a reasonable degree of medical certainty. Accordingly, it cannot be said that "the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*," and the testimony should be excluded. *Aegis*, 2015 WL 1541491, at *5 (quoting *Frazier*, 387 F.3d at 1260).

## II. Dr. Anderson's Opinions Do Not Assist the Trier of Fact to Determine a Fact in Issue.

Dr. Anderson's opinions do not assist the trier of fact to determine any fact at issue in the case. The question at issue in this defamation case is whether women detained by ICE at ICDC received forced, unconsented to, unnecessary, and/or unauthorized hysterectomies in high numbers. Even under NBCUniversal's attempt to rewrite its reporting after the fact to pretend "procedures" are something other than hysterectomies, the relevant question would be whether Dr. Amin performed unnecessary procedures. But Dr. Anderson does not offer opinions on those questions. [REDACTED] This does not assist the trier of fact.

Dr. Anderson reviewed medical records for only one patient who received a hysterectomy (B.P.). [redacted]

Although the Executive Summary attacked Dr. Amin's recommendation that two patients have hysterectomies, neither of those patients actually had a hysterectomy, which demonstrates that patients were not, as NBCUniversal published, "forced" to undergo hysterectomies. Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 131. Accordingly, those opinions do not "logically advance a material aspect of" the case and should be excluded. *Kennedy v. Elec. Ins. Co.*, Case No. CV 4:18-148, 2019 WL 2090776, at *4 (S.D. Ga. May 13, 2019) (citing *Frazier*, 387 F.3d at 1262). Likewise, the Executive Summary's issues with patients being referred to Dr. Amin for non-gynecological complaints, in addition to being incorrect, do not relate to NBCUniversal's defamatory statements about Dr. Amin. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

While the Executive Summary, which again was not written by Dr. Anderson, and Zoom Statement contain statements on "informed consent," they refer only to whether informed consent forms were present (and incorrectly state they were not). Whether hysterectomies were performed without a consent form in a patient's file is capable of being determined by a factfinder without the application of scientific, technical, or specialized expertise. In other words, whether Dr. Amin obtained forms documenting the consent of patients receiving hysterectomies and other procedures is an issue of fact that does not require any specialized knowledge. Accordingly, Dr. Anderson's (mistaken) opinion that such forms are not present is not helpful for the jury to determine whether Dr. Amin performed hysterectomies on women

detained by ICE at ICDC without consent or authorization or were forced. The opinions should be excluded. *See, e.g.*, *Frazier*, 387 F.3d at 1262-63 ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." (citation omitted)).

Similarly, the Executive Summary and Zoom Statement state general conclusions, such as that the (limited) medical records lack "demonstration of medical necessity" and show "aggressive procedures." Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 130. Such conclusions are disputed by Dr. Amin's experts. *See generally* Ex. 4, Plaintiff's Expert Witness Reply Disclosures. But such conclusions are also simply not at issue in this case, in which NBCUniversal accused Dr. Amin of performing high numbers of forced, unnecessary, unauthorized, and/or unconsented to hysterectomies.

Dr. Anderson also states that ICDC provided incomplete records and that ICDC failed to provide treatment for patients' non-gynecological health conditions. *See, e.g.*, Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 126, 129-30, 132. These opinions do not shed light on Dr. Amin's treatment of women detained by ICE at ICDC at all. These opinions are about ICDC, and perhaps ICE, but not Dr. Amin. Allegations not regarding Dr. Amin, of course, do not shed light on Dr. Amin's treatment of women detained by ICE at ICDC. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). Accordingly, those opinions do not "logically advance a material aspect of" the case and should be excluded pursuant to the "helpfulness" prong of the *Daubert* inquiry. *Kennedy v. Elec. Ins. Co.*, Case No. CV 4:18-148, 2019 WL 2090776, at *4 (S.D. Ga. May 13, 2019) (citing *Frazier*, 387 F.3d at 1262).

**III. Dr. Anderson is Offered as a Rebuttal Expert and Any Opinions Not Responding to Dr. Amin's Experts' Opinions Should Be Excluded.**

As discussed above, NBCUniversal identified Dr. Anderson as a "rebuttal witness," not as an initial expert. Accordingly, Dr. Anderson's testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by" Dr. Amin's experts. Fed. R. Civ. P. 26(a)(2)(D)(ii). "A rebuttal expert witness's testimony is permitted under Rule 26 only if it contradicts or rebuts evidence on the same subject matter identified by an opposing expert. A rebuttal witness cannot advance new arguments or new evidence." *Romano v. John Hancock Life Ins. Co.*, Case No. 19-21147-CIV-GOODMAN, 2022 WL 1447733, at *29 (S.D. Fla. May 9, 2022) (quotation marks and some punctuation marks omitted). Therefore, the Court should prohibit the witnesses from offering testimony exceeding the scope of rebuttal of Dr. Amin's experts. *See, e.g.*, *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 18 (D.D.C. 2013) ("Where a party attempts to designate as a 'rebuttal' expert someone whose proposed testimony is beyond the scope of appropriate rebuttal, that witness may be viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court for violating Rule 26(a) and the Court's governing scheduling order." (citation omitted)).

Dr. Amin's experts offer opinions on the medical necessity of the two hysterectomies that he performed; and Dr. Bills further opines on existence of "unnecessary medical procedures performed" based on a review of "the medical records of 69 individual patients," from which he concluded that "Dr. Amin has been providing appropriate care to this high-risk indigent population and has not performed any unnecessary medical procedures." Ex. 2, Plaintiff's Service of Expert Witness Reports, at 2, 6-10, 16-17. But Dr. Anderson's "report," which, as discussed above, is not an expert report at all but rather the summation of a dialog between advocates and medical providers and a statement he read over Zoom, includes opinions such as

"the possible complicity of ICDC in a pattern of abuse by a contracting gynecologist" and that "none of the women appear to have received informed consent." These are not rebuttals to any opinions advanced by Dr. Amin's experts. Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 124-33. Indeed, the rebuttal "report" is dated nearly three years prior to the report of Dr. Bills to which NBCUniversal offers it to rebut.

Because topics included in NBCUniversal's "rebuttal expert witness reports" are outside of the scope of the subject matter identified by Dr. Amin's experts, and because the witnesses are offered only to rebut Dr. Amin's expert witnesses, the Court should order that Dr. Anderson may not offer such opinions at trial or in support of a motion for summary judgment. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). The testimony of NBCUniversal's rebuttal expert witnesses should be limited to rebuttal testimony.

**CONCLUSION**

Dr. Anderson's opinions are not the product of a methodology sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* to assist a factfinder, and they would not assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Dr. Amin respectfully requests the Court exclude him from testifying. In any event, because NBCUniversal identified Dr. Anderson only as a rebuttal expert to Dr. Amin's identified expert witnesses, his testimony should be excluded because he did not review or respond to Dr. Amin's experts' reports. Separately, Dr. Anderson's opinions for which Dr. Amin's experts are not offering opinions should be excluded, namely

including "the possible complicity of ICDC in a pattern of abuse by a contracting gynecologist" and that "none of the women appear to have received informed consent."

Respectfully submitted this 19th day of December 2023.

***/s/ Stacey G. Evans***
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com
Tiffany N. Watkins
Georgia Bar No. 228805
twatkins@staceyevanslaw.com
J. Amble Johnson
Georgia Bar No. 229112
ajohnson@staceyevanslaw.com

STACEY EVANS LAW
4200 Northside Parkway NW
Bldg One; Suite 200
Atlanta, GA 30327
(770) 779-9602 (phone)
(404) 393-2828 (fax)

Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com

CHILIVIS GRUBMAN
DALBEY & WARNER LLP
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. TED ANDERSON** will be served upon all attorneys in this matter by filing with the Court's CM/ECF system.

This 19th day of December 2023.

***/s/ Stacey G. Evans***
Stacey G. Evans