UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 5:21-CV-00056-LGW-BWC ) ) |
| NBCUNIVERSAL MEDIA, LLC, | ) ) |
| Defendant. | ) |

## PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF ERIN CAREY

In this defamation case, Dr. Amin must prove that statements regarding his medical care of detainee patients were false. In addition to his own testimony as the treating physician, Dr. Amin has retained and identified two experts to offer opinions that his hysterectomies and other procedures were medically necessary. In response, NBCUniversal retained and identified Dr. Erin Carey as a rebuttal expert witness, who agrees with Dr. Mahendra Amin's disclosed experts (and the other expert NBCUniversal purports to identify) that the patients who received hysterectomies from Dr. Amin needed hysterectomies. Although reaching the right conclusion on this critical issue in the case, Dr. Carey's opinions should be excluded because she uses no reliable methodology; offers opinions that have nothing to do with the truth or falsity of the statements at issue in the case, making her opinions unhelpful to the trier of fact; and fails to actually rebut anything.

First, Dr. Carey's opinions should be excluded because she uses no reliable methodology. Dr. Carey opines about "patterns of surgical aggressiveness," yet did not implement any methodology for claiming such a "pattern." She does not know the total number of patients for whom Dr. Amin provided gynecological medical care and does not know how many patients he

treated who never had any surgeries, making it impossible for her to opine on any supposed "patterns." Dr. Carey further applies an indecipherable methodology for determining the existence of informed consent that is likewise unreliable.

Second, Dr. Carey's opinions should be excluded because they will not assist the trier of fact on any issue of fact in the case. Dr. Carey offers opinions that have nothing to do with the truth or falsity of any statement at issue in the case.

Third, Dr. Carey's opinions should be excluded because while offered as "rebuttal opinions," they do not rebut any opinion put forth by Dr. Amin's experts. Though purportedly identified to rebut Dr. Amin's experts' opinions that all hysterectomies and other procedures he performed were medically necessary, she does not identify a single patient who received an unnecessary procedure (hysterectomy or otherwise) and as stated above, agrees with Dr. Amin's experts that the patients who received hysterectomies from Dr. Amin needed them.

Dr. Amin respectfully requests that the Court preclude NBCUniversal from introducing the purported expert opinion testimony of Dr. Erin Carey.[1]

## BACKGROUND

In this case, Dr. Amin alleges that NBCUniversal defamed him by falsely publishing statements that he performed "mass" hysterectomies and "performed large numbers of unnecessary hysterectomies on immigrant women detained" by United States Immigration and Customs Enforcement (ICE) at the Irwin County Detention Center (ICDC), for whom he provided gynecological medical care, among other false and defamatory statements. Doc. 49; Doc. 59 at 2. Several of the statements that Dr. Amin alleges defamed him also included that such patients left his treatment "bruised and that he was overly harsh," and sometimes used the

---

[1] In a separate motion, Dr. Amin moves for the Court to exclude the purported expert rebuttal testimony of Dr. Ted Anderson, the only other expert NBCUniversal attempts to identify.

2

generic term "procedures," that in context referred to hysterectomies, but that NBCUniversal seems to attempt to turn into standalone statements. *See, e.g.*, *id*. at 59. Regardless, all the statements at issue in the case are false and defamatory.

Dr. Amin's complaint having survived NBCUniversal's motion for judgment on the pleadings, *see generally id*., the parties have largely[2] completed discovery, which has confirmed what ICE told NBCUniversal on the first day of its reporting: that Dr. Amin, in fact, only performed two hysterectomies; and both hysterectomies were authorized and performed with consent rather than forced, as were other procedures Dr. Amin performed during his treatment of women detained by ICE at ICDC.[3]

Dr. Amin enlisted two experts, Dr. Lauren Hamilton and Dr. Eldridge Bills, to review the medical records of the patients who received hysterectomies (B.P. and K.C.) and provide opinions regarding the medical necessity of those hysterectomies. *See* Ex. 2, Letter "Plaintiff's Service of Expert Witness Disclosures" (Sept. 5, 2023), at 2, 6, 9, 16-17. And Dr. Bills further reviewed the medical records of additional patients of Dr. Amin who were detained by ICE at ICDC to opine on "medical appropriateness" and the existence of any "unnecessary medical procedures performed." *Id*. at 2, 16-17. Both of Dr. Amin's experts were identified by the Court's deadline to identify expert witnesses (September 5, 2023). *See* Doc. 80 at 2 (Scheduling Order).[4]

---

[2] On November 28, 2023, the Court granted in part Dr. Amin's motion to compel, ordering NBCUniversal to search for and produce documents responsive to three of Dr. Amin's requests for production of documents within 30 days of the order. Further, an attorney who served as a source for NBCUniversal's reporting moved to quash her subpoena for deposition, and her motion remains pending. *See Amin v. NBCUniversal, movant Azadeh Shahshahani*, Motion to Quash Subpoena, Case No. 5:23-mc-00002 (S.D. Ga. Sept. 9, 2023). A motion for protective order regarding the deposition of Cynthia Counts also remains pending. Doc. 112.

[3] Accordingly, Dr. Amin has moved for summary judgment as to several elements of his defamation claim.

[4] September 4, 2023, the deadline stated in the Scheduling Order, Doc. 80 at 2, was Labor Day.

3

NBCUniversal did not identify any expert witnesses by the initial expert witness disclosure deadline.  The parties agreed that NBCUniversal could identify rebuttal experts by September 19, 2023 and that Dr. Amin could identify reply experts by October 3, 2023.  Ex. 1, Declaration of Stacey G. Evans (Dec. 18, 2023), ¶ 2.  NBCUniversal identified Dr. Erin Carey and Dr. Ted Anderson as rebuttal experts.  *See* Ex. 3, Defendant's Rebuttal Expert Witness Disclosures (Sept. 19, 2023), at 2.  While Dr. Carey was retained by NBCUniversal, Dr. Ted Anderson was not and is a third-party witness not voluntarily serving as an expert witness for either party.

On October 3, 2023, Dr. Amin provided NBCUniversal its experts' reply opinions.  Ex. 4, Plaintiff's Service of Expert Witness Reply Disclosures (Oct. 3, 2023).

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides that qualified witnesses may testify in the form of an opinion, but only if several conditions are met.  Rule 702 "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert" scientific or technical evidence.  *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 590 n.7 (1993); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).  The objective of the gatekeeping function "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire*, 526 U.S. at 152.  "Determining the admissibility of expert testimony is a necessarily fact-laden endeavor."  *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 857 (11th Cir. 2021) (citation omitted).

In the Eleventh Circuit, as this Court has stated, "a party seeking to proffer expert

testimony under Rule 702 must satisfy a three-part inquiry that evaluates whether"

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*U.S. v. Aegis Therapies, Inc.*, Case No. 2:10-cv-75, 2015 WL 1541491, at *5 (S.D. Ga. Mar. 31, 2015) (quoting *Frazier*, 387 F.3d at 1260).

Federal Rule of Civil Procedure 26(a)(2)(D) requires that an expert be disclosed "at the times and in the sequence that the court orders."  Where a court is silent as to deadlines, an expert whose testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under" expert disclosures may be disclosed "within 30 days after the other party's disclosure."  Fed. R. Civ. P. 26(a)(2)(D)(ii).  An expert witness, like Dr. Carey, who "is one retained or specially employed to provide expert testimony in the case" must provide a written report, including all opinions she will express and the basis and reasons for them.  Fed. R. Civ. P. 26(a)(2)(B).  Other expert witnesses' disclosures must state the subject matter on which the expert is expected to present evidence and a summary of the facts and opinions to which the witness is expected to testify.  Fed. R. Civ. P. 26(a)(2)(C).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

## ARGUMENT

Dr. Carey's opinions, including those contradicting or rebutting Dr. Amin's expert witnesses' identified opinions, are not "sufficiently reliable as determined by the sort of inquiry

5

mandated in *Daubert*" and do not assist "the trier of fact . . . to determine a fact in issue." *Aegis*, 2015 WL 1541491, at *5 (citation omitted).  They should be excluded.  Further, Dr. Carey's opinions that do not rebut or contradict Dr. Bills or Dr. Hamilton's opinions should be excluded because she is offered only as a rebuttal expert.

> **I.     Dr. Carey's Opinions Are Not Reliable Because They are Not Grounded in an Appropriate Methodology.**

"When evaluating the reliability of scientific expert opinion, the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts of the case." *Frazier*, 387 F.3d at 1261-62 (quotation marks omitted).  "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *Id*. at 1262 (citing Fed. R. Evid. 702 advisory committee's note (2000 amends.)) (emphasis in original).  Expert testimony has a reliable reasoning or methodology if it "rests on a reliable foundation." *Id*. at 1261 (quoting *Daubert*, 509 U.S. at 597).  Though not an exhaustive list, courts should consider whether an expert's methodology is capable of being tested and whether the expert relied on anecdotal evidence or improper extrapolation. *See, e.g.*, *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004).

First, Dr. Carey's opinions are not reliable because they do not rest on a methodology with a reliable foundation.  Dr. Carey mischaracterizes procedures as "unnecessary" based on her anecdotal thought, without seeing the patients, that perhaps the patients did not receive the best treatment possible.  Indeed, Dr. Carey does not opine that the two patients who received hysterectomies (K.C. and B.P.) received unnecessary hysterectomies, but rather she quibbles with the types of hysterectomies they received and/or how Dr. Amin came to the decision to

6

recommend hysterectomies for those patients.

███████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████
███████████████████████████████████████
████████████████████████

Dr. Carey ███ evaluated B.P.'s hysterectomy not by what is "necessary" or even what helped the patient, but rather by different things that Dr. Amin could have done. Dr. Carey's expert report states not that B.P. did not need a hysterectomy but that he should have done a different type of hysterectomy, namely that the "preferred treatment is a modified radical hysterectomy (class II hysterectomy)," while Dr. Amin performed a "simple hysterectomy." Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 12 (emphasis omitted). The report categorizes performing a simple hysterectomy rather than a class II hysterectomy "unacceptable." *Id*. But that conclusion (contested by Dr. Amin's noticed experts) is not that the hysterectomy was medically unnecessary.

Second, Dr. Carey devotes much of the report to simply identifying risks inherent to medical procedures. But Dr. Carey does not measure the risks in terms of whether they outweigh

---

[5] Dr. Amin granted NBCUniversal's request to extend the deadline for errata for Dr. Carey's deposition to December 22, 2023. Ex. 1, Declaration of Stacey G. Evans (Dec. 19, 2023), ¶ 3.

7

the benefits of any treatment that Dr. Amin performed on any patient. Indeed, in Dr. Carey's expert report section on "patterns of aggressive surgical intervention," which is the only section relevant to Dr. Amin's identified experts or the issues present in this case, she does not identify a *single patient* whose surgical procedure was unnecessary. See Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 8-14. Concluding that Dr. Amin performed a "pattern of unnecessary surgeries" without identifying which surgeries were unnecessary and why does not constitute reliable reasoning or methodology.

    Third, although Dr. Carey notes alleged "patterns of aggressive surgical intervention," this "pattern" is based on a limited number of case files that she did not choose ▮

▮

Dr. Carey reviewed only the medical records that Dr. Bills reviewed, ▮

▮ without consideration of the total population of patients—to include all the patients who did *not* have surgeries—to serve as a denominator, is plainly not reliable. Without such information, there is no way for Dr.

---

▮

Carey to detect any "pattern" as it relates to Dr. Amin's treatment of the women detained by ICE at ICDC as a whole ███████████████████████████████████████. █

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

In sum, Dr. Carey's conclusion identifying a "pattern" as to Dr. Amin's treatment of patients detained by ICE at ICDC without knowing the total number of patients or considering all the patients who did not have surgery plainly lacks "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Fourth, Dr. Carey concludes that "it did not appear that Dr. Amin consistently followed the full process of informed consent" and "did appear to not consistently engaged [sic] patients in shared medical decision-making," but she applies no methodology to reach these conclusions. *See* Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 17. It could not be that her methodology was to review the medical records because the records do not support this conclusion. The only thing Dr. Carey points to in possible support of her contention is that shared patient decision-making is "not well documented in the review of the medical records." *Id*. at 8. But Dr. Carey's report also acknowledges there are signed consent forms, but states that "signed consent form [do] not necessarily indicate informed consent was provided." *Id*. at 5 █ ████████████████████████████████████████████████ ██.

Thus, Dr. Carey appears to contend that, while signed consent forms are not enough to suggest the presence of informed consent, some consent forms indicate the absence of informed consent. Under Dr. Carey's theory, a signed consent form may be enough to establish informed

9

consent, but that same signed consent form for another patient may not. If an opinion cannot be tested or disproved, it is not reliable. *See*, *e.g.*, *McDowell*, 392 F.3d at 1298. Here, there is no method by which another medical professional could determine if Dr. Carey would find documentation of informed consent sufficient on any reliable basis, as opposed to on an anecdotal basis considering individual circumstances of a patient's experience.

Further, Dr. Carey has no information to apply this haphazard analysis she seeks to employ.  In sum, Dr. Carey has no information whatsoever to refute the language in the consent forms they signed.

Dr. Carey offers no attempt at a methodology informing her conclusion that Dr. Amin did not obtain informed consent, and she bases that conclusion on absolutely nothing. The opinion should be excluded because it is not reliable.

## II.     Dr. Carey's Opinions Do Not Assist the Trier of Fact to Determine a Fact in Issue.

The question at issue in this defamation case is whether women detained by ICE at ICDC received forced, unconsented to, unnecessary, and/or unauthorized hysterectomies in high numbers. Even under NBCUniversal's attempt to rewrite its reporting after the fact to pretend "procedures" are something other than hysterectomies, the relevant question would be whether Dr. Amin performed unnecessary procedures. But Dr. Carey does not offer opinions on those questions. Instead, Dr. Carey's opines that Dr. Amin took an "aggressive approach." This does not assist the trier of fact.

With regard to hysterectomies, as discussed above, Dr. Carey does not argue that B.P. did not need a hysterectomy. Rather, Dr. Carey argues that it was preferrable that B.P. receive a different type of hysterectomy than the simple hysterectomy Dr. Amin performed. This would not assist a trier of fact to determine whether Dr. Amin's patients detained by ICE at ICDC received mass hysterectomies that were forced, unauthorized, and/or without consent, which are the statements at issue in this case. Similarly, Dr. Carey contends that K.C. "was a candidate for a minimally invasive route of hysterectomy however there is no documentation on counseling for route of hysterectomy." Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 13.

Dr. Carey further states: "Recent data reports that compared to White women, Black and Hispanic women are less likely to undergo hysterectomy via a minimally invasive approach." *Id*. Whether K.C. was a "candidate" for a different type of hysterectomy and whether societal inequality affects which patients receive which type of hysterectomy are not germane to the issue of whether the hysterectomy was necessary, which Dr. Carey agrees K.C.'s was. As Dr. Hamilton noted: "Again, the debate is not whether this patient should have had a different type of hysterectomy, but whether a hysterectomy was indicated and reasonable, and it is clear that

11

this hysterectomy was also indicated and reasonable." Ex. 4, Plaintiff's Expert Witness Reply Disclosures, at 5. Accordingly, Dr. Carey's opinion is not helpful to the factfinder as to an issue to be resolved in the case.

Even broadening to non-hysterectomy procedures, Dr. Carey's testimony will not help the trier of fact. As discussed above, even in Dr. Carey's expert report section on "patterns of aggressive surgical intervention," the only section relevant as rebuttal to Dr. Amin's identified experts' opinions, Dr. Carey does not identify which patients' surgical procedures were unnecessary. *See* Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 8-14. As discussed above, Dr. Carey identified certain "concerning features" of the hysterectomies, but does not opine that either of the patients who received hysterectomies did not need them. But as to other procedures, Dr. Carey's report merely makes conclusions such as that certain combinations of procedures are "rarely necessary," or that Dr. Amin "routinely performed" others. *See* Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 8-14. Failure to identify specific unnecessary procedures and instead relaying generalities and concerns does not help a fact finder determine whether procedures were medically unnecessary.

Similarly, Dr. Carey makes other general conclusions, such as that "Dr. Amin consistently took the most aggressive approach" to treatment, and that "[l]ess invasive, more conservative approaches often offer similar or better outcomes with a lower risk of complications, injury and hardship to patients." Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 5. Such conclusions are disputed by Dr. Amin's experts. *See generally* Ex. 4, Plaintiff's Expert Witness Reply Disclosures. But such conclusions are also simply not at issue in this case, in which NBCUniversal accused Dr. Amin of performing high numbers of forced, unnecessary, unauthorized, and/or unconsented to hysterectomies. *See Daubert*, 509 U.S. at 591

("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). Accordingly, those opinions do not "logically advance a material aspect of" the case and should be excluded pursuant to the "helpfulness" prong of the *Daubert* inquiry. *Kennedy v. Elec. Ins. Co.*, Case No. CV 4:18-148, 2019 WL 2090776, at *4 (S.D. Ga. May 13, 2019) (citing *Frazier*, 387 F.3d at 1262).

### III. Dr. Carey is Retained by NBCUniversal as a Rebuttal Expert and Any Opinions Not Responding to Dr. Amin's Experts' Opinions or Not Included in Her Report Should Be Excluded.

As discussed above, NBCUniversal identified Dr. Carey as a retained "rebuttal witness," and did not identify her as an initial expert by the required deadline. Accordingly, Dr. Carey's testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by" Dr. Amin's experts. Fed. R. Civ. P. 26(a)(2)(D)(ii). "A rebuttal expert witness's testimony is permitted under Rule 26 only if it contradicts or rebuts evidence on the same subject matter identified by an opposing expert. A rebuttal witness cannot advance new arguments or new evidence." *Romano v. John Hancock Life Ins. Co.*, Case No. 19-21147-CIV-GOODMAN, 2022 WL 1447733, at *29 (S.D. Fla. May 9, 2022) (quotation marks and some punctuation marks omitted). Therefore, the Court should prohibit the witnesses from offering testimony exceeding the scope of rebuttal of Dr. Amin's experts. *See, e.g.*, *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 18 (D.D.C. 2013) ("Where a party attempts to designate as a 'rebuttal' expert someone whose proposed testimony is beyond the scope of appropriate rebuttal, that witness may be viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court for violating Rule 26(a) and the Court's governing scheduling order." (citation omitted)).

Dr. Amin's experts offer opinions on the medical necessity of the two hysterectomies that

13

Dr. Amin performed; and Dr. Bills further opines on the existence of "unnecessary medical procedures performed" based on a review of "the medical records of 69 individual patients," from which he concluded that "Dr. Amin has been providing appropriate care to this high-risk indigent population and has not performed any unnecessary medical procedures." Ex. 2, Plaintiff's Service of Expert Witness Disclosures, at 2, 6-10, 16-17.

But Dr. Carey's expert rebuttal report states opinions on, among other items, "medical chart selection," "interpreting normal physiology as pathology," "medical management practices," "trauma-informed care," and "informed consent." Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 5-17. Indeed, only one of the four subsections of Dr. Carey's "opinions" section, "patterns of aggressive surgical intervention," is even remotely connected to the opinions that the hysterectomies were medically necessary and that Dr. Amin "has not performed any unnecessary medical procedures." *See* Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 5-17 (including subsections for "Medical chart selection," "Routinely interpreting normal physiology as pathology," "Patterns of aggressive surgical intervention," and "Medical management practices"). And much of that section is not responsive to Dr. Amin's identified experts' opinions either. *See, e.g.*, Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 8 (paragraph on shared decision-making in the "management of benign gynecologic conditions").

Because topics included in NBCUniversal's "rebuttal expert witness reports" are outside of the scope of the subject matter identified by Dr. Amin's experts, and because Dr. Carey is offered only to rebut Dr. Amin's expert witnesses, the Court should order that Dr. Carey may not offer such opinions at trial or in support of a motion for summary judgment. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion,

14

at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").  The testimony of NBCUniversal's rebuttal expert witnesses should be limited to rebuttal testimony.

Further, because Dr. Carey was retained by NBCUniversal, Dr. Carey was required to provide a written expert report that contained "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  As discussed above, aside from her discussion of hysterectomies and hysterectomy recommendations among patients who did not have hysterectomies, Dr. Carey's report does not identify a *single patient* whose procedure Dr. Carey concludes was unnecessary.  *See* Ex. 3, Defendant's Rebuttal Expert Witness Disclosures, at 8-14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, in addition to not being sufficiently reliable or helpful to the jury, Dr. Carey's conclusions as to specific patients not stated in the expert report should be excluded because they were not identified in the "complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B); *see Abdulla v. Klosinksi*, 898 F. Supp. 2d 1348, 1357 (S.D. Ga. 2012) ("An expert report is deemed adequate when it is sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions

are avoided, and costs are reduced." (quotation marks omitted)).

## CONCLUSION

Dr. Amin respectfully requests that the Court preclude NBCUniversal from offering testimony of Dr. Erin Carey, because her opinions are not based on a methodology sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* and because her testimony would not assist a trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. In any event, because NBCUniversal identified Dr. Carey only as a rebuttal expert to Dr. Amin's identified expert witnesses, her testimony on issues for which Dr. Amin's experts are not offering opinions should be excluded, namely "medical chart selection," "routinely interpreting normal physiology as pathology," "medical management practices," "trauma-informed care"," and "informed consent."

Respectfully submitted this <u>19th</u> day of December 2023.

*/s/ Stacey G. Evans*
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com
Tiffany N. Watkins
Georgia Bar No. 228805
twatkins@staceyevanslaw.com
J. Amble Johnson
Georgia Bar No. 229112
ajohnson@staceyevanslaw.com

STACEY EVANS LAW
4200 Northside Parkway NW
Bldg One; Suite 200
Atlanta, GA 30327
(770) 779-9602 (phone)
(404) 393-2828 (fax)

*Counsel for Plaintiff*

Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com

CHILIVIS GRUBMAN
DALBEY & WARNER LLP
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERT ERIN CAREY** will be served upon all attorneys in this matter by filing with the Court's CM/ECF system.

This 19th day of December 2023.

*/s/ Stacey G. Evans*
Stacey G. Evans