# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

DR. MAHENDRA AMIN, M.D.,

    Plaintiff,

v.

NBCUNIVERSAL MEDIA, LLC,

    Defendant.

Case No. 5:21-cv-00056-LGW-BWC

## DECLARATION OF JACOB SOBOROFF

I, Jacob Soboroff, being of lawful age and otherwise competent to testify in a court of law, hereby declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the following is true and correct:

1. I am over the age of eighteen, a resident of Los Angeles, California, and am competent to make this declaration. I have personal knowledge of the statements set forth below. I submit this declaration, together with the exhibits annexed hereto, in support of the motion for summary judgment of defendant NBCUniversal Media, LLC ("NBCU").

2. I am a reporter for NBC News, which is owned by NBCU. At the time relevant to this litigation, my reporting focused extensively on immigration and border issues and was often done in conjunction with another NBC News reporter, Julia Ainsley. I have extensive experience with these issues and have won awards for my immigration-related journalism. Together, Julia and I won the 2019 Hillman Prize for Broadcast Journalism for our reporting on the Trump Administration's family separation policy. I also won the Walter Cronkite Award for Individual Achievement in National Journalism for my reporting on child separation. I wrote a *New York Times* best-selling book, *Separated: Inside an American Tragedy*, on the same subject.

**NBC News Investigates and Reports on the Whistleblower Complaint**

3.  I understand that the plaintiff in this action claims that certain statements made in MSNBC news reports in September 2020 defamed him. These statements relate to a whistleblower complaint, which alleged that Immigration and Customs Enforcement ("ICE") detainees at the Irwin County Detention Center ("ICDC") were receiving unnecessary or unconsented-to gynecological procedures, including hysterectomies, from an outside gynecologist (the "Whistleblower Complaint"). Julia and I reported on this story for NBC News, and I appeared on *The Rachel Maddow Show* ("*TRMS*"), which I understand is one of the challenged news reports in this case. I have reviewed the *TRMS* news report, the article that contained my reporting on the Whistleblower Complaint, and the relevant documents produced in discovery in this action. I have also reviewed the declaration submitted by Julia Ainsley and agree with her description of our reporting. I submit this declaration to provide the following additional information:

4.  I first learned of the Whistleblower Complaint on September 14, 2020, when I read reporting about it by other reputable media organizations. The Whistleblower Complaint contained both allegations about COVID-19 in detention facilities and allegations about unwanted or unnecessary gynecological procedures. I had previously done reporting on COVID-19 in detention centers,[1] and the allegations in the Whistleblower Complaint on that issue aligned with what I had learned in my prior reporting. The allegations about unnecessary or unconsented-to gynecological procedures were new, and very much in the public interest because they concerned the potential mistreatment of a vulnerable population while in government detention. Our

---

[1] *See, e.g.*, "Detained migrants say they were forced to clean COVID-invested ICE facility," (Jun. 8, 2020) available at: https://www.nbcnews.com/politics/immigration/detained-migrants-say-they-were-forced-clean-covid-infected-ice-n1228831; "Nearly half the employees at an Arizona ICE detention center have tested positive for COVID-19." (July 8, 2020) available at: https://www.nbcnews.com/politics/immigration/nearly-half-employees-arizona-ice-detention-center-have-tested-positive-n1233101.

reporting often covers topics like this one, about which we shed light on how governmental institutions are performing. Given the immigration-related controversies I had reported on in the past, I found the allegations credible. This was bolstered by the fact that the claims were made in a formal complaint from a nurse at the detention center, which was sent to the government and was signed by immigration lawyers. I wanted to further investigate the claims.

5. On the evening of September 14, I contacted Azadeh Shahshahani at Project South, which was one of the legal organizations that filed the Complaint. Ms. Shahshahani put me in contact with lawyers for the whistleblower, Dawn Wooten. (A true and correct copy of my emails with Ms. Shahshahani are attached hereto as **Exhibit 1**.)

6. I interviewed Ms. Wooten early in the morning on September 15. To me, that she was willing to speak with a journalist for a national news organization for a television interview and to put her name and face to her allegations bolstered her credibility. When I spoke to her, I found her to be a credible source. She became emotional when she spoke about the treatment of detainees, which was understandable given their gravity, and her comments were consistent with what was included in the Whistleblower Complaint. While she could not remember the name of the outside gynecologist treating detainees or the exact number of procedures performed on these women, this did not cause me to doubt her credibility. Having reported from inside ICE detention centers and spoken to many workers there, I know it is a stressful, dynamic environment, particularly during the COVID-19 pandemic. Accordingly, Ms. Wooten's inability to recount highly specific details did not seem unusual to me.

7. I found Ms. Wooten to be credible. In a further effort to corroborate her claims, I understand that Julia contacted Andrew Free, a source that she had worked with for years on immigration-related stories. I had similarly worked with Mr. Free while reporting on child

separation and found him to be reliable, credible, and knowledgeable.  I also spoke with Mr. Free as I conducted my reporting on September 15.

8. Mr. Free provided Julia with the names of other lawyers who represented detainees from ICDC, and Julia and I split them up to contact them.  At around 12:40 pm ET, I contacted one of those lawyers, Sarah Owings.  (A true and correct copy of my text messages with Ms. Owings are attached hereto as **Exhibit 2**.)  Ms. Owings identified Dr. Amin as the doctor discussed in the Whistleblower Complaint, informed me that she represented clients at ICDC who had been seen by Dr. Amin, and told me about their complaints with his treatment.  While I do not currently remember the specific details of my conversation with Ms. Owings, when I speak with sources, like Ms. Owings, I take contemporaneous notes.  In this instance, because Julia was going to be drafting our article, I sent my notes to Julia once my conversation was completed.  For this reason, I am confident that the statements that are attributed to Ms. Owings in the published NBC News article are accurate reflections of my communications with her.

9. I understand that, as I was reporting on the Whistleblower Complaint, Betsy Korona, then the Executive Director of News for MSNBC and NBC News Now, contacted NBCU News Group's Standards Department to review the reporting.  Standards reviews our reporting to make sure that it accords with the company's journalistic standards and longstanding commitment to trusted, credible journalism.  Chris Scholl from Standards expressed a concern about reporting on my interview with the whistleblower without knowing more.  I understood, which is why Julia and I had already been in contact with other sources, like Ms. Owings, to learn more about the allegations.

10. Throughout the day, I spoke with Ms. Owings multiple times.  She provided me with a copy of a Department of Justice press release, which announced a settlement in a False

4

Claims Act case against Dr. Amin. *See* Ex. 2 at OWINGS_0000002. In that case, the government alleged that Dr. Amin had been over-billing Medicare and Medicaid for unnecessary procedures. I believed this to be directly relevant to the allegations in the Whistleblower Complaint, that Dr. Amin was performing unnecessary procedures on detainees (for which he could similarly bill the government).

11. As we acquired more information, I understand that Chris supported our reporting and approved the article that we published (the "NBC News Article"). I believed everything in the NBC News Article to be accurate. I understand that this action does not challenge the NBC News Article.

**My Appearance on *TRMS***

12. *TRMS* invited me to appear on that evening's show to discuss the reporting on the Whistleblower Complaint. My interview on *TRMS* was not scripted. I understand that two of the statements that I made during that segment are challenged in this action:

   a. "And there are other allegations of other procedures including pap smears where women are told you've got ovarian cysts or cancer, and that turned out not to be the case and those procedures happened anyway."

   b. "They considered him the uterus collector."

13. I believed both of these statements to be accurate. The first statement was based on information that Julia and I had learned through interviews with lawyers earlier that day, and it was corroborated by the allegations of unnecessary procedures in the Whistleblower Complaint and my interview of Wooten.

14. The second statement conveyed Ms. Wooten's allegation both in the Whistleblower Complaint and during her interview with me. In using the rhetorical phrase "uterus collector," I

5

did not understand it to mean that Dr. Amin was literally collecting detainees' uteruses. Instead, I saw it as a hyperbolic summary of the allegation that Dr. Amin was performing many gynecological surgeries on detainees, including removing their reproductive organs. Based on all of the facts we obtained through our independent reporting, including that at least two women had hysterectomies they believed were unnecessary, Dr. Amin was frequently telling women that they had cysts that needed to be surgically removed, and Dr. Amin had previously been accused by the government of ordering unnecessary procedures for reimbursement purposes, I found that allegation to be credible.[2]

15.  I understand that the plaintiff in this action has alleged that I appeared on *TRMS* to promote my book. This is entirely false. The sole purpose of my interview was to speak about our reporting as reflected in our published NBC News Article. Mentioning a guest's recent credentials on a related topic, as Rachel mentioned my book on family separation while introducing me, is common.

16.  Following my appearance on *TRMS*, Julia and I exchanged text messages about our reporting. As those text messages show, we felt confident in the accuracy of our reporting. I thought it was likely that Dr. Amin had performed many unwanted or unnecessary hysterectomies on ICE detainees since so many lawyers were saying it, including some of the lawyers who were quoted as sources in the Article. But I was curious to see how this evolving story would continue to develop over the coming days and months.

17.  During this conversation, I told Julia that Mr. Free had informed me that he heard "mixed things" about Ms. Wooten. I do not recall specifically what those "mixed things" were,

---

[2] I understand that Dr. Amin also challenges as defamatory a clip from my interview with Ms. Wooten, which is played in the September 15, 2020 episode of *Deadline: White House*. In the clip, I ask Ms. Wooten: "You're quoted in the complaint as saying that's his specialty, he's the uterus collector." For the same reasons as stated in Paragraph 14, I found this allegation to be credible.

but I know they did not affect my overall confidence in Ms. Wooten and the credibility of her allegations. This is reflected in my text messages, in which I told Julia that Ms. Wooten "exposed what sounds like a crazy situation." I spoke with Ms. Wooten directly to assess her credibility and given all of the corroboration our independent reporting had uncovered, including finding a lawyer who said two of his clients received potentially unnecessary hysterectomies, finding another lawyer who said that Dr. Amin "bruised" her client and was rough with others, and finding a past lawsuit against Dr. Amin by the Department of Justice, I believed Ms. Wooten's allegations to be credible.

18. In sum, as I testified in my deposition, I think Julia and I did an exemplary job reporting on the Whistleblower Complaint. We were thorough, beginning with the Whistleblower Complaint itself, to a first-person interview with the whistleblower, to obtaining corroborating information from attorneys for several detainees, and researching Dr. Amin's background. We attempted to obtain information from ICE, LaSalle, and Dr. Amin. Along the way, the allegations of unnecessary and unconsented-to procedures only became more credible. I believed our reporting was entirely accurate.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

Executed on December 18, 2023.

_____
JACOB SOBOROFF