Declaration of

Elizabeth McNamara

Exhibit 6



Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security
Washington, DC 20528

September 12, 2022

| | |
|---|---|
| MEMORANDUM FOR: | Tae D. Johnson<br>Acting Director<br>U.S. Immigration and Customs Enforcement |
| | Kerry E. Doyle<br>Principal Legal Advisor<br>Office of the Principal Legal Advisor<br>U.S. Immigration and Customs Enforcement |
| FROM: | Peter E. Mina<br>Senior Official Performing the Duties of the<br>Officer for Civil Rights and Civil Liberties |
| | Susan Mathias /s/<br>Assistant General Counsel, Legal Counsel Division<br>Office of the General Counsel |
| SUBJECT: | Irwin County Detention Center<br>Complaints No. 21-02-ICE-0106, 21-02-ICE-0124,<br>21-03-ICE-0135, and 21-01-ICE-0036[1] |

*Purpose*:

The purpose of this memorandum is to document the actions of the U.S. Department of Homeland Security (DHS), Office for Civil Rights and Civil Liberties (CRCL) with regard to Irwin County Detention Center (ICDC) in Ocilla, GA, and to provide two overarching recommendations to U.S. Immigration and Customs Enforcement (ICE). In May 2021, it was announced that ICDC would no longer house ICE detainees and CRCL consequently canceled its onsite investigation of the facility that had been scheduled for June 2021. No ICE detainees are currently housed at ICDC. Nevertheless, CRCL believes it is important to provide ICE with information regarding the complaints received about this facility, as well as its experts' findings after a paper review of the facility, which remain relevant to other facilities administered by the same contractor, LaSalle Corrections (LaSalle).

---

[1] Please note that we have omitted from the descriptions of the complaints (which appear in Appendix A) the Personally Identifiable Information (PII) related to the complainants. The names and alien numbers for these individuals are included in a separate memo so that the complaint descriptions in Appendix A can be freely shared, without the PII memo, with those who do not have a need to know the PII.

*Protected by Attorney-Client and Deliberative Process Privileges*

*Background:*

**Prior CRCL Visits to ICDC and Recommendations**

CRCL previously conducted two onsite investigations at ICDC; one in September 2012 and one in July 2016. The September 2012 investigation stemmed from allegations from the American Civil Liberties Union (ACLU) of Georgia regarding the facility's medical care and conditions of detention. On November 5, 2012, CRCL issued its Expert Recommendation Memorandum to ICE, which contained 18 recommendations, 13 of which concerned medical care. On December 31, 2014, CRCL received ICE's response, in which it concurred with all of CRCL's recommendations and agreed to improve tracking of medical and mental health care, communication between medical and mental health staff, and the medical quality management program. ICE also agreed to improve its training of medical staff. In March 2015, CRCL formally closed the complaints stemming from the 2012 onsite investigation.

The July 2016 investigation examined medical and mental health care, use of force, food service, segregation, recreation, and the detainee grievance system. CRCL issued an Expert Recommendation Memorandum containing 26 recommendations in areas such as disinfection and sanitation practices, communication and procedures about infectious diseases, recordkeeping and documentation, and language access. ICE responded on September 12, 2017, concurring with all but three recommendations and only partially concurred with three other medical recommendations.

**The Past Three Fiscal Years**

Since its last investigation, from Fiscal Year 2018 until present, CRCL received a significant number of allegations concerning medical care at ICDC, including allegations about unnecessary gynecological procedures performed on detainees at ICDC without their informed consent,[2] HIV treatment, and most recently, COVID-19 protocol and practices. Between FY18 and FY 21, CRCL made 76 medical referrals to ICE regarding access to medical care at ICDC, sustained five of those allegations, and provided Informal Advice in 12 separate complaints to ICE identifying deficient practices in the provision of medical care at the facility.

CRCL also received a number of use of force and conditions of detention allegations, including an allegation from a detainee claiming that ICDC Officers slammed him into a wall and dragged him out of the building to the medical unit for refusing to eat his diet tray. Additional allegations included retaliation for reporting abuse, and lack of access to the law library, language services, and ICE deportation officers.

---

[2] *See id;* CRCL opened Complaint No. 20-12-ICE-0987 regarding the whistle-blower allegations made by a former nurse at the facility regarding a gynecologist who treated female detainees. This complaint was retained by the Office of Inspector General (OIG).

### *Complaints Opened by CRCL but Retained by the Office of the Inspector General (OIG)[3]*

CRCL had already begun planning for another onsite investigation of the facility when in September 2020, CRCL received allegations that female detainees were sterilized without their informed consent.[4] CRCL immediately opened approximately nine complaint investigations[5] regarding alleged unnecessary gynecological procedures performed on detainees at ICDC without their informed consent, as well as alleged poor conditions at the facility. Pursuant to DHS policies and procedures, as outlined in 6 USC 345(a)(6), CRCL forwarded these allegations to the OIG. The OIG has the right of first refusal within DHS to conduct investigations of allegations related to DHS personnel, programs, and operations.[6] The OIG exercised its right to retain these complaints. Therefore, CRCL was prohibited from investigating them until the OIG investigation was complete. The OIG investigation is still pending. Therefore, CRCL continues to hold these complaints in abeyance until the conclusion of the OIG investigation.

CRCL scheduled a June 2021 onsite investigation that centered around the allegations received that were not part of the OIG's investigation.[7] CRCL also intended to assess in that investigation the implementation of its prior recommendations. However, as noted above, that investigation was canceled after it was announced that ICE would no longer use the facility.

### *CRCL Willingness to Perform Wellness Checks at ICDC in Fall 2020*

CRCL notes that in the Fall of 2020, there were serious allegations that female detainees at ICDC were in dire need of medical attention and that facility staff were retaliating against detainees who had reported poor medical care and conditions at the facility by removing them before information could be collected. After deconflicting with the OIG investigation, CRCL engaged an expert in Conditions of Detention and planned to conduct wellness checks at ICDC and a limited investigation of these allegations. Therefore, CRCL did not interview detainees or staff at the facility about any of the allegations.

### *Summaries of Retained CRCL Complaints to Be Closed Due to Severance of Contract*

The above-referenced complaints were retained by CRCL for its planned onsite investigation at ICDC from June 21-24, 2021. Given that the facility is no longer housing ICE detainees, however,

---

[3] On January 3, 2022, the OIG issued "Medical Processes and Communication Protocols Need Improvement at Irwin County Detention Center" (OIG-22-14). This report did not address the allegations about the facility's gynecological care. However, it did examine other medical care provided at the facility. The report echoed some of CRCL's prior concerns with the medical care and medical protocols at ICDC, including the need for improvements in medical documentation and medication administration. The OIG administratively closed four of its five recommendations to ICE due to ICE no longer housing detainees at ICDC.

[4] See Caitlin Dickerson, *New York Times*, "Inquiry Ordered Into Claims Immigrants Had Unwanted Gynecology Procedures," September 16, 2020, *available at*: https://www.nytimes.com/2020/09/16/us/ICE-hysterectomies-whistleblower-georgia.html.

[5] Complaints that CRCL has opened regarding allegations of unnecessary gynecological procedures performed on female detainees at ICDC without their informed consent include: Complaints No. 20-12-ICE-0987, 21-03-ICE-0127, 21-06-ICE-0323, 21-06-ICE-0295, 21-05-ICE-0261, 21-02-ICE-0098, 21-01-ICE-0032, 21-01-ICE-0018, and 20-12-ICE-0987.

[6] See 6 U.S.C. §345(1)(f).

[7] See Appendix A for a summary of the complaints that were going to be investigated during the June 2021 onsite at ICDC before the onsite was canceled due to termination of ICE's contract with the facility. These complaints will now be closed.

these complaints will now be closed. CRCL is sharing summaries of these complaint allegations with ICE for its information in Appendix A.

As referenced above, on May 20, 2021, Secretary of Homeland Security, Alejandro Mayorkas, announced that ICE would discontinue use of ICDC[8] and a letter was sent to the Warden stating that the Intergovernmental Services Agreement would be terminated no later than September 17, 2021.[9] Given that CRCL had already engaged experts in Conditions of Detention, Environmental Health and Safety, Medical Care, and Mental Health Care, and ICE had already produced numerous documents in response to CRCL's Request for Information, CRCL asked its experts complete a paper review of the policies and procedures at ICDC and to share any resultant recommendations for ICE's benefit.

As ICE is no longer housing detainees at ICDC, CRCL does not request that ICE formally concur or non-concur with the expert recommendations contained in Appendix B to this Memorandum. Nonetheless, LaSalle continues to operate many other ICE facilities in Louisiana and Texas, including Winn Correctional Center, Richwood Correctional Center, Jackson Parish Correctional Center, LaSalle Correctional Center, and River Correctional Center in Louisiana; and Limestone County Detention Center, Prairieland Detention Center, and West Texas Detention Center in Texas. CRCL has received a number of allegations regarding many of these other facilities and has conducted onsite investigations at some of them.[10]

*Recommendations:*

CRCL has the following two formal recommendations, for which it requests concurrence or non-concurrence within 120 days, per the typical CRCL complaint process:

1. 

2. 

It is CRCL's statutory role to advise Department leadership and personnel about civil rights and civil

---

[8] *See* DHS Press Release, "ICE to Close Two Detention Centers," May 20, 2021, *available at*: https://www.dhs.gov/news/2021/05/20-/ice-close-two-detention-centers.

[9] Letter from Ejikeme Ezeala, ICE ERO Contracting Officer, to David Paulk, Warden of Irwin County Detention Center, dated May 20, 2021.

[10] CRCL conducted an onsite investigation at Richwood Correctional Center from February 20-21, 2020 as well as a targeted follow-up investigation on September 30-October 2, 2020; Prairieland Detention Center on September 8-11, 2020, Winn Correctional Center from July 26-29, 2021, and Jackson Parish Correctional Center on December 13, 15, and 17, 2021. CRCL also conducted an onsite investigation at the West Texas Detention Center on August 14-16, 2018.

liberties issues, ensuring respect for civil rights and civil liberties in policy decisions and implementation of those decisions. We look forward to working with ICE to determine the best way to resolve these complaints. We request that ICE provide a response to CRCL within 120 days indicating whether it concurs or does not concur with these recommendations. If you concur, please include an action plan. Please send your response and any questions to at                                      . CRCL will share your response with [         ] the Policy Advisor who is now leading this investigation.

Enclosures

Copy to:

Jason P. Houser
Chief of Staff
U.S. Immigration and Customs Enforcement

Claire Trickler-McNulty
Assistant Director
Office of Immigration Program Evaluation
U.S. Immigration and Customs Enforcement

Deborah Fleischaker
Assistant Director
Office of Regulatory Affairs and Policy
U.S. Immigration and Customs Enforcement

Scott Lanum
Assistant Director
Office of Diversity and Civil Rights
U.S. Immigration and Customs Enforcement

Corey A. Price
Executive Associate Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

Daniel Bible
Deputy Executive Associate Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

Jason B. Mitchell
Chief of Staff
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

Dr. Stewart D. Smith
Assistant Director, ICE Health Service Corps
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

Monica Burke
Acting Assistant Director, Custody Management
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

Stephen M. Antkowiak
Acting Chief of Staff, Custody Management
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

Greg Hutton
Acting Deputy Assistant Director, Custody Programs
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

Christopher S. Kelly
Deputy Assistant Director
Office of Regulatory Affairs and Policy
U.S. Immigration and Customs Enforcement