Declaration of

Elizabeth McNamara

Exhibit 71

**Opening Statement of Chair Jon Ossoff**
**"Medical Mistreatment of Women in ICE Detention"**
**U.S. Senate Permanent Subcommittee on Investigations**
**Homeland Security and Governmental Affairs Committee**
**November 15, 2022**

Before we begin this hearing, guests and viewers should be advised that this hearing will discuss the medical abuse of women in the custody of the U.S. government and that the subject matter is deeply distressing and highly sensitive.

18 months ago, I launched a PSI investigation focused on the medical treatment of women detained by the Department of Homeland Security.

This investigation has been bipartisan from start to finish, and I'd like to thank Ranking Member Johnson and his staff for their contributions.

Our findings are deeply disturbing.

It is the bipartisan finding of the Subcommittee that female detainees in Georgia were subjected by a DHS-contracted doctor to excessive, invasive, and often unnecessary gynecological surgeries and procedures, with repeated failures to obtain informed medical consent.

This is an extraordinarily disturbing finding, and in my view for represents a catastrophic failure by the Federal government to respect basic human rights.

Among the serious abuses this Subcommittee has investigated during the last two years, subjecting female detainees to nonconsensual and unnecessary gynecological surgeries is one of the most nightmarish and disgraceful.

The Subcommittee has been thorough, interviewing more than 70 witnesses and reviewing more than 540,000 pages of records, and I want to thank and commend the staff who have worked on this for the last year and a half.

The Subcommittee engaged medical experts, including Dr. Peter Cherouny, OB/GYN, who previously conducted medical reviews of other matters for the HHS Inspector General, and who independently reviewed more than 16,000 pages of medical records obtained by the Subcommittee.

The Subcommittee also consulted Dr. Margaret Mueller, OB/GYN, who has also reviewed extensive medical records related to the investigation. Both Dr. Cherouny and Dr. Mueller will testify today, and I thank you both for your service to the Subcommittee and to the U.S. Senate.

These medical experts reviewed the clinical conduct of Dr. Mahendra Amin, a OB/GYN doctor contracted by the Department of Homeland Security, who has subjected female detainees to aggressive and unethical gynecological care, quickly scheduled surgeries when non-surgical

options were available, performed unnecessary injections and treatments, and often proceeded without informed consent.

In addition to this expert review of medical records, the Subcommittee analyzed relevant data secured from ICE, and the results of our analysis were shocking.

For example: from 2017 to 2020, Dr. Amin accounted for just 6.5% of all off-site OB/GYN visits for all ICE detainees nationwide.

Yet, during the same period, this single doctor, according to ICE statistics, performed 82% of all dilation and curettage surgeries, 93% of all contraceptive injections, and 94% of all laparoscopic surgeries to remove lesions performed on the entire ICE detainee population nationwide.

Let me reiterate those statistics: one doctor, 6.5% of OGBYN visits; 82% of D&C surgeries, 93% of contraceptive injections, 94% of all laparoscopic surgeries to remove lesions, performed on the entire nationwide ICE detainee population.

The Subcommittee sought an interview with Dr. Amin during this investigation, and when he declined, we issued a subpoena.

Dr. Amin invoked his Fifth Amendment right not to testify and has not spoken with the Subcommittee.

We will also be joined today by an extraordinarily courageous woman, Karina Cisneros Preciado.

Karina was born in Mexico and brought to the United States as an eight-year-old child.

She began working at 15, and by 18 was married to a spouse who physically abused her.

After she called the police to her home during an incident of domestic abuse, Karina was arrested, and although all charges against her were dropped, she wound up detained at Irwin County Detention Center in Ocilla, Georgia, because of her immigration status.

Just four months earlier, Karina had given birth to her four-month-old daughter, who was still breastfeeding at the time.

Now forcibly separated from her infant daughter, Karina had not yet received her post-partum exam, and sought care while in detention. Karina was sent to Dr. Amin.

As we will hear, her encounter with Dr. Amin left her deeply disturbed.

And it may only be because some allegations of medical abuse became public at this time that Karina was spared further abuse.

NBCU003896

On behalf of the U.S. Senate, Karina, I thank you for your decision to join us today and your service to the country.

Today we will also question Dr. Stewart Smith, who leads the ICE Health Service Corps and is responsible for medical care provided to ICE detainees; Dr. Joseph Cuffari, the DHS Inspector General; and Dr. Pamela Hearn, Medical Director for LaSalle Corrections.

Among the essential questions we will ask today:

Why are doctors who treat detainees not vetted by the Department of Homeland Security, when such a vet would have revealed in this case that the doctor in question had been previously sued by the Department of Justice and the State of Georgia for performing excessive and unnecessary procedures; had been dropped by a major insurer for excessive malpractice claims; and was not board certified?

What due diligence did the Department of Homeland Security perform in signing off on each of these procedures, because indeed they did sign off on these procedures? Why was the inexplicably high number of surgeries performed by a single physician not a red flag that attracted greater scrutiny?

What responsibility is borne by the private detention center operator for mistreatment of detainees housed in their facilities when that mistreatment occurs at an off-site medical procedure?

All of these, and more, will be the subject of vigorous questioning today

Senator Johnson will be joining us later in the hearing, and I ask unanimous consent to enter his opening statement into the record.

NBCU003897