Declaration of

Elizabeth McNamara

Exhibit 127

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|                        |     |                      |
|------------------------|-----|----------------------|
| DR. MAHENDRA AMIN,     | )   |                      |
|                        | )   |                      |
| Plaintiff,             | )   |                      |
|                        | )   | CIVIL ACTION FILE    |
| v.                     | )   | NO. 1:23-mi-00022-   |
|                        | )   | LMM-JSA              |
| NBCUNIVERSAL,          | )   |                      |
|                        | )   |                      |
| Defendant.             | )   |                      |
|                        | )   |                      |
| _____  | )   |                      |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
NON-PARTY MBETI NDONGA'S MOTION TO STAY AND TO QUASH
DEPOSITION SUBPOENA OR, IN THE ALTERNATIVE TO MODIFY**

In *Amin v. NBCUniversal Media, LLC*, Dr. Mahendra Amin alleges that

NBCUniversal defamed him.  5:21-CV-56, 2022 WL 16964770, at *1, 4-5 (S.D. Ga.

Nov. 16, 2022).  Dr. Amin largely prevailed against NBCUniversal's motion for

judgment on the pleadings—***winning on 27 of 38 challenged statements***, and he is

now in discovery, seeking factual evidence to prove his allegations.  *See generally*

*id.*; Ex. 3, *NBCUniversal* Protective Order.  Because he alleges defamation under

Georgia law, Dr. Amin must prove that NBCUniversal's allegedly defamatory

statements—the gist of which is that he conducted unnecessary and unconsented-to

medical procedures on detainees at the Irwin County Detention Center (ICDC),

including large numbers of hysterectomies—were false.  *Mathis v. Cannon*, 573

Caron 0948

S.E.2d 376, 380 (Ga. 2002). As Plaintiff in the *NBCUniversal* case, Dr. Amin bears the burden on falsity. *Id.*

Thus, the threshold factual question in the *NBCUniversal* case is whether Dr. Amin conducted unnecessary and unconsented to procedures on ICDC detainees and whether he mistreated them. Ms. Ndonga received medical treatment from Dr. Amin as a detainee at ICDC and has brought a lawsuit, *Oldaker v. Giles*, Case No. 7:20-CV-00224-WLS-MSH (M.D. Ga.), that alleges claims against Dr. Amin for his medical treatment of her, including that he conducted unnecessary and unconsented-to medical procedures on her. *See* Doc. 1-1 at 2-3; Doc. 1-5 ¶¶ 355-56. Accordingly, in an effort reasonably calculated to lead to admissible evidence in the *NBCUniversal* case—for example, that statements that Dr. Amin's treatment was improper were false—Dr. Amin subpoenaed Ms. Ndonga to appear for a deposition. Doc. 1-2.

Now Ms. Ndonga moves to quash the subpoena arguing it was improperly delivered, claiming she does not have "relevant" testimony, and asserting that she is otherwise unduly burdened. *See generally* Doc. 1-1.

As discussed below, Ms. Ndonga was properly delivered the subpoena as required by Federal of Civil Procedure 45 and also had actual notice of the subpoena on March 14, and she was further handed the subpoena by a process server on March 29. Thus, she was served twice.

The standard for quashing a subpoena is not whether the subpoena seeks

2

"relevant" information but whether the subpoena imposes an "undue burden," which includes it not being "reasonably calculated to lead to the discovery of admissible evidence."

Plainly, the taking of a deposition of Ms. Ndonga, a patient Dr. Amin treated at ICDC, who alleges mistreatment, is "reasonably calculated to lead to the discovery of admissible evidence" as to, at the very least, the falsity element that Dr. Amin must prove at trial against NBCUniversal.  Other factors for undue burden, such as the fact that discovery in Ms. Ndonga's case remains stayed, plainly do not outweigh Dr. Amin's need to obtain discovery according to the Scheduling Order in his own case.

Ms. Ndonga's Motion (Doc. 1) should accordingly be denied, as should her request in the alternative for a Court order modifying the subpoena and her request for a stay pending resolution of her Motion.  Dr. Amin attaches Exhibits 1-5 in support of this Response.

Finally, in bringing her meritless motion, Ms. Ndonga and her counsel are stubbornly litigious and expanding the proceedings, especially in light of Dr. Amin's counsel's efforts to work with Ms. Ndonga's counsel to obtain testimony cooperatively for approximately a year.

## FACTUAL BACKGROUND

Ms. Ndonga's brief (Doc. 1-1) explains much of the backdrop of this dispute.

Caron 0950

While Dr. Amin disagrees with many of Ms. Ndonga's glosses on facts, the Motion to Quash should obviously be denied even pursuant to those glosses. Accordingly, and in the interest of timely producing a brief that may assist the Court in preparation for a hearing (Doc. 4) on the Motion, Dr. Amin does not set forth his own comprehensive Factual Background and instead addresses the most relevant facts in the Argument Section below.

Nevertheless, there are several matters discussed in Ms. Ndonga's brief that Dr. Amin must correct or properly emphasize from the outset:

1. **The Parties in the NBCUniversal case agree that the testimony of Ms. Ndonga is discoverable in that case**

NBCUniversal specifically named the "Plaintiffs in *Oldaker*" as "parties with discoverable information" relating to the NBCUniversal case. In response to an interrogatory asking that NBCUniversal "identify all persons who have, or who you believe may have, personal knowledge or discoverable information relating to any of Dr. Amin's allegations in the Complaint or your defenses in this litigation," NBCU Universal not only listed "detainees from [ICDC] who received medical care from Dr. Amin," but also specifically "Plaintiffs in *Oldaker v. Giles* (Case No. 7:20-cv-00224-WLS). Ex. 6, Excerpt from NBCUniversal's Written Discovery Responses in the *NBCUniversal* Case. NBCUniversal stated that these witnesses have knowledge of the "substantial truth of the allegedly defamatory publications." *Id.*

NBCUniversal admits to having common interest and joint defense privileges

with the *Oldaker* Plaintiffs' counsel and to having communications with them. Thus, it is clear that NBCUniversal has access to the *Oldaker* Plaintiffs and could obtain testimony from them. Dr. Amin is similarly entitled.

**2. There is no special stay in the Oldaker case**

Ms. Ndonga claims that the *Oldaker* litigation is stayed "pursuant to the *Oldaker* Federal Defendants' requests," specifically "due to the pendency of ongoing federal investigations of the underlying events," and that the currently operative stay is another example of that court having "repeatedly stayed discovery in the case." Doc. 1-1 at 3, 5. But that is not an accurate characterization of the status of *Oldaker*. Indeed, in the short order Ms. Ndonga attaches to her Motion to Quash as Exhibit F, the *Oldaker* Court plainly ***lifts*** the stay that the Federal Defendants had requested be extended, not "only to allow Plaintiffs to proceed with amending their complaint and any motions to dismiss to be resolved," *id.* at 6, but on the express finding that no "special circumstances" merit the stay of the case as a whole. Doc. 1-7 at 3-4. Ms. Ndonga quotes a long sentence in which the *Oldaker* Court noted the "compelling reasons" for extending the stay (Doc. 1-1 at 5-6 (quoting Doc. 1-7 at 3)), but she omits and ignores the ***very next***, contradictory, sentence: "Nonetheless, while these reasons *may warrant a temporary delay in discovery*, they do not warrant 'special circumstances' requiring that this case be stayed in its entirety 'in the interests of justice.'" (Doc. 1-7 at 3 (emphasis added)).

Caron 0952

The *Oldaker* Court continues: "Thus, in balancing the relevant factors and the respective burdens on the Parties and Court, the Court hereby **LIFTS** the stay of this case." *Id.* at 4 (emphasis in the original).  The court did subsequently stay *discovery*, *id.*, but there are outstanding dispositive motions on the pleadings that have not yet been resolved that would eliminate the need for discovery, and as the *Oldaker* Court ruled, "Petitioners will be prejudiced in their pursuit of speedy civil litigation if this case is unable to proceed whatsoever while the criminal investigation continues." *Id.* at 3-4.  In Dr. Amin's case, too, a stay was imposed while the dispositive motion on the pleadings was pending, and then when Dr. Amin's claim against NBCUniversal remained upon resolution of the motion for judgment on the pleadings, the parties collaborated with the *NBCUniversal* Court to set a new discovery timeline.  Ex. 3, *NBCUniversal* Amended Scheduling Order.  The stay for the *Oldaker* case as a whole was clearly lifted by the order attached as Doc. 1-7.

**3.  The only discovery schedule relevant here is the one in the NBCUniversal case**

Unlike the Plaintiffs in *Oldaker*, Dr. Amin's Complaint against NBCUniversal has survived the pleadings stage, and accordingly the case is in discovery ***now***.  The *NBCUniversal* Court granted in part and denied in part NBCUniversal's motion for judgment on the pleadings, ruling that Dr. Amin stated claims against NBCUniversal for defamation pursuant to Georgia law.  *Amin v. NBCUniversal Media, LLC*, 5:21-CV-56, 2022 WL 16964770, at *21 (S.D. Ga. Nov. 16, 2022).  Specifically, Dr.

Caron 0953

Amin alleges that NBCUniversal defamed him by accusing him of conducting medical procedures against detainees at the ICDC, including large numbers of unnecessary hysterectomies, without detainees' consent. *Id*. at *1, 4-5.

Dispositive motions are pending in the *Oldaker* case, meaning discovery may never occur. If it does, then, and only then, does Ms. Ndonga face the possibility of a duplicative deposition and she can take up the issue with Dr. Amin's counsel and the *Oldaker* Court if and when that time comes. Notably, NBCUniversal is seeking third party discovery from parties in the *Oldaker* case who do not seem to claim there is violation of any order in that case.

### 4. Ms. Ndonga, not Dr. Amin, is creating burden

Ms. Ndonga describes Dr. Amin as her "adversary." Doc. 1-1 at 4. But Dr. Amin has not made Ms. Ndonga his adversary. He did not sue Ms. Ndonga. Rather, to Dr. Amin in the *NBCUniversal* lawsuit, Ms. Ndonga is a witness whose deposition is reasonably calculated to lead to the discovery of admissible evidence. Ms. Ndonga describes *NBCUniversal* as "Dr. Amin's ancillary defamation case," *id*. at 20, but Dr. Amin is suing NBCUniversal in order to clear his very name and collect damages on the defamation of his name; there is nothing "ancillary" about *NBCUniversal* to him. Simply put, the subpoena to appear for deposition in *NBCUniversal* is not any backdoor effort to collect evidence in *Oldaker*, where Dr. Amin has a pending dispositive motion on the pleadings that, if granted, would mean he would require no

Caron 0954

discovery in *Oldaker* at all.  Ms. Ndonga's choosing to make legal claims against Dr.

Amin in a different case must not be allowed to limit Dr. Amin's opportunity to

collect information relevant to his own legal claims, particularly where Ms. Ndonga's

case has not yet made it past the pleadings stage while Dr. Amin's has done so.

5. **Dr. Amin's counsel has made considerable efforts to obtain Ms. Ndonga's testimony cooperatively**

Another fact that warrants emphasis is that counsel for Dr. Amin has bent over

backward to minimize the burden on Ms. Ndonga and work with her counsel.

Counsel for Dr. Amin initially offered to not subpoena for deposition Ms. Ndonga

and other *Oldaker* Plaintiffs, asking counsel for those witnesses to agree to prepare

declarations that answer written questions, which "should end any need for a

deposition."  Ex. 4, February Email Correspondence, at 5.  However, counsel for Dr.

Amin caveated: "But I obviously can't guarantee we won't need deposition

testimony in follow up to items in the declarations, and I also can't prevent the other

side from attempting to take your clients' depositions."  *Id.*  Counsel for Dr. Amin

communicated that to counsel for Ms. Ndonga on February 7.  *Id.*

Ms. Ndonga's counsel has forced Dr. Amin's counsel to continuously beg for

responses that are usually delayed and sometimes never forthcoming.  As a follow up

to the February 7 email, later that day, counsel for Dr. Amin requested to have any

answer by February 14, to which Ms. Ndonga's counsel responded, "We'll do our

best.  Thank you!"  *Id.* at 4.  When there was no answer February 16, counsel for Dr.

Caron 0955

Amin wrote again, getting Ms. Ndonga's counsel's out-of-office response stating that she would be out of the office until February 21. *Id.* When counsel for Dr. Amin emailed Ms. Ndonga's other counsel that she needed an answer before February 21, Ms. Ndonga's counsel responded, "We'll get back to you before then." *Id.* at 2-3. Then, finally, on (and not before) February 21, Ms. Ndonga's counsel rejected the offer, stating "we cannot agree to allow depositions on follow-up questions." *Id.* at 2.

Counsel for Dr. Amin then moved on to requesting Ms. Ndonga's counsel's cooperation in accepting service for subpoenas to take depositions and agreeing on dates, noting: "Of course, nothing about accepting service or agreeing to dates for the subpoenas would preclude you from moving for any other relief that you may feel you are entitled to." *Id.* at 1. Ms. Ndonga's counsel never responded to this request.

Instead, after Dr. Amin spent time and effort to serve third party witnesses, counsel for Ms. Ndonga emailed counsel for Dr. Amin on March 22, at first acknowledging that Ms. Ndonga was served, stating that she "just sent us the attached non-party subpoena" and asking the date that it was served, claiming that Mbeti Ndonga was "unclear." Ex. 5, March Email Correspondence, at 9. That counsel further stated: "Please note that we are concerned that the non-party subpoenas for Mbeti Ndonga and Luz Walker [another *Oldaker* Plaintiff] are attempts by Dr. Amin to circumvent the stay of discovery in the *Oldaker* litigation"—notably not a concern raised in the nearly year of communications

Caron 0956

between Dr. Amin's counsel and Ms. Ndonga's counsel.

Ms. Ndonga's counsel went on to inform Dr. Amin's counsel that "[w]e will be seeking appropriate relief in the *Oldaker* litigation as well as in the *NBC Universal* litigation." *Id.* at 9-10.  Within an hour, counsel for Dr. Amin relayed that the date of service of the subpoena was March 14.  *Id.* at 8.  After initially thanking Dr. Amin's counsel for the information, for Ms. Ndonga's counsel then wrote the following day to claim that Mbeti Ndonga was "not personally served" and therefore had no obligation to attend the deposition, attaching declarations from Ms. Ndonga and her mother.  *Id.* at 6-7.  These declarations contradict video evidence of service upon Ms. Ndonga.  *Id.* at 6-7.

Counsel for Ms. Ndonga wrote four additional objections and requested counsel for Dr. Amin inform her if Dr. Amin's counsel intended to enforce the subpoena by the following day.  *Id.*  Counsel for Dr. Amin then attached a videotape from the process server (which showed a woman opening a door and accepting a subpoena and check while answering "yes" that she is Mbeti Ndonga), memorialized case law demonstrating that Ms. Ndonga's position regarding when a subpoena is delivered was too narrow, and noted that the video contradicted elements of the declarations that counsel for Ms. Ndonga had attached to its previous email.  *Id.* at 4.  Counsel for Dr. Amin further explained that "it is simply not true" that the subpoena is an attempt to "circumvent the stay of discovery in the *Oldaker* case," Ms. Ndonga

10

plainly having information pertinent to *NBCUniversal* and NBCUniversal itself having identified the *Oldaker* Plaintiffs as relevant witnesses to that litigation. *Id.*

Finally, March 24, Friday afternoon, counsel for Ms. Ndonga wrote: "Would you accept a declaration from Mbeti Ndonga in lieu of her deposition on April 4?" *Id.* at 2. The following morning, she wrote again: "Would you consent to a stay of the subpoena pending resolution of a motion to quash?" *Id.* at 1. In response, counsel for Dr. Amin noted the ways that a motion to squash was meritless, continuing: "I would love to cooperate with you on timing and location of the depositions (as I've repeatedly offered). Please stop the threats of meritless motion practice and let's get to the depositions. They won't be long and could be efficiently scheduled if you would work with us instead of attempting delay and causing unnecessary burden." *Id.*

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for broad discovery, including "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Adkins v. Christie*, 488 F.3d 1324, 1330 (11th Cir. 2007) (quotation marks omitted). Federal Rule of Civil Procedure 45 allows parties to obtain discovery from third parties that are not part of

Caron 0958

a lawsuit, and the "scope of information that may be sought via a Rule 45 subpoena

is the same as the scope of discovery generally allowable pursuant to Rule 26(b)."

*Barrett v. Intellectual Jewels of Tera Commc'ns, LLC*, Case No. 1:20-CV-1529-

SDG-JSA, 2020 WL 13588260, at *2 (N.D. Ga. June 22, 2020).  Narrow grounds

allow or require a court in the district in which the subpoena requires compliance to

quash a subpoena, including when the subpoena "subjects a person to undue burden."

Fed. R. Civ. P. 45(d)(3).

## ARGUMENT

**I.      Ms. Ndonga Was Served the Subpoena Twice**

Federal Rule of Civil Procedure 45(b)(1) provides: "Serving a subpoena

requires delivering a copy to the named person and, if the subpoena requires that

person's attendance, tendering the fees for 1 day's attendance and the mileage

allowed by law."  Ms. Ndonga argues that she must be personally *handed* a subpoena

for service to be valid.  Doc. 1-1 at 11-13.  That position is wrong as a matter of law.

Especially under the circumstances here, where even based on Ms. Ndonga's version

of facts she had actual notice of the deposition on March 14, and at worst her mother,

with whom she apparently lives, received the subpoena personally and then handed it

to her, and Ms. Ndonga had sufficient time to engage and utilize counsel.  *See id*.

But even if Rule 45 required that Ms. Ndonga be personally handed the

subpoena, such service has now been achieved, notwithstanding Ms. Ndonga's

Caron 0959

apparent attempts to avoid and contest such service. *See* Ex. 1, Proof of Service, 2 (demonstrating personal service to Ms. Ndonga on March 29, 2023). Because this was the only grounds Ms. Ndonga argued she was not delivered the subpoena to appear for deposition and because of the tight timeline for briefing and hearing in this matter, Dr. Amin does not, here, argue the reasons that Ms. Ndonga was previously bound to respond to the subpoena as a result of her receiving actual notice and personal service of the subpoena on March 14. However, if the Court finds that this issue—that is, whether Ms. Ndonga was delivered the subpoena pursuant to Rule 45 on or around March 14—Dr. Amin requests the opportunity to supplement this brief.

**II.     The Subpoena for Deposition Testimony Does Not Subject Ms. Ndonga to Undue Burden and Does Not Seek Clearly Irrelevant Matter**

Ms. Ndonga implies that this Court must find that her predicted testimony is "relevant" in order to deny her Motion to Quash the Subpoena. *See* Doc. 1-1 at 13-21 (separating arguments for "not relevant to Amin's defamation claims" from arguments on "undue burden"). However, the Federal Rules of Civil Procedure present much narrower grounds for quashing a subpoena. Federal Rule of Civil Procedure 45(d)(3) provides four grounds for which a court "must quash or modify a subpoena" and two grounds for which such a court "may, on motion, quash or modify the subpoena." The only one of those six grounds Ms. Ndonga identifies is the provision requiring a subpoena be quashed or modified if it "subjects a person to undue burden." *Id.*; *see generally*, Doc. 1-1. As Ms. Ndonga argues, Doc. 1-1 at 10,

13

a district court has observed that "a subpoena may be quashed if it calls for 'clearly irrelevant matter.'" *Precision Aviation Grp., Inc. v. Prime Indus., Inc.*, Case No. 1:16-cv-3182-TCB, 2017 WL 2903361 (N.D. Ga. June 16, 2017). However, here "clearly irrelevant matter" does not mean evidence that is determined inadmissible at trial, as in Federal Rule of Evidence 401's definition of "relevant evidence," but rather in the "liberal spirit" of the federal discovery rules, "clearly irrelevant matter" means matter that is ***not*** "reasonably calculated to lead to the discovery of admissible evidence." *Adkins*, 488 F.3d at 1330 (quotation marks omitted).

### A. Ms. Ndonga's testimony is not "clearly irrelevant matter"

Seeking Ms. Ndonga's testimony is, plainly, reasonably calculated to lead to the discovery of admissible evidence in Dr. Amin's Georgia law defamation claim against NBCUniversal. Both parties in the *NBCUniversal* case agree. *See* Ex.s 6-7. In her brief, Ms. Ndonga glides right past one of the most fundamental elements that Dr. Amin must prove—that is, the falsity of the defamatory statements that he mistreated patients—focusing instead largely on how Ms. Ndonga has no relevant testimony about NBCUniversal's actual malice. *See* Doc. 1-1 at 13-15; *see Mathis*, 573 S.E.2d at 380 (listing as the first element of defamation "a false and defamatory statement concerning the plaintiff"). As a preliminary matter, it is not clear that Ms. Ndonga has no testimony about NBCUniversal's actual malice (another element, but not the only one, Dr. Amin must prove). Under the liberal rules of federal discovery,

Caron 0961

Dr. Amin may probe from Ms. Ndonga herself whether she or someone on her behalf had contact with NBCUniversal. Further, the *absence* of such contact may also be relevant to Dr. Amin's allegations that NBCUniversal published the defamatory statements with actual malice. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Setting aside NBCUniversal, however, as Ms. Ndonga's own brief states, the *Oldaker* and *NBCUniversal* cases make different claims against different parties, but "both lawsuits concern Amin's medical treatment of women held in ICE custody at ICDC," and accordingly her testimony regarding Dr. Amin's treatment of ICDC detainees is obviously relevant to the falsity of NBCUniversal's statements that Dr. Amin performed unnecessary medical treatment, including hysterectomies, without patient consent. Doc. 1-1 at 18. Several of the statements at issue in *NBCUniversal*—which, again, has survived a dispositive motion on the pleadings and accordingly is in discovery—accused Dr. Amin of being "overly harsh" with patients, "doing very unnecessary procedures and not what you would need in a short-term detention situation," "full or partial hysterectomies or other procedures for which no medical indication existed," "unnecessary procedures," "without [patients] consenting to it," "like they're experimenting with our bodies," "left her with bruising," and "medical procedures performed on immigrant women without—many

15

without consent at an ICE detention facility in Georgia." *See generally* Doc. 1-4.

Ms. Ndonga alleges in *Oldaker* that Dr. Amin "subjected Ms. Ndonga to a medically unindicated, non-consensual transvaginal ultrasound," as well as other "non-consensual and medically unnecessary procedures without obtaining Ms. Ndonga's informed consent," specifically "dilation and curettage, a laparoscopy, and an ovarian cystectomy without Ms. Ndonga's knowledge." Doc. 1-5 ¶¶ 355-56. Ms. Ndonga states that neither her nor any other plaintiff in *Oldaker* "allege Amin performed a hysterectomy on them." Doc. 1-1 at 5. But of course, Ms. Ndonga's testimony of the *absence* of such procedures is also probative of—or at the very least, reasonably calculated to lead to the discovery of admissible evidence of—the falsity of the accusations of Dr. Amin performing numerous hysterectomies. Accordingly, Ms. Ndonga's testimony about Dr. Amin's treatment of ICDC detainees like herself and his procuring consent from her are extremely relevant to an element of Dr. Amin's claim against NBCUniversal—the falsity of the accusations that Dr. Amin performed abusive medical procedures, including numerous hysterectomies, without patient consent.

## B. The Balance of the Interests Favors Finding No Undue Burden

"The undue burden analysis requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it. Several factors have been identified as pertinent to the analysis,

Caron 0963

including the relevance of the information requested to the underlying litigation and the burden that would be imposed by producing it." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1337 (11th Cir. 2020) (quotation marks omitted). As discussed above, Ms. Ndonga can plainly testify to information highly relevant to Dr. Amin's claims in *NBCUniversal*, especially (but not only) the falsity of NBCUniversal's defamatory statements.

On the other hand, Ms. Ndonga argues that the subpoena imposes "significant burdens" on her, namely "requir[ing] her to recount traumatic events that happened to her while involuntarily detained," and compromising her "privacy interest in not being forced to testify about these traumatic events." Doc. 1-1 at 17. As to Ms. Ndonga's privacy interest, a protective order is in place in *NBCUniversal*, wherein Ms. Ndonga and her counsel may designate confidential her private information. Ex. 2, *NBCUniversal* Protective Order. As to recounting traumatic events, Ms. Ndonga herself has brought a lawsuit, *Oldaker*, presumably under the understanding that, as she writes, parties will seek to depose her testimony about those same events. *See* Doc. 1-1 at 19.

For these same reasons, the subpoena is "proportional to the needs of the case" pursuant to Federal Rule of Civil Procedure 26(b)(1). Ms. Ndonga argues that her deposition "about privileged medical information is not 'proportional to the needs of the case' and is therefore impermissible under Rule 26." Doc. 1-1 at 20. But again,

Caron 0964

protections of the *NBCUniversal* Protective Order would be available to Ms. Ndonga.

Ms. Ndonga also argues that Dr. "Amin already possesses information pertaining to

Ndonga's medical treatment, namely his first-hand knowledge and her medical

records." *Id.* But, while Dr. Amin and NBCUniversal already have knowledge of

her treatment through her medical records, her testimony *about* that treatment and

those records, particularly whether Dr. Amin gave her unnecessary treatment without

her consent, is certainly potentially relevant to Dr. Amin's claims in *NBCUniversal*.

Ms. Ndonga's testimony is simply distinct from and not duplicative of such records

(and Dr. Amin's personal recollection)—just as Ms. Ndonga would not expect the

*Oldaker* Court to provide that her testimony is not relevant in that case when

presumably Dr. Amin's medical records will be available there, as well. And again,

Ms. Ndonga can hardly claim that her privacy interests in her testimony about

medical treatment outweigh a litigant's interests in discovery, when she herself is

bringing claims in her own case that are based on her allegations arising from such

medical treatment, therefore requiring that such medical treatment be revisited by a

factfinder.

Ms. Ndonga further argues that allowing Dr. Amin to depose Ms. Ndonga

"would effectively" allow Dr. Amin to obtain "party discovery in the *Oldaker* case,

in violation of the discovery stay in *Oldaker*" and creating "an unacceptable

likelihood that [Ms. Ndonga] would be subject to not one but *two* duplicative

Caron 0965

depositions by Amin concerning the same traumatic events." Doc. 1-1 at 18-19.  But

of course, Dr. Amin served Ms. Ndonga the subpoena attendant to *NBCUniversal*.

Unlike Dr. Amin's claims in *NBCUniversal*, Ms. Ndonga's claims in *Oldaker* have

not yet survived dispositive motions on the pleadings, which, if granted, would

eliminate Ms. Ndonga's need to be deposed in that case at all.  And, contrary to Ms.

Ndonga's puzzling statement otherwise, the stay in *Oldaker* is not a stay for the entire

litigation based on any special circumstances in that litigation.  *See generally* Doc. 1-

7.  Accordingly, these factors are, at this point, entirely hypothetical.

To the extent that they do come to fruition, they are a result of *Ms. Ndonga*'s

lawsuit in *Oldaker*, not Dr. Amin's seeking appropriate discovery to which the

Federal Rules of Civil Procedure entitle him in *NBCUniversal*.  Further, if

speculation turns to reality, Ms. Ndonga could then seek to limit any deposition in

*Oldaker*, through the cooperation of the parties or at the discretion of the *Oldaker*

Court.  Attempting to stop Dr. Amin's present right to discovery for speculative

future duplicative discovery in another case prejudices Dr. Amin and would be

improper burden shifting.

Indeed, Dr. Amin would be prejudiced by the inability to acquire deposition

testimony from Ms. Ndonga.  The *NBCUniversal* Scheduling Order sets a deadline

for discovery depositions of fact witnesses of July 31, 2023, and a deadline for all

civil motions of November 3, 2023.  Ex. 3, Scheduling Order, *Amin v. NBCUniversal*

Caron 0966

*Media, LLC*, Case No. 5:21-CV-56 (Nov. 28, 2022), ECF No. 61.  Dr. Amin is

preparing for summary judgment and for trial, and Ms. Ndonga can testify as to

matters that Dr. Amin reasonably calculates could lead to admissible evidence in his

case against NBCUniversal.

Further, the steps Ms. Ndonga must undertake to comply with the subpoena

are minimal, and Dr. Amin has worked hard to limit those burdens as much as

possible.  Dr. Amin has subpoenaed Ms. Ndonga for her testimony, and his counsel

has repeatedly offered to work with counsel for Ms. Ndonga on scheduling the

deposition.  *See generally*, Ex. 4, February Correspondence; Ex. 5, March Email

Correspondence.  Those overtures have been repeatedly rejected.  Dr. Amin has

given Ms. Ndonga a check for the fees for one day's attendance.  Ex. 1, Proof of

Service, 2.  Accordingly, to the extent a deposition would present any burden, it is the

result of Ms. Ndonga and her counsel's refusal to work with Dr. Amin.

**III.    The Subpoena Should Not Be Modified to Curtail Dr. Amin's Rights**

Ms. Ndonga cites the same arguments addressed above in requesting the

alternative relief that the Court limit the subpoena "to require that Ndonga answer

limited questions narrowly tailored to the subject matter of the remaining Challenged

Statements in Amin's defamation case either by responding via written declaration or

by deposition on limited written questions."  Doc. 1-1 at 21.  This request is more

than a little bit maddening, as Dr. Amin, through his counsel, offered just such

Caron 0967

questions at the beginning of this dispute only to be met with Ms. Ndonga's

counsel's silence and then refusal to participate when Dr. Amin reserved his right to

seek a deposition if the declaration answers proved to be inadequate, all while the

discovery deadlines of NBCUniversal marched forward.  *See generally* Ex. 4,

February Email Correspondence; Ex. 3, NBCUniversal Amended Scheduling Order.

Because of the falsities contained in the declarations shared by Ms. Ndonga, Dr.

Amin is no longer willing to agree to this limitation on his discovery at all.

　　　In support thereof, Ms. Ndonga cites only two out-of-circuit district court

orders and an Eleventh Circuit case that stands merely for the obvious proposition

that district courts "have broad discretion in fashioning discovery rulings."  Doc. 1-1

at 21-23.  Even still, those two non-binding cases are inapposite.  For example, Ms.

Ndonga cites cases in which district courts curtailed depositions whose subjects were

"likely to implicate privileged information."  *Id.* at 22 (citing *Gatoil, Inc. v. Forest*

*Hill State Bank*, 104 F.R.D. 580 (D. Md. 1985); *Fid. Mgmt. & Rsch. Co. v. Actuate*

*Corp.*, 275 F.R.D. 63 (D. Mass. 2011)).  But those cases did not involve simply

*private* information, such as medical information that, anyway, would be protected

by the *NBCUniversal* Protective Order.  Ex. 2, NBCUniversal Protective Order.

Rather, *Gatoil, Inc. v. Forest Hill State Bank* involved a deposition that would elicit

testimony subject to the witness's privilege against self-incriminating evidence.  104

F.R.D. 580, 582 (D. Md. 1985).  The court at bar had a specific "mode of

Caron 0968

proceeding" it favored in cases in which a deposition witness needed to invoke such

privilege, and it was under those circumstances the court ordered deposition upon

written questions.  It is plainly *not* the case that, as Ms. Ndonga implies through her

citation, that case supports the proposition: "Factors as minor as travel expense have

been found sufficient."  Doc. 1-1 at 22.

   *Fid. Mgmt. & Rsch. Co. v. Actuate Corp.* is also no help to Ms. Ndonga.  That

case involved information that enjoyed protection from the work product doctrine,

which accordingly required the parties and court to parse testimony "to distinguish

between 'facts' (not protected) and the issue of why those facts have legal

consequences, which usually has a work-product (lawyer's mental impressions)

dimension."  275 F.R.D. 63, 64 (D. Mass. 2011).  There is no such parsing issue as to

Ms. Ndonga's testimony, which is not legally privileged in the same way.  Some of

her testimony may be private, but the *NBCUniversal* Protective Order will keep such

information confidential.  Accordingly, the reasoning underlying these cases' orders

that the parties employ written questioning are not present here.

**IV.    No Stay of the Deposition Date is Warranted**

   Ms. Ndonga further requests a stay of the deposition date pending the Court's

ruling.  No such stay is necessary.  For the reasons discussed above, Ms. Ndonga is

not likely to succeed on the merits of such Motion.

   Ms. Ndonga cites "being subjected to a traumatic and unnecessary deposition"

as another reason for a stay.  Doc. 1-1 at 23.  But as discussed above, Ms. Ndonga

herself brought a lawsuit regarding the same medical treatment that underlies

*NBCUniversal* and accordingly must have contemplated and been ready for a

deposition which, of course, will be conducted with appropriate respect and decorum.

Further, regardless of its "necessity," for the reasons discussed above, Ms. Ndonga

clearly has pertinent information such that Dr. Amin's subpoenaing her testimony is

reasonably calculated to discover admissible evidence in *NBCUniversal*.

Ms. Ndonga further argues that briefing is not complete.  *Id.* at 24.  But the

Court has (1) Ms. Ndonga's Motion and supporting brief, and it will have (2) Dr.

Amin's arguments once this instant brief is filed, and (3) the benefit of oral argument

after the morning of March 31.  Doc. 4.

Ms. Ndonga further writes that a delay would not prejudice Dr. Amin because

the deadline for depositions of fact witnesses in *NBCUniversal* does not close until

July 31, 2023.  Doc. 1-1 at 24.  But disputes regarding Ms. Ndonga's testimony have

been ongoing, as she admits, for around a year now.  *Id.* at 9.  Further, Dr. Amin has

other witnesses to depose, and the testimony of patients such as Ms. Ndonga will

inform his strategy in those future depositions.  Dr. Amin's good faith efforts to work

with Ms. Ndonga through her counsel have been rebuffed, and accordingly Dr. Amin

should not be forced to delay this deposition any longer in response to Ms. Ndonga's

Motion.

Caron 0970

Finally, Ms. Ndonga writes that a stay "would serve the public interest by preserving Ndonga's rights under Rule 45 and Rule 26 to object to and request modification of a burdensome subpoena." Doc. 1-1 at 25 (citation omitted). But of course, Dr. Amin has his own rights under Rules 45 and 26, and the public interest in those would not be served by a stay but rather by the upholding of this lawful subpoena.

## V.   The Court Should Award Dr. Amin His Fees and Costs to Respond to Ms. Ndonga's Meritless Motion

Ms. Ndonga's motion creates needless motion practice, expands the litigation unnecessarily, and has caused Dr. Amin unnecessary time and expense. In the course of the frivolous filing, Ms. Ndonga's counsel shared two declarations that cannot both be true (and potentially neither are true). Even in the face of video evidence of same, the declarations remain (though one was not shared with the Court). *See* Ex. 5 at 6-7. In addition, even after a second service on Ms. Ndonga, her counsel persists in its claim that service is not perfected. Further, even after knowing that all parties in the NBCUniversal case have stated that the *Oldaker* Plaintiffs as having discoverable evidence, Ms. Ndonga's counsel persists in seeking to stop Dr. Amin's right to discovery from them.

Dr. Amin requests permission to separately brief a motion for fees under 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any

case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.")  Counsel for Ms. Ndonga is also counsel for other of the *Oldaker* Plaintiffs who are evading service and/or filing other frivolous motions to quash in other district courts.  In addition, counsel for *Oldaker* Plaintiffs filed a motion for Dr. Amin to "show cause" why he is not violating the "discovery stay" in that litigation. This filing frenzy must stop, and fees must be assessed to deter further attempts to stall Dr. Amin's right.

## CONCLUSION

For the reasons discussed above, Dr. Amin respectfully requests this Court deny Ms. Ndonga's Motion to Quash (Doc. 1) and award fees in favor of Dr. Amin in having to respond to the Motion or allow Dr. Amin leave to file separate briefing in support of that request.

Respectfully submitted this 30th day of March 2023.

**STACEY EVANS LAW**

**/s/ Stacey Godfrey Evans**
Stacey Godfrey Evans
Georgia Bar No. 298555
Tiffany Watkins
Georgia Bar No. 228805
John Amble Johnson
Georgia Bar No. 229112
4200 Northside Parkway NW
Building One, Ste 200
Atlanta, Georgia 30327

**CHILIVIS GRUBMAN
DALBEY & WARNER LLP**

Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

25

Telephone: 770-779-9602                   *Counsel for Plaintiff*
Facsimile: 404-393-2828
sevans@staceyevanslaw.com
twatkins@staceyevanslaw.com
ajohnson@staceyevanslaw.com

26

## LOCAL RULE 7.1(D) CERTIFICATE

The undersigned counsel certifies that this Document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1.

This <u>30th</u> day of March, 2023.

<div align="center" style="margin-left:40%">

**<u>/s/ Stacey Godfrey Evans</u>**
Stacey Godfrey Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com

*Counsel for Plaintiff*

</div>

Caron 0974

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S**

**RESPONSE IN OPPOSITION TO NON-PARTY MBETI NDONGA'S**

**MOTION TO STAY AND TO QUASH DEPOSITION SUBPOENA OR, IN**

**THE ALTERNATIVE TO MODIFY** with the Clerk of Court using the CM/ECF

system, which will automatically send e-mail notification of such filing to the

attorneys of record.

This <u>30th</u> day of March 2023.

<div align="center">

<u>**/s/ Stacey Godfrey Evans**</u>
Stacey Godfrey Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com

*Counsel for Plaintiff*

</div>

Caron 0975