## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively the "United States"); the State of Georgia; the Hospital Authority of Irwin County d/b/a Irwin County Hospital ("Defendant ICH"), Mahendra Amin, M.D. ("Defendant Amin"), Ashfaq Saiyed, M.D., Romana Bairan, M.D., Arturo Ruanto, M.D., Concordio Ursal, M.D., Drew Howard, M.D., Steve Anderson, M.D., Robert Reese, M.D., and Marshall Tanner, M.D., (Defendant ICH, Defendant Amin and these eight (8) other doctors are collectively referred to as "Defendants"); and  Connie Brogdon and Summer Holland (collectively "Relators") (hereafter collectively referred to as "the Parties"), through their authorized representatives.  Defendant Amin and Drs. Saiyed, Bairan, Ruanto, Ursal, Howard, Anderson, Reese and Tanner are hereby collectively referred to as "Defendant Doctors."

## RECITALS

A.      Defendant ICH is owned and operated by the Irwin County Hospital Authority. The Chairman of the Irwin County Hospital Authority is Joey Whitley.  Defendant ICH's principal office is located at 710 North Irwin Avenue, Ocilla, Georgia 31774.  Defendant ICH provides medical services to patients and performs various tests on-site, for which Defendant ICH submits claims to Medicare, Medicaid and other Federal and non-Federal insurance programs.

# Exhibit "A"

AMIN_0011550

B.      Defendant Amin is a physician of Obstetrics & Gynecology with privileges and affiliation with Defendant ICH.  Defendant Amin also owns and operates Dr. Mahendra Amin MD, P.C. ("Amin P.C."), the primary place of business of which is located at 2016 Ocilla Road, Douglas, Georgia 31533.  Defendant Amin has two practices which are owned and operated by him and Amin, P.C., one in Douglas, Georgia and the other in Ocilla, Georgia.  Dr. Amin is also the President of MGA Health Management, Inc., an entity that entered into a management services agreement with Defendant ICH, is the President, Secretary and Treasurer of Mahendra Investments, Inc., and is the registered agent of MGA Investments, LLLP, both of which are entities that leased office space to Defendant ICH.

C.      Ashfaq Saiyed, M.D., Romana Bairan, M.D., Arturo Ruanto, M.D., Concordio Ursal, M.D., Drew Howard, M.D., Steve Anderson, M.D., Robert Reese, M.D., and Marshall Tanner, M.D., are physicians who are employed by, or contracted with, Defendant ICH to provide treatment to patients at Defendant ICH in accordance with the policies, procedures and practices of Defendant ICH.

D.      On July 8, 2013, Relators filed a *qui tam* action in the United States District Court for the Middle District of Georgia captioned *United States and State of Georgia ex rel. Connie Brogdon and Summer Holland v. Hospital Authority of Irwin County, Mahendra Amin, M.D., Ashfaq Saiyed, M.D., Romana Bairan, M.D., Arturo Ruanto, M.D., Concordio Ursal, M.D., Drew Howard, M.D., Steve Anderson, M.D., Robert Reese, M.D., and Marshall Tanner, M.D.,* No. 17:13-CV-97 (HL), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729, *et seq.*, and the Georgia False Medicaid Claims Act , O.C.G.A. § 49-4-168.1, *et seq.*(the Civil Action).

AMIN_0011551

E.     The United States and State of Georgia contend that the Defendants submitted or caused to be submitted claims for payment to the Medicare Program Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare") and the Georgia Medicaid Program ("Medicaid").

F.     The United States and the State of Georgia contend that the government has certain civil claims against the Defendants as specifically alleged in the Complaint filed on July 8, 2013, during the period from February 18, 1998, through the Effective Date of this Agreement, for submitting or causing to be submitted claims to Medicare and Medicaid: (1) arising from referrals by Dr. Amin while ICH was providing remuneration to Dr. Amin under management services agreements dated July 31, 1996 and November 2010, neither of which was consistent with fair market value; (2) arising from referrals from Defendant Doctors and treatment provided by Defendant Doctors while Defendant ICH had entered into leases with said Defendant Doctors that were not memorialized in writing, all in violation of the Stark Law, the Anti-Kickback Statute, and related state regulations and policies; and (3) for diagnostic imaging services that lacked the required level of supervision.  That conduct is referred to below as the "Covered Conduct."

G.     This Settlement Agreement is neither an admission of liability by Defendants nor a concession by the United States or the State of Georgia that the government's claims are not well founded.

H.     Relators claim entitlement under 31 U.S.C. § 3730(d) and O.C.G.A. §49-4-168.2(i) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable

AMIN_0011552

expenses, attorneys' fees and costs.  Additionally, Relator Brogdon claims entitlement under 31 U.S.C. § 3730(h) and O.C.G.A. §49-4-168.4 to damages for retaliatory termination.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## **TERMS AND CONDITIONS**

1.      In addition to Defendant ICH hiring advanced practitioners to provide additional patient coverage for a period of no less than 1 year, Defendant ICH shall pay to the United States and the State of Georgia Five Hundred Twenty Thousand and no 100ths Dollars ($520,000) (the "Settlement Amount").  On the Effective Date of this Agreement, this sum shall constitute a debt due and immediately owing to the United States and State of Georgia.  The Settlement Amount shall be paid as follows:

A.      Defendant ICH shall pay the Settlement Amount in accordance with the payment schedule attached hereto as Exhibit A.

B.      All payments set forth in Paragraph 1(A) shall be made to the United States by electronic funds transfer pursuant to written instruction provided by the Office of the United States Attorney for the Middle District of Georgia.  The entire balance of the Settlement Amount, or any portion thereof, may be prepaid without penalty.

C.      All Settlement Amount payments received by the United States shall be distributed by the Office of the United States Attorney for the Middle District of Georgia pursuant to the terms of this Agreement and a separate Memorandum of Understanding between

Page 4 of 34

AMIN_0011553

the Office of the United States Attorney for the Middle District of Georgia and the State of

Georgia.

2.      If Defendant ICH fails to hire the advanced practitioners or fails to make any of

the payments described in Paragraph 1(A) above at the specified time, upon written notice to

Defendant ICH and Defendant Amin, Defendant ICH or Defendant Amin shall have twenty (20)

calendar days to cure the default.  If the default is not cured within the twenty-day period: (a) the

remaining unpaid principal portion of the Settlement Amount shall become accelerated and

immediately due and payable, with interest at a simple rate of 12% per annum from the date of

default until the date of payment; (b) the United States and the State of Georgia may pursue any

and all actions for collection as it may choose, including, without limitation, filing an action for

specific performance of this Agreement; (c) the United States and the State of Georgia may

offset the remaining unpaid balance of the Settlement Amount (inclusive of interest) from any

amounts due and owing to Defendant ICH by any department, agency, or agent of the United

States or the State of Georgia; and (d) the United States and the State of Georgia may rescind this

Agreement and reinitiate its suit based on the Covered Conduct.  Defendant ICH agrees not to

contest any collection action undertaken by the United States or the State of Georgia pursuant to

this Paragraph 2, and to pay the United States and the State of Georgia all reasonable costs

incurred in any such collection action, including attorneys' fees and expenses.

3.      Upon receipt of any payments toward the Settlement Amount, as described in

Paragraph 1(A), the United States shall disburse 16% of the payments to both the United States

and the State of Georgia to Counsel for Relators (the "Relators' Share").  Counsel for Relators is

AMIN_0011554

responsible for distribution of the Relators' Share in accordance with any agreements between Relators, and the payment of the Relators' Share to Relators (via Counsel for Relators) is contingent upon the United States receiving a payment from any of the Defendants.

4.      Following receipt of written instructions from Counsel for Relators and conditioned upon the filing of the Joint Stipulation of Dismissal described in Paragraph 22 (through which each party mutually releases all of their claims in the Civil Action with prejudice), Defendant ICH agrees to pay to Counsel for Relators an aggregate total of $75,000 (seventy five thousand dollars) in 12 equal installments beginning February 15, 2015, pursuant to 31 U.S.C. § 3730(d) and O.C.G.A. §49-4-168.2(i) for expenses and attorney's fees and costs arising from the filing of the Civil Action in accordance with any agreements between Defendants and Relators. Defendant ICH agrees to pay to Relator Brogdon $40,000 in lump sum on or before March 1, 2015, for her claim of wrongful termination under 31 U.S.C. § 3730(h) and O.C.G.A. §49-4-168.4 pursuant to the terms of any agreements between Defendants and Relators. ICH does not agree to rehire Brogdon, and Brodgon agrees not to seek employment at ICH at any time in the future. Additionally, Defendant ICH agrees to pay to Relator Holland $7,000 in lump sum on or before March 1, 2015, for her claim of wrongful termination under 31 U.S.C. § 3730(h) and O.C.G.A. §49-4-168.4 pursuant to the terms of any agreements between Defendants and Relators.

5.      Subject to the exceptions in Paragraph 9 (concerning excluded claims) below, and conditioned upon Defendant ICH's full payment of the Settlement Amount, and subject to Paragraph 21 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States and the State of Georgia release Defendants from any civil or administrative monetary claim the

AMIN_0011555

United States or the State of Georgia has for the Covered Conduct under the False Claims Act,

31 U.S.C. §§ 3729- 3733; the Georgia False Medicaid Claims Act, O.G.C.A. §§49-4-168 *et seq.*,

the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies

Act, 31 U.S.C. §§ 3801-3812; the civil monetary penalty provisions of the Stark Law, 42 U.S.C.

§§ 1395nn(g)(3) and (4); or the common law theories of payment by mistake, unjust enrichment,

and fraud.

6.       In consideration of the obligations of Defendants in this Agreement, conditioned

upon the full payment of the Settlement Amount, Relators' claims under 31 U.S.C. § 3730(d)

and O.C.G.A. § 49-4-168.2(i), the amount agreed to in Paragraph 4 concerning Relator

Brogdon's claims under 31 U.S.C. § 3730(h) and O.C.G.A. §49-4-168.4, and subject to

Paragraph 21, below (concerning bankruptcy proceedings commenced within 91 days of the

Effective Date of this Agreement or any payment made under this Agreement), Relators, for

themselves and for their heirs, successors, attorneys, agents, and assigns, release Defendants,

together with their current and former parent corporations, divisions, current or former owners

and officers, directors and affiliates and their successors and assigns for any of them from any

and all rights, claims, expenses, debts, liabilities, demands, obligations, costs, damages, injuries,

actions, and causes of action of every nature, whether known or unknown, suspected or

unsuspected, in law or in equity from the beginning of the world to the Effective Date of this

Agreement including but not limited to those they advanced or could have advanced in the Civil

Action or otherwise under the False Claims Act, 31 U.S.C. 3729-3733 and the Georgia False

Medicaid Claims Act, O.G.C.A. §§49-4-168 *et seq*, as well as any claim premised, in whole or in

part, upon the civil monetary penalty provisions of the Stark Law, 42 U.S.C. § 1395nn(g)(3) and

(4), for expenses or attorney's fees and costs under 31 U.S.C. § 3730(d) and O.G.C.A. §49-4-

AMIN_0011556

168.2(i), or under 31 U.S.C. § 3730(h) and O.G.C.A. §49-4-168.4 for employment decisions by Defendants, and/or other statutory or common law doctrines of payment by mistake, unjust enrichment, breach of contract, fraud, or the like.

The foregoing sentence is intended to be interpreted as a general release.  Furthermore, Relators covenant not to sue Defendants, their current and former officers and directors, employees, agents, attorneys and shareholders of Defendants with respect to any and all rights, claims, expenses, debts, liabilities, demands, obligations, costs, damages, injuries, actions and causes of action of every nature, whether known or unknown, suspected or unsuspected, in law or in equity, including those for attorney's fees and costs arising prior to the Effective Date of this Agreement.

7.      In consideration of the obligations of Defendant ICH in this Agreement and the Corporate Integrity Agreement (CIA), entered into between the OIG-HHS and Defendant ICH, conditioned upon ICH's full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Defendant ICH under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law); the civil monetary penalty provisions of the Stark Law, 42 U.S.C. §§ 1395nn(g)(3) and (4); or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in Paragraph 9 (concerning excluded claims), below, and as reserved in this Paragraph.  The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Defendants from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct.  Nothing in this Paragraph precludes

AMIN_0011557

the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9, below. Notwithstanding the foregoing, in the event of a default that is not cured within twenty (20) days as defined in Paragraph 2, above, OIG-HHS may exclude Defendant ICH from participating in all Federal health care programs until Defendant ICH pays the Settlement Amount and reasonable costs as set forth in Paragraph 2, above. OIG-HHS will provide written notice of any such exclusion to Defendant ICH. Defendant ICH waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion Defendant ICH wishes to apply for reinstatement, Defendant ICH must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Defendant ICH will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

      8.     In consideration of the obligations of Defendants in this Agreement, and conditioned upon Defendant ICH's full payment of the Settlement Amount, the State of Georgia agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicaid for the Covered Conduct, except as reserved in Paragraph 9 (concerning excluded claims) below and in this Paragraph. The State of Georgia expressly reserves all rights to comply with any statutory obligations to exclude Defendant ICH from Medicaid based upon the Covered Conduct. Notwithstanding the foregoing, in the event of a default that is not cured within twenty (20) days as defined in Paragraph 2, above, the State of Georgia may exclude Defendant ICH from participating in the Georgia Medicaid program until Defendant ICH pays the Settlement Amount and reasonable costs as set forth in Paragraph 2,

AMIN_0011558

above. The State of Georgia will provide written notice of any such exclusion to Defendant ICH. Defendant ICH waives any further notice of the exclusion and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion Defendant ICH wishes to apply for reinstatement, Defendant ICH must submit a written request for reinstatement to the State of Georgia and will not be reinstated unless and until the State of Georgia approves such request for reinstatement.

9.    Notwithstanding the releases given in Paragraphs 5 through 8 of this Agreement, or any other term of this Agreement, the following claims of the United States and the State of Georgia are specifically reserved and are not released:

a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code) or the Georgia Revenue and Taxation Code;

b.    Any criminal liability;

c.    Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

d.    Any liability to the United States (or its agencies) or the State of Georgia for any conduct other than the Covered Conduct;

e.    Any liability based upon obligations created by this Agreement;

f.    Except as explicitly stated in this Agreement, any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g.    Any liability which may be asserted on behalf of other payors or insurers, including those that are paid by the State's Medicaid program on a capitated basis;

AMIN_0011559

h.    Except as explicitly stated in this Agreement, any liability for failure to deliver goods or services due; and

i.    Except as explicitly stated in this Agreement, any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

10.    Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and O.G.C.A. §49-4-168.2. Conditioned upon Relators' receipt of the payment described in Paragraph 3, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States and the State of Georgia, their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730 and O.G.C.A. §49-4-168.2, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

11.    Defendant ICH has provided sworn financial disclosure statements (Financial Statements) to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Defendant ICH warrants that the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which Defendant ICH had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by Defendant ICH on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $250,000 or more, the United States and the State of Georgia may at their option: (a) rescind this Agreement and file suit against Defendant ICH based on the Covered Conduct, or (b) let the

AMIN_0011560

Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Defendant ICH previously undisclosed. Defendant ICH agrees not to contest any collection action undertaken by the United States and the State of Georgia pursuant to this provision, and immediately to pay the United States and the State of Georgia all reasonable costs incurred in such an action, including attorneys' fees and expenses.

12.     In the event that the United States and the State of Georgia, pursuant to Paragraph 11 (concerning disclosure of assets), above, opt to rescind this Agreement, Defendant ICH agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States or the State of Georgia within 120 calendar days of written notification to Defendant ICH that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on July 8, 2013.

13.     Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States or the State of Georgia concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code, or the Georgia Revenue and Taxation Code.

AMIN_0011561

14.     Defendants fully and finally release the United States and the State of Georgia, their agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States and the State of Georgia, their agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' and the State of Georgia's investigation and prosecution thereof.

15.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare carrier or intermediary or any state payer any previously denied claims related to the Covered Conduct, and agree not to appeal any such denials of claims.

16.     Defendants agree to the following:

a.     "Unallowable Costs" Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' or the State of Georgia's audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' and the State of Georgia's audit(s) and civil

Page 13 of 34

investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement;

(5) the payment Defendants make to the United States and the State of Georgia pursuant to this Agreement and any payments that Defendants may make to Relators, including costs and attorneys' fees; and

(6) the negotiation of, and obligations undertaken pursuant to the CIA to:

(i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and

(ii) prepare and submit reports to the OIG-HHS,

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in this Paragraph 16.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Defendants.

b. Future Treatment of Unallowable Costs: If applicable, Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

AMIN_0011563

c. Treatment of Unallowable Costs Previously Submitted for Payment: If applicable, Defendants further agree that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agrees that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.  Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendants or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to

AMIN_0011564

determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17. Defendants agree to make their reasonable best efforts to cooperate fully and truthfully with any investigation by the United States and the State of Georgia of individuals and entities not released in this Agreement. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States and the State of Georgia, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

18. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 19 (waiver for beneficiaries paragraph), below.

19. Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

20. Defendant ICH warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and

AMIN_0011565

shall remain solvent following the initial scheduled payment to the United States in the amount of $21,666.66.

Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

21.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Defendants commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of any of the Defendants' debts, or seeking to adjudicate any of the Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for any of the Defendants or for all or any substantial part of any of the Defendants' assets, the Defendant involved in the proceedings described as (a) and (b) above agrees as follows:

a.     The Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendant shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) any of the Defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) the Defendants involved in the proceedings described as

AMIN_0011566

(a) and (b) above was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States or the State of Georgia; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to any of the Defendants.

      b.     If any of the Defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States and the State of Georgia, at their sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against the Defendants for the claims that would otherwise be covered by the releases provided in Paragraphs 5 through 8, above. Defendants agree that (i) any such claims, actions, or proceedings brought by the United States and the State of Georgia are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and none of the Defendants shall argue or otherwise contend that the United States' or the State of Georgia's claims, actions, or proceedings are subject to an automatic stay; (ii) none of the Defendants shall plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the United States or the State of Georgia within 120 calendar days of written notification to the Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on July 8, 2013; and (iii) the United States and State of Georgia have a valid claim against Defendants in the amount of $520,000, and the United States and the State of Georgia may pursue their claim in the case, action, or proceeding

AMIN_0011567

referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

        c.      Defendants acknowledge that the agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

22.      Upon verification of the hiring of advanced practitioners and receipt of the Payment No. 1 in Exhibit A by the United States and upon receipt Relator's (or counsel's) receipt of the first fee payment and the lump sum payments described in Paragraph 4, above, the United States, the State of Georgia, Relators and Defendants shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1), as follows:

        a.      the Stipulation of Dismissal shall be with prejudice as to the Relators' claims, pursuant to and consistent with the terms and conditions of this Agreement;

        b.      the Stipulation of Dismissal shall be with prejudice as to the United States' and the State of Georgia's claims as to the Covered Conduct, pursuant to and consistent with the terms and conditions of this Agreement;

        c.      the Stipulation of Dismissal shall be without prejudice as to the United States and the State of Georgia as to all other claims.

23.      Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

24.      Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

AMIN_0011568

25.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Georgia. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

26.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

27.     The undersigned counsel represents and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

28.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

29.     This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

30.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

31.     All parties consent to the United States' and State of Georgia's disclosure of this Agreement, and information about this Agreement, to the public.

32.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

AMIN_0011569

## THE UNITED STATES OF AMERICA

**MICHAEL J. MOORE**
UNITED STATES ATTORNEY


DATED: _/-/6-15_                    BY: _____

**CHARLES W. BYRD**

**Assistant United States Attorney**

**United States Attorney's Office for the Middle District of Georgia**


DATED:_____                    BY:_____

**ROBERT K. DECONTI**

**Assistant Inspector General for Legal Affairs**

**Office of Counsel to the Inspector General Office of Inspector General**

**United States Department of Health and Human Services**

AMIN_0011570

THE UNITED STATES OF AMERICA

MICHAEL J. MOORE
UNITED STATES ATTORNEY

DATED:_____          BY:_____

CHARLES W. BYRD

Assistant United States Attorney

United States Attorney's Office for the Middle
District of Georgia

DATED: 1/16/15          BY: _____

ROBERT K. DECONTI

Assistant Inspector General for Legal Affairs

Office of Counsel to the Inspector General
Office of Inspector General

United States Department of Health and Human
Services

AMIN_0011571

<u>THE STATE OF GEORGIA</u>

SAMUEL S. OLENS
ATTORNEY GENERAL

Dated: 1/16/15          By: _____
                           BRYAN A. PEARLBERG
                           Director, Medicaid Fraud Control Unit
                           Georgia Department of Law


Dated: January 16, 2015     By: _____
                                MARIAL L. ELLIS
                                General Counsel
                                Georgia Department of Community
                                Health

AMIN_0011572

## DEFENDANT HOSPITAL AUTHORITY OF IRWIN COUNTY

DATED: 1-12-15          BY: _____
                            **JOEY WHITLEY**
                            Chairman

DATED: 1-16-15          BY: _____

                            **SESLEE S. MATTSON**

                            Morris, Manning & Martin, LLP
                            1600 Atlanta Financial Center
                            3343 Peachtree Road, N.E.,
                            Atlanta, Georgia 30326

DATED: 1.13.15          BY: _____

                            **ROY E. BARNES**

                            Barnes Law Group
                            31 Atlanta Street
                            Marietta, Georgia 30060

                            **Counsel for Defendant Hospital Authority of
                            Irwin County**

by SSM

AMIN_0011573

DEFENDANT MAHENDRA AMIN, M.D.

DATED: 1-14-15          BY: _____

                            MAHENDRA AMIN, M.D.

DATED: 1/14/15          BY: _____

                            SCOTT R. GRUBMAN
                            Rogers & Hardin, LLP
                            2700 International Tower
                            229 Peachtree Street, N.E.,
                            Atlanta, Georgia 30303

                            Counsel for Mahendra Amin, M.D.

AMIN_0011574

## DEFENDANT ASHFAQ SAIYED, M.D.

DATED: 1 - 12 - 15          BY: _____

ASHFAQ SAIYED, M.D.

DATED: 1-16-15          BY: _____

**SESLEE S. MATTSON**

Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.,
Atlanta, Georgia 30326

DATED: 1 . 13 . 15          BY: _____

**ROY E. BARNES**

Barnes Law Group
31 Atlanta Street
Marietta, Georgia 30060

**Counsel for Ashfaq Saiyed, M.D.,**

by SSM

AMIN_0011575

<u>DEFENDANT ROMANA BAIRAN, M.D.</u>

DATED: 1 - 12 -15            BY: _____

ROMANA BAIRAN, M.D.

DATED: 1 -16 -15            BY: _____

**SESLEE S. MATTSON**

Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.,
Atlanta, Georgia 30326

DATED: 1 . 13 . 15            BY: _____

**ROY E. BARNES**

Barnes Law Group
31 Atlanta Street
Marietta, Georgia 30060

**Counsel for Romana Bairan, M.D.**

Page 27 of 34

by SSM

## DEFENDANT ARTURO RUANTO, M.D.

DATED: 01-16-15         BY: _____

ARTURO RUANTO, M.D.

DATED: 01-16-15         BY: _____

**SESLEE S. MATTSON**

Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.,
Atlanta, Georgia 30326

DATED: 01-16-15         BY: _____   *with express permission by SSM*

**ROY E. BARNES**

Barnes Law Group
31 Atlanta Street
Marietta, Georgia 30060

**Counsel for Arturo Ruanto, M.D.**

AMIN_0011577

<u>DEFENDANT CONCORDIO URSAL, M.D.</u>

DATED: _01/19/15_     BY: _Concordio F Ursal_

**CONCORDIO URSAL, M.D.**

DATED: _1-16-15_     BY: _Seslee S. Mattson_

**SESLEE S. MATTSON**

Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.,
Atlanta, Georgia 30326

DATED: _1.13.15_     BY: _Roy E Barnes_

**ROY E. BARNES**

Barnes Law Group
31 Atlanta Street
Marietta, Georgia 30060

**Counsel for Concordio Ursal, M.D.**

Page 28 of 34
by SSM

<u>DEFENDANT DREW HOWARD, M.D.</u>

DATED: _1-12-15_          BY: _____

DREW HOWARD, M.D.

DATED: _1-16-15_          BY: _Seslee S. Mattson_

**SESLEE S. MATTSON**

Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.,
Atlanta, Georgia 30326

DATED: _1.13.15_          BY: _____

**ROY E. BARNES**

Barnes Law Group
31 Atlanta Street
Marietta, Georgia 30060

**Counsel for Drew Howard, M.D.**

by SSM

AMIN_0011579

DEFENDANT STEVE ANDERSON, M.D.

DATED: _1/12/15_                BY: _____

STEVE ANDERSON, M.D.

DATED: _1-16-15_                BY: _____

SESLEE S. MATTSON

Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.,
Atlanta, Georgia 30326

DATED _1.13.15_                BY: _____

ROY E. BARNES

Barnes Law Group
31 Atlanta Street
Marietta, Georgia 30060

Counsel for Steve Anderson, M.D.

AMIN_0011580

<u>DEFENDANT ROBERT REESE, M.D.</u>

DATED: 1/12/2015          BY: _Robert V. Reese J. DO._

ROBERT REESE, M.D.

DATED: 1-16-15          BY: _Seslee S. Mattson_

SESLEE S. MATTSON

Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.,
Atlanta, Georgia 30326

DATED: 1.13.15          BY: _Roy E. Barnes_

ROY E. BARNES

Barnes Law Group
31 Atlanta Street
Marietta, Georgia 30060

Counsel for Robert Reese, M.D.

Page 31 of 34
by SSM

AMIN_0011581

<u>DEFENDANT MARSHALL TANNER, M.D.</u>

DATED: 1/12/15                  BY: _____

                               MARSHALL TANNER, M.D.

DATED: 1-16-15                 BY: _____

                               SESLEE S. MATTSON

                               Morris, Manning & Martin, LLP
                               1600 Atlanta Financial Center
                               3343 Peachtree Road, N.E.,
                               Atlanta, Georgia 30326

DATED: 1.13.15                 BY: _____

                               ROY E. BARNES

                               Barnes Law Group
                               31 Atlanta Street
                               Marietta, Georgia 30060

                               Counsel for Marshall Tanner, M.D.

AMIN_0011582

<u>RELATORS</u>

DATED: _1/14/15_          BY: _Connie Brodgon_

                               **CONNIE BRODGON**

DATED: _1-14-15_          BY: _Summer Holland_

                               **SUMMER HOLLAND**

DATED: _1-15-15_          BY: _Mike Bothwell_

                               **MIKE BOTHWELL**
                               The Bothwell Law Group
                               304 Macy Drive
                               Roswell, GA 30076

                               **Counsel for Relators Connie Brodgon and
                               Summer Holland**

Page 34 of 34

## Exhibit A

| Payment No. | Due Date | Payment Amount |
|---|---|---|
| 1 | February 1, 2015 | $21,666.66 |
| 2 | March 1, 2015 | $21,666.67 |
| 3 | April 1, 2015 | $21,666.67 |
| 4 | May 1, 2015 | $21,666.66 |
| 5 | June 1, 2015 | $21,666.67 |
| 6 | July 1, 2015 | $21,666.67 |
| 7 | August 1, 2015 | $21,666.66 |
| 8 | September 1, 2015 | $21,666.67 |
| 9 | October 1, 2015 | $21,666.67 |
| 10 | November 1, 2015 | $21,666.66 |
| 11 | December 1, 2015 | $21,666.67 |
| 12 | January 2, 2016 | $21,666.67 |
| 13 | February 1, 2016 | $21,666.66 |
| 14 | March 1, 2016 | $21,666.67 |
| 15 | April 1, 2016 | $21,666.67 |
| 16 | May 1, 2016 | $21,666.66 |
| 17 | June 1, 2016 | $21,666.67 |
| 18 | July 1, 2016 | $21,666.67 |
| 19 | August 1, 2016 | $21,666.66 |
| 20 | September 1, 2016 | $21,666.67 |
| 21 | October 1, 2016 | $21,666.67 |
| 22 | November 1, 2016 | $21,666.66 |
| 23 | December 1, 2016 | $21,666.67 |
| 24 | January 2, 2017 | $21,666.67 |
| | **Total** | **$520,000.00** |

AMIN_0011584