# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

DR. MAHENDRA AMIN, M.D.,

       Plaintiff,

v.

NBCUNIVERSAL MEDIA, LLC,

       Defendant.

Case No. 5:21-cv-00056-LGW-BWC

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR A PROTECTIVE ORDER QUASHING THE DEPOSITION OF <u>CYNTHIA COUNTS</u>**

## <u>INTRODUCTION</u>

For months, Dr. Amin has argued that he is entitled to depose NBCU's counsel, Cynthia Counts, because he believes she violated a local South Carolina Rule during the deposition of third-party witness Yanira Oldaker.  Perhaps recognizing the numerous problems with his position—*i.e.* the Local Rule does not apply to this case, Ms. Counts did not violate it, and, deposing opposing litigation counsel would not be the appropriate remedy in any event—Dr. Amin now changes course and argues that Ms. Counts is actually a *fact witness* in the present action.  In so doing, he does not contend that Ms. Counts had anything to do with the news reports challenged in this case, which aired on MSNBC in September 2020 (long before Ms. Counts's involvement in this matter).  Instead, he claims that Ms. Counts is a "fact witness" regarding her alleged "intentional interference with a witness" and that her communications with Ms. Oldaker during a thirty-minute lunch "raise[] questions concerning the source of allegations against [him]" and call into question the credibility of Ms. Oldaker and all "similar witnesses" in this case.

Setting aside the objective falsity of Dr. Amin's contentions, his demand for testimony falls woefully short of the high burden to depose opposing litigation counsel—either through oral

deposition or written question.  Accordingly, Ms. Counts's motion for a protective order (the "Motion") should be granted and her deposition subpoena should be quashed.

## ARGUMENT

### I.   DR. AMIN MISREPRESENTS THE FACTS AND SIGNIFICANCE OF MS. OLDAKER'S DEPOSITION

As an initial matter, it is indisputable that neither Ms. Counts nor Ms. Oldaker had any involvement in the four MSNBC news reports challenged in this case.  Ms. Counts was brought on as litigation counsel after Dr. Amin filed this action in September 2021 (almost a year after the news reports aired).  And there is no evidence that anyone at MSNBC heard of Ms. Oldaker until she filed a lawsuit against Dr. Amin months after the challenged news reports were aired.[1]  Faced with Ms. Oldaker's tangential relationship to this action, Dr. Amin attempts to increase the significance of the deposition he now requests by misrepresenting the facts.

*First*, Dr. Amin's Opposition falsely suggests that Ms. Oldaker only began providing testimony harmful to Dr. Amin following the lunch break, when she spoke with Ms. Counts.  *See* Opp. at 1, 5.  But prior to the lunch break, Ms. Oldaker testified that Dr. Amin was "very rough," and "careless" during his examinations and that she told him he was "hurting" her when he performed a transvaginal ultrasound, but he told her to "lay back and that it was almost done." Oldaker Tr. at 23:16-23, 25:10-21, 63:8-14.  She also testified that around ten women in her section at ICDC said Dr. Amin was "aggressive" based on their experiences with him, *id.* at 27:3-20, and that, after the whistleblower complaint was released, women on whom Dr. Amin performed "a lot

---

[1] In addition, Ms. Oldaker did not receive any surgical procedure, including a hysterectomy, from Dr. Amin.  Instead, in her putative class action lawsuit against Dr. Amin, Ms. Oldaker alleges that she received a gynecological examination and transvaginal ultrasound from him, which she described as "painful," and claims that she said "no" to Dr. Amin during one of these examinations.  *See Oldaker v. Giles*, Case No. 7:20-cv-00224-WLS, Dkt. 210, ¶¶ 139-75.

of surgeries" called Dr. Amin a "monster," *id.* at 38:12-39:2.  Thus, Dr. Amin's contention that Ms. Counts somehow influenced Ms. Oldaker to testify against him is specious.

*Second*, Dr. Amin claims that Ms. Counts "went over paperwork" with Ms. Oldaker.  *See* Opp. at 2.  But Ms. Oldaker was clear that *her counsel* and Ms. Counts looked at paperwork, and that she was not "paying attention to" or "eavesdropping" on their conversation.  Oldaker Tr. at 115:10-224.

*Third*, Dr. Amin asserts that Ms. Counts "previewed" the questions she was going to ask. Opp. at 2, 5.  To the contrary,  Ms. Oldaker testified that Ms. Counts provided broad topics of questioning, including Ms. Oldaker's prior hysterectomy and prior pap smears,  Oldaker Tr. at 116:3-9, 220:1-7, which accorded with the parties' agreement to provide the *Oldaker* plaintiffs with deposition topics.

*Finally*, Dr. Amin misrepresents the distinction between Ms. Counts and Ms. Oldaker's attorneys.  Dr. Amin fixates on the fact that Ms. Oldaker initially testified that she did not tell him "no" during her examination (just that he was "hurting her"), but she later testified that she *did* tell him "no."  *See* Opp. at 5.  But this purported change occurred *prior* to the lunch break and thus is entirely irrelevant to the present motion.  *Compare* Oldaker Tr. 63:8-16 ("no" to the question, "[d]id you tell [Dr. Amin] no [during the transvaginal ultrasound]"), *with* 96:6-19 (explaining that she did tell Dr. Amin "no"), *and* 109:16-110:3 (break for lunch).

Consistent with the Southern District of New York's ruling quashing the deposition of Ms. Oldaker's counsel, there is no evidence that Ms. Counts's brief lunch with Ms. Oldaker caused Ms. Oldaker to change her testimony or impacted the deposition in any way (other than subjecting Ms. Oldaker to additional questioning about the lunch).  Accordingly, there is no reason to depose Ms. Counts.

## II.      DR. AMIN OFFERS NO LEGAL BASIS FOR DEPOSING MS. COUNTS

In her Motion, Ms. Counts established that there was no basis for her deposition because the Local South Carolina Rule that Dr. Amin believes she violated is inapplicable to this action, as was already determined by the Southern District of New York.  *See* Mot. at 10-11.  In his Opposition, Dr. Amin largely ignores this argument, insisting that this issue is "not yet before the Court," and claims that he now may move for sanctions under the Federal Rules of Civil Procedure.  *See* Opp. at 17-18.  But the purported violation of the Local Rule was the entire basis for Dr. Amin seeking the deposition of Ms. Counts in the first place.  *See* McNamara Decl. Ex. B ("Plaintiff has concerns that there were multiple violations of the D.S.C. Local Rules during Ms. Oldaker's deposition . . . Before we file a motion for sanctions, we want to exercise our right to explore the communications that occurred during those breaks with Ms. Counts.").  His shifting stance on this Rule's relevance to this dispute underscores the absence of any legal basis to depose Ms. Counts.

Instead, Dr. Amin now insists that he is entitled to depose Ms. Counts because she became a "fact witness" in this action when she had lunch with Ms. Oldaker and her counsel.  *See* Opp. at 2, 5, 11.  This argument is meritless.  Ms. Counts's brief lunch with Ms. Oldaker three years after the challenged news reports were aired is irrelevant to any material issue in dispute.[2]  And even if Ms. Counts *were* a fact witness, Dr. Amin fails to satisfy the heightened standard for deposing opposing counsel.

---

[2] By contrast, one of Dr. Amin's attorneys, Scott Grubman, was a fact witness in this action—providing statements to MSNBC in September 2020 as well as countless other media organizations that reported on the whistleblower complaint's allegations at that time.  When NBCU indicated that it wanted to depose Mr. Grubman, Dr. Amin's counsel strenuously objected, arguing that the burden to depose opposing counsel is "extremely high."  Recognizing as much, NBCU chose not to move forward with Mr. Grubman's deposition.  Dr. Amin's argument that he is entitled to depose opposing counsel as a supposed "fact witness," even though she has no connection to the merits of this action is belied by his prior inconsistent positions in this case.

As the Southern District of Georgia explained in *In re Douglas Asphalt*, 36 B.R. 246, 250 (S.D. Ga. Bankr. 2010), under the test enumerated in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987), a party seeking to depose opposing counsel must show that "(1) no other means exists to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Dr. Amin largely discounts the *Shelton* test, focusing instead on the Second Circuit's test for deposing opposing counsel adopted by the Northern District of Georgia in *Fox v. Pitney Bowes Inc.,* 2009 WL 10670417 (N.D. Ga. Sept. 18, 2009).[3]  But even the *Fox* court recognized that "special scrutiny" is necessary when a party seeks testimony from an opposing party's counsel. *Id.* at *2.  And the very cases that Dr. Amin cites prove that testimony is rarely ordered when, as here,  it is sought from opposing *litigation* counsel and only then when the counsel is in the unique position to provide first-hand knowledge concerning a material issue in dispute. *See, e.g., In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 66 (2d Cir. 2003) (J. Sotomayor) ("Friedman is not a litigator and is not counsel of record either in the court below or in the underlying action."); *Gamache v. Hogue,* 595 F. Supp. 3d 1344, 1351 (M.D. Ga. 2022) (subpoenaed counsel is "not litigation counsel," the testimony sought is not "available from other sources" and is directly relevant to a specific defense in the case).  Indeed, the *Gamache* court observed that courts have declined to apply the heightened *Shelton* standard "when the proposed deponent is not trial or litigation counsel in the underlying case."  585 F. Supp. 3d at 1350 n.1.[4]

---

[3] The *Fox* test requires looking at the "need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought, the risk of encountering privilege issues, and the extent of discovery already conduct," was applied by the Southern District of New York in quashing the deposition subpoena of Ms. Oldaker's counsel.  *See* McNamara Decl. Ex. G.  Even if that test were applied here, for the reasons stated in this Reply Brief and in NBCU's Motion, there is no "need to depose" Ms. Counts since she does not have first-hand knowledge of the underlying facts of this case, third-party witnesses, including Ms. Oldaker, have already testified about the subject matter Dr. Amin now seeks from opposing counsel, and discovery has already concluded.

[4] Citing to *Loendorf v. PeopleConnect, Inc.*, 2022 WL 2867174, at *7 (N.D. Ill. July 21, 2022), Dr. Amin suggests that written deposition questions are a reasonable alternative.  *See* Opp. at 16.  But he ignores that in *Loendorf,* unlike

Here, Ms. Counts' testimony (whether written or oral) does not meet this heightened standard. *First*, Ms. Counts is opposing litigation counsel in the action in which Dr. Amin seeks her testimony. *Second,* as NBCU explained in its opening Motion, there *was* another way for Dr. Amin to obtain the information he now seeks from Ms. Counts, and he already availed himself of that method—*i.e.* questioning Ms. Oldaker on the record during her deposition. *See* Mot. at 13-14. Indeed, as the Motion set forth, Dr. Amin's counsel *extensively* questioned Ms. Oldaker about the lunchtime discussions. *See id.* at 13. In his Opposition, Dr. Amin claims that *one* objection Ms. Counts made during the course of Ms. Evans' three lengthy examinations of Ms. Oldaker— in which Ms. Counts told Ms. Oldaker that she should only answer if she recalls Ms. Counts specifically "saying such a thing," that Ms. Oldaker "shouldn't speculate," and that she should not allow Dr. Amin's counsel to "influence" her—prevented Ms. Evans from fully questioning Ms. Oldaker about the lunch. *See* Opp. at 15 (citing Oldaker Tr. at 220:8-14). But Dr. Amin does not establish that Ms. Oldaker changed her testimony in any way as a result of this objection. And, as Ms. Counts already explained in her Motion, *see* Mot. at 13, the Southern District of New York rejected this same argument, holding, "after Attorney Counts' objection, Ms. Oldaker responded to only two topics with a lack of recall. Ms. Oldaker answered the remainder of Attorney Evans' questions." McNamara Decl. Ex. G at 12-13. Under these circumstances, the Southern District of New York held that deposing Ms. Oldaker's counsel about the substance of the lunchtime conversations was not warranted. *Id.* at 13. This argument is more persuasive as applied to Ms.

---

here, the testimony sought involved information that the Court had ordered discovery into, and which defendant's counsel argued "only plaintiff's attorneys have." *Id.* at *4. Specifically, the defendants argued that plaintiff's attorneys agreed to certain website terms of service that would require the plaintiff to arbitrate her claims. Because only the attorneys could provide this information, which went to the heart of the pending issue before the court—*i.e.* whether the litigation was brought in the proper forum—the court permitted the defendant to serve the plaintiff's attorneys with three limited written questions.

Counts—a counsel of record in the present action.  Indeed, most of the ten questions that Dr. Amin

now asks Ms. Counts to answer are the same questions already answered by Ms. Oldaker.[5]

 *Third*, Ms. Counts's testimony is not crucial to the claims or defenses in this action.  In his

Opposition, Dr. Amin argues that Ms. Counts's testimony is "crucial" because he believes the

*Oldaker* petitioners' lawyers were influencing their clients' sworn testimony, "it appears NBCU's

counsel has also influenced them," and, "[g]iven that the truth or falsity of what occurred during

the medical treatments of detainees relies on testimony from the detainees, the credibility of those

parties is relevant."  Opp. at 15-16.  This argument lacks *any* foundation and is belied by the record.

Ms. Oldaker testified that nobody instructed her how to answer any questions, and she did not

discuss with Ms. Counts the substance of her prior testimony (something that Ms. Evans

unilaterally declared was "blatantly a lie" in an apparent attempt to intimidate the witness).  *See*

Oldaker Tr. at 116:10-18, 228:16-229:4.   Ms. Counts also stated on the record during the

deposition that she "didn't discuss testimony" with Ms. Oldaker during the lunch.  *See* Oldaker Tr.

at 231:22-23.  The other *Oldaker* plaintiffs deposed in this action also testified that they had never

spoken to NBCU's counsel.[6]  On the other hand, Dr. Amin proffers no evidence that NBCU's

counsel was "influenc[ing]" the *Oldaker* plaintiffs.  Nor does Dr. Amin explain how the ten

---

[5] As just a few examples:  *Compare* Question 2 ("During lunch . . . did Ms. Counts . . . say that [she] would ask Ms. Oldaker about prior pap smears with other doctors?"), *with* Oldaker Tr. at 220:4-7 ("Q: During lunch, did Ms. Counts tell you that she was going to ask you about your prior pap smears? A: Yes, I believe so."); Question 7 ("Q: During lunch . . . did Ms. Counts . . . say that [she] was going to ask Ms. Oldaker about a sonogram picture?"), *with* Oldaker Tr. at 223:22-25 ("Q: Did Ms. Counts during lunch tell you that she was going to ask you about your sonogram pictures that are in your medical records?  A: No."); Question 8 ("During lunch . . . did Ms. Counts . . . suggest that Ms. Oldaker should have, must have, or maybe did hear more information about women at ICDC having hysterectomies than Ms. Oldaker shared in response to Dr. Amin's counsel's questioning?), *with* Oldaker Tr. at 225:12-15 ("Q: During lunch, did anyone suggest to you that you had heard more information than you shared with me about the women having hysterectomies at Irwin County Detention Center?" A: No.").

[6] Castaneda Reyes Tr. at 35-36 (September 6, 2023); Binam Tr. at 187:10-23 (September 12, 2023); Preciado Tr. at 10 (September 14, 2023); Walker Tr. at 24 (September 22, 2023); Reyes Ramirez Tr. at 205:23-206:6 (September 26, 2023).  In keeping with the parties' practices during the pendency of this action, NBCU does not attach these deposition transcripts here but can provide them if the Court so requests.

questions he intends to ask Ms. Counts have any bearing on whether NBCU was influencing the *Oldaker* plaintiffs generally.  They do not.  Dr. Amin's desire to find something to impeach the damning testimony of his patients does not make testimony from his opposing litigation counsel necessary, let alone "crucial."

Finally, Dr. Amin argues that he is entitled to depose Ms. Counts to develop evidence that the *Oldaker* plaintiffs "pivoted" from making claims about hysterectomies to claiming that Dr. Amin was "rough," which he alleges mirrors changes in NBCU's broadcasting from discussing "hysterectomies" to "procedures."  Opp. at 16.  This argument also fails.  Ms. Counts had nothing to do with the content of the MSNBC news reports or the *Oldaker* complaint, which was filed prior to the present litigation.[7]  Asking Ms. Counts questions about her lunch with Ms. Oldaker will shed no light on MSNBC's state of mind in reporting the challenged news reports or the *Oldaker* petitioners' state of mind when they filed a lawsuit against Dr. Amin.

Accordingly, Ms. Counts's Motion should be granted and her deposition subpoena should be quashed.

## **CONCLUSION**

For all of the reasons stated herein and in the Motion, Ms. Counts respectfully requests that the Court quash the subpoena issued to her and award any further relief that the Court deems just and proper.

Dated: January 9, 2024

---

[7] The notion that the MSNBC news reports changed from discussing "hysterectomies" to "procedures" is false.  The challenged news reports discusses medical procedures in addition to hysterectomies.  Further, Dr. Amin's assertion that detainees shifted from discussing hysterectomies to Dr. Amin's "rough" behavior is also false.  As reported by NBC News prior to any of the challenged news reports, immediately after the whistleblower complaint was filed, detainees claimed that Dr. Amin was rough, left them with bruising, they were scared to visit him, and they did not fully understand what he was doing to them.  *See* https://www.nbcnews.com/news/latino/nurse-questions-medical-care-operations-detainees-immigration-jail-georgia-n1240110.

Respectfully submitted,


*/s/ Elizabeth A. McNamara*
Elizabeth A. McNamara
(admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
lizmcnamara@dwt.com

Cynthia L. Counts
Georgia Bar No. 190290
FISHERBROYLES, LLP
945 East Paces Ferry Rd. NE, Suite 2000
Atlanta, GA 30326
(404) 550-6233
cynthia.counts@fisherbroyles.com

*Attorneys for Defendant NBCUniversal Media, LLC*
*and Defendant's Counsel Cynthia Counts*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 9th day of January, 2024, a true and correct copy of

the foregoing document was served upon the following via the Court's electronic filing system:

Stacey Godfrey Evans
sevans@staceyevanlaw.com

Amble Johnson
ajohnson@staceyevanslaw.com

Scott R. Grubman
sgrubman@cglawfirm.com

/s/ Elizabeth A. McNamara
Elizabeth A. McNamara
(admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
lizmcnamara@dwt.com

*Attorneys for Defendant NBCUniversal Media, LLC
and Defendant's Counsel Cynthia Counts*