Declaration of Elizabeth A. McNamara

In Opposition to Plaintiff's Motion for

Partial Summary Judgment

# Exhibit 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **IN RE LUZ WALKER** | ) | |
| **SUBPOENA**, issued in the case of | ) | |
| | ) | |
| DR. MAHENDRA AMIN, | ) | CIVIL ACTION FILE |
| | ) | NO. 1:23-mc-00009 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NBCUNIVERSAL MEDIA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## RESPONSE OF DR. MAHENDRA AMIN IN OPPOSITION TO NON-PARTY LUZ WALKER'S MOTION TO QUASH

### SUMMARY

In *Amin v. NBCUniversal Media, LLC*, Dr. Mahendra Amin alleges that

NBCUniversal defamed him.  5:21-CV-56, 2022 WL 16964770, at *1, 4-5 (S.D. Ga.

Nov. 16, 2022) ("*NBCUniversal*").  That case, following denial of NBCUniversal's

motion for judgment on the pleadings, is now in discovery, with Dr. Amin seeking

factual evidence to prove his allegations.  *See generally id*.; Doc. 2-7.  Because he

alleges defamation under Georgia law, Dr. Amin must prove that NBCUniversal's

allegedly defamatory statements—the gist of which is that he conducted unnecessary

and unconsented-to medical procedures on Immigration and Customs Enforcement

(ICE) detainees at the Irwin County Detention Center (ICDC), including large

1

numbers of hysterectomies—were false.  *Mathis v. Cannon*, 573 S.E.2d 376, 380 (Ga. 2002).

Luz Walker, who brought the Motion to Quash, received medical treatment from Dr. Amin as an ICE detainee at ICDC and has brought a separate lawsuit, *Oldaker v. Giles*, Case No. 7:20-CV-00224-WLS-MSH (M.D. Ga.), that alleges claims against Dr. Amin for his medical treatment of her, including that he conducted unnecessary and unconsented-to medical procedures on her.  Doc. 2-5 ¶¶ 204, 214-15.  In discovery documents in *NBCUniversal*, the defendant specifically named ICE detainees, including the *Oldaker* Plaintiffs (thereby, including Ms. Walker) as potential witnesses.  Accordingly, in an effort reasonably calculated to lead to admissible evidence in *NBCUniversal*—for example, that NBCUniversal's defamatory statements were false—Dr. Amin subpoenaed Ms. Walker to appear for a deposition.  Doc. 2 at 1.

Now Ms. Walker moves to quash the subpoena because she claims that she does not have "relevant" testimony and is unduly burdened by the subpoena.  *See generally* Doc. 2.  The taking of a deposition of Ms. Walker, an ICE detainee patient Dr. Amin treated at ICDC, is "reasonably calculated to lead to the discovery of admissible evidence" as to, at the very least, the falsity element that Dr. Amin must prove at trial against NBCUniversal.  Any alleged burden for Ms. Walker, such as the private nature of the testimony and the fact that discovery in *Oldaker* is stayed, do

2

not outweigh Dr. Amin's interest in obtaining discoverable information for

*NBCUniversal* that is not otherwise available to Dr. Amin.

Ms. Walker's Motion should accordingly be denied, as should her request in

the alternative for a Court order modifying the subpoena and her request for a stay

pending resolution of her Motion.  Alternatively, the Motion should be transferred to

the Southern District of Georgia, the issuing court where *NBCUniversal* is pending,

and the court that potentially stands to have its docket disrupted if Ms. Walker's

requests are granted.

## CONCISE STATEMENT OF THE FACTS

**1.  The parties in *NBCUniversal* agree that the testimony of Ms. Walker is discoverable in that case.**

NBCUniversal specifically named the "Plaintiffs in *Oldaker*" as "parties with

discoverable information" relating to the *NBCUniversal* case.  In response to an

interrogatory asking that NBCUniversal "identify all persons who have, or who you

believe may have, personal knowledge or discoverable information relating to any of

Dr. Amin's allegations in the Complaint or your defenses in this litigation,"

NBCUniversal not only listed "detainees from [ICDC] who received medical care

from Dr. Amin," but also specifically "Plaintiffs in *Oldaker v. Giles* (Case No. 7:20-

cv-00224-WLS)."  Ex. 1.  NBCUniversal also listed the *Oldaker* Plaintiffs as "likely

to have discoverable information that Defendant may use to support its claims and

3

defenses" in its Initial Disclosures.  Ex. 2 at 1, 2, 4.  NBCUniversal stated that these witnesses have knowledge of the "substantial truth of the allegedly defamatory publications."  *Id.* at 4.  And NBCUniversal also disclosed in discovery responses that its counsel had communications with the *Oldaker* Plaintiffs' counsel that are covered by common interest and joint defense privileges with the Plaintiffs' counsel.  Ex. 3.  NBCUniversal has now responded to Ms. Walker's motion by agreeing with Dr. Amin that discovery from her is proper.  Doc. 11.

NBCUniversal's inclusion of the *Oldaker* Plaintiffs as potential witnesses and their common interest and joint defense privileged communications are not surprising, because the statements that Dr. Amin alleges are defamatory in *NBCUniversal* accused Dr. Amin of mistreating patients, and the *Oldaker* Plaintiffs, including Ms. Walker, allege Dr. Amin mistreated them.  For example, some of the statements at issue in *NBCUniversal* are that Dr. Amin was performing "unnecessary procedures," performing "full or partial hysterectomies or other procedures for which no medical indication existed," performing procedures "without [patients] consenting," "experimenting with [detainee] bodies," being "overly harsh," and performing procedures that "left [a patient] with bruising."  *See generally* Doc. 2-4.

Specifically, Ms. Walker alleges that "[w]hile detained in ICE custody at ICDC, she was subjected to non-consensual and medically unindicated invasive gynecological procedures at the hands of Defendant Amin."  Doc. 2-5 ¶ 204.  She

further alleges that, "[w]ithout explaining what he was doing or asking for Ms. Walker's consent," Dr. Amin performed a "rough" transvaginal ultrasound on her at an examination, and that she "does not know why this invasive procedure was done." *Id.* ¶ 211. She further alleges that Dr. Amin's "failure to obtain consent for the transvaginal ultrasound was particularly trauma-inducing in light of childhood experiences." *Id.* ¶ 214. And her allegations, made in the *Oldaker* complaint, are not limited to her own experiences:

> While detained at ICDC, Ms. Walker knew at least ten women who underwent gynecological surgery or other procedures by Defendant Amin, in some cases without consent to, or understanding of, the procedure performed. Ms. Walker can attest to the fact that many of the women operated on by Defendant Amin, some of whom do not speak or understand English, were confused about what had been done to them, indicating that he did not obtain their informed consent.

*Id.* ¶ 215. Accordingly, the allegations she herself made in the *Oldaker* complaint demonstrate that Ms. Walker has information relevant to the issue of falsity of the statements at issue in *NBCUniversal*.

Dr. Amin's counsel has attempted to work with Ms. Walker's counsel to obtain her testimony for approximately one year. *See generally* Ex. 4-6 (showing counsel email communications for approximately one year).

2. **The Northern District of Georgia denied a motion to quash by another plaintiff in *Oldaker*, but stayed the subpoena largely based on a misreading of the stay in *Oldaker*, which is now the subject of a pending**

5

**motion for reconsideration.**

Another *Oldaker* plaintiff, Mbeti Ndonga, who shares some counsel with Ms. Walker, moved to quash her *NBCUniversal* subpoena in the United States District Court for the Northern District of Georgia. *Amin v. NBCUniversal Media LLC*, Case No. 1:23-cv-01373 (N.D. Ga. Mar. 27, 2023) ("Ndonga Matter"), ECF 1. The court denied Ms. Ndonga's motion to quash, ruling that "Dr. Amin is entitled to take the deposition [of Ms. Ndonga] if by virtue of nothing else [sic] NBC has identified Ms. Ndonga as a witness they intend to rely on with knowledge of the case. Doc. 7-3 at 43:25-44:3; Doc. 7-2 at 3-4.

The court there did temporarily stay the deposition, however, *id*., and Dr. Amin has moved for reconsideration of that aspect of the denial of Ms. Ndonga's motion to quash, arguing that the court should reconsider its order and eliminate the stay or transfer the Ndonga Matter to United States District Court for the Southern District of Georgia. Ndonga Matter, ECF 11.[1]

3.  **The court in *NBCUniversal* set a discovery schedule and specifically declined to impose a stay after considering government investigations and**

---

[1]The court seemed to impose the stay in connection with the Ndonga subpoena largely based on a misunderstanding as to why discovery in *Oldaker* itself was stayed, all as more completely explained in Dr. Amin's Motion for Reconsideration. Ndonga Matter, ECF 11 at 10-14. Ms. Walker argues that Dr. Amin's counsel engaged in misrepresentation during a hearing on the motion to quash in the Ndonga Matter (Doc. 7 at 3), but that alleged "misrepresentation" was advocacy regarding the correct reading of the stay of discovery in *Oldaker*.

6

the *Oldaker* **case.**

The subpoena at issue here was issued in *NBCUniversal*.  Discovery is

ongoing in that case with fact discovery set to close on July 31, 2023.  Doc. 2-7 at 2.

The *NBCUniversal* court has already considered and rejected a motion to stay

discovery in this matter pending the outcome of government investigations, and all

with knowledge of the stay in *Oldaker*:

> Government investigations into ICDC have been ongoing
> since September 2020, ***and a separate case in the Middle
> District of Georgia involving overlapping issues has been
> pending since December 2020***.  …
> …
> …***Defendant highlights the stay of discovery in a related
> case in the Middle District of Georgia, Oldaker v. Giles,
> 20-cv-224 (M.D. Ga. 2020), ECF No. 187, as justification
> for a stay until the conclusion of government
> investigations.***  Plaintiff argues the Oldaker stay has no
> bearing on the stay in this case, since Defendant is not
> involved in the Oldaker litigation and the outcome of those
> investigations is not dispositive of the issues in this case.
> ***Indeed, Defendant has not shown discovery should be
> stayed until all government investigations are concluded.
> Defendant's generalized concerns about how government
> investigations might impeded discovery in this case are
> not enough.***

*Amin v. NBCUniversal Media LLC*, Case No. 5:21-cv-56, 2022 WL 18717413, at *2-

3 (S.D. Ga. Apr. 19, 2022) (emphasis supplied).

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide for broad discovery, including

"any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance is not, on its own, a high bar." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). Federal Rule of Civil Procedure 45 allows parties to obtain discovery from third parties that are not part of a lawsuit. Narrow grounds allow or require a court in the district in which the subpoena requires compliance to quash a subpoena, including when the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3).

Federal Rule of Civil Procedure 45(f) provides that, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." In the Advisory Committee Notes to the 2013 Amendments to Rule 45, the Advisory Committee explained "exceptional circumstances": "In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45(f), advisory committee notes (2013 amendments).

## ARGUMENT

### I.     The Subpoena for Deposition Testimony Does Not Subject Ms. Walker

8

**to Undue Burden By Seeking Testimony Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence**

"Rule 26(b) limits the scope of discovery to those materials that are 'relevant to any party's claim or defense.'" *HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013) (quoting Fed. R. Civ. P. 26(b)(1)). "Relevant information need not be admissible at trial, but it must appear to be 'reasonably calculated to lead to the discovery of admissible evidence.'" *Id.*  Again, "[r]elevance is not, on its own, a high bar." *Jordan*, 921 F.3d at 188.

Ms. Walker alleges that Dr. Amin mistreated her during his medical treatment of her.  Seeking Ms. Walker's testimony is, plainly, reasonably calculated to lead to the discovery of admissible evidence in Dr. Amin's Georgia law defamation claim against NBCUniversal.  As the court in the Ndonga Matter found, if nothing else, Dr. Amin is entitled to depose the *Oldaker* Plaintiffs because NBCUniversal identified them as potential witnesses.  Doc.7-3 at 43:25-44:3; Doc. 7-2 at 3-4.  But further, testimony from someone who claims Dr. Amin performed unnecessary procedures on her without consent is directly relevant to the issue of falsity in a defamation case about statements claiming that Dr. Amin performed unnecessary procedures on detainees without their consent.

In her brief, Ms. Walker glides right past one of the most fundamental elements that Dr. Amin must prove—that is, the falsity of the defamatory statements

9

made by NBCUniversal—focusing instead largely on how Ms. Walker has no

relevant testimony about NBCUniversal's actual malice.  *See* Doc. 2 at 10-11; *see*

*Mathis*, 573 S.E.2d at 380 (listing as the first element of defamation "a false and

defamatory statement concerning the plaintiff").  As a preliminary matter, it is not

clear that Ms. Walker has no testimony about NBCUniversal's actual malice: under

the liberal rules of federal discovery, Dr. Amin may probe from Ms. Walker herself

whether she or someone on her behalf had contact with NBCUniversal and, if so,

what that contact entailed.  Further, the *absence* of such contact may also be relevant

to Dr. Amin's allegations that NBCUniversal published the defamatory statements

with actual malice.  *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any

tendency to make a fact more or less probable than it would be without the evidence;

and (b) the fact is of consequence in determining the action.").

Setting aside the issue of actual malice, however, as Ms. Walker's own brief

states, the *Oldaker* and *NBCUniversal* cases make different claims against different

parties, but "both lawsuits concern Amin's medical treatment of women held in ICE

custody at ICDC," Doc. 2 at 14, and accordingly her testimony regarding Dr. Amin's

treatment of ICDC detainees is obviously relevant to the falsity of NBCUniversal's

statements that Dr. Amin performed unnecessary medical treatment, including

hysterectomies, without patient consent.

Ms. Walker alleges that "[w]hile detained in ICE custody at ICDC, she was

10

subjected to non-consensual and medically unindicated invasive gynecological procedures at the hands of Defendant Amin." Doc. 2-5 ¶ 204. She alleges that, "[w]ithout explaining what he was doing or asking for Ms. Walker's consent," Dr. Amin performed a "rough" transvaginal ultrasound on her at an examination, and that she "does not know why this invasive procedure was done." *Id*. ¶ 211. She alleges that Dr. Amin's "failure to obtain consent for the transvaginal ultrasound was particularly trauma-inducing in light of childhood experiences." *Id*. ¶ 214. Accordingly, the *Oldaker* complaint makes clear that Ms. Walker has discoverable information about the falsity of the statements at issue in *NBCUniversal*, and Dr. Amin's decision to subpoena her deposition is reasonably calculated to lead to admissible evidence.

Ms. Walker argues that neither she nor any other plaintiff in *Oldaker* "allege[s] Amin performed a hysterectomy on them." Doc. 2 at 5. But of course, Ms. Walker's testimony of the *absence* of such procedures is also probative of—or at the very least, reasonably calculated to lead to the discovery of admissible evidence of—the falsity of the accusations of Dr. Amin performing numerous hysterectomies. Further, Ms. Walker also alleges that she knows about relevant experiences of *other* ICE detainees at ICDC, including patients who claim they *did* have "gynecological surgery or other procedures." Doc. 2-5 ¶ 215.

Accordingly, Ms. Walker's testimony on a range of subjects is extremely

11

relevant to an element of Dr. Amin's claim against NBCUniversal—the falsity of the accusations that Dr. Amin performed abusive medical procedures, including, but not limited to, numerous hysterectomies, without patient consent.

## II.   The Balance of Benefits and Burdens Favors Finding the Subpoena Does Not Present an Undue Burden

Federal Rule of Civil Procedure 45(d)(3)(A)(iv) makes relevant whether a subpoena "subjects a person to undue burden." "As under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Jordan*, 921 F.3d at 189 (citations omitted). The party (or non-party) moving to quash "bears the burdens of proof and persuasion." *Id*. at 189 n.2. Ms. Walker has not proven that the subpoena creates an undue burden.

As discussed above, Ms. Walker can plainly testify to information highly relevant to Dr. Amin's claims in *NBCUniversal*, especially (but not only) the falsity of NBCUniversal's defamatory statements. Ms. Walker argues that Dr. Amin does not need this information because he "has personal knowledge and medical records" of his examination of Ms. Walker. Doc. 2 at 11, 13. As an ICE detainee at ICDC who received treatment from Dr. Amin, however, Ms. Walker's personal experiences, which are of course not duplicative of Dr. Amin's personal knowledge and medical records, are relevant and offer "value over and above" such information as to the falsity of the defamatory statements. Doc. 2 at 13 (quoting *Jordan*, 921 F.3d

12

at 189).

Further, Ms. Walker's testimony is not duplicative of Dr. Amin's personal knowledge and medical records as evidence in *NBCUniversal* because her allegations in *Oldaker* suggest that she would testify contrary to those pieces of evidence. Indeed, NBCUniversal itself has identified *Oldaker* Plaintiffs such as Ms. Walker as potential witnesses whose testimony it intends to rely on "to support its claims and defenses," specifically the "substantial truth of the allegedly defamatory publications." Exs. 1-2.

Also as discussed above, Ms. Walker's *own allegations in Oldaker* indicate that her testimony offers "value over and above" Dr. Amin's personal knowledge and medical records of her treatment, because she also alleges she has knowledge about other detainees: Ms. Walker has alleged that she "can attest to the fact that many of the women operated on by Defendant Amin, some of whom do not speak or understand English, were confused about what had been done to them, indicating that he did not obtain their informed consent." Doc. 2-5 ¶ 215. For these same reasons, the discovery is "proportional to the needs of the case" and accordingly permissible under Rule 26, contrary to Ms. Walker's argument otherwise. Doc. 2 at 16.

Dr. Amin would be prejudiced by the inability to acquire deposition testimony from Ms. Walker. The *NBCUniversal* Scheduling Order sets a deadline for discovery depositions of fact witnesses of July 31, 2023, and a deadline for all civil

13

motions of November 3, 2023.  Doc. 2-7.  Dr. Amin is preparing for summary

judgment and trial, and Ms. Walker can testify as to matters that Dr. Amin

reasonably calculates could lead to admissible evidence in his case against

NBCUniversal.

Ms. Walker describes *NBCUniversal* as Dr. Amin's "ancillary defamation

case."  Doc. 7 at 1.  But the subpoena is issued *pursuant* to *NBCUniversal*; it is the

main action, and for Dr. Amin the restoration of his good name is in no way

"ancillary."  Therefore, "the benefits of discovery to the requesting party" of Ms.

Walker's testimony would be significant.  *Jordan*, 921 F.3d at 189 (citations

omitted).

On the other hand, the burdens to Ms. Walker are slight and accordingly

outweighed by those benefits.  Ms. Walker is being reimbursed for her deposition as

required by Rule 45, and she is not called upon to search for and produce extensive

documents.  Counsel for Dr. Amin has repeatedly tried to work with Ms. Walker's

counsel to schedule her deposition in a method that is convenient for her, and those

efforts have been rebuffed as Ms. Walker's counsel attempts to avoid testimony

entirely.  *See* Exs. 4-6; Doc. 2.  To the extent a deposition would present any

logistical burden, it is the result of Ms. Walker and her counsel's refusal to work with

Dr. Amin.

Ms. Walker argues that the subpoena imposes "significant burdens" on her by

14

"requir[ing] her to recount traumatic events that happened in the context of receiving medical treatment while involuntarily detained," and compromising her "privacy interest in not being forced to testify about sensitive, upsetting events in response to questioning Amin, the very person who caused her trauma." Doc. 2 at 13. As to her privacy interests, a protective order is in place in *NBCUniversal*, wherein Ms. Walker and her counsel may designate confidential her private information. Ex. 7, *Amin v. NBCUniversal Media LLC*, Case No. 5:21-cv-56 (S.D. Ga. Mar. 8, 2022). As to recounting traumatic events, Ms. Walker herself has brought a lawsuit, *Oldaker*, presumably under the understanding that, as she writes, parties will seek to depose her testimony about those same events. *See* Doc. 2 at 15. Indeed, not only did she make her own allegations; she also offered that she has allegations about other detainees, whose private medical information she did not protect in that she alleged them in her lawsuit. Doc. 2-5 ¶ 215. Certainly, whether any detainees were subjected to "trauma" is an issue of fact in *NBCUniversal*. That is, the truth or falsity of allegations that Dr. Amin improperly treated detainee patients is at issue in that case. Ms. Walker's and other detainees' claims must be subject to cross-examination.

Ms. Walker further argues that the stay of discovery in *Oldaker* constitutes an undue burden in her sitting for a deposition in *NBCUniversal* because Dr. Amin "would effectively be obtaining party discovery in the *Oldaker* case, in violation of the

15

*Oldaker* discovery stay," and she may be subjected to a second deposition in *Oldaker*. Doc. 2 at 14-16. The subpoena at issue here is not an *Oldaker* subpoena; Dr. Amin is seeking information in and pertinent to the *NBCUniversal* case. In *NBCUniversal*, there is no stay of discovery. Indeed, the *NBCUniversal* court—i.e., the court in the very case for which this subpoena has issued—considered and rejected a motion to stay discovery pending the outcome of investigations, despite the stay in *Oldaker*. *See NBCUniversal*, 2022 WL 18717413, at *2-3. And in *Oldaker*, dispositive motions on the pleadings are still pending and, indeed, only recently ripened for the court's consideration. *See* Reply to Response re Motion to Dismiss Complaint, *Oldaker v. Giles*, Case No. 7:20-CV-00224-WLS-MSH (M.D. Ga. Mar. 22-23, 2022), ECF 269; 270; 271; 272; 273; 274; 275. If those are resolved against Ms. Walker and her case is dismissed, she will of course not be subject to discovery at all, from Dr. Amin or any other defendant.

Further, should these claimed burdens, currently only hypothetical, eventually come to fruition, they would be a result of Ms. Walker's lawsuit in *Oldaker*, not Dr. Amin's seeking appropriate discovery to which the Federal Rules entitle him in *NBCUniversal*. Ms. Walker does not explain why Dr. Amin's rights to discovery should take a backseat to "burdens" that would be absent without her own litigation.

## III.   The Court Should Not Modify the Subpoena

Ms. Walker cites the same arguments addressed above in requesting the

16

alternative relief that the Court limit the subpoena "to require that Walker answer limited questions narrowly tailored to the subject matter of the remaining Challenged Statements in Amin's defamation case either by responding via written declaration or by deposition on limited written questions." Doc. 2 at 17.  This request is, frankly, remarkable at this point, as Dr. Amin, through his counsel, offered just such questions at the beginning of this dispute only to be met with Ms. Walker's counsel's silence and then refusal to participate when Dr. Amin reserved his right to seek a deposition if the declaration answers proved to be inadequate, all while the discovery deadlines of *NBCUniversal* marched forward.  *See generally* Exs. 4-6.  Given the lengths Ms. Walker has now gone to avoid testifying, a deposition in the first instance (versus after first considering a declaration) with the ability to ask follow-up questions and otherwise cross examine her is necessary, and Dr. Amin is entitled to it.

In support of her request for special accommodations, Ms. Walker cites only two district court orders and an unpublished Fourth Circuit case that stands merely for the obvious proposition that district courts "have broad discretion in fashioning discovery rulings." Doc. 2 at 17-19.  Even those two non-binding cases are inapposite.  For example, she cites cases in which district courts curtailed depositions whose subjects were "likely to implicate privileged information." *Id*. at 17 (citing *Gatoil, Inc. v. Forest Hill State Bank*, 104 F.R.D. 580 (D. Md. 1985); *Fid. Mgmt. &*

17

*Rsch. Co. v. Actuate Corp.*, 275 F.R.D. 63 (D. Mass. 2011)).  But those cases did not

involve simply *private* information, such as medical information that, anyway, would

be protected by the *NBCUniversal* Protective Order.  *See* Ex. 7.  Rather, *Gatoil, Inc.

v. Forest Hill State Bank* involved a deposition that would elicit testimony subject to

the witness's privilege against self-incriminating evidence.  104 F.R.D. at 582.  The

court had a specific "mode of proceeding" it favored in cases in which a deposition

witness needed to invoke such privilege, and it was under those circumstances the

court ordered deposition upon written questions.  Ms. Walker's citation of the case

implies something not true, as the case does not support the proposition: "Factors as

minor as travel expense have been found sufficient."  Doc. 2 at 17.

  *Fid. Mgmt. & Rsch. Co. v. Actuate Corp.* is also no help to Ms. Walker.  That

case involved information that enjoyed protection from the work product doctrine,

which accordingly required the parties and court to parse testimony "to distinguish

between 'facts' (not protected) and the issue of why those facts have legal

consequences, which usually has a work-product (lawyer's mental impressions)

dimension."  275 F.R.D. at 64.  There is no such parsing issue as to Ms. Walker's

testimony, which is not legally privileged in the same way.  Some of her testimony

may be private, but the *NBCUniversal* Protective Order will keep such information

confidential.  Accordingly, the reasoning underlying these cases' orders that the

parties employ written questioning is not present here.

18

IV.     **The Court Should Not Stay the Deposition**

1. **Ms. Walker has not attempted expedited consideration and Dr. Amin would be prejudiced by a stay.**

Ms. Walker argues that a stay is necessary because there is not enough time for the Motion to be fully considered.  Doc. 2 at 19.  But she bears the burden of proving she is entitled to relief and sought no emergency consideration of her Motion. Nevertheless, the Court has the benefit of Ms. Walker's motion and brief in support and now has Dr. Amin's response, all ahead of the subpoenaed deposition.  For the reasons discussed above, the Motion is not likely to succeed on the merits.

Ms. Walker further argues that a delay would not prejudice Dr. Amin because the deadline for depositions of fact witnesses in *NBCUniversal* does not close until July 31, 2023.  *Id*. at 20.  But disputes regarding Ms. Walker's testimony have been ongoing, as she admits, for around a year now.  *Id*. at 7.  Further, Dr. Amin has other witnesses to depose, and the testimony of patients such as Ms. Walker will inform his strategy in those future depositions.  Dr. Amin's good faith efforts to work with Ms. Walker through her counsel have been rebuffed, and accordingly Dr. Amin should not be forced to delay his deposition any longer in response to Ms. Walker's Motion.

Finally, Ms. Walker writes that a stay "would serve the public interest by preserving Walker's rights under Rule 45 and Rule 26 to object to and request modification of a burdensome subpoena."  *Id*. at 20.  But of course, Dr. Amin has his

19

own rights under Rules 45 and 26, and the public interest in those would not be served by a stay but rather by the upholding of this lawful subpoena.

### 2. Any discovery stay in *Oldaker* is not grounds to stay discovery in NBCUniversal.

Ms. Walker requests that the Court stay the subpoena until the *Oldaker* court rules on whether the subpoena "violates the *Oldaker* Discovery Stay Order." Doc. 8 at 2. But this subpoena, again, is issued pursuant to *NBCUniversal*, where discovery is ongoing, and, indeed, the court there has already ruled that the *Oldaker* stay did not justify staying discovery once the dispositive motion on the pleadings was decided. *See NBCUniversal*, 2022 WL 18717413, at *2-3. *NBCUniversal* is ahead of *Oldaker*. Dr. Amin should not have to stand down in favor of Ms. Walker's case, which may never reach discovery.

### 3. Dr. Amin's counsel "unilaterally set" April 20 for the deposition only because Ms. Walker's counsel refused to work with them on scheduling a mutually-agreeable date.

NBCUniversal opposes Ms. Walker's Motion, but also argues that the Court should stay the deposition until "a mutually agreeable date later in the fact discovery period." Doc. 11 at 5. NBCUniversal argues that the April 20 date "was unilaterally set by Dr. Amin's counsel without agreement from the undersigned counsel for NBCUniversal or, apparently, counsel for Ms. Walker." *Id.* As discussed above, Ms. Walker's counsel has rebuffed Dr. Amin's counsel's attempts

20

to cooperate as to a date for the deposition.  *See generally* Exs. 4-6.  And counsel for NBCUniversal had notice of the date of Ms. Walker's deposition since before the subpoena was served, when counsel for Dr. Amin shared the date through a notice copy of the subpoena.  NBCUniversal has not proved that the subpoena should be modified pursuant to Federal Rule of Civil Procedure 45(d)(3), and indeed itself argues that Ms. Walker's Motion should be denied.  In the absence of any of the grounds Rule 45 provides for modifying or quashing a subpoena, the subpoena should remain as issued.

**V.     In the Alternative, the Court May Transfer the Motion to the United States District Court for the Southern District of Georgia Pursuant to Federal Rule of Civil Procedure 45(f)**

Federal Rule of Civil Procedure 45(f) provides that, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."  In the Advisory Committee Notes to the 2013 Amendments to Rule 45, the Advisory Committee explained "exceptional circumstances" to include, when balanced against avoiding burdens on local nonparties subject to subpoenas, "to avoid disrupting the issuing court's management of the underlying litigation."  Fed. R. Civ. P. 45(f), advisory committee notes (2013 amendments) (emphasis supplied).

A district court within the Fourth Circuit considered a motion to transfer

21

pursuant to Rule 45(f) and granted it upon findings that (i) the transfer would serve

"judicial economy," (ii) the transfer meant "essentially eliminat[ing] the chance of

inconsistent rulings" because of a similar motion having already been decided by the

special master presiding over the main case, and (iii) the absence of an undue burden

on the moving party.  *Nat. Immunogenics Corp. v. Newport Trial Grp.*, Case No.

1:18MC3, 2018 WL 1884988, at \*4 (W.D.N.C. Apr. 19, 2018).  Another Fourth

Circuit district court similarly granted a motion to transfer pursuant to Rule 45(f)

when the court hearing the main case had before it a "virtually identical motion to

quash," because the interests of "judicial economy, efficient case management, and

the administration of justice," as well as eliminating risks of "inconsistent orders and

deadlines regarding subpoenas and/or protective orders from three (3) different

United States district courts," were best served by transferring.  *D.R. Horton, Inc. v.*

*NVR, Inc.*, Case No. 3:16-MC-053, 2016 WL 2942352, at \*1-2 (W.D.N.C. May 20,

2016).

     Dr. Amin submits that the circumstances highlighted by the Advisory

Committee and the *Nat. Immunogenics* and *D.R. Horton* courts exist here, and

accordingly that the Court, if seeking an alternative to denying Ms. Walker's Motion,

should transfer the motion to the United States District Court for the Southern

District of Georgia.  Specifically, in the Ndonga Matter, another *Oldaker* plaintiff,

Ms. Ndonga, moved to quash her *NBCUniversal* subpoena in the United States

22

District Court for the Northern District of Georgia.  The court there indicated the Southern District of Georgia should have a say in the management of its own docket. Doc. 7-3 at 47-48.  Another *Oldaker* Plaintiff, Yanira Yesina Oldaker, was served with a subpoena for deposition in the *NBCUniversal* case on April 1, 2023, and her counsel has informed counsel for Dr. Amin that she will file a motion to quash in the District of South Carolina.  Once more such witnesses are served, Dr. Amin expects similar such motions.

Relatedly, a non-party in the *NBCUniversal* case, but a defendant in the *Oldaker* case, LaSalle Southeast, LLC ("LaSalle") moved to quash a subpoena issued by NBCUniversal in the *NBCUniversal* case.  Non-Party LaSalle Southeast, LLC's Motion to Quash Subpoena, *Amin v. NBCUniversal Media, LLC*, Case No. 5:21-cv-00056 (S.D. Ga. Mar. 31, 2023), ECF 66-1.  LaSalle argued, in part, that NBCUniversal's subpoena should be quashed because discovery in *Oldaker* is stayed.  *Id*. at 7-8.

On April 5, 2023, the *NBCUniversal* court denied LaSalle's motion.  Ex. 8, *Amin v. NBCUniversal Media, LLC*, Case No. 5:21-cv-00056 (S.D. Ga. Apr. 5, 2023), at 2.  However, it did not do so on any consideration of the merits of any of LaSalle's arguments, including the *Oldaker* stay.  *Id*.  Rather, the court inquired into its jurisdiction.  *Id*. at 1.  Because the subpoena at issue in LaSalle's motion sought the production of documents at NBCUniversal's counsel's law office in New York,

23

the court followed similar orders from its district and ruled that "the place of compliance is the location the subpoena directs the documents to be sent," so the court for the district where compliance would be required was the United States District Court for the Southern District of New York. *Id*. at 1-2. Thus, the Southern District of Georgia denied LaSalle's Motion to Quash for lack of jurisdiction. *Id.* If LaSalle now moves to quash its subpoena in the Southern District of New York, which seems likely, there would be at least five district courts potentially issuing conflicting orders.

Accordingly, there is an already-realized situation in which "the same issues are likely to arise in discovery in many districts," with the attendant risk of inconsistent discovery rulings and benefit a transfer would have to judicial economy. Fed. R. Civ. P. 45(f), advisory committee notes (2013 amendments). Indeed, the situation is underscored by Ms. Walker's counsel arguing the Court should wait for another judicial decision from a different District. Doc. 8. *NBCUniversal* is in discovery, with both the assigned Magistrate Judge and District Judge having written orders on discovery disputes and the sufficiency of Dr. Amin's amended complaint, respectively. The case should be allowed to proceed without delays imposed by other district courts.

On the other hand, Ms. Walker would not be burdened by a transfer. Because she shares counsel with other *Oldaker* Plaintiffs, her counsel have been able to

24

appear in United States District Courts for the Middle District of Georgia, the

Northern District of Georgia, the Middle District of North Carolina, and apparently

soon the District of South Carolina.  Accordingly, she will not be inconvenienced by

her counsel's litigating her motion in the United States District Court for the

Southern District of Georgia.

Further, the Southern District of Georgia, as the issuing court of Ms. Walker's

subpoena, is managing the underlying litigation, and disrupting that management

would be avoided by transfer.  *See* Doc. 2-7 (amended scheduling order, setting

deadlines for discovery).  Indeed, as discussed above, that court has already

considered, and rejected, NBCUniversal's argument that the *Oldaker* discovery stay

constituted "justification for a stay" in *NBCUniversal*.  *See NBCUniversal*, 2022 WL

18717413, at *2-3.

Disruption of the *NBCUniversal* court's management of its litigation would be

avoided—as would be inconsistent rulings—by transfer.  Therefore, "exceptional

circumstances" merit the transfer of Ms. Walker's subpoena-related motion.

Accordingly, Dr. Amin requests, in the alternative, that the Court transfer Ms.

Walker's motion to the United States District Court for the Southern District of

Georgia.

## **CONCLUSION**

For the reasons discussed above, the Court should deny Ms. Walker's Motion

25

in its entirety.  In the alternative, the Court could transfer the Motion to the United

States District Court for the Southern District of Georgia pursuant to Federal Rule of

Civil Procedure 45(1).

      Respectfully submitted this <u>12th</u> day of April, 2023.


<u>/s/ Alexander L. Maultsby</u>          <u>/s/ Stacey G. Evans</u>
Alexander L. Maultsby               Stacey G. Evans
N.C. State Bar No. 18317           Georgia Bar No. 298555
Ramseur Maultsby, LLP            John Amble Johnson
1150 N. Revolution Mill Dr., Ste. 3    Georgia Bar No. 229112
Greensboro, North Carolina 27405    4200 Northside Parkway NW
amaultsby@ramseurmaultsby.com    Building One, Ste. 200
Telephone: (336) 897-0052         Atlanta, Georgia 30327
                                sevans@staceyevanslaw.com
                                ajohnson@staceyevanslaw.com
                                Telephone: 770-779-9602
                                Facsimile: 404-393-2828

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.3(d)(1), I hereby certify that the word count of this brief, including the body of the brief, headings, and footnotes but excluding the caption, signature lines, and certificates, does not exceed 6,250 words as calculated by a word count feature on word processing software.

This <u>12th</u> day of April, 2023.

<u>/s/ Stacey G. Evans</u>
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com

*Counsel for Plaintiff*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **RESPONSE TO NON-PARTY LUZ WALKER'S MOTION TO QUASH** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.  I also emailed copies of the foregoing to:

Elizabeth A. McNamara, lizmcnamara@dwt.com

Amanda B. Levine, amandalevine@dwt.com

Cynthia L. Counts, Cynthia.counts@fisherbroyles.com

*Counsel for NBCUniversal Media, LLC*


Clare Norins, cnorins@uga.edu

C. Amanda Martin, amartin@law.duke.edu

*Counsel for Ms. Walker*

This <u>12th</u> day of April, 2023.

/s/ Stacey G. Evans
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com

*Counsel for Plaintiff*