UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

DR. MAHENDRA AMIN, M.D.,

    Plaintiff,

v.

NBCUNIVERSAL MEDIA, LLC,

    Defendant.

Case No. 5:21-cv-00056-LGW-BWC

**OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT OPINION OF <u>DR. TED ANDERSON</u>**

## INTRODUCTION

In his motion, *see* Dkt. 123 (the "Motion" or "Mot."), Plaintiff Dr. Mahendra Amin ("Dr. Amin") seeks to exclude the testimony of Dr. Ted Anderson, a fact witness identified by Defendant NBCUniversal Media, LLC ("NBCU") in this action in May 2023. Dr. Anderson is one of the leading gynecologists in the country, previously serving as the president of the American College of Obstetricians and Gynecologists ("ACOG")—the premier professional association of OB-GYNs in the United States.

In October 2020, Dr. Anderson led a group of independent OB-GYNs in reviewing medical records from detainees at the Irwin County Detention Center ("ICDC") who complained that they had received improper gynecological care. The medical group identified a "disturbing pattern" of Dr. Amin performing gynecological surgeries that were "not medically indicated," and Dr. Anderson personally testified about these findings in front of the Senate Democratic Caucus. During his testimony, he re-affirmed the conclusion that Dr. Amin performed "unnecessary surgery" on ICDC detainees.

Because Dr. Anderson's findings and testimony are directly relevant to an issue at the heart of this litigation—*i.e.*, whether Dr. Amin performed unnecessary or unconsented-to gynecological

surgeries on ICDC detainees—NBCU listed Dr. Anderson as a witness on its initial disclosures. NBCU did not retain or compensate Dr. Anderson in any way, but merely identified him as someone who could testify about information relevant to the truth or falsity of the challenged statements, which concern Dr. Amin's medical treatment of ICDC detainees. In an abundance of caution, because Dr. Anderson testified to the Senate as an expert, NBCU disclosed Dr. Anderson's findings and testimony on the date for the disclosure of rebuttal expert information.

Despite treating Dr. Anderson as a fact witness throughout this litigation, Dr. Amin now argues that Dr. Anderson is an expert witness and his conclusions are unreliable, unhelpful, and non-responsive under Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc*, 509 U.S. 579 (1993). But Dr. Anderson was not initially identified for purposes of providing expert testimony, but rather as a fact witness. And even if this Court finds that he is an expert, he is at most a "non-retained" expert under Eleventh Circuit law, his opinions were properly disclosed, and his conclusions are sufficiently reliable to withstand exclusion. Either way, Dr. Amin's motion should be denied.

## FACTUAL BACKGROUND

### I.  THE WHISTLEBLOWER COMPLAINT IS FILED AND DOCTORS REVIEW ICDC DETAINEE MEDICAL RECORDS

In September 2020, a whistleblower complaint was filed, alleging that ICDC detainees had been subjected to unnecessary or unconsented-to hysterectomies and other gynecological surgeries by an outside OB-GYN—quickly identified by news outlets as Dr. Amin. *See* Declaration of Elizabeth A. McNamara in Support of NBCU's Motion for Summary Judgment (Dkt. 136) ("McNamara Decl.") Ex. 2 (the "Whistleblower Complaint"). As news of the Whistleblower Complaint spread, attorneys recruited a team of eleven independent medical professionals to review patient medical records obtained either directly from Dr. Amin's office or from ICDC to

determine whether the allegations in the Complaint had merit.  *See* Pl. Ex. 5[1] ("Anderson Tr.") at 27:9-13; Pl. Ex. 3 at 124-27, 129-33.  Dr. Anderson was a member of the independent medical review team (the "IMRT").

Together, the IMRT reviewed nineteen patient files (over 3,200 pages), which included the medical records and any available interview transcripts or sworn declarations from the patients.  *See* Anderson Tr. at 28:18-29:1, 30:19-21; Pl. Ex. 3 at 125.  At least two members of the IMRT reviewed each set of records, and Dr. Anderson then personally reviewed all of them.  *See* Anderson Tr. at 29:2-4.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* at 34:12-23.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮   *See id.* at 34:12-23.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id.*

The Executive Summary explained that the IMRT found a "disturbing pattern" of detainees undergoing or being pressured to undergo gynecological surgeries that were "not medically indicated and to which they did not consent," and opined that the surgeries Dr. Amin performed were "inconsistent with the standard of care."  Pl. Ex. 3 at 129-30.  For example, it found that Dr. Amin performed loop electrosurgical excision procedures ("LEEP")—*i.e.*, a surgery that removes a portion of the cervix—that were "not indicated" and removed normal ovarian follicles that he labeled "cysts."  *Id.* at 130.  The IMRT also provided specific examples of Dr. Amin's patients who received unnecessary, medically unindicated surgeries.  *Id.* at 130-132.

In October 2020, Dr. Anderson presented the IMRT's findings to the Senate Democratic Caucus.  *See* Pl. Ex. 3 at 124.  He opined that Dr. Amin engaged in a "pattern involving inaccurate

---

[1] "Pl. Ex." refers to the exhibits filed by Dr. Amin in support of his motion to exclude Dr. Anderson's testimony.  *See* Dkt. 123.

3

over-interpretation of laboratory and imaging evaluations" and "inappropriate recommendations for overly aggressive interventions, including unnecessary surgery." *Id.* at 125.  He explained that Dr. Amin frequently recommended and performed dilation & curettages ("D&Cs")—a procedure in which he would scrape off a portion of the uterus—when this surgery was "not warranted" and when he could have, at most, performed an in-office biopsy that does not require anesthesia and has far fewer side effects. *Id.*

## II. DR. ANDERSON IS IDENTIFIED AS A WITNESS IN THIS ACTION

In September 2021, Dr. Amin sued NBCU over MSNBC news reports (the "News Reports) that reported on the Whistleblower Complaint's allegations.  On May 11, 2023, given that Dr. Anderson had testified to Congress about Dr. Amin's treatment of detainees, NBCU identified Dr. Anderson in its initial disclosures as a witness who could testify to the "substantial truth of the allegedly defamatory publications."  *See* McNamara Decl. ISO Opp. to Exclude Anderson, ("McNamara Anderson Opp. Decl.") Ex. 1.  On June 28, 2023, Dr. Amin issued a document subpoena to Dr. Anderson.  *See id.* Ex. 2.  In July 2023, Dr. Amin's counsel explained that they anticipated deposing Dr. Anderson as a third-party fact witness.  *See id.* Ex. 3 at 1 ("We also anticipate needing to depose Dr. Ted Anderson or potentially other doctors who provided testimony to Congress and statements to the press.").

When Dr. Amin failed to issue a deposition subpoena to Dr. Anderson, NBCU did so on September 15, 2023.  Because Dr. Anderson testified to the Senate as an expert OB-GYN, in an abundance of caution, on September 19, 2023 (the deadline for NBCU to disclose its rebuttal experts), NBCU produced to Dr. Amin the Executive Summary and a copy of Dr. Anderson's expert testimony to the Senate.  *See* Pl. Ex. 3 at 124-27, 129-33.

Prior to Dr. Anderson's deposition, his counsel stated that "Dr. Anderson is not acting as an expert for either party, and is merely a fact witness who would prefer not to be involved in this litigation," referencing the fact that Dr. Anderson had not been retained by either party in this matter.  *See* McNamara Anderson Opp. Decl. Ex. 4 at 1.  Indeed, NBCU never contracted with or compensated Dr. Anderson.  *See* Anderson Tr. at 7:17-9:3, 21:9-22:2; 267:21-268:22.  On December 1, 2023, Dr. Anderson was deposed.  During his deposition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*See id.* at 34:18-35:1; 89:1-95:7; 99:5-20; 108:4-9; 189:7-21; 190:18-193:24.

## ARGUMENT

### I.   NBCU PROPERLY DISCLOSED DR. ANDERSON AS A WITNESS

Plaintiff's Motion should be denied because Dr. Anderson is either a fact witness, confirming his October 2020 testimony to the government, or a "non-retained" expert witness whose rebuttal opinions were properly disclosed in accordance with the Federal Rules of Civil Procedure.

#### A.   Dr. Anderson is a Fact Witness

As courts in the Eleventh Circuit have held, a "fact witness" is a witness who can "testify to firsthand knowledge based on his observations." *United States v. Chkuaseli*, 732 F. App'x 747, 759 (11th Cir. 2018).  Such witnesses can provide opinion evidence in a case if this evidence is "rationally based on the witness's perception," is "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or specialized knowledge within the scope of Rule 702." *See* Fed. R. Evid. 701.  "Just because [a fact witness's] position and experience <u>could</u> have qualified him for expert witness status does not mean that any testimony he gives at trial is considered 'expert testimony.'" *United States v. Macrina*, 2022 WL 5189860, at *1 (N.D. Ga. Oct. 5, 2022) (quoting *United States v. LeCroy*, 441 F.3d 914, 927 (11th

5

Cir. 2006)). In other words, fact "witnesses may draw on their professional experiences to guide their opinions without necessarily being treated as expert witnesses." *Id.*; *see also Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1223 (11th Cir. 2003) (holding that lay witnesses can testify "based upon their particularized knowledge garnered from years of experience within the field"). Importantly, the requirement that a fact witness testify based on the "witness's perception" can be satisfied where the witness "base[d] his opinion testimony on his examination of documents, even when the witness was not involved in the activity." *Sears v. Rivero*, 2022 WL 2291220, at *4 (11th Cir. June 24, 2022). "For example, law enforcement agents who have reviewed financial records can testify as lay witnesses about those records, and law enforcement agents who have examined documents to decipher code language can testify about a defendant's use of that code language, even without having been a party to a defendant's conversations." *Id.*

Here, although Dr. Anderson certainly has scientific expertise—he is one of the top OB-GYNs in the field—his primary purpose in this case was to authenticate and affirm the information he provided to the Senate in October 2020, which is fact witness testimony. Dr. Anderson was not retained by NBCU to review medical records and form opinions for purposes of this action or to examine any of Dr. Amin's patients. Instead, he was merely testifying about work that he did with the IMRT over three years ago. Indeed, Dr. Amin's counsel similarly recognized that questioning doctors from the IMRT about their statements to Congress or the press would be appropriate fact witnesses testimony. *See* McNamara Opp. Decl. Ex. 3 (stating that Dr. Amin anticipated deposing the doctors who provided testimony to Congress). Accordingly, Dr. Anderson is a fact witness, and Dr. Amin's motion to exclude his testimony should be denied.

**B.     In The Alternative, Dr. Anderson Is A "Non-Retained" Rebuttal Expert Witness**

If the court disagrees that Dr. Anderson is a fact witness, then he must be considered a "non-retained" expert. Just last year, in *Cedant v. United States*, 75 F.4th 1314 (11th Cir. 2023), the Eleventh Circuit detailed the different types of experts that a party may rely upon and the disclosure requirements for each. "Retained" experts are those who are "involved in a case to provide expert testimony and will derive [their] knowledge of the case from preparation for trial." *Id.* at 1324. "Non-retained" experts (sometimes referred to as "hybrid experts"), on the other hand, are individuals with "some first-hand factual awareness of the subject matter of the suit." *Id.* When attempting to classify an expert, "what matters is when and why an expert witness came to the case, not the content of his testimony." *Id.* at 1317. Thus, in *Cedant*, where the plaintiff was seeking to recover the damages he allegedly suffered in an accident with a U.S. Post Service truck, his treating physician was properly classified as a "non-retained" expert; he had a doctor-patient relationship with the plaintiff before the plaintiff filed suit and was not engaged specifically for the litigation. *Id.* at 1325; *see also DRB Realty & Properties, LLC v. Nutrien AG Solutions, Inc.*, 2023 WL 6536241, at *8 (N.D. Ga. Sept. 12, 2023) (classifying individual as "non-retained" rebuttal expert given the "existing relationship with [the plaintiff].").

While "retained" expert witnesses are required to submit extensive expert reports, for non-retained experts, a party need only provide a "two-part disclosure," *Cedant*, 75 F.4th at 1320, stating "the subject matter" and a "summary of the facts and opinions" to which the witness is expected to testify," Fed. R. Civ. P. 26(a)(2)(C)(ii); *see also Ford as Next Friend of Doe v. NCL Bahamas Ltd.*, 2019 WL 3937127, at *2 (S.D. Fla. June 4, 2019) (discussing non-retained experts and explaining, "[c]ourts must take care against requiring undue detail, keeping in mind that these

witnesses have not been specifically retained and may not be as responsive to counsel as those who have"), *objections overruled*, 2019 WL 3302368 (S.D. Fla. July 23, 2019).

Here, if Dr. Anderson is considered a rebuttal expert, he is undoubtedly a "non-retained" rebuttal expert—a fact that even Dr. Amin appears to recognize. *See* Mot. at 4-5 (noting that Dr. Anderson's disclosures only must comply with Federal Rule of Civil Procedure 26(a)(2)(C)). He was not engaged by NBCU and was not paid for his testimony in this case—facts which were disclosed to Dr. Amin on September 19, 2023. *See* Pl. Ex. 3 at 3. Instead, he had a preexisting factual awareness of the issues in the case: he reviewed and opined on records from ICDC detainees in October 2020.

Further, by producing the Executive Summary and Dr. Anderson's testimony to the Senate, NBCU provided both the subject matter on which Dr. Anderson is expected to testify in rebuttal to Dr. Amin's experts (*i.e.* Dr. Amin's medical treatment of ICDC detainees) and a summary of the facts and opinions to which he would be expected to testify (*i.e.* that Dr. Amin performed unnecessary gynecological surgeries on ICDC detainees, including, among other things, improper D&Cs, cystectomies, and LEEPs). *See Ashkenazi v. S. Broward Hosp. Dist.*, 2012 WL 760824, at *1 (S.D. Fla. Mar. 8, 2012) (citing Rule 702) (finding disclosures were sufficient as witnesses were "fact witnesses requiring no disclosures, or they are non-retained experts requiring only a summary disclosure."). Indeed, the Executive Summary enumerated the patients whose records Dr. Anderson reviewed and would be opining on.[2] Given that Dr. Amin treated these patients and therefore had access to their medical files *and* they were a subset of the patients reviewed by Dr.

---

[2] These included the patients, Y.R.J., M.C.R., W.D., L.T.S., Y.Y.O., T.S., B.P.R., E.P.S., and N.G., *see* Pl. Ex. 3 at 130-32.

Amin's experts, Dr. Elbridge Bills and Dr. Laura Hamilton, these disclosures were more than sufficient to put Dr. Amin on notice of what Dr. Anderson would be testifying about.[3]

## II.   IF DR. ANDERSON IS A NON-RETAINED REBUTTAL EXPERT, HIS OPINIONS SHOULD NOT BE EXCLUDED

If the Court determines that Dr. Anderson is a non-retained expert, Dr. Amin's Motion should be denied since Dr. Anderson's testimony meets the standards for reliability set by *Daubert* and Federal Rule of Civil Procedure 702.

### A.   Dr. Anderson Is Qualified To Testify as an Expert in This Action

As an initial matter, Dr. Amin does not argue that Dr. Anderson is unqualified to testify as an expert in this action. Nor could he make such an argument. Dr. Anderson is a professor and Vice Chair of Clinical Operations at Vanderbilt University Medical Center with over 25 years of experience in gynecologic surgery. *See* Pl. Ex. 3 at 124. He previously served as the President of ACOG, which even Dr. Amin's own expert, Dr. Bills, admitted is the "main professional organization for gynecologists" in the United States. *See* McNamara Declaration in Support of Motion to Exclude Bills (Dkt. 139), Ex. 7 at 8:24-9:2. ███████████████████████████ ███████████████ *See* Anderson Tr. 11:14-25.

### B.   Dr. Anderson's Report Will Assist a Trier of Fact

Dr. Amin first argues that Dr. Anderson's testimony should be excluded because it will not assist a trier of fact in this action. *See* Mot. at 11-13. Dr. Amin claims that the only issue in this

---

[3] Dr. Amin also argues that Dr. Anderson is not properly designated as a rebuttal expert witness. Even if Dr. Anderson is a non-retained expert, the substance of his testimony meets the requirements for a rebuttal witness under Rule 26(a)(2)(D)(ii). *See Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17 (D.D.C. 2013) ("[R]ebuttal expert testimony is permitted…where it 'is intended solely to contradict or rebut evidence on the same subject matter identified by another party.' Such testimony 'cannot be used to advance new arguments or new evidence.'"). Dr. Anderson's testimony addresses the same subject matter as Dr. Eldridge Bills, as Dr. Bills also evaluates the medical records of the same women in order to answer the question of medical necessity or appropriateness. Plaintiff's cases are inapposite and address when untimely disclosed experts are repurposed as rebuttal witnesses.

case is "whether women detained by ICE at ICDC received forced, unconsented to, unnecessary, and/or unauthorized hysterectomies in high numbers." Mot. at 11. But this argument ignores the record before the Court. As explained in NBCU's motion for summary judgment and concurrently filed opposition to Dr. Amin's partial motion for summary judgment, the "gist" of the challenged statements is that Dr. Amin performed unnecessary or unconsented-to procedures on ICDC detainees that put their health or fertility at risk. SJ Mot. (Dkt. 127) at 19-23; Opp. Mot. at 11-16. Whether these procedures were hysterectomies, laparoscopies, D&Cs, cystectomies, or LEEPs, the defamatory sting is the same. Notably, even Dr. Bills's expert report was focused on more than just hysterectomies, opining on the appropriateness of the other gynecological surgeries Dr. Amin performed and his non-surgical medical care of certain detainees. *See* Mot. at 14 (admitting that Dr. Bills opined more broadly on the existence of "unnecessary medical procedures").

Even if the only "question at issue" concerned hysterectomies—which is wrong—Dr. Anderson did ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Anderson Tr. at 167:3-183:12. Looking to avoid this damning testimony, Dr. Amin claims that Dr. Anderson admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Mot. at 12. But, in actuality, Dr. Anderson made clear that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Anderson Tr. at 175:22-176:10. This is because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which Dr. Amin failed to do before rushing to perform a hysterectomy. *Id.* Dr. Anderson further testified that by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



*Id.* at 179:18-181:2.  Similarly, while Dr. Amin argues that ▮▮▮▮ Mot. at 12, Dr. Anderson was merely opining that ▮▮▮▮ *see* Anderson Tr. at 238:2-5.

Dr. Amin also argues that Dr. Anderson's opinions on "informed consent" would not assist a trier of fact because the issue of "informed consent" depends only on the existence of consent forms and can be determined "without the application of scientific, technical or specialized expertise."  *See* Mot. at 12-13.  If that is true, then it reinforces that Dr. Anderson was providing fact witness testimony.  But Dr. Amin's own expert, Dr. Laura Hamilton points to the informed consent forms that B.P. signed in her expert report.  *See* Pl. Ex. 2 at 10.  Dr. Anderson, as a rebuttal expert witness, is entitled to opine on why a consent form is not dispositive for establishing informed consent.  As Dr. Anderson explained, ▮▮▮▮ Anderson Tr. at 31:12-23.

For these reasons, Dr. Anderson's testimony will undoubtedly assist a trier of fact in determining whether Dr. Amin has met his burden of establishing that the "gist" or "sting" of the challenged statements is false.[4]

### C. Dr. Anderson's Report Relied on an Appropriate Methodology

Dr. Amin next argues that Dr. Anderson did not rely on an appropriate methodology to reach his conclusions.  But, as Dr. Anderson testified, ▮▮▮▮

---

[4] Dr. Amin also argues that Dr. Anderson's testimony would not be helpful because he only reviewed patients on an "individual" basis not as a "general population." Mot. at 11-12. This argument makes no sense: Dr. Anderson's opinion—no different than Dr. Carey, Dr. Bills, or Dr. Hamilton—is limited to the patients whose records he reviewed.

11

███████████████████████████████████████████ Anderson Tr. at 242:14-243:1; *see also id.* at 31:1-7. Dr. Anderson went further than Dr. Bills or Dr. Hamilton by reviewing accompanying statements from detainees to learn what these patients understood about their medical care. *See* Anderson Tr. at 30:19-21, 31:9-23.[5] Dr. Amin makes four specific arguments about Dr. Anderson's methodology, none of which has merit.

*First*, Dr. Amin routinely refers to the Executive Summary and testimony that NBCU provided on September 19, 2023 as Dr. Anderson's "report" and argues that this "report" is inadequate. *See* Mot. at 6-7. But while a "retained" expert must submit a "written report" that is "prepared and signed by the expert," there is no such requirement for a "non-retained" expert. *See Cedant*, 75 F.4th at 1320. Instead, for a non-retained expert, the two-part disclosure required under the Federal Rules "may be submitted by a party on behalf of its expert." *Id.* That is precisely what NBCU did here. The Executive Summary and Senate testimony from Dr. Anderson fully comply with the disclosure requirements under Federal Rule of Civil Procedure 26(a)(2)(C).[6]

*Second*, Dr. Amin argues that Dr. Anderson's "report" is not reliable because he did not read the reports from Dr. Bills or Dr. Hamilton. *See* Mot. at 6-7. Again, this argument is based on the fallacy that Dr. Anderson was required to submit a rebuttal "report." Further, there is no requirement in the Federal Rules that even a "retained" rebuttal expert review the expert report before offering a rebuttal opinion. *See Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 635-36 (D. Haw. 2008) (after plaintiff argued that rebuttal expert should be excluded because he

---

[5] Dr. Amin criticizes Dr. Anderson for not examining or treating the patients. *See* Mot. at 9. But neither did Dr. Bills or Dr. Hamilton.

[6] Dr. Amin argues that the Executive Summary is not Dr. Anderson's work. Mot. at 7. But there is no requirement that the disclosure submitted for a "non-retained" expert be prepared by the expert. And Dr. Amin's argument entirely mischaracterizes the Executive Summary. ████████████████████████████████████████████████████
*See* Anderson Tr. at 34:12-35:1.

"did not review the . . . report . . . which he allegedly rebuts," the court "disagree[d]," explaining that a rebuttal report must only "contradict or rebut evidence on *the same subject matter* identified by another party") (emphasis added). The cases that Dr. Amin cites, both involving "retained" experts, are not to the contrary. In *YETI Coolers, Inc. v. RTIC Coolers, Inc.*, 2017 WL 394511, at *2 (W.D. Tex. Jan. 27, 2021), the court held that an expert was not properly designated as a "rebuttal expert" not only because she failed to read the expert report but because her report focused on an issue different than that addressed by any expert. Similarly, in *Foster v. USIC Locating Services, LLC*, 2018 WL 4003354, at *2 (D. Kan. Aug. 17, 2018), the court held that a "rebuttal" expert should have been designated as a "case in chief" expert because he was belatedly offering a new legal theory on the plaintiff's behalf. Here, unlike in *YETI* and *Foster*, Dr. Anderson is unquestionably opining on the same subject matter as Drs. Bills and Hamilton—the medical necessity and appropriateness of Dr. Amin's medical care—and offering opinions that contradict the ones presented in their expert reports.

*Third*, Dr. Amin claims that Dr. Anderson was not advancing expert opinions to a "reasonable degree of medical certainty." Mot. at 8. But there is no requirement that an expert, particularly a "non-retained" expert, use these magic words (which were not present in the initial expert reports of either Dr. Bills or Dr. Hamilton). Dr. Anderson testified to the Senate "under risk of perjury." *See* Anderson Tr. 187:9-188:3. ▌

▌

▌ *See, e.g.*, Anderson Tr. at 34:24-35:1.

*Fourth*, Dr. Amin argues that Dr. Anderson's opinions are unreliable because they were based on "incomplete records of 19 women." Mot. at 9. ▌

13

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Anderson Tr. at 39:18-40:12. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇ *Id.* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇ *See, e.g.*, Anderson Tr. at 62:23-87:18.  Dr. Anderson repeatedly testified that ▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*See, e.g.*, Anderson Tr. at 69:19-23 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *id.* at 71:4-17 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[7]

The cases that Dr. Amin cites are inapposite.  In *Government Employees Insurance Co. v. Jacobson*, 2021 WL 2589717, at *9-10 (E.D.N.Y. June 24, 2021), for example, the court excluded experts opining on whether medical procedures were billed appropriately despite failing to review *any* of the relevant medical records.  And, in *United States v. Aegis Therapies, Inc.*, 2015 WL 1541491, at *5, 8 (S.D. Ga. Mar. 31, 2015), the court disqualified experts who used the wrong

---

[7] Dr. Amin emphasizes the conclusion in the Executive Summary that "further investigation is warranted."  Mot. at 9. But as the broader context of Dr. Anderson's deposition makes clear, this did not mean that Dr. Anderson—or anyone else on the IMRT—had any doubt about the conclusions they reached.  Rather, this is a recommendation to the government that it would be worth further investigation given that the IMRT found an "alarming" pattern of unnecessary gynecological care from reviewing records from only a subset of the total ICDC detainee population.

Medicare standard to form their opinion, such that their analysis did "not fit the relevant question." Here, by contrast, Dr. Anderson reviewed medical records for a subset of the patients whose records were also reviewed by Drs. Bills and Hamilton. He concluded that, based on the records, Dr. Amin performed unnecessary and inappropriate gynecological surgeries on these ICDC detainees and failed to obtain proper informed consent, directly contradicting the opinions of Drs. Bills and Hamilton.

In sum, because Dr. Anderson's methodology is appropriate, there is no reason to exclude his opinions even if he is considered a "non-retained" expert.

## CONCLUSION

For the foregoing reasons, NBCU respectfully requests that this Court deny Dr. Amin's Motion to exclude the opinions of Dr. Ted Anderson.

Respectfully submitted,

| | |
|---|---|
| *s/ Cynthia L. Counts* | *s/ Elizabeth A. McNamara* |
| Cynthia L. Counts | Elizabeth A. McNamara |
| Georgia Bar No. 190280 | (admitted *pro hac vice*) |
| FISHERBROYLES, LLP | Amanda B. Levine |
| 945 East Paces Ferry Rd. NE, Suite 2000 | (admitted *pro hac vice*) |
| Atlanta, GA 30326 | Leena Charlton |
| (404) 550-6233 | (admitted *pro hac vice*) |
| cynthia.counts@fisherbroyles.com | DAVIS WRIGHT TREMAINE LLP |
| | 1251 Avenue of the Americas, 21st Floor |
| | New York, NY 10020-1104 |
| | Tel: (212) 489-8230 |
| | lizmcnamara@dwt.com |
| | amandalevine@dwt.com |
| | leenacharlton@dwt.com |
| | |
| | *Attorneys for Defendant* |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 2nd day of February, 2024, a true and correct copy of the foregoing document was served upon the following via the Court's electronic filing system:

Stacey Godfrey Evans
sevans@staceyevanslaw.com
Amble Johnson
ajohnson@staceyevanslaw.com
Scott R. Grubman
sgrubman@cglawfirm.com

*Elizabeth A. McNamara*
Elizabeth A. McNamara
(admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
lizmcnamara@dwt.com

*Attorneys for Defendant*