UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

DR. MAHENDRA AMIN, M.D.,    )
        )
    Plaintiff,    )
        )   Case No. 5:21-CV-00056-LGW-BWC
v.    )
        )
NBCUNIVERSAL MEDIA, LLC,    )
        )
    Defendant.    )

_____

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

NBCUniversal's statements that Dr. Amin performed "mass" or "high numbers" of hysterectomies, unnecessary hysterectomies, forced hysterectomies, hysterectomies without consent, and hysterectomies without authorization are false as a matter of law.  As NBCUniversal admits, Dr. Amin performed *two* hysterectomies on women detained at ICDC: one on B.P. and one on K.C.  That number was first known the day that ICE relayed it to NBCUniversal, the same day as the first of the broadcasts, earlier in the day than at least two of those broadcasts, alongside statements from NBCUniversal's immigration attorney sources that they were not seeing large numbers of hysterectomies, and after ICE had told a decisionmaker for NBCUniversal that it would provide data that would "negate" claims of mass hysterectomies.  And it remained unchanged throughout the political theater and myriad investigations into Dr. Amin spurred by NBCUniversal's false reporting.  Although NBCUniversal scrounges for disputes, warping even the testimony of its own experts, there is no genuine dispute, pursuant to Federal Rule of Civil Procedure 56(a), that both B.P. and K.C., the only two patients to receive hysterectomies, needed hysterectomies, their hysterectomies were not forced, they consented to

the procedures, and the procedures were authorized by the hospital and ICE—also all as known since at least ICE's statement to NBCUniversal.  Thus, there is no genuine dispute that the Statements are false.

Unable to muster disputes, NBCUniversal instead argues that when its hosts and journalists said "hysterectomies" on air to the world and included "hysterectomies" on the screen it *actually* meant "non-hysterectomy procedures."  However, each of the Statements[1] referred to hysterectomies directly, or at least in the context of the broadcasts, the Statements at issue meant hysterectomies.  NBCUniversal's own decisionmakers termed the story "ICE hysterectomies" or "the hysterectomy story."  In all, NBCUniversal used the word "hysterectomy" or flashed it on the screen during broadcasts about Dr. Amin around 50 times.  *See* Doc. 130-8 at 8-13; Doc. 131-2 at 12-13; Doc. 131-3 at 3, 13-18; Doc. 131-5 at 13-14; Doc. 133-7 at 5-10; Doc. 153-1 ¶¶ 145, 148, 153, 181, 185, 187.  This is not counting the use of the words "uterus collector" or "concentration camp," which were said or flashed on the screen around 12 times.  *Id.*

Further, although each broadcast as a whole should be considered for the context of the Statements, that does *not* mean that all Statements within a broadcast—Statements made up of different words—have the same meaning.  Accordingly, each Statement must be considered individually.  The context is important only to consider whether the "sting" of the statement was different "in context" than the literal words themselves.  But each Statement should be evaluated individually (considering any relevant context).  It simply cannot be said, as NBCUniversal

---

[1] NBCUniversal contends, without citation to any authority, that Dr. Amin "appears to no longer challenge six statements" and that such statements "should be dismissed."  Doc. 155 at 3 n.2.  To the contrary, Dr. Amin's motion makes clear that he is bringing his motion as to all the Statements except for those previously dismissed by the Court in its order on NBCUniversal's motion for judgment on the pleadings and those that concern alleged bruising.  Doc. 122 at 2 n.1.  And Dr. Amin's motion is for partial summary judgment in his favor, so of course NBCUniversal cannot move in the footnote of a response to dismiss Statements on *any* grounds.

argues, that *all* Statements referred to other procedures and *not* hysterectomies.  After all, such Statements include, for example, "High number of hysterectomies at ICE Detention Ctr.," "Five different women between October, November, and December 2019, over that three-month period, five different women who'd had a hysterectomy done," "Mass hysterectomies performed on women at ICE facility," and "Nurse Dawn Wooten alleges mass hysterectomies performed at Georgia facilities."  Doc. 122 at 5-6.  Other Statements—such as, "uterus collector," "experimental concentration camp," having had "the wrong ovary removed," and even "full or partial hysterectomies or other procedures for which no medical indication existed"—clearly would not have the same effect on the viewer as NBCUniversal's contention now that such Statements instilled the same meaning in viewers as would non-hysterectomy procedures.  *Id.*

In context, all of the Statements—including those involving unspecified "procedures"—referred to hysterectomies.  However, if the Court determines that some uses of the term "procedures" indicate exclusively non-hysterectomy medical treatment (though Dr. Amin maintains it should not), nevertheless many Statements clearly refer only to hysterectomies.  And those Statements are false.  Allegations of "mass hysterectomies," "high numbers of hysterectomies," "uterus collector," and "experimental concentration camp" are simply not the same and do not engender the same reaction in viewers as "mass non-hysterectomy gynecological treatments," as NBCUniversal now alleges.

NBCUniversal does not contest that Dr. Amin only performed *two* hysterectomies on women detained at ICDC, Doc. 156 ¶ 2, *not* as was central to its coverage "mass" or "high numbers" of hysterectomies, or that the hysterectomies (and all other procedures) were authorized.  *See generally* Doc. 155.  NBCUniversal does not argue that it is true that Dr. Amin operated an "experimental concentration camp" or that Dr. Amin was a uterus collector

(although it does argue that its "uterus collector" comments are rhetorical hyperbole, an argument foreclosed by the Court's previous order). *Id*. at 21.

NBCUniversal claims that there is an issue of material fact as to the necessity of B.P. and K.C.'s hysterectomies, Doc. 156 ¶ 3, but that is not actually the case. As discussed below, *both* of NBCUniversal's experts and the doctor whose conclusions are contained in the Senate Subcommittee Report, all of whose opinions should be excluded, agree that it was necessary for those women to receive hysterectomies. NBCUniversal similarly attempts to manufacture disputes as to whether the hysterectomies were done with consent and were approved, but there are simply no genuine disputes of any issue of material fact on those points.

Dr. Amin is entitled to partial judgment as a matter of law. As NBCUniversal itself concedes, he is due summary judgment as to the elements of defamation that the Statements are "of and concerning" him, published to third parties, and actionable even in the absence of special harm. NBCUniversal also concedes that Dr. Amin is due summary judgment against NBCUniversal as to its affirmative defenses brought under New York law. Dr. Amin is also, notwithstanding NBCUniversal's arguments to the contrary, due summary judgment as to the falsity of the Statements, which a reasonable viewer would see as accusing him of performing mass, unnecessary, forced, unconsented-to, unauthorized hysterectomies. To the extent that the Court concludes that the reasonable viewer would interpret *some* of the Statements as actually accusing him of performing mass, unnecessary, forced, unconsented-to, unauthorized non-hysterectomy gynecological procedures, Dr. Amin is nevertheless due summary judgment as to the falsity of the Statements that clearly refer to hysterectomies.

## ARGUMENT

Dr. Amin moves for summary judgment as to several elements of his defamation claim,

and NBCUniversal admits that he is due summary judgment on the following elements: the Statements were "of and concerning" Dr. Amin; NBCUniversal published the Statements to a third party; and the Statements are actionable even in the absence of special harm. Doc. 155 at 25 n.18.[2]  NBCUniversal also does not argue that the Statements were not defamatory. *See generally id*. Rather, NBCUniversal argues that the Statements were not false as a matter of law. *Id*.  However, as a matter of law, (1) Dr. Amin did not perform "mass" or "high numbers" of unnecessary, forced, unconsented-to, unauthorized hysterectomies; (2) Dr. Amin did not take out the wrong ovary on a patient or falsely tell a patient they had cancer before performing a hysterectomy; (3) Dr. Amin did not "collect uteruses" or operate an "experimental concentration camp;" and (4) the ordinary viewer would interpret NBCUniversal's allegations as being about hysterectomies and not non-hysterectomy gynecological treatment and, to the extent that an ordinary viewer could view *some* of the Statements as being about other procedures, Dr. Amin is nevertheless due summary judgment as to the Statements that clearly concern hysterectomies, because the Statements would have had a different effect on the mind of the viewer from that which the truth would have produced.[3]

---

[2] In the same footnote, NBCUniversal states: "NBCU disputes that Dr. Amin can prove any actual damages attributable to the challenged News Reports or that Dr. Amin can establish sufficient evidence to support punitive damages."  Doc. 155 at 25 n.18.  Although it is not relevant for purposes of either Dr. Amin's motion or NBCUniversal's motion for summary judgment, Dr. Amin notes that he has set forth evidence of actual damages and evidence to support punitive damages. *See, e.g.*, Doc. 122-1 ¶¶ 70-75; *see generally* Doc. 153 at 20-36 (documenting NBCUniversal's publication of the Statements with actual malice).

[3] NBCUniversal misrepresents the record in several ways.  For example, it claims that the letter was a "whistleblower complaint" of Dawn Wooten, when the actual whistleblower complaint of Dawn Wooten did not discuss hysterectomies or gynecological treatment of women at all, mischaracterizes a 2015 settlement between a hospital and the Department of Justice, and generally mischaracterizes myriad documents. *See* Doc. 155 at 1-7.  Rather than re-hashing each such mischaracterization individually, Dr. Amin points the Court to the parties' Statements of Material Facts and responses thereto.  Doc. 122-1; Doc. 136; Doc. 153-1; Doc. 156.

I.     **Dr. Amin did not perform "mass" or "high numbers" of unnecessary, forced, unconsented-to, unauthorized hysterectomies.**

There is no genuine issue of material fact: Dr. Amin performed two hysterectomies, both were necessary, both were done with patient consent and were not forced, and both were authorized.  Accordingly, each facet of NBCUniversal's allegations about the hysterectomies is false: (1) they were not "mass" or done in "high numbers," Doc. 122 at 9-11; (2) they were not unauthorized, *id*. at 13-14; (3) they were not unnecessary, *id*. at 11-13; and (4) they were not forced and done without consent, *id*. at 14-15.

A.     **Only two hysterectomies occurred.**

As to the number of hysterectomies performed, NBCUniversal concedes that Dr. Amin performed only two hysterectomies on women detained at ICDC.  Doc. 156 ¶ 2.

B.     **Each hysterectomy was authorized.**

NBCUniversal does not argue that the procedures were unauthorized by ICE or the hospital.  Doc. 155 at 22 n.16.  NBCUniversal instead contends that "authorization" means the same thing as "without consent."  Doc. 155 at 22 n.16.  This muddling is *not*, as NBCUniversal contends without any citation to the record, "ma[de] clear" by the context of the broadcasts.  *Id*.  Further, as discussed below, there is no genuine issue of material fact: the patients consented to the hysterectomies.

C.     **Each hysterectomy was necessary.**

NBCUniversal stands alone in arguing that there is an issue of fact as to whether the only two ICDC patients of Dr. Amin's who received hysterectomies—K.C. and B.P.—received hysterectomies that were not medically necessary.  ICE agreed as part of its mandatory pre-

approval procedure that both patients needed the hysterectomies.  Doc. 156 ¶¶ 29, 32.[4]  The

experts retained by Dr. Amin—Dr. Bills and Dr. Hamilton, who is not subject to any *Daubert* or

other challenge by NBCUniversal—agree that both hysterectomies were medically necessary and

indeed in B.P.'s case was "life-saving."  Doc. 123-2 at 10, 16; 123-4 at 4, 8.  NBCUniversal's

non-retained expert Dr. Anderson, whose testimony should be excluded pursuant to *Daubert*,

Doc. 123,



Doc. 122 at 13.[5]  Dr. Carey

. *Id.* at 13.  Although Dr. Carey testified

. *Id.* at

12-13.

In response to Dr. Carey's argument, Dr. Hamilton—whose opinion testimony, again, has

not been challenged by NBCUniversal—reiterated her opinion that B.P.'s hysterectomy was

---

[4] NBCUniversal argues, in a footnote, that "DHS recently released a report calling into question
ICE's determination of the medical necessity of surgical procedures performed on detainees,
including hysterectomies specifically."  Doc. 155 at 6 n.6.  But as the exhibit NBCUniversal
attaches plainly demonstrates, that report specifically omitted consideration of surgeries—
including hysterectomies—conducted at ICDC.  Doc. 156-1 at 5 n.3.  Accordingly, the exhibit
says nothing about Dr. Amin's treatment of women detained at ICDC, including in the medically
necessary hysterectomies he provided B.P. and K.C.  Further, the report makes no finding that
any procedure was medically unnecessary, in any event.  *See generally* Doc. 156-1.

[5] NBCUniversal argues that Dr. Anderson's testimony



Doc. 158 at 10-11.

at Doc. 123-5 at 237:23-
238:5 (under seal).

lifesaving and pointed out that under B.P.'s circumstances "a simple hysterectomy is acceptable per ASCCP guidelines."  Doc. 123-4 at 4.  Dr. Bills also noted that medical literature indicates "a simple hysterectomy is a reasonable option for treatment instead of a radical hysterectomy," and both point out Dr. Carey's criticism that Dr. Amin was not aggressive enough as to B.P.'s treatment is in tension with Dr. Carey's other criticism that Dr. Amin was too quick to attempt aggressive treatment.  *Id*. at 4, 8-9.

NBCUniversal searches for support in statements of individuals who were consulted by House Committees and a Senate Subcommittee.  Doc. 155 at 4-6.  As an initial matter, the portions to which NBCUniversal cites must plainly be excluded as hearsay without an exception; opinions requiring scientific, technical, or specialized knowledge; and opinion testimony of experts not disclosed pursuant to Federal Rule of Civil Procedure 26(a).  But also, the House and Senate documents do not negate, but rather support the evidence that only two hysterectomies were performed and that both were medically necessary.

First, both documents constitute hearsay that must be excluded, because they are not based on the personal observations of the report drafters.  Fed. R. Evid. 802.  NBCUniversal mentions, in a footnote only, that the *Senate* document "is admissible pursuant to Federal Rule of Evidence 803(8) as a[n exception to hearsay as a] government report that contains indicia of trustworthiness."  Doc. 155 at 5 n.5.  Notably, NBCUniversal has made no such argument as to the *House* document, *id*., which accordingly should be excluded.

Also, the contents stated in each of the documents are made by individuals who shared opinions with the document drafters, rather than statements of the drafters themselves, and accordingly constitute hearsay within hearsay.  For example, in *United Tech. Corp. v. Mazer*, the Eleventh Circuit held that, whether or not a document was a public record subject to Rule 803(8)

exception, statements contained therein still constituted inadmissible hearsay, because the Rule 803(8) exception only applies to reports that "contain factual findings that are based upon the knowledge or observations of the preparer of the report, as opposed to a mere collection of statements from a witness."  556 F.3d 1260, 1278 (11th Cir. 2009) (quotation marks omitted). Here, the House document ███████████████████████████████████ ███████████████.  Doc. 157-3 at 10 (under seal).  The Senate document's contents, likewise, are based on purported "expert medical analysis conducted for the Subcommittee," rather than the knowledge or observations of the preparer of the document.  Doc. 136-68 at 10. Also, both documents are inadmissible because they indicate a lack of trustworthiness pursuant to Federal Rule of Evidence 803(8)(A)(iii), in that they contain political grandstanding—for example, in Senator Jon Ossoff's statements quoted by NBCUniversal that detainees' treatment by ICE was "nightmarish" and "disgraceful."  *E.g.*, Doc. 155 at 2, 6, 15 n.10; *see Barry v. Tr. of Int'l Assoc.*, 467 F. Supp. 2d 91, 100 (D.D.C. 2006) (ruling that indications of "political grandstanding" weigh against admissibility of a report from a Congressional entity).

Both documents' contents are also based on "scientific, technical, or specialized knowledge" pursuant to Federal Rule of Evidence 701(c), and accordingly they must go through the gatekeeping functions of *Daubert* and Rule 702 and are subject to the notice requirements of Federal Rule of Civil Procedure 26(a).  But NBCUniversal did not notice any of these doctors whose opinions are contained in the House and Senate Subcommittee documents as experts; had it done so, Dr. Amin would have availed himself of the opportunity to depose and potentially move to exclude such experts pursuant to *Daubert*, as he has done as to Dr. Anderson and Dr. Carey.  Doc. 123; Doc. 124.  Accordingly, such omissions cannot be said to be "substantially justified or harmless" and must be excluded.  Fed. R. Civ. P. 37(c).

Finally, both documents lack indicia of trustworthiness, because they are unreliable political documents built upon undisclosed expert opinions Dr. Amin has not had the opportunity to test or contest, unlike the documents cited in the two non-binding cases NBCUniversal cites.[6] For example, in *Union Pac. R.R. Co. v. Kirby Inland Marine Inc.*, the report was a based on a process that included "a preliminary investigation, detailed investigation, public hearing, and an administrative review." 296 F.3d 671, 679 (8th Cir. 2002). The court ruled that the hearsay evidence upon which the investigators relied did not render the preparation of the report untrustworthy, *id.*—*not* that hearsay testimony within that report was admissible. In *Barry v. Tr. of Int'l Assoc.*, although the court admitted one of two reports proffered generally, it noted that because "the report includes many additional out-of-court statements that are themselves hearsay, and thus presents instances of double or even triple hearsay," any specific contents of the report "are admissible only if each part of the combined statements confirms with an exception to the hearsay rule provided in the Federal Rule of Evidence." 467 F. Supp. 2d 91, 100-02 (D.D.C. 2006) (quotation marks omitted). For these multiple independent grounds, the contents are not capable of being reduced to admissible evidence and accordingly should be

---

[6] NBCUniversal has a pattern in this litigation of citing non-binding cases for propositions that are contrary to binding legal authority. *See, e.g.*, Doc. 59 at 6-7, 7 n.3 (citing Eleventh Circuit and Georgia law in ruling against NBCUniversal's argument that New York privilege law should apply to this case); Doc. 153 at 4 n.1 (Dr. Amin's response to NBCUniversal's motion for summary judgment, noting NBCUniversal's citation of a trial court order that "summary judgment is the rule and not the exception in defamation cases" contrary to subsequent binding precedent, including an order of the Supreme Court of the United States expressly rejecting the exact contention almost verbatim and stating: "The proof of 'actual malice' calls a defendant's state of mind into question, and does not readily lend itself to summary disposition."); *id.* at 17-18 (same, as to whether the Georgia fair report privilege is a conditional privilege defeated by actual malice, where Georgia statute and case law states clearly that it is). Here, likewise, NBCUniversal ignores *United Tech. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009) and discusses instead an opinion from the United States Court of Appeals for the Eighth Circuit and an order from a court for the United States District Court for the District of Columbia, Doc. 155 at 5 n.5, both of which are factually distinct.

excluded for purposes of the parties' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c)(2).

Even still, the House and Senate documents do not help NBCUniversal.  Even the drafters of the Senate document, which as discussed above should be excluded, *see also* Doc. 153 at 14-16, agree with Dr. Amin: "The Subcommittee did not substantiate the allegations of mass hysterectomies on ICDC detainees.  Records indicate that Dr. Amin performed two hysterectomies on ICDC detainees between 2017 and 2019.  Both procedures were deemed medically necessary by ICE."  Doc. 136-68 at 9.  And—in an indication of the lack of trustworthiness of these reports without the safeguards of hearsay exclusions, Rule 26(a) expert disclosures, and *Daubert*—the purported expert cited by the House ███████████████

████████████████████████████████████████████████

████████████████████████████████████ Doc. 157-3 at 6.

NBCUniversal next argues as to medical necessity that certain deposition testimony from Dr. Amin and one of his experts, Dr. Bills, "has established that whether medical procedures (including hysterectomies) are 'necessary' or 'unnecessary' is not a statement of fact that can be proven true or false."  Doc. 155 at 19-20.  This is simply a brazen misstatement of the cited testimony.  Dr. Amin ███████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

███████████████. Doc. 153-1 ¶¶ 353-54.  Dr. Bills, likewise, testified ███████████

████████████████████████████████████████████

███████████████████████████████████████████████████████ *Id.* ¶ 357.

Outside of these portions of Dr. Bills and Dr. Amin's depositions, which NBCUniversal

has distorted as discussed above, Dr. Amin also testified ███████████████████████

████████████████████████████████████████ *Id.* ¶ 354.  And

Dr. Bills ██████ stating in his expert report that the procedures he reviewed, including both of

the hysterectomies, were medically necessary.  *See* Doc. 123-2 at 16-17; Doc. 123-4 at 6-11.

### D.      Both hysterectomies were consented-to.

Both K.C. and B.P. consented to their consent to their hysterectomies, as did all ICDC

patients treated by Dr. Amin and treated at the Irwin County Hospital.  Doc. 122 at 14-15.[7] ████

██████████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* at 14.

NBCUniversal does not argue otherwise.  Indeed, NBCUniversal does not argue that K.C. lacked

consent at all.  The only evidence NBCUniversal cites in response to Dr. Amin's argument that

he is due summary judgment are statements and testimony of B.P.  *See* Doc. 155 at 21-22.[8]  But

the statements NBCUniversal cites do not controvert the evidence.  On the very same pages

NBCUniversal cites, B.P. also testified ███████████████████████████████

---

[7] In its Statement Controverting Dr. Amin's Statement of Material Facts, NBCUniversal argues
that some of these facts are not uncontroverted because they are based on hearsay evidence.
Doc. 156 ¶¶ 8, 12-15, 49.  But the cited testimony is not about the contents of what multiple
medical providers *heard* but rather what they *knew* based on their first-hand knowledge, and
accordingly the testimony does not constitute hearsay.  *Id.*

[8] NBCUniversal also discusses a medical journal article which is primarily about measures a
physician should undertake before agreeing to sterilize a detained woman for purposes of birth
control.  Doc. 155 at 22 (citing Doc. 157-8).  That document, is not particularly relevant to the
case of B.P. in which a hysterectomy was necessary to address a life-threatening cancer, but Dr.
Amin even adhered to the recommendation therein to ensure "safeguards and documentation are
in place to ensure [the sterilization] is not coercive."  Doc. 157-8 at 6.



Doc. 153-43 at 113:25-114:24 (under seal).

Doc. 155 at 22,

.

## II.   Dr. Amin did not take out the wrong ovary of a patient or falsely tell patients they had cancer and then perform a hysterectomy.

NBCUniversal does not contest that Dr. Amin did not falsely tell a patient that they had cancer and then perform a hysterectomy on them. *See generally* Doc. 155.  As to taking the wrong ovary out of a patient, NBCUniversal only responds that the fact that the records of B.P. and K.C. do not indicate the removal of an incorrect ovary does not establish falsity.  *Id*. at 12 n.7.  But as discussed in Dr. Amin's response to NBCUniversal's motion for summary judgment, Dr. Amin produced to NBCUniversal all of his medical records for ICDC detainees that he treated and attested to having never performed any unnecessary procedure, and NBCUniversal identified as witnesses in its initial disclosures many of his patients who have been deposed. Doc. 153 at 13-14, 16 (under seal).  Yet NBCUniversal can identify nothing to create an issue of material fact as to the falsity of its published Statement that Dr. Amin took out the wrong ovary on a patient.  Dr. Amin is due summary judgment as to the falsity of both accusations.

## III.   Dr. Amin did not collect uteruses or operate an experimental concentration camp.

It is false as a matter of law that Dr. Amin collected uteruses or operated an experimental concentration camp.  To the extent that the phrases are construed as statements of fact, they are

false, and to the extent they are construed as opinions they are based on the false defamatory

Statements that Dr. Amin performed mass hysterectomies, because without such facts the

phrases do not make sense.  Doc. 122 at 15-16.

In response, NBCUniversal does not argue that those Statements are true.  Indeed, it does

not address the "experimental concentration camp" phrase at all.  Doc. 155 at 21.  Instead, it

merely repeats its argument on its motion for judgment on the pleadings that "uterus collector" is

rhetorical hyperbole.  *Id*.  That argument was considered and rejected by the Court, which ruled

that, in context, "[u]nlike calling someone evil, which reflects a moral judgment about

someone's actions, 'uterus collector' describes someone's actions themselves," which "is a fact

that is capable of being proven false."  Doc. 59 at 62-63.  In arguing otherwise, NBCUniversal

ignores the Court's ruling without identifying any new argument or any justification.

**IV.   Nothing in the broadcasts or social media posts alters the meaning of the false
     Statements, which would have a different effect on the mind of the viewer from
     that which the truth would have produced.  And to the extent that "procedures"
     would not have necessarily indicated hysterectomies only, "hysterectomies,"
     "uterus collector," and "experimental concentration camp" do not mean the
     same thing as pelvic exams or depo provera injections.**

Consideration of each broadcast as a whole does not alter the "gist" of any of the

individual Statements, such as that Dr. Amin provided high numbers of unnecessary, forced,

unauthorized, and/or unconsented-to hysterectomies, but rather reinforce that gist.  And to the

extent that some of the Statements could be understood as making claims as to non-hysterectomy

gynecological treatment, those Statements do not alter the understanding that *other* Statements

undoubtedly concern hysterectomies. Each of the individual Statements rises and falls alone, just

as the Court dismissed certain individual Statements at the motion for judgment on the pleadings

stage and ordered that discovery proceed as to the remaining Statements.  *See* Doc. 59 at 66-67.

**A.  The Statements conveyed to the mind of the ordinary viewer that Dr.**

**Amin performed mass hysterectomies without necessity, authorization, or consent, which would have a different effect on the mind of the ordinary viewer than the truth.**

Each of the individual Statements "read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it"—that is, in the context of the broadcasts or posts—do nothing to change and in fact reinforce the understanding of the viewer that each of the Statements concern Dr. Amin's performing mass, unnecessary, unauthorized hysterectomies. Doc. 122 at 16-20.  NBCUniversal's arguments otherwise are unconvincing.

NBCUniversal first argues, very briefly, that because the broadcasts contain other allegations, the "gist" was not hysterectomies.  But the term "hysterectomies" appears over and over in every broadcast and social media post,[9] including on headlines in the broadcasts. *See, e.g.*, Doc. 133-7 ("Maddow Show" broadcast, in which the term "hysterectomy" or "hysterectomies" appear 16 times).  Indeed, NBCUniversal's decisionmakers did not call the story "the non-hysterectomy gynecological procedures story," or the "hysterectomies and other gynecological medical treatments story;" they called it in internal communications, quite reasonably, "the hysterectomy story."  *E.g.*, Doc. 130-3 at 2; 133-1 at 3 ("HYSTERECTOMIES

---

[9] NBCUniversal argues that Dr. Amin is not due summary judgment as to the three social media posts because "he never identified them."  Doc. 155 at 24-25.  That is not accurate.  In his complaint, Dr. Amin alleged: "MSNBC and its reporters repeated their false and defamatory statements of and concerning Dr. Amin on Twitter on at least three occasions on September 16, 2020 and September 22, 2020."  Doc. 49 ¶ 89.  In the cases NBCUniversal cites, in contrast, either no statements were identified at all or the statements were first identified in responses to motions.  *See* Doc. 155 at 24-25; *Sarver v. Jackson*, 2008 WL 4911836, at *4 (N.D. Ga. Nov. 13, 2008); *Grayson v. No Labels, Inc.*, 2022 WL 12144181, at *3 (11th Cir. Oct. 21, 2022); *Akai Custom Guns, LLC v. KKM Precision, Inc.*, 2023 WL 8449374, at *12 n.7 (S.D. Fla. Dec. 6, 2023).  The Statements within those posts allege "unnecessary hysterectomies" or "mass hysterectomies," as do the Statements contained in the broadcasts.  *See* Doc. 122 at 6.  It is not true that Dr. Amin "never did" produce the social media posts, Doc. 155 at 25, because *NBCUniversal* produced the documents to Dr. Amin pursuant to discovery, and they were discussed during the deposition of Chris Hayes.  Doc. 122-1 ¶ 321.

HAPPENING AT ICE FACILITY, WHISTLEBLOWER SAYS");133-2 at 2.

Also within this same first argument, NBCUniversal contends that "Dr. Amin himself previously conceded" that the "gist" of the Statements is not solely hysterectomies.  Doc. 155 at 2.  NBCUniversal offers zero legal support for its contention that Dr. Amin's efforts to obtain discovery from witnesses that *NBCUniversal* noticed in its initial disclosures, in order to prepare himself to refute *NBCUniversal*'s anticipated arguments based on its identification of such witnesses who did not have hysterectomies, constitutes any kind of "concession."  It does not.  Further, "[s]tatements by counsel in briefs are not evidence." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013) (quotation marks omitted).  Because it can only point to fragments of non-hysterectomy coverage in the broadcasts, which are flooded by discussions of hysterectomies, NBCUniversal is left to lift single sentences from filings in other proceedings and misrepresent those sentences' gravity in responding to Dr. Amin's motion.

Second, NBCUniversal argues that preceding discussions of hysterectomies with phrases such as "allegations" alters the "context" of the Statements.  Doc. 155 at 13-14.  But under Georgia defamation law, "talebearers are as bad as talemakers."  *Baskin v. Rogers*, 229 Ga. App. 250, 252 (1997) (quotation marks and punctuation marks omitted).  Further, NBCUniversal did not merely neutrally report on allegations and disputes among those but also, in demonstration of its actual malice, weighed in on the allegations in ways that were contrary to what NBCUniversal actually knew and which lent inappropriate credence to the allegations and against Dr. Amin. *See* Doc. 153 at 30-31, 33.

Third, NBCUniversal argues absurdly that the harm to Dr. Amin's reputation would be the same whether or not the allegations are understood as concerning, as they did, hysterectomies.  Doc. 155 at 14-15.  As argued in Dr. Amin's motion and in his response to

NBCUniversal's motion for summary judgment, NBCUniversal's errors are not the kind of "[m]inor factual errors which do not go to the substance, the gist, the sting of a story" but instead would have a massively different effect on the viewer than the truth.  *Swindall v. Cox Enters., Inc.*, 253 Ga. App. 235, 236 (2002) (quotation marks omitted); Doc. 153 at 6-7.  Further, the defamatory sting of the allegations is different from the truth because *the truth is that Dr. Amin also did not perform other unnecessary gynecological procedures*.  *See* Doc. 153 at 9-12.  As discussed above, NBCUniversal's contentions otherwise rest on plainly inadmissible and unreliable evidence which is nevertheless misrepresented by NBCUniversal and is contrary to the testimony of Dr. Amin and others who assisted him in providing medical care, documentation and preapproval of the procedures, and signed consent forms.

**B. To the extent that *some* Statements could be construed by a factfinder to concern non-hysterectomy gynecological treatment, that does not change that other Statements undoubtedly concerned hysterectomies.**

"Hysterectomies," "uterus collector," and "experimental concentration camp" cannot be understood as being the same as the non-hysterectomy procedures such as excising lesions, birth control shorts which control bleeding, pelvic examinations, and tissue scraping for relief from pain or excessive vaginal bleeding, to which NBCUniversal now points.  Doc. 155 at 16; Doc. 136-68 at 11.  NBCUniversal identifies a small handful of script excerpts of the broadcasts that do *not* concern hysterectomies.  Doc. 155 at 11-12.  But to the extent that certain Statements do not concern hysterectomies, they do *not* alter how the Statements which undoubtedly *do* concern hysterectomies are "read and construed in the sense in which the readers to whom it is addressed would ordinarily understand [them]."  *Lucas v. Crenshaw*, 289 Ga. App. 510, 513 (2008) (quotation marks omitted).

V.     **Dr. Amin can and has met his burden to establish falsity of the Statements.**

Because, as discussed above, the Statements are false as a matter of law and nothing in

the broadcasts or social media posts would alter their defamatory sting, Dr. Amin is due

summary judgment as to falsity of the Statements.  NBCUniversal argues that Dr. Amin must

prove falsity by "clear and convincing evidence," but as discussed below it cites only non-

binding dicta from cases that did not apply that standard as to falsity.  As the Eleventh Circuit

has held, the issue is open, and as an order of the Ninth Circuit has reasoned, nothing in *N.Y.*

*Times v. Sullivan* or subsequent case law provides that a plaintiff prove falsity with more than a

preponderance of the evidence.  Either way, Dr. Amin has met his burden.  Second,

NBCUniversal's arguments that Dr. Amin has not met his burden under either standard rely on

inadmissible evidence and still do not create an issue of material fact as to falsity regarding the

hysterectomies that Dr. Amin performed.  Third, to the extent that the Court finds that some of

the Statements actually concerned non-hysterectomy procedures (although as discussed above

the broadcasts and social media posts make clear that the Statements concerned hysterectomies)

and there is a fact issue appropriate for a jury to determine, Dr. Amin rejects NBCUniversal's

characterization that he cannot prevail at trial.

A.  **NBCUniversal misstates the standard.**

"Neither the Supreme Court nor [the Eleventh Circuit] have expressly decided whether

the plaintiff must prove falsity by clear and convincing evidence or simply a preponderance."

*Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1239 (11th Cir. 1999) (citations omitted).

NBCUniversal's argument otherwise cites only district court orders preceding or controverted by

*Levan* and dicta in a holding from the Court of Appeals of Georgia in which the court did not

determine falsity one way or the other.  *See* Doc. 155 at 8 (citing *Stange v. Cox Enter., Inc.*, 211

Ga. App. 731, 732-33 (1994)).  None of those cases change the observation of the Eleventh

Circuit in *Levan*.  *See* 190 F.3d at 1239 n.26 (quoting dicta from the Supreme Court of the

United States that both falsity and actual malice require clear and convincing proof and holding

that such dicta does not establish precedent).

As the Eleventh Circuit further noted, the Ninth Circuit and Florida have both concluded

that the constitutional protections of *N.Y. Times v. Sullivan* and progeny require only

preponderance of the evidence as to falsity.  *Id*. (citing *Rattray v. City of Nat'l City*, 51 F.3d 731,

801 (9th Cir. 1994); *In re Standard Jury Instructions*, 575 So.2d 194, 200 (Fla. 1991)).  Indeed,

as the Ninth Circuit has noted, there is "nothing in *New York Times v. Sullivan* to support the

novel theory that other elements of a defamation claim must be proved by clear and convincing

evidence," and the requirement to prove malice by clear and convincing evidence "adequately

protects those constitutional interests."  *Rattray*, 51 F.3d at 801 (quotation marks omitted).

However, under either standard, Dr. Amin has established that there is no issue of

material fact that Statements accusing him of performing mass forced hysterectomies without

necessity, consent, or authorization are false.  *See Tucker v. Fischbein*, 237 F.3d 275, 288 (3d

Cir. 2001) ("We conclude that the Tuckers have pointed to proof that is sufficient to show, either

by a preponderance or by clear and convincing evidence, that Fischbein's statements to

Luscombe after the filing of the First Amended Complaint were false."  (footnotes noting that the

issue was unsettled omitted)).  Certainly, they are not *true* as a matter of law under either

standard, as NBCUniversal argues in its motion for summary judgment (Doc. 127).  *See* Doc.

153 at 5-16.

### B.  The Statements are about hysterectomies and they are false as a result.

NBCUniversal mischaracterizes the evidence in arguing that Dr. Amin "can never meet

his burden of establishing material falsity." Doc. 155 at 2 (emphasis omitted). The documents that NBCUniversal relies on are inadmissible and unhelpful to its cause, in fact confirming that there were only two hysterectomies, both of which were necessary.

Also, although Dr. Anderson and Dr. Carey's testimony should be excluded pursuant to Federal Rule of Evidence 702 and *Daubert*, NBCUniversal mischaracterizes the contentions of those witnesses in arguing that there is an issue of material fact as to whether K.C. and B.P.—the only two ICDC patients of Dr. Amin who received hysterectomies—medically needed hysterectomies, provided informed consent, and had hysterectomies that were authorized. Again, both did need hysterectomies, both provided informed consent as confirmed ███ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████, and the hysterectomies were authorized by ICE's preapproval process.

### C. The Statements are not about generic "procedures," but even under such characterization, they are still false, which Dr. Amin can prove at trial.

If the Court were to find that some of the Statements actually concerned non-hysterectomy procedures (it should not), falsity of those Statements is a fact issue appropriate for a jury to determine, and Dr. Amin can prove their falsity at trial. First, NBCUniversal's arguments otherwise are irrelevant to this motion because Dr. Amin moves for summary judgment on the falsity of all Statements because they accuse Dr. Amin of performing mass hysterectomies when he did not do so. NBCUniversal muddies the waters to avoid that truth and the realities of its own word choices (*i.e.*, using or showing the word hysterectomy 50 times) by claiming that all the statements are really just about generic procedures and not hysterectomies. This is simply not true.

But also, the evidence NBCUniversal cites in support of its claims that because the

Statements are about generic "procedures," then they are true and Dr. Amin cannot prove

otherwise as a matter of law, is inadmissible and unhelpful nevertheless.  Indeed, as discussed in

Dr. Amin's opposition to NBCUniversal's motion for summary judgment, all or nearly all of the

documents NBCUniversal cites are inadmissible hearsay, undisclosed expert opinion testimony,

or inadmissible pursuant to *Daubert*; are mischaracterized by NBCUniversal; and are

controverted by other evidence.  *See* Doc.153 at 6-16.  For example, it is not true that

"[g]overnment investigations into the claims against Dr. Amin confirm that he did, in fact,

perform *dozens* of unnecessary or unconsented-to invasive surgeries."  Doc. 155 at 2.  Actually,

*no* government investigation has made any such conclusion.  ███████████████████

████████████████████████████████████████████████████

██████████████████  Doc. 153-1 ¶ 126.  The Senate document expressly states: "*The*

*Subcommittee recognizes that this data in and of itself does not indicate that treatments were*

*unnecessary*," particularly in the absence of attendant "demographic information" of Dr. Amin's

ICDC patients as well as other "key variables of the female detainee population, including age

and medical history."  Doc. 136-68 at 11 n.8 (emphasis supplied).  In such a context, Senator

Ossoff's gratuitous statements calling the women's treatment "disgraceful," Doc. 155 at 6, does

not constitute reliable evidence of the truth of the Senate document but rather demonstrates the

*unreliability* pursuant to Federal Rule of Evidence 803(A)(iii) of the Senate document as the

product of political grandstanding (as well as not on conclusions based on the personal

knowledge of the document's preparer but rather a collection of other witnesses' statements that

constitute inadmissible hearsay, improper lay opinion testimony based on scientific and technical

knowledge, and/or unnoticed and unvetted expert opinion testimony).  Doc. 153-1 ¶¶ 358, 373,

378; Doc. 136-68 at 4, 11 n.8.[10]

One of NBCUniversal's rebuttal experts identified "patterns" that she describes as problematic but failed to identify a *single specific procedure* that was medically unnecessary or done without consent, or authorization. *See generally* Doc. 124; reply to Doc. 124. The other, who did not even review the reports of the experts he was purported to rebut, based his conclusions on admittedly incomplete documents, ████████████████████████ ████████. *See generally* Doc. 123; reply to Doc. 123. Even still, he did not identify specific procedures that were unnecessary. *Id.* Rather, he found only that those limited documents themselves did not show necessity for procedures that attorney advocates told him had occurred. *Id.* ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ *Id.*

An expert of Dr. Amin's reviewed documentation for each procedure and provided the expert opinion that the procedures were all medically necessary. Doc. 153 at 13-14. Dr. Amin testified that each procedure he has performed is medically necessary, as documented in the medical forms for the hundreds of patients from ICDC that he treated which he produced to NBCUniversal, from which NBCUniversal could not identify a single specific procedure that

---

[10] NBCUniversal complains that "Dr. Amin persists in the fiction that the Whistleblower Complaint was not, in fact, a 'complaint' but merely a 'letter to the media.'" Doc. 155 at 3 n.3. But it is *NBCUniversal* who is persisting in the false implication that the letter is a complaint, by conflating the letter with the complaint that Dawn Wooten actually submitted to the Department of Homeland Security's Office of Inspector General through the OIG whistleblower portal, which *did not discuss gynecological gynecological care at all, much less mention Dr. Amin*. Doc. 122 at 3-4. In contrast, the letter, which was distributed by Project South to the media was never submitted, and accordingly it did not follow the proper channels for an administrative review and was not a "whistleblower complaint" as NBCUniversal reported and now argues. *Id.*; Doc. 153-1 ¶ 6.

was unnecessary. *Id.* █████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████ *Id.*

NBCUniversal's argument that Dr. Amin can never prove falsity to the extent some Statements relate to non-hysterectomy procedures also fails as to Statements that such procedures were done without consent. ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ Doc. 155 at 22-24 (emphasis in original). But Dr. Amin and people who assisted him in treating women detained at ICDC testified that he always obtained informed consent, including through translation services, as well as ICE pre-approval. Doc. 122-1 ¶¶ 8-15; Doc. 153-1 ¶ 333. Dr. Amin obtained informed consent forms for all procedures, ███████████ █████████████████████████████ Doc. 155 at 22; Doc. 153-1 ¶¶ 302, 338, 346, 348. NBCUniversal fails to identify *any* procedure for which he did not obtain consent as documented on such consent forms, despite receiving Dr. Amin's medical forms for hundreds of ICDC patients, rather pointing to ████████████████████████████████████ ██████████████████. Finally, it is not true that "testimony has revealed that detainees believed these procedures were hysterectomies because they did not understand what Dr. Amin was doing to them in the first place." Doc. 155 at 2. That is the baseless and self-interested speculation of a single attorney advocate trying to defend, in retrospect, his vendetta against Dr. Amin. *Id.* at 23 (citing deposition testimony of Andrew Free). Rather, the testimony of the women who brought claims against Dr. Amin was that ███████████████████████████████

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Doc. 153 at 7.

### VI.  NBCUniversal agrees that Dr. Amin is due summary judgment as to the non-falsity elements of defamation.

As to the elements of Dr. Amin's complaint that are not falsity and actual malice, NBCUniversal agrees that Dr. Amin is due summary judgment.  Doc. 155 at 25 n.18.  NBCUniversal also agrees that, pursuant to the Court's order on NBCUniversal's motion for judgment on the pleadings, Doc. 59, New York law does not apply to this case.  Doc. 155 at 25 n.18.  Accordingly, there is no genuine issue of material fact, and Dr. Amin is due summary judgment that the Statements are defamatory, of and concerning Dr. Amin, and actionable without proof of special damage because they are defamatory per se, and NBCUniversal's affirmative defenses arising therefrom and under New York law are also due to be dismissed.

### CONCLUSION

Dr. Amin performed two hysterectomies on women detained by ICE at ICDC.  Both hysterectomies were necessary, authorized, and consented to, and neither was forced.  Dr. Amin did not remove the wrong ovary from a patient, did not falsely tell anyone they had cancer and then perform a hysterectomy on them, did not collect uteruses, and did not run an experimental concentration camp.  There is no genuine dispute on these matters, and nothing in the broadcast alters the defamatory sting of NBCUniversal's Statements that Dr. Amin did so.  Accordingly, the Statements are false as a matter of law.  Also, as NBCUniversal concedes, NBCUniversal published the Statements, which are defamatory, of and concerning Dr. Amin, and actionable without proof of special damage because they are defamatory per se.  Also as NBCUniversal concedes, New York law does not apply to Dr. Amin's action in a federal court in Georgia for his Georgia defamation claim as to defamation that primarily harmed in Georgia.  Accordingly, Dr. Amin respectfully requests summary judgment as to those elements and to NBCUniversal's

affirmative defenses which rely upon New York law.

Respectfully submitted this 21st day of February 2024.

*/s/ Stacey G. Evans*
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com
Tiffany N. Watkins
Georgia Bar No. 228805
twatkins@staceyevanslaw.com
J. Amble Johnson
Georgia Bar No. 229112
ajohnson@staceyevanslaw.com

STACEY EVANS LAW
4200 Northside Parkway NW
Bldg One; Suite 200
Atlanta, GA 30327
(770) 779-9602 (phone)
(404) 393-2828 (fax)

*Counsel for Plaintiff*

Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com

CHILIVIS GRUBMAN
DALBEY & WARNER LLP
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** will be served upon all attorneys in this matter by filing with the Court's CM/ECF system.

This <u>21st</u> day of February 2024.

***<u>/s/ Stacey G. Evans</u>***
Stacey G. Evans
