UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 5:21-CV-00056-LGW-BWC |
| v. | ) |
| | ) |
| NBCUNIVERSAL MEDIA, LLC, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY ON MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. ERIN CAREY**

Dr. Erin Carey offers opinions about "patterns of surgical aggressiveness" without any methodology—indeed, without even knowing the total number of patients of the population for which she offers this opinion. Further, Dr. Carey's testimony will not assist the trier of fact on any issue in the case, as she does not opine that either of Dr. Amin's patients who received hysterectomies did not need hysterectomies and does not identify any patient whose other gynecological medical treatment was unnecessary. Further, Dr. Carey's opinions include many which exceed the scope of the testimony of experts she is offered to rebut and accordingly should be excluded. In responding in opposition, NBCUniversal does not contest many of Dr. Amin's arguments:

- Dr. Carey was noticed only as a rebuttal expert whose testimony should be limited to rebutting the opinions of experts noticed by Dr. Amin. *See* Doc. 160 at 6-8 (arguing that Dr. Carey's opinions rebut the opinions of Dr. Amin's experts).

- Dr. Carey is a retained expert for whom NBCUniversal was required to disclose "a complete statement of all opinions the witness will express and the basis and reasons for them" pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)(i). *See id*. at 1 ("In

response, Defendant NBCUniversal Media, LLC ('NBCU') retained Dr. Erin Carey.").

- Dr. Carey does not know the total number of patients of Dr. Amin and accordingly any "pattern" she found was done without knowing the total number of ICDC patients Dr. Amin had, and instead based her conclusion of a "pattern" of aggressive procedures on the records Dr. Bills reviewed which were selected because they were for patients who had procedures or had complaints about Dr. Amin.  *See id*. at 10 (arguing that Dr. Carey did not need to know the total number of patients to identify a pattern); Doc. 124 at 8 ("Dr. Carey reviewed only the medical records that Dr. Bills reviewed, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇").

- Dr. Carey could not identify a single individual patient who received an unnecessary procedure in her expert report ▇▇▇▇▇▇▇▇▇▇, much less weigh the risks of procedures against their benefits.  *See* Doc. 160 at 8 (arguing that Dr. Carey did not need to do so, and that Dr. Carey identified specific patients in a letter written after the deposition and after Dr. Amin's experts' responses to the rebuttal reports).

- Dr. Carey agreed that the patients who received hysterectomies from Dr. Amin—B.P. and K.C.—both needed hysterectomies, although NBCUniversal insists that Dr. Carey disagreed with the *type* of hysterectomy B.P. received ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  *See id*. at 2-4.

Notwithstanding the arguments that NBCUniversal does make, Dr. Carey's testimony should be excluded as unreliable and not helpful to the trier of fact.  NBCUniversal argues that

2

Dr. Carey could identify "patterns" notwithstanding not knowing the total number of patients. Doc. 160 at 9-10. But Dr. Carey's conclusions as to patterns and generalities demonstrate a failure to consider each treatment and its necessity, instead making only generalized statements about patterns without knowing the total number of patients Dr. Amin treated or how many of those patients did not receive surgeries. Doc. 124 at 7-8.

NBCUniversal also spends much of its brief arguing that its glosses on Dr. Carey's opinions are more accurate than Dr. Amin's, stating that Dr. Amin "misstates Dr. Carey's opinions" when he summarizes that Dr. Carey opined that B.P. and K.C. needed hysterectomies and received them. Doc. 160 at 2-5. But NBCUniversal cannot avoid that Dr. Carey testified ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ that Dr. Amin should have used a different type of hysterectomy on B.P., opining that the "preferred" (not "required") treatment was a "modified radical hysterectomy (class II hysterectomy)" instead of a "simple hysterectomy." Doc. 124 at 7 (quotation marks omitted). In addition to being incorrect, NBCUniversal's argument is irrelevant for purposes of *Daubert*. *See Griffin v. Coffee Cnty.*, 608 F. Supp. 3d 1363, 1374 (S.D. Ga. 2022) ("Moreover, whether Dr. Sperry's conclusions are correct, or supported by Dr. Sinclair, does not demonstrate Dr. Sperry's opinions are reliable. *See Seamon*, 813 F.3d at 988 (noting the court's focus must be 'solely on principles and methodology, not on the conclusions that they generate').").

Finally, even if Dr. Carey's opinions were reliable and helpful to the trier of fact, which they are not, Dr. Carey's testimony should be limited. Although it concedes that Dr. Carey is a rebuttal expert, and therefore only the opinions responsive to Dr. Amin's experts' opinions are admissible, NBCUniversal argues that items like "informed consent" and "trauma informed care" are responsive to Dr. Amin's experts' testimony. Doc. 160 at 6-8, 10-11. That is simply

3

not the case; Dr. Amin's experts' opinions were limited to the medical necessity of B.P. and K.C.'s hysterectomies (both Dr. Hamilton and Dr. Bills) and the medical necessity of non-hysterectomy medical procedures (Dr. Bills).  Doc. 124 at 13-14; Doc. 124-2 at 2, 6-10, 16-17.  Further, as a retained expert, Dr. Carey was required to provide a written expert report containing "a complete statement of all opinions the witness will express and the basis and reasons for them," Fed. R. Civ. P. 26(a)(2)(B), which she did not do.  Accordingly, Dr. Carey's testimony, if admitted at all, should be limited to rebutting the opinions of Dr. Amin's experts and limited to the opinions Dr. Carey disclosed in Dr. Carey's expert report.

I.  **Dr. Carey's Opinions Are Not Reliable Because They are Not Grounded in an Appropriate Methodology.**

As Dr. Amin argued in his motion to exclude, Dr. Carey's opinions are unreliable because they (1) do not rest on a methodology with a reliable foundation but rather conflate whether a procedure was medically "unnecessary" with whether in her opinion the patient received the best treatment possible; (2) do not measure risks of procedures against benefits of treatments Dr. Amin performed on any patient, instead falling to generalities of "patterns;" (3) make findings as to "patterns" of high numbers of procedures despite having a patient pool ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and (4) set forth conclusions as to informed consent despite informed consent being documented ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮.  Doc. 124 at 6-10.  Without rehashing that motion, Dr. Amin briefly discusses each reason in turn and demonstrates how NBCUniversal's response fails to rebut Dr. Amin's argument.

First, Dr. Carey's opinions are not reliable because they do not rest on a methodology with a reliable foundation, with Dr. Carey instead asserting that a procedure is "unnecessary"

4

merely because her opinion differs as to whether the patient received the best treatment possible. *Id*. at 6-7.  NBCUniversal spends much of its brief arguing that Dr. Amin misstated Dr. Carey's conclusions as to B.P. and K.C.  Doc. 160 at 2-5.  But Dr. Amin fairly quotes Dr. Carey's ▇▇▇ expert report.  Doc. 124 at 7.  ▇▇▇

▇▇▇ *Id*. (quotation marks omitted).

NBCUniversal argues that Dr. Amin's summary is "an over-simplification of Dr. Carey's opinion," Doc. 160 at 4, but it offers nothing to controvert *Dr. Carey*'s testimony ▇▇▇

▇▇▇ Doc. 124 at 7.

Similarly, as to B.P., Dr. Amin fairly summarized that, although his experts disagree, Dr. Carey's report states "not that B.P. did not need a hysterectomy but that [Dr. Amin] should have done a different type of hysterectomy." *Id*.  NBCUniversal argues that "serious consequences" could arise from Dr. Amin's providing a simple hysterectomy rather than a modified radical hysterectomy, but it does not argue—and Dr. Carey has not testified or asserted—that B.P. did *not* need a hysterectomy when Dr. Amin performed one.  *See* Doc. 160 at 3.  Indeed, as NBCUniversal summarizes from another expert, the hysterectomy was "life-saving."  *Id*.  Dr. Carey's methodology that it was nevertheless unnecessary because of the type and timing of hysterectomy are unreliable pursuant to *Daubert*.

    Second, similarly, Dr. Carey fails to measure risks inherent to medical procedures against the benefits of treatment as to *any* specific patient, instead stating general, unsupported conclusions such as that certain procedures or treatments are "generally not required," "rarely necessary," "sufficient for the diagnosis of most women," and the like.  *See* Doc. 124-3 at 8-11.

5

NBCUniversal argues that Dr. Carey did not need to do so, because Dr. Bills's report did not identify or "discuss the treatment of any specific non-hysterectomy patient." Doc. 160 at 8. But Dr. Bills *did* identify his findings specifically: the expert reports identified the specific patients whose records he reviewed and the Bates ranges so that NBCUniversal could review, and he stated: "Each of the above procedures were medically indicated as documented by various modalities including the history and physical, preoperative ultrasound evaluation, intraoperative surgical images documentation, and final pathology." Doc. 124-2 at 2-4, 17. Accordingly, Dr. Bills's expert report states, in effect: here are the patients whose records I reviewed, here are the procedures they underwent, and my conclusion is that the procedures were all medically indicated. In contrast, by stating that *some* but not *all* procedures were *not* medically necessary, Dr. Carey demonstrated that her methodology did not include considering the patients' records individually. Dr. Carey's attendant findings of "patterns of aggressive surgical intervention," as a whole, in addition to not shedding light on the medical necessity of any given medical procedure, are not reliable.

Third, as to such "patterns if aggressive surgical intervention," Dr. Carey's conclusion is based on her review of the records Dr. Bills reviewed, ███████████████████████ ███████████████████████████████████. Doc. 124 at 8-9 (citations omitted). NBCUniversal argues that Dr. Carey's conclusions do not require a denominator, because they are based on "Dr. Amin's consistent pattern of employing the very same surgeries in his 'toolbox' when patients presented with certain concerns." Doc. 160 at 10. 

██████████████████████████. ████████████ ███████████████████████████████████████, Doc. 123, ██████████████████████████████████████

6

███████████████████████████████████████████████████████████████

██████████████. Doc. 124 at 9 (quotation marks omitted).  Dr. Carey simply cannot reliably opine as to any "pattern" or Dr. Amin's use of a "toolbox" as to determining whether or not to recommend a patient undergo procedures, ████████████████████████████████ ████████████████████████████████████████.  Dr. Carey admits, and NBCUniversal does not argue otherwise, that she has no knowledge of the number of patients who did not undergo procedures.  Doc. 124 at 8; Doc. 160 at 10.  Thus, she cannot testify about a pattern across Dr. Amin's patient population.

Fourth, as to informed consent, Dr. Carey's conclusions that "it did not appear that Dr. Amin consistently followed the full process of informed consent" and "did appear to not consistently engaged [sic] patients in shared medical decision-making" are not based upon any methodology at all.  Doc. 124 at 9-10.  NBCUniversal, but not Dr. Carey, identifies several purported bases for this conclusion, but those purported bases contradict each other and the documented evidence.

NBCUniversal states, first, that medical records failed to document treatments tried or specify patients' future fertility desires and were produced in English, but second, that informed consent is "not just a piece of paper" and regardless of what a form says the doctor must go through "the risks, benefits, and alternatives of the procedures that you're offering patients." Doc. 160 at 10-11.  NBCUniversal and Dr. Carey cannot have it both ways: under Dr. Carey's theory as articulated by NBCUniversal, the absence of certain documentation establishes that informed consent did not take place, but the presence of documentation does *not* establish that informed consent did take place.  That is ridiculous, and if an opinion cannot be tested or disproved, it is not reliable pursuant to *Daubert*.  *See McDowell v. Brown*, 392 F.3d 1283, 1298

7

(11th Cir. 2004).

And to the extent Dr. Carey has a methodology for determining informed consent, its application is not reliable because she can point to no information she applied to reach her conclusion: ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████. Doc. 124-6 at 58:5-9 (under seal); Doc. 124 at 10.

NBCUniversal takes two phrases from an article but completely mischaracterizes it to imply that any informed consent form is deficient if it fails to document every benefit of or alternative to surgery. Doc. 160 at 11-12. The two-page article actually states: "Because not all of the hundreds of conceivable risks for an operation can be discussed, surgeons have to use their clinical judgment in the discussion. Supporting documents can contribute to the discussion, but they are not a substitute for oral communication." Doc. 161-1 at 2. Indeed, the *very next sentence* after what NBCUniversal misleadingly quotes states: "The minimum recommended documentation is the date of the dialogue, who was involved, material and unique risks discussed, any special circumstances of the patient, the risk of not having the surgery and whether consent was obtained or refused." *Id*. at 3.[1] Dr. Amin's consent forms adhere to those requirements and do more, ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████ Doc. 124-6 at 234:5-235:2 (under seal) (emphasis supplied). ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████

---

[1] The other article NBCUniversal cites is not relevant. As the abstract makes clear, it is about sterilization as a method of contraception. Doc. 161-2 at 2. NBCUniversal lifts four quotations from that article in purported support of its contention that Dr. Carey had an appropriate methodology for her conclusion that Dr. Amin did not have informed consent. Doc. 160 at 12.

████████████████████████████████████████████████████████

███████████████████████████████████████████████ Dr. Carey's conclusion that Dr. Amin's patients did not provide informed consent is not based on a reliable methodology and should be excluded.

**II.     Dr. Carey's Opinions Do Not Assist the Trier of Fact to Determine a Fact in Issue.**

Next, Dr. Carey's opinions do not assist the trier of fact to determine a fact in issue because, (1) Dr. Carey's opinions that B.P. and K.C.'s hysterectomies could have been handled differently does not help a factfinder determine whether NBCUniversal's statements that Dr. Amin performed mass unnecessary hysterectomies was false; and (2) even under NBCUniversal's attempt to rewrite its reporting to convey "hysterectomies" as "non-hysterectomy procedures," Dr. Carey's conclusions such as that Dr. Amin took an "aggressive approach," without identifying and explaining specific unnecessary procedures, are not helpful. Doc. 124 at 11-13.

NBCUniversal's arguments otherwise are confusing, but Dr. Amin will attempt to respond; NBCUniversal appears to have combined the *Daubert* element of "helpful to the trier of fact" with Dr. Amin's argument that Dr. Carey's opinions be limited to rebutting his experts' testimony.  *See* Doc. 160 at 5 ("II. Dr. Carey's Expert Opinions Would Assist a Trier of Fact Because They Respond Directly to the Opinions of Drs. Bills and Hamilton").  Elsewhere, NBCUniversal contends that Dr. Amin "misstates" Dr. Carey's opinions as to the hysterectomies of B.P. and K.C., but as discussed above, he fairly summarized Dr. Carey's opinions that K.C.'s hysterectomy was not medically unnecessary and that B.P. received a "simple hysterectomy" when she should have received a "modified radical hysterectomy" (although that contention is contested by Dr. Amin's experts).  Doc. 124 at 7, 11.  As Dr. Amin's expert summarized, the

9

debate "is not whether this patient should have had a different type of hysterectomy, but whether a hysterectomy was indicated and reasonable, and it is clear that this hysterectomy [K.C.'s] was also indicated and reasonable." *Id*. at 11-12 (quotation marks omitted).

NBCUniversal does not respond to Dr. Amin's argument that the following statement of Dr. Carey is not helpful: "Recent data reports that compared to White women, Black and Hispanic women are less likely to undergo hysterectomy via a minimally invasive approach." Doc. 124 at 11; *see generally* Doc. 160. Nor does NBCUniversal specifically respond to Dr. Amin's argument that conclusions such as that procedures are "rarely necessary" or Dr. Amin "routinely performed" procedures are helpful to a factfinder in the absence of identifying patients whose procedures were unnecessary. Doc. 124 at 12; *see generally* Doc. 160. Rather, NBCUniversal appears to argue that Dr. Carey was not required to identify specific procedures in responding to "Dr. Bills' conclusory assertions" and that, anyway, Dr. Carey ultimately did identify specific procedures in "a letter supplementing her report." Doc. 160 at 2, 8. First, as discussed above, Dr. Bills *did* identify the procedures that were medically necessary, and Dr. Carey's generalized conclusions about what procedures bear societal injustices or Dr. Amin "routinely performed" do not assist a factfinder determining whether Dr. Amin performed unnecessary procedures on women detained by ICDC.

Second, Dr. Carey's letter, emailed to Dr. Amin's counsel after Dr. Carey's rebuttal report, after the depositions of each expert in this case and after Dr. Amin's experts' response to the rebuttal report, is not a proper supplement, as NBCUniversal appears to very tenuously proffer. *Id*. at 8. As this Court has ruled: "Federal Rule of Civil Procedure 26(e) does not permit supplementation to add points that could have been made in the original expert report or to otherwise shore up weaknesses or inadequacies, and there is no reason why the new assumptions

10

and methodologies used in the second report could not have been adopted and disclosed in the first during the discovery period." *Jones Creek Inv., LLC v. Columbia Cnty., Ga.*, 98 F. Supp. 3d 1279, 1289 (S.D. Ga. 2015).  Unless the failure is "substantially justified or harmless," it must be excluded.  *Id*. (quoting Fed. R. Civ. P. 37(c)).  "[A] party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 719 (2019) (quotation marks omitted).  ███████████████████████████
████████████████████████████████████████  Doc. 105 at 2.  Doc. 139-4 at 2 (filed under seal).

     Dr. Amin noted in his motion the absence of discussion of any specific patients in Dr. Carey's expert report, arguing that conclusions not stated therein should be excluded because they were not identified.  Doc. 124 at 15.  Nevertheless, in its response to the motion NBCUniversal offers *zero* discussion or legal citation for why information in Dr. Carey's letter was not "made known to the other parties during the discovery process," and *zero* discussion or legal citation for why its omission from the original expert report is substantially justified or harmless.  Fed. R. Civ. P. 26(e)(1)(A); Fed. R. Civ. P. 37(c).  Indeed, such a late disclosure, done merely to bolster Dr. Carey's flawed expert report well after the point at which Dr. Amin's experts could respond or collect additional discovery, is neither substantially justified nor harmless.  Dr. Bills and Dr. Hamilton both reviewed the report of Dr. Carey in order to reply to the contentions therein, and they explained in reply why they contend that Dr. Carey's contentions were not based on appropriate methodology and were otherwise incorrect.  Doc. 124-4.  Specifically, both discussed in detail Dr. Carey's statements as to patients who received or were recommended hysterectomies, because Dr. Carey had identified those patients.  *See id*. at 4-5, 8-9.  Dr. Carey's late, cursory attempts ████████████████████████████

11

deprive Dr. Amin of the opportunity to have his experts review and reply to those opinions. Just as the plaintiff in *Jones Creek* could not "avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report," so NBCUniversal cannot avert exclusion of opinion testimony of its expert witness.

> **III.    Dr. Carey is Retained by NBCUniversal as a Rebuttal Expert and Any Opinions Not Responding to Dr. Amin's Experts' Opinions or Not Included in Her Report Should Be Excluded.**

Finally, because Dr. Carey was noticed as a rebuttal expert, Dr. Carey's testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by" Dr. Amin's experts. Fed. R. Civ. P. 26(a)(2)(D)(ii). "A rebuttal expert witness's testimony is permitted under Rule 26 only if it contradicts or rebuts evidence on the same subject matter identified by an opposing expert. A rebuttal witness cannot advance new arguments or new evidence." *Romano v. John Hancock Life Ins. Co.*, Case No. 19-21147-CIV-GOODMAN, 2022 WL 1447733, at *29 (S.D. Fla. May 9, 2022) (quotation marks and some punctuation marks omitted).

It is uncontested that Dr. Carey is a rebuttal expert whose opinions should be limited to rebutting Dr. Amin's experts and may not advance new arguments or new evidence. And yet, as Dr. Amin argues in his motion to exclude, Dr. Carey's opinions far exceed the scope Dr. Amin's experts' opinions that the two hysterectomies were medically necessary (Dr. Bills and Dr. Hamilton) and that other procedures performed by Dr. Amin were medically necessary (Dr. Bills). Doc. 124 at 13-16. Only one of the four subsections of Dr. Carey's "opinions" section, "patterns of aggressive surgical intervention," is even remotely connected to those opinions, and it contains much content that is not responsive at all. *Id*. at 14.

NBCUniversal argues that other sections "clearly respond[] to opinions contained in Dr.

12

Bills' or Dr. Hamilton's reports," but it does not support this assertion. Doc. 160 at 6-8. For example, as to "trauma-informed care" and "informed consent," NBCUniversal argues that these "respond to Dr. Hamilton's contention that both K.C. and B.P. executed 'informed consent forms,' which appeared to support her opinion that Dr. Amin 'performed medical treatment within the applicable standard of care.'" *Id*. at 7. But Dr. Hamilton's ancillary testimony that informed consent forms were present in the patients' medical files does *not* give Dr. Carey license to opine, without any support, that patients did not provide any consent to procedures. Further, the subsection "interpreting normal physiology as pathology" is actually titled, "*Routinely* interpreting normal physiology as pathology," and although Dr. Carey claims that Dr. Amin "appears to use his interpretation to justify surgically aggressive behavior," Doc. 124-3 at 6, there is no discussion of any patients upon whose records Dr. Carey identifies as fitting this "pattern."

## CONCLUSION

Dr. Carey's opinions should be excluded in their entirety because they are not based on any reliable methodology and are not helpful for a trier of fact. Further, because NBCUniversal noticed Dr. Carey as a retained rebuttal expert, her opinions on issues for which Dr. Amin's experts are not offering opinions should be excluded. Finally, her opinions that were not disclosed in her expert report should be excluded.

[Signature on following page.]

Respectfully submitted this <u>21st</u> day of February 2024.

*/s/ Stacey G. Evans*
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com
Tiffany N. Watkins
Georgia Bar No. 228805
twatkins@staceyevanslaw.com
J. Amble Johnson
Georgia Bar No. 229112
ajohnson@staceyevanslaw.com

STACEY EVANS LAW
4200 Northside Parkway NW
Bldg One; Suite 200
Atlanta, GA 30327
(770) 779-9602 (phone)
(404) 393-2828 (fax)

*Counsel for Plaintiff*

Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com

CHILIVIS GRUBMAN
DALBEY & WARNER LLP
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S REPLY ON MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. ERIN CAREY** will be served upon all attorneys in this matter by filing with the Court's CM/ECF system.

This <u>21st</u> day of February 2024.

<u>*/s/ Stacey G. Evans*</u>
Stacey G. Evans

*Counsel for Plaintiff*