**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., | |
| Plaintiff, | Case No. 5:21-cv-00056-LGW-BWC |
| v. | **NBCU'S REPLY IN FURTHER SUPPORT OF MOTION TO EXCLUDE THE OPINIONS OF DR. ELBRIDGE BILLS** |
| NBCUNIVERSAL MEDIA, LLC, | |
| Defendant. | |

Defendant NBCUniversal Media, LLC ("NBCU") respectfully submits this Reply in Further Support of its Motion to Exclude the Expert Opinion of Dr. Elbridge Bills (the "Motion") (Dkt. 138).[1]

## PRELIMINARY STATEMENT

In its Motion, NBCU demonstrated why the proffered expert opinions of Dr. Bills were not "reliable" under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  In his Opposition (Dkt. 162), Dr. Amin largely attempts to skirt NBCU's arguments, focusing instead on Dr. Bills' experience as an OB-GYN and claiming that the issues NBCU raised are better left to a jury.  But, particularly in light of the recent amendments to Rule 702, the numerous problems identified in NBCU's Motion do not simply go to the weight of Dr. Bills' opinion, but to its admissibility in the first place.  Dr. Bills' failure to explain what facts in the patients' medical records led to his conclusory findings, his contradiction of his conclusions during his deposition, and his reliance both on a generalized belief about how other doctors treat their patients and multiple unstated presumptions, all establish that his opinion amounts to little

---

[1] This brief uses the same abbreviations and capitalized terms as appear in the Motion.

more than saying, "Trust me, I'm a doctor."  Indeed, Dr. Amin's attempts to rehabilitate Dr. Bills'

opinions, including by claiming that he relied on medical literature even when he admitted in his

deposition that he did not, only underscores that Dr. Bills' opinions are unreliable.

Accordingly, the Court should strike Dr. Bills' expert and supplemental reports and

deposition testimony and preclude his testimony from being considered in this case.

## ARGUMENT

### I.    DR. BILLS' CONCLUSIONS LACK RELIABILITY UNDER *DAUBERT*

#### A.  Dr. Bills' "Qualifications and Experience" Do Not Make His Opinion Reliable

At its crux, Dr. Amin's Opposition argues that Dr. Bills' opinions are reliable because they

are based on "his qualifications, experience, and review of the medical records."  Opp. at 12-14.

In support, he cites to multiple cases where courts have refused to exclude expert opinions that

were based on a medical record review.  *Id.* at 13.  But NBCU never argued that Dr. Bills is

unqualified to be an expert or that his opinions are *per se* unreliable because they are based on a

review of medical records (indeed, NBCU's own rebuttal expert, Dr. Carey, based her opinions on

a review of the same medical records).  Instead, NBCU explained that Dr. Bills failed to offer any

factual foundation in the medical records for his opinions.  Courts have held that such *ipse dixit*

medical opinions lack reliability under Rule 702 and *Daubert.  See Smith v. United States*, 2022

WL 3346557, at *7 (S.D. Ga. Aug. 12, 2022), *report and recommendation adopted*, 2022 WL

4594484 (S.D. Ga. Sept. 29, 2022), *aff'd*, 2023 WL 5011730 (11th Cir. Aug. 7, 2023);  *In re*

*Mirena IUD Prods. Liability Litig.*, 169 F. Supp. 3d 396, 458 (S.D.N.Y. 2016).

*Stewart v. Johnson*, 2021 WL 3030174 (S.D. Ga. July 19, 2021) (Cheesbro, J.), *report and*

*recommendation adopted,* 2021 WL 6752312 (S.D. Ga. Aug. 10, 2021) (Wood, J.), is instructive.

There, the plaintiff argued that eye injuries he suffered were the result of two assaults that occurred

while he was in the defendants' care.  The defendants hired a practicing ophthalmologist who opined that the plaintiff's eye injuries were not the result of one of the assaults and the plaintiff's vision loss was unlikely to progress further.  *Id.* at *2.  The plaintiff sought to exclude these opinions, arguing that they were unreliable.  *Id.*  The court agreed.  It explained that being an ophthalmologist, on its own, "does not provide a sufficient foundation rendering the opinions she expresses reliable."  *Id.* at *4.  Further, "[c]onclusory assertions that [the] expert's opinions are based on her training and experience are insufficient to establish reliability."  *Id.*  Instead, "[w]hen an expert is relying on experience, the reliability requirement requires an expert to explain how her experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion and how that experience is reliably applied to the facts."  *Id.*  Because the expert's methodology was, instead, merely that she was "a qualified ophthalmologist and formed an opinion based on Plaintiff's records," and because "this [wa]s at its core, *ipse dixit*," the court excluded her opinions.  *Id.*

This case is no different.  While Dr. Bills is undoubtedly a qualified OB-GYN, the only methodology he offers is ███████████████████████████████ Bills Tr. at 82:6-8. But the opinions he offers neither apply his specific experience to the facts of this case nor offer any support from the medical records.  In essence, his report simply counts the number of surgeries he could find in the records (which, as NBCU previously explained, was not a correct tally of the surgeries Dr. Amin performed) and claims that all of these surgeries were "appropriate" and "not medically unnecessary," which he knows because he is an OB-GYN.  *See* Mot. at 8-11.

His supplemental expert report, which Dr. Amin claims NBCU's Motion only briefly references, Opp. at 14, does not change this conclusion.  To the contrary, the supplemental report is largely focused on refuting Dr. Carey's rebuttal opinions, including by criticizing her

outstanding credentials[2] and making incorrect presumptions about the information on which she based her opinion, rather than providing any substantive support for Dr. Bills' own arguments or explanation as to what his opinions were based on.  For example, in rebutting Dr. Carey's opinion that Dr. Amin performed medically unnecessary D&Cs, Dr. Bills states "[w]e are currently taught a blind D&C should be essentially replaced by valid imaging modalities or hysteroscopy" (which supports Dr. Carey's conclusion that the D&Cs were medically unnecessary) but then notes in a conclusory fashion, "[i]t is certainly not uncommon to be treated with a D&C procedure."  Reply Report at 4.  He does not tie this generalized statement to any of the unnecessary D&Cs identified in Dr. Carey's reports.  Like in *Stewart*, Dr. Bills does not provide any support for his general conclusions, rendering his opinion unreliable.

The generalities Dr. Bills offered during his deposition similarly fail to cure this reliability problem.  For example, Dr. Bills testified that D&Cs can be used to treat painful periods.  But, in support, Dr. Bills merely claims that ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████  Bills Tr. at 25:20-24; 76:15-22.  Similarly, while Dr. Bills testified that, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████  *Id.* at 28:12-14.  But there is no evidence he applied *any* of these criteria to the over thirty cystectomies that Dr. Amin performed, merely testifying that ███████████████████

---

[2] Indeed, criticizing Dr. Carey for being *too qualified* is a common theme in Dr. Bills' supplemental expert report, which Dr. Amin seems to have adopted in his Opposition.  *See* Opp. at 8-9 ("Dr. Bills added, "[a]cademicians have a very different practice environment than community physicians, and they are sometimes not aware of what is considered normal and reasonable behavior in a nonacademic environment.").  This not only distorts the record— indeed, Dr. Carey testified that she treats patients from all walks of life, including ███████████████████ ████████████████████████████  Carey Tr. at 192:24-193:4—but it underscores the bias with which Dr. Bills approached this case.

███████████████████████████████████████████████

████████████████████████████ *Id.* at 90:14-18.  And, when asked whether anything in Dr.

Amin's records indicated that Dr. Amin made the medical judgment that these cysts were the

source of his patients' pain (as opposed to other causes), ████████████████████████

███████████████████████████████████████████████

██████ *Id.* at 69:16-70:3.

Dr. Bills cannot rely on his "experience," including his general testimony about what other

doctors do, as a panacea for offering conclusory opinions.  Because, as in *Stewart*, his opinions are

nothing more than *ipse dixit*, the Court should exclude them.

### B.  Dr. Bills' Deposition Testimony Proved His Opinions Were Unreliable

Further, as NBCU explained in its Motion, Dr. Bills' opinions are also unreliable because

he contradicted them during his deposition.  Mot. at 12-15.  *First*, NBCU noted that while Dr.

Bills' expert report said that each of Dr. Amin's surgeries "were medically indicated as

documented by various modalities including the history and physical, preoperative ultrasound

evaluation, intraoperative surgical images documentation, and final pathology," during his

deposition, Dr. Bills admitted that he did not rely on some of these "modalities" because Dr.

Amin's ultrasound and intraoperative images were unclear and he could not always read Dr.

Amin's handwriting.  Mot. at 11-12.  Similarly, after his deposition, when Dr. Bills produced a

chart that purportedly showed his work, it indicated that at least one patient had no "History &

Physical" form (*i.e.*, a dictated form in which Dr. Amin lists the patient's purported admitting

diagnoses and describes the patient's medical history), he could not list the reasons for this

patient's surgery, and yet he still concluded that this surgery was indicated.  *Id.* at 12.

The most that Dr. Amin can offer in response is that if these records were unclear for Dr. Bills, they also must have been unclear for Dr. Carey.  Opp. at 17.  This misses the point.  Dr. Bills stated that his opinions were based on these specific "modalities," and only later did he explain that this was not true.[3]  It appears that Dr. Bills' expert analysis consisted of merely reviewing Dr. Amin's History & Physical forms and, if Dr. Bills believed that one of the "diagnoses" listed in this form could be an indicator for surgery, he found Dr. Amin's treatment to be "appropriate" and "indicated."  *See* Mot. at 15.  This approach, which amounts to little more than a checklist, is not the type of reliable expert opinion that could assist a trier of fact.  And this is vastly different from Dr. Carey's approach, which involved looking at Dr. Amin's treatment holistically, including his prescription of medical therapies, his conclusions about the effectiveness of those therapies as compared to medical guidelines, the potential for non-surgical treatment alternatives, and his lack of differential diagnoses for general pelvic pain, before making a conclusion about the necessity or appropriateness of a surgical intervention.  Because Dr. Bills' analysis is not based on a reliable expert methodology, his opinion should be excluded.

*Second*, in its Motion, NBCU explained that Dr. Bills' deposition testimony contradicted the information in the medical records, which undermined Dr. Bills' general conclusion that every surgery Dr. Amin performed was appropriate.  As but one example, NBCU explained that Dr. Bills testified that a doctor should not remove an ovarian cyst if the patient is experiencing pain on the side where the cyst is not present since the cyst would not be the cause of that pain.  Yet Dr. Amin

---

[3] Dr. Amin also confusingly argues "NBCU fails to note that a 'modality' is simply 'a method of treatment,'" citing to a definition from the National Cancer Institute's Dictionary of Cancer Terms. Opp. at 16.  But while that may be one definition of "modality," that is clearly not how Dr. Bills was using this term in his Report.  He says that the procedures "were medically indicated as documented by various modalities including the history and physical…" Report at 2.  A history and physical form is not a "method of treatment" (nor are the other "modalities" he lists).  It is thus evident that Dr. Bills was using "modalities" to refer to the documentation in the medical records that he purportedly relied upon.

did just that on numerous occasions.  Opp. at 14.  Dr. Amin attempts to downplay this discrepancy by arguing that these are simply "opinions [from Dr. Bills] which differ from [NBCU's] own view of a few records" and this can be a "subject for cross-examination at trial."  Opp. at 18.  Essentially, Dr. Amin argues that this goes to the weight of Dr. Bills' testimony and not its admissibility.[4]  But, in revising Rule 702 in December 2023, the Rules Advisory Committee made clear that it is inappropriate to defer questions about the application of an expert's methodology to a trial.[5]  This inconsistency shows that Dr. Bills either failed to follow his own medical opinion when analyzing Dr. Amin's records or failed to fully read the records on which he was basing his conclusions. *Compare with Kennedy v. Electric Insurance Co.*, 2019 WL 2090776, at *4 (S.D. Ga. May 13, 2019) (refusing to exclude expert when his opinions are "not counter to the factual evidence relied upon, but are instead supported by it").  For this reason, his expert opinion is not reliable.

*Third*, and finally, NBCU explained that Dr. Bills' deposition revealed that he was relying on numerous assumptions about Dr. Amin's treatment and patient population.  Mot. at 15-16.  Dr. Amin attempts to defend these assumptions.[6]  But he ignores that when experts' opinions are grounded on "too much speculation," their opinions are unreliable.  *Clarke v. Schofield*, 632 F. Supp. 2d 1350, 1363 (M.D. Ga. 2009).  Said differently, an expert "cannot just make up facts to support his opinions," and "cannot offer opinions that are 'educated guesses dressed up in evening

---

[4] Indeed, many of the decisions that Dr. Amin' Opposition relies on predate the 2023 amendments to Rule 702 and are inconsistent with them.  *See Adams v. Laboratory Corp. of Am.*, 760 F.3d 1322, 1334 (11th Cir. 2014) (referring to expert's opinion as "shaky" but holding "shakiness goes to the weight of her testimony, not its admissibility"); *Cox v. Allen*, 256 Ga. App. 53, 57 (2002) ("[T]he sufficiency of the facts to support an opinion goes to the weight of the opinion and not to its admissibility.").

[5] *See* https://www.uscourts.gov/sites/default/files/2023_congressional_package_april_24_2023_0.pdf at p. 210.

[6] Looking to deflect from his own expert's presumptions, Dr. Amin chastises NBCU for purportedly presuming that many of Dr. Amin's patients spoke Spanish.  Opp. at 19, n.12.  But this was not an assumption.  Detainees who were deposed in this action required Spanish translators.  Other detainees who gave interviews to the media in the wake of the Whistleblower Complaint stated that they only spoke Spanish (and, accordingly, did not understand what surgeries Dr. Amin was performing on them).

clothes.'"  *Id.* at 1363 (citing *Siharath v. Sandoz Pharm. Corp.,* 131 F. Supp. 2d 1347, 1373 (N.D. Ga. 2001)).  Here, based on his deposition testimony, Dr. Bills presumed (among other things) that: ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████  With these presumptions, Dr. Bills then concluded that Dr. Amin's surgeries were not "medically unnecessary."  But, as the *Clarke* court explained, "[t]he failure of all these unsupported suppositions or any one of them renders th[e] theory inadmissible."  And Dr. Bills could not identify whether there were other assumptions he was making that informed his conclusion.  Mot. at 16.  In short, because Dr. Bills' conclusions are based on "[t]oo much speculation—not enough fact," they should be excluded from this case.  *Clarke,* 632 F. Supp. 2d at 1362-63.

## II.    DR. AMIN CANNOT BOLSTER HIS EXPERT'S OPINION AT THIS JUNCTURE

Finally, in likely recognition that Dr. Bills' opinions are conclusory *ipse dixit*, Dr. Amin spends ten pages of his Opposition attempting to explain and bolster them.  *See* Mot. at 2-10.  In doing so, Dr. Amin references several medical articles and journals, which he claims provide the factual underpinning for Dr. Bills' opinion.  But this contradicts Dr. Bills' testimony, in which he

stated that he did not "review any medical literature"[7] in connection with his review of Dr. Amin's medical records or creation of his expert reports.  *See* Bills Tr. at 47:15-22; 96:8-22.  Dr. Amin's post-hoc explanations thus only underscore the weakness of Dr. Bills' opinions in this case.

For example, in discussing Dr. Bills' opinions on "other medical management practices," Dr. Amin claims that Dr. Bills "reads the Green Journal and Gray Journal every month," Opp. at 9, making it appear as if the Green and Gray Journal provided support for Dr. Bills' conclusions. But in his deposition, Dr. Bills testified that while he reads these Journals every month, they contained no relevant information about the issues in this case.  *See* Bills Tr. at 167:8-12 (when asked about excision versus fulguration of endometriosis, noting "I read the Green and Gray Journal every month, and I've never seen a study addressing [excisional procedures versus fulguration].").  Similarly, Dr. Amin claims that "Dr. Bills cited a study by Dr. Carmen Nezhat that concluded that a hysteroscopy and D&C are part of the evaluation of pelvic pain."  Opp. at 7. In his deposition, however, Dr. Bills did not say he relied on any Nezhat study in support of his opinions.  Rather, he vaguely referenced the fact that a trio of brothers, the Nezhats, had "several papers in the early '90s saying that hysteroscopy and D&C is part of the evaluation of pelvic pain." Bills Tr. 152:15-153:11.  While Dr. Amin now cites to one of those studies, "Use of hysteroscopy in addition to laparoscopy for evaluating chronic pelvic pain," Opp. at 7, that study is about using laparoscopies and hysteroscopies to evaluate pelvic pain, not D&Cs.  In fact, the single reference to a D&C appears to be a note that says: "It has recently been suggested by many researchers that

---

[7] Dr. Amin also notes that Dr. Bills' reply expert report was based on his "understanding of the relevant medical literature" because it noted that when you put "'stage ia2 cervical cancer simple hysterectomy' in Pubmed (basically google for doctors), the first two articles state how a simple hysterectomy is a reasonable option for treatment."  Bills Reply Report at 5.  But this only exemplifies the problems with the reliability of Dr. Bills' methodology.  As Dr. Carey explained in her report, ███████████████████████████████████████████████████████████████  The fact that there are articles—that Dr. Bills admittedly did not rely on when forming his opinion—stating that a doctor can treat stage ia2 cancer with a simple hysterectomy says nothing about whether it is medically necessary or appropriate for a doctor to perform a simple hysterectomy without first knowing what type of cancer he is attempting to treat.

blind curettage should be replaced with hysteroscopy and directed biopsy for the evaluation of abnormal uterine bleeding" and that the authors of the study "believe these findings can be extrapolated to the intrauterine evaluation of chronic pelvic pain." Thus, even in 1995—almost thirty years ago—doctors were concluding that D&Cs should *not* be used to evaluate pelvic pain or treat abnormal bleeding.

In short, it is Dr. Bills' responsibility, not Dr. Amin's, to provide the support for his opinions in this case. Dr. Bills made clear that his opinions were not based on the authorities that Dr. Amin now cites. Accordingly, the Court should reject Dr. Amin's attempt to belatedly strengthen Dr. Bills' opinions.

## **CONCLUSION**

For the foregoing reasons, NBCU requests that the Court enter an order excluding the proffered expert report, supplemental expert report, deposition testimony, and any trial testimony of Dr. Bills from being considered at summary judgment and at trial.

Respectfully submitted,

*s/ Cynthia L. Counts*
Cynthia L. Counts
Georgia Bar No. 190280
FISHERBROYLES, LLP
945 East Paces Ferry Rd. NE, Suite 2000
Atlanta, GA 30326
(404) 550-6233
cynthia.counts@fisherbroyles.com

*s/ Elizabeth A. McNamara*
Elizabeth A. McNamara
(admitted *pro hac vice*)
Amanda B. Levine
(admitted *pro hac vice*)
Leena Charlton
(admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
lizmcnamara@dwt.com
amandalevine@dwt.com
leenacharlton@dwt.com

*Attorneys for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on the 21st day of February, 2024, a true and correct copy of the foregoing was served upon all counsel of record via the Court's electronic filing system.

<u>*s/ Elizabeth A. McNamara*</u>
Elizabeth A. McNamara (*pro hac vice*)