McNamara Reply Declaration

In Support of Summary Judgment

Exhibit 5

```
 1              UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF GEORGIA
 2                   WAYCROSS DIVISION

 3   DR. MAHENDRA AMIN, M.D.

 4               Plaintiff,   CASE NO.
     v.                       5:21-CV-00056-LGW-BWC
 5
     NBCUNIVERSAL MEDIA, LLC,
 6
                 Defendant.
 7

 8             *** CONFIDENTIAL ***

 9        VIDEO-RECORDED DEPOSITION OF
                  CORY GNAZZO
10
          Davis Wright Tremaine, LLP
11        1251 Avenue of the Americas
                  21st Floor
12         New York, New York 10020

13              05/11/2023
              9:36 a.m. (EDT)
14

15

16

17

18

19

20

21

22

23

24
     REPORTED BY:  MONIQUE CABRERA
25   JOB NO. 14600
```

 1   script, when we do, you know, certain
 2   stories with big allegations,
 3   whistleblower complaints, that type of
 4   thing.  We typically go through standards.
 5          I also -- I -- looking back at
 6   all the stuff, I also knew that Jacob's
 7   story had been through standards, which I
 8   think we actually see from -- did Jacob
 9   say that?  Waiting on standards, but we
10   are done with our reporting.
11          So Jacob clearly was waiting for
12   standards to weigh in on his story before
13   he published it.
14       Q.    And on Plaintiff's Exhibit 37,
15   the first comment from Rachel on the
16   second page of the exhibit, Bates Number
17   1937, Rachel's asking, Can someone fill me
18   in on standards, right?
19       A.    Yeah, yeah.
20       Q.    And --
21       A.    And then Tricia -- and then --
22   sorry.  Tricia says, now, I got reportable
23   without comment from ICE.
24          And so that's why, I mean, we
25   were waiting for standards to weigh in on

```
 1  it.
 2      Q.    At some point, you found out
 3  that -- or strike that.
 4            Did you at some point find out
 5  that you were going to have the script
 6  reviewed by the standards prior to the
 7  broadcast?
 8      A.    Well, I think I -- I mean, I
 9  assumed it.  I knew it because of the lang
10  -- I mean, I'm guessing that the language
11  here.  Also, Jacob saying that his story
12  was going through standards.  It would be
13  normal for our story to go through
14  standards as well.
15      Q.    During the news meeting
16  reflected in Plaintiff's Exhibit 37, on
17  the page ending in Bates Number 1938, the
18  third page of the exhibit, back to where
19  Rachel says that there's a lot of jumping
20  to conclusions about the complaint, I
21  don't want to assume it's true.  But she
22  had said if -- if he's got tape -- I
23  assume that's means Soboroff -- and it's
24  credible --
25            (Reporter clarification.)
```

Case 5:21-cv-00056-LGW-BWC   Document 182-5   Filed 02/21/24   Page 5 of 10

| DR. MAHENDRA AMIN, M.D. vs NBCUNIVERSAL MEDIA, LLC. | |  |
|---|---|---|
| Confidential | Cory Gnazzo on 05/11/2023 | Page 69 |

```
 1      Q.    What does that -- what does that
 2   indicate to you?
 3      A.    Just what you said.  I mean, if
 4   he has tape, I mean, interview with the
 5   whistleblower, and if the tape is
 6   credible.  I mean, I am just reading what
 7   she said.  I was not in her head, but she
 8   says, if it's true and we have all that,
 9   we should definitely do it as a story.
10      Q.    You had said, Jacob says yes,
11   it's legit, right?
12      A.    Yes, which was presumably from
13   my text messages.  And also looks like I
14   e-mailed Jacob earlier from the text
15   message, but he never wrote me back.
16   Let's see.  For the Colbert.
17      Q.    Were you aware that Mr. Soboroff
18   had talked to Andrew Free at some point on
19   September 15th, 2020?
20            (Reporter clarification.)
21      A.    Not that I recall.
22      Q.    Do you know who Andrew Free is?
23      A.    I do not.
24      Q.    Are you aware Mr. Soboroff had
25   told Julia Ainsley that he's heard mixed
```

1  things about Dawn Wooten?

2     A.   No.

3     Q.   Would that have been important
4  information for you to know when you were
5  judging the credibility of the story based
6  on Soboroff telling you that it was legit?

7          MS. MCNAMARA:  Objection to
8     form.  Calls for speculation.

9     A.   Yeah, I don't know.  I mean,
10  I -- like I've said, both Jacob and Julia
11  are very well respected and I -- I respect
12  their judgment, and these people have
13  conversations all the time.  And when you
14  publish something, you put your name to
15  it, and this means you have faith in and
16  confidence in it.

17  BY MS. EVANS:

18     Q.   Is it concerning to you at all
19  that Mr. Soboroff was telling you this was
20  legit but was telling Julia Ainsley that
21  he had heard mixed things about Dawn
22  Wooten?

23          MS. MCNAMARA:  Objection.
24     Mischaracterization.

25     A.   Yeah, I don't know when that

```
 1   conversation took place.  I wasn't there.
 2   No, it doesn't concern me.
 3   BY MS. EVANS:
 4       Q.    You did not have any information
 5   about Dawn Wooten independent of
 6   Jacob Soboroff; is that right?
 7             MS. MCNAMARA:  Objection.
 8       Mischaracterization.
 9             MS. EVANS:  It's a question,
10       Liz.  It's not a mischaracterization.
11       I'm asking him.
12             MS. MCNAMARA:  You're -- it
13       assumes --
14             MS. EVANS:  I'll rephrase.
15             MS. MCNAMARA:  It assumes
16       information.
17             MS. EVANS:  I will start my
18       question over.
19   BY MS. EVANS:
20       Q.    Mr. Gnazzo, did you have any
21   information about the credibility of
22   Dawn Wooten independent of what Jacob
23   Soboroff expressed to you about her?
24       A.    I don't recall.  But as I've
25   said, this was not the first -- we had the
```

```
 1   whistleblower complaint.  We also had the
 2   Associated Press story.  We had the Law
 3   and Order story, and we were not the only
 4   people reporting on this.
 5            (Reporter clarification.)
 6            (Whereupon, Exhibit 38, E-mail
 7       String, was marked for
 8       identification.)
 9       Q.   I am going to hand you and your
10   counsel what I am marking Plaintiff's
11   Exhibit 38.
12            This document is produced to us
13   by NBCUniversal Bates Number Bates 439 to
14   440, an e-mail string with two e-mails.
15            Bless you.
16       A.   Uh-huh.
17       Q.   It starts with an e-mail from
18   Tricia McKinney to The Rachel Maddow Show
19   distribution list, September 15, 2020,
20   4:56 p.m.
21            Do you see that?
22       A.   I do.
23       Q.   What does this represent?
24       A.   This is the rundown of the show
25   we've decided to do and the way we decided
```

 1   to do it, the order and the assignment of
 2   who was working on which segment.  And it
 3   has, you know, a little synopsis of what's
 4   in each block.
 5           And in the top, this was a reply
 6   from Ivy Green, who's now, as I recall,
 7   was a tape producer at the time, also a
 8   staff member, associate producer.  And
 9   she's saying who is producing -- who is
10   the tape person, the video person, for
11   each block and Holly would -- the video
12   person for the A block.
13       Q.   What does she mean when she
14   says, tape, exclamation point?
15       A.   "Tape" means who the tape
16   producers are.
17       Q.   So she's indicating that Holly's
18   going to be the tape producer?
19       A.   Exactly.
20       Q.   Okay.  This is not tape ready to
21   go?
22       A.   No, no, no.  It's just -- this
23   is -- below it, it said probably B, C and
24   D, E or something.
25       Q.   I see.

```
 1            CERTIFICATE OF SHORTHAND REPORTER

 2                    NOTARY PUBLIC

 3             I, Monique Cabrera, the officer

 4       before whom the foregoing deposition

 5       was taken, do hereby certify that the

 6       foregoing transcript is a true and

 7       correct record of the testimony given;

 8       that said testimony was taken by me

 9       stenographically and thereafter

10       reduced to typewriting under my

11       direction; and that I am neither

12       counsel for, related to, nor employed

13       by any of the parties to this case and

14       have no interest, financial or

15       otherwise, in its outcome.

16               IN WITNESS WHEREOF, I have

17       hereunto set my hand this 11th day of

18       May, 2023.

19       [signature: Monique Cabrera]

20

21       _____

22       MONIQUE CABRERA
         Notary Public in and for the State of New
23       York
         County of Suffolk
24       My Commission No.  01CA6043156
         Expires:  06/12/2026
25
```