# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DR. MAHENDRA AMIN, M.D.**, <br> *Plaintiff,* <br> v. <br><br> **NBCUNIVERSAL MEDIA, LLC,** <br> *Defendant.* | Case No. 1:23-MI-95-MLB-RDC |

## BRIEF OF *AMICI CURIAE OLDAKER* CO-COUNSEL IN SUPPORT OF NON-PARTY SHAHSHAHANI'S MOTION TO QUASH DEPOSITION

# **TABLE OF CONTENTS**

I.   IDENTITY AND INTERESTS OF THE AMICUS CURIAE ................................... 3
II.  INTRODUCTION ................................................................................................... 4
III. ARGUMENT .......................................................................................................... 6
   A. The ongoing *Oldaker* litigation will be compromised by depositions of putative class counsel. ................................................................................................. 6
   B. Allowing for depositions of attorney actively litigating a related case involving the same parties would set a concerning precedent. ............................................. 7
      i.   The duty of confidentiality allows clients to communicate openly with and build trust in their lawyers. ................................................................................. 7
      ii.  There is a strong presumption against compelling attorneys to testify about matters relating to their representation of clients. ..................................... 9
      iii. A deposition of a third party who is opposing counsel in related, ongoing litigation infringes on attorney-client and work-product privilege and is unduly burdensome. ............................................................................................. 11
IV.  CONCLUSION .................................................................................................... 13

1

# **TABLE OF AUTHORITIES**

**Cases**

*Boughton v. Cotter Corp.,* 65 F.3d 823 (10th Cir. 1995) .................................................. 10
*Davis v. M.S.A. Inc.*, No. 1:20-cv-449, 2021 U.S. Dist. LEXIS 259445 (N.D. Ga. Aug. 16, 2021) ........................................................................................................................ 10
*Hickman v. Taylor,* 329 U.S. 495 (1947) ............................................................... 7, 8, 9
*In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-MD-2885, 2022 WL 2341963 (N.D. Fla. Apr. 26, 2022) ................................................................................ 12
*In re an Ord. Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 17-1466, 2017 WL 3708028 (D.D.C. Aug. 18, 2017) ........................ 10
*Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322 (11th Cir. 2020) ............. 12
*Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621 (6th Cir. 2002) ....................... 10
*Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) ........................................................ 10
*Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) ............................ 10, 11
*Va. Dep't Corr. v. Jordan*, 921 F.3d 180 (4th Cir. 2019) ............................................ 12, 13

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................ 11
Fed. R. Civ. P. 45 ................................................................................................................ 11

**Other Authorities**

ABA Comm. On Ethics & Prof'l Responsibility, Formal Op. 473 ..................................... 9
Ga. R. Prof. Cond. 1.6 ............................................................................................... 7, 8, 11
Model R. of Prof. Cond. 1.6 ....................................................................................... 7, 8, 9

I. **IDENTITY AND INTERESTS OF THE AMICUS CURIAE**

Amici are civil and immigrant rights litigators who serve as putative class counsel in an ongoing related action *Oldaker v. Giles,* No. 7:20-cv-00224-WLS-MSH (M.D. Ga.) ("*Oldaker*"). Subpoenaed non-party Shahshahani is also putative class counsel in the *Oldaker* case, while Plaintiff Mahendra Amin ("Amin") is a defendant.

The **National Immigration Project of the National Lawyers Guild (NIPNLG)** is a nonprofit membership organization of immigration attorneys, legal workers, grassroots advocates, and others working to defend immigrants' rights and secure a fair administration of the immigration and nationality laws. NIPNLG provides legal training to the bar and the bench and engages in policy advocacy, direct representation, and impact litigation to advance the rights of noncitizens. NIPNLG also engages in impact litigation to challenge abuses in immigration detention and to seek redress for violations of the civil rights of detained noncitizens.

The **Immigrants' Rights Clinic at Morningside Heights Legal Services, Inc.**, offers pro bono representation to indigent immigrants and advocates for the civil and constitutional rights of immigrants. Morningside Heights Legal Services, Inc., is a nonprofit legal services organization affiliated with Columbia Law School, but does not purport to present any institutional views of the school.

Clinical Professor **Sabrineh Ardalan** directs the Harvard Law School's Immigration and Refugee Clinical Program. Professor Ardalan is co-counsel and putative class counsel for the plaintiffs in *Oldaker*. She joins in her individual capacity. Her

3

institutional affiliation is provided for identification purposes only and should not be construed as institutional endorsement of this brief.[1]

Professor **Jason Cade** directs the University of Georgia School of Law's Community Health Law Partnership Clinic. Professor Cade is co-counsel and putative class counsel for the plaintiffs in *Oldaker*. He joins in his individual capacity.

Assistant Clinical Professor **Clare R. Norins** directs the University of Georgia School of Law's First Amendment Clinic. Professor Norins is co-counsel and putative class counsel for the plaintiffs in *Oldaker*. She joins in her individual capacity.

Professor **Fatma Marouf** directs the Texas A&M University School of Law's Immigrant Rights Clinic. Professor Marouf is co-counsel and putative class counsel for the plaintiffs in *Oldaker*. She joins in her individual capacity.

Associate Director & Clinical Associate Professor **Sarah Sherman-Stokes** directs the Boston University School of Law's Immigrants' Rights and Human Trafficking Program. Professor Sherman-Stokes is co-counsel and putative class counsel for the plaintiffs in *Oldaker*. She joins in her individual capacity.

Amici have a strong interest in the outcome of this case.

## II. INTRODUCTION

Amici represent fifteen named plaintiffs and a putative class of women who were subjected to medical abuse while detained by U.S. Immigration and Customs Enforcement ("ICE") at the Irwin County Detention Center ("ICDC"). *See Oldaker*, ECF No. 210

---

[1] All institutional affiliations of the law professor amici are provided for identification purposes only and should not be construed as institutional endorsements of this brief.

4

(Second Amended Complaint). The *Oldaker* Plaintiffs allege, *inter alia,* that Amin performed non-consensual, medically unindicated, and/or invasive gynecological procedures on them while they were detained by ICE at ICDC.

The *Oldaker* lawsuit remains pending. Discovery in *Oldaker* is currently stayed, with no discovery having yet commenced – not even initial disclosures served – due to ongoing criminal investigations into Amin's conduct. *Oldaker,* ECF Nos. 168, 178, 187 & 305.

On September 9, 2021, after the *Oldaker* litigation was underway, Amin filed a defamation action against NBCUniversal Media ("NBCU"), which he amended in May 2022. *See Amin v. NBCUniversal Media, LLC,* No. 5:21-CV-00056-LGW-BWC (S.D. Ga.) ("hereinafter *Amin v. NBCU*"), ECF No. 49 (First Amended Complaint). Amin alleges that NBCU published false and defamatory statements about him in five MSNBC broadcasts between September 15, 2020 and September 17, 2020. *Id.* ¶¶ 2, 74-89. Many of the alleged defamatory statements concern reporting that Amin was performing hysterectomies and other invasive procedures on women detained at ICDC. *Id.*

In the past months, Amin has subpoenaed several *Oldaker* Plaintiffs for depositions, and his counsel has indicated he plans to subpoena additional Plaintiffs. He has also served overly broad document subpoenas on more than two dozen attorneys who represented women subjected to Amin's abuses in immigration proceedings, counsel for medical experts involved in the case, and immigrant rights organizations who advocated for the rights of the detained women. He has also served at least one deposition subpoena on an attorney involved in the initial investigation of misconduct at ICDC. These subpoenas have

5

placed attorneys representing vulnerable noncitizens in extraordinarily challenging positions, caught between their ethical obligations to their clients and the requirement to comply with the subpoena power of the courts.

The instant deposition subpoena of Shahshahani represents a concerning development in Amin's aggressive litigation tactics, as it is the first deposition subpoena of counsel to the *Oldaker* lawsuit—an active, ongoing case in which Amin is a defendant. This deposition—and the possibility of subsequent depositions of other *Oldaker* counsel—threatens to interfere with and compromise the *Oldaker* litigation. Allowing a subpoena of this nature to proceed will set concerning precedent and encourage similar gamesmanship in future cases.

### III. ARGUMENT

#### A. The ongoing *Oldaker* litigation will be compromised by depositions of putative class counsel.

The subpoena seeks to compel Shahshahani, an attorney involved in related litigation against Amin, to testify as to privileged and confidential communications and work product. Shahshahani represents women who have alleged that Amin performed non-consensual, medically unnecessary, and/or invasive gynecological procedures on them while they were detained by ICE at ICDC. As co-counsel in the *Oldaker* litigation, Shahshahani has worked closely with Amici over the last three years in preparing and prosecuting the *Oldaker* case. It is hard to imagine what questions Amin might ask Shahshahani that would not involve either her communications with her clients protected by attorney-client privilege or her mental impressions developed in preparation for possible

6

litigation. *See Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947) (attorneys' thoughts, mental impressions, beliefs, and conclusions are protected by the work product doctrine). The deposition, if allowed to proceed, will necessarily involve Shahshahani's investigation and communications related to the development of ongoing, related litigation in which Amin is a defendant.

The risk that the proposed deposition would be used to uncover aspects of the *Oldaker* case strategy and privileged client communications or work product through deposition of counsel on a concurrently pending related matter should be a significant concern. Even if the deposition were limited to non-privileged information, it would disrupt the adversarial process and chill the free exchange of information between Shahshahani, her co-counsel in the *Oldaker* litigation, and her clients. Indeed, Amici, as Shahshahani's co-counsel in the *Oldaker* litigation, may be forced to shield themselves from relevant facts, thereby resulting in less effective representation, in the *Oldaker* litigation due to a fear of being deposed in Amin's defamation matter. To allow this deposition to proceed would interfere with and very likely compromise the *Oldaker* Plaintiffs' lawsuit.

### B. Allowing for depositions of attorney actively litigating a related case involving the same parties would set a concerning precedent.

#### i. The duty of confidentiality allows clients to communicate openly with and build trust in their lawyers.

The fundamental principle of confidentiality is essential to "the trust that is the hallmark of the client-lawyer relationship." Model R. of Prof. Cond. 1.6(b)(6), cmt. 2; *see also* Ga. R. Prof. Cond. 1.6(a) ("A lawyer shall maintain in confidence all information gained in the professional relationship with a client."). The assurance of confidentiality

7

encourages clients "to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter." Model R. Prof. Cond. 1.6, cmt. 2; *see also* Ga. R. Prof. Cond. 1.6, cmt. 4. Confidentiality between a lawyer and her client "not only facilitates the full development of facts essential to proper representation of the client but also encourages people to seek early legal assistance." Ga. R. Prof. Cond. 1.6, cmt. 2.

The principle of confidentiality encompasses the evidentiary attorney-client privilege and work product doctrine but also stretches more broadly. Model R. of Prof. Cond. 1.6, cmt. 3; *see also* Ga. R. Prof. Cond. 1.6, cmt. 5. Rather, where information is sought without compulsion of law, the duty of confidentiality applies and protects "not merely matters communicated in confidence by the client but also to all information gained in the professional relationship, whatever its source." *Id.* Ga. R. Prof. Cond. 1.6, cmt. 5.

This broad expectation of confidentiality is a cornerstone of lawyers' relationships with their clients. In the *Oldaker* case, the assurance of confidentiality made women who suffered medical abuse and subsequent retaliation for speaking out about their abuse feel comfortable to speak openly with attorneys about what they had endured and to file litigation to vindicate their rights.

Similarly, the protection of attorney work product—including attorneys' mental impressions and opinions—is crucial to maintaining a client's trust that their attorney will advance and protect the client's interests. Zealous and thorough representation requires "certain degree of privacy" as a lawyer must "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman*, 329 U.S. at 510-11. This work is

8

reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Id.* at 511. All this material is presumptively privileged and protected from disclosure, and for good reason. Permitting opposing counsel to access these materials "on demand" would prejudice clients and create a "demoralizing" effect on the legal profession. *Id.*

### ii. There is a strong presumption against compelling attorneys to testify about matters relating to their representation of clients.

While attorneys are permitted to reveal confidential information "to comply with other law or a court order[,]" Model R. of Prof. Cond. 1.6(b)(6), an attorney who receive a subpoena for information relating to the representation of a client should not be a "passive bystander[s]". ABA Comm. On Ethics & Prof'l Responsibility, Formal Op. 473 (2016), at 2 (quoting ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 94-385 (1994), at 3). Rather, if the client objects to production of the requested information, an attorney must "assert all reasonable claims against disclosure and seek to limit the subpoena . . . on any reasonable ground." *Id.* at 8.

Courts examining depositions of attorneys for information relating to client representation have criticized the practice and allowed such depositions only as a last resort. Allowing for attorney depositions "adds to the already burdensome time and costs of litigation" and "detracts from the quality of client representation," as "counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." *Shelton v. American Motors Corp.*, 805 F.2d

9

1323, 1327 (8th Cir. 1986). Moreover, such a practice poses an "obvious" "chilling effect" on "truthful communications from the client to the attorney[.]" *Id.*

A deposition of an attorney "inherently constitute[s] an invitation to harass the attorney and parties" and the party seeking the deposition should be required to "demonstrate that the deposition is the only practical means available of obtaining the information." *Davis v. M.S.A. Inc.*, No. 1:20-cv-449, 2021 U.S. Dist. LEXIS 259445, at *7 (N.D. Ga. Aug. 16, 2021) (citing W. *Peninsular Title Co. v. Palm Beach Cnty.*, 132 F.R.D. 301, 302 (S.D. Fla. 1990)). Courts confronted with a deposition of an attorney for information relating to a representation of a client often apply the test established by the Eighth Circuit in *Shelton*, which requires that the party seeking a deposition must show "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton,* 805 F.2d at 1327; *see also Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 629 (6th Cir. 2002) (adopting *Shelton* test); *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999) (same); *Boughton v. Cotter Corp.,* 65 F.3d 823, 830 (10th Cir. 1995) (same).

Though the *Shelton* test is generally invoked when a party seeks to depose opposing counsel in the case at hand, its principles and reasoning similarly apply to a case where a party seeks to depose opposing counsel in a related and active litigation matter. *In re an Ord. Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 17-1466, 2017 WL 3708028, at *5 (D.D.C. Aug. 18, 2017) ("Given the respondents' representation of an entity adverse to the petitioners and their affiliates in other

10

proceedings, the factors deemed important in *Shelton* [. . .] bear on consideration of the potential burden on the respondents of the petitioners' requested discovery."). Allowing for a deposition in this scenario will eat up a significant amount of counsel's time and will take away from efforts litigating another case against the same adversary. It will be burdensome and costly to litigate and the Court will very likely be forced to resolve the work-product and attorney-client privilege objections that will inevitably arise in the deposition. *Shelton*, 805 F.2d at 1327. And it will certainly have a chilling effect on communications with clients who have sued the party seeking the deposition as plaintiffs in a related matter.

### iii. A deposition of a third party who is opposing counsel in related, ongoing litigation infringes on attorney-client and work-product privilege and is unduly burdensome.

The Court has a broad power to quash a subpoena on the basis that the subpoena requires the disclosure of "privileged or other protected material" or subjects an individual to "undue burden." Fed. R. Civ. P. 45(d)(3)(iii) and (iv). Similarly, the Court may issue a protective order under Rule 26(c) where a subpoena threatens to cause "annoyance, embarrassment, oppression, [or] undue burden[.]" Fed. R. Civ. P. 26(c)(1).

Depositions of non-parties who are opposing counsel in related, ongoing litigation will almost certainly involve "privileged or other protected material." Fed. R. Civ. P. 45(d)(3)(iii). Such attorneys will be obligated to invoke work product and attorney-client privilege in response to most if not all questions. Under the Georgia Rules of Professional Conduct, any "information gained in the professional relationship [with the client], whatever its source" is treated as confidential under the rules of professional ethics, Ga. R.

11

Prof. Cond. 1.6, cmt. 5, and should be treated as "other protected material" under Rule 45(d)(3)(iii). These privileges and protections are crucial to zealous representation and building trust in attorney-client relationships, as discussed *supra* in Section B.i, and strongly militate in favor of quashing a subpoena in this scenario.

Further, the act of deposing opposing counsel in a related, ongoing lawsuit poses an undue burden to a non-party. Generally, to determine whether a subpoena should be quashed for undue burden, the "the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Va. Dep't Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). Where the subpoena is directed to a non-party, "courts must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally." *Id.* (internal quotations omitted); *see also Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1342 (11th Cir. 2020) (subpoena recipient's status as non-party to litigation weighs against disclosure). "Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.* Unless the non-party "can offer information that cannot be obtained from the party directly, there would be no good cause for a subpoena against the [non-party]." *Id.* When seeking discovery from a non-party, "the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation." *Id.; see also In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-MD-2885, 2022 WL 2341963, at \*5 (N.D. Fla. Apr. 26, 2022) (citing and applying *Va. Dep't Corr.* to deny a discovery request against a non-party).

12

Courts faced with a non-party subpoena should consider whether the information sought can be otherwise obtained from one of the parties to the litigation and weigh the economic costs to the non-party. *Va Dep't Corr.,* 921 F.3d at 189. Further, a court should consider any other relevant burdens, which may include threatened "privacy or confidentiality interests"—encompassing the privacy interests not just of the nonparty subpoena recipient but also others implicated by the information solicited. *Id.* (interpreting Fed. R. Civ. P. 45(d)(3)(A)(iv) to require consideration of undue burden on "any person" not just the recipient of the subpoena).

Requiring a deposition from a non-party who is also opposing counsel in a separate, ongoing lawsuit poses significant economic costs, implicates the confidentiality interests of counsel's clients, and interferes in counsel's relationship with said clients. It is hard to imagine a discovery need that would justify such a significant burden on a non-party to the litigation.

## IV. CONCLUSION

For the foregoing reasons, Amici urge the Court to quash the subpoena against non-party Azadeh Shahshahani.

Respectfully submitted, this 22nd day of September 2023.

| | |
|---|---|
| */s/ Alex S. Drummond* | */s/ Sirine Shebaya* (by consent) |
| Alex S. Drummond | Sirine Shebaya |
| Georgia Bar No. 231116 | DC Bar No. 1019748 |
| adrummond@seyfarth.com | Matthew S. Vogel |
| SEYFARTH SHAW LLP | LA Bar No. 35363 |
| 1075 Peachtree Street, N.E. | Amber Qureshi |
| Suite 2500 | DC Bar No. 90001046 |
| Atlanta, Georgia  30309 | Megan Hauptman |
| Telephone: (404) 885-1500 | DC Bar No. 1780749 |

13

Facsimile: (404) 892-7056

*Counsel for Amici Curiae*

**National Immigration Project of the National Lawyers Guild (NIPNLG)**
2201 Wisconsin Ave NW, Suite 200
Washington, DC 20007
(202) 656-4788
sirine@nipnlg.org
matt@nipnlg.org
amber@nipnlg.org
megan@nipnlg.org

*Counsel for* Amici Curiae

14