# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **In re: Subpoena Issued to Azadeh Shahshahani,** | ) ) ) | |
| **DR. MAHENDRA AMIN,** | ) ) | **CIVIL ACTION FILE NO. 1:23-cv-04492-MLB-RDC** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | |
| **NBCUNIVERSAL,** | ) ) | |
| **Defendant.** | ) ) ) | |

## PLAINTIFF'S SURREPLY TO NON-PARTY AZADEH SHAHSHAHANI'S REPLY TO MOTION TO QUASH

Dr. Amin appreciates the opportunity to respond to the irrelevant, unfounded, hyperbolic, and personal allegations made against his counsel in Movant's reply brief. The Rules allow motions to strike pleadings, but movant's reply brief is not a pleading. Fed. R. Civ. P. 12(f). Otherwise, Dr. Amin would move to strike the brief.

## A. **The reply brief does not address the merits of the motion**[1]

The attacks against Dr. Amin's counsel in the reply brief are false, but they are also irrelevant. With no basis in fact or law, Movant alleges that Dr. Amin and his counsel have engaged in sanctionable discovery misconduct. That is not true. No court has found such a thing. None of the deponents in any of the depositions

---

[1] What remains true and why the motion to quash should be denied is that (1) the Defendant in the defamation case listed "representative(s) from Project South," which includes Movant, as relevant witnesses (Doc. 8-1 at ¶ 15) and Dr. Amin otherwise identified Movant as likely to have discoverable information because of her appearance in numerous documents produced in the case (*Id.* ¶¶ 3-6), and there is no foundation for Movant or the Court to presume that Dr. Amin seeks the deposition for any purpose other than discovery in his defamation case, even if her role as one of 16 attorneys in a separate case could be grounds for quashing the subpoena, which it is not (*Id.* ¶¶ at 7-8; Doc. 8 at 10-11). Alternatively, the motion should be transferred. Though she now claims she will not consent to transfer, she already did so, representing to the Southern District of Georgia that "I believe that this SDGA Court has the most familiarity with these issues and we submit to its jurisdiction willingly." Doc. 8-2 at 2. Further, "exceptional circumstances" under Rule 45(f) merit transfer. Doc. 8 at 22-23. Movant herself argues, though falsely, that Dr. Amin and his counsel have engaged in improper conduct, but surmise that the only reason they allegedly "managed to fly under the radar with impunity" is because "[n]ot one court was made aware" of the alleged misconduct. Doc. 17 at 1. As Dr. Amin argued at the telephonic hearing, if Movant wants this issue resolved by the court with the most knowledge of the case, parties, counsel, and discovery thus far, that location is the Southern District of Georgia.

discussed in the reply, nor any of their counsels, nor anyone else, has moved for sanctions against Dr. Amin or his counsel for any actions in any deposition that has taken place. Movant has cited no law, and Dr. Amin is unaware of any, holding that allegations of misconduct in some prior deposition (and from a stranger to that deposition) are grounds for quashing a valid subpoena for deposition.

Notably, the one court that was asked by several members of amici curiae to hold Dr. Amin in contempt *for even daring to seek* discovery in his defamation case (where discovery was opened), because there was a stay in *another* case where he is a defendant, ruled that those two cases travel their own paths and declined to find Dr. Amin in contempt. *See* Order, *Oldaker v. Giles*, Case No. 7:20-cv-224(WLS) (May 4, 2023), ECF 304 at 3.

**B. Movant makes false allegations against Dr. Amin's counsel**

**1. No one had Movant "stalked and harassed for months." Doc. 17 at 3.**

To the extent this refers to a process server's lawful efforts to serve a subpoena, counsel for Dr. Amin attested in her sworn declaration that Movant refused to accept service of a subpoena and that the process server reported that Ms. Shahshahani evaded service. Doc. 8-1 ¶¶ 12-13. Characterizing personal service—which was only necessary because of Movant's own refusal to cooperate in accepting service, *or to even refrain from evading service*, of a subpoena—as "stalking" and "harassing" is emblematic of the hyperbole and mischaracterizations of Movant.

**2. Neither Dr. Amin nor his counsel are seeking privileged information, nor have they done so in other depositions.**

Movant claims that Dr. Amin's counsel "asked one or more objectionable question [sic] on nearly every page of [Mr. Whitty's] deposition transcript." Doc. 17 at 6-7. That is not true, but simply because someone objects to a question does not make a question improper. None of the deposition objections in this case have been adjudicated. And with regard to Mr. Whitty's deposition, the improperness of the objections and instructions not to answer are obvious from even a cursory review.

For example, the first appearance of the word "privilege" in the deposition is Mr. Whitty's refusal to answer, on the basis of the work product doctrine, the question, "How was the document reflected in Exhibit 2 initially shared with anyone *outside of the signatories on the document or Government Accountability Project*, to your knowledge?" Whitty Dep. 30:20-31:21 (emphasis supplied). That refusal to answer indirectly led to the truncated excerpt quoted in the Reply (Doc. 17 at 5-6). But the Reply leaves out that counsel for Dr. Amin clarified that she did not yell, but "did raise my voice" and admitted, "I was wrong," but that she had felt raising her voice was necessary because Mr. Whitty's counsel was repeatedly interrupting. Whitty Dep. 40:4-11. The transcript reflects that it was Mr. Whitty's counsel who was attempting to answer for the witness and make speaking objections on the record. *Id.* 30:20-40:11. To further illustrate the unfoundedness of the multitude of objections in Mr. Whitty's deposition, after conferral prior to a motion to compel,

counsel for Mr. Whitty agreed to reconvene the deposition remotely for the purpose of answering questions he had previously refused to answer as privileged.  Ex. 1 ¶ 2.[2]

Movant also cites (albeit to an incorrect page number) a portion of Mr. Free's deposition as an example of asking about privileged information.  Doc. 17 at 10.  But it omits counsel for Dr. Amin's preface, in which she warned Mr. Free and his counsel that the question may be objectionable: "Your counsel will object to this question, but I'm asking it for the record."  Free Deposition, 36:3-4.  Movant also cites to a portion of Mr. Free's deposition transcript where he was asked about women for whom he had shared information with Congress.  *Id.* 80:6-93:25.  No blanket objections or instructions not to answer were made, as Mr. Free's counsel recognized that the process of gaining the information that led to the communications with Congress are not protected.  *Id.* 93:13-14.

The reply also alleges "repeated[] question[ing to Sarah Owings] about what she and her clients discussed."  Doc. 17 at 10.  But in the deposition, Ms. Owings answered every question Movant cites, without refusing to answer on the basis of any

---

[2] During the hearing, counsel for Ms. Shahshahani purported to have emailed with counsel for Mr. Whitty, after which she characterized counsel for Dr. Amin as "lying."  While the nature of that particular broadside is unclear, as counsel for Dr. Amin explained at the hearing and swears in her declaration, counsel for Mr. Whitty *has* agreed to reconvene the deposition for the purpose of answering questions previously not answered under claim of privilege.  That deposition is scheduled for October 30, 2023 at 1:00PM.  Ex. 1 ¶ 2.

privilege—a likely recognition that because Ms. Owings had talked to the media about those clients and the information they shared with her, the information lost any privileged status. *See* Owings Dep. 9:9-23, 10:1-11:25, 15:1-16:25. Indeed, at one point in the deposition, counsel for Ms. Owings **thanked** counsel for Dr. Amin for crafting a question to avoid infringing on privilege: "I just want to flag that this could be getting close to attorney/client privilege. But you—you asked a very specific question. Thank you, Stacey." *Id.* 109:17-20.

## 3. Dr. Amin has not been "deceptive" regarding other subpoenas. Doc. 17 at 11.

At the time of Dr. Amin's response brief, no attorneys had filed motions to quash their own deposition subpoenas, and conferrals were ongoing regarding two attorneys subpoenaed for very different reasons than Movant (Ms. Counts and Ms. Mukherjee, who Movant refers to at Doc. 17 at 11-12). It remains true that every attorney who was source for Defendant in the defamation case and listed by Defendant as a relevant witness (as is Movant, as a "representative of Project South") sat for a deposition without moving to quash. Since Dr. Amin's response brief, Ms. Mukherjee filed a motion to quash in the Southern District of New York. That motion will be heard at a telephonic hearing on October 25, 2023, and Dr. Amin's response brief is attached hereto at Exhibit 2.

Respectfully submitted this 23rd day of October 2023.


**STACEY EVANS LAW**

*/s/ Stacey G. Evans*
Stacey G. Evans
Georgia Bar No. 298555
Tiffany Watkins
Georgia Bar No. 228805
John Amble Johnson
Georgia Bar No. 229112
4200 Northside Parkway NW
Building One, Ste 200
Atlanta, Georgia 30327
Telephone: 770-779-9602
Facsimile: 404-393-2828
sevans@staceyevanslaw.com
twatkins@staceyevanslaw.com
ajohnson@staceyevanslaw.com

**CHILIVIS GRUBMAN
DALBEY & WARNER LLP**

Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)


*Counsel for Plaintiff*

## <u>LOCAL RULE 7.1(D) CERTIFICATE</u>

The undersigned counsel certifies that this Document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1.

This <u>23rd</u> day of October 2023.

<u>*/s/ Stacey G. Evans*</u>
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S SURREPLY TO NON-PARTY AZADEH SHAHSHAHANI'S REPLY TO MOTION TO QUASH** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.

This <u>23rd</u> day of October 2023.

*/s/ Stacey G. Evans*
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com

*Counsel for Plaintiff*

# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| In re: Subpoena Issued to Azadeh Shahshahani, | ) ) ) | |
| **DR. MAHENDRA AMIN,** | ) ) | **CIVIL ACTION FILE** |
| Plaintiff, | ) ) | **NO. 1:23-cv-04492-** |
| | ) | **MLB-RDC** |
| v. | ) ) | |
| **NBCUNIVERSAL,** | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

## <u>DECLARATION OF STACEY G. EVANS</u>

I, Stacey G. Evans, declare as follows:

1. I am an attorney with the firm of Stacey Evans Law, counsel of record for Plaintiff Dr. Mahendra Amin in this matter and in *Amin v. NBCUniversal Media, LLC*, 5:21-CV-56, in the United States District Court for the Southern District of Georgia ("*NBCUniversal*").

2. After the deposition of John Whitty, I engaged in a conferral with counsel for Mr. Whitty because his refusals to testify because of privilege were extremely overbroad and inappropriate. After tedious back-and-forth, counsel for Mr. Whitty agreed to reconvene the deposition to claim privilege as to fewer questions. The reconvened deposition is scheduled

1

October 30, 2023.

3.  Attached hereto as Exhibit 2 is the Response Brief to Elora Mukherjee's
    Motion to Quash, hundreds of pages of filings of which Ms. Shahshahani
    attaches to her Reply.  Doc. 17-3.


    I declare under penalty of perjury of the laws of the United States of
    America that the foregoing is true and correct.


Executed and respectfully submitted this <u>23rd</u> day of October, 2023.


                          <u>*/s/ Stacey G. Evans*</u>
                          Stacey G. Evans

2

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: SUBPOENA ISSUED TO NON-PARTY ELORA MUKHERJEE, )<br>)<br>) | |
|     Movant. ) | CIVIL ACTION NO. |
| ) | 1:23-mc-00377-LAK-SDA |
| DR. MAHENDRA AMIN, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NBCUNIVERSAL, ) | |
| ) | |
|     Defendant. ) | |

## PLAINTIFF'S RESPONSE TO MOTION TO QUASH SUBPOENA FOR DEPOSITION OF ELORA MUKHERJEE

During the lunch break of a deposition, Elora Mukherjee discussed the contents of her client's testimony with her non-party client, Yanira Oldaker. She also permitted counsel for NBCUniversal, Cynthia Counts, to sit for lunch with Ms. Oldaker, and for Ms. Counts to discuss the questioning that NBCUniversal planned to ask later in the deposition. Ms. Oldaker's testimony changed after her discussions with Ms. Mukherjee and Ms. Counts.

This conduct directly and obviously violated District of South Carolina Local Rule 30.04(E): "Counsel and witnesses shall not engage in private, 'off the record' conferences during depositions or during breaks or recesses regarding the substance of the testimony at the deposition, except for the purpose of deciding whether to assert a privilege or to make an objection or to move for a protective order." Ms. Mukherjee herself stated on the record, while apologizing for being "not familiar with that local rule," that there were "three subjects that we discussed during the breaks," in which she aimed to change the testimony of Ms. Oldaker. She did not then, and has

not since, shared the full contents of what was discussed during the lunch break, particularly Ms. Counts' contributions to the conversation.

Ms. Mukherjee does not dispute these facts, and nothing in the hundreds of pages she and amici curiae have or will file with the Court contradicts them. This is not an instance of "a lawyer seeking to depose opposing counsel under threat of sanctions," or "intimidating, harassing, coercive, and threatening," and Ms. Mukherjee's own filings demonstrate the extent to which counsel for Dr. Amin has sought to minimize the burden on Ms. Mukherjee, while probing whether a motion for sanctions against Ms. Mukherjee and/or Ms. Counts is necessary, and to seek evidence to counter the potentially coached and curated testimony of Ms. Oldaker developed during the lunch break. Her motion to quash should be denied.

## BACKGROUND

The pertinent facts for Ms. Mukherjee's motion are much simpler than the hundreds of pages she has filed suggest.

Dr. Mahendra Amin has brought suit against NBCUniversal, LLC, alleging that it defamed him by publishing statements that he performed mass hysterectomies and unconsented-to abusive medical procedures on women detained by the United States Immigration and Customs Enforcement (ICE) at the Irwin County Detention Center (ICDC). *Amin v. NBCUniversal, LLC*, 5:21-CV-00056, 2022 WL 16964770, at *1, 4-5 (S.D. Ga. Nov. 16, 2022). The majority of his allegations having survived NBCUniversal's motion for judgment on the pleadings, *id.*, and Dr. Amin is now in discovery, seeking evidence for his case. Because he alleges defamation under Georgia law, he must prove that the allegedly defamatory statements were false. *See id.* at *21. Evidence he has gathered so far, including the testimony of women, like Ms. Oldaker, who were detained by ICE at ICDC, has supported his allegations. He has not been charged with any crime; the Senate concluded that he only conducted two hysterectomies on women detained by ICE at

2

ICDC, and the Georgia Composite Medical Board investigated and cleared him. Ex. 1, Declaration

of Stacey G. Evans (Oct. 19, 2023), ¶¶ 2-4.

   In an effort reasonably calculated to lead to admissible evidence, Dr. Amin subpoenaed for

deposition several women who had been detained at ICDC, including Yanira Oldaker. Doc. 2 at

3-4. Ms. Mukherjee serves as counsel for Ms. Oldaker in a separate lawsuit against a plethora of

defendants, including Dr. Amin, but there are pending motions to dismiss that case, and discovery

has not commenced. *Id.* at 3. Ms. Oldaker, through counsel including Ms. Mukherjee, moved to

quash her subpoena, but upon conferral and agreement with counsel for Dr. Amin, she agreed to

be deposed on July 27, 2023, in Columbia, South Carolina. *Id.* at 4. This followed a plethora of

motions to quash, motions for protective order, and a motion for order to show cause, filed by Ms.

Mukherjee on behalf of other clients, the result of which was that each and every deposition was

specifically permitted to proceed. Ex. 1 ¶ 7; *see also, e.g.*, Memorandum Opinion and Order, *Amin*

*v. NBCUniversal Media, LLC, Luz Walker Movant*, Case No. 1:23MC9 (M.D.N.C. June 28, 2023),

ECF 20; Order, *Amin v. NBCUniversal Media, LLC, Keynin Reyes Ramirez Movant*, Case No.

1:23-CV-3042-AT-JSA (N.D. Ga. July 11, 2023), ECF 8.

   Because Ms. Oldaker's deposition took place within the jurisdiction of the United States

District Court for the District of South Carolina, the local rules of that court governed the

deposition, including D.S.C.L.R. 30.04(E), which states: "Counsel and witnesses shall not engage

in private, 'off the record' conferences during depositions or during breaks or recesses regarding

the substance of the testimony at the deposition, except for the purpose of deciding whether to

assert a privilege or to make an objection or to move for a protective order."

   At the deposition, Ms. Mukherjee and Fatma Marouf appeared as counsel for Ms. Oldaker.

Doc. 2 at 4. During the deposition, which Ms. Mukherjee has moved to attach as an exhibit to her

motion under seal, *id.* at 3 n.1, Ms. Oldaker testified that Ms. Mukherjee allowed Cynthia Counts,

3

counsel for NBCUniversal at the deposition, to eat lunch with Ms. Oldaker and Ms. Mukherjee. Deposition of Yanira Oldaker (July 27, 2023) ("Oldaker Deposition"), 114:4-15. According to Ms. Oldaker, at that lunch, the participants discussed "[w]omen issues" and "this situation [Ms. Oldaker] find[s] [her]self in," and Dr. Amin's "name came up." *Id.* 114:16-115:2. Ms. Oldaker further testified that her counsel and Ms. Counts reviewed "paperwork" together in front of Ms. Oldaker. *Id.* 115:12-13. When asked whether Ms. Counts spoke about Ms. Oldaker's upcoming testimony, Ms. Oldaker testified, "[s]he might have mentioned a thing or two." *Id.* 116:3-8.

Ms. Mukherjee also admitted to violating Rule 30.04(E) through her own conversations with Ms. Oldaker. She stated on the record: "And I apologize. I was not familiar with that local rule." *Id.* 118:14-15. Ms. Mukherjee stated that she had discussed "three subjects" regarding Ms. Oldaker's testimony with Ms. Oldaker during the breaks, including:

> And then the third issue was just asking Ms. Oldaker to please remember all—all of her interactions with Dr. Amin and to testify truthfully about them and to testify fully about them.
>
> We did not tell her what to say, but we did remind her that, even though it's really difficult for her to remember all of her interactions with Dr. Amin, especially as a survivor of extreme trauma, it's important for her to testify truthfully and accurately today.

*Id.* 118:10-12, 120:1-11.

Later, when asked whether Ms. Counts had told her "that she was going to ask you about your prior Pap smears," Ms. Oldaker answered: "Yes, I believe so." *Id.* 220:4-7. When asked, "did Ms. Counts tell you that she was going to ask you about your prior transvaginal ultrasounds," Ms. Counts interjected with a speaking objection that directly addressed the witness and instructed the witness how to answer: "Objection. To the extent that you recall specifically me saying such a thing, [sic] but you shouldn't speculate or allow her to influence you." *Id.* 220:8-14.[1] Despite

---

[1] This was in violation of D.S.C.L.R. 30.04(D): "Counsel shall not make objections or statements that might suggest an answer to a witness. Counsel's objections shall be stated

protesting twice that she knew the rules, had practiced for a long time in the jurisdiction, and "did not violate the rules," *id.* 121:6-9, 221:1-3, Ms. Counts finally conceded that she did not know the local rule at issue: "Well, then I wish you-all would have told me I shouldn't be sitting with her because I certainly wouldn't have known that that was considered improper to talk and have a friendly—" *Id.* 230:21-25.

Ms. Oldaker's testimony changed from, before the lunch break, answering "no" to the question, "Did you tell [Dr. Amin] no [during the transvaginal ultrasound]," to "yes" to the same question. *Compare id.* 63:8-16, *with id.* 96:6-19. Ms. Oldaker's testimony also changed as to having spoken to Congress, going from multiple "no" answers, to, "I'm sorry, but yeah, I did. I spoke to the Congress." *Compare id.* 32:4-24, *with* 227:20-22. These egregious violations of Rule 30.04(E) and of common-sense deposition conduct from counsel, in conjunction with direct contradictions and shifts in testimony, merit additional investigation.[2]

---

concisely and in a non-argumentative and non-suggestive manner, stating the basis of the objection and nothing more."

[2] While counsel for Dr. Amin will attempt to refrain from responding to the broadsides in Ms. Mukherjee's brief, three contentions particularly warrant correction. First, counsel for Dr. Amin notes that she did not "interrupt[] the testimony to call Ms. Oldaker a liar." Doc. 2 at 6. The record demonstrates that, as part of an objection, she stated, "That's also just blatantly a lie," to the answer "no" to the question from Ms. Counts, "Did we discuss at lunch anything about what you had been asked prior?" Oldaker Deposition 228:24-229:6. As discussed above, Ms. Oldaker had testified that the lunch participants, including Ms. Counts, discussed "[w]omen issues" and "this situation [Ms. Oldaker] find[s] [her]self in," and Dr. Amin's "name came up;" accordingly, the answer "no" was contradicted by Ms. Oldaker's prior testimony. *Id.* 114:16-115:2. Second, Ms. Oldaker's brief refers to an "unnecessary argument with Ms. Counts in the middle of a third party deposition," Doc. 2 at 6, but it was *Ms. Counts* who initiated that argument, with counsel for Dr. Amin stating, "I don't know why we're wasting a third-party's time for you to get a lesson on the local rules." Oldaker Deposition 230:21-232:10. Finally, it is true that counsel for Dr. Amin opined that Ms. Mukherjee "should not be teaching our students this kind of behavior." *Id.* 230:9-13. That statement is, of course, different from "stating that she should not be teaching law students," as Ms. Oldaker and amici curiae's briefs contend. Doc. 2 at 6; Doc. 20-1 at 9. Counsel for Dr. Amin, who proudly serves on the Board of Visitors and has a scholarship for first-generation college graduates at her alma mater, stands by the sentiment that Ms. Mukherjee should not teach law students behavior that includes failing to review and adhere to the rules of the jurisdiction in which an attorney is defending a deposition, "reminding" a client of information

After reviewing the transcript of the deposition, on August 16 counsel for Dr. Amin emailed Ms. Counts and Ms. Mukherjee, stating concern that Ms. Counts and Ms. Mukherjee had violated Rule 30.04(E) and requesting they agree to "short remote depositions," which were not expected "to be longer than one hour," to explore the communications that constituted the violations.  Doc. 3-5 at 5.  After one week without any response, counsel for Dr. Amin sent a follow-up email, which was followed the next day, August 24, with counsel for Ms. Mukherjee writing that they did not agree to accept service of a subpoena and that they contended a deposition would be "inappropriate, unwarranted, and have no basis in law or fact."  *Id.* at 4-5.  During subsequent back-and-forth, counsel for Dr. Amin noted: "The deposition is part of a process to hopefully avoid needing to file a motion for sanctions, I've indicated it would be short, and that we could conduct it remotely."  *Id.* at 2.

Because Ms. Mukherjee and her counsel did not agree to accept service, Dr. Amin enlisted a process server to deliver the subpoena and witness fees pursuant to Federal Rule of Civil Procedure 45.  Ex. 1 ¶ 16.  The process server reported that Ms. Mukherjee appeared to be dodging service of the subpoena: on September 19, when the process server spoke with the doorman at Ms. Mukherjee's residence, the doorman confirmed that Ms. Mukherjee resided at the building, then appeared to call Ms. Mukherjee, stating, "you want me to tell him you're not here?" and told the process server that she was not present.  *Id.*  The process server then indicated that he went to Ms. Mukherjee's place of work, where Brenda Eberhart, who told the process server that she was a direct assistant to Ms. Mukherjee, met the process server and stated that she was authorized to accept service on behalf of Ms. Mukherjee.  *Id.*; Ex. 2, Proof of Service (Sept. 19, 2023); Ex. 3, Investigative Report.

--------------------------

that results in her changing the substance of her testimony, and permitting a nominally adverse party to join the client for lunch and discuss questioning and testimony.

Once the subpoena was delivered to Ms. Mukherjee, her counsel emailed counsel for Dr. Amin, reengaging with conferral. Doc. 3-6 at 8-9. Counsel for Ms. Mukherjee stated objections to the subpoena, including that "we do not believe there has been proper service upon Elora, nor do we believe that the subpoena that was served complies with the requirements of Rule 45," without explaining how. *Id.* The email further stated: "If there is nevertheless information that you believe Elora could provide, perhaps she could provide a declaration." *Id.* at 9.

Counsel for Dr. Amin responded the same night, noting that service was proper "and Ms. Mukherjee clearly has notice of the subpoena," and that counsel for Dr. Amin had "already agreed to limit the deposition to the lunch conversation that Ms. Mukherjee, Ms. Oldaker, and Ms. Counts participated in on July 27, 2023. There can be no concern of privilege over this conversation because a third party to the attorney-client relationship (Ms. Counts) was present." *Id.* at 7. Counsel for Dr. Amin also stated that the subpoena did not put undue burden on Ms. Mukherjee because the subject of the deposition was limited to the lunch conversation and she had agreed to attend via Zoom. *Id.* Nevertheless, in an effort to avoid litigation and minimize the burden on Ms. Mukherjee, counsel for Dr. Amin stated: "All I want to know is what occurred during the lunch conversation and I believe that can be accomplished with a declaration signed by Ms. Mukherjee answering the following questions. If she will agree to do so, I will withdraw the subpoena." *Id.* Those questions were:

1. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee discuss any questions Ms. Counts was planning to ask Ms. Oldaker?

2. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker about prior pap smears with other doctors?

3. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker about prior transvaginal ultrasounds with other doctors?

4. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker about literature or pamphlets available at other doctors' offices she had visited?

5. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts would ask Ms. Oldaker whether other doctors had given her pamphlets during her visits?

6. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee show Ms. Oldaker any medical records?

7. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee say that Ms. Counts was going to ask Ms. Oldaker about a sonogram picture?

8. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee suggest that Ms. Oldaker should have, must have, or maybe did hear more information about women at ICDC having hysterectomies than Ms. Oldaker shared in response to Dr. Amin's counsel's questioning?

9. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee suggest to Ms. Oldaker what her answers to any questions should be, and if so, what?

10. During lunch on July 27, 2023, did Ms. Counts or Ms. Mukherjee state how they would answer any questions if they were Ms. Oldaker, and if so, what?

11. What was said during lunch on July 27, 2023 (inclusive of all present)?

*Id*. at 7-8. Ms. Mukherjee declined this offer for alternative discovery and requested Dr. Amin consent to "postpone the deposition until after the motion to quash litigation has been resolved," to which counsel for Dr. Amin agreed. *Id*. at 5-6.

There is nothing "*potential*" about Ms. Mukherjee's violation of S.C.L.R. 30.04(E). Doc. 2 at 2 (emphasis in original). However, probing the extent of that violation is necessary for Dr. Amin to understand whether to seek evidence to counter the potentially coached and curated testimony of Ms. Oldaker developed during the lunch break, and whether he should file a motion for sanctions. Because the subpoena is proper and it does not impose an undue burden, despite

8

Ms. Mukherjee's status as an attorney, the Court should not quash the subpoena. Further, the Court should not assess fees against Dr. Amin pursuant to Rule 45. Finally, Dr. Amin does not contest Ms. Mukherjee's motion for a stay pending the Court's resolution of her motion.

## LEGAL STANDARD

"The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) (citation omitted). Federal Rule of Civil Procedure 45 authorizes litigants to seek discoverable information from non-parties.

Several narrow grounds require a court to quash a subpoena, including when the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "The movant bears the burden of persuasion on a motion to quash." *Oasis Med., Inc. v. I-Med Pharma USA Inc.*, Case No. 23-MC-206(ALC)(BCM), 2023 WL 6301728, at *7 (S.D.N.Y. Sept. 1, 2023) (quotation marks omitted). Rule 45, like all Federal Rules of Civil Procedure, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## ARGUMENT

I. **Ms. Mukherjee No Longer Contests the Subpoena's Validity for Failure to Pay Witness Fees or Designate a "Place" of Deposition, and Ms. Mukherjee Was Delivered the Subpoena Pursuant to Rule 45.**

Although Ms. Mukherjee argues in her motion that the subpoena is invalid because (1) it was not accompanied by fees as required by Rule 45(b)(1); (2) it listed a link to a Zoom meeting as the place of compliance; and (3) it was not personally served on Ms. Mukherjee individually but instead on her colleague at her place of work who accepted it on her behalf, Doc. 2 at 12-14, counsel for Ms. Mukherjee and counsel for Dr. Amin have conferred via email pursuant to Dr. Amin's delivery of a new subpoena with the date of deposition updated as agreed. Doc. 3-6 at 4-

6.  During that email conferral, Ms. Mukherjee agreed to accept that subpoena "in order to narrow the issues before the Court in the motion to quash" as to her objections regarding witness fees and "place" of deposition. Ex. 1 ¶¶ 23-24.[3]

As to service, Ms. Mukherjee's contention that she must be *personally handed* the subpoena is a misreading of Rule 45's provision on service, which "requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). District courts in the Second Circuit have long ruled that there is "no reason for requiring in hand delivery for subpoenas served under Rule 45, so long as service is made in a manner that reasonably insures actual receipt of the subpoena by the witness." *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997). Dr. Amin has assuredly done that. Ms. Mukherjee herself is an attorney and has had extensive contact with counsel for Dr. Amin, including receipt of an email about counsel's desire to depose her. Doc. 3-5 at 5. Dr. Amin enlisted a process server to deliver the subpoena to Ms. Mukherjee personally, and notwithstanding Ms. Mukherjee's apparent attempts to dodge service, he effected service on her colleague who accepted the subpoena on Ms. Mukherjee's behalf. Ex. 1 ¶ 16; Ex. 2; Ex. 3. And counsel for Ms. Mukherjee confirmed in email, and Ms. Mukherjee confirmed in her declaration, that Ms. Mukherjee received the subpoena, which at any rate has now been superseded

---

[3] As to the witness fee, Dr. Amin instructed the process server to serve both the subpoena and the fee required by Rule 45. Ex. 1, Declaration of Stacey G. Evans (Oct. 19, 2023), ¶ 9. Counsel for Ms. Mukherjee has agreed to accept the witness fees. *Id.* ¶¶ 23-24. As to the place of compliance, the new subpoena indicates that the "place" of the deposition is the same address as the one in the recipient line, while noting that the deposition will be conducted via Zoom, which counsel for Ms. Mukherjee agreed "is sufficient." *Id.* Further, even if the parties had not reached agreement, such disputes should not serve as grounds to quash a subpoena. *See, e.g., KOS Bldg. Grp., LLC v. R.S. Granoff Architects, P.C.*, Case No. 19CV2918(PMH)(LMS), 2020 WL 1989487, at *4 (S.D.N.Y. Apr. 24, 2020) ("[E]ven if the Court were to deem the subpoena invalid and grant the motion to quash on this basis [that the fee was not tendered], Defendants could readily correct this defect by promptly re-serving the subpoena along with the witness fee. Accordingly, the Court shall proceed to address Plaintiff's other arguments in support of the motion.").

by a subpoena that counsel for Ms. Mukherjee did accept on her behalf.  Doc. 3-6 at 8; Doc. 5; Ex. 1 ¶¶ 23-24.

More recently, in *Ramchandani v. CitiBank Nat'l Ass'n*, a court in this District ruled: "As other courts in the Second Circuit have found, Rule 45 does not require in-hand service nor prohibit alternative means of service."  616 F. Supp. 3d 353, 357 (S.D.N.Y. 2022) (citations to other S.D.N.Y. cases omitted).  There, as here, it appeared that service "may have been good service" already.  *Id*.  Rather than litigate the service that had already occurred, the court granted the subpoenaing party's motion for alternative service and ordered that service be effected by certified mail, which comported with due process because the subpoenaed party already had actual notice of the subpoena.  *Id*. at 357-58.

Even among courts that have interpreted Rule 45 to require a witness be personally handed a subpoena, courts generally modify the subpoena or order the subpoenaing party to reissue service, rather than quashing the subpoena.  Rule 45 provides that a district court "quash or modify" a subpoena that subjects a person to undue burden, and accordingly the Court may modify the subpoena rather than quashing it, as quashing it would punish Dr. Amin's consideration for Ms. Mukherjee while rewarding Ms. Mukherjee's refusal to collaborate on the logistics (which of course would not affect Ms. Mukherjee's substantive arguments against the subpoena).  Indeed, the cases Ms. Mukherjee herself cites ordered more practical relief than quashing the subpoena. In *Agran v. City of New York*, the first case she cites, Doc. 2 at 13, the court did not quash the subpoena for failure to personally serve, but rather "directed [the subpoenaing party] to re-serve the subpoena by personal delivery."  Case No. 95 Civ. 2170 (JFK) 1997 WL 107452, at *1 (S.D.N.Y. Mar. 11, 1997).  In none of the cases she cites did the court grant a motion to quash a subpoena for improper service.  Here, Ms. Mukherjee had actual notice of the subpoena, and she was served the original subpoena by her colleague, who accepted it on her behalf from a process

server.  To quash the subpoena for improper service would reward Ms. Mukherjee's efforts to
obfuscate the litigation of the merits of her motion and thwart the "just, speedy, and inexpensive
determination" of the issues.  Fed. R. Civ. P. 1.

**II.      *Friedman* Does Not Mandate Quashing the Subpoena.**

As discussed above, Ms. Mukherjee clearly and admittedly violated D.S.C.L.R. 30.04(E)
and also facilitated Ms. Counts' violation of the rule.  Her deposition is sought to determine the
extent of that violation and to seek evidence to counter the potentially coached and curated
testimony of Ms. Oldaker developed during the lunch break, testimony which substantively
changed from morning to afternoon.  This testimony is necessary because Ms. Mukherjee is one
of the only witnesses to the violation, and it is relevant to Dr. Amin's ability to prove falsity in his
defamation action—to counter Ms. Oldaker's changed testimony that she protested Dr. Amin's
actions by saying "no" during her medical treatment, as well as to whether he will seek sanctions.

Ms. Mukherjee argues that, as "adversary counsel," she should not be deposed, citing the
Second Circuit's opinion in *Friedman*, 350 F.3d 65.  Doc. 2 at 14-15.  For several reasons,
*Friedman* does not mandate quashing the subpoena.  First, the *Friedman* court did not hold that
the factors it identified mandate quashing a subpoena.  Rather, it held that those factors may "be
especially appropriate to consider in determining whether interrogatories should be used at least
initially and sometimes in lieu of a deposition." *Friedman*, 350 F.3d at 72.  As another preliminary
matter, Ms. Mukherjee is not counsel in *NBCUniversal*; her connection to that case is as counsel
for Ms. Oldaker and other subpoenaed witnesses.  Further, *Friedman* held that "[t]he deposition-
discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one,"
and "the disfavor with which the practice of seeking discovery from adversary counsel is regarded
is not a talisman for the resolution of all controversies of this nature." *Friedman*, 350 F.3d at 69,
71 (citations omitted).  *Friedman* identified factors that "*may*" be relevant to whether a court may

quash a subpoena to an attorney, but that the overarching rule is "a flexible approach to the issue

of lawyer depositions," wherein the ultimate question is "whether the proposed deposition would

entail an inappropriate burden or hardship." *Id*. at 72.  Here, a deposition will not infringe on

conversations protected by the attorney-client privilege because the testimony sought is about a

lunch conversation involving a third party (Ms. Counts), and, although there has been substantial

discovery in *NBCUniversal*, the only discovery taken as to Ms. Mukherjee's violation of Rule

30.04 has been limited to deposition questioning of Ms. Oldaker, her client, which was thwarted

by NBCUniversal's attorney's improper speaking objection and instruction on how to answer.

First, *Friedman* held that factors such as those Ms. Mukherjee argues exist here do "not

automatically insulate … her from a deposition nor automatically require prior resort to alternative

discovery devices, but it is a circumstance to be considered." *Id*.  It is accordingly not true that, as

Ms. Mukherjee argues, "the subpoena should be quashed under the *Friedman* factors," Doc. 2 at

14, or that as amici curiae argue, "the factors in *In re Friedman* weigh in favor of quashing the

deposition subpoena," Doc. 20-1 at 11.  In *Friedman* itself, the Second Circuit was reviewing an

order in which the district court had ordered the subpoenaing party "must first attempt to proceed

by written interrogatories" before subpoenaing for deposition the subpoenaed party.  350 F.3d at

72.  The Second Circuit held that ruling was too restrictive against the subpoenaing party, but

reversal was not necessary because the subpoenaed party had agreed to be deposed.  *Id*.  Here, Dr.

Amin *has offered*, and Ms. Mukherjee rejected, the very relief that *Friedman* held would be the

type of "alternative discovery device" that sometimes "should be used at least initially and

sometimes in lieu of a deposition." *Id*.

As another preliminary matter, Ms. Mukherjee is not "adversary counsel," and so

*Friedman*'s applicability at all is suspect. *Id*. at 71.  In *Friedman*, for example, the attorney who

received the subpoena had represented the defendants, and the testimony the subpoenaing plaintiff

sought was "concerning the nature and substance of his advice to the defendants" in connection with a merger that was at issue in the plaintiff's lawsuit against them. *Id.* at 67. Notwithstanding her cozy behavior with counsel for NBCUniversal during the subject lunch break, Ms. Mukherjee is not and has never been counsel for NBCUniversal. She is opposing counsel in a *different* case against Dr. Amin, but, as discussed above, that case remains in the pleading stages and may be disposed of entirely by pending motions to dismiss. In a footnote, Ms. Mukherjee cites a single district court case in which the court ruled, itself in a footnote, that "given the nature of the claims presented, [the subpoenaed attorney's client and the subpoenaed attorney] are most certainly 'adversaries' in this context." Doc. 2 at 13-14 n.4; *Doe v. Town of Greenwich*, Case No. 3:18CV01322(KAD), 2020 WL 2374867, at *3 n.6 (D. Conn. Jan. 10, 2020). Dr. Amin submits that this non-binding ruling lacks authority from *Friedman*.

Regardless, whether under the "flexible approach" articulated by the *Friedman* court or the "undue burden" grounds to quash a subpoena under Rule 45, Ms. Mukherjee has not carried her burden of demonstrating that the subpoena is improper. Ms. Mukherjee argues that she should not sit for a deposition because (1) there is no need to depose her; (2) her testimony has no relation to pending litigation; (3) there is risk of encountering privilege and work-product issues; and (4) *NBCUniversal* has already undergone extensive discovery. Doc. 2 at 14-19.

Ms. Mukherjee first argues that "there is no need whatsoever to depose" her, "as she has already been questioned by Ms. Evans about her conduct at the deposition" and Ms. Oldaker was questioned "about any conversations she may have had with Ms. Counts." Doc. 2 at 15-16. But the transcript of the deposition demonstrates that Ms. Mukherjee discussed her *own* improper conversations with Ms. Oldaker. She did not discuss what she observed as to Ms. Counts' discussions with Ms. Oldaker, the extent of which did not become clear until later in the deposition. *See generally* Oldaker Deposition. Ms. Mukherjee notes that counsel for Dr. Amin "already

questioned Ms. Oldaker at length at the deposition about any conversations she may have had with Ms. Counts." Doc. 2 at 16. But she ignores that Ms. Counts thwarted that questioning with improper coaching objections and instructions on how to answer, undoubtedly influencing the many "I don't remember" answers that came when Dr. Amin's counsel asked Ms. Oldaker what Ms. Counts discussed with her at lunch.

Ms. Mukherjee also argues that she "directly answered that she did not" to a question from counsel for Dr. Amin about whether she suggested Ms. Oldaker change one of her answers. Doc. 2 at 15-16. With shifting testimony and improper discussions, Dr. Amin is entitled to probe sworn testimony of all participants in the non-privileged conversations, especially since Ms. Mukherjee was not sworn in at Ms. Oldaker's deposition but would be at a deposition or in a declaration, which she refuses to provide in the alternative.

Ms. Mukherjee next argues that "any testimony Prof. Mukherjee may offer on the contents of her communication with her client during breaks in the deposition has no relation to the claims or defenses in the pending *Amin v. NBCU* defamation matter in the Southern District of Georgia." Doc. 2 at 16-17. First, that is not what *Friedman* held as to the second factor, which was actually: "the lawyer's role in connection with *the matter on which discovery is sought and* in relation to the pending litigation." *Friedman*, 350 F.3d at 72 (emphasis supplied). Ms. Mukherjee and Ms. Counts's violation of D.S.C.L.R. 30.04(E) is the "matter on which discovery is sought," and Ms. Mukherjee had a prominent role in connection with that matter. Second, the extent of the violations of Rule 30.04(E) is indeed closely connected to *NBCUniversal*. Dr. Amin must prove that the defamatory statements at issue in *NBCUniversal* were false, and indeed Ms. Counts herself, when accused of acting as counsel for Ms. Oldaker, stated on the record: "Well, we have a substantial truth defense." Oldaker Deposition, 120:20-23. Ms. Oldaker testified that Ms. Counts spoke with her during the lunch break about "women issues" and "Pap smears," and that she could not

remember whether or not they discussed transvaginal ultrasounds. *Id.* 114:13-17, 220:4-7, 223:1-7. As Ms. Mukherjee fails to understand, the purpose of exploring a motion for sanctions is not to antagonize Ms. Mukherjee; it is to understand the extent of Ms. Oldaker's testimony about her treatment by Dr. Amin being affected by Ms. Mukherjee and Ms. Counts, which is relevant to the falsity that Dr. Amin must prove.

Ms. Mukherjee appears to object to the fact that Dr. Amin has not already brought a motion for sanctions: "Rather, if a deposition of Prof. Mukherjee is relevant to *any* proceedings at all (which Prof. Mukherjee does not concede it is), it would be to sanctions proceedings in the District of South Carolina … Although she has repeatedly threatened a sanctions motion, Ms. Evans has not filed any such sanctions motion since the deposition took place almost three motions ago." Doc. 2 at 17 (emphasis in original). But there are no general "proceedings in the District of South Carolina;" Dr. Amin's case is in the Southern District of Georgia, and Ms. Oldaker brought a new proceeding in the District of South Carolina for the sole purpose of contesting the subpoena for her deposition. As counsel for Dr. Amin explained, "[b]efore we file a motion for sanctions, we want to exercise our right to explore the" violations through "short remote depositions." Doc. 3-5 at 5. Indeed, a motion for sanctions may be entirely unnecessary, depending on Ms. Mukherjee's answers to deposition questions. And it has been "almost three months" only because of Ms. Mukherjee's refusal to work with counsel for Dr. Amin to mutually schedule the deposition or provide a declaration to the proffered questions, as discussed above and as contemplated by *Friedman* as a less burdensome alternative to an attorney deposition.

This is not a "fishing expedition." Ms. Mukherjee, obviously and admittedly, violated Rule 30.04(E) and discussed the contents of her client's testimony, leading her client to change that testimony. It is also not true that the district court in the District of South Carolina "declined" Dr. Amin's "request" that it hear a motion for sanctions. Doc. 2 at 17. As Ms. Mukherjee's own brief

16

states, while that court declined Dr. Amin's invitation to provide "guidance on whether any such

motion should be filed in this matter or in a new miscellaneous matter to be filed with" that court,

it did so pursuant to a status report in which counsel for Dr. Amin stated: "If the Court does not

wish to hear a potential motion for sanctions in this matter, the parties jointly request dismissal

and closure of this case, *with leave for Dr. Amin to file a motion for sanctions in another matter*."

Doc. 2 at 6 (emphasis supplied).

Ms. Mukherjee argues that the deposition "thus becomes a highly threatening, coercive,

and intimidating tool used to try to force Prof. Mukherjee to develop evidence against herself

and/or Ms. Counts." Doc. 2 at 18.[4] But a review of the communications between counsel that Ms.

Mukherjee attaches to her motion demonstrates that this characterization is just not true.  Dr. Amin

has endeavored diligently to *avoid* taking a deposition, identifying eleven questions that Ms.

Mukherjee could answer in lieu of a deposition, ten of which are "yes-no" (though several of those

request additional information if the answer is "yes") and all of which plainly do not cover

confidential conversations, along with the offer: "If she will agree to [answer the questions], I will

withdraw the subpoena."  Doc. 3-6 at 7-8.  Ms. Mukherjee declined.

---

[4] Amici curiae also alleges that the subpoena for deposition constitutes a continuation of counsel for Dr. Amin's "[i]ntimidation tactics," citing and even attaching a hyperbolic and frankly unprofessional Reply Brief filed in another jurisdiction. Doc. 20-1 at 9; Doc. 20-2. While again attempting to avoid the invitation to stray from relevant factors for the Court's determination of Ms. Mukherjee's motion, counsel for Dr. Amin pronounces that the record disproves amici curiae's assertion, and indeed shows just the opposite: counsel for Dr. Amin has indeed worked to *avoid* taking a deposition of Ms. Mukherjee.  *See, e.g.*, Doc. 2 at 8-9 (Ms. Mukherjee's brief, relaying conferral in which counsel for Dr. Amin agreed that a declaration answering eleven questions would suffice in lieu of a deposition); Doc. 3-6 (email conferrals, including the offer of specific questions for Ms. Mukherjee to answer in lieu of a deposition).  The Reply Brief that amici curiae attaches is a single pleading from a matter that has been fully briefed, and that court has given Dr. Amin leave to file a surreply to respond to the irrelevant, unfounded, hyperbolic, and personal allegations contained in the Reply.  *See* Minute Sheet, *Amin v. NBCUniversal Media, LLC*, Case No. 1:23-cv-04492-MLB-RDC (Oct. 19, 2023), ECF 21.  That motion and briefing is irrelevant to the matter before this Court, but if the Court would like to consider the full record, Dr. Amin will provide all briefing upon request.

Ms. Mukherjee further states that the need for additional testimony "is absolutely unclear" if counsel for Dr. Amin "believes that the Oldaker deposition transcript plainly reveals that Prof. Mukherjee has violated the District of South Carolina local rules." Doc. 2 at 18. As an initial matter, it is not debatable that Ms. Mukherjee violated Rule 30.04(E): "Counsel and witnesses shall not engage in private, 'off the record' conferences during depositions or during breaks or recesses regarding the substance of the testimony at the deposition, except for the purpose of deciding whether to assert a privilege or to make an objection or to move for a protective order." Ms. Mukherjee herself stated, on the deposition record, "So, to clarify, there were three instances, three subjects that we discussed during the breaks, all of which have already been noted on the record. And I apologize. I was not familiar with that local rule." Oldaker Deposition, 118:9-15. There is no dispute: Ms. Mukherjee violated the rule. However, the need for testimony is to determine the extent of the violation and how the conversation may have affected Ms. Oldaker's testimony, which will certainly be part of upcoming dispositive motions to be filed in the underlying defamation case. The credibility of Ms. Oldaker and the extent to which she was influenced, including during the lunch with Ms. Counts, will all be relevant to those motions.

Third, Ms. Mukherjee's statement that "the risk of impinging upon the attorney-client privilege and work product protection is substantial in this case," Doc. 2 at 18, is facially absurd in consideration of the eleven questions that counsel for Dr. Amin provided.[5] Statements made in

---

[5] Amici curiae's argument, also, entirely relies on the false proposition that counsel for Dr. Amin is seeking privileged attorney-client or work product testimony. *See generally* Doc. 20-1. Amici curiae argues: "It is hard to imagine what questions Dr. Amin's attorney might ask Prof. Mukherjee that would not involve either her communications with her clients protected by attorney-client privilege or her mental impressions developed in preparation for possible litigation." *Id.* at 8. But Ms. Mukherjee's Motion, to which amici curiae purport to be in support, attaches correspondence listing exactly the questions counsel for Dr. Amin intends to ask, none of which involve either Ms. Mukherjee's communications with her clients protected by attorney-client privilege or her mental impressions developed in preparation for possible litigation. *See* Doc. 3-6 at 7 ("I've already agreed to limit the deposition to the lunch conversation that Ms. Mukherjee, Ms. Oldaker, and Ms. Counts participated in on July 27, 2023. There can be no concern

18

front of NBCUniversal counsel—which is a condition for all eleven questions—are obviously not exclusive to attorney and client, and that is the subject of the testimony Dr. Amin seeks, as demonstrated in the questions counsel for Dr. Amin identified for a declaration that would serve in lieu of such testimony. As exhibits to Ms. Mukherjee's Motion indicate, counsel for Dr. Amin made this clear to counsel for Ms. Mukherjee prior to her filing this Motion. *See, e.g.*, Doc. 3-6 at 7 ("I've already agreed to limit the deposition to the lunch conversation that Ms. Mukherjee, Ms. Oldaker, and Ms. Counts participated in on July 27, 2023. There can be no concern of privilege over this conversation because a third party to the attorney-client relationship (Ms. Counts) was present."); *id.* ("All I want to know is what occurred during the lunch conversation and I believe that can be accomplished with a declaration signed by Ms. Mukherjee answering the following questions. If she will agree to do so, I will withdraw the subpoena."). Further, discussing information with NBCUniversal, who had opposed Ms. Oldaker's motion to quash her subpoena for deposition, voids any claim to attorney work product.

"In cases requiring a choice of privilege law, the interest analysis usually has led New York courts to apply the law of the jurisdiction in which the assertedly privileged communications were made, which in most of the cases was also the jurisdiction in which the party that made the communications resided." *Oasis Med.*, 2023 WL 6301728, at *10 (quotation marks omitted). Here, the deposition took place in Ms. Oldaker's state of residence, South Carolina. However, pursuant to the law of any jurisdiction potentially relevant to this motion—South Carolina, New York, Georgia, or federal—attorney-client confidentiality only protects against disclosure of *confidential* communications between attorney and client. *See In re Mt. Hawley Ins. Co.*, 427 S.C.

---

of privilege over this conversation because a third party to the attorney-client relationship (Ms. Counts) was present."); *id.* ("All I want to know is what occurred during the lunch conversation and I believe that can be accomplished with a declaration signed by Ms. Mukherjee answering the following questions. If she will agree to do so, I will withdraw the subpoena.").

159, 167 (2019) ("The attorney-client privilege ... protects against disclosure of confidential communications by a client to his attorney regarding a legal matter." (citation omitted)); *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013) ("The attorney-client privilege protects confidential communications between a lawyer and client relating to legal advice sought by the client." (quotation marks omitted)); *St. Simons Waterfront, LLC v. Hunter, Maclean, Eley & Dunn, P.C.*, 293 Ga. 419, 421-22 (2013) ("The privilege generally attaches when legal advice is sought from an attorney, and operates to protect from compelled disclosure any communications, made in confidence, relating to the matter on which the client seeks advice." (citation omitted)); Fed. R. Evid. 502(g)(1) ("'[A]ttorney-client privilege' means the protection that applicable law provides for confidential attorney-client communications."). Any violation of N.Y. Rule of Professional Conduct 1.6(a) prohibiting a lawyer from "knowingly reveal[ing] confidential information" occurred when Ms. Mukherjee allowed Ms. Counts to join her client for lunch.

Further, Federal Rule of Civil Procedure 45(d)(3)(A)(iii) mandates that a court quash a subpoena that "*requires* disclosure of privileged or other protected matter, if no exception or waiver applies." (emphasis supplied). Here, D.S.C.L.R. 30.04(F) provides such an exception, noting that conferences in violation of Rule 30.04(E) "are proper subjects for inquiry by deposing counsel to ascertain whether there has been any witness coaching and, if so, to what extent and nature." Further, the subpoena does not require disclosure of privileged information, and to the extent Ms. Mukherjee believes that individual questions infringe on protected information, the proper course is for her counsel to object and she decline to answer specific questions on that basis—not for the Court to quash the subpoena as a whole.

As to her fourth argument, while it is true that the *NBCUniversal* parties have undertaken extensive discovery, there has most certainly not been a "substantial amount" of discovery conducted regarding the violations at issue. The only such discovery has been the limited and

interrupted questioning of Ms. Oldaker during her deposition. Accordingly, Ms. Mukherjee has not demonstrated that the subpoena imposes an undue burden.

### III.    Dr. Amin, Not Ms. Mukherjee, Should Be Awarded the Reasonable Fees and Costs of Litigating Ms. Mukherjee's Motion.

Counsel for Dr. Amin has gone above and beyond to avoid imposing an undue burden or expense on Ms. Mukherjee, and it is indeed Ms. Mukherjee's actions that have resulted in expense. Federal Rule of Civil Procedure 45(d)(1) provides that a subpoenaing party and their counsel "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." 28 U.S.C. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Dr. Amin has sought to minimize expense and undue burden, including by offering Ms. Mukherjee the opportunity to avoid a deposition entirely upon agreeing to answer by declaration eleven straightforward questions that are narrowly tailored to avoid any implication of attorney-client privilege and focus on the scope of Ms. Mukherjee and Ms. Counts's violation of D.S.C.L.R. 30.04(E). *See* Doc. 3-6 at 7-8. In the case Ms. Mukherjee cites that assessed fees pursuant to Rule 45, the subpoena was issued pertaining to information concerning an entity that was no longer a party to the case, and so the subpoena had no potential relevance. *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, Case No. 03 Civ. 1382 RWS, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). Here, in contrast, it is Ms. Mukherjee, not Dr. Amin, who filed this motion, requiring it to be litigated before the Court. It is again not the case that the District of South Carolina "indicated that it does not wish to hear any motion for sanctions related to this deposition," or that the deposition is sought "under threat of filing a motion for sanctions against her." Rather, as counsel for Ms. Mukherjee knows from communications from counsel for Dr. Amin that Ms. Mukherjee

attaches to her motion, Dr. Amin seeks Ms. Mukherjee's testimony in an effort to *avoid* a motion

for sanctions as part of his broader efforts to minimize burden on Ms. Mukherjee, while

determining the extent to which Ms. Oldaker's testimony was improperly tainted. *See* Doc. 3-5 at

2 ("The deposition is part of a process to hopefully avoid needing to file a motion for sanctions,

I've indicated it would be short, and that we could conduct it remotely.").

By refusing to accept service and filing a motion to quash, rather than agreeing to affirm a

declaration that constitutes the exact kind of "alternative discovery device" contemplated by

*Friedman* as an alternative to a deposition of an attorney, 350 F.3d at 72, it is Ms. Mukherjee who

is "multipl[ying] the proceedings … unreasonably and vexatiously[.]" Accordingly Dr. Amin

requests that the Court order Ms. Mukherjee to pay the reasonable costs that he has incurred

litigating her motion.

**IV.   Dr. Amin Has Already Agreed to Stay the Deposition Pending This Court's Ruling, and He Agrees to Stay the November 1 Deposition Date.**

Dr. Amin already agreed to stay the deposition, pending this Court's resolution of Ms.

Mukherjee's motion. Doc. 3-6 at 5, and Dr. Amin is not opposed to staying the deposition date to

which Ms. Mukherjee agreed pursuant to her updated subpoena.

## CONCLUSION

For the reasons discussed above, the Court should deny Ms. Mukherjee's motion to quash

and order her to pay Dr. Amin's costs litigating the motion.

[Signature on following page.]

This 23rd day of October, 2023.

**LEVY KONIGSBERG, LLP**

/s/ COREY M. STERN
Corey M. Stern
SDNY BAR NO. CS3713
605 Third Avenue, 33rd Floor
New York, New York 10158
(212) 605-6200
(212) 605-6290 (facsimile)
cstern@levylaw.com
www.levylaw.com

*Counsel for Plaintiff*

**STACEY EVANS LAW**

Stacey G. Evans*
Georgia Bar No. 298555
John Amble Johnson**
Georgia Bar No. 229112
4200 Northside Parkway NW
Building One, Ste 200
Atlanta, Georgia 30327
Telephone: 770-779-9602
Facsimile: 404-393-2828
sevans@staceyevanslaw.com
ajohnson@staceyevanslaw.com

*Pro hac vice
**Motion for admission *pro hac vice* forthcoming

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO MOTION TO QUASH SUBPOENA FOR DEPOSITION OF ELORA MUKHERJEE** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.

I also emailed copies of the foregoing to:

        Elizabeth A. McNamara, lizmcnamara@dwt.com

        Amanda B. Levine, amandalevine@dwt.com

        Leena Charlton, leenacharlton@dwt.com

        Cynthia L. Counts, Cynthia.counts@fisherbroyles.com

This 23rd day of October, 2023.

                          **LEVY KONIGSBERG, LLP**

                          /s/ COREY M. STERN
                          Corey M. Stern
                          SDNY BAR NO. CS3713
                          605 Third Avenue, 33rd Floor
                          New York, New York 10158
                          (212) 605-6200
                          (212) 605-6290 (facsimile)
                          cstern@levylaw.com
                          www.levylaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: SUBPOENA ISSUED TO NON-PARTY ELORA MUKHERJEE, ) ) ) | |
| **Movant.** ) | |
| ) | |
| DR. MAHENDRA AMIN, ) | |
| ) | **CIVIL ACTION NO.** |
| **Plaintiff,** ) | **1:23-mc-00377-LAK-SDA** |
| ) | |
| v. ) | |
| ) | |
| NBCUNIVERSAL, ) | |
| ) | |
| **Defendant.** ) | |

## DECLARATION OF STACEY G. EVANS

I, Stacey G. Evans, declare as follows:

1. I am an attorney with the firm of Stacey Evans Law, and I am counsel for Plaintiff Dr. Mahendra Amin in this matter, appearing pro hac vice, and in *Amin v. NBCUniversal Media, LLC*, 5:21-CV-56, in the United States District Court for the Southern District of Georgia ("*NBCUniversal*"), wherein Dr. Amin alleges that NBCUniversal defamed him by stating that he had performed mass hysterectomies and unconsented-to and abusive medical procedures on women detained by the United States Immigration and Customs Enforcement (ICE) at the Irwin County Detention Center (ICDC).

2. Dr. Amin was investigated by the Georgia Composite Medical Board regarding his treatment of women detained by ICE at ICDC, and the Georgia Composite Medical Board cleared him at the conclusion of its investigation.

3. The United States Senate Permanent Subcommittee on Investigations investigated

1

claims that Dr. Amin performed high rates of unauthorized hysterectomies on ICDC

detainees, and although it criticized aspects of Dr. Amin's care in findings that Dr. Amin

disputes, it also concluded that Dr. Amin had only performed two hysterectomies on

women detained by ICE at ICDC, both of which ICE had deemed medically necessary.

4. Dr. Amin has not been charged with a crime arising from his treatment of women

   detained by the ICE at the ICDC.

5. Because Dr. Amin must prove that the statements he alleges defamed him are false,

   NBCUniversal identified as potential witnesses in its initial disclosures women detained

   by ICE at ICDC who were treated by Dr. Amin and are plaintiffs in a lawsuit that are

   represented by, among other counsel, Elora Mukherjee.

6. Accordingly, in an effort reasonably calculated to lead to discoverable evidence in

   *NBCUniversal*, I reached out to counsel for those witnesses, including Yanira Oldaker,

   to arrange depositions.

7. Those witnesses, through counsel including Ms. Mukherjee, attempted to thwart

   discovery, not agreeing to accept service through counsel and filing motions to quash,

   motions for protective order, and a motion for order to show cause. In no case did the

   witnesses prevail; in every single instance the court specifically allowed the depositions

   to proceed.

8. Although Yanira Oldaker brought a motion to quash in the United States District Court

   for the District of South Carolina, where she was served a subpoena for deposition and

   where her deposition was scheduled to take place, her counsel and I agreed to certain

   conditions, pursuant to which she through counsel agreed to be deposed without the

   court resolving her motion to quash.

2

9.  On July 27, 2023, in discovery for *NBCUniversal*, I deposed Ms. Oldaker in Columbia, South Carolina; Ms. Oldaker was represented by Elora Mukherjee and Fatma Marouf, and NBCUniversal was represented by Cynthia Counts.

10. I became aware that Ms. Mukherjee and Ms. Counts were violating District of South Carolina Local Rule 30.04(E), which prohibits counsel from engaging in "off the record" conferences during "depositions or during breaks or recesses regarding the substance of the testimony at the deposition, except for the purpose of deciding whether to assert a privilege or to make an objection or to move for a protective order."

11. I asked Ms. Oldaker with whom she had had lunch, and she indicated Ms. Counts. She also stated that Ms. Counts had discussed questions she was going to ask her.

12. Ms. Mukherjee stated that she was not familiar with Rule 30.04(E), and she stated three areas in which she had violated Rule 30.04(E) by discussing Ms. Oldaker's testimony with her and suggesting that she had misremembered certain information stated in her testimony.

13. After reviewing the transcript, on August 16, I reached out via email to Ms. Mukherjee, Ms. Counts, and their co-counsel via email regarding the violations. I indicated that short remote depositions of Ms. Mukherjee and Ms. Counts would be sufficient to explore the communications that occurred during the breaks, and I asked that Ms. Mukherjee and Ms. Counts accept service of a subpoena via email and agree to mutually schedule the depositions via email, stating that I did not anticipate the depositions to last more than an hour.

14. I did not receive a response for one week, then I followed up with Ms. Mukherjee and Ms. Counts with another email on August 23.

3

15. Counsel for Ms. Mukherjee finally answered, indicating that they would not accept service for the subpoena.

16. I enlisted a process server to effect personal service, including the pertinent witness fees. The process server was not able to serve Ms. Mukherjee at her home, although the door man spoke to someone who appeared to be Ms. Mukherjee and stated, "you want me to tell him you're not here?" then told the process server that Ms. Mukherjee was not present. The process server next attempted to serve Ms. Mukherjee at her work and provided a proof of service attesting that they were able to serve the subpoena by delivering a copy to Brenda Eberhart, attached hereto as Exhibit 2. An investigative report produced by the investigator the process server hired to deliver the subpoena to Ms. Mukherjee is attached hereto as Exhibit 3.

17. In that subpoena, I offered a remote deposition in an attempt to make the deposition as convenient as possible for all parties, including minimizing the burden on Ms. Mukherjee and her counsel.

18. After service was effected, counsel for Ms. Mukherjee emailed me, stating that in alternative to a deposition, "perhaps [Ms. Mukherjee] could provide a declaration," on September 22.

19. I responded to this email with eleven questions, stating that if she answered those questions, all of which were narrowly tailored to the violations of Rule 30.04, I would withdraw the subpoena. Ten of the questions required only a yes-no answer (though two also posed follow-ups if the answer were "yes"), and the eleventh was "What was said during lunch on July 27, 2023 (inclusive of all present)?" I tailored the questions narrowly in an effort to compromise with Ms. Mukherjee and to avoid infringing on

4

matters protected by attorney-client privilege.

20. On September 30 I followed up with counsel for Ms. Mukherjee via email, and they

responded on October 2, indicating that Ms. Mukherjee had decided not to provide a

declaration or agree to a short deposition and would instead move to quash the

subpoena.

21. On October 2, counsel for Ms. Mukherjee also requested that I agree to postpone the

deposition while the motion to quash was pending before this Court.  As a professional

courtesy, I agreed and asked that counsel for Ms. Mukherjee reserve November 1 for a

new deposition date, to which Ms. Mukherjee agreed.

22. I did not know that Ms. Mukherjee stated that she did not receive her witness fee until I

read her motion to quash.

23. I prepared a new subpoena, attached hereto as Exhibit 4, to reflect the changed date of

the deposition and delivered it to Ms. Mukherjee by emailing it to her counsel on

October 16, 2023, and I also attempted to agreeable address the concerns, raised for the

first time in her motion to quash, regarding the fact that Ms. Mukherjee had not received

witness fees and the place designated on the subpoena was a link to Zoom credentials

for a remote deposition.  The subpoena sets the place as "Above address, via Zoom,"

indicating Ms. Mukherjee's address at Columbia Law School.  I also stated in my email,

"The Zoom deposition was intended as a mutually convenient option, but if it will serve

as grounds for your client's objection, I can of course simply withdraw that option rather

than litigate it," and stated that in that case I would procure an office within the

geographic limits to conduct the deposition in person.  I also asked "whether Ms.

Mukherjee would accept a mailed check or instead prefers other delivery for the

payment" of her witness fee.

24. In response, counsel for Ms. Mukherjee agreed, stating in relevant part: "We would

accept a reissued subpoena that has the new date and corrects these deficiencies in order

to narrow the issues before the Court in the motion to quash.  We believe using Elora's

office at Columbia Law School as the address, while noting that it will be conducted

over Zoom, is sufficient.  We would also accept a check for the fee."

25. I have conducted all discovery in this case, including seeking testimony from Ms.

Mukherjee arising from her and Ms. Counts's violation of United States District Court

of South Carolina Local Rule 30.04, in good faith.

26. Attached to this motion as Exhibit 2 is the proof of service I was provided regarding the

process server's delivery of the subpoena to Ms. Mukherjee.

27. Attached to this motion as Exhibit 3 is an investigative report produced by the

investigator the process server hired to deliver the subpoena to Ms. Mukherjee.

28. Attached to this motion as Exhibit 4 is an updated subpoena, reflecting the new date to

which the parties agree if the Court does not quash the subpoena, delivered to Ms.

Mukherjee by emailing it to her counsel on October 16, 2023.


Executed and respectfully submitted this 23rd day of October, 2023.

*/s/ Stacey G. Evans*
Stacey G. Evans

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 5:21-CV-00056-LGW-BWC

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* ELURA MUKHERJEE

on *(date)*  9/17/23  .

☑ I served the subpoena by delivering a copy to the named individual as follows: BRENDA EBERHART
COLUMBIA UNIVERSITY ASSISTANT TO ELURA MUKHERJEE
435 W 116TH ST, NEW YORK, NY 10027   on *(date)* 9/19/23   ; or

☐ I returned the subpoena unexecuted because:  _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____   for travel and $ _____   for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:  9/19/23

_____
*Server's signature*

CHARLES EDWARD RAY
*Printed name and title*

376 NRHSALLST SW, G7
ATLANTA, GA 30313

_____
*Server's address*

Additional information regarding attempted service, etc.:



**Confidential investigative Report**

**Sunday, September 17, 2023**

2:48 PM
The investigator proceeded from to the subject's developed residence of 610 W 110th Street, Unit D/E, New York, NY. This address was developed through the ACRIS NYC Tax Assessor and revealed that the residence was purchased by Elora Mukherjee and her husband, Jamal Greene on August 13, 2014. The residence is described as a condominium building where access is strictly limited to occupants and their guest. A doorman maintained access of entry by residence and deliveries. A surveillance position allowing for a direct view of the residence was assumed. A separate access point to Riverside Parkway could not be observed from this front position.




| DOCUMENT ID: | 2016002-0134750I | CRN: | 2016002835008 | COLLATERAL: | N/A |
| # of PAGES: | 8 | AFFILIATE: | N/A-N/A | EXPIRATION DATE: | N/A |
| DOC. TYPE: | POWER OF ATTORNEY | FILE NUMBER: | N/A | ASSESSMENT DATE: | N/A |
| DOC. DATE: | 8/13/2014 | RECORDED + FILED: | 8/26/2014 11:48:18 AM | SLD #: | N/A |
| DOC. AMOUNT: | $0.00 | BOROUGH: | MANHATTAN | | |
| % TRANSFERRED: | N/A | RPTT #: | N/A | MAP BLOCK NO. #: | N/A |
| MESSAGE: | N/A | | | | |

**PARTY 1**

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

**PARTY 2**

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| | | | | | | |

**PARTY 1/Other**

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| | | | | | | |

**PARCELS**

| BOROUGH | BLOCK | LOT | PARTIAL | PROPERTY TYPE | EASEMENT | AIR RIGHTS | SUBTERRANEAN RIGHTS | PROPERTY ADDRESS | UNIT | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |



Information for... ⌄    News  Events  Alumni  Giving  About  Library  Login  🔍

Columbia
Law School

Admissions    Academics    Areas of Study    Faculty & Scholarship    Careers    Community Life



## Elora Mukherjee

Jerome L. Greene Clinical Professor of Law

Full-time Faculty

**Education**
J.D. Yale Law School, 2005
B.A. Rutgers University, 2002

**Areas of Study**
Social Justice and Human Rights

**Areas of Specialty**
Immigration Law

Information for... ⌄    News  Events  Alumni  Giving  About  Library  Login  🔍

Columbia
Law School

Admissions    Academics    Areas of Study    Faculty & Scholarship    Careers    Community Life



## Jamal Greene

Dwight Professor of Law

Full-time Faculty

**Education**
J.D. Yale Law School, 2005
A.B. Harvard College, 1999

**Areas of Study**
Constitutional Law
Law and Philosophy

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2014082101347005003E2E2B |

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 6 |
|---|---|---|
| Document ID: 2014082101347005 | Document Date: 08-13-2014 | Preparation Date: 08-22-2014 |
| Document Type: POWER OF ATTORNEY | | |
| Document Page Count: 4 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| TITLEVEST AGENCY<br>44 WALL STREET, PICKUP-OR-NY-411187<br>10TH FLOOR<br>NEW YORK, NY 10005<br>212-757-5800<br>RECORDINGS@TITLEVEST.COM | TITLEVEST AGENCY<br>44 WALL STREET, PICKUP-OR-NY-411187<br>10TH FLOOR<br>NEW YORK, NY 10005<br>212-757-5800<br>RECORDINGS@TITLEVEST.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1893 | 1135 | Entire Lot | 8D-E | 610 CATHEDRAL PARKWAY |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

| CRFN | or | DocumentID | or | Year | Reel | Page | or | File Number |
|---|---|---|---|---|---|---|---|---|

**PARTIES**

| PARTY ONE: | PARTY TWO: |
|---|---|
| JAMAL GREENE<br>610 WEST 110TH ST #8DE<br>NEW YORK, NY 10025 | THE CONDOMINIUM BOARD OF 610 WEST 110TH STREET CON<br>610 WEST 110TH STREET<br>NEW YORK, NY 10025 |
| ☒ Additional Parties Listed on Continuation Page | |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic) | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded Filed     08-30-2014 11:48 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | 2014000289985 | | |
| Recording Fee: | $ | 57.00 | | | |
| Affidavit Fee: | $ | 0.00 | *Annette M Hill* | | |
| | | | **City Register Official Signature** | | |

6:30 PM

No outside activity was observed. The investigator discontinued surveillance and departed the area.

**Monday, September 18, 2023**

7:00 AM
The investigator proceeded to the subject's address of 610 W 110th Street, New York, NY. A surveillance position was established allowing for a direct view of the front door. It was noted that the weather was extremely inclement with heavy rain forecast throughout the day.



1:28 PM
As no outside subject activity was observed, the investigator proceeded to Columbia University on W 116th Street. Prior research conducted indicated that the subject teaches law on Tuesday's and Thursday's fall semester at WCW 1001. It was determined that WCW stands for William C Warren. This building is located on the 400 block of W 116th Street. The building is secured by a remote fob access system, call box and campus police. No answer was given at the call box. The investigator conducted inquiries regarding the subject. No pertinent information was obtained. The investigator then returned to the subject's residence and maintained surveillance.



3:30 PM
No outside subject activity was observed. The investigator discontinued surveillance and departed the area.


**Tuesday, September 19, 2023**

6:30 AM
The investigator resumed surveillance at the subject's residence of 610 W 110th Street, New York, NY. A surveillance position allowing for a direct view of the residence was assumed.

 

9:29 AM
The investigator approached the entrance of the building and spoke with the on-duty doorman under pretext of parcel delivery. The doorman accessed his computer which revealed the names of Jamal Greene and Elora Mukherjee. The doorman confirmed that the subject does reside at this location, however; he then indicated that he believed the investigator to be serving papers to the subject. The doorman called the subject and could be heard saying, "you want me to tell him you're not here?" The investigator was then told that the subject was not present.

10:15 AM
The investigator proceeded to William C Warren Hall, where the subject was believed to be teaching from 9:00 AM – 12:00 PM as her online profile at Columbia University statd.

10:53 AM
The investigator made inquires to students, faculty and staff. This led the investigator to Jerome Greene Hall located at 435 W116th Street. Individuals at this location confirmed that they were aware of the subject but offered no information as to her location.

12:20 PM
The investigator used the call box at William C Warren Hall and an answer was given by an unknown staff member who stated that the subject was currently teaching classes at Jerome Greene Hall. Further inquiries at Jerome Greene Hall and the investigator was met by Brenda Eberhart, who stated that she was a direct assistant to Elora Mukherjee. Ms. Eberhart insisted that she and her office were aware of attempts of service and that she was fully authorized to accept service on behalf of Ms. Mukherjee. The investigator was authorized to serve Ms. Eberhart who provided identification which displayed current credentials as an employee of Columbia University. The investigator then departed the area.




AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Georgia

| | | |
|---|---|---|
| DR. MAHENDRA AMIN, M.D. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   5:21-CV-00056-LGW-BWC |
| NBCUNIVERSAL MEDIA, LLC | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                           Elora Mukherjee, Esq.,
           Columbia Law School, 435 W. 116th Street, New York, NY 10027

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:  Above address, via Zoom | Date and Time: |
|---|---|
| https://us02web.zoom.us/j/81994083236?pwd=bnB2RyttNVBBYjdRWXNIMy9BLzFaZz09<br>Meeting ID: 819 9408 3236        Passcode: 373842 | 11/01/2023 9:00 am |

        The deposition will be recorded by this method:    audio, audiovisual, or stenographic means

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    10/16/2023

        *CLERK OF COURT*

                                OR

_____              _____
    *Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  DR. MAHENDRA
AMIN, M.D.                                                , who issues or requests this subpoena, are:

STACEY GODFREY EVANS, STACEY EVANS LAW, 4200 NORTHSIDE PKWY, BLDG ONE; SUITE 200, ATLANTA, GEORGIA 30327, 770 779 9602

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.

AO 88A  (Rev.

**CERTIFICATE OF SERVICE**

I certify that on this day, I served the foregoing **SUBPOENA TO TESTIFY AT A**

**DEPOSITION IN A CIVIL ACTION TO ELORA MUKHERJEE, ESQ.** via e-mail to the

counsel for Defendant, as follows:

Elizabeth A. McNamara – lizmcnamara@dwt.com
Amanda B. Levine – amandalevine@dwt.com
Leena Charlton – leenacharlton@dwt.com
Cynthia L. Counts – cynthia.counts@fisherbroyles.com
Erik Bierbauer – erik.bierbauer@nbcuni.com
Taylor Carter – taylor.carter@nbcuni.com

This 16th day of October 2023.

/s/ Stacey Godfrey Evans
Stacey Godfrey Evans