## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

DR. MAHENDRA AMIN, M.D.,

        Plaintiff,

    v.

NBCUNIVERSAL MEDIA, LLC,

        Defendant.

CIVIL ACTION NO.: 5:21-cv-56

## O R D E R

Plaintiff filed a Motion to Exclude Expert Testimony of Ted Anderson. Doc. 123. Defendant filed a Response in opposition. Doc. 158. Plaintiff filed a Reply. Doc. 177. For the reasons described below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Exclude Expert Testimony of Ted Anderson. Doc. 123. Dr. Anderson shall not be permitted to offer expert opinions on informed consent, the sufficiency of records provided for review, or ICDC complicity. Dr. Anderson may offer other, sufficiently disclosed expert opinions.

## INTRODUCTION

In this suit, Plaintiff, Dr. Mahendra Amin, alleges Defendant aired a series of broadcast segments on MSNBC that contained multiple false and defamatory statements concerning Plaintiff's medical treatment of detainees at Irwin County Detention Center ("ICDC"). Doc. 1. The Court recently provided a detailed description of the factual allegations underlying this case in its Order on the parties' cross-motions for summary judgment. Doc. 209. The factual allegations will not be repeated here.

This Order concerns Plaintiff's challenge to Defendant's use of a witness at trial: Dr. Ted Anderson. Dr. Anderson is not a typical witness. Dr. Anderson led a team charged with investigating Plaintiff's treatment of detainees at ICDC. The testimony he intends to offer if called as a witness at trial is connected to that investigatory team. Dr. Anderson has personal, factual knowledge about the investigation and the team's findings. However, Dr. Anderson also intends to offer expert opinions about Plaintiff's treatment of detainees at ICDC, opinions Dr. Anderson formed in the course of serving on the investigatory team.

Defendant did not retain Dr. Anderson to assist in this case, but Defendant does intend to call Dr. Anderson as both a fact and an expert witness. As a fact witness, Dr. Anderson would merely testify about his personal knowledge of the investigatory team and its work. In terms of expert testimony, Defendant intends to call Dr. Anderson to rebut opinions offered by Plaintiff's experts. However, it is noteworthy Dr. Anderson formed his expert opinions years before Plaintiff's experts provided their expert opinions in this case.

Plaintiff does not oppose Dr. Anderson testifying as a fact witness, but Plaintiff opposes Dr. Anderson offering any expert testimony. Plaintiff contends: (1) Dr. Anderson's opinions are not based on a reliable methodology; (2) Dr. Anderson's opinions would not assist the trier of fact; and (3) at a minimum, Dr. Anderson's expert testimony should be limited in scope to opinions rebutting Plaintiff's experts' opinions.

## BACKGROUND

### I.     Dr. Anderson's Roles and Opinions

Defendant identified Dr. Anderson as a person likely to have discoverable information in its initial disclosures. Doc. 159-1 at 6. Defendant explained the subject of Dr. Anderson's testimony would be: "Substantial truth of the allegedly defamatory publications." It appears

Defendant identified Dr. Anderson as a potential fact witness due to Anderson's involvement with the "Independent Medical Review Team" in 2020.

In 2020, Dr. Anderson was the Vice Chair for Clinical Operations and Director of the Division of Gynecology at Vanderbilt University Medical Center at the time he presented briefing to the Democratic Caucus. Doc. 123-3 at 124. At that time, an attorney, Adam Snyder, assembled a team of women's health professionals to review medical records of several detainees at ICDC who complained about the gynecological care at the facility.[1] Dr. Anderson apparently led this group.

On October 26, 2020, Dr. Anderson testified about the findings from this review in front of the Senate Democratic Caucus.[2] Doc. 158 at 1. In his testimony, Dr. Anderson discussed the team's review of medical records for 19 women who complained about gynecological care at ICDC. Doc. 123-3 at 125. Each record was reviewed independently by two healthcare professionals, and Dr. Anderson personally reviewed the entire collection of over 3,200 pages. Id.

Dr. Anderson expressed concerns about the quality and appropriateness of Dr. Amin's gynecological care at ICDC. Dr. Anderson described "a pattern involving inaccurate over-interpretation of laboratory and imaging evaluations, inappropriate recommendations for overly aggressive interventions, including unnecessary surgery, without trial or discussion of more conservative alternatives, and failure to obtain informed consent from patients for interventions that were planned or carried out." Id. Dr. Anderson stated Plaintiff frequently recommended

---

[1]     In is unclear from the record who asked Mr. Snyder to assemble this team or why.

[2]     Dr. Anderson was also deposed during discovery in this case. Throughout this Order, I have endeavored to distinguish between Dr. Anderson's Senate Democratic Caucus testimony and his deposition testimony.

dilation and curettage ("D&C") procedures when the patient's age, medical history, and uterine lining assessment by ultrasound did not warrant such interventions.  Id.  Dr. Anderson stated Plaintiff frequently identified benign ovarian follicles as worrisome cysts, resulting in inappropriate removal of portions of an ovary.  Id. at 126.  Dr. Anderson stated the medical records for these patients were incomplete, which is not good clinical practice.  Id.  Dr. Anderson also stated patient statements illustrated there was no adherence to informed consent and shared decision making.  Id.  Dr. Anderson closed his testimony by stating the team's findings warranted a more comprehensive investigation of the gynecological care provided at ICDC.  Id.

The Independent Medical Review Team also prepared an Executive Summary of their findings.  Id. at 129–33.  In the Executive Summary, the team stated the records revealed a disturbing pattern warranting further investigation.  Id. at 129.  The team explained their review raised questions about possible ICDC complicity in a pattern of abuse by the contracting gynecologist.  Id.  The team stated several women experienced overly aggressive surgery without demonstration of medical necessity and pressure to have unnecessary surgery without discussion of risks, benefits, and alternatives.  Id. at 130.  The team also stated none of the women appeared to have provided adequate informed consent for the procedures.  Id.

To demonstrate the patterns of aggressive and unethical care, the Executive Summary included details about five patients who underwent surgeries when it was not medically indicated.  Id. at 130–31.  The team pointed out Plaintiff's findings justifying surgery were unsupported by all other available sources of information.  Id. at 132.  The team also pointed to three examples suggesting Dr. Amin and ICDC took advantage of the detainees to pressure them to agree to overly aggressive, inappropriate, and unconsented medical care.  Id.  Lastly, the team

stated concerns about a pattern of intervention without properly documented consent for the procedures, stating some notes indicated a lack of informed consent.  Id. at 133.

## II.      Plaintiff's Experts

Plaintiff retained two experts, Dr. Lauren Hamilton and Dr. Eldridge Bills, to review the medical records of Plaintiff's patients and to provide opinions regarding the medical necessity of certain procedures Plaintiff performed.  Doc. 124 at 3.  In his Report, Dr. Bills stated he reviewed a collection of medical records for 69 patients Plaintiff saw and treated.  Doc. 123-2.  Dr. Bills divided those 69 patients into three categories.[3]  First, Dr. Bills discussed two individual patients, identified by initials B.P. and K.C., upon whom Plaintiff performed hysterectomies.  Dr. Bills opined, generally, the hysterectomies were medically appropriate.  Id.  Second, Dr. Bills explained Plaintiff "medically managed" 14 of the 69 patients and those patients did not require any surgical intervention.  Third, Dr. Bills discussed 52 patients upon whom Plaintiff performed outpatient surgical procedures, identifying the number and types of procedures performed and the stated reasons for those procedures.  For this category, Dr. Bills did not discuss any specific patient or individual procedure but, instead, concluded each procedure was "medically indicated as documented by various modalities including the history and physical, preoperative ultrasound evaluation, intraoperative surgical images documentation, and final pathology."  Id.  Dr. Bills noted Plaintiff was serving a "high-risk patient population."  Id. at 2.  Ultimately, Dr. Bills stated "it appears that Dr Amin has been providing appropriate care to his high-risk indigent population and has not performed nay unnecessary medical procedures.  Id.  In this Report, Dr. Bills did not mention the concept of patient consent or consultation.

---

[3]      Dr. Bills states he reviewed the medical records of 69 patients, but the patients in these three categories add up to only 68.

Plaintiff's other expert, Dr. Hamilton, provided two affidavits ostensibly serving as her reports.  Doc. 123-2 at 6–11.  In those affidavits, Dr. Hamilton describes her review of medical records for K.C. and B.P.  Dr. Hamilton opines in both instances the hysterectomies that were performed were medically necessary and Plaintiff appropriately performed medical treatment within the applicable standard of care for these patients.  Dr. Hamilton observed the medical records for K.C. and B.P. contained executed informed consent forms, but Dr. Hamilton did not offer any specific opinion about informed consent as to these two patients.  Dr. Hamilton did not offer opinions about other patients or Plaintiff's conduct more broadly.

## III.   Defendant's Expert Disclosures

Defendant did not disclose any expert witnesses by the deadline set in the operative Scheduling Order.  However, the parties agreed Defendant could identify rebuttal experts by September 19, 2023.  Defendant sent a letter to Plaintiff's counsel on September 19, 2023.  Doc. 123-3.  The subject of the letter included the case name and "Defendant's Rebuttal Expert Witness Reports."  In the letter, Defendant identified Dr. Erin Carey as a "rebuttal expert witness," provided Dr. Carey's report, and noted Dr. Carey had been compensated by Defendant.[4]

The September 19, 2023 letter also discussed Dr. Anderson—the subject of the instant Motion.  Defendant attached copies of testimony Dr. Anderson gave to the Senate Democratic Caucus in 2020 and the Independent Medical Review Team's Executive Summary dated October 21, 2020.  Doc. 123-3 at 2.  In the letter, Defendant stated, "Dr. Anderson provided his expert testimony to the Senate Democratic Caucus and the Senate Subcommittee on a pro bono basis

---

[4]      Plaintiff has raised a separate challenge to the admissibility of Dr. Carey's testimony.  Doc. 124.  That challenge will be addressed by separate order.

and is receiving no compensation from [Defendant]."  Id.  Defendant does not expressly describe

Dr. Anderson a rebuttal witness in its letter, though the timing and subject line of the letter

strongly suggest Defendant intended Dr. Anderson to be a rebuttal witness.[5]

Defendant maintains it did not retain or compensate Dr. Anderson in any way.  Doc. 158

at 2.  Rather, Defendant maintains Dr. Anderson was identified as someone who could testify

about information relevant to the truth or falsity of the challenged statements concerning Dr.

Amin's medical treatment of ICDC detainees.  Doc. 159-1 at 6.

## IV.    The Court's Order on the Parties' Cross-Motions for Summary Judgment

The parties filed cross-motions for summary judgment.  Docs. 122, 127.  The Honorable

Lisa Godbey Wood granted in part and denied in part these motions, and, in doing so, addressed

39 specific statements contained in the relevant broadcasts.  Doc. 209 at 30.  Judge Wood

determined "multiple NBC statements" "are verifiably false."  Id. at 42.  Specifically, Judge

Wood granted a portion of Plaintiff's summary judgment motion, concluding based on the

undisputed material facts, the following Statements were false: Statements 5, 6, 14–16, 23, and

25–28.[6]  Id. at 49, 85, 88–89, 91, 92–93.  In reaching her conclusions, Judge Wood found, as a

matter of undisputed fact: (1) there were no mass or high numbers of hysterectomies at ICDC;

---

[5]      Defendant continues to be vague and non-committal about whether Dr. Anderson was disclosed
as a rebuttal expert witness.  See Doc. 158-1 at 4 (stating Defendant disclosed Dr. Anderson on the
deadline for Defendant to disclose rebuttal expert witnesses "in an abundance of caution"); id. at 5 ("Dr.
Anderson is either a fact witness . . . or a 'non-retained' expert witness whose rebuttal opinions were
properly disclosed . . . .").  Even so, Defendant clearly wants Dr. Anderson to offer expert opinion
testimony at trial; otherwise, Defendant would not have opposed Plaintiff's Motion.

[6]      Although the Court determined the undisputed material facts show these Statements are false,
other issues related to these Statements still must be resolved by the jury.  Specifically, for each of these
Statements, Plaintiff must prove the statements were defamatory and Defendants acted with the requisite
level of fault.

7

(2) Plaintiff performed only two hysterectomies on ICDC detainees; and (3) Plaintiff is not a "uterus collector."

Judge Wood also determined the following statements are capable of being proved false, leaving it up to a jury to determine their veracity: Statements 1, 2–4, 7, 8, 10, 12–13, 17–21, 24, 29, 31–33, and 37–39. Id. at 49–50, 53, 84–85, 86, 87–88, 89–90, 91–92, 93–95, 96. Judge Wood noted "the sting of the defamation" does not depend on the number of procedures performed but "whether Plaintiff performed unnecessary or unauthorized hysterectomies and gynecological procedures." Id. at 52, 84, 86, 88, 89, 90, 96–97. In addition, Judge Wood found a jury must determine the veracity of statements concerning Plaintiff's alleged improper treatment of patients or performing procedures without informed consent and authorization. Id. at 53, 84–85, 86, 87–88, 89–90, 91–92, 93–95, 96. Judge Wood denied the parties' cross-motions as to these Statements. Id. at 53.

Judge Wood then determined five Statements—11, 22, 30, 35, and 36—are non-actionable as defamation because they cannot be proved false. Id. at 53–55. Judge Wood noted Statements 11, 22, and 30 are opinions based on subjective assessments. Statements 35 and 36 are not actionable because these two statements "can be justified[]" as only detailing the fact an investigation was opened based on allegations concerning medical procedures being performed on immigrant women at ICDC without their consent. Id. at 55–56. Judge Wood granted Defendant's motion and denied Plaintiff's motion as to these five statements. Id. at 56–57, 87, 91, 94, 95–96.

## LEGAL STANDARDS

Plaintiff's challenges can be divided into two categories. First, Plaintiff argues Dr. Anderson's opinions should be limited in scope to opinions that rebut Plaintiff's experts'

opinions.  This challenge arises under Federal Rules of Civil Procedure 26 and 37.  Second,

Plaintiff argues Dr. Anderson is providing expert testimony and his opinions should be excluded

because they are not reliable and are not helpful to the trier of fact.  These challenges arise under

Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceutical, Inc.</u>, 509 U.S. 579

(1993).  The Court provides both legal standards here.

## I.     Rebuttal Witness Standard

A rebuttal expert witness's testimony is permitted under Rule 26 "if the evidence is

intended solely to contradict or rebut evidence on the same subject matter identified by another

party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure."  Fed. R.

Civ. P. 26(a)(2)(D)(ii); <u>see also</u> <u>In re Trasylol Prods. Liab. Litig.</u>, No. 09-01928, 2010 WL

4065436, at *2 (S.D. Fla. Aug. 6, 2010) (stating rebuttal testimony must "directly address an

assertion raised by an opponent's expert"); <u>A&J Mfg., LLC v. Kingsford Prod. Co., LLC</u>,

No. CV 209-49, 2010 WL 1956042, at *1 (S.D. Ga. May 13, 2010) (quoting Fed. R. Civ. P.

26(a)(2)(C)).  A rebuttal witness cannot "advance new arguments or new evidence."  <u>Blake v.</u>

<u>Securitas Sec. Servs.</u>, Inc., 292 F.R.D. 15, 17 (D.D.C. 2013).

Under Rule 37(c)(1), if a party fails to comply with the Rule 26 disclosure requirements,

"the party is not allowed to use that information or witness to supply evidence on a motion, at a

hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P.

37(c)(1).  As a result, rebuttal witness testimony that exceeds the scope of the opposing party's

expert should not be excluded, absent any substantial justification.  Fed. R. Civ. P. 37; <u>Home</u>

<u>Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.</u>, No. 603CV1860ORL19, 2005 WL 2465020,

at *5 (M.D. Fla. Oct. 6, 2005) ("Non-rebuttal, expert evidence which casts doubt on an opposing

expert's report cannot be admitted under the thirty-day period for rebuttal evidence provided in Rule 26(a)(2).").

## II.    The <u>Daubert</u> Legal Standard

The United States Supreme Court's holding in <u>Daubert v. Merrell Dow Pharmaceutical, Inc.</u>, 509 U.S. 579 (1993), and the text of Rule 702 require trial judges to serve as gatekeepers in determining the admissibility of expert testimony; however, any decision regarding admissibility is not a position on the strength or weight of the testimony.  Fed. R. Evid. 702; <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999).  In this Circuit, courts routinely look to three elements to determine if expert testimony is admissible under <u>Daubert</u> and Rule 702.  As the Eleventh Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>United States v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted).  "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate."  <u>Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.</u>, 326 F.3d 1333, 1341 (11th Cir. 2003).  The trial court has broad latitude in evaluating each of these three factors.

As to qualifications, an expert may be qualified "by knowledge, skill, training, or education." <u>Hendrix ex rel. G.P. v. Evenflo Co., Inc.</u>, 609 F.3d 1183, 1193 (11th Cir. 2010). The expert need not have experience precisely mirroring the case at bar in order to be qualified. <u>Maiz v. Virani</u>, 253 F.3d 641, 665 (11th Cir. 2001).  However, where an expert does have

experience directly applicable to an issue at bar, experience alone may provide a sufficient foundation for expert testimony.  Frazier, 387 F.3d at 1261.

As to reliability, courts look, when possible, to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.  Daubert, 509 U.S. at 593–94.  However, these factors are not exhaustive, and "a federal court should consider any additional factors that may advance its Rule 702 analysis."  Quiet Tech., 326 F.3d at 1341.  At all times in this flexible inquiry, the court's focus must be "solely on principles and methodology, not on the conclusions that they generate."  Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016) (citation omitted).

Finally, as to the third element, expert testimony is likely to assist the trier of fact to the extent "it concerns matters beyond the understanding of the average lay person and logically advances a material aspect of the proponent's case."  Kennedy v. Elec. Ins. Co., Case No. 4:18-cv-148, 2019 WL 2090776, at *5 (S.D. Ga. May 13, 2019) (citing Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579, 591 (1993)); Frazier, 387 F.3d at 1262–63.  Rule 702 permits experts to make conclusions based on competing versions of the facts, but those conclusions must still assist the trier of fact by explaining something that is "beyond the understanding of the average lay person."  Jackson v. Catanzariti, No. 6:12-CV-113, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (citing United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004)).  Expert testimony generally will not help the trier of fact "when it offers nothing more than what lawyers for the parties can argue in closing arguments."  Id. (quoting Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005)).  Such testimony "is properly excluded when it is

11

not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys., 50 F.3d 908, 917 (11th Cir. 1995) (citations omitted).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999); McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002).  However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of proffered evidence." Quiet Tech., 326 F.3d at 1341.  Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

## DISCUSSION

### I.   Dr. Anderson May Only Offer Expert Opinions That Rebut or Contradict Plaintiff's Experts' Opinions

Plaintiff argues if Dr. Anderson is permitted to offer expert opinions at trial, his testimony should be limited to opinions that rebut opinions offered by Plaintiff's expert witnesses, Dr. Bills and Dr. Hamilton.[7]  Doc. 123 at 14.  Plaintiff states his experts' opinions are limited to the medical necessity of two hysterectomies and whether Plaintiff performed unnecessary medical procedures, and, therefore, Dr. Anderson's opinions should be limited to the same topics.  Plaintiff notes the Executive Summary is dated nearly three years before Dr. Bills's expert report.  Plaintiff does not drill down on which of Dr. Anderson's opinions might

---

[7]     Plaintiff does not challenge Dr. Anderson's ability to provide factual testimony based on his personal knowledge.  Plaintiff's challenge only concerns limitations on Dr. Anderson's ability to offer expert opinion testimony at trial.

rebut or contradict Plaintiff's experts' opinions, though Plaintiff does maintain Dr. Anderson cannot offer expert opinions about consent forms.  Doc. 177 at 17.

In response, Defendant argues it never retained Dr. Anderson, so no expert report was required, and, to the extent he is offering expert opinions, the Executive Summary is sufficient to put Plaintiff on notice of the topics on which Dr. Anderson will testify.  Additionally, Defendant argues Dr. Anderson can opine on matters that contradict or rebut the matters on which Plaintiff's experts will opine.  Like Plaintiff, Defendant does not sufficiently drill down how Dr. Anderson's opinions actually rebut or contradict Plaintiff's experts' opinions, though Defendant does contend "Dr. Anderson, as a rebuttal expert witness, is entitled to opine on why a consent form is not dispositive for establishing informed consent."  Doc. 158 at 11.

### A.    Dr. Anderson Was Timely Disclosed as a Rebuttal Expert Witness

As a threshold matter, the Court must determine if Defendant timely and properly disclosed Dr. Anderson as a rebuttal expert witness.  If yes, then the Court can consider what opinions Dr. Anderson may offer.  If no, Dr. Anderson's testimony shall be limited only to fact-witness testimony.

The Court did not set a deadline for rebuttal experts in its Scheduling Order.  Where there is no court order setting the rebuttal expert witness disclosure deadline, the disclosure must be made within thirty days after the opposing party discloses its experts, unless the parties stipulate to another date.  A&J Mfg., 2010 WL 1956042, at *2.  Here, the parties agreed Defendant could disclose its rebuttal expert witnesses by September 19, 2023.

Plaintiff disclosed Dr. Hamilton and Dr. Bills as experts by the Court's deadline on September 5, 2023.  Doc. 123 at 3.  Defendant did not disclose any affirmative expert witnesses in the case.  However, on September 19, 2023, Defendant disclosed Dr. Carey (expressly

identified as a rebuttal expert witness) and identified Dr. Anderson (along with providing Dr. Anderson's Senate Democratic Caucus testimony and the Executive Summary).  Defendant did not expressly designate Dr. Anderson as a rebuttal expert witness in the September 19, 2023 email, but the email strongly suggests—both because of the timing and the content of the communication—Dr. Anderson was being disclosed as a rebuttal witness.  Doc. 123-3 at 2. Thus, I conclude Dr. Anderson was adequately and timely identified as a rebuttal expert witness in the September 19, 2023 email.[8]

This conclusion does not end the inquiry.  The Court must also determine whether Defendant's provision of the Executive Summary and Dr. Anderson's Senate Democratic Caucus testimony was sufficient to satisfy the requirements of Rule 26(a)(2)(C).

The parties agree to the extent Dr. Anderson is offering expert opinions, he would do so as a non-retained expert witness.  Under Rule 26(a)(2)(C), a non-retained expert is not required to provide a full written report, but the opposing party must provide a disclosure that states the subject matter on which the expert is expected to present evidence and a summary of the facts and opinions to which the expert is expected to testify.  Fed. R. Civ. P. 26(a)(2)(C).

Dr. Anderson's Senate Democratic Caucus testimony described "a pattern involving inaccurate over-interpretation of laboratory and imaging evaluations, inappropriate recommendations for overly aggressive interventions, including unnecessary surgery, without trial or discussion of more conservative alternatives, and failure to obtain informed consent from patients for interventions that were planned or carried out."  Doc. 123-3 at 125.  Dr. Anderson's

---

[8]     Defendant's vagueness in the September 19, 2023 email and continued equivocation about Dr. Anderson's status in instant briefing is ill-advised.  See Doc. 158-1 at 5 ("Dr. Anderson is either a fact witness . . . or a 'non-retained' expert witness whose rebuttal opinions were properly disclosed . . . .").  Parties should not leave their opposition—or the Court—to guess whether a witness will offer expert testimony.

testimony provides a description of the investigation, a description of the medical records review Dr. Anderson and his team conducted, and specific conclusions and observations related to Plaintiff's treatment of patients at ICDC.  Id. at 125–26.  Dr. Anderson provides further details regarding these conclusions in his Executive Summary.  Id. at 129–33.  The Executive Summary identifies specific patient examples showing how Dr. Anderson and his team formed his opinions regarding the medical necessity of procedures Dr. Amin performed.  Id.

Dr. Anderson's Senate Democratic Caucus testimony and the Executive Summary provide enough information to satisfy the Rule 26(a)(2)(C) disclosure requirements.  Plaintiff argues Dr. Anderson's Executive Summary is not his own work and should be excluded. Doc. 123 at 7–8.  However, there is no requirement the non-retained expert write a Rule 26(a)(2)(C) disclosure.  The Eleventh Circuit has explained a party may submit a Rule 26(a)(2)(C) disclosure on behalf of its expert.  Cedant v. United States, 75 F.4th 1314, 1320 (11th Cir. 2023).  As Defendant notes, Dr. Anderson reviewed the Executive Summary before it was submitted to the Senate and still believes the Executive Summary to be accurate.  Doc. 158 at 12 n.6.  Dr. Anderson's deposition testimony shows he conducted an independent review of all the medical records without any influence from other individuals.  Doc. 123-5 at 10.  Dr. Anderson's Executive Summary and Senate Democratic Caucus testimony provide enough information to satisfy the Rule 26(a)(2)(C) disclosure requirements.

### B.   Dr. Anderson's Expert Testimony Will Be Limited to the Scope of Plaintiff's Experts' Opinions

At the outset of analyzing limits on the scope of Dr. Anderson's expert testimony, it is important to note Defendant does not dispute that any expert opinions Dr. Anderson will offer must rebut or contradict opinions offered by Plaintiff's experts.  Thus, the scope of Plaintiff's experts' opinions will define the scope of Dr. Andersons's permissible expert testimony.

Plaintiff correctly points out Plaintiff's experts' opinions are limited to the medical necessity of two hysterectomies and whether Plaintiff performed unnecessary medical procedures.  Dr. Anderson stated Dr. Amin frequently recommended D&C procedures when the patient's age, medical history, and uterine lining assessment by ultrasound did not warrant such interventions.  Doc. 123-3 at 125.  This directly contradicts Plaintiff's experts' opinions— particularly, Dr. Bills's opinion—regarding medically indicated outpatient surgical procedures. Dr. Anderson stated Plaintiff frequently identified benign ovarian follicles as worrisome cysts, resulting in inappropriate removal of portions of the ovary.  Id. at 126.  This also contradicts Dr. Bills's opinions regarding medically indicated outpatient surgical procedures, including cystectomies.  Dr. Anderson and his team stated several women experienced overly aggressive surgery without demonstration of medical necessity and pressure to have unnecessary surgery without discussion of risks, benefits, and alternatives.  Id. at 130.  This contradicts Dr. Bills's opinion Plaintiff did not perform any unnecessary medical procedures.  Thus, many of the opinions expressed in Dr. Anderson's Senate Democratic Caucus testimony and the Executive Summary directly contradict Dr. Bills's opinions.[9]

However, Dr. Anderson also offered opinions on informed consent, which is a topic about which neither of Plaintiff's experts expressed any opinion.  Dr. Hamilton noted in her report the medical records for K.C. and B.P. contained executed informed consent forms, but Dr. Hamilton did not offer any specific opinion about informed consent as to these two patients. Later, in her reply report, Dr. Hamilton expressly disclaims holding any opinion on whether

---

[9]      Plaintiff argues Dr. Anderson's opinions cannot properly be characterized as rebuttals to Plaintiff's expert opinions because Dr. Anderson formed his opinions years before Plaintiff's experts formed their opinions and Dr. Anderson did not review Plaintiff's experts' reports.  I do not find Plaintiff's argument convincing.  The critical inquiry is whether Dr. Anderson's opinions rebut or contradict opinions Plaintiff's experts expressed.  The timing and sequence are not determinative.

Plaintiff obtained informed consent from his patients, observing it depends on information known only by individuals present at the consultations. Dr. Bills also testified clearly he offers no opinion on the issue of informed consent. See Doc. 139-7 at 26; Doc. 162 at 20 (Plaintiff explaining Dr. Bills was not asked to opine about informed consent). Because neither of Plaintiff's experts have expressed any opinions on informed consent, Dr. Anderson—to the extent he is serving as Defendant's rebuttal expert—also may not express any opinion on informed consent.

Similarly, Dr. Anderson opined on the completeness of medical records ICDC provided and expressed concerns regarding ICDC complicity in a pattern of abuse and referring patients to a gynecologist for non-gynecological complaints. Neither of Plaintiff's experts opined on the completeness of the records ICDC provided or on ICDC involvement or practices related to referring patients for gynecological procedures. Dr. Anderson's opinions related to the completeness of medical records and ICDC complicity in patient referrals will be excluded.

In sum, Dr. Anderson may not offer expert opinions on informed consent, the completeness of medical records provided by ICDC, ICDC complicity in a pattern of abuse and referring patients to a gynecologist for non-gynecological complaints, or any other opinion that is beyond the scope of Plaintiff's experts' opinions. Plaintiff's experts' opinions are limited to the medical necessity of two hysterectomies and whether Plaintiff performed unnecessary medical procedures, and Dr. Anderson's opinions will be limited to rebutting or contradicting those opinions. Additionally, Dr. Anderson will not be permitted to offer any opinions that were not adequately identified in his Senate Democratic Caucus testimony or the Executive Summary.

## II.   __Daubert__ Challenges

Plaintiff challenges the admissibility of Dr. Anderson's opinions under the reliability and helpfulness factors of the __Daubert__ test.

### A.   **Plaintiff's Reliability Challenge Fails**

Plaintiff argues Dr. Anderson's opinions are not reliable for four reasons.  Doc. 123 at 5. First, Plaintiff states Dr. Anderson never reviewed the opinions he is offered to rebut.  Id. at 6–7. Second, Plaintiff states the documents Dr. Anderson submitted are not an appropriate expert report.  Id. at 7–8.  Third, Plaintiff argues none of Dr. Anderson's opinions are offered to a reasonable degree of medical certainty.  Id. at 8–9.  Fourth, Plaintiff argues Dr. Anderson's opinions are based on incomplete and inaccurate medical records.  Id. at 9–10.  I address each argument in turn.

First, Plaintiff argues Dr. Anderson's opinions are not reliable because he never reviewed the opinions he is offered to rebut.  Plaintiff states Dr. Anderson admitted he never reviewed the opinion of Plaintiff's experts, Dr. Hamilton and Dr. Bills, and Dr. Anderson's opinions were made three years before these experts were identified.  Id. at 6–7.  However, I have already determined Dr. Anderson is an appropriate rebuttal expert witness under the Rule 26 analysis. Nothing about the scope of rebuttal testimony impacts the soundness of the methodology. Therefore, this is not an appropriate reliability challenge under the __Daubert__ standard.  The Court rejects this portion of Plaintiff's argument.

Second, Plaintiff argues Dr. Anderson's Senate Democratic Caucus testimony and Executive Summary do not constitute an appropriate expert report.  Doc. 123 at 7–8.  Plaintiff contends Dr. Anderson's Executive Summary was written by attorney advocates on behalf of a large team and the purpose of the Executive Summary was to encourage further investigation.

Doc. 177 at 12.  Again, this is not a reliability challenge under the <u>Daubert</u> standard.  I have

addressed Dr. Anderson's disclosures under Rule 26, and I found the disclosures to be adequate.

I, therefore, reject this portion of Plaintiff's argument.

Third, Plaintiff argues Dr. Anderson's opinion was not provided to a reasonable degree of

medical certainty.  Doc. 123 at 8–9.  Plaintiff's argument is based on Dr. Anderson's deposition

testimony stating the purpose of the Executive Summary was to encourage further investigation.

<u>Id.</u>; Doc. 177 at 13.  Plaintiff also points to language in the Executive Summary stating

additional medical records would not alter or negate the opinions in the summary, arguing the

opinion must be anecdotal because it cannot be disproven.  Doc. 123 at 8.

Plaintiff has not pointed to any evidence indicating Dr. Anderson could not testify to his

opinions to a reasonable degree of medical certainty.  Neither party asked Dr. Anderson about

whether he formed his opinions to a reasonable degree of medical certainty during his

deposition.  There is no authority stating Dr. Anderson must affirmatively state he formed his

opinions to a reasonable degree of medical certainty.  Dr. Anderson testified the only goal or

purpose of his review was to give an opinion of the treatment.  Doc. 123-5 at 9.  Dr. Anderson

reviewed all the medical records identified in the Executive Summary.  <u>Id.</u>  Dr. Anderson

testified he stands by the Executive Summary as being accurate.  <u>Id.</u> at 11.  This clearly aligns

with the purpose of his testimony in this litigation.  Dr. Anderson testified additional records

were not necessary to draw the conclusions he reached because all of the records included initial

interactions between the physician and the patient leading up to the decision to go to the

operating room.  <u>Id.</u> at 12.  Plaintiff has not shown Dr. Anderson's testimony or his evaluation of

the medical records was purely anecdotal or that it must be excluded on these grounds.

Plaintiff's challenge is more accurately a challenge to the weight of Dr. Anderson's opinions, not its admissibility.

Lastly, Plaintiff argues Dr. Anderson's opinions are not reliable because they are based on incomplete medical records. Plaintiff contends Dr. Anderson never saw any of Dr. Amin's patients and the medical records were not collected from Dr. Amin's office, but from the detention center. Doc. 123 at 9. Plaintiff also contends Dr. Anderson's opinions are not reliable because the documents reviewed included several pages of information related to other matters, which he deemed not relevant to his evaluation. Id. at 10.

Plaintiff's arguments are not convincing. In his deposition, Dr. Anderson testified he did not need additional medical records to form his opinions about whether individual procedures were necessary. Doc. 123-5 at 12. Dr. Anderson's conclusions were based on Plaintiff's decisions to operate on patients. Dr. Anderson maintained he had sufficient evidence in the medical records to evaluate those decisions.

Plaintiff generally complains about the extent and source of the medical records but does not raise any specific concerns about the accuracy of the medical records Dr. Anderson reviewed. The medical records were provided by the detention center, ICDC, which contracted with Plaintiff for his medical services, and Dr. Anderson formed his opinions based on review of the medical records. Plaintiff cites Gov't Emps. Ins. Co. v. Jacobson, No. 15CV07236, 2021 WL 2589717 (E.D.N.Y. June 24, 2021), to argue Dr. Anderson should be excluded because he did not review complete medical records. However, the expert in Jacobson did not review any treatment reports to form his opinions. Id. at *9. In contrast, Dr. Anderson reviewed several medical records in this case, including a subset of patients' records Plaintiff's experts also reviewed. Plaintiff's challenges about the extent of the medical records Dr. Anderson reviewed

is more accurately a challenge to the weight of Dr. Anderson's opinions, not its admissibility, and, therefore, should be addressed through cross-examination.

Plaintiff argument about irrelevant documents also fails. Plaintiff fails to show any irrelevant documents affected Dr. Anderson's opinions. Plaintiff cites to documents from an immigration court order and the detention facility's assessment of a shoulder and toothache complaint, but Plaintiff admits Dr. Anderson did not find those to be relevant to his review of Plaintiff's treatment plan. Doc. 123 at 10. Plaintiff fails to show Dr. Anderson relied on the irrelevant documents to form his opinions.

In sum, Plaintiff has not demonstrated Dr. Anderson's opinions are based on an unreliable methodology. Dr. Anderson appears to have applied his knowledge, training, and experience to the medical records he reviewed, and he has explained how that led him to the conclusions he reached. Plaintiff's reliability challenge fails.

**B.     Plaintiff's Helpfulness Challenge Fails**

Plaintiff argues Dr. Anderson's opinions will not assist the trier of fact. Plaintiff argues Dr. Anderson does not offer opinions on whether Plaintiff performed unnecessary procedures or hysterectomies. Doc. 123 at 11. Plaintiff states Dr. Anderson only reviewed medical records for one patient who received a hysterectomy and Dr. Anderson agreed with that course of treatment.[10] Id. at 12.

---

[10]     Plaintiff also argues Dr. Anderson's opinions on informed consent do not assist the trier of fact because they do not require the use of scientific, technical, or specialized expertise and the Executive Summary includes general conclusions about the medical records and some of Dr. Anderson's opinions are about ICDC and not about Plaintiff. Id. at 13. Above, I concluded Dr. Anderson shall not be allowed to offer any expert opinions on these topics because they are beyond the scope of the opinions offered by Plaintiff's experts. Therefore, I do not address these topics further.

Plaintiff also makes a passing reference to a portion of the Executive Summary that discusses patients being referred to Plaintiff for non-gynecological complaints. This issue is not fully developed in the briefs. Suffice it to say, if Dr. Anderson intends to offer an expert opinion on patients being referred

Plaintiff has not shown Dr. Anderson's opinions will not assist the trier of fact.  In ruling on the parties' cross-motions for summary judgment, Judge Wood explained the truth or falsity of many statements in the disputed broadcasts remains a factual issue to be resolved by the jury.  Among those, the jury will need to evaluate the truth of statements in the reports that Plaintiff performed unnecessary or unauthorized hysterectomies and other gynecological procedures.

Dr. Anderson's deposition testimony includes a thorough review of the patient medical records and his opinions on the necessity of the procedures Dr. Amin performed.  For hysterectomies, Dr. Anderson provided details regarding the proper course of treatment for the hysterectomy patient and why a hysterectomy was not appropriate at that time.  Doc. 158 at 10; Doc. 123-5 at 44–48.  Dr. Anderson also expressed opinions on the propriety of Plaintiff's use of D&Cs and cystectomies.  These opinions bear on issues that will likely need to be resolved by the jury, and they concern "matters beyond the understanding of the average lay person and logically advances a material aspect" of the case.  Kennedy, 2019 WL 2090776, at *5.  While Plaintiff may argue at trial Dr. Anderson's opinions on these issues actually support Plaintiff's position or are not particularly compelling, Plaintiff has not shown Dr. Anderson's opinions on those topics would not assist the trier of fact.  Therefore, I reject this portion of Plaintiff's argument.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Exclude Expert Testimony of Ted Anderson.  Doc. 123.  Dr. Anderson shall not be permitted to offer expert opinions on informed consent, the sufficiency of records provided for

---

to Plaintiff for non-gynecological complaints, that would likely exceed the scope of Plaintiff's experts' opinions and would not be allowed.

review, or ICDC complicity.  Dr. Anderson may offer other, sufficiently disclosed expert opinions.

**SO ORDERED**, this 11th day of July, 2024.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA