IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., | |
| Plaintiff, | CIVIL ACTION NO.: 5:21-cv-56 |
| v. | |
| NBCUNIVERSAL MEDIA, LLC, | |
| Defendant. | |

**O R D E R**

Defendant filed a Motion to Exclude the Opinions of Plaintiff's Expert Dr. Elbridge Bills. Doc. 138. Plaintiff filed a Response in opposition. Doc. 162. Defendant filed a Reply. Doc. 180. For the reasons described below, the Court **DENIES** Defendant's Motion to Exclude the Opinions of Plaintiff's Expert Dr. Elbridge Bills. Doc. 138.

BACKGROUND

In this suit, Plaintiff, Dr. Mahendra Amin, alleges Defendant aired a series of broadcast segments on MSNBC that contained multiple false and defamatory statements concerning Plaintiff and his medical treatment of detainees at Irwin County Detention Center ("ICDC"). Doc. 1. The Court recently provided a detailed description of the factual allegations underlying this case in its Order on the parties' cross-motions for summary judgment. Doc. 209. The factual allegations will not be repeated here.

Relevant to this Order, Plaintiff retained two experts, Dr. Lauren Hamilton and Dr. Eldridge Bills, to review the medical records of Plaintiff's patients and to provide opinions regarding the medical necessity of certain procedures Plaintiff performed. Doc. 124 at 3.

Dr. Bills is a board-certified obstetrician gynecologist ("OB/GYN"). Plaintiff disclosed Dr. Bills's expert report on September 5, 2023. Dr. Bills reviewed Dr. Amin's cases for medical appropriateness and to determine if there was any evidence of unnecessary medical procedures. Doc. 139-1 at 7. Dr. Bills reviewed the medical records of 69 individual patients and opines Dr. Amin provided appropriate care and did not perform any unnecessary medical procedures. Id. at 7–8. Dr. Bills divides those 69 patients into three categories.[1] First, Dr. Bills discusses two individual patients, identified by initials B.P. and K.C., upon whom Plaintiff performed hysterectomies. Dr. Bills opines, generally, the hysterectomies were medically appropriate. Id. Second, Dr. Bills explains Plaintiff "medically managed" 14 of the 69 patients and those patients did not require any surgical intervention. Third, Dr. Bills discusses 52 patients upon whom Plaintiff performed outpatient surgical procedures, identifying the number and types of procedures performed and the stated reasons for those procedures. For this category, Dr. Bills did not discuss any specific patient or individual procedure but, instead, concludes each procedure was "medically indicated as documented by various modalities including the history and physical, preoperative ultrasound evaluation, intraoperative surgical images documentation, and final pathology." Id. at 8. Dr. Bills notes Plaintiff was serving a "high-risk patient population." Id. Ultimately, Dr. Bills states, "[I]t appears that Dr Amin has been providing appropriate care to his high-risk indigent population and has not performed any unnecessary medical procedures." Id.

Defendant did not disclose any expert witnesses by the deadline set in the operative Scheduling Order. However, the parties agreed Defendant could identify "rebuttal experts" by

---

[1] Dr. Bills states he reviewed the medical records of 69 patients, but the patients in these three categories add up to only 68.

September 19, 2023.  Defendant identified Dr. Carey as a rebuttal expert witness on September 19, 2023, and provided Dr. Carey's 13-page report on that same day.  Doc. 124-3 at 2.  Dr. Carey stated numerous opinions, including the opinion that Plaintiff consistently acted in a surgically aggressive manner, performed unnecessary surgeries, and failed to provide patients alternative medical therapies.  Doc. 139-2 at 17.  Dr. Carey also opines Plaintiff frequently performed dilation and curettage ("D&C") and cystectomy procedures, which may not have been medically necessary.  Id.

Dr. Bills submitted a supplemental expert report in response to Dr. Carey's report.  Doc. 139-6.  In that report, Dr. Bills explains D&C procedures can be used to treat painful periods and is not an uncommon form of treatment.  Dr. Bills explained potential differences between Dr. Carey's care for incarcerated patients and the confounding factors for Dr. Amin.  Dr. Bills explains fulguration was historically performed for pathological diagnosis and is still commonly performed.  Dr. Bills also analyzes Dr. Carey's criticisms for each hysterectomy patient and explains why he determined these were reasonable options for treatment for these patients.  Id. at 5–7.  Dr. Bills addresses Dr. Carey's criticisms of Dr. Amin's medical management practices and explains how the treatment methods could be applied within the context of Dr. Amin's patient population and how Dr. Amin's treatments fell within standard practice.  Id. at 7.

In his deposition testimony, Dr. Bills described his qualifications and expanded on his review of medical records and how he formed his opinions for each patient.  Doc. 139-7.  Dr. Bills described his work with incarcerated and indigent patients and how those such patient groups might require unique treatment approaches.  Id. at 7–8.  Dr. Bills described the treatment for the two hysterectomies Dr. Amin performed.  For both hysterectomies, Dr. Bills opined the

3

hysterectomies were medically indicated and the right procedures to perform for those patients. Id. at 49, 57. For D&C procedures, Dr. Bills testified Plaintiff performed the procedures in conjunction with pelvic pain and were done with laparoscopies for evaluation for pelvic pain. Id. at 21. Dr. Bills testified Dr. Amin performed D&C procedures for both diagnostic and therapeutic purposes. Id. at 39. Dr. Bills also reviewed charts for ovarian cystectomies and testified such procedures were indicated for pelvic pain. Id. at 18. Dr. Bills opined performing laparoscopy, cystectomy, adhesiolysis, or endometrial ablation are reasonable procedures to perform for patients with pelvic pain. Id. at 45. Dr. Bills opined Depo-Provera shots, pelvic examinations, and vaginal ultrasounds are part of the evaluation of pain and bleeding and were all medically necessary and medically indicated. Id. at 29.

After his deposition, Dr. Bills also provided a chart he created as part of his medical records review. Doc. 139-8. Dr. Bills listed each patient chart he reviewed, the preoperative notes and diagnosis for each patient, and the procedures performed on each patient. Dr. Bills also made note of any missing information or documents for each patient.

## LEGAL STANDARD

The United States Supreme Court's holding in Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579 (1993), and the text of Rule 702 require trial judges to serve as gatekeepers in determining the admissibility of expert testimony; however, any decision regarding admissibility is not a position on the strength or weight of the testimony. Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). In this Circuit, courts look to three elements to determine if expert testimony is admissible under Daubert and Rule 702. As the Eleventh Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is

> sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted). "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). The trial court has broad latitude in evaluating each of these three factors.

As to qualifications, an expert may be qualified "by knowledge, skill, training, or education." Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1193 (11th Cir. 2010). The expert need not have experience precisely mirroring the case at bar in order to be qualified. Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001). However, where an expert does have experience directly applicable to an issue at bar, experience alone may provide a sufficient foundation for expert testimony. Frazier, 387 F.3d at 1261.

As to reliability, courts look, when possible, to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Daubert, 509 U.S. at 593–94. However, these factors are not exhaustive, and "a federal court should consider any additional factors that may advance its Rule 702 analysis." Quiet Tech., 326 F.3d at 1341. At all times in this flexible inquiry, the court's focus must be "solely on principles and methodology, not on the conclusions that they generate." Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016) (citation omitted).

Finally, as to the third element, expert testimony is likely to assist the trier of fact to the extent "it concerns matters beyond the understanding of the average lay person and logically advances a material aspect of the proponent's case." Kennedy v. Elec. Ins. Co., Case No. 4:18-cv-148, 2019 WL 2090776, at *5 (S.D. Ga. May 13, 2019) (citing Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579, 591 (1993)); Frazier, 387 F.3d at 1262–63. Rule 702 permits experts to make conclusions based on competing versions of the facts, but those conclusions must still assist the trier of fact by explaining something that is "beyond the understanding of the average lay person." Jackson v. Catanzariti, No. 6:12-CV-113, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (citing United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004)). Expert testimony generally will not help the trier of fact "when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. (quoting Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005)). Such testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys., 50 F.3d 908, 917 (11th Cir. 1995) (citations omitted).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999); McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002). However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of proffered evidence." Quiet Tech., 326 F.3d at 1341. Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

**DISCUSSION**

Defendant argues Dr. Bills's methodology is not reliable. Defendant makes four arguments in support of its reliability challenge. First, Defendant argues Dr. Bills does not offer objective support for his opinions. Doc. 138 at 10–11. Second, Defendant argues Dr. Bills does not identify the modalities he considered in his review of each patient record. Id. at 11–12. Third, Defendant argues Dr. Bills does not sufficiently explain why he concluded Plaintiff's performed surgeries were "medically indicated." Id. at 13–15. Fourth, Defendant argues Dr. Bills's opinion is based on numerous insufficiently explained presumptions. Id. at 15–16. Defendant concedes Dr. Bills is qualified and does not argue whether Dr. Bills's testimony would assist the trier of fact. Id. at 10.

**I.      Dr. Bills's Medical Knowledge and Experience Support His Opinions**

Defendant argues Dr. Bills's methodology is not reliable because Dr. Bills does not apply his specific experience to the facts of this case, nor does he offer any support from the medical records for his opinions. Doc. 180 at 3. Additionally, Defendant argues Dr. Bills does not reference any medical literature or guidelines to explain when a procedure is medically indicated. Doc. 138 at 10. Defendant states Dr. Bills acknowledged he did not consider any medical literature when drafting his report or cite to any literature in his deposition. Id. at 11. Defendant argues Dr. Bills's opinions are merely based on *ipse dixit*. Doc. 180 at 5.

Plaintiff argues Dr. Bills's methodology is reliable because he relied on his 30 years of experience as an OB/GYN surgeon and applied his extensive training, knowledge, and experience to his review of the medical records. Doc. 162 at 13. Plaintiff argues Dr. Bills applied his medical experience and training to his review of the medical records to form his

7

opinions. Id. Additionally, Plaintiff points to Dr. Bills's previous experience testifying as an expert in five trials. Id.

For experience-based testimony, "the relevant reliability concerns may focus upon personal knowledge or experience." Kumho, 526 U.S. at 150; see also Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331, 1338 (11th Cir. 2009) ("A district court may decide that nonscientific expert testimony is reliable based 'upon personal knowledge or experience.'") (quoting Kumho, 526 U.S. at 150). In order for the opinion to be deemed reliable, Dr. Bills must "explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation omitted). In other words, for Dr. Bills's opinion to be admissible, he must be able to demonstrate a sufficient connection between his experience and the opinion he offers. Dr. Bills does so here.

In his report, after listing his experience and qualifications as an OB/GYN, Dr. Bills states he was asked to review Plaintiff's cases for medical appropriateness and specifically if there were any evidence of unnecessary medical procedures performed on Plaintiff's patients. Doc. 139-1 at 7. Dr. Bills states he reviewed the medical records of 69 individual patients. Id. The report contains no other explanation of Dr. Bills's methodology. Based on these statements, Dr. Bills's methodology is he is a qualified OB/GYN and he formed an opinion based on his review of Plaintiff's patient records. "While review of medical records was likely essential in a case like this, it is not alone sufficient to demonstrate a reliable methodology." Stewart v. Johnson, No. 5:18-CV-37, 2021 WL 3030174, at *4 (S.D. Ga. July 19, 2021).

Although Dr. Bills's initial report contains little explanation of his methodology, the combination of Dr. Bills's deposition testimony and his supplemental report shows his

8

methodology is reliable.  Throughout Dr. Bills's deposition, he explained how his experience as an OB/GYN contributed to his analysis and how he applied his experience and knowledge in reviewing Dr. Amin's patients' medical records.  Doc. 139-7.  Dr. Bills provided a thorough explanation of his analysis of individual patient records and their treatment process, such as when he analyzed the treatment for patients R.F.S. and B.P.  Id. at 48–50.  While discussing patient B.P., Dr. Bills explained in detail the information available to Plaintiff, why an excision would not have been appropriate based on Dr. Bills's experience, and why it was appropriate to perform a hysterectomy.  Id. at 48–49.  Dr. Bills also explained how he would have proceeded with a similar patient in his practice.  Id. at 50.  While discussing other patients, Dr. Bills described discrepancies within patient charts based on his experience with using vaginal and abdominal ultrasounds.  Id. at 52.  Dr. Bills explained how Plaintiff may have recommended a hysterectomy for one of his patients based on laparoscopic imaging.  Id. at 52–53.  Dr. Bills also described unique considerations for indigent patients, how those would affect decision making in his own practice, and how these considerations may have affected Plaintiff's treatment options. Id. at 17–18.

Dr. Bills's supplemental expert report also helps demonstrate a sufficient connection between his experience and his opinions.  Dr. Bills states surgeons routinely recommend surgery as a definitive diagnostic and therapeutic approach.  Doc. 139-6 at 3.  Dr. Bills describes the historical use of D&C as a therapeutic procedure and how it is not an uncommon form of treatment.  Id. at 4.  Dr. Bills provides additional details for five patients who were recommended for hysterectomies and his reasoning for determining Plaintiff provided appropriate care to these patients.  Id. at 5–7.  Dr. Bills also responded to Defendant's expert's assertions regarding Plaintiff's medical management practices and highlighted how different methods may be used in

standard patient practice. Id. at 7. Throughout his report, Dr. Bills explained the differences between Plaintiff's practice patterns and Defendant's expert's practice patterns based on their respective patient populations and practice settings. Dr. Bills's deposition testimony and expert reports sufficiently establish a connection between his experience and the opinions he offers based on the review of Dr. Amin's patient records.

Defendant's challenges to Dr. Bills's methodology do not warrant exclusion. Defendant argues Dr. Bills's opinions should be excluded because there was no data, methodology, or study underlying the opinion. Doc. 138 at 9–10. Defendant argues Dr. Bills's opinions are nothing more than *ipse dixit*. Doc. 180 at 5. However, as explained above, Dr. Bills applied his experience as an OB/GYN and his extensive medical knowledge to the medical records' review and established a connection between his experience and his opinions.[2] Throughout his reports and deposition, Dr. Bills consistently referred to his medical experience and explained how he applied his experience and specialized knowledge to form his opinions on Plaintiff's treatment methods. Additionally, Dr. Bills discussed studies from different doctors and online medical literature during his deposition testimony. Doc. 139-7 at 40, 49.

In sum, Defendant's challenge to the reliability of the methodology employed by Dr. Bills fails. Defendant's challenges largely concern the weight of Dr. Bills's opinions rather than their admissibility. Challenges to the weight of expert testimony are properly made through cross-examination at trial, not a motion to exclude the testimony altogether. "A district court's gatekeeper role under Daubert is not intended to supplant the adversary system or the role of the jury." Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001). "Vigorous cross-examination,

---

[2]   While not dispositive of the issue, it is noteworthy Dr. Carey, Defendant's expert, similarly relied on her knowledge, training, and experience to form opinions about Plaintiff's care of patients based on review of those individual patients' medical records.

10

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.  Ultimately, I conclude Dr. Bills's opinions are based on a reliable methodology.

**II.     Dr. Bills's Opinions Are Based on Sufficient Facts and Data**

In Dr. Bills's expert report, he states every procedure Dr. Amin performed was "medically indicated as documented by **various modalities** including the history and physical, preoperative ultrasound evaluation, intraoperative surgical images documentation, and final pathology."  Doc. 139-1 at 8 (emphasis added).

Defendant argues Dr. Bills does not explain which modalities he considered in his review of each of the 69 patient records.  Doc.138 at 11.  Defendant argues Dr. Bills did not indicate whether he reviewed all modalities in all cases or whether different documents contributed to his opinions for different patients.  Defendant also points to Dr. Bills's deposition testimony, in which he acknowledged some ultrasound images and surgical images were either low resolution or not clear enough for him to conduct an independent evaluation.  Doc. 138 at 12.  Defendant argues Dr. Bills's expert opinions should be excluded because it is unclear what he relied on to reach his conclusions about each patient record.  Essentially, Defendant contends Dr. Bills's report is unreliable because it is not based on sufficient facts or data.

In response, Plaintiff argues Dr. Bills's reports and testimony are based on the same medical records as Defendant's expert's testimony.  Doc. 162 at 17.  Plaintiff argues Dr. Bills's statement regarding modalities is only describing what is included in the medical records he reviewed.  Id.  Plaintiff argues the Court's gatekeeping role under Daubert is not served by excluding testimony that is supported by extensive relevant experience, and Dr. Bills applied his

11

training, experience, and current understanding of surgical procedures to his medical records review to form his opinions.  Id.

Having fully considered the briefing and the record before the Court, I conclude Dr. Bills's opinions are based on a reliable methodology, in that they are based on sufficient data and the "modalities" he considered are sufficiently discernible.  In his initial expert report, Dr. Bills used a somewhat generic, non-exhaustive list of modalities to apply to his review of 52 patient charts.  Doc. 139-1 at 8 (explaining "modalities" includes "the history and physical, preoperative ultrasound evaluation, intraoperative surgical images documentation, and final pathology.").  However, throughout his deposition testimony as mentioned above, he provided sufficient detail about how he applied his experience to his medical records review and he discussed individual patient considerations and modalities.  See, e.g., Doc. 139-7 at 48–50.  Additionally, in Dr. Bills's supplemental chart, he lists each patient chart reviewed, relevant preoperative notes for each patient, and the corresponding treatment and procedure for each patient and notes any missing documentation for each patient chart.  Doc. 139-8.  Dr. Bills's supplemental report also includes detailed analysis and responses to Defendant's expert's report for five patients for whom Plaintiff recommended a hysterectomy.  Doc. 139-6 at 5–7.

Defendant has not shown Dr. Bills's opinions are based on unreliable methodology merely because he did not identify the modalities considered for each patient with specificity in his initial report.  Dr. Bills's testimony and supplemental reports sufficiently define the basis for his opinions.  Further, any alleged flaws in Dr. Bills's methodology may be challenged at trial through cross-examination.

### III.     Dr. Bills Provides Sufficient Analysis to Support His Opinions

Defendant argues Dr. Bills provides no analysis supporting his opinion every surgery Dr. Amin performed was "medically indicated" and, therefore, his methodology is unreliable. Doc. 138 at 13.  Defendant argues Dr. Bills includes generalized statements about why a doctor could perform these surgeries in his expert report, but he does not explain how each patient's medical records led him to conclude the surgery Dr. Amin performed was medically indicated. For example, concerning Dr. Bills's analysis of cystectomies, Defendant argues Dr. Bills presumed the detainee patients were limited in follow-up care options, and Dr. Bills presumed Dr. Amin removed cysts which qualified as "persistent."  Id.  Defendant argues the medical records for at least three patients show Dr. Amin removed cysts that were impersistent and undocumented until Dr. Amin removed them.  Id. at 14.  Defendant argues Dr. Bills's chart supplementing his report does not address these issues either.  Defendant argues Dr. Bills's analysis appears to be limited to reviewing Dr. Amin's list of pre-operative diagnoses and determining the pre-operative diagnoses supported every surgery performed.  Id. at 15.

In response, Plaintiff argues there is no legal support for Defendant's argument requiring an analysis of each one of the patient medical records reviewed.  Doc. 162 at 17–18.  Plaintiff contends a summary statement was appropriate because Dr. Bills found no unnecessary procedures and Defendant has the ability to critique Dr. Bills's opinions on each of the patients through cross-examination at trial.  Id. at 18.  Responding to Defendant's arguments related to cystectomies, Plaintiff again states Defendant can address this subject during cross-examination at trial.  Plaintiff contends Defendant's arguments only amount to a difference of opinion and excluding Dr. Bills's opinion based on this argument goes beyond the Court's role in a Daubert inquiry.  Id.

Defendant's argument addressed in this section is similar to the one addressed in the previous section. Defendant essentially contends Dr. Bills was required to provide a detailed, procedure-by-procedure analysis for each patient reviewed in order to support his opinion every procedure Plaintiff performed was medically indicated. Otherwise, Defendant contends, Dr. Bills's methodology is unreliable. Defendant's argument is unconvincing.

In his report, Dr. Bills states he reviewed charts for 14 patients who were treated in the ambulatory care setting. Doc. 139-1 at 8. Those 14 patients did not require surgical intervention. Id. Dr. Bills also reviewed 52 patient charts for outpatient surgical procedures. Id. Dr. Bills lists the number and types of each procedure performed and the reasons why he determined the procedures were medically indicated. Id. In his deposition, Dr. Bills elaborated, testifying the 35 ovarian cystectomies Dr. Amin performed were necessary because they were indicated for pelvic pain. Doc. 139-7 at 18. Dr. Bills testified how pelvic pain and cystectomy would be documented in a patient chart and how Dr. Amin documented these in his medical records. Id. at 19–20. Dr. Bills testified how Dr. Amin's medical records showed his cystectomy patients were experiencing chronic pain. Id. at 25. In his deposition, Dr. Bills also explained how it was reasonable for Dr. Amin to perform a cystectomy instead of allowing the cysts to resolve on their own. Id. at 45. Additionally, in his reply report, Dr. Bills provided further explanations for his opinions about why certain procedures were medically indicated for specific patients. So, although Dr. Bills's explanations in his initial report are limited, Dr. Bills sufficiently explained his reasoning for forming his expert opinions in his deposition and supplementation.

Ultimately, Dr. Bills reviewed a collection of patient medical records and offered a categorical opinion about all of the procedures on those patients. Dr. Bills explained how (i.e.,

the methodology) he formed that opinion. Defendant has failed to show anything unreliable about that methodology. Defendant, instead, contends Dr. Bills was required to explain how he assessed each and every procedure in order for Dr. Bills's overall methodology to be deemed reliable. Defendant has not pointed to any authority that would require this level of detail or analysis for the purposes of reliability in these circumstances. Furthermore, Dr. Bills has, at various points, provided further explanation for the assessments he made in the course of reviewing patient medical records, such that Defendant is able to assess the bases for those opinions and conduct cross-examination at trial. Defendant has not shown Dr. Bills's opinions are based on an unreliable methodology and will not be excluded on this basis.

### IV.   Dr. Bills's Presumptions Do Not Warrant Exclusion

Defendant argues Dr. Bills's methodology is not reliable because it is based on several insufficiently explained presumptions. Doc. 138 at 15. Defendant points to several portions of Dr. Bills's expert report and deposition testimony to highlight these presumptions. For example, Dr. Bills presumed Plaintiff's patients were a high-risk indigent population. Id. He presumed each patient consented to Plaintiff performing the surgeries and Plaintiff provided alternatives to the patients.[3] Id. Dr. Bills presumed the patients could be deported and taken away without notice. Id. at 15–16. Defendant also argues Dr. Bills incorrectly presumed Plaintiff removed cysts because he determined they were the source of pain.[4] Doc. 180 at 8.

---

[3]   To be clear, Dr. Bills was not asked to, and did not, offer any opinion on the issue of informed consent. Instead, Dr. Bills made factual presumptions about consultation and consent in forming his opinions.

[4]   Defendant also argues Dr. Bills incorrectly presumed unlabeled intraoperative imaging supported Plaintiff's treatment decisions and Plaintiff was able to read his own images without a radiologist. Doc. 180 at 8. These arguments are based on a mischaracterization of Dr. Bills's deposition testimony. When asked if he could make an independent assessment as to whether the intraoperative surgical images showed the pathology indicated in the medical records, Dr. Bills explained it was not something he could

In response, Plaintiff contends all the presumptions are reasonably drawn from either Dr. Bills's personal experience or Plaintiff's patients' medical records. Plaintiff argues experts are allowed to draw reasonable inferences from the evidence in the case and these presumptions do not warrant excluding Dr. Bills's opinions. Doc. 162 at 19. Plaintiff argues Defendant can challenge these presumptions through cross-examination. Id.

The critical inquiry at this stage is whether Dr. Bills's opinions have a "reasonable factual basis." In re Delta/Airtran Baggage Fee Antitrust Litig., 245 F. Supp. 3d 1343, 1361 (N.D. Ga. 2017). "[A]n expert is permitted to make reasonable assumptions when forming [his] opinions." Alfa Mut. Ins. Co. v. Samsung SDI Co., No. 5:19-CV-00518, 2021 WL 9439834, at *4 (N.D. Ala. Dec. 16, 2021). "The facts relied upon by an expert 'must find some support . . . in the record' and 'must be supported by more than subjective belief and unsupported speculation.'" In re Delta, 245 F. Supp. at 1361 (quoting McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800–01 (6th Cir. 2000)). Weaknesses in the factual basis of an expert's opinion bear on the weight of the evidence rather than on its admissibility. Id.

Dr. Bills assumed Plaintiff's patients were indigent because ICE detainees are undocumented and incarcerated. Doc. 139-7 at 27–28. Although this assumption may ultimately be incorrect, it is nonetheless a reasonable assumption. Dr. Bills explained he has personal experience working with indigent patients. Id. at 8. ICE detainees are commonly undocumented

---

opine on because the reason for taking the surgical images was not documented. Doc. 139-7 at 24. When asked if Dr. Bills believed Dr. Amin could adequately read ultrasounds, Dr. Bills answered, "I have no reason to believe he can or cannot." Id. at 23. Neither of these statements are assumptions. Dr. Bills stated he could not form any conclusions regarding the images in the medical records. Because the arguments are based on an incorrect reading of Dr. Bills's testimony, the Court need not address these portion of Defendant's arguments.

16

migrants with limited means. It is, therefore, reasonable for Dr. Bills to assume Plaintiff's patients were indigent.

Dr. Bills assumed Plaintiff provided alternative treatment options to his patients. Dr. Bills assumed alternatives were provided to Plaintiff's patients because he noted alternatives, specifically hormonal suppression, were listed on numerous medical charts during his review. Id. at 25–26. Dr. Bills explained how pelvic pain duration is not generally documented but, rather, it is discussed with the patient when creating the treatment plan along with alternatives. Id. Thus, Dr. Bills's assumption is a reasonable one based on his review of the patient medical records.

Dr. Bills assumed patients could be deported without notice because one of Dr. Amin's patients was deported when she was supposed to have surgery. Id. at 41. Although this assumption may be incorrect, it is a reasonable assumption. ICE detainees are a transient population who may be transferred to other ICE facilities or processed for deportation while in custody. Given the fact one of Plaintiff's patients was deported during the course of her treatment, it is reasonable for Dr. Bills to assume patients could be deported without prior notice.

Lastly, Dr. Bills assumed Plaintiff removed cysts because they were the source of his patients' pain. Dr. Bills explained doctors must rely on a patient's subjective pain complaints and he "cannot quantitate a person's response for significant pain," so he could only review the medical records and assume Dr. Amin thought the pain was significant enough to indicate surgical intervention. Id. at 20. The medical records showed Plaintiff's patients complained of pain, and Dr. Bills stated significant pain can be an indication for surgery. Id. Although it may ultimately be incorrect, it is reasonable for Dr. Bills to assume Plaintiff removed cysts because the patients complained of pain.

Evidence in the record adequately supports Dr. Bills's assumptions.  Dr. Bills's assumptions are based on facts and information known to him about this case and the patients through their medical records, as well as Dr. Bills's personal knowledge and experiences.  Dr. Bills provided thorough explanations for each assumption and how the assumption impacted his analysis of the course of treatment in his deposition testimony.  At most, the assumptions Defendant has raised are subjects Defendant may challenge at trial through cross-examination.  Defendant has not shown Dr. Bills's opinions and testimony should be excluded.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Exclude the Opinions of Dr. Elbridge Bills.  Doc. 138.

**SO ORDERED**, this 11th day of July, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA