UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| DR. MAHENDRA AMIN, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 5:21-CV-00056-LGW-BWC |
| v. | ) |
| | ) |
| NBCUNIVERSAL MEDIA, LLC, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S CONSOLIDATED MOTIONS IN LIMINE

There remain several evidentiary disputes that should be settled outside the presence of the jury before trial and for which the parties could not reach agreement after good faith conferral. Accordingly, Dr. Amin sets forth these motions in limine, opposed by NBCU, through which he respectfully requests that the Court exclude evidence regarding the following:

**PLAINTIFF'S MOTION IN LIMINE NO. 1: Evidence Regarding Non-Hysterectomy Medical Procedures Should Be Excluded**

As Dr. Amin indicated in the Joint Proposed Consolidated Pretrial Order and Appendix I thereto, he intends to simplify his case for trial by pursuing the statements that accuse him of performing mass hysterectomies and hysterectomies that were unnecessary, unauthorized, and without consent; not choosing to pursue the statements regarding other allegations. Doc. 223 at 9-10; Doc. 223-1. Because the remaining statements only concern hysterectomies, evidence regarding non-hysterectomy procedures does not make any fact of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Indeed, while NBCU has attempted to characterize the "gist" of its publications of "hysterectomy" allegations as regarding "medical procedures on detainees at ICDC, including

large numbers of hysterectomies," the Court ruled as a matter of law this was not so: "But the focus of these three broadcasts was not on unnecessary or unconsented-to 'medical procedures.' The focus was on 'mass hysterectomies' and 'high numbers of hysterectomies,' performed without necessity and consent, at the facility." Doc. 209 at 43.

The Court has already determined, as a matter of law, that the "undisputed evidence has established that: (1) there were no mass hysterectomies or high numbers of hysterectomies at the facility; (2) Dr. Amin performed only two hysterectomies on female detainees from the ICDC; and (3) Dr. Amin is not a 'uterus collector.'" *Id*. at 42. As the Court noted in concluding that the hysterectomy allegations were the "focus" of the broadcasts, it observed that, for example, *Deadline: White House* dedicated less than one minute of its seven-minute segment to discussing non-hysterectomy gynecological procedures, and during that time the headline "high number of hysterectomies" remained on the screen. *Id*. at 43-44. *All In With Chris Hayes* had a segment around nine and a half minutes, without *any* mention of medical procedures other than hysterectomies. *Id*. at 44. *The Rachel Maddow Show* had a 15-minute segment, with only two mentions of non-hysterectomy procedures, both of which were tied back to the hysterectomy allegations by surrounding circumstances. *Id*. at 44-45. The Court concluded from that emphasis that an "average viewer watching the three broadcasts would understand that [Dr. Amin] was accused of performing mass hysterectomies that were unnecessary and without consent," giving a "different effect on the mind of the viewer from that which the pleaded truth would have produced." *Id*. at 45 (quotation marks omitted).

Evidence regarding non-hysterectomy procedures should accordingly be excluded as irrelevant. Fed. R. Evid. 402. This evidence includes, for example, expert testimony regarding non-hysterectomy procedures, such as that at Doc. 136-118, Doc. 136-130, and Doc. 136-150 (as

well as Dr. Amin's expert's corresponding testimony), as well as factual evidence such as medical records regarding non-hysterectomy procedures such as those at Doc. 136-115, Doc. 136-116, Doc. 136-117, Doc. 126, and Doc. 128.

Further, the evidence should be excluded pursuant to Federal Rule of Evidence 403, because whatever probative value it has is substantially outweighed by a danger of unfair prejudice to Dr. Amin, confusing the issues, misleading the jury, wasting time, and needlessly producing evidence. As to wasting time and needlessly producing evidence, Dr. Amin treated roughly 240 women detained by ICE at ICDC, while only two had hysterectomies; accordingly, considering all medical treatment rather than the two who had hysterectomies would make a much more expansive record.

As to the ability to confuse the issues and mislead the jury, in *Green v. Croft*, the court considered whether to admit evidence regarding past convictions for purposes of impeachment when the convictions arose from the same incident at issue in the civil case. 347 F. Supp. 3d 1156, 1161-62 (S.D. Fla. 2018). The court ruled: "Balancing the limited probative value of the specific nature of the convictions at issue against the very high potential for undue prejudice and juror confusion, the undersigned will not permit Defendants to introduce the specific nature of the battery and resistance with violence convictions to the jury." *Id*. at 1162. "The fact that these convictions stem from the same incident at issue in this civil case makes the danger of unfair prejudice and confusion a significant issue." *Id*. Similarly here, the probative value of the evidence is low, because as the Court has already ruled allegations of high numbers of hysterectomies are false as a matter of law, and indeed NBCU concedes that there were only two hysterectomies. However, the risk of confusion is, as in *Green*, high.

Similarly, evidence regarding patients who were recommended hysterectomies but

3

decided not to undergo the procedure or were deported before undergoing the procedure is also irrelevant. NBCU's statements do not concern the number of women who were recommended hysterectomies but chose not to do them; they concern performed hysterectomies that were unnecessary, unauthorized, and without consent. Accordingly, evidence regarding three patients who were recommended hysterectomies but did not undergo them does not make any fact of consequence in determining the action more or less probable than it would be without the evidence and should be excluded as inadmissible. *See* Fed. R. Evid. 401; Fed. R. Evid. 402; *Passmore v. Travelers Cas. and Sur. Co.*, 2021 WL 12103008, Case No. 2:19-cv-59 (S.D. Ga. Apr. 16, 2021) (Cheesbro, M.J.), at *3 (excluding post-loss cancelation and non-renewal of an insurance policy pursuant to a motion in limine because "correspondence following the loss regarding the status of Plaintiff's policy does not make Plaintiff's breach of contract claim more or less probable").

**PLAINTIFF'S MOTION IN LIMINE NO. 2: The Senate Subcommittee Report and Its Contents and Other Non-Disclosed Expert Testimony Should Be Excluded**

The Senate Subcommittee report and its contents, including those such as at Doc. 136-68, Doc. 136-69, and Doc. 136-70, should be excluded as irrelevant, hearsay without exception, hearsay-within-hearsay without exception, and non-disclosed expert testimony.

Although NBCU has, throughout this litigation, attempted to argue that the Senate Subcommittee report supports its reporting, *e.g.* Doc. 181 at 3, the report in fact confirmed that Dr. Amin performed only two hysterectomies, both medically necessary and authorized, refuting NBCU's reporting. Doc. 136-68 at 9. For the reasons argued in the first motion in limine above, because Dr. Amin intends to pursue only statements related to hysterectomies, the report and its contents are not relevant pursuant to Rule 401 and should be excluded as irrelevant pursuant to Rule 402. For those same reasons, they would drastically increase the scope of the trial with

4

evidence irrelevant to any issue in the case and accordingly should be excluded pursuant to Rule 403. Also pursuant to Rule 403, the report risks confusing the jury and is unfairly prejudicial to Dr. Amin.

Even if statements therein were relevant, which they are not, these documents constitute hearsay and/or hearsay-within-hearsay without exception. Statements made not in testimony for the current trial that are offered as evidence of the truth of the matter asserted constitute hearsay, which is generally inadmissible. Fed. R. Evid. 801(c); 802. In its summary judgment briefing, NBCU argued that the Senate Subcommittee report fits a hearsay exception outlined in Rule 803(8), known as the "public records" exception. Doc. 181 at 4. But it does not.

Under the "public records" exception, a record of a public office is admissible notwithstanding the rule against hearsay if, as relevant here, it both constitutes "factual findings from a legally authorized investigation" and it is not shown that the circumstances "indicate a lack of trustworthiness." Fed. R. Evid. 803(8). Those conditions are not present here.

First, under Eleventh Circuit law, a "collection of statements from a witness" does not constitute "factual findings" which are "based upon the knowledge or observations of the preparer of the report." *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009) (quotation marks omitted). The Senate Subcommittee itself characterized that it did not make its own conclusions as to female detainees having "appear[ed] to have undergone excessive, invasive, and often unnecessary gynecological procedures" but rather those conclusions were based on "expert medical analysis conducted *for* the Subcommittee." Doc. 136-68 at 10 (emphasis supplied). Therefore, the conclusions of the report must be excluded. "Placing otherwise inadmissible hearsay statements by third parties into a government report does not make the statements admissible." *Mazer*, 556 F.3d at 1278 (some punctuation marks altered); *see*

*id.* ("Hearsay within hearsay subject to an exception is not admissible.").

Second, the report is not trustworthy, as the political grandstanding attached thereto makes clear. For example, Senator Ossoff's statements, *quoted by NBCU in its summary judgment briefing*, describe the detainees' treatment as "nightmarish" and "disgraceful." Doc. 155 at 2, 6, 15 n.10. A District of Columbia district court has ruled that such indicia of "political grandstanding" weigh against admissibility from a Congressional entity's report. *Barry v. Tr. of Int'l Assoc.*, 467 F. Supp. 2d 91, 100 (D.D.C. 2006).

Finally, NBCU only provided notice to Dr. Amin of two experts, both proffered only as rebuttal experts to Dr. Amin's experts. Docs. 123; 123-3 at 2-3; 124. Accordingly, other experts' testimony, such as that encompassed in the Senate report and other such evidence, must be excluded for the independent reason that the experts were not disclosed to Dr. Amin. *See* Fed. R. Civ. P. 26(a)(2)(A); Fed. R. Civ. P. 37(c)(1); *Cedant v. U.S.*, 75 F.4th 1314, 1321 (11th Cir. 2023) (providing that although non-retained experts do not need to file a Rule 26(a)(2)(B) report but nevertheless must file a Rule 26(a)(2)(C) disclosure).

**PLAINTIFF'S MOTION IN LIMINE NO. 3: Evidence Regarding Investigations Into Dr. Amin's Medical Treatment of ICDC Detainees Should Be Excluded**

For similar reasons, investigations into Dr. Amin's medical treatment of ICDC detainees, including emails between investigators and Dr. Amin's counsel, Doc. 136-65, should be excluded as irrelevant pursuant to Rule 402 and pursuant to the balancing test outlined in Rule 403. The investigations began *after* all the statements remaining at issue in this case except for the social media posts, which themselves only referred back to statements in broadcasts prior to any investigation. Accordingly, they could not be relevant to the issue of actual malice. Investigations also cannot serve as evidence of truth of NBCU's statements, because the only investigation into Dr. Amin to have announced its conclusions is that of the Georgia Composite

Medical Board, which cleared Dr. Amin of wrongdoing and allowed him to continue practicing medicine, which he continues to do. *See* Doc. 153 at 19. They have similar risks to confuse the issues, mislead the jury, prejudice Dr. Amin, and expand the scope of the trial pursuant to Rule 403.

Further, evidence from documents such as internal ICE emails, such as at Doc. 136-49 and 136-50, constitute inadmissible hearsay as statements made not in testimony for the current trial offered as evidence of the truth of the matter asserted. *See* Fed. R. Evid. 801(c); 802. As the Court noted, there are no reports of investigations in the record, Doc. 209 at 27, because such reports potentially qualifying for the government records exception do not exist.

Finally, to the extent that investigation evidence encompasses expert testimony, NBCU only provided notice to Dr. Amin of two experts, both proffered only as rebuttal experts to Dr. Amin's experts. Docs. 123; 123-3 at 2-3; 124. All other expert testimony must therefore be excluded for the independent reason that the experts were not disclosed to Dr. Amin. *See* Fed. R. Civ. P. 26(a)(2)(A); Fed. R. Civ. P. 37(c)(1); *Cedant v. U.S.*, 75 F.4th 1314, 1321 (11th Cir. 2023) (providing that non-retained experts for whom it is not required to file a Rule 26(a)(2)(B) report nevertheless require a Rule 26(a)(2)(C) disclosure).

**PLAINTIFF'S MOTION IN LIMINE NO. 4: Mentions of Irrelevant Standards of Care Should Be Excluded**

The issues of falsity remaining for the jury are whether hysterectomies Dr. Amin performed were medically necessary, performed with consent, and authorized. *See* Doc. 209 at 43 ("The focus [of the broadcasts] was on 'mass hysterectomies' and 'high numbers of hysterectomies,' performed without necessity and consent, at the facility."). Accordingly, other standards, such as whether or not Dr. Amin performed perfect medical care or had an "aggressive" approach to treatment, *e.g.*, Doc. 124-3 at 10, 130, do not make any fact of

consequence in determining the action more or less probable than it would be without the evidence and should be excluded as inadmissible. Fed. R. Evid. 401; Fed. R. Evid. 402.

In addition to being irrelevant, such evidence also risks confusing the issues, misleading the jury, and creating unfair prejudice, all of which outweighs the insignificant probative value of such evidence pursuant to Federal Rule of Evidence 403. For example, in her expert report, Dr. Carey opined that K.C., one of the two hysterectomy recipients, "was a candidate for a minimally invasive route of hysterectomy however there is no documentation on counseling for route of hysterectomy and no indication for an abdominal hysterectomy." Doc. 124-3 at 13. Dr. Carey continued: "Recent data reports that compared to White women, Black and Hispanic women are less likely to undergo hysterectomy via a minimally invasive approach." *Id*. But NBCU did not report that Dr. Amin performed a hysterectomy abdominally while she "was a candidate" for the hysterectomy to have been performed vaginally, or that recent medical literature indicates that patients of different races often have different types of hysterectomies. Evidence purporting to support the argument that Dr. Amin's medical treatment of women who were incarcerated matches societal injustice confuses the issues before the jury. "Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or if the expert testimony is cumulative or needlessly time consuming." *U.S. v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (citation omitted); *see Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 814 (11th Cir. 2017) (excluding evidence that could confuse jurors by leading them to believe they could find liability based on a policy violation in a Fourth Amendment case).

Admission of such evidence would also prejudice Dr. Amin by forcing him to respond to the arguments of NBCU's expert, rather than the statements NBCU published about him. *See,*

8

*e.g.*, *Banks v. McIntosh Cnty., Ga.*, 2022 WL 2758609, Case No. 2:16-cv-53 (S.D. Ga. July 14, 2022) (Cheesbro, M.J.), at *5 ("The admission of this evidence could permit Plaintiffs to wage an improper 'campaign' against the County for conduct for which it is not on trial, 'thereby distracting the jury from [its] central obligation to decide' whether the County intentionally discriminated against Plaintiffs *solely* with respect to the Remaining Services." (citations omitted and emphasis in original)).

Further, such evidence "would waste precious time in a case that the parties already anticipate will take" an extensive amount of time to try, as well. *Id*. By excluding evidence regarding issues that the Court has already ruled are not the "gist" of the statements at issue in this case, the Court would focus the trial on issues that are relevant for the jury's decision. *See id*. ("Indeed, excluding this evidence will help to avoid bogging the Court and the jury down with ancillary issues related to these Dismissed Services, such as disputes over how those services were provided and their quality relative to those provided in other areas of the County.").

Finally, Dr. Amin's experts only opined as to medical necessity. Doc. 123-2 at 6-11, 16-17. Accordingly, NBCU's rebuttal experts' testimony is limited to rebutting those opinions. *See generally* Docs. 212-14 (orders of the Court granting in part and denying in part Dr. Amin's motions to exclude NBCU's experts and denying NBCU's motion to exclude Dr. Amin's expert Dr. Bills).

**PLAINTIFF'S MOTION IN LIMINE NO. 5: Duplicative Testimony from NBCU's Experts Should Be Excluded**

Dr. Carey and Dr. Anderson both opined that non-hysterectomy procedures performed by Dr. Amin on ICDC detainees were overly "aggressive." Doc. 123-3 at 8 (Dr. Carey); *id*. at 133 (Dr. Anderson). Because the experts' opinions are duplicative, the Court should exclude the

9

evidence pursuant to Federal Rule of Evidence 403. In *Tran v. Toyota Motor Corp.*, the Eleventh Circuit affirmed the trial court's exclusion from testifying of an expert whose "opinions, and the bases for these opinions, were the same as those of" another expert proffered by the party under Rule 403. 420 F.3d 1310, 1314-15 (11th Cir. 2005). The Eleventh Circuit held, pursuant to the trial court's "broad discretion to determine the admissibility of evidence," it was appropriate to exclude the second expert when the experts "relied on the same medical evidence in forming their opinions," testified to the same scope of evidence, and neither doctor's qualifications were "significantly greater" than the other's. *Id*. Further, unlike in *Tran*, NBCU's experts are offered only for purposes of rebuttal. *See* Doc. 123-3 at 2. When the only purpose of the testimony is to rebut that of Dr. Amin's experts, there is even more reason to exclude duplicative and cumulative testimony.

A contrast with *Griffin v. Coffee Cnty.*, in which this Court ruled that determining whether expert evidence should be excluded as cumulative pursuant to Rule 403 should be done at trial and not pursuant to a motion in limine, further demonstrates why duplicative evidence *should* be excluded pursuant to a motion in limine in this case. 623 F. Supp. 3d 1365, 1379-80 (S.D. Ga. 2022) (Cheesbro, M.J.). In that case, there were differences in the materials that the experts viewed, as well as the opinions that they offered. Here, in contrast, both Dr. Carey and Dr. Anderson used medical records (although Dr. Carey had access to more medical records than did Dr. Anderson), and both offer the same opinions based thereupon. *See* Doc. 123-3 at 5-17 (Dr. Carey, regarding "aggressive surgical intervention"); *id*. at 129-33 (Dr. Anderson, regarding "overly aggressive treatment"). It is not the case, as it was in *Griffin*, that NBCU's experts would testify from "different professional perspectives" or that their testimony opinions would only overlap "somewhat." 623 F. Supp. 3d at 1380 (citing cases). Because such information is

duplicative, it should be excluded.  *See Tran*, 420 F.3d at 1314-16.

### PLAINTIFF'S MOTION IN LIMINE NO. 6: Dr. Carey Should Not Be Permitted to Testify Regarding Opinions Shared Only In Her Untimely Letter

Dr. Carey should not be permitted to offer testimony regarding opinions appearing only in her letter.  Instead, Dr. Carey's opinion testimony should be limited to the opinions expressed in her original expert report.  Dr. Carey's November 19, 2023 letter, Doc. 139-4, purported to add "case-specifics" that Dr. Amin had pointed out were absent in her report but were really new opinions that should be excluded.  Expert opinions that are not "made known to the other parties during the discovery process" should be excluded from evidence, unless the omission is substantially justified or harmless.  Fed. R. Civ. P. 26(a)(2)(A); Fed. R. Civ. P. 37(c)(1).[1]

Dr. Carey's letter is dated November 19, 2023.  This is well after Dr. Amin's experts had reviewed Dr. Carey's opinions and had a chance to reply to them, which they did on October 3.  Doc. 123-4 at 2.  By failing to update her opinion until after Dr. Amin's experts pointed to its problems, Dr. Carey's letter is an improper effort to bolster her previously disclosed opinion.  The Eleventh Circuit and this Court have prohibited this exact kind of attempt "to merely bolster a defective or problematic expert witness report."  *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 719 (11th Cir. 2019).  Experts are not permitted to add opinions or to supplement prior opinions with information that could have been included in the original report:

> Federal Rule of Civil Procedure 26(e) does not permit supplementation to add points that could have been made in the original expert report or to otherwise shore up weaknesses or inadequacies, and there is no reason why the new assumptions and methodologies used in the second report could not have been

---

[1] Dr. Amin brought up this argument in his reply in support of his motion to exclude the testimony of Dr. Carey.  Doc. 178 at 10-12.  Dr. Amin had made the argument in reply after NBCU cited the letter in its response to his motion, in which NBCU described the letter as "supplementing her report."  Doc. 160 at 8.  The Court declined to consider Dr. Amin's argument, ruling for purposes of the motion to exclude that it had been raised for the first time in his reply brief and was superficial.  *See* Doc. 213 at 23 n.12.

adopted and disclosed in the first during the discovery period.

*Jones Creek Inv., LLC v. Columbia Cnty., Ga.*, 98 F. Supp. 3d 1279, 1289 (S.D. Ga. 2015).).

Accordingly, Dr. Carey should not be permitted to offer testimony on any opinions appearing only in the untimely letter.

### PLAINTIFF'S MOTION IN LIMINE NO. 7: Evidence Regarding Malpractice Claims and Other Litigation Should Be Excluded

Malpractice claims and other litigation against Dr. Amin should be excluded pursuant to Rules 402 and 403. Such purported evidence, such as a copy of a National Practitioners Data Bank Report, Doc. 136-50, does not make any fact of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. It should accordingly be excluded as inadmissible. Fed. R. Evid. 402. Any probative value such documents did have would be substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury and accordingly should be excluded on those independent grounds. Fed. R. Evid. 403.

For example, in lawsuits for negligence, "similar acts or omissions on other and different occasions are not generally admissible to prove like acts or omissions at a different time or place." *First Bancorp. Mortg. Corp. v. Giddens*, 251 Ga. App. 676, 678 (2001) (quotation marks and some punctuation marks omitted); *see Dodson v. Belk, Inc.*, 362 F. Supp. 3d 1283, 1290-91 (N.D. Ga. 2018) (granting a defendant's motion in limine to exclude evidence and argument regarding prior or subsequent incidents or accidents). That situation is analogous to this one, in which NBCU appears to want to use unrelated previous lawsuits to suggest how Dr. Amin conducted his treatment of the ICDC detainees at issue in this case.

Further, NBCU cannot use previous malpractice claims as evidence that it believed the statements, because Chris Scholl, head of Standards of NBCU, explicitly stated just after the

publication that this was not true: he said that Dr. Amin "has a pretty clean record," and that medicine is a "field where that is not an entirely unusual thing to have someone file a malpractice claim against you." Doc. 132-15 at 5:17-24.

The litigation brought against Dr. Amin by detainees, such as *Oldaker*, the Complaint for which is Doc. 24-2, should be excluded for the additional reason that allegations "are not evidence of the truth of what is alleged." *Wright v. Farouk Sys., Inc.*, 701 F.3d 907, 911 n.8 (11th Cir. 2013). Indeed, Dr. Amin has now been dismissed from *Oldaker* pursuant to his motion to dismiss. *See* Order, *Oldaker v. Giles*, Case No. 7:20-CV-224 (WLS) (M.D. Ga., Mar. 22, 2024), at 40. Further, the allegations therein do not concern hysterectomies that were even purportedly performed, either "mass" or in "high numbers," or unnecessary and without consent. *See, e.g.*, Doc. 24-2. In fact, *none* of the plaintiffs in the Oldaker case claimed that Dr. Amin performed a hysterectomy on them. *Id*.

**PLAINTIFF'S MOTION IN LIMINE NO. 8: Evidence Regarding Demand Letters Dr. Amin Sent and Lawsuits Against Other Publishers Should Be Excluded**

Dr. Amin's demand letters sent to other publishers of statements as he evaluated his legal options and lawsuits brought against other publishers for other statements should likewise be excluded pursuant to Rules 402 and 403. Such documents do not make any fact of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. They should accordingly be excluded as inadmissible. Fed. R. Evid. 402. That Dr. Amin sent demand letters through counsel in order to preserve his legal rights is irrelevant to his case against NBCU. Put simply, just because he may have had legal claims against other news sources and chose not to pursue them has nothing to do with the merits of his legal claims against NBCU. A plaintiff is not required to pursue every legal right he has in order to pursue any legal right.

Any probative value such documents did have would be substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury and accordingly should be excluded on those independent grounds. Fed. R. Evid. 403. *See Moore v. GEICO General Ins. Co.*, 758 F. App'x 726, 730-31 (11th Cir. 2018) (affirming trial court's order that probative value of evidence of a settlement between insured and insurer was substantially outweighed by risk of unfair prejudice, confusing the issues, and/or misleading the jurors and should be excluded).

**PLAINTIFF'S MOTION IN LIMINE NO. 9: Evidence Regarding the 2015 Settlement Between the Irwin County Hospital and the Department of Justice Should Be Excluded**

For similar reasons, evidence regarding the 2015 settlement between the Irwin County Hospital and the Department of Justice, such as the Complaint at Doc. 136-39 and the settlement at Doc. 136-145, should be excluded pursuant to Rules 402 and 403. Again, no such documents constitute competent evidence that make any fact of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Such evidence should accordingly be excluded as inadmissible. Fed. R. Evid. 402. Any probative value they did have would be substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury and accordingly should be excluded on those independent grounds. Fed. R. Evid. 403.

NBCU argued in its briefing on summary judgment that the 2015 DOJ settlement supported its argument that it did not publish the statements with actual malice. *See* Doc. 181 at 181. But, as he did with years-prior medical malpractice claims as discussed above, Mr. Scholl pointed out that the 2015 settlement did no such thing: it was a "financial" matter that was "really a different animal" from the statements NBCU published, that was "not terribly relevant to what we're talking about." Doc. 132-15 at 6:2-13. Indeed, Dr. Amin was one of *ten* doctors named in the lawsuit, along with the hospital which was the main defendant who actually paid the settlement, and the *hospital* paid a $520,000 settlement without any admission of liability.

*See* Doc. 153-1 ¶¶ 78, 82.

Any probative value would be substantially outweighed by confusing the issues, misleading the jury, and unfairly prejudicing Dr. Amin, as Dr. Amin would be forced to defend (and the jury would be forced to sift through) arguments of little or no relevance. *See Banks*, 2022 WL 2758609, at *5.

**PLAINTIFF'S MOTION IN LIMINE NO. 10: Evidence Regarding Dr. Amin's Arrest for Driving Under the Influence of Alcohol Months After the Publication of the Statements Should Be Excluded**

Dr. Amin's December 20, 2020 arrest for driving under the influence of alcohol, documents for which NBCU has identified during conferral regarding the parties' exhibit lists, is likewise irrelevant and should be excluded pursuant to Federal Rule of Evidence 402.

Even if that incident had any relevance to issues in the case here, which it does not, the probative value thereof would be substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury and accordingly should be excluded on those independent grounds. Fed. R. Evid. 403. As determined by another court in the Southern District of Georgia excluding evidence of arrests pursuant to a motion in limine, "admission of evidence of prior arrest[] would give a false impression regarding [the plaintiff] as a (non) law abiding citizen and would require an extensive discussion . . . in order to 'rehabilitate' [the plaintiff] in the eyes of the jury and to ensure that the arrest[ is] presented in the correct light." *Palmer v. Robbins*, 2022 WL 1063607, at *3 (S.D. Ga. Apr. 8, 2022) (Ray, M.J.). Accordingly, it should also be excluded pursuant to Federal Rule of Evidence 403.

Additionally, evidence of a crime is not admissible as evidence that the person committed any other act. Fed. R. Evid. 404(b)(1). Pursuant to Rule 404(b), a court in the Southern District of Georgia excluded evidence of past arrests or convictions for DUI but ruled that evidence that a

deponent lied about having been convicted of DUI and other crimes would be relevant as to credibility.  *McCranie v. Hoffman Elec. Co., Inc.*, 2010 WL 11534308, at *1-2 (S.D. Ga. Mar. 31, 2010).  It is true that, in exception to Rule 404, "relevant specific instances of the person's conduct" may provide evidence "[w]hen a person's character or character trait is an essential element of a charge," Federal Rule of Evidence 405(b), but such instances still must be "relevant."  Here, Dr. Amin's charge for driving under the influence, which occurred months *after* NBCU's publication, is not relevant to anything that NBCU published.  It is also not relevant to the damage NBCU caused him by falsely reporting that he had performed a high number of hysterectomies and was a "uterus collector," which the Court ruled a jury could conclude constitute defamation per se "because they make charges against Plaintiff in reference to the medical profession" but the "average person hearing or reading the statements could *not* construe the statements to mean that Plaintiff had committed a crime or was being charged with a crime."  Doc. 209 at 59 (emphasis supplied).  Accordingly, this case is different from *Schafer v. Time, Inc.*, in which the Eleventh Circuit held that the trial court did not abuse its discretion when it permitted questions regarding specific acts such as prior arrests but denied other questions on cross-examination of a defamation plaintiff who had been wrongly identified as a double agent who helped facilitate a terrorist attack on an airplane.  142 F.3d 1361, 1372-73, 1365 (11th Cir. 1998).

### PLAINTIFF'S MOTION IN LIMINE NO. 11: Social Media Posts of Dr. Amin's Counsel in Her Role as Politician

Finally, social media posts of Dr. Amin's counsel Stacey Evans in her role as a politician should be excluded.  As an initial matter, NBCU appears not to have identified such documents on the proposed exhibit lists exchanged by the parties.  However, because NBCU *did* attach such documents to its motion for summary judgment, Doc. 136-61, counsel for Dr. Amin sought

counsel for NBCU's agreement to not attempt to offer such posts into evidence. NBCU refused to do so without condition. Accordingly, this motion is necessary.

In the first post of the social media account of Stacey Evans, who is a Democratic state representative in Georgia, and was a candidate for office, counsel for Dr. Amin wrote, September 17, 2020: "The last 5 days have shown us the worst of humanity. Police beating citizen, citizen shooting police, forced hysterectomies for detained women. It is too much. We have to burn some sage. Sage = @JoeBiden. All the fixes won't be instant, but at least we can start. #vote." Doc. 136-61 at 2. In the second, she posted "Good question." and quoted a post asking, "Have 'pro-life' Republicans expressed outrage and demanded an investigation yet into reports of immigrant women being forced to have their uteruses removed from their bodies?" *Id*. at 3.

These posts of a politician do not make any fact of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. They should accordingly be excluded as inadmissible. Fed. R. Evid. 402. There is no argument that Ms. Evans's political social media account had information making forced hysterectomies more or less likely. Indeed, those posts do not mention "mass" or "high numbers" of hysterectomies, which is the crux of NBCU's statements, *at all*. Rather, the account was clearly parlaying the news reported by NBCU into political advocacy—voting for fellow Democratic candidates and against Republican ones. Further, NBCU has not suggested that its reporters or hosts viewed these posts, which occurred *after* and indeed in response to most of NBCU's publications which Dr. Amin alleges defamed him, much less that so viewing made them more likely to believe the allegations that contradicted obvious reasons to doubt the allegations and for which they expressed subjective doubts. *See, e.g.*, Doc. 209 at 69-75.

Any probative value such documents did have would be substantially outweighed by

17

unfair prejudice, confusing the issues, and misleading the jury, and accordingly the posts should be excluded on those independent grounds. Fed. R. Evid. 403. Statements by a non-journalist, non-doctor that no one alleges any pertinent witness viewed would distract and confuse the actual issues in the case. Further, the fact that the posts were by counsel for one of the parties produces unfair prejudice toward that party.

Further, as a practical matter, it is unclear how NBCU could introduce this document at trial. It has not identified Ms. Evans on its "will call" or "may call" witness list, and no other witness appears to have relevant knowledge. This makes NBCU's unwillingness to simply concede it will not attempt to introduce the posts all the more puzzling. The documents should not be introduced as evidence, and it is frankly ridiculous that counsel for NBCU has refused to agree to do so.

Respectfully submitted this 9th day of December 2024.

**_Stacey G. Evans_**
Stacey G. Evans
Georgia Bar No. 298555
sevans@staceyevanslaw.com
Tiffany N. Watkins
Georgia Bar No. 228805
twatkins@staceyevanslaw.com
Ryan E. Harbin
Georgia Bar No. 370658
rharbin@staceyevanslaw.com
J. Amble Johnson
Georgia Bar No. 229112
ajohnson@staceyevanslaw.com
STACEY EVANS LAW
729 Piedmont Ave NE
Atlanta, GA 30308
(404) 850-6750 (phone)
(404) 850-6748 (fax)

Scott R. Grubman
Georgia Bar No. 317011
sgrubman@cglawfirm.com

CHILIVIS GRUBMAN
DALBEY & WARNER LLP
1834 Independence Square
Atlanta, GA 30338
(404) 233-4171 (phone)
(404) 261-2842 (fax)

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S CONSOLIDATED MOTIONS IN LIMINE** will be served upon all attorneys in this matter by filing with the Court's CM/ECF system.

This 9th day of December 2024.

*/s/ Stacey G. Evans*
Stacey G. Evans

*Counsel for Plaintiff*